BART M. DAVIS, Idaho State Bar No. 2696
United States Attorney
CHRISTINE G. ENGLAND, California State Bar No. 261501
Assistant United States Attorney
District of Idaho
Washington Group Plaza IV
800 East Park Boulevard, Suite 600
Boise, Id 83712-7788
Telephone: (208) 334-1211
Facsimile:   (208) 334-1414
Email: Christine.England@usdoj.gov

JEFFREY H. WOOD
Acting Assistant Attorney General
RACHEL K. ROBERTS
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
7600 Sand Point Way NE
Seattle, WA 98115
Tel: (206) 724-7386; Fax: (206) 526-6665
E-mail: Rachel.roberts@usdoj.gov
Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, *et al.*,<br><br>     Plaintiffs,<br><br>     vs.<br><br>RYAN K. ZINKE, Secretary of the Interior, *et al.*,<br>     Defendants. | Case No. 1:18-cv-00187-REB<br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION TO SEVER AND TRANSFER** |

## INTRODUCTION

Plaintiffs Western Watersheds Project and the Center for Biological Diversity (together, "Plaintiffs") seek judicial review of eight Bureau of Land Management ("BLM") oil and gas lease sales and two Department of Interior ("DOI") Instruction Memoranda ("IMs"). *See* Complaint, ECF No. 1 ("Compl.").[1] None of these claims relate to lands or activities in Idaho. All eight lease sales, and the agency's public processes associated therewith, occurred in different judicial districts. Further, three of the eight lease sales as well as one of the IMs are also being challenged in another case filed contemporaneously—indeed, on the same day—in the District of Montana. *See Montana Wildlife Fed'n et al v. Zinke et al*, Case No. 4:18-cv-00069-BMM, ECF No. 1, Ex. 1 ("*MWF* Compl.");[2] *see also Wildearth Guardians v. U.S. BLM*, Case No. 4:18-cv-00073-BMM, ECF No. 1, Ex. 2 ("*WEG* Compl.).

In order to avoid the potential for inconsistent judgments by multiple district courts, as well as the inefficiency of having multiple courts review the same administrative records and render judgments on the same agency actions, Defendants seek to sever and transfer the Plaintiffs' lease sale challenges to the districts in which the subject lands are located. Thus, all challenges to lease sales in Montana, Utah, and Wyoming should be transferred to the Districts of Montana, Utah, and Wyoming, respectively. Plaintiffs' challenges to IM 2018-026 and IM 2018-034 should be transferred to the District of Columbia because the decision-making

---

[1] This motion is written with the understanding, further clarified through communications with Plaintiffs' counsel, that Plaintiffs' current complaint only challenges the BLM activities listed as "Final Actions" in Plaintiffs' complaint, and does not challenge any of the actions listed as "pending actions" or "cumulative actions." *See* Compl. ¶ 148 ("Along with IM 2018-026 and IM 2018-034, the Final Actions constitute the 'Challenged Decisions' at issue in this Complaint.").

[2] We will be filing a similar motion to sever and transfer claims that are not based in Montana in *Montana Wildlife Federation*.

processes for those IMs occurred in that district and have nationwide application. Severing and transferring Plaintiffs' claims in this manner will result in a much more efficient resolution of the litigation, will reduce the potential for inconsistent judgments, and will promote the local interest in having localized controversies decided at home. The table below sets out which agency activities are challenged in this case, any parallel litigation, and the district to which Federal Defendants seek to transfer those challenges.

| BLM activity challenged in this case | Also challenged in | Requested Transferee Venue |
|---|---|---|
| Montana June 2017 Lease Sale (Compl. ¶¶ 158–66) | *Montana Wildlife Federation* | District of Montana |
| Montana December 2017 Lease Sale (Compl. ¶¶ 199–208) | *Montana Wildlife Federation, Wildearth Guardians* | District of Montana |
| Montana March 2018 Lease Sale (Compl. ¶¶ 209–18) | *Montana Wildlife Federation, Wildearth Guardians* | District of Montana |
| Utah September 2017 Lease Sale (Compl. ¶¶ 186–98) | N/A | District of Utah |
| Wyoming February 2017 Lease Sale (Compl. ¶¶ 150–57) | N/A | District of Wyoming |
| Wyoming June 2017 Lease Sale (Compl. ¶¶ 167–76) | N/A | District of Wyoming |
| Wyoming September 2017 Lease Sale (Compl. ¶¶ 177–85) | *Montana Wildlife Federation* | District of Wyoming |
| Wyoming March 2018 Lease Sale (Compl. ¶¶ 219–25) | *Montana Wildlife Federation* | District of Wyoming |
| IM 2018-026 | *Montana Wildlife Federation* | District Court for the District of Columbia |
| IM 2018-034 | No | District Court for the District of Columbia |

## BACKGROUND

### I.      The Oil and Gas Leasing Process

The Mineral Leasing Act, 30 U.S.C. §§ 181–287, provides the Secretary of the Interior

with the authority to offer for lease certain federal minerals, including oil and gas. The Secretary

delegated this authority to BLM for onshore minerals. *See* 43 C.F.R. § 3100.0-3. To implement

the Mineral Leasing Act, BLM promulgated regulations that govern leasing and development of

federal onshore oil and gas on public lands and federal mineral estates. *See* 43 C.F.R. Parts

3100–3180. BLM employs a three-stage decision-making process for managing public lands for

oil and gas leasing and development. *See Pennaco Energy, Inc. v. U.S. Dep't of Interior*, 377

F.3d 1147, 1151–52 (10th Cir. 2004).

First, BLM broadly assesses the presence of minerals and other resources on specified

federal lands through the planning process to determine which areas should be open and which

closed to potential oil and gas leasing and development, and to determine for open areas which

stipulations should be included in any future leases. 43 C.F.R. § 1601.0-5(n); IM 2018-034, Ex.

3. Land use plans—referred to by BLM as resource management plans ("RMPs")—guide future

leasing of federal mineral estates but generally do not authorize any specific projects. *See* 43

C.F.R. § 1601.0-5(n). The RMPs developed by BLM are supported by environmental impact

statement ("EISs") prepared in accord with the National Environmental Policy Act ("NEPA").

The EISs provide an analysis of the potential environmental impacts of oil and gas development

and other resource impacts. 43 C.F.R. § 1601.0-6. Once BLM issues an RMP, subsequent, more

specific decisions, implementing site-specific projects must conform to the plan. 43 C.F.R. §

1610.6-3(a).

The second stage of the oil and gas management process requires BLM State Offices to hold competitive oil and gas lease sales. 30 U.S.C. § 226(b)(1)(A); *see* 43 C.F.R. Subpart 3120; 43 C.F.R. § 3120.1-2(a). Typically, for each oil and gas lease sale, BLM prepares an environmental assessment under NEPA, which "tiers" to the EIS prepared at the RMP stage. *See* 40 C.F.R. § 1508.28 (Council on Environmental Quality regulations discussing tiering under NEPA). Lands that may be available for leasing in a competitive lease sale include: lands formerly subject to oil and gas leases that have terminated, expired, been canceled or relinquished; lands selected by the authorized officer; and lands included in an expression of interest. 43 C.F.R. § 3120.1-1(a)–(f). Once the agency identifies which parcels it intends to lease, it holds a competitive lease sale, where the parcels are auctioned and sold to the highest bidder. *Id.* §§ 3120.5-1, 3120.5-3. BLM state offices post the final sale notice with a list of the offered parcels prior to the sale date. *See* 43 C.F.R. § 3120.4-2. Any entity may protest a parcel offered for sale within ten days of posting of the final sale notice. *See* IM 2018-034.

The third stage of the resource development process occurs following issuance of oil and gas leases, when BLM determines whether, and under what conditions, it will approve specific development proposals for the leases. 30 U.S.C. § 226(g); 43 C.F.R. § 3162.3-1 (2017). Before an oil and gas company can do any drilling or preliminary surface disturbance, it must submit an application for a permit to drill, at which point BLM undertakes additional environmental review to ensure NEPA compliance and, if it approves the action, imposes any necessary conditions of approval. *See* 43 C.F.R. § 3162.3-1; *see also Amigos Bravos v. U.S. Bureau of Land Mgmt.*, Nos. 6:09-cv-00037-RB-LFG; 6:09-cv-00414-RB-LFG, 2011 WL 7701433 *5 (D.N.M. Aug. 3, 2011).

## II.     Resource Management Plan Amendments

Beginning in December 2011, BLM and the U.S. Forest Service ("USFS") (launched a national planning process to incorporate sage-grouse conservation measures into their land management plans in ten western states. *See* 76 Fed. Reg. 77,008 (Dec. 9, 2011). For purposes of the planning process, sage-grouse habitat was divided into two regions: (1) the Great Basin (or Western) Region, covering California, Nevada, Oregon, Idaho, and parts of Utah and Montana, and (2) the Rocky Mountain (or Eastern) Region, covering North and South Dakota, Wyoming, Colorado, and parts of Utah and Montana. *Id.* at 77,009.

In September 2015, BLM and USFS completed the planning process by each issuing two records of decision ("RODs") approving the Plan Amendments for the Great Basin Region and the Rocky Mountain Region. *See* 80 Fed. Reg. 57,639 (Sept. 24, 2015) (notice of BLM's Rocky Mountain Region ROD).[3] Altogether, the Plan Amendments approved, amended, or revised ninety-eight land use plans to establish increased protections for sage grouse. Compl. ¶ 49. Eight suits were brought challenging the sage-grouse amendments.[4]

---

[3] *See also* 80 Fed. Reg. 57,633 (Sept. 24, 2015) (notice of BLM's Great Basin Region ROD); 80 Fed. Reg. 57,333 (Sept. 23, 2015) (notice of the Forest Service's Great Basin Region ROD); 80 Fed. Reg. 57,332 (Sept. 23, 2015) (notice of the Forest Service's Rocky Mountain Region ROD).
[4] *Western Exploration, LLC v. U.S. Dep't of Interior*, No. 3:15-cv-491 (D. Nev.) (filed Sept. 23, 2015) (challenging the Plan Amendments for the Nevada and Northeastern California sub-region); *Otter v. Jewell*, No. 1:15-cv-1566 (D.D.C.) (filed Sept. 25, 2015) (challenging the Plan Amendments for the Idaho and Southwestern Montana sub-region); *Wyoming Stock Growers Association v. U.S. Department of the Interior*, No. 2:15-cv-181 (D. Wyo.) (filed Oct. 14, 2015); *Wyoming Coalition. of Local Govs. v. U.S. Dep't of Interior*, No. 2:16-cv-41 (D. Wyo.) (filed Mar. 1, 2016); *Herbert v. Jewell*, No. 2:16-cv-101 (D. Utah) (filed Feb. 4, 2016); *WWP v. Schneider*, No. 16-cv-83 (D. Idaho) (filed Feb. 25, 2016) (challenging multiple plan amendments); *American Exploration & Mining Ass'n v. U.S. Dep't of the Interior*, No. 16-cv-737 (D.D.C.) (same); and *W. Energy Alliance v. U.S. Dep't of the Interior*, No. 16-cv-112 (D. N. Dakota) (filed May 12, 2016) (same).

In October of 2017, BLM announced its intent to consider additional amendments to

some or all of the ninety-eight RMPs that were previously amended to address sage grouse, in

part to respond to the court's decision on the merits in *Western Exploration, LLC*. *See Notice of*

*Intent*, BLM, 82 Fed. Reg. 47248–49 (Oct. 11, 2017); *W. Expl., LLC v. U.S. Dep't of the Interior*,

250 F. Supp. 3d 718, 749 (D. Nev. 2017). Draft EISs for additional plan amendments in Idaho,

Utah, and Wyoming became available for public comment on May 4, 2018. *See* 83 Fed. Reg.

19,801 (Idaho); 83 Fed. Reg. 19,803 (Utah); 83 Fed. Reg. 19,810 (Wyoming).

## STANDARD OF REVIEW

### I.   Motion to Sever Under Federal Rule of Civil Procedure 21

Under Rule 21, a court may "sever any claim against a party." Fed. R. Civ. P. 21. Courts

have broad discretion in determining whether to sever claims under Rule 21. *Coleman v. Quaker*

*Oats Co.*, 232 F.3d 1271, 1297 (9th Cir. 2000); 4-21 Moore's Federal Practice Civil § 21.05

(2010) (stating that courts have "great discretion under Rule 21 to restructure an action to

promote the efficient administration of justice"); 7 Charles Alan Wright, Arthur R. Miller &

Mary Kay Kane, *Federal Practice and Procedure* § 1689 (3d ed. 2001) ("Questions of severance

are addressed to the broad discretion of the district court."). A complaint that advances one or

two legal theories applied to multiple, unique factual situations will be treated as pleading

multiple claims that may be severed under Rule 21. *Coughlin v. Rogers*, 130 F.3d 1348, 1350–51

(9th Cir. 1997).

### II.   Motion to Transfer Venue Under 28 U.S.C. § 1404(a)

This Court has broad discretion under 28 U.S.C. § 1404(a) to transfer claims to another

judicial district based on considerations of convenience and fairness. *Stewart Org., Inc. v. Ricoh*

*Corp.*, 487 U.S. 22, 29–30 (1988); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834,

843 (9th Cir. 1986). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In determining whether an action should be transferred under section 1404(a), courts employ a two-step analysis. First, a court considers whether the action could have originally been brought the proposed transferee districts. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985); *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1098 (N.D. Cal. 2006). Second, a court undertakes an individualized, case-by-case consideration of convenience and fairness, taking into account the convenience of the parties and the interests of justice. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

In the Ninth Circuit, the "interest of justice" factor requires the consideration of several public interests, including: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having a case heard in the state that is most familiar with the governing law; (4) the relevant public policy of the forum state; (5) the desire to avoid multiple litigation from a single transaction and to promote consistency among court rulings that affect the development of the case; and (6) the relative intensity in the two jurisdictions of any local interests that the litigation might implicate. *See Decker Coal Co.*, 805 F.2d at 843; *id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)); *GNC Franchising*, 211 F.3d at 498–99; *IDACORP, Inc. v. Am. Fiber Sys., Inc.*, No. 1:11-cv-00654-EJL, 2012 WL 4139925, at *3 (D. Idaho Sept. 19, 2012). Many courts consider the interest of justice to be the most important factor in the analysis. *See* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 3854 (2008) ("Indeed, a number of federal courts have considered this factor decisive – outweighing the other statutory

factors – in ruling on a change of venue motion even though the convenience of the parties and witnesses pointed in a different direction.").

The "convenience" factor typically requires that a court consider a number of private interests, most of which relate to witnesses, including: (1) the relative ease of access to sources of proof; (2) the cost of obtaining witnesses; (3) the availability of compulsory process for attendance of unwilling non-party witnesses; and (4) the possibility of a view of the premises, if a view would be appropriate to the action. *See Decker Coal Co.*, 805 F.2d at 843 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

## ARGUMENT

The Court should sever Plaintiffs' claims regarding oil and gas lease sales for each of the lease sales challenged here and transfer those claims to the district court in the state affected by the sale. Because two separate litigants have chosen to file challenges to the same four lease sales in two separate courts,[5] and this Court has no geographical nexus and minimal interest in the issues in this case, Defendants respectfully submit that severing and transferring the cases in this manner would avoid inconsistent judgments, promote judicial economy, and allow as many claims as is practicable, given the scope of the overall litigation, to be litigated in a district court in the state affected by the particular lease sales.

### I.  The Court Should Sever Plaintiffs' Claims

The Court should sever Plaintiffs' claims relating to challenged lease sales in Montana, Utah, and Wyoming into three separate actions because they relate to separate lease sales in three different states. The Court should also sever Plaintiffs' claims relating to IMs 2018-026 and IM

---

[5] *See* table, *supra* at 2, noting that the December 2017 and March 2018 lease sales in Montana and the September 2017 and March 2018 sales in Wyoming have also been challenged in the District of Montana.

2018-034 into one separate action. Severing these claims will allow the parties to litigate, and the courts to adjudicate, the cases in an efficient manner and therefore will promote judicial efficiency and avoid wasting substantial resources.

Rule 21 "authorizes the severance of any claim, even without a finding of improper joinder, where there are sufficient other reasons . . . . [such as where] they arise from different factual situations," as the claims in this case do. *Khanna v. State Bar of Cal.*, No. C-07-2587 EMC, 2007 WL 2288116, at *2 (N.D. Cal. Aug. 7, 2007). Rule 21 can also be used "to sever claims of parties, otherwise permissibly joined, for purposes of convenience, to avoid prejudice, or to promote the expeditious resolution of the litigation." *Ferger v. C.H. Robinson Worldwide*, Inc., No. C06-174RSL, 2006 WL 2091015, at *1 (W.D. Wash. July 25, 2006). "Even when venue is proper as to all defendants, the court may sever a claim against a party and transfer it to a more convenient forum." 7 Wright & Miller § 1689.

Severance is appropriate because each of the eight lease sales was the product of a distinct administrative process that should be considered on its own administrative record, and that administrative process separately occurred in each state. Furthermore, the lease sales for each state are specific to the public lands they govern and were created through a process that involved the applicable states, counties, and entities with an interest in that particular state. Additionally, the needless complexity that would accompany any effort to litigate all of Plaintiffs' claims in a single civil action warrants severance into cases of a more manageable size. If the claims are not severed and transferred, as set forth below, it will take inordinate amounts of time and effort by the parties and the Court to litigate Plaintiffs' claims as to all of the lease sales, and that litigation will occur outside of the sight and reach of the numerous state and local stakeholders who participated in the underlying administrative processes.

The Court should also sever Plaintiffs' claims relating to IM 2018-026 and IM 2018-034 into one case, separate from the lease sale claims. Plaintiffs' challenges to BLM instruction memoranda raise issues of subject-matter jurisdiction that are not raised by Plaintiffs' challenges to lease sales, which can be briefed separately in a motion to dismiss after these cases are transferred. *See Anderson v. McCarthy*, No. C 16-00068 WHA, 2016 WL 6834215, at *7 (N.D. Cal. Nov. 21, 2016) (agency guidance not final agency action). Defendants are not raising these issues now, but mention them to point out that even if the Court does not grant our motion to sever, the claims challenging the IMs will likely be on a different procedural track than claims challenging lease sales. Furthermore, if claims challenging the IMs go forward, those challenges will be based on separate administrative records than challenges to lease sales.

Accordingly, Defendants respectfully request that the claims be severed.

## II.   Challenges to Lease Sales in Montana, Utah, and Wyoming Should be Transferred to those Districts and Challenges to Instruction Memoranda Should be Transferred to the District of Columbia

Should the Court agree that severance is appropriate, it should do so in an order that also transfers the claims to the judicial districts where the land that is the subject of each lease sale is located, and that transfers the IM challenges to the District Court for the District of Columbia. The overwhelming localized interest in lease sales favors transfer, and the principles of judicial economy favor all challenges to the same lease sales or IMs being heard in the same forum.

### A.   Venue is Proper in Each of the Districts Where Parcels that are the Subject of those Sales are Located, and in the District of Columbia for Challenges to the IMs

Venue is proper in each of the judicial districts in which the parcels subject to each sale are located, and in the District Court for the District of Columbia for challenges to the IMs.

Under 28 U.S.C. § 1391(e), a civil action against an official or agency of the United States may

be brought in any judicial district in which

> (A) a defendant in the action resides, (B) a substantial part of the events or
> omissions giving rise to the claim occurred, or a substantial part of property that is
> the subject of the action is situated, or (C) the plaintiff resides if no real property
> is involved in the action.

*Id*. § 1391(e)(1).

Transferring claims related to each lease sale to the district in which the parcels are

located meets both prongs (A) and (B) because BLM has offices in each district, the

decisionmaking process occurred in the district where the parcels are located, and the property

subject to each sale is located in each of these districts. With regard to 28 U.S.C. §

1391(e)(1)(A), officers and agencies of the United States can have more than one residence. For

purposes of this litigation, BLM is a resident of Montana, Utah, and Wyoming because it has

offices in all three states and manages land and resources in all three states. *See, e.g.*, *Forest*

*Guardians v. U.S. Dep't of Interior*, 416 F.3d 1173, 1176 n.4 (10th Cir. 2005) (noting that BLM

has offices in California and Wyoming); *see also Dehaemers v. Wynne*, 522 F. Supp. 2d 240, 248

(D.D.C. 2007).

Moreover, the decision-making process for each lease sale occurred in the state office

offering the sale. *See* 43 C.F.R. § 3120.1-2(a). "In cases brought under the [Administrative

Procedure Act ("APA")], courts generally focus on where the decisionmaking process occurred

to determine where the claims arose." *See Nat'l Ass'n of Homebuilders v. U.S. EPA*, 675 F.

Supp. 2d 173, 179 (D.D.C. 2009). For this same reason, transfer of claims challenging IM 2018-

026 and IM 2018-034 to the District Court for the District of Columbia is also proper, because

BLM has offices in the District of Columbia, and because according to Plaintiffs' own

allegations, the decision-making process for the IMs occurred in DC. *See* Compl. ¶¶ 91–93, 96–97.

In addition to BLM's residency in each state, the "property that is the subject of the action" – i.e., the parcels subject to each lease sale – are located in each state, thus making venue appropriate under 28 U.S.C. § 1391(e)(1)(B). The "touchstone" for application of 28 U.S.C. § 1391(e)(1)(B) is whether the action "center[s] directly on the real property, as with actions concerning the right, title[,] or interest in real property." *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, No. C 08-05646 JSW, 2009 WL 1025606, at *2–*3 (N.D. Cal. Apr. 14, 2009) (transferring case challenging BLM's adoption of a land use plan for property in another district, to the other district). That requirement is satisfied here because Plaintiffs challenge and seek to vacate BLM's issuance of oil and gas leases, which involve the acquisition of a "real property interest." *See Ferguson v. Lieurance*, 565 F. Supp. 1013, 1015 (D. Nev. 1983) (transferring case challenging rejection of oil and gas lease applications for parcels in Wyoming to the District of Wyoming because lease sales involve the acquisition of a "real property interest.").[6]

---

[6] Although not essential, Plaintiffs also have offices in at least some of these districts. WWP has offices in Wyoming and Montana. *See* Western Watersheds Project, Contact Us, https://www.westernwatersheds.org/contact-us/ (last accessed May 16, 2018). Center for Biological Diversity has an office in Washington, DC, *see* http://www.biologicaldiversity.org/about/contact/ (last accessed May 22, 2018) and a Utah Field Campaigner, http://www.biologicaldiversity.org/about/staff/index.html#dseed (last accessed May 16, 2018).

B.      **The Public Interest Factors Favor Transfer**

1.      **The Local Interest in Having Localized Controversies Decided at Home and the Relative Intensity of Local Interests Both Favor Transfer**

Each of the proposed transferee districts have far greater connections connected to those sales than the District of Idaho. "Land is a localized interest because its management directly touches local citizens." *S. Utah Wilderness All. v. Norton*, 315 F. Supp. 2d 82, 88 (D.D.C. 2004) (citing *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 71 (D.D.C. 2003)). *Cf. S. Utah Wilderness All. v. Lewis*, 845 F. Supp. 2d 231, 234 (D.D.C. 2012) (in case challenging resource management plans, "[b]ecause this action concerns real property situated in Utah, all parties conclude that this suit could have been brought in the District of Utah."). As discussed above, lease sales in particular "center directly on real property," *Center for Biological Diversity,* 2009 WL 1025606, *2–*3 because they involve the conveyance of a "real property interest." *Ferguson*, 565 F. Supp. at 1015.

Both the environmental and economic effects of the lease sales will be felt in the districts in which the parcels that are subject to the sales are located. In *Southern Utah Wilderness Alliance v. Norton*, a court in the District of Columbia held that a case challenging a lease sale in Utah should be transferred to the District of Utah because the environmental injuries alleged by the plaintiffs "would be most particularly felt in Utah, and thus . . . the courts of Utah would have a clear interest in resolving the dispute." No. Civ.A. 01-2518(CKK), 2002 WL 32617198, *88 (D.D.C. April 27, 2004). Similarly here, Plaintiffs allege that "these oil and gas leases threaten substantial degradation and fragmentation of key sage-grouse habitats" and "[e]nergy development has well-documented adverse effects on sage grouse survival, breeding, and behavior." Compl. ¶¶ 11, 30. The impacts that Plaintiffs allege would be most closely felt where

"[s]urface development" would occur. *See Id.* ¶ 30. The challenged lease sales would also have "substantial impacts on the local economy," *see WildEarth Guardians v. U.S. Forest Serv.*, 2012 WL 1415378, *4 (D. Colo. April 24, 2012), since the states in which the oil and gas is produced receive about fifty percent of the federal royalty, and generally provide the work force. *See* 30 U.S.C. § 191 (royalties). *See also See Sierra Club v. U.S. Dep't of State*, No. C 09-4086 SI, 2009 WL 3112102, at *3–5 (N.D. Cal. Sept. 23, 2009) (transferring case based on the interest in having cases heard in the region affected by the action being challenged); *Ctr. for Biological Diversity v. Kempthorne*, No. C-07-0894 EDL, 2007 WL 2023515, at *5–7 (N.D. Cal. July 12, 2007) (same).

In contrast, this district has no connection to any completed lease sale challenged in Plaintiffs' complaint. The only lease sale in Idaho referenced in Plaintiffs' complaint is an upcoming June 2018 oil and gas lease sale for parcels in Idaho and Utah, *see* Compl. ¶¶ 230–39, but that sale does not provide a basis for venue because that sale is not final agency action and, therefore (as Plaintiffs concede), it is not challenged in the operative complaint.[7] *See* Compl. ¶ 284 ("The Pending Actions . . . are appropriate for judicial review . . . once they become Final Actions."). Thus, any claim challenging an Idaho lease sale is unripe, and the District of Idaho does not have any interest in either the lease sales challenged in this case or the application of the challenged IMs to the challenged lease sales. Additionally, there have not been any lease sales in the District of Idaho since July of 2016, so there is less of a local interest in lease sales generally in this District than in the Districts of Montana, Utah, and Wyoming. *See* Bureau of Land

---

[7] Even if an impending but as-of-yet non-final lease sale could serve as grounds for asserting venue in this District—and it cannot—Plaintiffs' reliance on the proposed Idaho lease sale would still be misplaced because that proposed sale has been deferred, and thus is not imminent. Ex. 4.

Management, *Idaho Oil and Gas Lease Sales*, https://www.blm.gov/programs/energy-and-minerals/oil-and-gas/leasing/regional-lease-sales/idaho (last accessed May 25, 2018).

This lack of connection to a challenged lease sale in Plaintiffs' chosen forum weighs in favor of transfer to the districts where each sale occured. *See S. Utah Wilderness v. Norton*, No. CIV.A. 01-2518(CKK), 2002 WL 32617198, at *3 (D.D.C. June 28, 2002) (transferring case challenging lease sales from the District of Columbia to Utah in part because "Plaintiffs have failed to demonstrate a substantial link between their choice of forum . . . and the facts of the controversy."). There, as here, "[t]he relationship between the challenged agency action – the sale and issuance of . . . oil and gas leases – . . . and this District is attenuated at best." *Id.*; *see also Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 13 (D.D.C. 2000) ("the Court recognizes the diminished consideration accorded to a plaintiff's choice of forum where . . . that forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter.") (collecting cases).

The public interest in having the issues raised by these claims decided in the geographic region most directly impacted by the court's decision favors transferring these claims to the "home" forums. *See Decker Coal Co.*, 805 F.2d at 843 (recognizing the "local interest in having localized controversies decided at home" (quoting *Piper Aircraft*, 454 U.S. at 241 n.6)). These lease sales have no connection to this district and therefore the challenges to them should be moved to the districts in which the relevant parcels are located.

2.      **Challenges to the IMs Should be Transferred to the District Court for the District of Columbia**

In contrast to the localized decision-making process and localized interests implicated by the lease sales, IM 2018-026 and IM 2018-034 implicate issues of national scope and are national policy memoranda authored in Washington, D.C. "In cases brought under the APA,

Memorandum in Support of Defendants' Motion to Sever and Transfer          15

courts generally focus on where the decisionmaking process occurred to determine where the claims arose." *See Nat'l Ass'n of Homebuilders*, 675 F. Supp. 2d at 179 (citing *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 25 (D.D.C. 2002); *Akiachak Native Cmty. v. Dep't of Interior*, 502 F. Supp. 2d 64, 68 (D.D.C. 2007)). According to Plaintiffs' own allegations, the decision-making process for the IMs occurred in Washington, D.C. *See* Compl. ¶¶ 91–93, 96–97. Furthermore, BLM has offices in the District of Columbia, and both the Secretary of the Interior and the Deputy Secretary of the Interior reside in Washington, D.C.

There is also not a clear local interest in the IMs in this District. There have not been any lease sales in the District of Idaho since July of 2016. *See* Bureau of Land Management, *Idaho Oil and Gas Lease Sales*, https://www.blm.gov/programs/energy-and-minerals/oil-and-gas/leasing/regional-lease-sales/idaho (last accessed May 25, 2018). This means that the challenged IMs have not been applied to any lease sales in Idaho. In contrast to the localized interest in the lease sales, the IMs are matters of national interest because they guide lease sales across the country. *See* Compl. ¶¶ 103 (alleging that "IM 2018-026 directed that BLM Field Offices may ignore the prioritization requirement of the Sage-Grouse Plan Amendments at the leasing stage."); 109 (alleging that "BLM is now implementing IM 2018-034 in its administration of federal minerals and oil and gas leasing on public lands, . . . ."). This lack of any localized interest in this forum, coupled with the location of the decision-making process in Washington, D.C., weighs in favor of transfer. *C.f. Babbitt*, 104 F. Supp. 2d at 13 (declining to transfer case challenging gas development in the National Petroleum Reserve in Alaska as a "matter of national interest" and noting that the Secretary of Interior, as well as two of the policy makers involved in the decision-making process, were located in the District of Columbia).

### 3. Transfer will Promote Consistency Among Court Rulings

Transfer of certain claims is necessary to avoid inconsistent judgments. In both this case and in *Montana Wildlife Federation*, both plaintiffs challenge IM 2018-026, the December 2017 and March 2018 lease sales in Montana, and the March 2018 lease sale in Wyoming under FLPMA, NEPA, and the APA. *Compare* Compl. ¶¶ 199–225, 277–307, 326–31 *with MWF* Compl. ¶¶ 55 & n.38, 61–66, 76–84. A third group of plaintiffs also challenge the December 2017 and March 2018 lease sales in *Wildearth Guardians v. BLM* under NEPA. *See WEG* Compl. ¶¶ 50–81. The legal theories that both plaintiffs raise are also very similar. Both plaintiffs allege that BLM violated FLPMA in offering the lease sales or in approving IM 2018-026 because, they allege, neither the sales nor IM 2018-026 are in conformance with the sage-grouse RMP amendments approved in September of 2015. *Compare* Compl. ¶ 282, 327–28 *with MWF* Compl. ¶¶ 81–83, 88–89. All three groups of plaintiffs allege that BLM violated NEPA by failing to consider a range of reasonable alternatives to the sales, failing to consider the direct, indirect, and cumulative impacts of the sales, and failing to prepare an Environmental Impact Statement. *Compare* Compl. ¶¶ 304–305 *with MWF Compl.* ¶¶ 92, 98, 102–04, 108–10 *and WEG Compl.* ¶¶ 64–81. Thus, not only do the facts and records overlap for these cases, but many of the same legal theories are being pressed as well, leading to a risk of conflicting court rulings and judgments if motions to transfer are not granted.[8]

In these circumstances, the interests of justice strongly favor a single court hearing similar claims regarding the same lease sales to avoid the risk of conflicting judgments. *See*

---

[8] As mentioned above, Defendants will also file an analogous motion to sever and transfer in *Montana Wildlife Federation*. This means that we will seek to transfer claims in *Montana Wildlife Federation* relating to lease sales in Wyoming to the District of Wyoming, and challenges to policy memoranda in *Montana Wildlife Federation* to the District of Columbia, among other relief.

*Feller v. Brock*, 802 F.2d 722, 727-28 (4th Cir. 1986) ("Prudence requires that whenever possible, coordinate courts should avoid issuing conflicting orders."); *see also Church of Scientology v. U.S. Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979) (recognizing the need to "avoid the embarrassment of conflicting judgments"). This is because the imposition of conflicting orders requires the subject party "to choose between coordinate courts and to knowingly violate an outstanding court order," thus "forc[ing] the [subject party] to run a serious risk of contempt sanctions," creating "morale and credibility problems," and imposing a "hardship" on the subject party that "implicates basic principles of judicial obedience." *Feller*, 802 F.2d at 727 (citations omitted).  Transferring claims challenging each lease sale or IM to the same venue will promote judicial economy by permitting consolidation and as noted will avoid the risk of inconsistent judgments. As the Supreme Court has instructed, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy, and money that section 1404(a) was designed to prevent." *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960); *see also Chrysler Capital Corp.*, 663 F. Supp. at 484 ("[T]he Court finds that the interest of justice will be served by transferring this case . . . so that one court can resolve the entire controversy.").

Faced with similar circumstances, courts in this circuit have routinely granted motions to transfer so that cases which would qualify as related if filed in the same judicial district can be adjudicated by the same court. *See*, *e.g.*, *Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1214 (S.D. Cal. 2013) (granting motion to transfer based on the interest of justice to a court where similar actions were pending in order to conserve resources and avoid "the possibility of inconsistent judgments"); *FTC v. Watson Pharms.*, *Inc.*, 611 F. Supp. 2d 1081, 1089 (C.D. Cal. 2009) (granting motion to transfer to alleviate "the risk of conflicting judgments"); *Williams v.*

*Lincoln Nat'l Life Ins..*, 121 F. Supp. 3d 1025, 1037 (D. Or. 2015) (granting motion to transfer to conserve resources and avoid the potential for inconsistent judgments); *Callaway Golf Co. v. Corp. Trade Inc.*, No. 09-cv-384 L(POR), 2010 WL 743829, at *7-8 (S.D. Cal. Mar. 1, 2010) (same). We ask that this Court do the same.

#### 4.     Transfer Would Relieve Court Congestion in this District

The public interest in judicial economy also weighs heavily in favor of transfer. In an age of increasingly congested federal dockets, it makes little sense for multiple courts to hear challenges to the same lease sales. This is particularly so here, where the Districts of Montana and Wyoming are comparatively less congested, with 412 and 217 filings per judgeship, as opposed to the District of Idaho's 518. *See* Administrative Office of the U.S. Courts, *U.S. District Courts- Federal Court Management Statistics—Profiles*, http://www.uscourts.gov/file/24036/download, (Dec. 31, 2017).[9] Thus, transfer would not only alleviate congestion in this Court, but may lead to faster resolution of these claims in the transferee courts. *See Control ESI, Inc. v. Univ. of Denver*, 2012 WL 6608822, *2 (D. Ariz. Dec. 18, 2012) (transferring case to court with less congested docket in part because the "case can expect a speedier resolution" in the transferee court.).

#### 5.     Familiarity with the Governing Law and Public Policy of the Forum State are Neutral Factors

This Court's familiarity with governing laws is a neutral factor "when the issues involve[] federal law because courts follow the principle that all federal courts are "competent to decide federal issues correctly." *Defs. of Wildlife v. Salazar*, No. CV 12-1833 (ABJ), 2013 WL 12316872, at *4 (D.D.C. Apr. 11, 2013) (citing *Sierra Club v. Flowers*, 276 F. Supp. 2d at 70

---

[9] The District of Utah is about as congested as Idaho, with 525 filings per judgeship. *See id.*

n.6, *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175 (D.C. Cir. 1987))

(internal quotation marks omitted). Because this is an issue of federal law, any public policy of

the state of Idaho is also neutral.

### C.      The Convenience Factors are Neutral

The convenience factors considered by courts when determining whether to transfer a

case are neutral here. As this case is brought under the APA and will be decided on the basis of

an administrative record, the convenience factors are not particularly relevant. *See, e.g.,*

*Huffman*, 2011 WL 322661, at *5 (granting transfer motion and noting that the "time and

expense devoted to the discovery and trial processes . . . are neutral inasmuch as the judicial

inquiry in these cases will be based exclusively on the administrative record"); *Defs. of Wildlife*

*v. Jewel*, 74 F. Supp. 3d 77, 85 (D.D.C. 2014) (granting transfer motion because, inter alia,

"[t]his case will be decided on the basis of the administrative record with no witnesses likely to

be called"). However, should witnesses be called, such as in hearing a motion for a preliminary

injunction, transfer to each state where the lease sale decision-making process occurred and

where the parcels are located would facilitate the presentation of witness testimony.

### CONCLUSION

For the reasons stated above, the Court should sever and transfer Plaintiffs' claims to the

U.S. District Courts for the Districts of Montana, Utah, Wyoming, and the District of Columbia.

Severing and transferring the case in this way will allow this litigation to be managed in an

efficient manner and avoid conflicting rulings and judgments by the district courts.

Respectfully submitted this 29th day of May, 2018,

> BART M. DAVIS, Idaho State Bar No. 2696
> United States Attorney
> CHRISTINE G. ENGLAND, California State Bar No. 261501
> Assistant United States Attorney

District of Idaho
Washington Group Plaza IV
800 East Park Boulevard, Suite 600
Boise, Id 83712-7788
Telephone: (208) 334-1211
Facsimile:   (208) 334-1414
Email: Christine.England@usdoj.gov

JEFFREY H. WOOD
Acting Assistant Attorney General
*/s/ Rachel K. Roberts*
RACHEL K. ROBERTS, Washington State Bar No. 50303
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
7600 Sand Point Way NE
Seattle, WA 98115
Tel: (206) 526-6881; Fax: (206) 526-6665
E-mail: Rachel.roberts@usdoj.gov