Erik E. Petersen, WSB No. 7-5608
Michael M. Robinson WSB No. 6-2658
Senior Assistant Attorneys General
Wyoming Attorney General's Office
2320 Capitol Avenue
Cheyenne, WY  82002
(307) 777-6946 (phone)
(307) 777-3542 (fax)
erik.petersen@wyo.gov
mike.robinson@wyo.gov

Paul A. Turcke (ISB No. 4759)
MSBT Law, Chtd.
950 West Bannock Street, Suite 520
Boise, ID 83702
(208) 331-1800 (phone)
(208) 331-1202 (fax)
pat@msbtlaw.com

*Attorneys for the State of Wyoming*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, and CENTER FOR BIOLOGICAL DIVERSITY, | Case No. 1:18-cv-00187-REB |
| Plaintiffs, | |
| v. | |
| RYAN ZINKE, Secretary of Interior; DAVID BERNHARDT, Deputy Secretary of Interior; and UNITED STATES BUREAU OF LAND MANAGEMENT, an agency of the United States, | **STATE OF WYOMING'S MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE** |
| Defendants. | |

The State of Wyoming has moved for to intervene in the above-captioned case as a matter of right under Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, permissively under Federal Rule of Civil Procedure 24(b). Wyoming offers this memorandum in support of its motion.

## INTRODUCTION

Plaintiffs Western Watersheds Project and Center for Biological Diversity (collectively, the Interest Groups) challenge eight final Bureau of Land Management (BLM) oil and gas lease sales (Dkt. No. 1). The sales cover leases in Montana, Utah, and Wyoming. *Id*. at 44-59. The Interest Groups challenge four lease sales in Wyoming: February 2017 encompassing 283 parcels (*Id*. at 44-46); June of 2017 for 28 parcels (*Id*. at 48-50); September 2017 covering 141[1] parcels (*Id*. at 50-52); and March 2018 encompassing 170 parcels (*Id*. at 57-59).

In addition, the Interest Groups challenge seven oil and gas lease sales that are "pending actions," which presumably, they intend to amend their Complaint to include when the sales become final agency actions. *Id*. at 59-70. These sales cover leases in Idaho, Nevada, Utah, and Wyoming. *Id*. With respect to Wyoming, the Interest Groups list three pending lease sales: December 2017 covering 45 parcels (*Id*. at 59); a proposal by a private oil and gas developer to drill up to 3,500 wells over a ten year period (*Id*. at 62-64); and a draft environmental impact statement for approximately 5,000 new wells over a ten-year period in Converse County (*Id*. at 68-70). The Interest Groups admit that the latter two projects may not become final actions until sometime in 2019. *Id*. at 64, 70.

The Interest Groups ask this Court to vacate all of the final oil and gas lease sales because they allegedly conflict with conservation plans adopted in 2015 to protect the greater sage-grouse and its habitat (2015 Plans). *Id*. at 70-72. Further, the Interest Groups claim that the oil and gas lease sales should be set aside because BLM failed to follow the best available science, provide an

---

[1] The Complaint states that the September 2017 sale was "for 11 industry-nominated parcels[.]" (Dkt. No. 1 at 50, ¶ 177). This may be a typo as there were 141 parcels offered at that sale (Compare ¶ 177 with ¶ 180 which mentions 136 parcels). *See* September 21, 2017, lease results at: https://eplanning.blm.gov/epl-front-office/projects/nepa/65707/121307/148154/SALE_RESULTS_3rd_Qtr_2017.v3.pdf

updated or supplemental environmental impact statement, and adopted a guidance document, BLM Instruction Memorandum 2018-026 (2018 IM) without providing for proper public comment, notice, and rulemaking before implementing it. *Id.* at 77-81. The Interest Groups also allege that the 2018 IM effectively amended the 2015 Plans without providing for the appropriate public notice and comment. *Id.* at 81-82.

Wyoming seeks to intervene in this case in order to protect its interests in the 2015 Plans and preventing the interruption of the leasing and development of oil and gas resources located in the state. Because Wyoming meets the requirements for intervention under Federal Rule of Civil Procedure 24, Wyoming respectfully requests that the Court grant the motion to intervene.

## BACKGROUND

The greater sage-grouse is a sagebrush-dependent bird species native to western areas of the United States. *See* U.S. Fish and Wildlife Service, *The Greater Sage-grouse: Facts, Figures and Discussion* (July 15, 2015) at 1.[2] Approximately 37% of the total population of the greater sage-grouse resides in Wyoming, more than twice as much as any other state. *Id.* Wyoming and the federal government have designated approximately 8.6 million acres of greater-sage grouse habitat as priority areas for conservation. *Id.* at 2. The federal government owns or controls about 56% of those acres. *Id.*

For many years, Wyoming has undertaken efforts to maintain and improve greater sage-grouse habitat while striking an appropriate balance between protecting the bird and supporting the state's economy. *See* Wyoming Executive Orders, *Greater Sage-Grouse Core Area Protection*:

---

[2]     Available     at:     https://www.fws.gov/greatersagegrouse/factsheets/GreaterSageGrouse Canon_FINAL.pdf

2008-2 (August 1, 2008); 2010-4 (August 18, 2010); 2011-5 (June 2, 2011); 2013-3 (April 5, 2013); and 2015-4 (July 29, 2015).[3] Wyoming's greater sage-grouse conservation strategy focused on creating, protecting, and managing greater sage-grouse core population areas. Wyoming Executive Order 2015-4 at Attachment A, page 3. Under this strategy, greater sage-grouse management was a priority in those geographic areas in Wyoming identified as containing core populations of the greater sage-grouse. *Id.*

In furtherance of the State's goal to properly balance conservation of the greater sage-grouse with its economic needs, Wyoming worked closely with other western states, private landowners, and the federal government in a historic multi-party conservation effort to protect the greater sage-grouse population and habitat. *See* Department of Interior, Office of the Secretary, *Historic Conservation Campaign Protects Greater Sage-Grouse* (Sept. 9, 2015).[4] The upshot was BLM and United States Forest Service approval in September 2015 of amended land use plans for federal lands across the range of the greater sage-grouse, including the Wyoming Sage-Grouse 9 Plan Land Use Revision, the Lander Resource Management Plan, the Bighorn Basin Resource Management Plan, the Buffalo Resource Management Plan, and the Medicine Bow National Forest Plan. *See* Notices of Availability for the Various Records of Decision, 80 Fed. Reg. 57639, 80 Fed. Reg. 57633 (Sept. 24, 2015); 76 Fed. Reg. 55939, 80 Fed. Reg. 57332, and 80 Fed. Reg. 57333 (Sept. 23, 2015). The Wyoming Plans provide for "consistent [greater sage-grouse] habitat across the range . . . and [focus] on a landscape-scale approach to conserving [greater sage-grouse]

---

[3] The Executive Order currently in effect, 2015-4, is available at: https://drive.google.com/file/d/0B6oHXm9jOVzPejJzeU80c296RFk/view

[4] Available at: https://www.fws.gov/news/ShowNews.cfm?ID=F5B7455D-0824-997C-47667F8ABBFFBA86

MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE – Page 4

habitat" in alignment with Wyoming's core population strategy for managing and conserving the greater sage-grouse. *See* Wyoming Bureau of Land Management, *Approved Resource Management Plan for Greater Sage-Grouse* (Sept. 15, 2015).[5]

The Interest Groups basic argument is that the BLM's oil and gas lease sales were contrary to the 2015 Plans. (Dkt. No. 1 at 71-72). In addition, they contend the BLM failed to follow the best available science, provide for an updated or supplemental environmental impact statement, and adopted the 2018 IM without providing for proper public comment, notice, and rulemaking before implementation. (*Id*. at 72-81). The Interest Groups misinterpret the 2015 Plans. If this suit is successful, it is likely to destroy the careful balance between core area conservation and economic development crafted by Wyoming in cooperation with the federal government.

## ARGUMENT

### I.    The State of Wyoming is entitled to intervene as a matter of right.

Federal Rule of Civil Procedure 24(a)(2) governs intervention as a matter of right. An applicant seeking to intervene as of right must show the following: (1) the motion is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest. *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc) (quoting *Sierra Club v. EPA,* 995 F.2d 1478, 1481 (9th Cir. 1993)). In evaluating these factors, courts are required to take all well-pleaded, non-conclusory allegations in the motion to

---

[5]    Available at: https://eplanning.blm.gov/epl-front-office/projects/lup/9153/63189/68431/002_Wyoming_ARMPA_Main-Body.pdf

intervene as true absent "sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

The United States Court of Appeals for the Ninth Circuit normally interprets Federal Rule of Civil Procedure 24(a)(2) "broadly in favor of proposed intervenors" because "'[a] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to courts.'" *Wilderness Soc'y*, 630 F.3d at 1179 (quoting *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 397–98 (9th Cir. 2002)). This Court is guided by "practical and equitable" considerations. *United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010); *see also Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (construing "Rule 24(a) liberally in favor of potential intervenors").

Wyoming satisfies all four requirements for intervention as of right: (1) the State's motion is timely because the case is in its early stages and allowing Wyoming to join the action will not cause prejudice or delay; (2) Wyoming has significant protectable interests in this case; (3) disposition of this case in the Interest Groups' favor would impair Wyoming's interests; and (4) the federal defendants cannot adequately represent Wyoming's unique, sovereign interests.

a. **Wyoming's motion is timely.**

Courts use three factors to assess the timeliness of a motion to intervene: (1) the stage of the proceeding when intervention is sought; (2) the prejudice to the parties if intervention is permitted; and (3) the reasons for and length of any delay. *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). Of the three factors, prejudice is the most important for determining timeliness. *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984).

In this action, Wyoming satisfies the three timeliness factors for intervention as of right. First, this case is in its earliest stages. The federal defendants have yet to file a responsive pleading,

they not filed the administrative record on which this case will be decided, and the Court has not

set a briefing schedule. Second, Wyoming's participation will not prejudice any of the other

parties, because Wyoming's participation will not delay resolution of the case. Finally, Wyoming

did not unreasonably delay filing this motion. Wyoming became aware of the suit shortly after

filing and has moved expeditiously to intervene. Accordingly, Wyoming's motion is timely.

### b.  Wyoming has a significant protectable interest.

Wyoming has a "significant protectable interest relating to the property or transaction that

is the subject of the action[.]" *Wilderness Soc'y*, 630 F.3d at 1177. "Rule 24(a)(2) does not require

a specific legal or equitable interest[.]" *Id*. at 1179 (citing *County of Fresno v. Andrus*, 622 F.2d

436, 438 (9th Cir. 1980)). Rather, the interest test is "primarily a practical guide to disposing of

lawsuits by involving as many apparently concerned persons as is compatible with efficiency and

due process." *Id*. (quotation omitted). "[A] prospective intervenor's asserted interest need not be

protected by the statute under which the litigation is brought to qualify as 'significantly

protectable' under Rule 24(a)(2)." *Id*. (citing *Sierra Club*, 995 F.2d at 1481, 1484). "[I]t is

generally enough that the interest is protectable under some law, and that there is a relationship

between the legally protected interest and the claims at issue." *Id*. (quotation omitted).

Indeed, the interest of a proposed intervenor may be impaired simply because "a decision

in the plaintiff's favor would return the issue to the administrative decision-making process."

*WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1199 (10th Cir. 2010). And although

proposed intervenors could vindicate their rights in that administrative decision-making process,

"it is not enough to deny intervention under 24(a)(2) because applicants may vindicate their

interests in some later, albeit more burdensome, litigation." *Natural Res. Defense Council v.*

*Costle*, 561 F.2d 904, 910 (D.C. Cir. 2013). "[E]specially in administrative law cases, questions of 'convenience' are clearly relevant." *Id.*

Wyoming has significant, legally-protectable interests at stake in this litigation. For at least a decade, Wyoming has undertaken substantial conservation efforts to protect the greater sage-grouse and to prevent its listing as an endangered species. *See* Wyoming Executive Order 2008-2. In addition to the years of work put into developing the 2015 Plans, Wyoming has, since 2006, allocated over $50 million to implement the core population areas conservation strategy, as well as other conservation efforts aimed towards protecting the greater sage-grouse. Temple Stoellinger and David Taylor, *Report on the Economic Impact to Wyoming's Economy from a Potential Listing of the Sage* Grouse, 17 Wyo. L. Rev. 80, 91-92 (2017). "The state has also approved funding for over 70 conservation easements totaling $100 million in long-term sage-grouse conservation efforts." *Id.* at 92. In short, Wyoming has expended significant resources in time, money, and the dedication of its citizens and lawmakers to ensure successful implementation of the conservation strategy underlying the 2015 Plans.

Furthermore, Wyoming has significant fiscal resources at stake in the appropriate implementation of the conservation and development balance established by the 2015 Plans. Taxes from oil and natural gas production on federal lands generates billions of dollars in revenues for Wyoming. Affidavit of Daniel W. Noble (filed contemporaneously herewith) at ¶ 9. During fiscal year 2016 alone, oil and gas production on federal lands yielded $356,526,226 to Wyoming in revenues from severance and ad valorem taxes. *Id.* at ¶¶ 7-8). Wyoming uses these revenues to fund state programs, cities, counties, public schools and colleges, and water and highway infrastructure projects. Wyo. Stat. Ann. §§ 39-13-111, 39-14-801; *Id.* at ¶ 6.

The tax revenues Wyoming obtains as a result of oil and natural gas development on federal land, along with the State's investment in the conservation of the greater sage-grouse and its habitat, constitute significant, legally-protectable interests that are at stake in this litigation. Accordingly, Wyoming meets this requirement for intervention.

### c.  The Interest Groups' challenge threatens to impair Wyoming's interests.

"[A] prospective intervenor 'has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation.'" *Wilderness Soc'y*, 630 F.3d at 1179 (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)). To satisfy the "practical impairment" requirement, the applicant need only show that the disposition of the action **may** impair its protectable interest. *City of Los Angeles*, 288 F.3d at 401. "[T]he interest of a prospective defendant-intervenor may be impaired where a decision in the plaintiff's favor would return the issue to the administrative decision-making process, notwithstanding the prospective intervenor's ability to participate in formulating any revised rule or plan." *WildEarth Guardians*, 604 F.3d at 1199.

The relief the Interest Groups seek may compromise Wyoming's ability to maintain a balance between conservation of the greater sage-grouse and the economic needs of its citizens. The State of Wyoming has a vested interest in the implementation of the 2015 Plans. In addition, programs dependent on taxes from oil and gas development on federal lands will suffer from a loss of funds. The loss of those governmental revenues "constitutes a concrete and imminent injury" that would be "fairly traceable" to the conservation organizations' success in this litigation. *Fund for Animals v. Norton*, 322 F.3d 728, 733 (D.C. Cir. 2003).

If, on the other hand, this Court upholds the Secretary's decision, Wyoming will not be exposed to these risks of injury. Oil and natural gas development will continue on federal lands,

as they have been for years, and it will continue to generate revenues on which Wyoming relies to provide public services. In turn, Wyoming's long-term investment in the conservation of the greater sage-grouse and its habitat will be confirmed. Because the Interest Groups' success in this action would concretely harm the State of Wyoming, and because that harm is avoided if the federal action is upheld, Wyoming has met the "impairment" requirement for intervention.

### d. The federal defendants cannot adequately represent Wyoming's interests.

When examining the final criterion for intervention as of right, adequacy of representation, a court considers the following: (1) whether a present party will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the intervenor would offer any necessary elements to the proceedings that other parties would neglect. *City of Los Angeles*, 288 F. 3d at 398 (citation omitted). "However, the burden of showing inadequacy is 'minimal,' and the applicant need only show that representation of its interests by existing parties 'may be' inadequate." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822–23 (citations omitted). Wyoming meets this minimal burden.

The federal defendants cannot adequately represent Wyoming's sovereign interests. While the federal defendants have a duty to represent the interests of the general public across the United States, states have a variety of differing interests. The federal government has no duty to represent the personal or economic interests of a single group or state. *See Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995) (finding that the federal government is "required to represent a broader view than the more narrow, parochial interests" of a proposed state or county intervenor), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d at 1173, 1177–78, 1180. Accordingly, the federal defendants cannot adequately represent Wyoming's interests.

MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE – Page 10

Indeed, courts have found that federal agencies cannot adequately represent other interests in lawsuits challenging federal decision-making. *See*, *e.g. Nat'l Farm Lines v. ICC*, 564 F.2d 381, 384 (10th Cir. 1977) (noting that it is impossible for the government to adequately protect both the public interest and the private interests of the petitioners in intervention); *Sierra Club v. Espy*, 18 F.3d 1202, 1207-08 (5th Cir. 1994) (finding that the government did not adequately represent the interests of timber purchasers). Similarly, the federal government cannot adequately represent the narrower interests of non-federal governmental entities in environmental litigation challenging federal action. *See*, *e.g., Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1256 (11th Cir. 2002) (holding that federal defendant did not adequately represent state's interest in interstate waters because federal agency had no independent stake in how much water reached state seeking intervention). Moreover, "[i]nadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public." 3B Moore's Federal Practice, ¶ 24.07[4] at 24-78 (2d ed. 1995).

To be certain, Wyoming and the federal government have a basic common interest in seeing the oil and gas lease sales upheld. From this common ground, however, differences emerge. In attempting to protect its interests, the Bureau will defend the Secretary's decision. But in many respects, the agency can go no further. By contrast, Wyoming is uniquely capable of explaining to the Court how any potential ruling will affect its economy, which is heavily dependent on oil and natural gas production, the State's efforts at protecting the greater sage-grouse, and the interrelation between the two. In this regard, Wyoming's sovereign and economic interests are narrower and more specific than the interests of the federal government. Accordingly, Wyoming has met the requirements of this element for intervention.

**II.      In the alternative, the Court should grant Wyoming permission to intervene.**

In the event this Court does not grant intervention as a matter of right, the Court should permit Wyoming to intervene in this matter pursuant to Federal Rule of Civil Procedure 24(b)(1)(B), which provides: "On timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." If the applicant satisfies this requirement, "it is then discretionary with the court whether to allow intervention." *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d at 1173, 1177–78, 1180.

As explained above, Wyoming's motion is timely and will not delay these proceedings. Under the second factor, an applicant for permissive intervention satisfies the "common question" requirement where it will assert defenses that squarely respond to the claims asserted by the Interest Groups in their complaint. *Kootenai Tribe of Idaho*, 313 F.3d at 1111. Here, Wyoming contests the Interest Groups' claims that the BLM failed to comply with the 2015 Plans when holding the oil and gas lease sales on lands in Wyoming. This direct response to the Interest Groups' claims satisfies the "common question" requirement for permissive intervention. *Kootenai Tribe of Idaho*, 313 F.3d at 1110 (finding intervenor defendants alleged common questions of law and fact by raising defenses "directly responsive" to plaintiff's claims). Accordingly, because Wyoming's timely participation will address the issues of law and fact in this case, it meets the criteria for permissive intervention. Wyoming requests permission to intervene in order to represent its important and unique interests in this action.

**CONCLUSION**

The Interest Groups ask this Court to set aside four, and potentially seven, oil and gas lease sales in Wyoming. Wyoming has a significant interest in ensuring the validity of the lease sales.

The State will suffer significant harm if the Interest Groups prevail. Accordingly, this Court should permit Wyoming to intervene in this action.

Dated this 1st day of June, 2018.

THE STATE OF WYOMING

/s/ Paul A. Turcke
Paul A. Turcke (ISB No. 4759)
MSBT Law, Chtd.
950 West Bannock Street, Suite 520
Boise, ID 83702
(208) 331-1800 (phone)
(208) 331-1202 (fax)
pat@msbtlaw.com

Erik E. Petersen, WSB No. 7-5608
Michael M. Robinson WSB No. 6-2658
Senior Assistant Attorneys General
Wyoming Attorney General's Office
2320 Capitol Avenue
Cheyenne, WY  82002
(307) 777-6946 (phone)
(307) 777-3542 (fax)
erik.petersen@wyo.gov
mike.robinson@wyo.gov

*Attorneys for the State of Wyoming*
(*pro hac vice* admission pending)

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2018, I caused the foregoing to be electronically filed with

the Court using the CM/ECF system, which caused the following parties or counsel to be served

by electronic means, as more fully reflected on the Notice of Electronic Filing:

Laurence J. Lucas
llucas@advocateswest.org

Talasi B. Brooks
tbrooks@advocateswest.org

Todd C. Tucci
ttucci@advocateswest.org

Rachel K. Roberts
Rachel.roberts@usdoj.gov


_____/s/ Paul A. Turcke_____
Paul A. Turcke