Paul A. Turcke (ISB No. 4759)
MSBT Law, Chtd.
950 West Bannock Street, Suite 520
Boise, ID 83702
(208) 331-1800 (phone)
(208) 331-1202 (fax)
pat@msbtlaw.com

Erik E. Petersen, WSB No. 7-5608 (admitted *pro hac vice*)
Michael M. Robinson WSB No. 6-2658 (admitted *pro hac vice*)
Senior Assistant Attorneys General
Wyoming Attorney General's Office
2320 Capitol Avenue
Cheyenne, WY 82002
(307) 777-6946 (phone)
(307) 777-3542 (fax)
erik.petersen@wyo.gov
mike.robinson@wyo.gov

*Attorneys for the State of Wyoming*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, and CENTER FOR BIOLOGICAL DIVERSITY,<br><br>Plaintiffs,<br><br>v.<br><br>RYAN ZINKE, Secretary of Interior; DAVID BERNHARDT, Deputy Secretary of Interior; and UNITED STATES BUREAU OF LAND MANAGEMENT, an agency of the United States,<br><br>Defendants. | Case No. 1:18-cv-00187-REB<br><br><br>**[PROPOSED] STATE OF WYOMING'S RESPONSE TO THE MOTION TO SEVER AND TRANSFER [Dkt. 12]** |

# INTRODUCTION[1]

Plaintiffs Western Watersheds Project and Center for Biological Diversity (Interest Groups) seek judicial review of eight Bureau of Land Management (BLM) oil and gas lease sales. (Dkt. No. 1). The Interest groups also challenge two Department of the Interior Instruction Memoranda. (*Id*.). Of the eight oil and gas lease sales at issue, four of the sales covering 622 parcels of BLM-owned or controlled land took place in Wyoming. (*Id*. at ¶¶ 150-57, 167-76, 177-85,[2] 219-25). While the Interest Groups challenge other final oil and gas lease sales in Montana and Utah, they do not challenge any that took place in Idaho. In other words, the Interest Groups filed this litigation in this venue solely for the purpose of finding a favorable decision maker result regardless of judicial economy and at the expense of the tangible sovereign interests of the states where the lease sales occurred.

The Interest Groups ask this Court to vacate all of the final oil and gas lease sales because they allegedly conflict with conservation plans adopted in 2015 to protect the greater sage-grouse and its habitat (2015 Plans). (*Id*. at ¶¶ 113-35, 276-84). The Interest Groups also allege that the oil and gas lease sales should be set aside because the BLM failed to apply the best available science (*Id*. at ¶¶ 285-93), provide an updated or supplemental environmental impact statement (*Id*. at ¶¶

---

[1] The State of Wyoming filed a motion to intervene in this case on June 1, 2018. (Dkt. No. 13). The federal defendants took no position on the motion (*Id*. at 2), while the Interest Groups do not oppose the motion. (Dkt. No. 19 at 1). Because Wyoming's motion for intervention is still pending, the State files this *proposed* response in order to provide this Court with its views on the federal Defendants' Motion to Sever and Transfer.

[2] As noted in Wyoming's motion for intervention, the Complaint says this sale was "for 11 industry-nominated parcels[.]" The sale was actually for 141 parcels, so the number in the Complaint is likely a typographical error.

[PROPOSED] STATE OF WYOMING'S RESPONSE
TO THE MOTION TO SEVER AND TRANSFER [Dkt. 12] – PAGE 2

294-307), and relied on two allegedly invalid Department of the Interior Instruction Memoranda (*Id.* at ¶¶ 308-31).

The Interest Groups' claims implicate Wyoming's sovereign interests in the management of wildlife species and the development of natural resources within its borders. Accordingly, Wyoming offers this response in support of the federal defendants' Motion to Sever and Transfer. In the interests of judicial economy, Wyoming adopts and incorporates the background and legal argument set forth in the federal defendants' motion. (Dkt. 12-1). Wyoming also refers this Court to the background set forth in its Memorandum in Support of Motion to Intervene. (Dkt. 13-1 at 3-5). This memorandum shows that Wyoming's sovereign interests provide additional grounds for granting the motion in the interests of justice.

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(b). The transfer inquiry is a two-step process. Initially, the court must determine whether the action "might have been brought" in the transferee court,[3] and the court must make an "individualized, case-by-case consideration of convenience and fairness." *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1098 (N.D. Cal. 2006) (citing *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) and *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000)). The second step requires the court to consider three factors: (1) convenience of the parties; (2) convenience of the witnesses;

---

[3] There is no question that this action, as it concerns oil and gas sales that took place in Wyoming and cover land within the State, could have been brought in the District of Wyoming. *See* 28 U.S.C. § 1391(e).

and (3) interests of justice. *Meijer, Inc. v. Abbott Labs*, 544 F. Supp. 2d 995, 999 (N.D. Cal. 2008). In evaluating the "interests of justice" factor, the Ninth Circuit looks to the following considerations:

> (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in each forum.

*Papasan v. Dometic Corp.*, 2018 WL 1367341, at *2 (N.D. Cal. March 16, 2018). "The list is non-exclusive, and courts may consider other factors, or only those factors which are pertinent to the case at hand." *Papasan*, 2018 WL 1367341, at *2 (quoting *Martin v. Glob. Tel*Link Corp.*, 2015 WL 2124379, at *2 (N.D. Cal. May 6, 2015)).

## ARGUMENT

The sovereign interests of Wyoming in the management of wildlife and in the development of natural resources within its borders favors granting the federal defendants' Motion to Sever and Transfer. This is particularly true in this case where the Interest Groups are not challenging any oil and gas lease sales in Idaho. (Dkt. No. 1 at ¶¶ 150-225). The only lease sale in Idaho identified by the Interest Groups in their Complaint is one part of a sale for parcels in Utah and Idaho scheduled for June 2018. (*Id*. at ¶¶ 230-39). However, since the filing of the Complaint, the BLM withdrew the single parcel for lease in Idaho from the June 2018 lease sale. (Dkt. No. 12-1 at 14 and Ex. 4). Even Plaintiffs concede that this sale is a pending, non-final agency action that is not appropriate for judicial review at this time. (*Id*. at ¶ 284). The interest of Idaho in these lease sales has gone from tenuous to non-existent. Accordingly, the interests of Wyoming, as set forth below, carry considerable weight in favor granting the motion to transfer venue to the District of Wyoming.

The Interest Groups' challenge to the oil and gas lease sales rests largely on their contention that they allegedly conflict with amended conservation plans adopted in 2015 to protect the greater sage-grouse and its habitat. (Dkt. No. 1 at ¶¶ 113-42, 276-84). The Interest Groups do not challenge the 2015 Plans in this proceeding,[4] but it is clear they intend to rely on their interpretation of those plans to support their position on the validity of the oil and gas lease sales. Wyoming's interpretation of the 2015 Plans will almost certainly differ from than that proffered by the Interest Groups. Consequently, Wyoming's interest in the management of wildlife within its borders is a critical factor to weigh in determining whether the interests of justice favor venue transfer.

**I. Local Interests**

This brief adopts and incorporates the local interests identified by the federal defendants favoring severance and transfer of the individual oil and gas lease sales to the states in which they took place. Specifically, the decision-making process for lease sales took place in the respective BLM office in each state (Dkt. No. 12-1 at 11), the real property interests at issue – the parcels subject to the lease sale – are located in the states (*Id*. at 12), the alleged negative impacts – degradation and fragmentation of sage-grouse habitat – the of the lease sales would be felt in the states where the lease parcels are situated (*Id*. at 13), and "substantial impacts on the local economy" through lost royalties and taxes would be specific to the state where the leases are located (*Id*. at 14). In contrast, Idaho has no property or economic interests at stake and will suffer no impacts, environmental or financial, if the Interest Groups prevail on their claims. Consequently, for the reasons set forth in the federal defendants' Memorandum in Support of its

---

[4] While not contesting the 2015 Plans in this proceeding, the Interest Groups challenge alleged "inadequacies" in them in a separate proceeding in this Court. *See W. Watersheds Project, et al. v. Schneider, et al.*, 1:16-cv-083-BLW (D. Idaho). (Dkt. No. 1 at ¶ 60).

[PROPOSED] STATE OF WYOMING'S RESPONSE
TO THE MOTION TO SEVER AND TRANSFER [Dkt. 12] – PAGE 5

Motion to Sever and Transfer, the Court should grant the motion and transfer the Interest Groups' claims relating to sales of oil and gas leases in Wyoming to the District Court in the District of Wyoming.

## II.     Sage-Grouse Conservation

Approximately thirty-seven percent of all greater sage-grouse in the United States are located in Wyoming, more than twice as many as any other state. *See* U.S. Fish and Wildlife Service, *The Greater Sage-grouse: Facts, Figures and Discussion* at 1 (July 15, 2015).[5] Wyoming and the federal government have designated roughly 8.6 million acres of greater sage-grouse habitat as priority areas for conservation of which the federal government controls about 56 percent. *Id*. at 2.

Wyoming's greater sage-grouse conservation strategy focuses on creating, protecting, and managing the species' core population areas. *See* Wyoming Executive Order, *Greater Sage-Grouse Core Area Protection*, 2015-4 at Attachment A, page 3 (July 29, 2015).[6] Under this strategy, greater sage-grouse management is a priority in those geographic areas in Wyoming identified as containing core populations of greater sage-grouse. *Id*. Wyoming worked closely with other western states, private landowners, and the federal government to develop a historic multi-party conservation effort to protect the greater sage-grouse population and habitat. *See* Department of Interior, Office of the Secretary, *Historic Conservation Campaign Protects Greater Sage-*

---

[5] Available at: https://www.fws.gov/greatersagegrouse/factsheets/GreaterSageGrouseCanon_FINAL.pdf .

[6] Available at: https://drive.google.com/file/d/0B6oHXm9jOVzPejJzeU80c296RFk/view .

[PROPOSED] STATE OF WYOMING'S RESPONSE
TO THE MOTION TO SEVER AND TRANSFER [Dkt. 12] – PAGE 6

*Grouse* (Sept. 9, 2015).[7] The 2015 Plans covering Wyoming provide for "consistent [greater sage-grouse] habitat across the range . . . and [focus] on a landscape-scale approach to conserving [greater sage-grouse] habitat" in alignment with Wyoming's core population strategy. *See* Wyoming Bureau of Land Management, *Approved Resource Management Plan for Greater Sage-Grouse* (Sept. 15, 2015).[8]

As part of its sovereign authority, a state has a significant interest in the management of wildlife within its borders. "Unquestionably the States have broad trustee and police powers over wild animals within their jurisdictions." *Kleppe v. New Mexico*, 426 U.S. 529, 545 (1976). Wyoming's interest over wildlife within its borders is substantial. *See Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S. 371, 390 (1978). Wyoming has expressed its sovereign interest in the greater-sage grouse through its substantial conservation efforts to protect the species and its habitat. In addition to the years of work and resources put into developing the 2015 Plans, Wyoming has, since 2006, allocated over $50 million to implement the core population areas conservation strategy, as well as other conservation efforts aimed towards protecting the greater sage-grouse. *See* Temple Stoellinger and David Taylor, *Report on the Economic Impact to Wyoming's Economy from a Potential Listing of the Sage Grouse*, 17 Wyo. L. Rev. 80, 91-92 (2017). "The state has also approved funding for over 70 conservation easements totaling $100 million in long-term sage-grouse conservation efforts." *Id.* at 92. Wyoming has expended

---

[7] Available at: https://www.fws.gov/news/ShowNews.cfm?ID=F5B7455D-0824-997C-47667F8ABBFFBA86 .

[8] Available at: https://eplanning.blm.gov/epl-front-office/projects/lup/9153/63189/68431/002_Wyoming_ARMPA_Main-Body.pdf .

[PROPOSED] STATE OF WYOMING'S RESPONSE
TO THE MOTION TO SEVER AND TRANSFER [Dkt. 12] – PAGE 7

substantial resources in time, money, and the dedication of its citizens and lawmakers to ensure successful implementation of the conservation strategy underlying the 2015 Plans.

## III.     Fiscal Interest

In addition, Wyoming has substantial financial resources at stake in this matter. In fiscal year 2016, there were 13,598 oil gas leases on 8,974,158 acres of federally-owned or controlled land in Wyoming. *See* United States Department of the Interior, Bureau of Land Management, *Oil and Gas Statistics* (2016).[9] Of those, 7,498 were producing leases on 4,020,073 acres. *Id*. In 2016, taxes from that oil and gas lease production generated $356,526,226 for Wyoming in revenues. (Dkt. No. 13-1 at 8). Wyoming uses these revenues to fund state programs, cities, counties, public schools and colleges, and water and highway infrastructure projects. *Id*.

All of this activity occurs in Wyoming. The development of the 2015 Plans for the management and conservation of the sage-grouse occurred in Wyoming and was accomplished through the dedicated work of this State's citizens, scientists, policymakers and governmental agencies. The oil and gas leases are on federally-owned or controlled land within Wyoming. The revenues generated from those leases support critical programs benefiting Wyoming residents. Wyoming has a significant interest in the proper interpretation and application of the 2015 Plans and the challenged oil and gas leases. The State of Idaho has no commensurate interest. Consequently, the interests of justice favor severing the Wyoming oil and gas lease claims and transferring them to the District Court for the District of Wyoming.

---

[9]   Available at: https://www.blm.gov/programs/energy-and-minerals/oil-and-gas/oil-and-gas-statistics (downloadable Excel files).

[PROPOSED] STATE OF WYOMING'S RESPONSE
TO THE MOTION TO SEVER AND TRANSFER [Dkt. 12] – PAGE 8

## CONCLUSION

The interests of justice favor severance of the claims challenging the oil and gas lease sales in Wyoming and their transfer to the District of Wyoming. The Interest Groups brought this challenge in the District of Idaho even though all of the challenged final agency actions took place in Wyoming, Montana, and Utah. The complete absence of any interest of the forum state in the outcome of this litigation suggests the Interest Groups have no concern regarding the convenience of the parties, judicial efficiency, or the interests of justice. Rather, the Interest Groups seek what they perceive to be a favorable venue for their cause. However, since that venue has no interest whatsoever in this litigation, this Court should grant the federal defendants' Motion to Sever and Transfer.

Dated this 19th day of June, 2018.

THE STATE OF WYOMING

/s/ *Paul A. Turcke*
Paul A. Turcke (ISB No. 4759)
MSBT Law, Chtd.
950 West Bannock Street, Suite 520
Boise, ID 83702
(208) 331-1800 (phone)
(208) 331-1202 (fax)
pat@msbtlaw.com

Erik E. Petersen (admitted *pro hac vice*)
Michael M. Robinson (admitted *pro hac vice*)
Senior Assistant Attorneys General
Wyoming Attorney General's Office
2320 Capitol Avenue
Cheyenne, WY  82002
(307) 777-6946 (phone)
(307) 777-3542 (fax)
erik.petersen@wyo.gov
mike.robinson@wyo.gov

*Attorneys for the State of Wyoming*

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2018, I caused the foregoing to be electronically filed with the Court using the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Laurence J. Lucas<br>llucas@advocateswest.org | John Shaughnessy Most<br>john.most@usdoj.gov |
| Talasi B. Brooks<br>tbrooks@advocateswest.org | Christine England<br>Christine.england@usdoj.gov |
| Todd C. Tucci<br>ttucci@advocateswest.org | Bret A. Sumner<br>bsumner@bwenergylaw.com |

      /s/ *Paul A. Turcke*
      Paul A. Turcke