BART M. DAVIS, Idaho Bar No. 2696
United States Attorney

CHRISTINE G. ENGLAND, California Bar No. 261501
Assistant United States Attorney
District of Idaho
Washington Group Plaza IV
800 East Park Boulevard, Suite 600
Boise, Id 83712-7788
Tel: (208) 334-1211; Fax: (208) 334-1414
Email: Christine.England@usdoj.gov

JEFFREY H. WOOD
Acting Assistant Attorney General

JOHN S. MOST, Virginia Bar No. 27176
LUTHER L. HAJEK, Colorado Bar No. 44303
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044
Tel: (206) 724-7386; Fax: (206) 526-6665
E-mail: John.Most@usdoj.gov

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, *et al.*,<br>　　　　Plaintiffs,<br><br>　　vs.<br><br>RYAN K. ZINKE, Secretary of the Interior, *et al.*,<br>　　　　Defendants. | Case No. 1:18-cv-00187-REB<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO SEVER AND TRANSFER [ECF No. 12]** |

# INTRODUCTION

Plaintiffs Western Watersheds Project and the Center for Biological Diversity's (collectively, "Plaintiffs") response to Defendants' motion to transfer concedes, as it must, that the Plaintiffs are challenging actions that occurred entirely outside of this district, several of which were challenged in a separate lawsuit in the District of Montana on the very same day that Plaintiffs filed suit. While the plaintiffs in each of those cases are different, litigating separate cases challenging the same government actions and involving essentially the same legal claims would be a waste of judicial resources. Plaintiffs also cannot justify proceeding in this district when the actions challenged all occurred in, or relate to, actions or land in other districts. They argue that the local interest should be of lesser consideration in this case because their suit challenges common legal violations across multiple lease sales. But they ignore that any court decision regarding the particular lease sales will have the greatest impact, both environmental and economic, on the communities in the districts where the leases are located. The interests of the Plaintiffs do not override those interests.

Plaintiffs' primary argument appears to be that a court in this district has accepted this sort of pleading from Plaintiff Western Watersheds Project before and therefore should do so again. *See* Pls' Br. Opposing Mot. to Sever/Transfer ("Pls' Br.") at 2 (ECF No. 25) (citing *W. Watersheds Project v. Salazar*, Civ. No. 08-516-E-BLW, 2009 WL 1299626 (D. Idaho May 7, 2009); *W. Watersheds Project v. Schneider*, No. 1:16-cv-83-BLW, 2017 WL 874568 (D. Idaho Mar. 3, 2017). Those cases are distinguishable, however, because at least some of the challenged final actions related to lands in Idaho. *See W. Watersheds Project*, 2009 WL 1299626, at *1. Further, both cases involved resource management plans ("RMPs"), general plans that affect large areas for which the area of local interest is not easily defined. *See W. Watersheds Project*,

Defendants' Reply in Support of Motion to Sever and Transfer                                                                                                        1

2009 WL 1299626, at *3, *W. Watersheds Project*, 2017 WL 874568, at *3-4. This case, in contrast, involves oil and gas leases, which are much more discrete actions and are confined to particular geographic areas. In other cases, which Plaintiffs ignore, courts in this district have transferred cases involving similar discrete actions to courts in the geographic region where the authorized actions would occur. *See W. Watersheds Project v. Salazar,* Civ. No. 08-cv-435-E-BLW, 2010 WL 375003, at *3 (D. Idaho Jan. 25, 2010) (severing and transferring challenges to grazing permits regarding lands in Nevada to the District of Nevada); *W. Watersheds Project v. Schneider*, No. 1:13-cv-261-EJL, 2014 WL 12788740, at *6 (D. Idaho Mar. 13, 2014) (transferring a challenge to a watersheds restoration plan regarding lands in Nevada to the District of Nevada). Thus, in appropriate circumstances, courts in this district have transferred claims brought by Western Watersheds Project, and the Court should do so here.

Plaintiffs also argue that the Court should not sever and transfer claims involving specific leases because their claims involve alleged "common legal violations" regarding the "approval of oil and gas leases across the greater sage-grouse range." Pls' Br. at 2. But the fact that Plaintiffs allege similar violations as to several different lease sales does not mean that those claims need to be heard together in one lawsuit, particularly where another lawsuit involving some of the very same leases is pending elsewhere.

In sum, the interests in avoiding duplicative litigation and litigating claims in districts most affected by the litigation weigh heavily in favor of transfer.

## ARGUMENT

### I. A Court May Sever Claims To Promote Judicial Efficiency

The Court should first sever the claims against lease sales in different jurisdictions in order to transfer the separate claims to more appropriate venues. *See* Defs' Mem. in Supp. of

Defendants' Reply in Support of Motion to Sever and Transfer                                              2

Mot. to Sever and Transfer ("Def. Mem.") at 8-10 (ECF No. 12-1).  Plaintiffs counter that Rule 21 allows severance of parties, but not claims brought by the same party.  *See* Pls' Br. at 9-12.  They also argue that their claims cannot be severed because the claims are "broadly-framed."  *Id.* at 9.  Neither of these arguments has merit.

Despite the title of Rule 21—"Misjoinder and Nonjoinder of Parties"—the rule also addresses severance of claims.  *See* Fed. R. Civ. P. 21 ("The court may also sever any claim against a party.").  Courts have found that the rule "authorizes the severance of any claim, even without a finding of improper joinder, where there are sufficient reasons for ordering a severance."  *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968) (citing *Sporia v. Pa. Greyhound Lines*, 143 F.2d 105 (3d Cir. 1944)).  Severance is appropriate where there are "legal and factual differences" between the various claims.  *Delce v. Amtrak & Rescoe Holdings, Inc.*, 180 F.R.D. 316, 319 (E.D. Tex. 1998).  Further, "where claims are more properly tried in another forum, severance is the judicial tool of choice."  *Id.*  Therefore, there is no merit to the assertion that claims, as opposed to parties, may not be severed or that claims may not be severed for the purpose of transfer.

Indeed, in a prior case brought by Western Watersheds Project, a court in this district severed claims involving grazing permits in Nevada and transferred them to a district court in Nevada.  *See W. Watersheds Project v. Salazar*, 2010 WL 375003, at *2-3.  The court stated that it had "the authority to sever claims and order their transfer to another district where they could have been brought originally."  *Id.* at *2 (citing 15 Wright, Miller and Cooper, *Federal Practice & Procedure*, § 3845 at p. 64-65 (2007)).  The court noted that "Nevada has a substantial interest in resolving challenges to BLM actions within its borders."  *Id.*  The court also noted that the District of Idaho was especially congested relative to other courts and, after considering all

relevant factors, transferred the claims involving grazing permits in Nevada to district court in Nevada. *Id.* at *3. The same result should apply here to the claims challenging leases issued by BLM field offices outside of Idaho and the instruction memoranda ("IM") drafted by officials in Washington, D.C.

Plaintiffs attempt to avoid this result by arguing that their claims are "overarching legal claims" and are "broadly-framed claims" that extend beyond individual jurisdictions. Pls' Br. at 9. Plaintiffs' claims must be viewed, however, as challenges to individual lease sales and policy documents in order to be considered valid claims under the Administrative Procedure Act ("APA"). The APA requires that plaintiffs challenge discrete final agency actions and prohibits broad challenges to agency programs. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 893 (1990) (an agency program "cannot be laid before the courts for wholesale correction under the APA"). Thus, in order for their claims to be proper, they must be construed as separate claims challenging discrete lease sales and instruction memoranda. Viewed in this light, they can and should be severed to enable transfer to more appropriate forums. *See W. Watersheds Project v. Salazar*, 2010 WL 375003, at *3 (severing and transferring claims and ordering Western Watersheds Project to revise its complaint to eliminate claims challenging decision by BLM's Nevada District Offices).

**II.     The Court Should Grant Transfer In Order to Avoid Having Multiple Courts Resolve Disputes Over the Same Leases and Instruction Memoranda**

One major reason that the Court should transfer Plaintiffs' claims is to avoid conflicting rulings regarding the same leases and instruction memoranda challenged in this case. *See* Def. Mem. at 17-19. The *Montana Wildlife Federation* case filed in the District of Montana also challenges IM 2018-026, as well as the March 2018 Montana lease sale and the March 2018 Wyoming lease sale. *Id.* at 17. Granting Defendants' motion to sever and transfer would avoid

the need for multiple courts to resolve similar claims involving the same actions and avoid the potential for conflicting judgments. *Id.* at 17-19.  Plaintiffs counter that severing and transferring their claims would result in a greater potential for conflicting judgments, *see* Pls' Br. at 15, but their arguments defy logic and common sense.

Plaintiffs assert, without authority, that "transfer to multiple districts would also increase the risks of inconsistent rulings." *Id.*  But the fact that different courts may issue rulings that are, in some general sense, inconsistent does not raise the prospect of conflicting judgments that would arise if the same lease sale is subject to two court rulings in different jurisdictions. Rather, the problem of conflicting judgments arises if the same agency action is challenged in multiple courts and those courts order different relief.  *See Feller v. Brock*, 802 F.3d 722, 727-28 (4th Cir. 1986).  Transferring the claims involving lease sales that are already being challenged in other districts would avoid that problem and also avoid the waste of judicial resources that would occur if two district courts were to litigate claims involving the same lease sales.

Plaintiffs also argue that it would be "much more difficult" for them to litigate their claims if they are severed into multiple lawsuits in different jurisdictions.  Pls' Br. at 15.  But this outcome is due to the nature of Plaintiffs' complaint.  Plaintiffs chose to challenge eight different lease sales in three different states.  Comp. ¶¶ 150-225.  It should not be surprising that Defendants would seek to break up the claims by challenged lease sale and to have those lease sale challenges heard in districts where the lease sales occurred, particular given that several of the lease sales are already subject to another lawsuit.  Plaintiffs nevertheless argue that their claims are not based just on the individual lease sales, but also on the "broad sweep of BLM oil and gas leasing decisions."  Pls' Br. at 15.  Under the APA, however, Plaintiffs must challenge discrete final agency actions, not BLM programs.  *See Lujan*, 497 U.S. at 890-94.  Indeed, this

Defendants' Reply in Support of Motion to Sever and Transfer                                                                 5

district has previously recognized that a party may not challenge BLM's decision "on a generic basis." *W. Watersheds Project*, 2009 WL 1299626, at *1.  Instead, in order for Plaintiffs' challenge to be considered a valid APA challenge, it must be construed as a challenge to "separate decisions of each BLM office." *Id.*

Further, while for purposes of this motion the Plaintiffs paint their suit as a broad challenge to the sage grouse plan amendments as a whole, their claims challenge compliance with individual plans.  For example, they argue that they are challenging the "'prioritization' directive" in the plan amendments, but in fact, each plan has its own direction regarding prioritization, and Plaintiffs' claims challenging the leases will be measured against those specific plans.  *See, e.g.*, Compl. ¶¶ 150-157 (alleging that the February 2017 Wyoming Lease Sales failed to comply with the prioritization directive in the Buffalo, Casper, and Newcastle Resource Management Plans ("RMP") in the High Plains District and the Cody, Worland, and Lander RMPs in the Wind River/Bighorn Basin District).  Likewise, their claim that BLM did not adequately analyze cumulative impacts for the lease sales will be judged based on the environmental analysis supporting each lease sale.  Thus, their claims will be judged based on individual leases and plans, as they should be under the APA.

Accordingly, Plaintiffs' challenges to each lease sale must be viewed separately for purposes of APA review, and the challenges to each lease sale should be heard in the jurisdiction most appropriate for each such challenge.  While this may be "understandably frustrating" to Plaintiffs, who seek "across-the-board protection" for sage-grouse and its habitat, it is the "normal[] mode of operation of the courts." *Lujan*, 497 U.S. at 894.  Thus, Plaintiffs cannot circumvent the rules regarding APA review and avoid transfer by asserting that they seek across-the-board changes to BLM's leasing practices.

Defendants' Reply in Support of Motion to Sever and Transfer                                                                 6

**III.     The Claims Should Be Heard in Jurisdictions Where the Local Communities Will be Most Impacted by the Challenged Actions and Any Court Ordered Relief Regarding those Actions**

The claims should be heard in the geographic regions that will be most impacted by the environmental and economic effects of the challenged leasing decisions, as well as any court decisions affecting the leases. *See* Def. Mem. at 13-15. Transfer to districts in those geographic regions is appropriate based on the well recognized interest in having local controversies resolved locally. *See id.* Plaintiffs cannot refute that the communities in the geographic region of the lease sales would be most impacted by the lease sales and the litigation. Instead, Plaintiffs argue that their claims do not raise "local" concerns because their concerns and claims are national in scope. Pls' Br. at 17.

Plaintiffs miss the point—it is not just their interests that are stake. As demonstrated in Defendants' brief, courts have routinely held that the impacts of oil and gas leasing in particular are most acutely felt in the geographic region where the leasing will occur and have transferred claims on that basis. Def. Mem. at 13-14. Landowners who may be impacted by the leasing, communities that may benefit from the economic effects of leasing, and even members of Western Watersheds Project and the Center for Biological Diversity in the respective jurisdictions (whose presence in the various jurisdictions is necessary in order for Plaintiffs to have standing) will be most impacted by the challenged actions. Plaintiffs' concern about BLM's leasing practices as a whole does not change the fact that leasing decisions have local impact and generate local concern. Further, the fact that the instruction memoranda are national in scope and were drafted by policymakers in Washington, D.C. weighs in favor of transfer of those claims to the District of Columbia. *See* Def. Mem. at 15-16.

Plaintiffs rely heavily on decisions by a court in this district in prior cases brought by Western Watersheds Project. *See* Pls' Br. at 17-18 (quoting and discussing *W. Watersheds Project*, 2009 WL 1299626, at *3 and *W. Watersheds Project*, 2017 WL 874568, at *3). Those cases, however, are distinguishable because they involved at least some final actions in Idaho. *W. Watersheds Project*, 2009 WL 1299626, at *3. Further, both cases involved RMPs, which provide management structure for large areas of public land. *See*, *e.g.*, *W. Watersheds Project*, 2009 WL 1299626, at *3. The court in *Western Watersheds Project* reasoned that parts of the public land governed by the RMPs may actually be closer to district courts in other jurisdictions and therefore it was unclear which district should be considered a "home" district. *Id.* Regardless of the validity of that reasoning, it does not apply here. Plaintiffs are challenging leasing decisions, which are confined to more discrete geographic areas and occur entirely within the geographic jurisdiction of particular district courts. Thus, like other cases involving oil and gas leases, the claims should be heard in the geographic area where the leases are located. *See*, *e.g.*, *S. Utah Wilderness All. v. Norton*, 315 F. Supp. 2d 82, 88 (D.D.C. 2004) (transferring claims involving oil and gas leases in Utah to district court in Utah and explaining that "[t]he controversy is localized in the sense that it involves Utah lands" and "hence there is a strong local interest in having this case heard in Utah").

In cases involving coal mining, courts have likewise transferred cases to courts in the geographic regions where the coal mining operations were taking place. *See WildEarth Guardians v. Jewell*, No. 1:15-CV-2026-WJM, 2016 WL 8577508, at *6–7 (D. Colo. June 17, 2016) (transferring surface mining claims to the District of New Mexico and the District of Wyoming); *WildEarth Guardians v. Jewell*, No. 15-cv-01984-REB, 2016 WL 796189, at *3 (D. Colo. Mar. 1, 2016) (transferring surface mining claims to the District of Utah); *WildEarth*

Defendants' Reply in Support of Motion to Sever and Transfer                                                                 8

*Guardians v. U.S. Office of Surface Mining Reclamation Enf't*, No. 1:13-cv-518, 2014 WL 503635, at *1 (D. Colo. Feb. 7, 2014) (transferring surface mining claims to Wyoming, New Mexico and Montana and noting that the "value in having environmental claims litigated where their impacts resonate most deeply eclipses any alleged judicial economy in lumping together in one suit and one venue various locally charged claims"); *WildEarth Guardians v. U.S. Bureau of Land Mgmt.*, 922 F.Supp.2d 51 (D.D.C. 2013) (transferring claims challenging the "Wright Area" leasing decisions in Wyoming to Wyoming); *WildEarth Guardians v. U.S. Forest Serv.*, No. 1:11-cv-03171-AP, 2012 WL 1415378, at *4 (D. Colo. Apr. 24, 2012) (transferring claims challenging leasing decisions in Wyoming to Wyoming).

Accordingly, the lease claims should be severed and transferred to districts in the geographic regions where the leased lands are located.

## IV. Plaintiffs Cannot Rely on Deference to Their Chosen Venue to Support the Litigation of Duplicative Claims that Have No Connection to this District

With the weight of the public interest factors stacked against them, Plaintiffs argue that their choice of forum is entitled to deference. *See* Pls' Br. at 13-14. But the deference owed to Plaintiffs' choice of forum can only be stretched so far, and deference can be overcome by showing that "the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 266 (1981). Here, the relevant factors clearly do point towards having the claims heard in forums that are more closely tied to the challenged actions and, with respect to certain actions, are already subject to suit elsewhere.

Against the weight of the public and private interest factors, Plaintiffs repeatedly state that they chose this district and that Western Watersheds Project is based in Idaho and the Center for Biological Diversity has staff in Idaho. Pls' Br. at 13-14. But those facts simply do not outweigh the interests in having localized controversies resolved locally and avoiding duplicative

Defendants' Reply in Support of Motion to Sever and Transfer                    9

litigation. Moreover, Plaintiffs allege that they have members and staff in several states, including the states where the leasing is occurring. *See* Compl. ¶¶ 19.A.-B. Such allegations are necessary for the Plaintiffs to establish that they have standing to challenge the individual leasing decisions. *See*, *e.g.*, *Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 181 (2000) (environmental groups' standing must be based on alleged injuries to individual members of the groups who are injured by the challenged action). Despite allegedly having members who were injured by the challenged actions in other jurisdictions, Plaintiffs chose to bring suit in Idaho, where no oil and gas leases at issue have been offered. That choice is not entitled to deference.

## V. Efficient Management of the Claims in This Case Is No Substitute for Transfer of the Claims to Appropriate Venues

Recognizing the overlap between the claims in this case and the claims filed in the District of Montana on the same day, Plaintiffs argue that this case can be "managed efficiently" to avoid duplicating the efforts of the courts. *See* Pls' Br. at 18-20. No such management would be necessary if the claims were severed and transferred so that similar claims challenging the same BLM actions could be heard together. Moreover, their proposal for managing the case, which Defendants do not agree with, would not result in the efficient resolution of the claims. Instead, Plaintiffs suggest that overlapping claims could be left for later stages of the case. *See id.* at 19-20. Such a resolution would allow two sets of plaintiffs multiple bites at the apple and require the government to litigate the claims twice. That would be prejudicial to the government and would waste scarce judicial resources.

## CONCLUSION

For the reasons stated above and in Defendants' memorandum in support of their motion to transfer, the Court should sever and transfer Plaintiffs' claims to the U.S. District Courts for the Districts of Montana, Utah, Wyoming, and the District of Columbia.

Respectfully submitted this 29th day of July, 2018,

>BART M. DAVIS, Idaho Bar No. 2696
>United States Attorney
>
>CHRISTINE G. ENGLAND, California Bar No. 261501
>Assistant United States Attorney
>District of Idaho
>Washington Group Plaza IV
>800 East Park Boulevard, Suite 600
>Boise, Id 83712-7788
>Telephone: (208) 334-1211
>Facsimile:   (208) 334-1414
>E-mail: Christine.England@usdoj.gov
>
>JEFFREY H. WOOD
>Acting Assistant Attorney General
>
>JOHN S. MOST, Virginia Bar No. 27176
>U.S. Department of Justice
>Environment and Natural Resources Division
>Natural Resources Section
>P.O. Box 7611
>Washington, DC 20044
>Tel: (206) 724-7386; Fax: (206) 526-6665
>E-mail: John.Most@usdoj.gov
>
>LUTHER L. HAJEK, Colorado Bar No. 44303
>U.S. Department of Justice
>Environment and Natural Resources Division
>Natural Resources Section
>999 18th Street
>South Terrace, Suite 370
>Denver, CO 80202
>Tel: (303) 844-1376; Fax: (303) 844-1350
>E-mail: Luke.Hajek@usdoj.gov
>
>*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of June, 2018, I filed a copy of the foregoing Defendants' Reply in Support of Motion to Sever and Transfer [ECF No. 12] electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

<u>Attorneys for Plaintiffs Western Watersheds Project and Center for Biological Diversity</u>

Laurence J. Lucas
llucas@advocateswest.org

Talasi B. Brooks
tbrooks@advocateswest.org

Todd C. Tucci
ttucci@advocateswest.org

<u>Counsel for Intervenor-Defendant State of Wyoming</u>

Erik Edward Petersen
erik.petersen@wyo.gov

Michael M. Robinson
mike.robinson@wyo.gov

Paul A. Turcke
pat@msbtlaw.com

<u>Counsel for Intervenor-Defendant Western Energy Alliance</u>

Bret A. Sumner
bsumner@bwenergylaw.com


                                                */s/ Luther L. Hajek*
                                                Luther L. Hajek