Laurence ("Laird") J. Lucas (ISB # 4733)
llucas@advocateswest.org
Todd C. Tucci (ISB # 6526)
ttucci@advocateswest.org
Talasi B. Brooks (ISB # 9712)
tbrooks@advocateswest.org
Sarah K. Stellberg (ISB # 10538)
sstellberg@advocateswest.org
*Advocates for the West*
P.O. Box 1612
Boise, ID 83701
(208) 342-7024
(208) 342-8286 (fax)

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, and CENTER FOR BIOLOGICAL DIVERSITY, | No. 01:18-cv-187-REB |
| *Plaintiffs*, | **DECLARATION OF SHALEAS HARRISON** |
| v. | |
| RYAN K. ZINKE, Secretary Of Interior; DAVID BERNHARDT, Deputy Secretary of Interior; and UNITED STATES BUREAU OF LAND MANAGEMENT, an agency of the United States, | |
| *Defendants*. | |

I, Shaleas Harrison, declare as follows:

1. The following facts are personally known to me, and if called as a witness I would and could truthfully testify to these facts.

DECLARATION OF SHALEAS HARRISON— 1

2. I hold Bachelor of Science in Molecular Biology with a minor in Chemistry, and Master in Environmental Law and Policy and Resource Management degrees from the University of Wyoming.

3. I work for the Wyoming Wilderness Association as a Community Organizer and Public Land Policy Specialist.

4. The Wyoming Wilderness Association is a grassroots nonprofit organization that works to protect Wyoming's public wildlands, including roadless and undeveloped areas that qualify for wilderness designation. Through our advocacy in the 1970s and 80s, Congress passed the Wyoming Wilderness Act of 1984. This landmark designation permanently protected 1.1 million acres of ecologically diverse, wild country in Wyoming. We revitalized our efforts in 1994 to meet the need for a local voice for protection of wilderness and roadless areas. We primarily work to protect these areas by participating in public processes surrounding land use plans and other National Environmental Policy Act (NEPA) processes, and by educating the public so that they can also participate in those processes.

5. My work as a Community Organizer and Public Land Policy Specialist focuses on lands managed by the Bureau of Land Management (BLM), and in particular, those on the Rock Springs Field Office—more generally known as the Red Desert.

6. In 2011, the Rock Springs Field Office initiated the process of revising the Resource Management Plan (RMP) under which it manages part of the Red Desert. The effort is still underway. The Wyoming Wilderness Association has been participating in the public planning process since scoping began on behalf of our members and supporters, to try to persuade BLM to include conservation measures for the Red Desert into the Final RMP. We have worked hard to keep lands with wilderness characteristics and other wild, remote lands in

the Red Desert wild by getting them deferred from oil and gas leasing in the next RMP.  We have done this by submitting public comments; visiting with our elected officials; and mobilizing our members and supporters to draft letters to the editor, opinion pieces, and public comments about the land use plan revision.

7. Some of the lands with wilderness characteristics we have been working to protect are being offered for lease in the June, September, and December 2018 Wyoming lease sales.

8. If the lands are offered for lease under the 20-year old Rock Springs RMP currently in effect, it will prevent us from getting them deferred from leasing in the new RMP.  Because the leasing decisions are being made under an antiquated RMP, this prevents the public from getting the opportunity to effectively participate in the RMP-level decision that the lands are appropriate for leasing.  It really suppresses good governance, transparency, and civic engagement.  It also undermines our efforts over the past 7 years to advocate for protecting these lands through RMP allocation decisions.

9. The decision to lease these lands has irreversible impacts on the public lands and native ecosystems that the Wyoming Wilderness Association has been working to protect from development.  The leasing and development of oil and gas on these lands will exacerbate climate change, which will in turn have cascading impacts on the human environment.  Once leased and developed their other ecological values will be destroyed; a compromised landscape is compromised forever.  Looking at our environment through an economic lens is destroying our environment forever.  Thus we, and the public we represent, have a strong interest in participating in decisions to offer these lands for lease.

10. I begin tracking and commenting on oil and gas leasing decision about two years ago for the Wyoming Wilderness Association. To do this I use BLM's Eplanning website to track parcels offered for lease. I use GIS to map the parcels so I can see whether they affect areas that we consider priorities for protection. If they do, I try to mobilize citizen engagement to get the interested public to oppose the lease sales by speaking with their elected officials, drafting public comments, contacting their local BLM office, and submitting opinion pieces to local publications. I also plan to comment on and protest the proposed lease sale.

11. This process takes time. Identifying and mapping each lease parcel using GIS is time-consuming. I also frequently seek to arrange in-person meetings with our local BLM office to discuss leasing proposals. It can take three weeks to a month to get an in-person meeting with the BLM State Director, who is the decision-maker for deferring leases. It also takes a considerable amount of time to meet with County Commissioners, the Governor, and other elected officials. Engaging the public is equally time-consuming. I have to contact interested members who live in the area and care about the area so they can write letters, OpEds, and otherwise participate the process. I also have to contact and engage the media; without media coverage, the public is completely in the dark about these leasing decisions. The media portion alone takes a week or two.

12. On behalf of Wyoming Wilderness Association, I have commented on the second and third quarter Wyoming lease sales in 2018. Because of our comments in the second quarter lease sale, the BLM corrected information provided in the draft Environmental Assessment. As a result, the State Director deferred two leases that conflicted with parcels and Lands with Wilderness Characteristics. Due to our ability to comment in a timely fashion, the BLM was able to make better decision in the final EA for the second quarter lease sale. We also submitted

a protest comment on the final EA, and again, we were able to provide necessary information to the BLM that resulted in the deferral of three more leases in critical wilderness quality lands. Wyoming Wilderness Association also commented on the third quarter lease sale.  However, this lease sale was under the impact of IM 2018-034 and contained numerous mistakes, incorrect information, and a poor analysis overall.  We only had a limited time to provide essential information to the BLM in our comment, which reduced our ability to ensure the BLM had the best information possible about the effected lands in the lease sale.

13. The now-optional comment period, and 10-day protest period, under BLM's new IM 2018-034 do not allow for adequate public participation.

14.  For example, I had four days when I learned about part two of the third quarter lease sales to file a comment with maps, inventories, and information to fill in some of the gaps in BLM's analysis.  I needed to bring a lot of information to BLM's attention because the EA was a rushed, poor-quality, uninformative document.  I simply couldn't do an adequate job to provide the full look at the environmental consequences that the BLM needs to have before they make final decisions on where leasing should occur.  Four days is not an adequate amount of time to field check parcels offered for leasing, as well as do all of the research needed to understand the environmental impacts of the leasing decisions and also write comments.

15. The rushed timeline that the BLM is forcing on the public is causing inaccurate analyses, and the implications of the lease sales based on that misinformation will permanently affect the landscape and our environment.  The timeline also diminishes civic engagement in the management of our public lands, which belong to everyone.  If the public can't speak up about resource management decisions and their voice isn't being heard, you have disengagement from the public.  This causes a breakdown of democracy because fewer and fewer people are

vocalizing their input on oil and gas leasing decisions. That effect on the land is devastating. You have a situation where only the folks profiting get to decide what happens and the landscape is harmed as a result. There are a majority of people, even in Wyoming, who care more about having a healthy ecosystem than about economic gain that mostly benefits big corporations.

16. The result harms the ecosystem, and it hurts Wyoming Wilderness Association's mission. Once oil and gas leasing occurs, wildlands cannot be protected because they are compromised. If a lease gets to the Application for Permit to Drill (APD) phase, it is already happening. Only small changes can be made, like maybe painting some of the drill rigs brown so they blend in better with their surroundings. The BLM doesn't respond to comments at that phase or even read them. I've found participating largely ineffective. Also, it's extremely hard to find out about APDs. You have to be in the local BLM office and look at their white book where APDs are published, which is updated every week. You would have to visit each Field Office every week to know what is going on. That is simply not feasible for a small group like ours, especially because participation at that level is so ineffectual.

17. The new optional public comment and shortened, 10-day public protest periods for oil and gas lease sales preclude adequate public comment, which impoverishes the BLM's decision-making around these lease sales by meaning only industry gets a seat at the table. The sale and development of the leases threatens irreparable harm to the environment by destroying fragile wildlife habitat and intact native ecosystems that can never be restored. This harms the Wyoming Wilderness Association's organizational mission to protect these lands in their natural state and harms my interests in preserving the native biodiversity, natural beauty, wildness, and solitude they offer.

18. Ordering BLM to stop following IM 2018-034 and instead to revert back to the prior 30 day public comment and protest periods would help protect the interests of Wyoming Wilderness Association, my own interests, and the public interest by providing for more timely and meaningful public notice and input to BLM's oil and gas leasing decisions, help protect the environment, and improve public lands decision-making.

I declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct. Executed this 2nd day of July, 2018 at Laramie, Wyoming.

*[signature]*

_____
Shaleas Harrison