Laurence ("Laird") J. Lucas (ISB # 4733)
llucas@advocateswest.org
Todd C. Tucci (ISB # 6526)
ttucci@advocateswest.org
Talasi B. Brooks (ISB # 9712)
tbrooks@advocateswest.org
Sarah K. Stellberg (ISB # 10538)
sstellberg@advocateswest.org
*Advocates for the West*
P.O. Box 1612
Boise, ID 83701
(208) 342-7024
(208) 342-8286 (fax)

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, ) <br> and CENTER FOR BIOLOGICAL ) <br> DIVERSITY, ) <br> ) <br> *Plaintiffs*, ) <br> v. ) <br> ) <br> RYAN K. ZINKE, Secretary Of Interior; ) <br> DAVID BERNHARDT, Deputy Secretary ) <br> of Interior; and UNITED STATES ) <br> BUREAU OF LAND MANAGEMENT, ) <br> an agency of the United States, ) <br> ) <br> *Defendants*. ) | Case No. 01:18-cv-187-REB <br><br> **DECLARATION OF JEFF KUYPER** |

I, Jeff Kuyper, declare as follows:

1. The following facts are personally known to me, and if called as a witness I would and could truthfully testify to these facts.

2. I am currently employed by Los Padres ForestWatch ("ForestWatch"), a community-supported nonprofit organization that works to protect the Los Padres National

DECLARATION OF JEFF KUYPER—1

Forest, the Carrizo Plain National Monument, and other public lands throughout California's central coast region. I have served as the organization's Executive Director for twelve years.

**Personal and Professional Background**

3.  I hold a bachelor's degree in Environmental Studies from the University of California at Santa Barbara, received in 1998, and a Juris Doctorate degree and a Certificate of Environment & Natural Resources Law from the University of Oregon School of Law, obtained in 2002. I have worked in a professional capacity with nonprofit conservation organizations for more than eighteen years.

**ForestWatch's Interests In Oil And Gas Leasing And Development**

4.  Beginning in February of 2006, I have worked for ForestWatch and am the lead staff person overseeing issues pertaining to oil and gas drilling and leasing on public lands. In that capacity, I research and monitor proposed and existing oil and gas projects, track violations and file complaints with government agencies, write comment letters to federal land management agencies, attend and present testimony at public hearings, and work with other ForestWatch staff, experts, and volunteers to reduce the environmental footprint of fossil fuel development on federal public lands.

5.  ForestWatch is a 501(c)(3) nonprofit organization with more than 800 members, headquartered in Santa Barbara, California. ForestWatch's mission is to protect and restore public lands along California's Central Coast from the famed Big Sur coastline, to San Luis Obispo's Santa Lucia Range and the Carrizo Plain National Monument, to the rugged backcountry of Santa Barbara and Ventura counties. ForestWatch focuses much of its efforts on the Los Padres National Forest and nearby public lands, including the Carrizo Plain National Monument, Hopper Mountain National Wildlife Refuge Complex, the Fort Hunter-Liggett

Wildlands, Carrizo Plain Ecological Reserve, and lands administered by the Bureau of Land Management ("BLM"), including federal land in the jurisdiction of BLM's Bakersfield field office.

6. My responsibilities involve, among other things, monitoring BLM's management of public lands in central California, including its designation and protection of areas of critical environmental concern and its management of oil and gas industry activities; reviewing the latest science and policy relating to BLM's land management and activities occurring on BLM lands, such as oil and gas activities; and advocating for better land management and environmental review by BLM through administrative outreach to the agency and litigation.

7. I am also responsible for engaging and informing the public about activities occurring on BLM lands. I coordinate ForestWatch's public education and outreach programs. As part of these programs, we maintain a website with current information about issues affecting Los Padres National Forest and nearby public land, including BLM lands, and how the public can get involved in protecting these lands. ForestWatch publishes a newsletter several times a year, distributes information at public gatherings, and organizes hikes, lectures, and other educational events for the public.

8. On behalf of ForestWatch, I regularly comment on oil and gas projects and activities on, and adjacent to, federal land in central California. For example, I have submitted formal comments and protests to oil and gas lease sales by BLM in Central California, including in 2005, 2006, 2009, and 2011. As a direct result of our protest in 2005, BLM issued a new statewide policy requiring BLM to prepare an Environmental Assessment prior to conducting oil and gas lease sales. This policy has resulted in additional opportunities for public involvement in

DECLARATION OF JEFF KUYPER—3

the oil and gas leasing process, including an early method of alerting BLM to possible issues and concerns regarding specific parcels of land identified for leasing.

9. More recently, I submitted detailed comments on BLM's draft resource management plan for the Carrizo Plain National Monument, and its draft resource management plan for the Bakersfield Field Office. Throughout this process, ForestWatch has urged BLM to consider alternatives to its proposed resource plan that increase protections for ecologically valuable land in its jurisdiction, including greater restrictions from oil and gas development activities.

10. In my experience, information gained through the public comment process can help BLM make better decisions. For example, the 2005 and 2006 lease sales included several parcels of land immediately adjacent to the Los Padres National Forest, Carrizo Plain National Monument, Bitter Creek National Wildlife Refuge, and within the Wind Wolves Preserve. Our protest – along with the protests of several neighboring landowners – resulted in BLM withdrawing these contested parcels (totaling a combined 10,000 acres) from the lease sale, and to date, these lands have not been further made available for oil and gas leasing.

11. At the time, BLM provided a 30-day public comment period on the Environmental Assessment of the lease sale, along with a required 45-day advance notice of the lease sale. I distinctly recall this being an inadequate amount of time to carefully evaluate a highly technical environmental document, conduct appropriate research and site visits, prepare meaningful comments, identify and contact affected landowners in extremely remote and rural areas using County parcel data, and provide information to interested landowners on how to file their own protests. Several landowners were unable to file protests within the allotted time.

12. To monitor upcoming oil and gas lease sales and other oil and gas projects, I first ask to be notified of sales by BLM. We have requested such notice on multiple occasions, and BLM has repeatedly failed to provide us with timely notice of these projects. In several situations, we have learned about projects after they have already been approved, and have to request information about them after-the-fact, after all opportunities for public comment and protest have already passed. BLM's failure to provide us with timely notice even extends to places like the Carrizo Plain National Monument, where despite numerous requests, we do not always receive notice of proposed oil and gas projects. BLM's failure to properly notify us about these proposals materially affects our ability to review them and submit comments, and to alert other members of the public who may be similarly interested in participating in the planning and approval process for these projects.

13. Based on BLM's past practice, I have little confidence that the agency will follow through on promises to provide the information I request, so I also have to track Expressions of Interest and Applications for Permit to Drill online through BLM's ePlanning website. This is a very time-consuming process that we conduct approximately weekly to ensure that we learn about projects shortly after they are posted.

14. BLM's ePlanning website is not user-friendly, and even I and my staff – who have decades of experience searching through public records – often have a difficult time obtaining accurate information through this website. Specifically, BLM's ePlanning site has two ways to search for new projects – via a map, and via a text list. The map shows the approximate locations of proposed and approved projects – however, the map does not differentiate between new projects and approved projects, meaning that each time we conduct a map search, we have to click on every icon near our areas of interest, which becomes very duplicative. The text search

function is equally as confusing, as it doesn't seem to list projects in any particular chronological order and often identifies project locations only by an archaic township and range coordinate or a well number, requiring us to cross-reference those numbers with maps and other on-line tools to determine whether a proposed project is within our area of interest.

15. Searching for oil and gas drilling decisions produces an extensive list of search results, often including oil wells and parcels far away from our area of interest. It also produces many routine decisions including sundry notices, abandonment notices, pipelines, along with applications for permits to drill. For example, in 2018, our routine search currently produces 100 distinct results through which we have to sift each time to ensure we do not miss any new projects. This number will surely increase as we progress further into the year, making each subsequent search even more extensive and burdensome for our small nonprofit organization. While BLM's ePlanning search function allows the public to search within more specific areas – such as within the Carrizo Plain National Monument – not all projects within the monument boundaries are produced during those searches because occasionally BLM codes them incorrectly in the database. For example, when I conduct a search today for all projects proposed or approved in the Carrizo Plain National Monument in 2018, the textual search produces only two results (a water tank replacement at a campground, and resurfacing of a road). Astonishingly, the search fails to identify a new oil well and pipeline that BLM approved in the Carrizo Plain National Monument in March 2018, even though it fits the search criteria.

16. When I locate projects of interest in the ePlanning database, I notify the BLM of our interest in the project. Then I review any scoping notices and environmental documents associated with the project in order to provide meaningful feedback, input, and recommendations to the agency. I need to examine the proposed project in detail, determine which wildlife may be

impacted, and assess whether the environmental documents accurately and fully describe impacts to the environment. I also need to review the applicable provisions in the Resource Management Plan to ensure that the proposed action is consistent with that plan.

17. This process often requires a great deal of additional research. For instance, I have to do scientific research about species that may be affected by proposed lease sales. I have to find the latest relevant scientific papers so that I can gauge whether what the agency is proposing is going to be truly harmful. I have to investigate whether there is relevant, publicly available data about the status of wildlife populations. Often times, BLM's environmental documentation is missing key details, requiring us to conduct our own research in the field and with experts so that I can understand whether BLM is fairly analyzing and disclosing environmental impacts.

18. I frequently consult with other groups and stakeholders – including nearby rural landowners – about the proposed projects, or work to co-author comments and protests with them. This requires the exchange of numerous drafts that must be subject to review and approval by all organizations—a time-consuming process. It is extremely difficult to coordinate drafting and review of comments and protests within the time periods the Bureau provides.

19. The thirty-day comment and protest periods for draft NEPA analyses concerning proposed oil and gas lease sales were initially inadequate.  The shortened public comment and protest periods under the BLM's new Instruction Memorandum (IM) 2018-034 make it much harder to track, submit comments on, and protest lease sales and development projects that will harm sensitive habitats and wildlife, or have been done without adequate legal compliance.

20. I seriously doubt that I will be able to adequately participate in leasing and other project decisions on behalf of ForestWatch under the constraints imposed by current BLM guidance in IM 2018-034.

21. This harms ForestWatch's interests in encouraging better BLM decision-making. ForestWatch has had success altering leasing proposals that risked harms to sensitive resources through the public comment processes. BLM's efforts to curtail public engagement under the new policy will diminish our ability to fully express our interests to BLM at the leasing phase, which in turn will decrease the quality of BLM's decision-making. Without adequate public input, BLM may not receive information about public values around parcels proposed for leasing. This could imperil sensitive wildlife populations and vegetation communities, cultural resources, scenic qualities, ecosystems, and other resources we strive to protect.

22. It also undercuts reforms for which ForestWatch successfully advocated, specifically BLM's California policy requiring the agency to do an Environmental Assessment prior to any oil and gas lease sales in California.

23. This is particularly concerning because the leasing phase is the pivotal moment when BLM can choose to preclude surface development, defer offering parcels containing sensitive resources for lease, or otherwise prevent environmental impacts from occurring. Once a parcel is leased, BLM can no longer prevent development. It can only impose certain minimal conditions on development at the Application for Permit to Drill (APD) phase.

24. In addition, BLM makes it very challenging for us to monitor and respond to APDs. As a result of settlement in an unrelated case, BLM in California has agreed to post the cover pages of APDs within three days of approval on the agency's ePlanning website. There is no mechanism for the public to learn about APDs when oil companies submit them to BLM, other than periodically contacting BLM by phone, email, or in person (three hours away from our office) to inquire about the existence of any APDs for any particular areas of interest. This makes it difficult for us and the general public to meaningfully participate in BLM's approval

process for APDs. The BLM provides 30 days to file challenges to approved APDs. We do not have the time or resources to check the agency's website on a daily basis, so when we do learn about an approval of an APD in our area of concern, we typically have much fewer than 30 days to file the challenge.

25. The BLM has affirmatively notified us about one APD, approved in the Carrizo Plain National Monument on March 16, 2018. The Record of Decision for this APD directs the public to file an appeal within 30 days to the U.S. Department of Interior's Board of Land Appeals pursuant to 43 CFR Part 4. This created confusion, since 43 CFR 3165.3 states that requests for reviews of APDs must first be filed with the BLM State Director. Given this confusion, we submitted both an appeal to the Interior Board of Land Appeals, and a request for State Director Review, both of which have different formatting requirements and timelines under BLM regulations. BLM subsequently acknowledged providing the public with the wrong appeal mechanism in the Record of Decision, and our appeal to the Interior Board of Land Appeals was dismissed while our request for review is currently pending with the BLM State Director. This confusion surrounding how to challenge an APD made it extremely difficult for us to file our requests and supporting materials in a timely manner. BLM regulations provide only 20 days for the public to submit requests for State Director Review under this regulation, again, making it very challenging for us and the general public to review the BLM's APD and supporting documentation, to request and receive additional materials from BLM, to visit the site, and to prepare the request for review.

26. The difficulties associated with public participation at the APD phase make it even more important for BLM to allow for adequate public participation at the leasing phase. Because it is so hard to track and respond to specific APDs, and because it seems BLM is less

DECLARATION OF JEFF KUYPER—9

willing to impose major changes or restrictions at the APD phase, it is critical that the public be afforded an opportunity to meaningfully review leasing proposals to advocate for measures to protect sensitive resources or advocate for deferral.  BLM's new policies in IM 2018-034 concerning shortened or optional public comment and protest periods will make providing this input more difficult, undermining BLM's decision-making process, and ultimately resulting in worse decisions that may destroy irreplaceable ecological, cultural, and scenic resources.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct.  Executed this 5th day of July, 2018, in Santa Barbara, California.

_____
Jeff Kuyper