

**U.S. DEPARTMENT OF THE INTERIOR**
**BUREAU OF LAND MANAGEMENT (/)**

(/)

# UPDATING OIL AND GAS LEASING REFORM - LAND USE PLANNING AND LEASE PARCEL REVIEWS

*IM 2018-034*
Instruction Memorandum

UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
WASHINGTON, D.C. 20240
http://www.blm.gov (/)

01/31/2018

In Reply Refer To:
1610/3100 (210/310) P

EMS TRANSMISSION 02/01/2018
Instruction Memorandum No. 2018-034
Expires:  09/30/2021

To:             All Field Officials

From:           Deputy Director, Policy and Programs, Exercising Authority of the Director of the Bureau of Land Management

Subject:        Updating Oil and Gas Leasing Reform – Land Use Planning and Lease Parcel Reviews

**Program Areas:**  Oil and Gas, Planning, and National Environmental Policy Act (NEPA).

**Purpose:**  This Instruction Memorandum (IM) sets out the policy of the Bureau of Land Management (BLM) to simplify and streamline the leasing process to alleviate unnecessary impediments and burdens, to expedite the offering of lands for lease, and to ensure quarterly oil and gas lease sales are consistently held in accordance with the Mineral Leasing Act (30 U.S.C. § 226), Executive Order 13783, and Secretary Order 3354.  This IM supersedes existing policy announced in IM No. 2010-117, *Oil and Gas Leasing Reform - Land Use Planning and Lease Parcel Reviews*, issued on May 17, 2010, and replaces any conflicting guidance or directive found in the BLM Manual or Handbook.

**Policy/Action:**  The following policy applies to the leasing of Federal minerals under Bureau of Land Management (BLM) administered surface,[1] state-owned surface, and private surface estates.[2]  The BLM does not manage leasing on Indian lands; therefore, this policy does not apply to Indian lands.

This policy (1) addresses land use planning, lease parcel review, lease sales and lease issuance, and IM implementation; and (2) directs the BLM to incorporate the revised policy, as appropriate, into affected BLM handbooks and manuals.

I.   **Land Use Planning**

A.   Resource Management Plans

As outlined in the BLM Handbook H-1601-1, *Land Use Planning*, the Resource Management Plan (RMP) underlies fluid minerals leasing decisions.  Through effective monitoring and periodic RMP evaluations, state and field offices will examine resource management decisions to determine whether the RMPs adequately protect important resource values in light of changing circumstances, updated policies, and new information (H-1601-1, sections V.A and B).  The results of such reviews and evaluations may require a state/field office to update resource information through land use plan maintenance, amendment, or revision.  It is BLM policy that existing land use plan decisions remain in effect until an amendment or revision is complete or approved.  Therefore, the BLM will not routinely defer leasing when waiting for an RMP amendment or revision to be signed.  Rather, when making leasing decisions, the BLM will exercise its discretion consistent with existing RMPs and the State Director should consult with the Washington Office (WO) before deciding to defer leasing of any parcels. When necessary, state/field offices will maintain or amend RMPs to accommodate changes in lease stipulations in accordance with guidance found in H-1610-1, *Land Use Planning*, sections VI.H and VII.B.

B.   Stipulation Consistency

The state/field offices will continue to determine appropriate stipulations for parcels offered for lease, consistent with the applicable RMP. Each state/field office has the discretion to form Interdisciplinary Consistency Review Teams (IDCR Team) for lands under its jurisdiction. The primary purposes of IDCR Teams are to prepare lease stipulations that are written in a BLM approved format and are consistent within each state for the protection of similar resources or resource settings,[3] and with the goal to edge-match across administrative boundaries including consideration of the management directives of surface management agencies (SMAs) of adjacent lands.

C. Adaptive Management

In applying an Adaptive Management approach[4] to oil and gas related activities to address changing resource conditions, RMPs and associated lease stipulations must conform to the BLM instruction memorandum entitled, *Exceptions, Waivers, and Modifications of Fluid Minerals Stipulations and Conditions of Approval, and Associated Rights-of-way Terms and Conditions* (WO-IM-2008-032, dated November 27, 2007).[5] As appropriate, stipulations will use Adaptive Management principles to incorporate the best available science, and address changing resource conditions.

**II. Master Leasing Plans**

The BLM conducted the review required by Executive Order 13783 and Secretarial Order 3354 and determined that Master Leasing Plans (MLPs) have created duplicative layers of NEPA review. This policy, therefore, eliminates the use of MLPs. The MLP procedures in Chapter V of BLM Handbook H-1624-1, *Planning for Fluid Minerals Resources*, are hereby rescinded. The BLM will not initiate any new MLPs or complete ongoing MLPs under consideration as land use plan amendments.

**III. Lease Parcel Review**

The purpose of a lease parcel review by the state/field offices is to determine the conditions under which leasing is allowed to proceed, and to ensure conformance with the approved RMP. Lease parcel reviews will be conducted and documented simultaneously with the NEPA compliance process for lease sales.

A. Parcel Review Timeframes

State/field offices are required, by statute (Mineral Leasing Act, 30 U.S.C. § 226(b) (1) (A)), and implementing regulation (43 CFR 3120.1-2(a)), to hold quarterly lease sales, when eligible lands are available for lease.[6] Lease sales should occur in the last month of each calendar year quarter.

The BLM accepts Expressions of Interest (EOI) in lands for potential leasing through the National Fluids Lease Sale System (NFLSS). Members of the public submit EOIs electronically to the BLM using NFLSS. Once submitted, the public can view all EOIs submitted to the BLM. The EOI submitter can track its EOI status using the EOI-specific tracking number provided by NFLSS. NFLSS can display the dates when the EOI was submitted to, and accepted by, the BLM, and its status, such as pending review by the state office, field office, or surface management agency. The BLM also uses the NFLSS to describe lands that the BLM has identified for leasing consideration. NFLSS provides a link to upcoming lease sales. The BLM will identify in NFLSS a deadline for receiving EOIs for each upcoming sale. The deadline will be six months prior to the lease sale month. This EOI deadline also will be posted on the state office website along with the upcoming lease sale schedule.

The timeframe for parcel review for a specific lease sale is to be no longer than 6 months. This will include adjudicating and creating the preliminary parcel list from all timely received EOIs and the other lands identified for leasing consideration in the NFLSS, recognizing there will be exceptions due to unforeseen circumstances, including delays associated with SMA consent.

BLM will no longer use a rotating schedule for lease sales, as described in IM No. 2010-117. Each state office will review all lands that are identified in EOIs that were submitted before the EOI cutoff date for a particular quarterly lease sale and will offer all parcels determined to be eligible and available within the state office's jurisdiction.

B. Review of Lease Sale Parcels

Field offices have the discretion to form an Interdisciplinary Parcel Review (IDPR) Team of resource specialists to review lease sale parcels as part of compliance with NEPA and other legal and policy requirements for adequate review of parcels.

Lease sale parcel review may include the following steps:

1. Gather and Assess Existing Information:

State/field offices will gather and evaluate existing environmental resource information and compile documentation of compliance with applicable laws, regulations, and executive orders (e.g., NEPA analysis, Endangered Species Act (ESA) (16 U.S.C. § 1531 et seq.), and National Historic Preservation Act (NHPA) (54 U.S.C. 300101 et seq.) resource data and consultation, and socioeconomic data pursuant to Executive Order 12989). The field offices will determine the need for additional information and develop strategies to obtain any data that may be required to support a leasing decision.

2. Plan Conformance and Adequacy:

State/field offices will determine whether leasing the parcel is in conformance with the RMP. A lease stipulation may be revised consistent with modification criteria found in the RMP, or through amendment, as necessary, given conditions or issues not anticipated in the RMP.

3. <u>Site Visits</u>:

Site visits are not required and should only be considered when deemed necessary by the authorized officer on a case-by-case basis. Advanced technology and information of high quality, such as geographic information system (GIS) and existing scientific reports should be used to the greatest extent practicable. The field office may develop a risk-based approach for determining whether site visits are appropriate, based on criteria such as proximity to a sensitive resource, the adequacy of the RMP NEPA analysis to support subsequent decision-making, proximity to other development, tribal or stakeholder considerations, etc.

4. <u>Internal and External Coordination</u>:

In order to achieve greater coordination and communication in managing lands and resources, state and field offices should coordinate and/or consult on the parcel review and NEPA analysis with interested parties potentially affected by the BLM's leasing decisions.

5. <u>Public Participation</u>:

State and field offices may provide for public participation during the NEPA process as part of the review of parcels identified for potential leasing.

C. <u>ESA, NHPA, and Tribal Consultation Compliance Documentation</u>

State and field offices will meet all requirements related to the ESA and the NHPA, as well as fulfill all tribal consultation requirements (see BLM Manual 1780, *Tribal Relations,* and BLM Handbook H-1780-1, *Improving and Sustaining BLM-Tribal Relations*), and will attach the standard ESA and NHPA lease stipulations or appropriate stipulations consistent with RMPs to any lease that is offered. No additional coordination is required unless deemed necessary by the authorized officer, for example, to ensure that information is adequate to support the decision about whether to lease.

D. <u>NEPA Compliance Documentation</u>

The state/field office will determine the appropriate form of NEPA compliance documentation for all lease sale parcels on BLM-managed lands, including parcels for federal subsurface minerals in split estate[7] lands.

If, through the lease parcel review process, the authorized officer confirms that the proposed leasing action has been adequately analyzed in existing NEPA document(s) and is in conformance with the approved RMP, a Determination of NEPA Adequacy (DNA) will be used to document NEPA compliance for the leasing decision. If the authorized officer deems additional analysis to be necessary, then the BLM can prepare an Environmental Assessment (EA) or Environmental Impact Statement (EIS), as appropriate.

If the BLM concludes that a DNA will adequately document that existing NEPA analysis is sufficient to support the proposed action and the action is consistent with the RMP, no further public comment period is required for the DNA.

The State Director or the officer with delegated decision-making authority will use the information provided by the field office authorized officer to determine which parcels to include on an upcoming lease sale.

IV. **Lease Sales and Lease Issuance**

A. <u>Public Notification of Lease Sale</u>

The state office must post the Notice of Competitive Lease Sale (sale notice) at least 45 days prior to the start of the lease sale, consistent with the Mineral Leasing Act, 30 U.S.C. § 226(f), and BLM regulations, 43 CFR 3120.4-2. Posting the sale notice involves posting it on the state office website, including on the ePlanning project page for the sale, with a link to the leasing website; posting the sale notice in NFLSS; and making it available in the public room. Field or state offices will post the NEPA compliance documentation on the BLM ePlanning website and in the public room 45 days prior to the start of the sale.

For online lease sales, the state office will coordinate with the internet auction provider as needed. No parcels will be withdrawn from lease sale during the active bidding period.

B. <u>Lease Sale Parcel Protests</u>

A 10-day public protest period will begin the day the sale notice is posted, along with applicable NEPA documentation. State offices should attempt to resolve protests in a signed decision before the sale of the protested parcels. Parcels subject to protests that are not resolved (i.e., pending protests) will be offered for lease sale. A decision to deny or dismiss a protest will advise the protesting parties of their right to appeal to the Interior Board of Land Appeals (IBLA) and will state that an appeal will not automatically halt the auction process.

The number of parcels protested and the status of the protests (i.e., protests dismissed, denied, upheld, or pending) must be publicly posted the day before the sale starts on the BLM state office website and the internet auction website so that bidders understand the protest status of each parcel. Protests upheld should be posted on the state office website and the NFLSS, using normal processes with amendments/notices to withdraw the parcel, no later than the day before the sale starts, and if applicable, on the online leasing website for the sale no later than the day before the sale starts.

C. <u>Lease Issuance</u>

If a state office is unable to resolve all protests before the date of a sale, the sale should proceed, and the state office should resolve the protests and decide whether to issue the affected leases within 60 days after the BLM receives full payment from the successful bidder for the bonus bids, first year rentals, and administrative fees. See 30 U.S.C. § 226(b) (1) (A). Nevertheless, the state office should not issue a lease for a protested parcel until the protest is resolved. State offices may use regional teams (discussed below) to facilitate timely protest resolution. If, for any reason, resolution of a protest may take longer than 60 days, the state office will notify the BLM Washington Office in a memorandum describing the circumstances involved. If BLM grants a protest after the date of sale (and before lease issuance), the BLM should reject the bid and refund the bonus bids and rentals paid. State offices will post the protest resolution documents on the NFLSS and the appropriate state office website.

   D.  <u>Regional Teams</u>

State offices may use regional teams to help meet the goals of having reasonable and consistent stipulations; expediting adjudication of nominations; resolving protests; issuing leases; ensuring consistency among offices in their approach to preparing protest responses and providing notification of protest status; and supporting other leasing processes.

**Implementation Timeframe:**  This policy is effective immediately in order to achieve full compliance with the parcel review 6-month timeframe. This policy will guide leasing procedures for all current and future parcels under review by the field offices as of the date of this IM.

**Budget Impact:**  This policy is intended to result in additional revenue from increased lease sales and reduced costs for NEPA review, planning, responses to protests, and associated oil and gas program costs. It is anticipated that staff resources may be shifted at times from other program areas to meet this high priority program area need.

**Background:**  On May 17, 2010, the BLM announced the previous Leasing Reform policy, IM No. 2010-117. After more than 7 years of implementation, the BLM identified aspects of the previous policy that needed improvement. Implementation of the previous policy resulted in delays by increasing the time required for sale notice posting. Furthermore, protests have increased, not decreased, in recent years (FY16 and FY17) compared to pre-2010 levels. This IM aims to simplify and streamline the leasing process for more efficient and effective oil and gas lease management.

**Manual/Handbook Sections Affected:**  This IM transmits policy that will be incorporated into BLM Handbooks H-1790-1, *National Environmental Policy Act*; H-1624-1, *Planning for Fluid Mineral Resources*; H-3101-1, *Issuance of Leases*; H-3120-1, *Competitive Leases*; and Manual MS-3120, *Competitive Leases*.

**Coordination:**  This policy was coordinated with the U.S. Department of the Interior Office of the Solicitor, the BLM state and field offices, the BLM Washington Office of Energy, Minerals, and Realty Management, and the BLM Washington Office of Resources and Planning.

**Contact:**  If there are any questions concerning this IM, please contact Timothy R. Spisak, Acting Assistant Director, Energy, Minerals and Realty Management, at 202-208-4201. For program questions, your staff may contact Lorenzo Trimble, acting Division Chief, Washington Office Division of Fluid Minerals (WO-310) at 202-912-7142 ltrimble@blm.gov (mailto:ltrimble@blm.gov).

Signed by:
Brian C. Steed
Deputy Director, Policy and Programs
Exercising Authority of the Director of the Bureau of Land Management

Authenticated by:
Catherine Emmett
WO-870, IT Policy and Planning

---

[1] This policy will be implemented across the BLM as described. Certain provisions in this policy, however, will not apply to the National Petroleum Reserve Alaska (NPR-A) because the BLM manages that area under statutory authorities, such as the Naval Petroleum Reserves Production Act of 1976, 42 U.S.C. 6501 et seq., that apply only to that area. The BLM Alaska State Office's plan for implementing this policy will identify the provisions of this policy that will not apply to leasing in the NPR-A or in the Arctic National Wildlife Refuge.

[2] This policy does not apply to the leasing of federal minerals under lands managed by other federal surface management agencies (SMAs). The policy, however, does apply to split estate lands within National Forest System (NFS) units (*i.e.*, lands with federal subsurface ownership and non-federal surface ownership).

[3] Stipulations for the protection of identical resource values may differ in different areas if such variation is necessitated by ecological, cultural, or other resource-specific factors that are scientifically validated (e.g., all mule deer winter habitat timing limitation stipulations in a state should be worded similarly unless there are, for example, ecological reasons for varying the effective seasonal closure date of the stipulation across the field office or state).

[4] For more information on adaptive management, see Adaptive Management: The U.S. Department of the Interior Technical Guide Adaptive Management Working Group, U.S. Department of the Interior, Washington, DC. See also the Department of the Interior regulations regarding implementation of NEPA at 43 CFR 46.145, as well as associated guidance issued by the Department's Office of Environmental Policy and Compliance.

[5] WO-IM-2008-032 provides guidance for (1) incorporating exception, waiver, and modification criteria into a land use plan; (2) making changes to leasing decisions/stipulations in the land use plan; and (3) reviewing and approving lease stipulation exceptions, waivers, and modifications for leases that have already been issued.

[6] Eligible lands include those identified in 43 CFR 3100.0-3 as being subject to lease and identified in 43 CFR 3120.1-1 (BLM Manual 3120, *Competitive Leases*). Lands allocated for leasing in the RMP are considered available for leasing when appropriate reviews have been conducted and all statutory requirements have been met, including compliance with the NEPA (BLM Manual Section 3120, *Competitive Leases*; Handbook H-3101-1, *Issuance of Leases*).

[7] For split estate lands within NFS units, the necessary NEPA analysis for a leasing decision may be done through documentation prepared jointly by the FS and the BLM, or prepared by the FS and adopted by BLM.

### VIEW ALL POLICIES

Return to the Policies (/media/blm-policy/Instruction%20Memorandum)

### FISCAL YEAR

2018

---

FOIA (/ABOUT/FOIA)
CAREERS (/CAREERS)
CONTACT US (/CONTACT)
MAPS (/MAPS)
INFORMATION CENTER (/MEDIA)
FEEDBACK (/FEEDBACK)
REPORT MISCONDUCT (/PROGRAMS/PUBLIC-SAFETY-AND-FIRE/LAW-ENFORCEMENT/REPORT-MISCONDUCT)
PRIVACY POLICY (HTTPS://WWW.DOI.GOV/PRIVACY)
DISCLAIMER (HTTPS://WWW.DOI.GOV/DISCLAIMER)
NOTICES (HTTPS://WWW.DOI.GOV/NOTICES)
ACCESSIBILITY (HTTPS://WWW.DOI.GOV/ACCESSIBILITY)
BUDGET AND PERFORMANCE (HTTPS://WWW.DOI.GOV/BPP)
AGENCY FINANCIAL REPORT (HTTPS://WWW.DOI.GOV/PFM/AFR)
NO FEAR ACT (HTTPS://WWW.DOI.GOV/PMB/EEO/NO-FEAR-ACT)

USA.GOV (HTTPS://WWW.USA.GOV/)
WHITE HOUSE (HTTPS://WWW.WHITEHOUSE.GOV/)
DEPARTMENT OF THE INTERIOR (HTTP://WWW.DOI.GOV/)

Follow us on: