# OIL AND GAS ADJUDICATION HANDBOOK

# BLM MANUAL  HANDBOOK 3100-1

# OIL AND GAS LEASING

H-3100-1  -  OIL AND GAS LEASING

# Table of Contents

Page

**CHAPTER 1  -  DECISION, APPEAL, AND PROTEST PROCEDURES FOR OIL AND GAS LEASING**

I.      Decision Preparation and Processing……………………………………………….    I-1
        A.      Categories of Decisions…………………………………………………    I-1
                1.      Approval……………………………………………………    I-1
                2.      Adverse……………………………………………………..    I-1
                3.      Conditional…………………………………………………    I-1
        B.      Use of Notices……………………………………………………………    I-2
        C.      Decision Heading Format………………………………………………...    I-3
                1.      Serial Number…………………………………………...…….    I-3
                2.      Subject Function Code or Case Type………………………………    I-3
                3.      Name(s) of Interested Parties of Record…………………………    I-3
                4.      Action(s) Taken……………………………………………….    I-3
        D.      Decision Process…..……………………………………………………    I-4

II.     Appeals and Protests..................................................................................    I-7
        A.  General…………………………………………………………………    I-7
        B.  Processing Appeals……………………………………………………    I-9
        C.  Processing Protests………………………………………………………    I-10

Illustrations
        1.   Format for Preparing Decisions and Dismissing Protests
        2.  Information on Taking Appeals to the IBLA (Form 1842-1)
        3.  Information on Writing Decisions
        4.  Transmittal Form Letter to IBLA (For  1842-2)


Index by Keywords

H-3100-1  -  OIL AND GAS LEASING

Page

**CHAPTER 2  -  OIL AND GAS REQUIREMENTS  - GENERAL**

I.      Drainage………………………………………………………………………      II-1
        A.      Compensation for Drainage (Unleashed Lands)…………………………      II-1
        B.      Drilling and Production or Payment of Compensatory Royalty
                (Leased Lands)……………………………………………………………      II-3

II.     Options to Acquire Lease Interests...............................................................      II-5
        A.  Effect of Option on Acreage……………………………………………..      II-5
        B.  Option Period of Time……………………………………………………      II-5
        C.  Filing of Option Information……………………………………………..      II-5
        D.  Semiannual Filing of Option Changes…………………………………….      II-6
        E.  Monitor Compliance of Option Requirements……………………………      II-6

Glossary of Terms (See also Manual Section 3100)

Abbreviations/Acronyms

Illustrations

        1.  Format for Accounting Advice Transferring Account from BRASS to
            AFS for Collection of Compensatory Royalty Assessment
        2.  Format for Notice to Lessee of Transfer of Lease Account from
            BRASS to AFS for Compensatory Royalty Payments

Index by Keywords

H-3100-1  -  OIL AND GAS LEASING

CHAPTER 1  -  DECISION, APPEAL AND PROTEST PROCEDURES FOR OIL AND GAS LEASING

Keywords

I.      Decision Preparation and Processing                    DECISION

A decision is a written document, signed by a BLM official
under delegated authority, which disposes of a stated issued
or issues in a case situation.  It is BLM policy to issue
timely decisions in mineral case actions in order to secure
compliance with laws and regulations, and to further management
objectives.  Uniform application of the law and provisions of
rights of appeal are vital to the oil and gas leasing program.
Decisions are used to inform interested parties about BLM actions,
to document records of actions, and to give authority and finality
to action steps.  Decisions may be issued on the initiative of the
Bureau or in response to representations by parties outside the BLM.

    A.   Categories of Decisions                          DECISION
                                                 TYPES

       Oil and gas decisions fall into three categories:

       1.   Approval.   Approval or granting documents extend
           rights or privileges to named beneficiaries.

       2.   Adverse.   Adverse decisions deny rights or privileges
           or privileges sought.  The appeals paragraph must be
           stated in these decisions and Form 1842-1 attached.  (See
           Illustrations 1 and 2.)

       3.   Conditional.   Conditional decisions require          CONDITIONAL
           that specified conditions be met before approval or       DECISION
           denial is made.  (Examples are submission of
           additional evidence, payment of fees, and execution
           of stipulations.)   Interlocutory language is inappropriate
           for leasable minerals decisions and is not to be used.
           When a situation calls for additional information, the
           decision issued should state:
           a)   the information requested; b) the time allowed for
           its submittal; and c) that if the information is not
           received  within the specified timeframe, the offer or
           application will be rejected without further notice.  The
           applicant or offeror must be advised that the decision
           will be final 30 days after it is received unless it is
           appealed or the requested information is timely received.
           The appeals paragraph is to be provided in the decision,
           making it unnecessary to issue a second decision.

H-3100-1  -  OIL AND GAS LEASING

<u>Keywords</u>

 The use of penalty clauses in conditional decisions is
usually discretionary.  the primary value of penalty clauses
is to fix time limits within which stated conditions must be
met.  Where timely compliance is not made, the BLM  can
conclude the action without further notice (decision should
state "without further notice from this office") or referral
to the affected party, provided that the decision so states.
Some time periods for compliance are fixed by law or
regulation and one must observe the law or regulations in
all such cases. Where a decision offers a party the option
of complying or appealing, the time for filing a notice of
appeal cannot be more than 30 days.  That is, the appeal
must be received in the proper BLM office within 30 days
of receipt of the decision.  No extension of time will be
granted for filing the notice of appeal.  The grace period
for filing documents is authorized in 43 CFR 4.401(a).  An
Authorized Officer may rescind a decision in order to
consider additional factors or to correct an error made by
BLM.  There is no authority to waive or extend the 30-day
period for filing notices of appeal from Bureau decisions.

Approval and adverse actions should not be combined into
one decision.  If these two actions are combined into one
decision and the adverse action is appealed, the entire
case is held up pending the outcome of the adverse action.
In the meantime, the approval action cannot be acted upon.

B.  <u>Use  of Notices</u>

Use. of a notice is not interchangeable with the use of a
decision.  Each of these documents serves a specific
function.   A notice format is to be used when general
information is to be distributed to an individual or a specific
group, such as the "Notice" that was issued in early 1984
notifying the public of the suspension on the processing
for approval of oil and gas small acreage partial lease
assignment.

An adverse party, as it relates to a decision, is someone
who is not a party to the decision, but someone who may be
adversely affected by the decision.  The adverse party would
be listed separately in the body of the decision (see
Illustration 1).

PENALTY
CLAUSE

APPEAL
PERIOD

GRACE
PERIOD

NOTICE

ADVERSE
PARTY

H-3100-1  -  OIL AND GAS LEASING

C.  Decision Heading Format

   Prepare a decision in the format shown in Illustration 1.    DECISION
   In all decisions, show in the heading:                       FORMAT

      1.  Serial number, assigned in accordance with Manual
          Section 1274.

      2.  Subject function code or case type, determined in
          accordance with Manual Section 1220.

      3.  Name(s) of interested parties of record, e.g.,
          lessee, protestee.

      4.  Action(s) taken, e.g., lease cancelled, lease offer
          rejected, lease offer rejected in part.

Generally, the laws, regulations, or other decisions should be quoted
verbatim, rather than summarizing or paraphrasing, unless the quote is
too long.  In that instance, use a footnote, if feasible.  If summarizing or
paraphrasing, use extreme caution to avoid changing he meaning or intent
of the quotation.  Refer only to the latest issue of Title 43 of the Code
of  the Federal Regulations, unless the regulation has been omitted from the
current issue but is still being used for cases where the previous regulation
still applies.

For older actions, use the regulations effective when the application was
filed, as long as they are still applicable and the law has not been repealed.

Use care in citing precedent decisions to be sure the decision being         CITING
cited is applicable and will support the instant decision in the manner it    PRECEDEN
is being used.  If the issue or issues are not identical to the decision being DECISIONS
written, that fact should be addressed with a brief, but complete, rationale
given for its use.  Be sure that the precedent decision is read thoroughly and
was not issued to be used only to solve one particular situation.  Use the
correct citation style.  Avoid citations when the latest case citation includes
earlier citations applicable to the issues in the instant case.

I-4

H-3100-1  -  OIL AND GAS LEASING

<u>Keywords</u>

Use footnotes if more than two or three decisions need to be cited.       FOOTNOTES
If you need to cite at length from a decision or a statute, use a
footnote rather than cluttering up the body of the decision with
lengthy quotes.  Footnotes should also be used as an additional
explanation of a comment or statement in the body of the
decision when the explanation would bog down the decision's
basic language or the point being made in the decision.  See
Illustration 3 for further information on writing decisions.

Fact sheets can be enclosed telling the party, in general terms, what the       ENCLOSURES
requirements are for the type of action filed.

Circulars containing reprints of the regulations are helpful and save
quoting at great length from the regulations.  You may wish to underscore
the pertinent line or paragraph to emphasize the part you want the reader
to note.

Use other printed formats and materials wherever applicable, to avoid
repeating all the information in the decision.

BLM Manual 1845, Legal Source and Research Materials, contains a       CITING
compilation of information concerning legal reference materials       REGULATIONS
used in adjudication throughout the BLM.  Another useful       AND OTHER
reference book is, "Finding the Law, A Workbook on Legal       LEGAL
Research for Laypersons," by Al Coca, for sale by the       REFERENCES
Government Printing Office.

    D.  <u>Decision Process</u>

       This Handbook Section provides guidelines for processing
       decisions.  If the action being taken is adverse to the party, the
       appeals paragraph should be included.  If the decision is entirely
       favorable to the party, the appeals paragraph should not be used.
       If there is a time limit set in the decision, it should be sent by
       certified mail, return receipt requested.

H-3100-1  -  OIL AND GAS LEASING

| Responsible Official | Step | Action | Keywords |
|---|---|---|---|
| Docket | 1. | Full case (file(s) for Adjudication. | |
| Adjudication | 2. | File all backup documentation to support the decision to be issued in the case file. | PREPARING DECISION |
| | 3. | Prepare the appropriate type decision for signature with sufficient number of copies (see Illustration 3). | |
| ALMRS Data Entry | 4. | Note ALMRS of action being taken by decision.  Return case file to Docket. | AUTOMATED NOTATION |
| Docket | 5. | Prepare a future action suspension card if future action is required. | |

H-3100-1  -  OIL AND GAS LEASING

II.      Appels and Protests

     A.  General                                                                                                    Keywords

The Interior Board of Land Appeals (IBLA) was created as a                           IBLA
result of a 1970 Departmental reorganization.  Review by
the IBLA of a BLM decision replaces the former two-step
appeal to the BLM Director and the Secretary.  The IBLA is
the sole judge of matters it will entertain or summarily
dismiss.  Where an interested party is adversely affected,
the IBLA entertains an appeal whether or not the right is
stated in the decision.  The regulations covering rules of
practice currently provide that the decision of the IBLA
"shall not be subject to any further appeal in the Department."
The decision should cite the appropriate regulations.  This
is sufficient finality to allow an aggrieved party to proceed
to the next step in an appeal, the Federal courts.

A protest is distinguished from an appeal in that it is                              PROTEST
generally presented before a final decision has been made.
Appeals are received after a final decision.  The answer to a
protest may or may not be appealable.  Protests may be sub-
mitted by anyone to any BLM office, although it is prefer-
able to present them to an office having jurisdiction over
the proposal.  No special system is used to track protests,
but the Authorized Officer making the ultimate decision must
be aware that a protest has been received.  You are encouraged
to discuss both formal and informal protests with protestees
in an attempt to circumvent subsequent frivolous appeals.

No decision of the IBLA which is subject to judicial review                          JUDICIAL
shall result in oil and gas lease issuance until the expiration                      REVIEW
of the period allowed for appeals.  This period is fixed at                          WAITING
90 days.  However, a lawsuit filed at the end of this                                PERIOD
period may not come to the attention of the appropriate
officials within that time.  Thus, whenever, the IBLA
issues a decision which denies an appellant's claim to a
lease or which grants an appellant's claim to a lease to
the detriment of the leases favored by the appealed State
Office decision, a period of 120 days must be allowed
to pass between the date of the IBLA opinion and lease
issuance.

During the final 30 days of this period, all steps short of
lease issuance (i.e., posting of parcels, request for rental,
etc.) may be taken.

I-8

H-3100-1  -  OIL AND GAS LEASING

<u>Keywords</u>

If an appeal of an IBLA decision is filed, the appropriate
State Director should be notified directly by the Regional
Solicitor.  In that case, lease issuance must be delayed
pending the outcome of the appeal.

Just because a document is labeled "appeal" or "contest"                    APPEAL
does not mean that it must be treated as one.  The only
parties who can file an appeal are those parties listed on
the decision document either as a party to the decision or
as an adverse party.  All others must be treated as a
"protest."

The regulations at 43 CFR 4.410 provide that any party to                  RIGHT OF
a case who is adversely affected by a decision of an officer               APPEAL
of the Bureau of  Land Management shall have a right to
appeal to the Board of Land Appeals.  The BLM Manual
Section 1841.15 states that "Parties to BLM decisions either
have or do not have the right of appeal by regulation."
Therefore, BLM decisions may either grant an appeal right
where it does not exist nor withhold it where it does exist.
There is no option to the contrary, and in all decisions,
the right of appeal must be stated where it is obvious or
apparent.  In multiple-party decisions, the parties having
the right of appeal and any adverse parties to be served
must be identified.  Decisions from which an appeal may be
taken must be accompanied by Form 1842-1 (see Illustration 2).
Decisions approved by the Secretary, however, are not subject
for appeals.

The appeals paragraph is standardized to read as follows:

You have the right to appeal to the Board of Land                          STANDARD
Appeals, Office of the Secretary, in accordance with                       APPEALS
the regulations contained in 43 CFR, Part 4, Part 4, and the               PARAGRAPH
enclosed Form 1842-1.  If an appeal is taken, your
Notice of Appeal must be filed in this office so the
case file can be transmitted to the Board.  A copy
of your Notice of Appeal and of any statement of
reasons, written arguments, or briefs <u>must</u> also be
served on the Office of the Solicitor as shown on
Form 1842-1.  It is also requested that you send a
copy of any statement of reasons, written arguments,
or briefs to the office issuing the decision
appealed.  In taking an appeal, there must be strict
compliance with regulations.

H-3100-1  -  OIL AND GAS LEASING

B.  Processing Appeals

This section provides guidelines for handling appeals.  Any party
adversely affected by a decision has the right to appeal.

| Responsible Official | Step | Action | Keywords |
|---|---|---|---|
| Receiving Clerk | 1. | Time and date stamp appeal.  Appeal must be filed in the proper BLM State Office within 30 days after date of service (no extension granted).  See 43 CFR 4.411. A 10-day grace period will be allowed \ pursuant to 43 CFR 4.401(a) | RECEIVING DATE OF APPEAL |
| Docket | 2. | Pull case file(s) for Adjudication. | |
| Title Records | 3. file. | Record current status of plat for case | CURRENT STATUS |
| Adjudication | 4. | Copies of all documents pertinent to appeal must be filed in case file, such as finding of facts and decision from which appeal is taken, and proud of service. | PROCESSING APPEAL |
| | 5. | Prepare form cover letter (see Illustration 4) to transmit case file to IBLA.

Appellant does not need to state reasons for appeal at this time, only that there is an appeal.  Appellant has 30 days after filing Notice of Appeal to file statement of reasons to IBLA. | |
| | 6. | Transmit appeal promptly to IBLA by certified mail, within 5 working days after it is received in the State Office.

Once an appeal is filed, BLM can take no further action on issues being appealed. | |
| | 7. | Send copies of transmittal, appeal letter, and the decision to Regional Solicitor's Office with one copy also sent to WO (620) | NOTIFY SOLICITOR'S OFFICE |
| | 8. | Send copies to surface management agency (SMA), if other than BLM. | NOTIFY SMA |

H-3100-1  -  OIL AND GAS LEASING

| Responsible Official | Step | Action | Keywords |
|---|---|---|---|
| ALMRS Date Entry | 9. | Note ALMRS that case file was sent to IBLA. | NOTE RECORDS OF APPEAL TO IBLA |
| Docket | 10. | Prepare dummy case file containing at least a copy of decision from which appeal was made and copy of transmittal letter to IBLA and place on the shelf. | |

    C.  Processing Protests

This Handbook Section provides guidelines for handling protests. Any party who is not a party to the decision or an adverse party a named in the decision may protest .

| Responsible Official | Step | Action | Keywords |
|---|---|---|---|
| Receiving Clerk | 1. | Time and date stamp protest and send to Docket. | PROTEST RECEIVED |
| Docket | 2. | Attach protest to case file(s) and send case to Adjudication. | |
| Adjudication | 3. | Determine if protestant is "adversely affected" or an "aggrieved party." | PROCESSING PROTEST |
| | | Determine if protest has been timely filed. | |
| | | If the above have not been met or the protest is considered frivolous, dismiss the protest by decision.  Authorized Officer may determine that it is not appropriate to include the appeals paragraph. | |
| | | If above are met, consider merits of pro-test based on evidence submitted.  Issue a decision and allow 30 days for the right of appeal. | |
| | | a)    If the protest is upheld, issue decision notifying lessee or applicant citing regulation used in making deter-mination. | PROTEST UPHELD |

H-3100-1  -  OIL AND GAS LEASING

| Responsible Official | Step | Action | Keywords |
|---|---|---|---|
| | | b)   If the protest is dismissed, issue decision to protestant citing reasons for dismissal.  Always provide any adverse party with a copy of the decision.  Allow 3 days for the right of appeal. | PROTEST DISMISSED |

H-3100-1  -  OIL AND GAS LEASING
Chapter I
Format for Preparing Decisions and Dismissing Protests

 United States Department of the Interior

BUREAU OF LAND MANAGEMENT

In Reply
Refer To:
Serial No.
Subject Function Code (Office Code)

CERTIFIED MAIL - - RETURN RECEIPT REQUESTED

DECISION

:        Noncompetitive Oil and Gas
:        Lease offer
:        Filed:   (Date)
:
:
:

Application Rejected in Part

Your offer is rejected as to the following lands which are included in oil and gas lease
issued pursuant to prior application as follows:

Serial Number         Date Filed  Land:        Willamette Meridian, Oregon
Adverse Party

You have the right to appeal to the Board of Land Appeals, Office of the Secretary, in
accordance with the regulations contained in 43 CFR, Part 4, and the enclosed Form
1842-1. If an appeal is taken, your Notice of Appeal must be filed in this office so
the case file can be transmitted to the Board.  A copy of your Notice of Appeal and of
any statement of reasons, written arguments, or briefs **must** also be served on the Office
of the Solicitor as shown on Form 1842-1.  It is also requested that you send a copy of
any statement of reasons, written arguments, or briefs to the office issuing the decision
appealed.  In taking an appeal, there must be strict compliance with the regulations.

If you appeal from this decision, the adverse party on whom you must also serve copies of
your appeal, statement of reasons, etc. is:

Refund of advance rental for the rejected lands will be authorized when this decision
is final.  We will retain the filing fee and the rental amount required to cover any lands
remaining in the offer.  If you do not intend to appeal from this decision, you may
expedite the refund by filing a withdrawal of your offer as to the rejected lands.

Authorized Officer

Enclosure:
   Form 1842-1

   Distribution:
     (Appropriate District Office)

Case 1:18-cv-00187-REB   Document 30-13   Filed 07/06/18   Page 16 of 58

Illustration 1, Page 2

H-3100-1  -  OIL AND GAS LEASING
Chapter I
Format for Preparing Decisions and Dismissing Protests

 United States Department of the Interior

BUREAU OF LAND MANAGEMENT

In Reply
Refer To:
Serial No.
Subject Function Code (Office Code)

CERTIFIED MAIL - - RETURN RECEIPT REQUESTED

DECISION

:
:     Noncompetitive
:     Oil and Gas     :
:     Issued Effective: (Date)
:
:

Lease Terminated by Cessation of Production

Oil and gas lease _____(serial number)_____ was issued effective _____(date)_____
for a 10-year term ending _____(date)_____ and for so long thereafter as oil or gas is produced in
paying quantities.

The District Manager has determined that this lease was no longer capable of producing oil or gas in
paying quantities after _date_____.  No approved operations to restore production were
commenced within the 60 days allowed under 43 CFR 3107.2-2.

Accordingly, the lease term is exhausted and declared terminated by cessation of production
effective ___(date)_____.

Settlement of royalties or rentals due or payable must be made to Minerals Management Service, if not
previously done.  Bonds must remain in full force and effect until final abandonment of all wells on
the lease has been approved, and the account is settled.

You have the right to appeal to the Board of Land Appeals, Office of the Secretary, in accordance with the
regulations contained in 43 CFR, Part 4, and the enclosed Form 1842-1.  If an appeal is taken, your Notice
of Appeal must be filed in this office so the case file can be transmitted to the Board.  A copy of your Notice
of Appeal and of any statement of reasons, written arguments, or briefs must also be served on the Office of
the Solicitor as shown on Form 1842-1.  It is also requested that you send a copy of any statement of reasons,
written arguments, or briefs to the office issuing the decision appealed.  In taking an appeal, there must be
strict compliance with the regulations.

Authorized Office

Enclosure:
 Form 1842-1

Distribution:
 District Office
 (other offices)

BLM MANUAL                         Rel.  3-122
                                  8/6/85

H-3100-1  -  OIL AND GAS LEASING
Chapter 1
Format for Preparing Decisions and Dismissing Protests

 United States Department of the Interior

BUREAU OF LAND MANAGEMENT

In Reply
Refer To:
Serial No.
Subject Function Code (Office Code)

<u>CERTIFIED MAIL - - RETURN RECEIPT REQUESTED</u>

DECISION
:
:                          Simultaneous                    :
:                          Oil and Gas Filing
:
:
<u>Protest Dismissal</u>

We have received your protest of our Notice of Unacceptable Simultaneous Oil and Gas Filing.  Your
April 1985 filing for 12 parcels, bearing an execution date of April 17, 1985, failed to include the full,
proper remittance to cover filing fees and advance rentals for the 12 parcels indicated on the application
form.  Accordingly, the application was deemed unacceptable, a $75 processing fee was assessed,
and the remainder of fees were refunded, pursuant to 43 CFR 3112.3(b).

The regulations at 43 CFR 3112.2-2 state that "Each Part B application form shall, when filed, be
accompanied by a single remittance . . . of an amount sufficient to cover for each parcel included on
the Part B application form a nonrefundable filing fee of $75 and the first year's rental payment.
Failure to submit . . . an amount sufficient to cover all the parcels on each Part B application form . . .
shall cause the entire filing to be deemed unacceptable."  Your protest states that you intended to
cover fees for all the parcels except Parcel ____(number)_____.  The Bureau cannot determine the intent
of remittance checks or application filings nor can we presume to which of the 12 parcels to apply fees.
If, as stated in your protest, you mistakenly marked the application form for a parcel which you knew had
previously been removed from the list by the Bureau, it is unfortunate.

Your protest is hereby dismissed.  This decision will become final 30 days from receipt, in the absence of
an appeal.

You have the right to appeal to the Board of Land Appeals, Office of the Secretary, in accordance with the
regulations contained in 43 CFR, Part 4, and the enclosed Form 1842-1.  If an appeal is taken, your Notice
of Appeal must be filed in this office so the case file can be transmitted to the Board.  A copy of your
Notice of Appeal and of any statement of reasons, written arguments, or briefs <u>must</u> also be served on the
Office Solicitor as shown on Form 1842-1.  It is also requested that you send  a copy of any statement of
reasons, written arguments, or briefs to the office issuing the decision appealed.  In taking an appeal, there
must be strict compliance with the regulations.

Authorized Officer

Enclosure
    Form 1842-1

Distribution    (Appropriate District Office)

Illustration 2, Page 1
(I.A.2.)

# H-3100-1  -  OIL AND GAS LEASING

Chapter 1
Information on Taking Appeals to the IBLA (Form 1842-1)

Form 1842-1                          UNITED STATES
(February 1985)              DEPARTMENT OF THE INTERIOR
                             BUREAU OF LAND MANAGEMENT

**INFORMATION ON TAKING APPEALS TO THE BOARD OF LAND APPEALS**

DO NOT APPEAL UNLESS
1.    This decision is adverse to you,
AND
2.   You believe it is incorrect

IF YOU APPEAL, THE FOLLOWING PROCEDURES MUST BE FOLLOWED

| | | |
|---|---|---|
| 1. | NOTICE OF APPEAL . . . . | Within 30 days file a *Notice of Appeal* in the office which issued this decision (see 43 CFR Secs. 4.411 and 4.413).  You may state your reasons for appealing.  If you desire. |
| 2. | WHERE TO FILE  NOTICE OF APPEAL . . . | |
| | SOLICITOR  ALSO COPY TO .  .  .  . | |
| 3. | STATEMENT OF REASONS  . . . | Within 30 days after filing the Notice of Appeal, file a complete statement of the reasons why you are appealing.  This must be filed with the United States Department of the Interior.  Office of the Secretary, Board of Land Appeals, 4015 Wilson Blvd., Arlington, Virginia 22203 (see CFR Sec. 4.412 and 4.413).  If you fully stated your reasons for appealing when filing the *Notice of Appeal*, no additional statement is necessary. |
| | SOLICITOR  ALSO COPY TO . . . | |
| 4. | ADVERSE PARTIES . . . . | Within 15 days after each document is filed, each adverse party named in the decision and the Regional Solicitor or Field Solicitor having jurisdiction over the State in which the appeal arose must be served with a copy of:  (a) the Notice of Appeal, (b) the Statement of, Reasons, and (c) any other documents filed (see 43 CFR  Sec. 4.413).  Service will be made upon the Associate Solicitor Division of Energy and Resources, Washington, D.C. 20240, instead of the Field or Regional Solicitor when appeals are taken from decisions of the Director (WO-100) |
| 5. | PROOF OF SERVICE . . . | Within 15 days any document is served on an adverse party, file proof of that service with the United States Department of the Interior, Office of the Secretary, Board of Land Appeals, 4015 Wilson Blvd., Arlington, Virginia  22203.  This may consist of a certified or registered mail "Return Receipt Card" signed by the adverse party (see 43 CFR Sec. 4.40(c)(2)). |

*Unless these procedures are followed your appeal will be subject to dismissal (see 43 CFR Sec. 4.402).  Be certain that all communications are identified by serial number of the case being appealed.*

NOTE:  A document is not filed until it is actually received in the proper office (see 41CFR Sec. 4.401(a))

Illustration 2, Page 2

H-3100-1  -  OIL AND GAS LEASING

Chapter 1

Information on Taking Appeals to the IBLA (Form 1842-1

SUBPART 1821.2 – OFFICE HOURS; TIME AND PLACE FOR FILING

Sec. 1821.2-1 *Office hours of State Offices*. (a) State Offices and the Washington Office of the Bureau of Land Management are open to the public for the filing of documents and inspection of records during the hours specified in this paragraph on Monday through Friday of each week, with the exception of those days where the office may be closed because of a national holiday or Presidential or other administrative order. The hours during which the State Offices and the Washington Office are open to the public for the filing of documents and inspection of records are from 10 a.m. to 4 p.m., standard time  or daylight saving time, whichever is in effect at the city in which each is located.

Sec. 1821.2-2(d)  Any document required or permitted to be filed under the regulations of this chapter, which is received in the State Office or the Washington Office, either in the mail or by personal delivery when the office is not open to the public shall be deemed to be filed as of the day and hour in the office next opens to the public.

(e)  Any document required by law, regulation, or decision to be filed within a stated period, the last day of which falls on a day the State Office or the Washington Office is officially closed, shall be deemed to be timely filed if it is received in the appropriate office on the next day the office open to the public.

\*     \*     \*     \*     \*

H-3100-1  -  OIL AND GAS LEASING

Chapter 1

Information on Writing Decisions

<u>Purposes of a Decision</u>

Decisions are to inform the party of the:

1.   Facts involving the action.

2.   Action required by the party.

3.   Defects in the offer or application which can be remedied.

4.   Requirements of the law or regulation which the party must meet
     and the time limit for compliance.

5.   Those requirements of the law or regulation which the party has
     failed to  meet or cannot now meet.

6.   Remedial action which the party can take to comply.

7.   Penalty for failure to take remedial action.

8.   Penalty for having failed to meet legal or regulatory
     requirements which cannot now be met because of expiration of
     time.

9.   The right of appeal.

<u>Function of a Decision</u>

Decisions are to:

1.   Put into writing the purposes of the decision and to complete the written record of action taken in connection
     with the offer or application under consideration.

2.   Satisfy the requirements of the law (Administrative Procedures Act (5 U.S.C. 551, et seq.)), which
      requires that the agency shall make available for public inspection and for copying final
     opinions, and orders, made in the adjudication of cases.

3.   Constitute the basis for the decision by the Interior Board of Land Appeals.

4.   Provide the element of the record for consideration by IBLA.

5.   Reduce to writing the adjudicative process.

6.   Dispose of a case in a certain way, by setting forth the facts, laws, and reasoning which
     require that disposition.

Illustration 3, Page 2

H-3100-1  -  OIL AND GAS LEASING

Chapter 1

Information on Writing Decisions

Primary Factors in Decision Writing

The writing of a decision involves several primary factors requiring special attention by the writer, including:

1.  Realizing that the decision may be of considerable importance to the applicant, to any adverse party, to the Government, and to the general public.

2.  Recognizing at all times that the writer is responsible for applying to the facts and circumstances of the particular case the applicable law, Departmental rules and regulations, and policies.  This is an important responsibility and required complete objectivity and knowledge of public land laws, regulations, and other sources of information.

3.  Basing the decision on sound facts and logic.  It is through a well-reasoned decision that the writer impresses upon the applicant that the case has been given thorough consideration and that the findings are based on the solid foundation of the law, regulations, and precedent.  The applicant is more likely to accept such a decision than one which merely recites the facts and a conclusion of law.

    An important initial step in writing a decision is to isolate the issue or issues. Since many case records contain complicated situations, some of which have little or no bearing on the actual issue or issues presented, it is important that the factual statement in the decision be confined to a clear, concise recitation of only those facts which relate to the issue or issues to be discussed.

Decision Text

It is important that the decision text contain:

1.  A clear concise statement of the facts pertinent to the issue or issues involved in the case.

2.  A reference to the controlling law or regulation, setting forth the requirements applicable to the case.

3.  A statement of how or why the facts of the case being decided fit into the requirements of the cited law or regulation, how they fail to meet these criteria or requirements, and the citation of the controlling decisions (if necessary, or applicable).

H-3100-1  -  OIL AND GAS LEASING

Chapter 1

Information on Writing Decisions

4.   A statement of the ruling or the findings, of the actions the offeror is required to take (if
this follows), and of the offer's right of appeal.

Check decisions thoroughly for accuracy of dates, number, citations, names, facts,
assumptions, etc.  Each decision should always indicate a logical progression of development
of both the pertinent facts and the applicable authority.

Before citing the Departmental or court decisions as authority for a particular statement, be
sure that the cited decision, in fact, supports the position that has been taken.

Exercise care to exclude all extraneous material from a decision, whether it be of factual
or supporting nature.  Avoid multiple citations by using the latest citation, since in many
cases it will, in turn, cite the earlier references.

Illustration 4
(II.B.5.)

H-3100-1 - OIL AND GAS LEASING

Chapter 1

Transmittal Form Letter to IBLA (Form 1842-2)



IN REPLY REFER TO:

Serial No.
Subject Function Code
(Office Code)

**UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT**

Certified Mail Receipt Requested

Memorandum

To:            Board of Land Appeals, Office of the Secretary

From:        Appropriate BLM Office

Subject:     Transmitting Appeal of:    (Name of Appellant)

                  Kind of Application:           (Noncompetitive Oil and Gas Leases)

                  Referring to the above-cited case, I transmitted a notice of an appeal from
                  the decision of the

_____    (Appropriate State Office)   dated _____ (Decision Date) _____, 19_____

        [ ]        There are no conflicting cases of record.

        [ ]        The conflicting cases shown on the status sheet have been properly
                  noted as to the appeal and favorable action thereon suspended pending
                  final action on the appeal.

        [ ]        The records of the conflicting or reference cases identified below are
                  transmitted herewith for use in connection with the appeal:

Enclosure:
   Case file (1)

CC. BLM; W.O 620
      with copy of decision
      Regional Solicitor
      with copy of decision

H-3100-1  -  OIL AND GAS LEASING

Chapter 1 – Index by Keywords

|  | Page |
|---|---|
| Adverse Party…………………………………………………………… | I-2 |
| Appeal…………………………………………………………….. | I-8 |
| Appeal Period……………………………………………………………I-2 | |
| Automated Notation…………………………………………………I-5 | |
| Citing Precedent Decisions……………………………………….... | I-3 |
| Citing Regulations and Other Legal Reference…………………………………I-4 | |
| Conditional Decision…………………………………………………. | I-1 |
| Current Status…………………………………………………………. | I-9 |
| Decision………………………………………………………………. | I-1 |
| Decision Format……………………………………………………... | I-3 |
| Decision Types………………………………………………………... | I-1 |
| Enclosures…………………………………………………………….. | I-4 |
| Footnotes……………………………………………………………... | I-4 |
| Grace Period………………………………………………………….. | I-2 |
| IBLA…………………………………………………………………... | I-7 |
| Judicial Review Waiting Period……………………………………….. | I-7 |
| Note Records of Appeal to IBLA ……………………………………... | I-10 |
| Notice………………………………………………………………… | I-2 |
| Notify SMA…………………………………………………………… | I-9 |
| Notify Solicitor's Office……………………………………………… | I-9 |
| Penalty Clause………………………………………………………… | I-2 |
| Preparing Decision…………………………………………………….. | I-5 |
| Processing Appeal…………………………………………………….. | I-9 |
| Processing Protest…………………………………………………….. | I-10 |
| Protest………………………………………………………………... | I-7 |
| Protest Dismissed…………………………………………………….. | I-11 |
| Protest Received……………………………………………………... | I-10 |
| Protest Upheld………………………………………………………... | I-11 |
| Receiving Date of Appeal…………………………………………….. | I-9 |
| Right of Appeal……………………………………………………….. | I-8 |
| Standard Appeals Paragraph………………………………………….. | I-8 |

H-3100-1  -  OIL AND GAS LEASING

CHAPTER 2  -  OIL AND GAS REQUIREMENTS  -  GENERAL

I.        Drainage

Compensatory royalty agreements may be entered into in situations where
unleased lands are being drained of oil or gas.  Normally, such unleased
lands are those which have been withdrawn from the mineral leasing laws
or for which a lease has been offered by competitive bidding but
inadequate bids or no bids were received.  (For compensatory royalty agreements
involving rights-of-way under the Act of May 21, 1930, see H-3109-1,
Step ID.)

Compensatory royalty assessment may be made by the Authorized Officer upon a
determination that leased lands are being drained of oil or gas.  See Manual Sections 3100
and 3160-2.  Minerals Management Service is advised of the assessment.

    A.   Compensation for Drainage (Unleased Lands)

          Initiation of a compensatory royalty agreement (CRA) may be made by the operator on the adjoining
          lands, or by the District Office.  There is no official form for this type of agreement.  The CRA is
          entered into between the U.S. and all adjoining interest holders in lands draining the
          unleashed tract.  The CRA is considered effective from the date of the agreement or from the date of
          onset of production, whichever is earlier, and remains in effect for the duration of production.  Royalty
          rates should not be less than then the royalty rate for a competitive lease.  A
          provision for no surface occupancy will normally be included in the CRA.

| Responsible Official | Step | Action | Keywords |
|---|---|---|---|
| Adjudication | 1. | Receive CRA in triplicate from District or from operator on adjoining lands. | AGREEMENT FILED |
| | 2. | Ensure CRA is serialized and plat is noted "Comp. Roy. Agmt Apln". | SERIALI-ZATION AND RECORDS NOTATION |
| | 3. | Examine CRA for inclusion of the following: | TERMS AND CONDITIONS |
| | | a)  Description of the unleased lands being drained. | |
| | | b)  Signed by all adjoining interest holders (may be necessary to require evidence of interest holders from operator). | |

II-2

H-3100-1  -  OIL AND GAS LEASING

| Responsible Official | Step | Action | Keywords |
|---|---|---|---|
| | | c) Term identified (must cover period of production). | |
| | | d) Royalty rate not less than competitive lease rate. | |
| | | e) No surface occupancy on withdrawn lands. | |
| | | f) Agreement that U.S. will not lease the lands for the duration of the CRA. | |
| | | g) Offending well and productive formation identified. | |
| | | h) Agreement may be limited to producing formation or producing zones in any affected Communitization Agreement. | |
| | 4. | Send copy of CRA to District, noting any discrepancies found in Step A3 above. Request report identifying area being drained, when drainage began, and adequacy of royalty rate. | DISTRICT REPORT |
| | 5. | When report is received from District, send copy of report and CRA to Solicitor's Office for review | SOLICITOR'S REVIEW |
| | 6. | Upon receipt of favorable report, prepare CRA for approval | AGREEMENT APPROVAL |
| | 7. | Prepare transmittal letter to all parties to the CRA setting forth the pertinent contents, effective date, and that any payments made pursuant to the CRA must be made to MMS.  Copies of the transmittal and approved CRA are furnished to all parties to the CRA, AFS, District, and SMA. | TRANSMITTAL |
| Typist | 8. | Type transmittal letter with appropriate copies. | |
| Adjudication | 9. | Check and surname CRA and transmittal letter.  Route case for signing, mailing, ALMRS, Records, and Docket. | |

H-3100-1  -  OIL AND GAS LEASING

| Responsible Official | Step | Action | Keywords |
|---|---|---|---|
| Signing Official | 10. | Check and sign CRA and transmittal letter. | |
| ALMRS Data Entry | 11. | Update showing effective date of CRA. | AUTOMATED NOTATION |
| Title Records | 12. | Note CRA on Records. | RECORDS NOTATION |
| Docket | 13. | File case file with inactive cases. | |

B.  Drilling and Production or Payment of Compensatory Royalty
      (Leased Lands)

The Authorized Officer, upon a determination that compensatory royalty will be assessed, will notify the leases of such assessment by decision with copies to MMS and Adjudication.

| District Office | 1. | Provide Adjudication with notification of compensatory royalty assessment. Notification will identify offending well and include date assessment will begin. | ASSESSMENT NOTIFI-CATION |
| Docket | 2. | Charge case file to Adjudication. | |
| Adjudication | 3. | If lease account is currently maintained by AFS, no action is required.  File notification in case file and return to Docket for filing. | PRODUCING LEASE |
| | 4. | If lease account is currently maintained IN BRASS system, prepare Accounting Advice transferring account to the AFS system (see Illustration 1). | NONPRO-DUCING LEASE ACCOUNTING ADVICE |
| | 5. | Prepare notice to the lessee of transfer of lease account from BRASS to AFS (see Illustration 2). Identify documents in case file to be copied for AFS. | NOTICE TO lessee |

II-4

H-3100-1  -  OIL AND GAS LEASING

| Responsible Official | Step | Action | Keywords |
|---|---|---|---|
| Typist | 6. | Type notice with appropriate copies. Copy pertinent documents from case file and attach to AFS copy of notice.  (Optional:  Stamp outside of case file to reflect lease is on a royalty basis.) | |
| | 7. | Check notice and copies, surname, and route for signing, mailing, ALMRS, and Docket. | |
| Signing Official | 8. | Check and sign notice. | |
| ALMRS Data Entry | 9. | Update (use action code "ACCT TRANS TO AFS" and use date assessment begins as effective date.) | AUTOMATED NOTATION |
| Docket | 10. | File case file with inactive cases. | |

H-3100-1  -  OIL AND GAS LEASING

II.     Options to Acquire Lease Interests

Options to acquire any interest in a Federal oil and gas lease are chargeable, in accordance with the Mineral Leasing Act, as amended (30 U.S.C. 184(d)(2).  No person, corporation, or association (including partnerships and trusts) can take, hold, own, or control at any one time options to acquire interest in oil and gas leases which involve, in the aggregate, more than 200,000 acres in any one State at any one time except Alaska, in which case no more than 200,000 acres may be held under option in each of the two leasing Districts.

A.  Effect of Option on Acreage

In any case in which an option to acquire the optionor's entire interest in the whole or a part of the acreage under a lease is entered into, the acreage to which the option is applicable shall be charged both to the optionor and to the optionee, but the charge to the optionor will cease when the option is exercised.  In any case in which an option to acquire part of the optionor's interest in the whole or a part of the acreage under a lease is entered into, the acreage to which the optionor is chargeable or a share thereof shall also be charged to the optionee as his interest may appear, but after the option is exercised, such acreage is to be charged to the parties pro rata as their interests may appear.  The acreage covered by an unexercised option remains chargeable during its term until notice of its surrender or relinquishment has been filed in the proper BLM office.

B.  Option Period of Time

No option is enforceable if entered into for a period of more than 3 years, including any renewal period provided for in the option, without approval of the Secretary.

C.  Filing of Option Information

An option or notice of renewal of an option is not enforceable until a signed copy is filed in the proper BLM office.  The signed document filed must contain (1) the names and addresses of the parties to the option; (2) the lease serial number; (3) a statement of the number of acres covered by the option and of the interests and obligations of the parties to the option; and (4) the interest to be conveyed and retained in the exercise of the option.  The document filed with BLM must be signed by all parties to the option or their duly authorized agents or attorneys-in-fact; and must contain or be accompanied by a signed statement by the holder of the option that the optionee is the sole party in interest in the option, or if not the sole party in interest, the name(s) and a description of the interest(s) held by all other interested parties and a description of the agreement between them, if oral, or a copy of the written agreement between them.  See 43 CFR 3100.4-1(b).

II-6

H-3100-1  -  OIL AND GAS LEASING

D.   Semiannual Filing f Option Changes

Within  90 days after June 30 and December 31 of each year, each optionee must file statements in the proper BLM office showing any changes to holdings as of June 30 and December 31, respectively.

E.   Monitor Compliance of Option Requirements

Each State Office Adjudication Unit is required to keep track of option holdings filed to assure that the statutory acreage limitations are not violated.  As with leases, options held for acreage within units are not counted as chargeable.  If a suspect situation arises, request information to show evidence of allowing sufficient time for submission of the required documents (no more than 180 days, under normal circumstances).

H-3100-1  -  OIL AND GAS LEASING


-A-

abandonment:     an act disclaiming further interest in rights to an oil and gas lease.  This must be provable
        under strict rules of evidence and cannot be presumed since a question of individual intent is involved.
        Abandonment also is plugging a well, removal of installations, and termination of operations for
        production from the well.  Conclusively abandoned unpatented oil placer mining claims are subject to
        conversion into a noncompetitive oil and gas lease pursuant to the Federal Oil and Gas Royalty
        Management Act of 1982 (30 U.S.C. 188(f)).

accountable acreage:      the total or proportional interest in a Federal oil and gas lease determines the party's
        total or proportional part of the total lease acreage.  See 43 CFR 3101.2 for the acreage limitations and
        the procedures for instances of excessive accountable acres.  Same as "chargeable acreage."

Accounting Advice:   Form 1370-41 for control and disposition of money and for input into automated data
        processing (ADP) systems and the Bonus and Rental Accounting Support System (BRASS).  An
        Accounting Advice is completed when action on a case in complete, or when case status changes
        occur affecting account, that is, a lease is issued, rejected, or rejected in part and no appeal is taken, or
        when the appeal has been finalized, or when an assignment is approved, or when a lease account is
        transferred to the Auditing and Financial System (AFS).

accretion:     the addition of land is a fixed land based caused by the gradual change in water course or
        shoreline over a long period of time.  Accretion usually involves a change in property rights.  See
        reliction and avulsion.

acquired lands:      lands which the United States obtained by deed through purchases, gift, or condemnation
        proceedings, including lands previously disposed of under the public land laws including the mining
        laws.

actual production :   a Federal oil and gas lease is considered to be in an "actual production" status whenever it
        contains one or more wells drilled on a lease or agreement (communitization or unitization) basis
        which are producing oil and/or gas in paying quantities.  A lease is also considered to be in "actual
        production" status whenever it contains one or more wells drilled on a lease or agreement basis, which
        are capable of producing oil and/or gas in paying quantities even though production is not then
        occurring.

affirmed:    the Interior Board of Land Appeals (IBLA) agrees totally or partially with a decision rendered by
        Bureau of Land Management (BLM) and/or an appeals court agrees with a lower court decision.

Glossary, Page 2

H-3100-1  -  OIL AND GAS LEASING

<u>agent</u>:   a person authorized to act for another person; one entrusted with another's business.

<u>aliquot part</u>:   a subdivision of a section arrived at by dividing a section into halves and quarters (e.g., ½ section, ¼ section, ¼   ¼ section) down to 40 acres, unless the acreage is a lot which may be more or less than 40 acres.

<u>allocated production</u>:   a Federal ease is considered to be in "allocated production" status when the circumstances for an "actual production" status are not satisfied, but the lease receives an allocation of production (royalty revenues) from a well(s) on other tracts pursuant to an approved agreement to which the lease is committed.

<u>anniversary date</u>:   the same date each succeeding year as the effective date of a lease.

<u>appeal</u>:   an act of initiating a review of a decision on public land rights to a higher authority, e.g., State Office decision to the IBLA.

<u>applicant</u>:   a party submitting an application under the simultaneous leasing program is properly referred to as an applicant until such time as the successful drawee timely submits the executed lease offer form as completed by the appropriate State Office.  With the timely submission of the executed lease offer and advance rental if for simultaneous filings made prior to August 1984, the applicant becomes the lease offeror.

<u>application</u>:   a written request, petition, or offer to lease lands for the purpose of oil and gas exploration and/or the right of extraction.  For the simultaneous leasing program, application refers to the filing made by an applicant for a simultaneous parcel on the computer application form.

<u>assignee or transferee</u>:   one to who an assignment is made.

<u>assignment</u>:   the written transfer of all or a portion of the record title interest or other interests from the owner of transferable interests in a lease to another person(s).

    a.   <u>partial assignment</u>  -  all of the assignor's record title interest to a portion of the land in a lease.  A new lease case file is created with a new serial number.

    b.   <u>partial undivided interest assignment</u>  -  a portion of the assignor's record title interest in a portion of the lands in a lease.  A new lease case file is not created.

H-3100-1  -  OIL AND GAS LEASING

      c.   undivided interest assignment  -  a portion of the assignor's record title interest in all of the lands in a lease.  A new lease case file is not created.

assignor, transferor, or grantor:   one who transfers an interest to another party.

Authorized Officer:   any employee of the BLM who has been delegated the authority to perform the duties set forth to maintain regulatory requirements.

avulsion:   the sudden and perceptible change of a shoreline, due to the action of water or a sudden change in the bed or course of a stream.  It is the general rule that avulsion affects no change in property lines.  See accretion and reliction.

attorney-in-fact:   an individual authorized by another to act in one's place or stead, by a power of attorney.

-B-

base lands:   in an in-lieu selection or exchange, the lands in which the applicant relinquishes rights as a basis of selection.

base lease:   the lease from which a portion is segregated, either by partial assignment or unit segregation.  A segregated lease may become a "base lease" upon further segregation.

bona fide purchaser:   one whose interest in a Federal lease is protected from an adverse action contrary one's interests by a timely good-faith purchase.  A bona fide purchaser must have acquired the interest in good faith, for valuable consideration, and without notice of violation of Departmental regulations.  This provision applies only before notice of cancellation has been received by the lessor and has become part of the BLM records.  Assignees are deemed to have constructive knowledge of all of BLM records pertaining to the lease at the time of assignment.  Proof of a bona fide purchase of the interest is required.

bond:   an agreement in writing in which a surety, or an obligor for personal bond guarantees performance by the principal in the event of default in performance by the principal.  See also nationwide, statewide, lessee, personal, exploration, operator, designated operator, and unit operator, and unit operator bonds.

bond rider:   any document which amends and becomes a part of the bond.

bonus:   a lump sum monetary consideration paid to the United States for the execution of a Federal lease by a successful bidder prior to issuance of a competitive oil and gas lease.

H-3100-1  -  OIL AND GAS LEASING


-C-

cancellation:   the revocation or nullification of a right to lease due to the lessee's noncompliance with
        the lease terms and conditions, laws, or regulations.  Also, the revoking of a right to lease due to
        administrative error of the lessor.

casual use:   activities that involve practices which do not ordinarily cause any appreciable disturbance or
        damage to the public lands, resources, or improvements.  Casual use does not require a use
        authorization from the BLM.

categorical exclusion review:   screening process to determine whether further environmental analysis is
        necessary or if the action is in a category which meets any of the nine exemptions of the National
        Environmental Policy Act of 1969 (NEPA), as set forth in 516 DM 2.3A(3).  Mitigating measures
        can be considered as part of the screening process.  Each categorical exclusion review must be
        documented by the decisionmaker and must specifically justify any stipulations developed as part of
        the review.  Where other environmental documentation exists, such as an environmental assessment or
        environmental impact statement, area-wide or umbrella, a categorical exclusion review is not the
        process to be utilized.

cessation of production:   the termination of production of oil and/or gas from a well.  Where an oil and
        gas lease had permanently ceased to produce and no reworking or drilling operations have timely
        commenced, the lease terminates on the date of permanent cessation of production.  There is a fine
        distinction between temporary and permanent cessation of production.  In making this distinction, the
        pivotal question is whether under "normal" conditions, the well or leasehold was producing enough oil
        and/or gas to pay a profit over and above the cost of operating the well or leasehold.

chargeable acreage:   see accountable acreage.

clearlist:   an official clearance determination that lands are not within a known geological structure
        (KGS) or favorable petroleum geological province (FPGP), and thus can be leased noncompetitively.

committed in part:   that portion of lands in a lease committed to a unit agreement that lie within the unit
        area boundary.  See also lease.

communitization agreement:   an agreement which allows the brining together of leases sufficient for the
        granting of well permit(s) under applicable State spacing requirements.  Communitization involves
        one or more specific geologic formations.

H-3100-1  -  OIL AND GAS LEASING

compensatory royalty:   a royalty paid in lieu of drilling a well which would otherwise be required under the terms and conditions of a lease to protect the lease from drainage.  A compensatory royalty clause in a Federal oil and gas lease would provide for the payment of a royalty on oil or gas actually produced from other leased lands which result in the drainage of the Federal lands in the instant lease.

compensatory royalty agreement:   an agreement accommodating royalty paid in lieu of drilling a well which would otherwise be required under the terms and conditions of a lease, where there is no lease.

competitive lease:   a lease for lands, within a KGS or FPGP which is awarded to the successful bidder at public sale for not less than fair market value.  A single competitive lease cannot cover more than 640 acres in accordance with the Mineral Leasing Act of 1920, as amended, except in Alaska, where lands within a FPGP are divided into competitive leasing blocks of not more than 2,560 acres.

competitive sale:   offering of oil and gas leases within a KGS, FPGP, surplus or drainage lands, by competitive bids of not less than fair market value, usually involving a minimum bonus bid per acre.

conflicting offer:   where two or more offers cover all or part of the same lands, the first perfected offer becomes a lease, all else being regular.

contiguous lands and contiguous legal subdivisions:   lands or legal subdivision having a common boundary.  Lands which simply have a common corner are not considered contiguous.

contraction:   reduction of a unit area, usually to the participating area(s).

cooperative agreement:   an agreement or plan of development and operation for the recovery of oil and gas in which separate ownership units are independently operated without allocation of production.

curable defect:   a deficiency in an offer that can be corrected without loss of priority or infringement on rights of other offers.

-D-

decision:   in relation to public land rights, a formally written determination signed by an Authorized Officer setting forth the disposition of a case.

default:   the omission or the failure to perform a legal duty.

H-3100-1  -  OIL AND GAS LEASING

designated operator:   operator appointed by, employed by, or contracted by the lessee or the holder of
            operating rights to conduct operations on the lease or a portion thereof.  The designated operator
            does not have a legal interest in the lease and may not obtain a share of the revenues.
            Designation of operator is filed with the authorized officer.

designated operator's bond:   a designated operator is qualified to post the operator's bond for activities
            on a Federal oil and gas lease.

Designated Tar Sand Areas:   see Special Tar Sand Areas.

designated unit area:   an approved designated unit area classification creating a nonexclusive right
            in the applicant to submit a unit agreement for such area.  This designated area may be included in
            another unit area.  This classification is not noted on the land status records and is not to be confused
            with an approved unit agreement.  See 43 CFR 3181.2.

development contract:   a Federal contract designed to promote timely and full operations in areas where
            special development incentive and acreage-relief treatment is required if reserves are to be developed.
            Under such a contract, the holder is freed from the application of acreage limitation restrictions for a
            specified period of time conditioned on meeting certain diligence requirements as specified in the
            contract.

divided interest:   see lease interest.


drainage:   migration of oil or gas in a reservoir due to a pressure reduction caused by production from
            wells bottomed in the reservoir may cause lands or minerals interests owned by the United States to be
            drained.  To ensure that the United States, or the United States and is lessee, are compensated for such
            drainage, the Authorized Officer may execute agreements for compensation of the drainage with the
            owners of the adjacent lands where the drainage is occurring.  Any agreements shall be made with the
            consent of any lessee affected by such agreement.  If the Federal lands or interests are available for
            lease, these lands or interests, may be offered in accordance with 43 CFR 3120.

-E-

effective date:   the date the lease or assignment becomes effective; typically for a lease, the first day of
            the month after the issue date, or upon applicant request, the first day of the month  of issuance; and,
            for an assignment, the first day of the month after proper filing of all required documents.

H-3100-1  -  OIL AND GAS LEASING

environmental assessment:    under NEPA, a document of the analysis as to whether a proposed project will have a significant impact on the human environment, analysis of all possible alternatives, and whether an environmental impact statement will be required.

environmental impact statement:    under NEPA, a published document that presents for the decisionmaker a proposed project, or action, significant issues, impacts on the human environment, alternatives, mitigations, and responses to comments from the public.

excepted acreage:    acreage not accountable under the Mineral Leasing Act limitations.  This is acreage committed to an approved or prescribed unit or cooperative agreement; leases subject to operating, drilling or development contract.  Leases within the National Petroleum Reserve in Alaska (NPR-A) issued under the Appropriations Action of 1981 are all considered excepted acreage.

executive order:    a document issued by the President of the United States pursuant to statutory authority and inherent powers, published in the Federal Register.  In reference to the BLM, executive orders may affect the disposal of lands and/or resources from the operation of some or all the public land and/or mineral laws.  Public land orders are now utilized to perform this function.

expansion:    enlargement of the participating area of a unit.

expiration:    the lapsing of a lease at the end of its primary or extended term.

extended by production:    a lease extended so long as oil or gas is produced in paying quantities.  Not applicable to right-of-way leases.  For 20-year leases or renewals thereof, see Section VIII, H-3107-1.

exploration bond:    An acceptable surety or personal bond in the amount  of at least $5,000 filed simultaneously with a notice of intent to conduct geophysical exploration or, in Alaska, an application for a permit.  The bond must meet the requirements set forth in 43 CFR 3104.  A statewide bond in the amount of $25,000 covering all oil and gas operations in the same State or a nationwide bond in the amount of $50,000 covering all oil and gas exploration operations in the Nation.

extension:    additional time on a lease beyond the primary term.  There are a number of conditions under which an extension can be granted:  drilling, production (referred to as lease continuation), formation or elimination of a cooperative unit or plan, segregation by assignment, reinstatement, and renewal.  See 43 CFR 3107.

H-3100-1  -  OIL AND GAS LEASING

-F-

favorable petroleum geological province:    a total province encompassing many possible specific
        structures or traps designated on the basis of either direct or indirect evidence that does not necessarily
        mean the past or present existence of a producing or producible well.  Effective date of FPGP
        designation is the date the BLM comprehensively determines, as a result of new discoveries or an
        analysis of new data, that exploration of the province has high probability for discovery of oil and/or
        gas.  Applicable only to Alaska, pursuant to section 1008 of the Alaska National Interest Lands
        Conservation Act (ANILCA).

finding of no significant impact (FONSI):    a document summary conclusion when the environmental
        review under the  provision of NEPA reflects no significant impacts or when a project is altered so as
        to eliminate any significant adverse impacts.

fluid minerals:    for the purposes of this Handbook, fluid minerals consist of gas and oil as defined in 43
        CFR 300.0-5.

fractional undivided interest:    a proportional interest in a Federal oil and gas mineral estate.  See lease
        interest.

future mineral interest:    a whole or fractional interest in all or certain minerals acquired by the United
        States pursuant to a conveyance under which the grantor retained the mineral interest for a specified
        period of time, e.g., United States interest is a future interest until such reservation terminates,
        allowing title to vest in the United States.

-G-

gas:    any fluid, either combustible or noncombustible, which is produced in a natural state from the earth
        and which maintains a gaseous or rarefied state at ordinary temperatures and pressure conditions.

-I-

issue date:    date lease is signed by Authorized Officer.

Interior Board of Land Appeals:    final administrative entity for reviewing appeals within the Department
        of the Interior from a BLM action.  Agency appeal rights must be exhausted prior to seeking of
        judicial review.  See 43 CFR, Part 4, Subparts B and D.

H-3100-1  -  OIL AND GAS LEASING

-J-

joinder:   participation in the development and operation of lands in a lease under the terms and
              provision of an approved unit and unit operating agreement.

a.   unit joinder  -  a document whereby the holder of an interest(s) in an oil and gas lease(s) agrees to
                 the terms of a unit agreement and, normally in the case of a holder of record title or operating
                 rights, commonly called the working interest owners, the terms of the applicable unit
                 operating agreement for his interest(s).  Joinders are normally filed by the unit operator in the
                 process of approval of the unit agreement by the Authorized Officer and are
                 accepted/approved concurrently with the effective date of the unit agreement, but are
                 effective on the date of filing for Federal leases in the last month of the lease term for
                 purposes of lease extension, such as diligent drilling and production.

b.   late (unit joinder  -  a unit joinder, to which a specified percentage of the applicable working
                 interest owners consent, filed with and/or approved /accepted by the Authorized Officer
                 subsequent to the approval of the unit agreement.  Normally, a late joinder is considered
                 effective the first of the month following the filing of the necessary documents with the
                 Authorized Officer, or after issuance of a new lease.

joint tenants:    a form of concurrent ownership which involves unity of interest, title, time, and
              possession.  Joint tenants must have the same interest accruing under the same conveyance,
              commencing at the same time, and held under the same undivided possession.

-K-

known geological structure:    a geological structure (defined or undefined) in which an accumulation of
              oil and gas has been discovered by drilling and determined to be productive.  The boundary limits
              include all acreage presumed to be productive.  The effective date of a KGS is the date the BLM
              comprehensively determines the existence of a KGS.  This determination occurs after all necessary
              information, e.g., mechanical logs, electric logs, well histories, well completions, etc., have been
              correlated and a final geological report has been completed and approved.

Glossary, Page 10

H-3100-1  -  OIL AND GAS LEASING

<u>lease</u>:  a contract in legal form that provides for the right to develop and produce oil and gas resources for a specific period of time under certain agreed upon terms and conditions.

      a.   <u>lease commitment</u>  -  the process by which an oil and gas lease becomes part of a unit agreement; requires unit joinder acceptance/approval by the Authorized Officer for all the record title holders and operating rights holders in the lease (so far as any leased lands within the unit area).

      b.   <u>lease committed in part</u>  -  a lease commitment in a unit agreement of a Federal oil and gas lease, which includes land both within the unit area and outside the unit area.  A fully committed Federal lease in such a status will be segregated into two leases and the lease outside the unit area entitled to a 2-year extension from the effective date of commitment (if not already in a longer term).

      c.   <u>partially committed lease</u>  -  an oil or gas lease in which one or some, but not all, working interest owners have committed their interest in the lease to a unit agreement.  Such a lease become fully committed upon the approval/acceptance of unit joinders from <u>all</u> previously uncommitted lease working interest owners.

Note:   The terms "committed in part" and "partially committed" are frequently confused, and BLM employees discussing these terms need to ensure that all parties to the discussion use and understand which situation is involved to avoid misunderstandings.  "Lease committed in part" is normally used to describe leases where an effective unit joinder requires the BLM to segregate the lease; once the lease is segregated, the lease embracing the lands in the unit area is then fully committed.  "Partially committed" is normally used by personnel responsible for supervision of unit agreement to describe leases (which could later become committed in part) where subsequent late joinders could result in effective lease commitment.

<u>lease amendment</u>:   a modification in the terms or conditions, land description, rental, royalty, etc., of a lease after lease issuance.  The lessee has the right to appeal a decision issuing an amendment to a lease.

H-3100-1  -  OIL AND GAS LEASING

lease interest:    a term sometimes used in lease instruments executed at a time the minerals are subject to
            a lease, often conveying a given fraction or percentage of the interests arising under the existing lease.
            Undivided lease interest is a portion of interest in all or a portion of the lands in the lease.  Undivided
            lease interests do not create a separate lease case file.   Divided interest is a partial assignment
            whereby all of an assignor's record title interest to a portion of the land in a lease creates a separate
            new lease with a new serial number.

leasable mineral:    oil, gas, sodium, potassium, phosphate, coal, oil shale, tar sands, asphaltic materials,
            and, in Louisiana and New Mexico, sulphur, and all minerals on the Outer Continental Shelf, and in
            acquired Lands.  See 43 CFR 3100.0-3.

legal description:    the correct manner, using either the rectangular survey system or metes and bonds, to
            systematically delineate lands in a lease.  The survey system includes designation of the principal
            meridian, township, range, section, and aliquot parts or lots.  A metes and bounds description should
            also include meridian, township, range and section, whenever possible, for at least the point of
            beginning of the description.

legal subdivision:    generally, a subdivision of a township, e.g., a section, quarter section, lot.  (See also
            aliquot part, regular subdivision, and smallest legal subdivision.)

lessee:    the holder of a lease.

lessee bond:    a general lease and drilling bond in the amount of not less than $10,000 conditioned upon
            compliance with all the terms and conditions of the lease, or #5,000 for leases issued prior to 1960.

lessor:    the grantor of a lease; the United States for Federal leases.

lot:    subdivision of a section which is not described as an aliquot part of the section but is designated by
            a number; e.g., lot 2.  The acreage of a lot varies and may be more or less than a regular
            subdivision.

-M-

metes and bounds:    the boundary lines or perimeters of land established by courses and distances from a
            beginning point to an end point.

mineral reservation:    a provision in a patent, deed, or other document of land conveyance which retains
             in the grantor the right to all or certain minerals in the land, or reservation of fractional interest on all
            or certain minerals, in perpetuity or for a specified period of time.

H-3100-1  -  OIL AND GAS LEASING

-N-

National Petroleum Reserve in Alaska-wide bond:   a bond in an amount sufficient for NPR-A-wide
          coverage of a lessee's oil and gas interests under the Department of the Interior Appropriations Act,
          FY 1981.  Must be separate coverage from any other nationwide or statewide bond required under the
          Mineral Leasing Act or Mineral Leasing Act for Acquired Lands.

nationwide bond:   a bond in an amount sufficient for nationwide coverage of a lessee's oil and gas
          interests under the Mineral Leasing Act and the Mineral Leasing Act for Acquired lands in lieu of a
          general lease and drilling bond, operator's bond, or statewide bonds.  See 43 CFR 3104.3(b).

navigable waters:   all tidal waters up to the ordinary mean high-tide lines and all nontidal waters, such
          as rivers, streams and lakes that afford a channel for useful commerce up to the mean high-water line.
          If it is determined that a stream,  lake, or river was navigable at the time the State entered the Union,
          the State has jurisdiction and the lands underlying such waters are not subject to leasing by the Federal
          Government.

noncompetitive lease:   an oil and gas lease which is issued to the first qualified applicant for an over-the-
          counter filing, or as a result of a simultaneous filing for oil and gas.  The lease lands must be outside a
          KGS or FPGP.

nonnavigable waters:    rivers, streams, or bodies of water not tidally affected and not subject to useful
          commerce or found to be navigable by the appropriate courts.  If it is determined that waters were
          nonnavigable at the time the State entered the Union, ownership of the abutting lands extends to the
          middle of the stream, lake, or river.  If the United States owns the upland oil and gas rights, leasing
          may be authorized for such riparian waters.

notice:   communication of an official action to all interested parties by certified or registered mail,
          posting in the State Office Public Room, personal service, or by publication in the Federal Register.

notice to lessee (NTL):   a written notice issued by the Authorized Officer giving instructions on specific
          items implementing the regulations under 43 CFR 3160 and operating orders.

-O-

oblige:   the party to who a bond is given (normally used only in the context of personal bonds).

H-3100-1  -  OIL AND GAS LEASING

obligor:   the party furnishing a personal bond, who would be considered the principal of
             a  surety bond.

offer:   a lease offer form completed by the offeror for an over-the-counter filing and/or the simultaneous
           offer lease form signed and returned by the successful applicant after the random selection drawing,
           Form 3100-11.

oil:   oil means all nongaseous hydrocarbon substances other than those substances leasable as coal, oil
         shale, or gilsonite (including all vein-type solid hydrocarbons).

omitted islands:   islands not identified in the official survey for a particular section or fractional section.
                       Regulations pertaining to conveyance of title to such lands are set forth under 43 CFR 2547 and 43
                       CFR 2742.

operator:   the person who has control or management of operations on a lease or portion thereof.  The
             operator may be the lessee, or holder of rights acquired by an approved assignment of the operating
             rights.

operating agreement:   written documentation between parties of an operating right.  Typically one of the
                          parties is designated as the operator, and the agreement contains detailed provisions for the drilling of
                          a well(s), the sharing of expenses, and accounting methods.

operating order:   formal numbered oil and gas orders issued by the Director, implementing the
                     regulations under 43 CFR 3160.

operating rights/working interest:   the interest or contractual obligation created out of a lease (such as a
                          sublease) authorizing the holder of that right to enter the leased lands to conduct drilling and related
                          operations, including production, which may include as consideration a share in revenues therefrom.
                          Operating rights may or may not be transferred through an operating agreement; however, transfer of
                          operating rights on Federal leases must be filed and approved on the official assignment form.

operator bond:   a bond in the amount of not less than $10,000 conditioned upon compliance with the
                  lease terms.

option:   a right to acquire any interest in an oil and gas lease within a specific or reasonable time in the
           future, subject to acreage restrictions.

overriding royalty:   a royalty paid to someone by a record title holder in addition to, or over, the royalty
                       paid to the United States; also, an interest in the lease providing for no control over the operations of
                       the lease, only revenue from lease production.

H-3100-1  -  OIL AND GAS LEASING

over-the-counter:   lease issued under the provision of 43 CFR 3111, and generally, the lands have never
           been leased previously or have been offered under 43 CFR 3112 and have received no applications.

-P-

parcel:   the a name given to an area of land made available for competitive or noncompetitive
           leasing.

partial assignment:   see assignment.

partial undivided interest assignment:   see assignment.

participating area:   that part of a unit area which is considered reasonably proven to be productive
           in paying quantities or which is necessary for unit operations and to which production is allocation in
           the manner prescribed in the unit agreement.

participating acreage:   that part of a unit area to which production is allocated in the manner described in
           a unit agreement.

party in interest:   a party who is, or will be, vested with any legal or equitable rights under a lease.  No
           one is a sole party in interest with respect to an application, offer, or lease in which any other party has
           an interest.

personal bond:   a bond in the amount of $10,000 or more furnished by the principal in the form of a
           guaranteed remittance, cash, cashier check, certified check, or negotiable Treasury bonds of the
           United States, in lieu of a corporate surety bond.  Treasury bonds require power of attorney to the
           Secretary in case of default in performance of the terms and conditions of the lease.

pooling:   the bringing together of separately owned (or separate interests in) small tracts sufficient for
           the granting of a well permit under applicable spacing rules.  The process may be voluntary or may be
           forced/compulsory, whereby  Federal oil and gas lessees and other lessees within a specific geological
           formation are required to pool development operations under a State-forced pool order.  The object of
           pooling is to prevent drilling of unnecessary and uneconomic wells.

precedent:   a decision issued by a higher authority which is to be followed in subsequent situations
           involving identical facts, laws, and regulations.

H-3100-1  -  OIL AND GAS **LEASING**

<u>primary term</u>:   the lease term set by statute:   competitive lease, 5 year; noncompetitive lease, 10 years;
and NPR-A up to 10 years.  For leases subject to section 4(d) of the Act prior to the revision of 1960,
30 U.S.C. 226-1 (d), primary term means all periods of the life of the lease prior to its extension by
reason of production of oil and gas in paying quantities.

<u>principal</u>:   a party liable for an obligation for whom a surety has become bound for the performance of
that obligation.

<u>proper BLM office</u>:   the Bureau office having jurisdiction over the lands, subject to the special
regulations where the term is used.  See 43 CFR 3000.0-5(f).

<u>proprietary information</u>:   information submitted to the United States Government in compliance with
Government information needs that is <u>not</u> to be distributed to the public because such disclosure
would do substantial harm to the competitive position of the outside source from which it was
obtained, and would inhibit the Government's ability to obtain this type of information in the future
resulting in a substantial detrimental effect on a Government program.

<u>protest</u>:   a written objection to a proposed or completed action, e.g., issuance of a lease.

<u>public domain</u>:   land or interests in lands which never left the ownership of the United States. lands
which were obtained by the United States in exchange for public lands or for timber on such lands,
and lands which have reverted to the ownership of the United States through operation of the public
land laws.

<u>public land order</u>:   an order affecting, modifying, or cancelling a withdrawal or reservation or public
land.

<u>public lands</u>:   (a)  as defined under the Federal Land Policy and Management Act of 1976, public lands
means any land and interest in land owned by the United States within the several States and administered
by the Secretary of the Interior through the BLM, without regard to how the United States acquired
ownership, except:

1.  Lands located on the Outer Continental Shelf; and

2.  Lands held for the benefit of Indians, Aleuts, and Eskimos.

Glossary, Page 16

## H-3100-1  -  OIL AND GAS LEASING

public lands:   (b)   as defined in 43 CFR 3045, public lands means any lands, the surface of which is
   owned by the United States within the several States and administered by the Secretary of the Interior through BLM,
   without regard to how the United States acquired ownership, except:

1.   Lands located on the Outer Continental Shelf; and

2.   Lands held for the benefit of Indians, Aleuts, and Eskimos.

record of decision:   upon a decision being made on an action for which a final environmental impact
   statement has been prepared, the concise record of such decision, including mitigating measures.

record title:   primary ownership of an interest in an oil and gas lease that  includes the obligation to pay
   rent, and the rights to assign and relinquish the lease.  Overriding royalty and operating rights are severable
   from record title interests.

rectangular system of survey:   a system of cadastral surveys of the original public domain, by which
   lands are subdivided into townships, ranges, sections, and section subdivisions.

-R-

record of decision:   upon a decision being made on an action for which a final environmental impact statement has
   been prepared, the concise record of such decision, including mitigating measures.

record title:   primary ownership of an interest in an oil and gas lease that includes the obligation to pay rent, and the
   rights to assign and relinquish the lease.  Overriding royalty and operating rights are severable from record title
   interests.

rectangular system of survey:   a system of cadastral surveys of the original public domain, by which lands are
   subdivided into townships, ranges, sections and section subdivisions.

regular subdivision:   subdivision of a section which is an aliquot part of acres; e.g., ½ section of 320 acres, ¼
   section of 160 acres, and ¼  ¼ section of 40 acres.

reinstatement:   restoring a terminated oil and gas lease to its former status and/or reinstating a conclusively
   abandoned unpatented oil placer mining claim which can be converted to an oil and gas lease.  See 43 CFR
   3108.

reliction:   the subtraction of land from a fixed land base caused by the gradual change in water course or shoreline
   over a long period of time.  Reliction usually involves a change in property rights.  See accretion and avulsion.

relinquishment:   the voluntary act of giving up all rights, title, and any interests in an oil and gas lease through
   declaration (formal legal document, letter, etc.).

restoration:   A revocation of a withdrawal which also affects the opening of the public lands in the withdrawal.

rental:     remuneration for the right to hold a Federal oil and gas lease.  Payment is based on the known
   total acreage, or if not known, then on the basis of 40 acres of each smallest legal subdivision.
   Payment is usually due on an annual basis on or before the anniversary date.

H-3100-1  -  OIL AND GAS **LEASING**

reversed:   IBLA or appeals court disagreement with lower decision.

riparian rights:   rights determined by the ownership of lands on the banks of a water body.

royalty:   payment, in money or kind,  of a stated share of production from mineral deposits.  Royalty may be an established minimum, on a sliding scale or step scale.  A step scale royalty rate increases by steps as the average production increase, e.g., 12 ½ percent for the first 20 barrels per well per day, 13 percent for the next 30 barrels, etc.  A sliding scale royalty is based on average production and applies to all production.

-S-

Secretarial order:   a document issued by the Secretary of the Interior pursuant to Department and Secretarial powers affecting the management of public lands by Department offices and bureaus.

service of notice:   the act of giving legal notice to one whose rights could be adversely affected.  Service can be accomplished through certified or registered mail, personal delivery, or, under special conditions, by legal publication.

set aside and remanded:   IBLA or appeals court returns to BLM or lower court for further consideration, or reverses and vacates the decision.

shut-in well:   a producing well that has been closed down temporarily for repairs, cleaning out, building up pressure, lock of a market, etc., but not permanently plugged with cement and abandoned.

simultaneous filing period:   the specified period when lease applications are delivered to and received by the BLM Wyoming State Office for a scheduled simultaneous drawing.

Note:   Also see 43 CFR 1821.2-3 for determination of priority for other simultaneously received filings.  The staged openings to oil and gas leasing of lands in Alaska, and any other over-the-counter offers received at the same time, are processed simultaneously.

simultaneous oil and gas (SIMO/SOG) application:   a filing on parcel(s) of specified lands which have been previously leased on a form approved by the Director.

six-mile rule:   all portions of an offer must be within a 6-mile square or six surveyed sections in length or width.  See required lands exception 43 CFR 3110.1-3(b).

H-3100-1  -  OIL AND GAS LEASING

smallest legal subdivision:    generally, a ¼ ¼ section, or a lot which may contain more or less than 40 acres.

Special Tar Sand Area:    Special Tar Sand Area means an area designated by the Department of the Interior's Orders of November 20, 1980 (45 FR 6800), and January 21, 1981 (46 FR 6077), and referred to in those orders as Designated Tar Sand Areas, as containing substantial deposits of tar and sand.  The Designated Tar Sand Areas lie totally within the State of Utah and may be leased only under the provisions of 43 CFR 3140.

split estate:    lands where the owner of the mineral rights and the surface owner are not the same party in interest.  The most common split-estate is Federal ownership of mineral rights and other interest ownership of the surface.  Where such a condition occurs, the Federal Government can lease the oil and gas rights without surface owner consent.

spudding in:    the first boring of the hole in the drilling of an oil well; may, under some circumstances, be expanded to include commencement of operations for drilling.  Spudding a well on a lease is normally not sufficient to extend the lease term for diligent drilling over the expiration  date.

statewide bond:    a bond in the minimum amount of $25,000, in  lieu of a general lease and drilling bond or operator's bond, to cover all leases or operating rights for oil and gas interests within only one State.

stipulations:    additional specific terms and conditions that change the manner in which operation may be conducted on a lease, or modify the lease rights granted.

sublease:    a reversionary interest/right of reentry distinguishes a sublease from an assignment of a lease interest; if the lessee parts with the entire interest in the  lease to a third party, it constitutes an assignment and not a subletting.

surety:    a corporation which is legally responsible for the debt, default, or delinquency of another (principal).  A Federal surety must hold a certificate of authority as acceptable to the Department of the Treasury to give bonds to the United States.

surface management agency:    any agency outside of the Department of the Interior with jurisdiction over the surface overlaying federally owned minerals.

H-3100-1  -  OIL AND GAS LEASING

-T-

termination:   lapsing of a nonproducing oil and gas lease for failure to timely pay rentals when due on or before the anniversary date.

termination of the period of liability:   the release of the surety from the responsibility for the debt, default, or delinquency of the principal; done only upon a determination that no bond is required or that a satisfactory replacement bond has been accepted.

top filing:   offers of lower priority, by date, made on the same described lands.  The first perfected offer by date of priority receipt is accepted, all else being regular.

trespass:   any use or occupancy of the lands or resources of the United States without authority.

-U-

undivided interest:   see lease interest.

unit:   an area of land to which committed parties with interests in the land are bound to share the oil and gas produced on a specified basis.  Those having the right to conduct drilling operations on the land are bound to share investment and operating costs on a specified basis.  The BLM determines and approves this area for administrative purposes.  A unit may be either expanded or contracted in size on the recommendation of the operator with the Authorized Officer's approval.  There are three types of units:

    a.   exploratory unit  -  a unit that has not preexisting production from the  unitized formation(s).

    b.   producing unit  -  a unit that has production from the unitized formation(s).  An exploratory unit becomes a producing unit upon discovery of a unitized substance.

    c.   secondary recovery unit  -  a producing unit in which the primary reserves have been or nearly been depleted and in which the operator intends to use some (secondary) method to increase recovery, that is, water injection, gas injection, etc.

unit area:   the area described in the unit agreement as constituting the land logically subject to exploration and/or development under the agreement.

Glossary, Page 20

H-3100-1  -  OIL AND GAS LEASING


unit agreement:   an agreement or plan of development and operation, generally a written document for
          the recovery of oil and gas within a unit.  The unit agreement consolidates separate leases into a single
          consolidated unit without regard to separate ownership rights and for the purposes of operating and
          allocating costs and benefits on a basis as defined in the agreement or plan.

unit operator:   the person authorized under the unit agreement approved by the BLM to conduct
          operations within the unit.

unit operator's bond:   a bond furnished by a unit operator in the amount requested.  If the unit operator
          holds all of the working interests in the leases committed to the unit and has an acceptable statewide
          or nationwide bond on file, additional coverage may not be required.

-W-

withdrawal:   lands designated by the Executive branch or Congress as not available for settlement,
          location, sale, or entry under the public lands laws and, occasionally, the mineral leasing laws.

withdrawal (offer):   written, signed request from an applicant to remove a lease offer from consideration.
           The withdrawal must be received by the proper BLM office before the lease, amendment, etc., is
          signed on behalf of the United States.  Simultaneous oil and gas applications cannot be withdrawn.
          See 43 CFR 3110.2.

H-3100-1  -  OIL AND GAS LEASING

Abbreviations/Acronyms
-A-

| | | |
|---|---|---|
| AALRS | - | Alaska Automated Land Records System |
| ACEC | - | Area of Critical Environmental Concern |
| ACHP | - | Advisory Council on Historical Preservation |
| ACMP | - | Areas of Critical Mineral Potential |
| ACQ | - | Acquired Land |
| AD | - | Assistant Director – Associate Director |
| ADP | - | Automated Data Processing |
| AFO's | - | All Field Officials |
| AFS | - | Auditing and Financial System (MMS) |
| ALMRS | - | Automated Land and Mineral Record System |
| AM | - | Area Manager |
| ANCSA | - | Alaska Native Claims Settlement Act |
| ANILCA | - | Alaska Native Interest Lands Conservation Act |
| ANWRS | - | Arctic National Wildlife Refuge System |
| AO | - | Area of Operation – Administrative Officer – Authorized Officer |
| APD | - | Application for Permit to Drill |
| AS-LMM | - | Assistant Secretary for Land and Minerals Management |
| ASAP | - | As Soon As Possible |
| ATROW | - | Access, Transportation, and Rights-of-Way |
| AWP | - | Annual Work Plan |

-B-

| | | |
|---|---|---|
| BIA | - | Bureau of Indian Affairs |
| BIFC | - | Boise Interagency Fire Center |
| BLM | - | Bureau of Land Management |
| BM | - | Bureau of Mines |
| BR | - | Bureau of Reclamation |
| BRASS | - | Bonus and Rental Accounting Support System (MMS) |

-C-

| | | |
|---|---|---|
| CA | - | Cooperative Agreement -  Communitization Agreement |
| CBWR | - | Coos Bay Wagon Road |
| CDI | - | Control Document Index |
| CEQ | - | Council on Environmental Quality |
| CER | - | Categorical Exclusion Review |
| CFR | - | Code of Federal Regulations |
| COAR | - | Contracting Officer's Authorized Representative |
| COB | - | Close of Business |
| COE | - | Corps of Engineers |
| CRA | - | Compensatory Royalty Agreement |
| CRIS | - | Comprehensive Resources Inventory System |
| CRT | - | Cathode Ray Tube |
| CY | - | Calendar Year |
| CRMP | - | Cultural Resources Management Plan |

Abbreviations/Acronyms, Page 2

H-3100-1  -  OIL AND GAS LEASING

Abbreviations/Acronyms

-D-

| | | |
|---|---|---|
| DEIS | - | Draft Environmental Impact Statement |
| DD | - | Deputy Directory – Due Date |
| DMP | - | District Management Profile |
| DO | - | District Officer |
| DOE | - | Department of Energy |
| DOI | - | Department of the Interior |
| DRD | - | Detailed Requirements Definition |
| DRF | - | Director's Reading File |
| DSC | - | Denver Service Center |
| DWA | - | Designated Wilderness Area |
| DWSA | - | Designated Wilderness Study Area |

-E-

| | | |
|---|---|---|
| EA | - | Environmental Assessment |
| EEO | - | Equal Employment Opportunity |
| EIS | - | Environmental Impact Statement |
| EO | - | Executive Order |
| E&MR | - | Energy and Mineral Resources |
| EROS | - | Earth Resource Observation System |
| ERTS | - | Earth Resource Technology Satellite |

-F-

| | | |
|---|---|---|
| FERC | - | Federal Energy Regulatory Commission |
| FES | - | Final Environmental Statement |
| FLPMA | - | Federal Land Policy and Management Act |
| FMO | - | Federal Mineral Ownership |
| FMV | - | Fair Market Value |
| FOGRMA | - | Federal Oil and Gas Royalty Management Act of 1983 |
| FPGP | - | Favorable Petroleum Geological Province |
| FR | - | Federal Register |
| FWS | - | Fish and Wildlife Service |
| FY | - | Fiscal Year |

-G-

| | | |
|---|---|---|
| GS | - | Geological Survey |
| GSA | - | General Services Administration |

-H-

| | | |
|---|---|---|
| HI | - | Historical Index |
| HMM | - | Hazardous Materials Management |
| HMP | - | Habitat Management Plan |

H-3100-1  -  OIL AND GAS LEASING

Abbreviations/Acronyms

-I-

| | | |
|---|---|---|
| IA | - | Interagency Agreement |
| IB | - | Information Bulletin |
| IBLA | - | Interior Board of Land Appeals |
| I&E | - | Inspection and Enforcement |
| IM | - | Instruction Memorandum |
| INT | - | Interior |
| IMP | - | Interim Management Program (For Lands Under Wilderness Review) |

-J-

| | | |
|---|---|---|
| JFSLUPC | - | Joint Federal State Land Use Planning Commission (For AK) |

-K-

| | | |
|---|---|---|
| KGRA | - | Known Geothermal Steam Resource Area |
| KGS | - | Known Geological Structures |
| KPLA | - | Known Phosphate Leasing Area |

-L-

| | | |
|---|---|---|
| L&M | - | Lands and Minerals |
| LMS | - | Lease Management System (defunct) |
| LU | - | Land Utilization |

-M-

| | | |
|---|---|---|
| MAP | - | Management Actions Plan |
| MBO | - | Management by Objectives |
| MER | - | Maximum Economic Recovery |
| MFP | - | Management Framework Plan |
| MLA | - | Mineral Leasing Act of 1920 |
| MLR | - | Management of Lands and Resources |
| MMS | - | Minerals Management Service |
| MOU | - | Memorandum of Understanding |
| MRB | - | Missouri River Basin |
| MS-1 | - | Minerals System 1 |
| MTP | - | Master Title Plat |
| MYP | - | Multiple Year Program |

-N-

| | | |
|---|---|---|
| N/A | - | Not Applicable – Not Available |
| NBEI | - | Non-Bureau Energy Initiative |
| NEPA | - | National Environmental Protection Act |
| NPR-A | - | National Petroleum Reserve-Alaska |

H-3100-1  -  OIL AND GAS LEASING

Abbreviations/Acronyms

| NPS | - | National Park Service |
|-----|---|-----------------------|
| NOC | - | Notice of Completion |
| NOI | - | Notice of Intent |
| NOS | - | Notice of Staking |

-O-

| O&C | - | Oregon and California (Grant Lands) |
|-----|---|-------------------------------------|
| OCS | - | Outer Continental Shelf |
| OMB | - | Office of Management and Budget |
| OPS | - | Operational Planning System |
| ORV | - | Off-Road Vehicle |
| OTU | - | One Time Use |

-P-

| PA | - | Participating Area (Unitization) |
|----|---|----------------------------------|
| PAA | - | Planning Area Analysis |
| PAAS | - | Production Accounting and Auditing Systems |
| PAWP | - | Preliminary Annual Work Plan |
| PBA | - | Policy, Budget and Administration |
| PD | - | Public Domain |
| PDOD | - | Program Decision Option Document |
| PDEIS | - | Preliminary Draft Environmental Impact Statement |
| PL | - | Public Law |
| PLO | - | Public Land Order |
| PMAO | - | Programmatic Memorandum of Agreement |
| PRLA | - | Preference Right Lease Application |
| PTC | - | Phoenix Training Center |

-R-

| RAH | - | Resource Area Headquarters |
|-----|---|----------------------------|
| RARE II | - | Roadless Area Review and Evaluation (FS's Wilderness Review Program) |
| RFP | - | Request for Proposal |
| RMP | - | Resource Management Plan |
| R&PP | - | Recreation and Public Purpose (Act) |
| R/W | - | Rights-of-Way |
| RUP | - | Recreation Use Permit |

-S-

| SBA | - | Small Business Administration |
|-----|---|-------------------------------|
| SC | - | Service Center |
| SCD | - | Service Center Director |
| SCS | - | Soil Conservation Service |
| SD | - | State Director |

BLM MANUAL

Rel.  3-122
8/6/85

H-3100-1  -  OIL AND GAS LEASING

Abbreviations/Acronyms

| | | |
|---|---|---|
| SOG | - | Simultaneous Oil and Gas (Leasing Program) |
| SF | - | Standard Form |
| SHPO | - | State Historic Preservation Officer |
| SID | - | Secretarial Issue Document |
| SIMO | - | Simultaneous Oil and Gas (Leasing Program) |
| SMA | - | Surface Management Agency |
| SMCRA | - | Surface Mining Control and Reclamation Act |
| SO | - | State Office – Secretarial Order |
| SOL | - | Office of the Solicitor |
| SSD | - | Supplemental Source Document or Scientific Systems Development |

-T-

| | | |
|---|---|---|
| TAPS | - | Trans-Alaska Pipeline System |
| TBA | - | To Be Announced |
| T/E | - | Threatened and Endangered |
| TE | - | Technical Examination |
| TO | - | Table of Organization |

-U-

| | | |
|---|---|---|
| UA | - | Unitization Agreement |
| UMC | - | User Master Catalog |
| URA | - | Unit Resource Analysis |
| USC | - | United States Code |
| USCA | - | United States Code Annotated |
| USDA | - | United States Department of Agriculture |
| USDI | - | United States Department of the Interior |
| USGS | - | United States Geological Survey |

-V-

| | | |
|---|---|---|
| VRM | - | Visual Resource Management |

-W-

| | | |
|---|---|---|
| WC&D | - | Watershed Conservation and Development |
| WFO | - | Western Field Office |
| WO | - | Washington Office |
| WSA | - | Wilderness Study Area |

Illustration 1
(I.B.4)

H-3100-1  -  OIL AND GAS LEASING

Chapter 2
Format for Accounting Advice Transferring Account from BRASS
to AFS for Collection of Compensatory Royalty Assessment

Form 1370-41
(December 1983)

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT

**RECEIPT AND ACCOUNTING ADVICE**

NO. 1118788 ~25

Subject:   COMPENSATORY ROYALTY ASSESSMENT

Applicant:

Remitter:

Assignor:

| LEASE MANAGEMENT DATA | ☐ NEW ☒ UPDATE ☐ PAYMENT | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ORIGINAL SERIAL NO. | ASG. | TYPE | ST. | CTY. | FUND SYMBOL | | ACRES/UNITS | RATE |
| M 30541 | | | | | | | | |

| AMOUNT | ANV. DATE | EXP. DATE | BILL CYC. | S/C | DISTRICT | NEXT BILL | MISC. DATA | U of M | ACTUAL UNITS |
|---|---|---|---|---|---|---|---|---|---|
| | 6/1/81 | | | P | | | | | |

| ASSIGNMENT SERIAL NO. | ASG. | TYPE | ST. | CTY. | FUND SYMBOL | | ACRES/UNITS | RATE |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| AMOUNT | ANV. DATE | EXP. DATE | BILL CYC. | S/C | DISTRICT | NEXT BILL | MISC. DATA | U of M | ACTUAL UNITS |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

| APPLY REMITTANCE | | | | Remarks: |
|---|---|---|---|---|
| ACTION | FUND SYMBOL | CTY. | AMOUNT | |
| FILING FEE | | | | Transfer account to AFS for collection of compensatory royalty. |
| RENTAL | | | | Assessment effective:  2/30/84. |
| UNEARNED | | | | |
| REFUND | | | | |
| TOTAL | | | | |
| AMOUNT DUE | | | | BY:                          DATE: |

☐ Lease in Escrow?
☐ EOS?
☐ Auto Escalator?
☐ Auto Renew?

Of Interest?
Operating Rights?
Operator
Bond Filed?

**FOR MMS USE ONLY**

| BILLED | NUMBER | FOREST REFUGE |
|---|---|---|
| OCS  SECTION | CODE | |

BLM MANUAL

Rel.  3-122
8/6/85

Illustration 2
(I.B.5)

H-3100-1  -  OIL AND GAS LEASING

Chapter 2
Format for Notice to Lessee of Transfer of Lease Account
from BRASS to AFS for Compensatory Royalty Payments

 **United States Department of the Interior**

**BUREAU OF LAND MANAGEMENT**

In Reply
Refer To:

Serial No.

<u>NOTICE</u>

:
:                          Oil and Gas                                :
:
:                          Producing Lease
:
<u>Lease Account Transferred</u>

The lease account for oil and gas lease _____(serial number)_____ was
transferred to the jurisdiction of:

Minerals Management Service
Royalty Management Program, Auditing
and Financial System
P.O. Box 5810
Denver, Colorado  80217

Reason for transfer:

Assessment of compensatory royalty charges have been made, as the lease is subject to drainage by Well No.1,
SE1/4SE1/4  Sec. 20, T. 22 N., R.59 E., Richland County, Montana.

Advance rental for the lease year beginning  (date)_____ through
_____(date)_____ was paid to BRASS and earned.  Future billing notices will continue
to originate from the Minerals Management Service.  All reports and monies must be sent to MMS.

This is a courtesy notice only, to be retained for your files.

Authorized Officer

Distribution:

Lessee(s)
Holder of Operating Rights
MMS, Denver (AFS) w/enclosures
BLM District
SMA's (if other than BLM)

Illustration 2
(I.B.5)

H-3100-1  -  OIL AND GAS LEASING

Chapter 2  -  Index by Keywords

Page

Agreement Approval………………………………………………………………………… II-2
Agreement Filed……………………………………………………………………………... II-1
Assessment Notification……………………………………………………………………... II-3
Automated Notation (Leased)……………………………………………………………….. II-3
Automated Notation (Unleashed)…………………………………………………………… II-4
District Report……………………………………………………………………………….. II-2
Nonproducing Lease Accounting Advice…………………………………………………… II-3
Notice to Lessee……………………………………………………………………………... II-3
Producing Lease……………………………………………………………………………... II-3
Records Notation…………………………………………………………………………….. II-3
Serialization and Records Notation…………………………………………………………. II-1
Solicitor's Review…………………………………………………………………………… II-2
Terms and Conditions……………………………………………………………………….. II-1
Transmittal…………………………………………………………………………………… II-2