Paul A. Turcke (ISB No. 4759)
MSBT Law, Chtd.
7699 West Riverside Drive
Boise, ID 83714
(208) 331-1800 (phone)
(208) 331-1202 (fax)
pat@msbtlaw.com

Erik E. Petersen, WSB No. 7-5608
Michael M. Robinson WSB No. 6-2658
Senior Assistant Attorneys General
Wyoming Attorney General's Office
2320 Capitol Avenue
Cheyenne, WY  82002
(307) 777-6946 (phone)
(307) 777-3542 (fax)
erik.petersen@wyo.gov
mike.robinson@wyo.gov

*Attorneys for the State of Wyoming*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, and CENTER FOR BIOLOGICAL DIVERSITY, <br><br> Plaintiffs, <br><br> v. <br><br> RYAN ZINKE, Secretary of Interior; DAVID BERNHARDT, Deputy Secretary of Interior; and UNITED STATES BUREAU OF LAND MANAGEMENT, an agency of the United States, <br><br> Defendants. | Case No. 1:18-cv-00187-REB <br><br><br> **[PROPOSED] STATE OF WYOMING'S RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [DKT. 30]** |

# INTRODUCTION[1]

Plaintiffs Western Watersheds Project and The Center for Biological Diversity (Interest Groups) filed a motion to enjoin four provisions of Instruction Memorandum (IM) 2018-034, which guides the Bureau of Land Management's (BLM) oil and gas leasing process. (Dkt. No. 30). The provisions the Interest Groups seek to enjoin regulate the time and manner of public participation in the BLM's leasing process. (Dkt. No. 30-1 at 1, n. 1). The Interest Groups object to changes made in the public participation process by IM 2018-034 intended to "streamline the leasing process to alleviate unnecessary impediments and burdens" by reducing certain time periods for public comment or objection. IM 2018-034 at 1. The Interest Groups complain that "[p]reparing public comments is a time-consuming process" and the new time frames make that task "difficult for even the most efficient and experienced professional staff." (Dkt. No. 30-1 at 24-25). In other words, the Interest Groups are seeking an injunction because they are inconvenienced.

By contrast, a preliminary injunction would cause real, concrete harm to the State of Wyoming and its citizens. If granted, a preliminary injunction would require

---

[1] On June 1, 2018, the State of Wyoming filed a motion to intervene. (Dkt. No. 13). The federal Defendants took no position on the motion (*Id*.), while the Interest Groups do not oppose. (Dkt. No. 19 at 1). This Court has yet to grant Wyoming's motion to intervene. In anticipation that the motion will be granted, and in order to comply with the response deadline, Wyoming offers this proposed response to the Interest Groups' motion for a preliminary injunction for the Court's consideration.

BLM to redo all oil and gas lease sales processed under IM 2018-034 using the timelines from the recently superseded instruction memorandum, IM 2010-117. Those lease sales, including one scheduled for this September, would be postponed for an unknown length of time. This would cost the State of Wyoming millions of dollars, lost jobs, and reduced public services. This is real world economic harm to real people. Balancing the equities and the public interest is not close under these circumstances. The State of Wyoming and its citizens would suffer significantly more harm than the Interest Groups. Accordingly, the State of Wyoming requests that this Court deny the extraordinary relief the Interest Groups seek.

## BACKGROUND

Effective January 31, 2018, the BLM updated its oil and gas lease process by adopting IM 2018-034 in place of IM 2010-117.[2] IM 2018-034 "sets out the policy of the [BLM] to simplify and streamline the leasing process to alleviate unnecessary impediments and burdens, to expedite the offering of lands for lease, and to ensure quarterly oil and gas lease sales are consistently held in accordance with the Mineral Leasing Act … [and Executive Orders 13783 and 3354]." IM 2018-034 at 1. In order to achieve that policy, revisions incorporated into IM 2018-034 include public participation in the leasing process.

---

[2] For the Court's convenience, IM 2018-034 is Attachment A and IM 2010-117 is Attachment B to this Response.

Under IM 2010-117, the process for reviewing and approving leases for sale was long and often drawn out. Field offices were not bound to complete their review of parcels proposed for leasing within specific timeframes. IM 2010-117 at Sect. III.A. The new IM establishes definite time periods that provide sufficient opportunity for the public to participate in the lease review process while eliminating unnecessary delays for oil and gas producers. IM 2018-034 at 1. Thus the new leasing review process balances the various interests in public lands and provides a reasonable approach to the oil and gas leasing process.

On July 6, 2018, the Interest Groups filed a motion for a preliminary injunction seeking to enjoin certain provisions of IM 2018-034. (Dkt. No. 30). Although the Interest Groups contend IM 2018-034 is invalid in its entirety because it was not properly adopted, (Dkt. No. 30-1 at 5), they only seek to enjoin four provisions addressing public participation in the BLM's oil and gas leasing process. (Dkt. No. 30-1 at 1, n. 1).

The Interest Groups seek to enjoin four provisions of IM 2018-034. First, the Interest Groups take issue with a change giving BLM state and field offices more discretion during the review process under the National Environmental Policy Act (NEPA) process identifying parcels for potential leasing. IM 2018-034 says those offices "may" provide for public participation whereas IM 2010-117 said the office

"will" provide public participation as part of the parcel identification process. IM 2018-034 at Sect. III.B.5; IM 2010-117 at Sect. III.C.7.

Second, in the course of the review of parcels for leasing, the BLM can issue a Determination of NEPA Adequacy (DNA), meaning that the existing NEPA analyses and Regional Management Plans (RMP) are sufficient to support a leasing decision and no further environmental analysis is needed. The previous IM provided for a thirty-day public review and comment period for a DNA determination despite expressly stating that public review and comment was "not required by law or regulation." IM 2010-117 at Sect. III.E. Now, consistent with the law, no further public comment is required for a DNA if the BLM concludes there is an adequately documented NEPA analysis that supports the proposed action, and that the action is consistent with the RMP. IM 2018-034 at Sect. III.D.

Third, the public protest period for a proposed sale is now ten days from the date the sale notice is posted rather than thirty days as previously provided. IM 2018-034 at Sect. IV.B; IM 2010-117 at Sect. III.H. The new IM did not change the practice of allowing unresolved protested leases from going to sale pending notice to potential bidders of the lease parcels subject to protest. *Id*. Further, if an unresolved protested parcel is leased the remedy is the same: protesting parties have the right to appeal the denial of a protest to the Interior Board of Land Appeals. *Id*.

Finally, the time for parcel review for a proposed specific lease is limited to six months while the prior policy allowed an indefinite time as necessary. IM 2018-034 at Sect. III.A; IM 2010-117 at Sect. III.A. The BLM determined that these changes were necessary to alleviate impediments and burdens caused by the open-ended nature of the public notice and comment process in IM 2010-117. IM 2018-034 at 1.

## ARGUMENT

### I.   Preliminary Injunction Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008).

> A party seeking a preliminary injunction must establish that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of a preliminary relief; (3) the balance of the equities tips in his favor; and (4) an injunction is in the public interest. … [T]he party seeking a preliminary injunction must carry its burden of persuasion by a "clear showing" of the four required elements.

*Depuy Synthes Sales v. Williams*, 2017 WL 5011880 *5-6 (D. Idaho 2017) (internal citations omitted).

"Although the balance of harms will usually favor the issuance of an injunction to protect the environment, the law does not require abandonment of a balance of equities analysis just because a potential environmental injury is at issue." *All. for the Wild Rockies v. United States Forest Serv.*, 2016 WL 3349221 *16-19 (D. Idaho June 14, 2016) (internal quotation marks omitted) (quoting *Earth Island*

*Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010)). Courts must balance all of the competing interests at stake including potential economic harm. *Id*. "The assignment of weight to particular harms is a matter for district courts to decide." *Id*. When a governmental entity is a party, the public interest factor usually merges with the balancing of the hardships or equities factors. *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014).

## II. The balance of the equities and the public interest factors weigh heavily in favor of denying the preliminary injunction.

Wyoming adopts and incorporates the federal Defendants' response to the motion for a preliminary injunction. In the interests of judicial economy, the State will focus this response on the factors that directly impact Wyoming's sovereign interests: the balance of the equities and the public interest.

The State of Wyoming receives significant revenue from BLM oil and gas lease sales and royalty payments from wells that go into production. *See, e.g.,* 30 U.S.C. § 191. These revenues fund public education and infrastructure projects. If granted, the preliminary injunction would deprive the State and its citizens of the economic benefit of the lease sales and the production of wells for an undetermined amount of time. In their motion, the Interest Groups' analysis of the balance of the equities and the public interest factors is cursory and superficial. Indeed, the Interest Groups do not engage in any balancing; they simply reiterate their alleged harm and conclude that is sufficient to tip the scale of the equities and public interest in their

favor.[3] The Interest Groups assume there are no interests at stake but their own. They are mistaken and, accordingly, their failure to recognize the competing interests and harms renders their argument on the equities and public interest factors legally insufficient to support a preliminary injunction.

### A.   A preliminary injunction would impose undue hardship on the State of Wyoming and its Citizens.

If the Court grants the preliminary injunction, the State of Wyoming and its citizens will suffer real, concrete economic harm. Wyoming receives substantial socioeconomic benefits from federal oil and gas leasing. Over half of all oil and gas production generated in Wyoming is from lands administered by the BLM. SWCA Environmental Consultants, *Economic Impacts of Oil and Gas Development on BLM Lands in Wyoming* at 6 (2011).[4] In addition to royalties and taxes, Wyoming receives significant revenue from federal lease sales. Wyoming gets approximately forty-eight percent of revenues generated from federal lease sales. S*ee*, *Third Quarter2018 (Part 2) Competitive Oil and Gas Lease Sale*, *Environmental Assessment DOI-BLM-*

---

[3] The Interest Groups assert that the requested preliminary injunction is "narrowly tailored" so as to limit "any potential harm to … the oil and gas industry." (Dkt. No. 30-1 at 36). This generalized statement is unsupported by any identification of the oil and gas industry's interests or any balancing of the industry's harms with the Interest Groups alleged harms.

[4]   Available at:   https://www.westernenergyalliance.org/wp-content/uploads/2011/10/SWCA-Report-Wyoming-NEPA-delay-impacts.pdf

*WY-0000-2018-0003-EA* at 72.[5] In 2017, the BLM generated $173 million in revenues from federal oil and gas leases in Wyoming providing the State with approximately $85 million. Kropatsch Declaration, Exhibit C at 4. That money funds public schools, highway and county road infrastructure, the University of Wyoming, capital construction projects, and the State's budget reserve account. *Environmental Assessment DOI-BLM-WY-0000-2018-0003-EA* at 72.

The Interest Groups seek to enjoin the public participation provisions of IM 2018-034. As noted below, the Interest Groups seek to use the preliminary injunction to delay scheduled federal oil and gas lease sales processed under IM 2018-034. The first sale is in September 2018. The delay of federal lease sales will significantly impact Wyoming financially. The September federal lease sale would generate significant revenues for the State. For example, the March 2018 sale brought in competitive bids totaling $19.7 million. *March 21-22, 2018 Sale Results* (PDF download).[6] The March sale only encompassed 152 parcels while the September sale will offer 350 parcels for bid. *Notice of Competitive Oil and Gas Lease Sale,*

---

[5] Available at: https://eplanning.blm.gov/epl-front-office/projects/nepa/106518/145732/179436/2018Q3ii_DOI-BLM-WY-0000-2018-0003-EA_Fin.pdf

[6] Available at: https://eplanning.blm.gov/epl-front-office/projects/nepa/85072/139859/171966/SALERESULTS.pdf

*September 18-20, 2018* at i.[7] In light of the different notice and comment provisions, reversion to IM 2010-117 will necessarily require postponement of the September lease sale, as well as one scheduled for December 2018, into at least 2019. Accordingly, Wyoming will see a dramatic drop in revenue from BLM oil and gas lease sales from 2017 to 2018. Kropatsch Declaration, Exhibit C at 5.

In addition, Wyoming will suffer financial harm from delayed lease sales through increased uncertainty in the marketplace. Kropatsch Declaration, Exhibit C at 5. Wyoming is heavily dependent on oil and gas production on federal lands. *See* Bureau of Land Mgmt., *Public Lands Statistics FY 2016* at 96-101 (May 2017).[8] Oil and gas companies operate in different states and many of those in Wyoming also have production operations in states such as Texas and North Dakota that have a greater concentration of development on private lands. Kropatsch Declaration, Exhibit C at 5. The lost opportunity caused by a delayed sale will cause some operators to pursue opportunities elsewhere. In addition, the uncertainty a preliminary injunction would cause on the regulatory framework under which these companies operate will encourage them to move their capital expenditures to those states that offer more regulatory certainty. *Id*. A delayed sale adds an opportunity

---

[7] Available at: https://eplanning.blm.gov/epl-front-office/projects/nepa/85072/152842/187109/Final_Book.pdf

[8] Available at: https://www.blm.gov/sites/blm.gov/files/PublicLandStatistics2016.pdf

cost that will make investing in Wyoming more expensive. *Id*. Every dollar operators allocate to operations in other states means lost revenue, jobs, and taxes to Wyoming and its citizens. Accordingly, the balance of the equities and the public interest weigh heavily in favor of denying the motion for a preliminary injunction.

> **B. The Interest Groups have failed to demonstrate that the balance of the equities and the public interest favor granting the extraordinary remedy of a preliminary injunction.**

The Interest Groups argument for a preliminary injunction rests on the alleged inconvenience of the public participation and comment provisions of IM 2018-034 to their ability to effectively analyze proposed federal oil and gas lease sales. (Dkt. No. 30-1 at 35-37). The Interest Groups allege that IM 2018-034 inhibits their ability to review proposed leases, visit the lease sites, keep up with the increasing number and scope of leases proposed for sale, and assess the potential impacts of a lease. (*Id*. at 24-25). The Interest Groups claim that they do not have the manpower or financial resources to do the reviews of proposed leases that they would like to do. (*Id*.). In other words, IM 2018-034 inconveniences them. That alleged harm cannot outweigh the real financial harm that Wyoming will suffer if the preliminary injunction is granted.

The Interest Groups allege harm arising from their inability to perform a comprehensive review of every oil and gas lease proposed for sale. The implication of not being able to perform that review is environmental harm, because the agency

11

action is not sufficiently subjected to public review. This remains merely an implication, however, because the Interest Groups have not submitted evidence of any actual environmental harm. Instead, they have merely made a claim that they need more money and staff. However, their financial inadequacies are insufficient to justify a preliminary injunction, because the reasonableness of the IM is not measured by their limited resources.

The declarations the Interest Groups submitted in support of their motion for a preliminary injunction list a litany of activities that make "[p]reparing meaningful public comments … a time-consuming process[.]" (Dkt. No. 30-1 at 24). But, compliance with reasonable time periods for public participation and comment on a proposed agency action does not constitute an irreparable harm. Of course, the Interest Groups have not shown how much money or how many additional employees they would need to perform their review. Their speculative assertions notwithstanding, any monetary harm these Interest Groups might suffer is remediable, not irreparable, if a preliminary injunction is not granted. Wyoming stands to lose millions. The Interest Groups might have to spend thousands at most, which is not remotely compare to the monetary harm the State of Wyoming and its citizens would suffer. Under these circumstances, the balance of the equities and the public interest favors denying the preliminary injunction. Accordingly, the Court should find that the harm that will result from granting a preliminary injunction

significantly outweigh the ameliorative effects of a preliminary injunction on the speculative harm the Interest Groups would allegedly suffer. The motion for a preliminary injunction should be denied.

## CONCLUSION

The Interest Groups have failed to make an argument showing that the alleged harms they seek to alleviate through the extraordinary remedy of a preliminary injunction outweigh the economic hardships it will impose on Wyoming and its citizens through lost revenues and jobs. The Interest Groups argue harm based on speculated inconvenience to their ability to comment on oil and gas lease sales, a harm which does not outweigh the concrete financial harm the State of Wyoming and its citizens will suffer. The balance of the equities and the public interest weigh against granting the preliminary injunction. For the above reasons and those expressed by the federal Defendants, the Court should deny the Interest Groups' request for extraordinary relief.

Dated this 10th day of August, 2018.

                        THE STATE OF WYOMING

                        /s/ Michael M. Robinson
                        Erik E. Petersen, WSB No. 7-5608
                        Michael M. Robinson, WSB No. 6-2658
                        Senior Assistant Attorneys General
                        Wyoming Attorney General's Office
                        2320 Capitol Avenue
                        Cheyenne, WY  82002

(307) 777-6946 (phone)
(307) 777-3542 (fax)
erik.petersen@wyo.gov
mike.robinson@wyo.gov

/s/ Paul A. Turcke
Paul A. Turcke (ISB No. 4759)
MSBT Law, Chtd.
7699 West Riverside Drive
Boise, ID 83714
(208) 331-1800 (phone)
(208) 331-1202 (fax)
pat@msbtlaw.com

*Attorneys for the State of Wyoming*

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2018, I caused the foregoing to be electronically filed with the Court using the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Laurence J. Lucas<br>llucas@advocateswest.org | John S. Most<br>john.most@usdoj.gov |
| Talasi B. Brooks<br>tbrooks@advocateswest.org | Luther L. Hajek<br>luke.hajek@usdoj.gov |
| Todd C. Tucci<br>ttucci@advocateswest.org | Bret A. Sumner<br>bsumner@bwenergylaw.com |
| Sarah Stellberg<br>sstellberg@advocateswest.org | |

/s/ Michael M. Robinson
Michael M. Robinson