Bret Sumner, *Pro Hac Vice*
bsumner@bwenergylaw.com
BEATTY & WOZNIAK, P.C.
216 Sixteenth St., Suite 1100
Denver, CO 80202-5115
Telephone: 303-407-4499
Fax: 800-886-6566

Paul A. Turcke, ISB #4759
MSBT LAW
7699 West Riverside Drive
Boise, ID 83714
Telephone: 208-331-1800
Fax: 208-331-1202
Email: pat@msbtlaw.com

Attorneys for Proposed Defendant- Intervenor Western Energy Alliance.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| **WESTERN WATERSHEDS PROJECT**, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>**RYAN K. ZINKE,** Secretary of the Interior, *et al*.,<br><br>    Defendants,<br><br>**WESTERN ENERGY ALLIANCE**,<br><br>    Proposed Defendant-Intervenor. | Case No. 1:18-cv-00187-REB<br><br>**PROPOSED RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION [DKT. 30]** |

Proposed Defendant-Intervenor Western Energy Alliance (Alliance) files this Proposed Response in Opposition to Motion for Preliminary Injunction [Dkt. 30]. The Alliance opposes Plaintiffs Western Watersheds Project and Center for Biological Diversity's (Plaintiffs) requested relief because the harm to Alliance members far outweighs the entirely speculative and hypothetical harms posited by Plaintiffs. The "balance of equities" does not tip in their favor and the injunction is not in the public interest. Dkt. 30-1 at 15.

Plaintiffs seek a preliminary injunction from the implementation of Instructional Memorandum (IM) 2018-034, delaying upcoming lease sales in September and December 2018 statutorily required under the Mineral Leasing Act.

The harm to the Alliance's company members would be significant. To date, prospective bidders for the December 2018 lease sales in Colorado, Montana, Nevada, North Dakota and Utah have spent at least $2,806,400 evaluating leases and conducting due diligence. **Exhibit 1**, Declaration of Kathleen Sgamma ¶¶ 8–9.[1] In fiscal year 2017, comparable due diligence ultimately led to operators purchasing 1,188,259 acres at competitive sale across the United States for $348,852,506. *Id.* ¶ 11.[2] The amount of capital potentially to be invested from the upcoming sales that Plaintiffs seek to enjoin is significant, and industry needs regulatory certainty to provide business certainty for such substantial investments and to avoid stranding capital and delaying development plans that involve contiguous or adjacent acreage that is already under lease.

At best, Plaintiffs disagree with the policies they seek to challenge, but mere disagreement is not sufficient to bring an actionable challenge under the Administrative Procedures Act. Plaintiffs cannot carry their burden of proof to establish that a preliminary injunction is warranted in this case. Plaintiffs cannot prove their irreparable harm, the balance of equities does not favor injunction, and an injunction is not in the public interest. Thus, they are not entitled to the "extraordinary remedy" of a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011).

---

[1] Amounts spent evaluating lease sales in Wyoming were not available, although approximately 51.7% of money spent on leases in fiscal year 2017 were in Wyoming. Data available online at https://www.blm.gov/sites/blm.gov/files/Table15_Oil_and_Gas_Lease_Sales_FY2017.pdf.

[2] The four Wyoming lease sales in fiscal year 2017 accounted for $180,336,826 of the $348,852,506 raised at competitive lease sales.

The Alliance also adopts and incorporates the arguments set forth by Federal Defendants in their Response to Motion for Preliminary Injunction.  Specifically, the Alliance asserts that Plaintiffs' Motion for Preliminary Injunction is not ripe for judicial review as the Bureau of Land Management (BLM) has not performed a final agency action, and BLM has discretion to conduct lease sales in accordance with federal regulations.

A. <u>Plaintiffs Cannot Prove Irreparable Harm</u>

Plaintiffs allege that BLM's implementation of IM 2018-034 will cause irreparable harm from oil and gas development, will generate "irreversible bureaucratic momentum," and will make it difficult for Plaintiffs and the public to comply with IM 2018-034.  Dkt. 30-1 at 30–35. Ultimately, Plaintiffs' claims must fail because IM 2018-034 is merely a policy and not a final agency action that is actionable under the Administrative Procedures Act.  Plaintiffs' attempt to seek programmatic, "wholesale improvement" of BLM's leasing process guidance, rather than a concrete agency action applying the guidance to cause harm to Plaintiffs.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) (prohibiting request for wholesale improvement by court decree, and stating that a final agency action involve a concrete action applying the program such that it harms plaintiff); *Fund For Animals v. U.S. BLM*, 357 F. Supp. 2d 225, 229 (D.C. Cir. 2004) (BLM policy is not a final agency action, only concrete action taken pursuant to policy is final).  Here, Plaintiffs seek to challenge a policy rather a final agency action, such as the decision whether to offer lease parcels for sale.

Moreover, Plaintiffs' allegations ignore the governing legal framework for BLM's oil and gas decision-making process.  BLM's statutory and regulatory framework forms the basis for both the agency's scope and timing of its corresponding National Environmental Policy Act (NEPA) analyses.  BLM is required to conduct a number of NEPA reviews at key junctures in

the three-staged decision-making for federal oil and gas resources. *See N. Alaska Envtl. Ctr. v. Kempthorne*, 457 F.3d 969, 977 (9th Cir. 2006) (*NAEC*) (requiring additional NEPA analysis at development stage because impossible to know if development will occur at leasing stage).

First, BLM must prepare a planning environmental impact statement (EIS) in conjunction with its preparation and approval of a new or revised federal land use plan, called a resource management plan (RMP).  43 C.F.R. § 1601.0-6.  BLM's extensive planning process allows multiple opportunities for public involvement and comment on the agency's proposed uses for the geographic area in question, including future oil and gas leasing and development.  43 C.F.R. § 1610.2.

Second, prior to holding a competitive oil and gas lease sale for the public, BLM must determine whether offering nominated parcels for lease is in conformance with the applicable RMP.  BLM must determine whether oil and gas leasing on the parcels in question have been sufficiently analyzed in an existing NEPA document (e.g., the EIS accompanying the RMP), or whether additional NEPA analysis is required.  After performing NEPA review and analysis on the nominated parcels, BLM may decide to offer all or some of the parcels for sale at a quarterly oil and gas lease sale.

Third, upon receiving an APD or development plan from the lessee, BLM is required to undertake a site-specific environmental review to determine what additional level of NEPA analysis is required.  Prior to approving any exploratory or development permit, BLM must undertake the appropriate NEPA analysis.  43 C.F.R. § 3162.5-1.  The APD must include detailed information regarding the lessee's drilling plan, surface use plan of operations (containing road and drill pad locations, details of pad construction, methods for containment and disposal of waste material, plans for surface reclamation), evidence of bond coverage, and

any other information required by applicable agency orders and notices. 43 C.F.R. § 3162.3-1(d)-(f).

Pursuant to the regulatory requirements of Onshore Order No. 1, BLM will conduct an on-site review prior to approving any APD. 72 Fed. Reg. 10,308, 10,334 (Mar. 7, 2007). The lessee's proposed drilling and surface use plans must be approved by BLM before the lessee is allowed to perform any surface disturbing activities. 43 C.F.R. § 3162.3-1. *See also NAEC* 457 F.3d at 977 ("Any later plan for actual exploration by lessees will be subject to a period of review before being accepted, rejected, or modified by the Secretary."). NEPA mandates that BLM conduct additional analysis prior to any surface disturbance occurring on federal leases; Plaintiffs' argument that that the lease sales will likely result in irreparable harm simply ignores this mandate.

Plaintiffs' claim of irreparable harm suffers from an additional flaw. Plaintiffs seek to require additional public comment for upcoming lease sales based on the entirely hypothetical and speculative assumption that the September and December 2018 lease sale environmental assessments will violate NEPA. As set forth in Federal Defendants' Response, Plaintiffs' claims on this issue are not ripe for adjudication. Thus, Plaintiffs have not shown the likelihood of irreparable harm sufficient for this Court to grant their requested relief.

Finally, Plaintiffs allege that IM 2018-034 would discourage public comment on proposed BLM actions. As set forth in Federal Defendants' Response, BLM has discretion to issue this policy guidance. Moreover, Plaintiffs have continued to file public comments since IM 2018-034 was issued. Thus, their final claim regarding irreparable harm is without merit.

B.        Balance of Equities Does not Favor Preliminary Injunction

Contrary to Plaintiffs' assertions, the balance of equities does not favor preliminary injunction because Plaintiffs cannot show that the injunction will do more good than harm. *Cottrell*, 632 F.3d at 1133; Dkt. 30-1 at 35–36.

Alliance members will suffer significant harms if the Court grants Plaintiffs' requested relief. Harms to oil and gas companies go far beyond Plaintiffs' alleged "slight delay" in lease issuance and anticipated revenues. Dkt. 30-1 at 36. Companies have been evaluating lease parcels and related business plans extensively in advance of the schedule lease sales. To date, prospective bidders for the December 2018 lease sales in Colorado, Montana, Nevada, North Dakota and Utah have spent approximately $2,806,400 evaluating the nominated parcels. This investment equates to an average of $6,542 per parcel for the 429 parcels noticed for those lease sales. Sgamma Decl. ¶ 9.

These due diligence costs include resources spent evaluating prospective leases, conducting geologic research, conducting due diligence on other resource issues, nominating parcels, assessing the financial potential, budgeting capital allocation, creating exploration and development strategies, and other background work to determine whether to nominate and pursue leases at upcoming competitive sales. *Id.* ¶ 8.

While it is impossible to predict the proceeds these lease sales will ultimately procure at these competitive sales, by comparison, in fiscal year 2017, competitive lease sales across the United States raised $348,852,506. *Id.* ¶ 11. For the lease sales that have been conducted, and are subject to challenge in this case, companies invested approximately $192,166,514.50.[3]

---

[3] This total includes the rents, bonuses and administrative fees from the eight "Final Action" lease sales challenged by Plaintiffs (Complaint ¶¶ 150–225) except for the March 2018 Wyoming lease sale, which only includes bonuses paid at the lease sale.

Alliance members' business and development plans rely on the regulatory and procedural certainty afforded by BLM laws, regulations, policies and procedures concerning the leasing of federal minerals. Once lease sales are noticed, Alliance members allocate financial and personnel resources to evaluating leases. Disrupting these procedures in the federal oil and gas leasing process harms the Alliance and its members. *Id.* ¶ 12.

Alliance member companies face significant harm from this Motion for Preliminary Injunction because Plaintiffs' requested relief would jeopardize millions of dollars spent preparing for lease sales, lost opportunity costs associated with invested capital sitting idle, future exploration and development plans tied to existing leases, and the federal lease sale process. *Id.* ¶ 13.

Simply put, Plaintiffs' requested relief would halt upcoming lease sales, at best causing millions of dollars of invested capital to sit idle and at worst jeopardizing these investments. This harm is compounded by lost opportunity costs of that capital and having to reallocate personnel resources.

These harms greatly outweigh Plaintiffs' alleged speculative and purely hypothetical harm based upon facial challenges to agency policies. Plaintiffs' allegations of harm are solely based on the assumption that any future lease sale environmental assessments will have deficient NEPA analysis. Not only are Plaintiffs' claims as to nonexistent lease sale EAs not ripe, but they are unwarranted. BLM is required to conduct additional NEPA analysis and impose conditions to protect environmental resources prior to any surface disturbance being authorized. 43 C.F.R. §§ 3162.3-1, 3162.5-1; *NAEC* 457 F.3d at 977.

As Plaintiffs have alleged no actual environmental harm, much less harm rising to the level of the loss of Alliance members' significant financial investments, the balance of equities requires this Court not to grant Plaintiffs' requested relief.

C. <u>Preliminary Injunction is Not in the Public Interest</u>

Finally, Plaintiffs assert that public interest favors an injunction because there is a public interest in "avoiding irreparable environmental injury." Dkt. 30-1 at 36. As previously stated, Plaintiffs have failed to prove the likelihood of any irreparable environmental injury—Plaintiffs' claims are premature and fail to recognize that, even if leased, no surface disturbing activities will be authorized on the lands at issue.

To the contrary, it is in the public interest that federal oil and gas leasing continue consistent with the Mineral Leasing Act, BLM regulations and guidance. Alliance members and other oil and gas companies rely on regulatory certainty when allocating millions of dollars to evaluate prospective leases. Sgamma Decl. ¶¶ 8, 12. Furthermore, federal oil and gas leasing raises hundreds of millions of dollars for federal, state and local governments, and spurs the economy with revenue and job creation. *Id.* ¶¶ 10, 11, 14.

Plaintiffs' requested relief not only disrupts upcoming lease sales, putting royalty and lease sale revenues at risk, but creates regulatory uncertainty, which discourages investment. In light of the fact that Plaintiffs fail to assert the likelihood of any irreparable harm to the environment and fail to plead claims that are ripe for this Court's review, the public interest favors denying their requested relief.

## **CONCLUSION**

For the reasons outlined above, Plaintiffs fail to meet their burden to show they are entitled to the extraordinary remedy of their requested relief and Proposed Defendant-Intervenor

Western Energy Alliance respectfully requests that the Court deny Plaintiffs' Motion for Preliminary Injunction.

Respectfully submitted this 10th day of August, 2018.

/s Bret Sumner
Bret Sumner
*Pro Hac Vice*

/s/ Paul Turcke
Paul Turcke


*Counsel for Proposed Defendant-Intervenor
Western Energy Alliance*

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2018, I caused the foregoing **PROPOSED RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION [DKT. 30]** to be electronically filed with the Court using the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Laurence J. Lucas
llucas@advocateswest.org

Talasi B. Brooks
tbrooks@advocateswest.org

Todd C. Tucci
ttucci@advocateswest.org

Sarah Stellberg
sstellberg@advocateswest.org

John S. Most
john.most@usdoj.gov

Luther L. Hajek
luke.hajek@usdoj.gov

Erik Petersen
erik.petersen@wyo.gov

Mike Robinson
mike.robinson@wyo.gov

*/s/ Bret Sumner*