UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> RYAN K. ZINKE, Secretary of the Interior, *et al.*, <br><br> Defendants. | Case No.: 1:18-cv-00187-REB <br><br> **MEMORANDUM DECISION AND ORDER RE:** <br><br> **STATE OF WYOMING'S MOTION TO INTERVENE** <br> **(Docket No. 13)** <br><br> **WESTERN ENERGY ALLIANCE'S MOTION TO INTERVENE** <br> **(Docket No. 20)** |

Now pending before the Court are: (1) State of Wyoming's ("Wyoming") Motion to Intervene (Docket No. 13), and (2) Western Energy Alliance's ("WEA") Motion to Intervene (Docket No. 20). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:[1]

---

[1] Within its Motion, Wyoming states that it "consents to Magistrate Judge Bush presiding over this case." Wyoming Mot. to Intervene, p. 2 (Docket No. 13). In turn, Plaintiffs Western Watersheds Project and Center for Biological Diversity (collectively "WWP") do not oppose Wyoming's request to intervene in this action. *See* WWP's Non-Opp. to Wyoming Intervention Mot., p. 1 (Docket No. 19) ("Plaintiffs do not oppose the State of Wyoming's motion to intervene in this matter, *based on the State of Wyoming's written statement in the motion that it consents to the Magistrate Judge assigned to this case*.") (underline in original, italics added). However, a prospective intervenor is not a "party" from whom consent must be obtained for magistrate judge jurisdiction; so long as the actual parties to the suit have given consent for the case to proceed before a magistrate judge, the consent of prospective intervenors is not necessary for the magistrate judge to exercise jurisdiction. *See Robert Ito Farm, Inc. v. County of Maui*, 842 F.3d 681, 687 (9th Cir. 2016). Here, WWP and Defendants Ryan Zinke, David Bernhardt, and the Bureau of Land Management ("BLM") (collectively the "Federal Defendants") have previously consented to magistrate judge jurisdiction. *See* 5/25/18 Docket Entry (Docket No. 11). Upon a magistrate judge's order allowing intervention, the new party must also consent for a magistrate judge to exercise jurisdiction over the case. Necessarily, Wyoming's statement of consent *before* it became a party does not replace the necessity for consent to be given after a decision allowing intervention. *See Robert Ito Farm*, 842 F.3d at 687.

**MEMORANDUM DECISION AND ORDER - 1**

## I. BACKGROUND

Broadly speaking, this case challenges the Trump Administration's allegedly unlawful actions to promote and expedite oil and gas leasing on public lands (or managed by the United States) that, according to WWP, "will adversely impact essential habitats and populations across the range of the greater sage-grouse . . ., and violate bedrock environmental laws including the Federal Land Policy and Management Act ("FLPMA"), the National Environmental Policy Act ("NEPA"), and the Administrative Procedure Act ("APA")." *Compl.*, ¶ 1 (Docket No. 1). More specifically, WWP alleges that the Federal Defendants have issued a series of orders, reports, and directives that effectively disregard previously-understood/followed protections for sage-grouse populations, while limiting opportunities for public involvement during the oil and gas leasing process – materializing in eight "final" BLM oil and gas leases (three in Montana, one in Utah, and four in Wyoming) that impact sage-grouse habitats. *See id*. at ¶¶ 1-14, 73-225. WWP now challenges these leasing actions as violating the 2015 Sage-Grouse Plan Amendments to BLM Resource Management Plans, FLPMA, NEPA, and the APA. *See id*. at ¶¶ 276-307. WWP additionally challenges two recent BLM "Instruction Memoranda" ("IMs") that WWP claims revised BLM oil and gas leasing and development policies without any public procedures (notice and comment) or environmental review – IM 2018-026, which overrides the "prioritization" requirement of the 2015 Sage-Grouse Plan Amendments (prioritizing oil and gas leasing outside of sage-grouse habitat); and IM 2018-034, which avoids environmental analysis of oil and gas leasing and development decisions, while limiting public notice and involvement in those decisions. *See id*. at ¶¶ 98-112.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 24 allows intervention by right or by permission. Intervention by right under Rule 24(a)(2) requires that: "(1) the applicant must timely move to

**MEMORANDUM DECISION AND ORDER - 2**

intervene; (2) the applicant must have a significantly protectable interest related to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003); *see also* Fed. R. Civ. P. 24(a)(2). In general, courts construe Rule 24(a) liberally in favor of intervention. *See Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001). Moreover, the court's evaluation is "guided primarily by practical considerations," not technical distinctions. *See id*. Nonetheless, the "[f]ailure to satisfy any one of the requirements is fatal to the application." *Perry v. Prop. 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

Where intervention as of right is unavailable, a party may still seek permissive intervention. Under Rule 24(b), "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Rule also requires the court to consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). As with Rule 24(a) intervention, the court should interpret the requirements broadly in favor of intervention. *See United States v. Aerojet*, 606 F.3d 1142 (9th Cir. 2010).

### III. DISCUSSION

There is no question that Wyoming's and WEA's at-issue applications for intervention are timely – the first factor. Consideration of the second and third factors – whether Wyoming and WEA may suffer an impairment of a "significantly protectable" interest as a result of this lawsuit – calls on the Court to follow "practical and equitable considerations" and construe Rule 24(a) broadly in favor of Wyoming's and WEA's intervention efforts. *Wilderness Society v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011). For instance, is there an "interest protectable

**MEMORANDUM DECISION AND ORDER - 3**

under some law" and is there "a relationship between the legally protected interest and the claims at issue?" *Id*. at 1180.  Wyoming and WEA "ha[ve] a sufficient interest for intervention purposes if [they] will suffer a practical impairment of [their] interests as a result of the pending litigation." *Id*.

Here, Wyoming characterizes its interest as preventing the interruption of the four oil and gas leases located in the state that are involved in this case.  *See* Wyoming Mem. in Supp. of Mot. to Intervene, p. 3 (Docket No. 13-1).  Additionally, Wyoming asserts that 37% of the total population of the greater sage-grouse exists in Wyoming (more than twice as much as any other state) and further asserts that the state has expended significant resources to ensure the successful implementation of its coordinated conservation efforts concerning sage-grouse populations and habitat.  *See generally id*. at pp. 3-5, 7-9.  Wyoming argues that, if WWP's requested relief is granted, its ability to maintain a balance between conservation of the greater sage-grouse and the economic needs of its citizens may be compromised.  *See id*. at p. 9 ("[Wyoming] has a vested interest in the implementation of the 2015 Plans.  In addition, programs dependent on taxes from oil and gas development on federal lands will suffer from a loss of funds.  The loss of those governmental revenues constitutes a concrete and imminent injury that would be fairly traceable to the conservation organizations' success in this litigation.") (internal quotation marks and citations omitted).

WEA, in turn, represents oil and gas producers.  Specifically, WEA is a regional trade association representing more than 300 member companies engaged in all aspects of oil and gas exploration and production in the western United States, including Idaho, Wyoming, Colorado, Nevada, Montana, North Dakota, South Dakota, and Utah.  *See* WEA Mem. in Supp. of Mot. to Intervene, p. 2 (Docket No. 20-1).  WEA claims that it not only has significant monetary interests in the challenged oil and gas leases at issue in this case, but also an organizational

**MEMORANDUM DECISION AND ORDER - 4**

interest in maintaining regulatory certainty in the BLM's oil and gas leasing program. *See id*. at pp. 5-6. ("[WEA] members have invested tens of millions of dollars on the leases in question and billions of dollars in operations in greater sage-grouse habitat, operations that expand across much of the range affected by the challenged actions."). If WWP prevails in this case, WEA claims that its members "would suffer economic harm from greater restrictions that would be imposed on federal leases and property rights owned by them," while being "unable to fully develop their leased oil and natural gas resources," resulting in reduced income to the member companies. *Id*. at 7.

These arguments sufficiently satisfy the second and third factors, in that Wyoming and WEA each has a "significantly protectable" interest that could be impaired by this litigation. This litigation may impact oil and gas leases (both existing and future) in Wyoming, while also affecting regulatory procedures surrounding the issuance of oil and gas leases generally in portions of the Western United States. Hence, both entities have a significantly protectable interest at stake in this litigation – interests that could be impaired if they are not permitted to intervene. *See, e.g.*, *Western Watershed Project v. U.S. Fish and Wildlife Serv.*, 2011 WL 2690430 (D. Idaho 2011) (granting intervention upon showing that relief might consist of mitigation measures that could have substantial effect on permits held by proposed intervenors).

The fourth factor examines whether Wyoming's and WEA's interests are adequately represented by the Federal Defendants. To resolve this issue, courts consider: "(1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect." *Berg*, 268 F.3d at 822. In short, Wyoming and WEA must demonstrate that the Federal Defendants may not adequately represent its interests. *See id*. The burden of showing

inadequacy is "minimal" – Wyoming and WEA need only show that representation of their interests by the Federal Defendants "may be" inadequate. *Id*. In assessing the adequacy of representation, the focus should be on the "subject of the action," not just the particular issues before the court at the time of the motion. *See id*.

While the Federal Defendants have a duty to represent the interests of the public, they have no duty to represent the personal or economic interests of non-federal governmental entities like Wyoming or WEA regarding environmental litigation that challenges federal action. *See, e.g.*, *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995) (finding that federal government is "required to represent a broader view than the more narrow, parochial interests" of a proposed state or county intervenor). It is true that the Federal Defendants, Wyoming, and WEA have a fundamental interest in seeing the oil and gas lease sales upheld; but, it cannot be said that the Federal Defendants will "undoubtedly" make Wyoming's and WEA's arguments for them, and not with the same level of urgency and priority. While the Federal Defendants will generally defend the Secretary's decision (and decision-making process), only Wyoming and WEA are uniquely capable of explaining how any potential ruling will affect a state's economy and the property interests of a private trade association that are both heavily dependent on oil and gas production/leasing. *See Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) ("government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same position in the litigation.'") (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)). With this in mind, Wyoming and WEA have individually made the requisite "minimal" showing on inadequacy.

The discussion above shows that Wyoming and WEA meet all the requirements for intervention as of right and the Court will accordingly grant their requests to intervene. Under

similar circumstances, at least one other court within the Ninth Circuit has allowed Wyoming and WEA to separately intervene under Rule 24(a). *See Montana Wildlife Fed'n v. Zinke*, Case No. 4:18-cv-00069-BMM (D. Mont. 2018) (Docket No. 26) ("Plaintiffs challenge six Bureau of Land Management (BLM) lease sales in Montana, Wyoming, and Nevada. The State of Wyoming seeks to intervene to protect its interests in preventing the interruption of oil and gas leasing within the state. Western Energy Alliance seeks to intervene to protect the economic interests of its members in the leasing and development of oil and gas resources on public lands. Federal Defendants likely possess similar, but not necessarily the same, interests as the Applicants. The Applicants meet the standard for intervention as of right."). Still, to ensure against redundancy moving forward, the Court will require counsel for Wyoming and WEA to consolidate their briefing, consistent with the protocol outlined below.

## IV. **ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that (1) Wyoming's Motion to Intervene (Docket No. 13), and (2) WEA's Motion to Intervene (Docket No. 20) are GRANTED.

IT IS FURTHER HEREBY ORDERED that, with the exception of briefing concerning WWP's Motion for Preliminary Injunction (Docket No. 30) (Wyoming's and WEA's responses thereto are already on-file (Docket Nos. 50-51)), (1) Wyoming's and WEA's briefs shall be filed two weeks after Federal Defendants' briefing; (2) Wyoming and WEA shall file joint briefs; and (3) Wyoming's and WEA's joint briefing shall be limited to issues not addressed in Federal Defendants' briefing.

IT IS FURTHER ORDERED that Wyoming and WEA respond to WWP's Complaint on or before September 5, 2018.

**IT IS FURTHER HEREBY ORDERED that, on or before August 24, 2018, Wyoming and WEA must each either (1) consent to have a magistrate judge conduct any**

**MEMORANDUM DECISION AND ORDER - 7**

**or all proceedings in the case and order the entry of final judgment, (2) request immediate reassignment to a District Judge, or (3) otherwise withhold consent (in which case the action will be reassigned to a District Judge). Parties are free to withhold their consent without adverse substantive consequences, and the Clerk of Court will take reasonable steps to ensure the voluntariness and confidentiality of consents and requests for reassignment.** Contemporaneous with this Memorandum Decision and Order, the Clerk of Court will issue a Notice of Assignment to a United States Magistrate Judge and Consent Form.

DATED: August 21, 2018

_____
Ronald E. Bush
Chief U.S. Magistrate Judge