Bret Sumner, *Pro Hac Vice*
bsumner@bwenergylaw.com
BEATTY & WOZNIAK, P.C.
216 Sixteenth St., Suite 1100
Denver, CO 80202-5115
Telephone: 303-407-4499
Fax: 800-886-6566

Paul A. Turcke, ISB #4759
MSBT LAW
7699 West Riverside Drive
Boise, ID 83714
Telephone: 208-331-1800
Fax: 208-331-1202
Email: pat@msbtlaw.com

Attorneys for Defendant-Intervenor Western Energy Alliance.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **WESTERN WATERSHEDS PROJECT**, *et al.*, | Case No. 1:18-cv-00187-REB |
| Plaintiffs, | |
| v. | **INTERVENOR WESTERN ENERGY ALLIANCE'S [PROPOSED] SUR-REPLY TO MOTION TO SEVER AND TRANSFER [ECF 12]** |
| **RYAN K. ZINKE,** Secretary of the Interior, *et al*., | |
| Defendants, | |
| **WESTERN ENERGY ALLIANCE**, | |
| Defendant-Intervenor. | |

Defendant-Intervenor Western Energy Alliance (Alliance) files this [Proposed] Sur-Reply in Support of Defendants' Motion to Sever and Transfer [Dkt. 12] to address several legal issues that arose at the August 14, 2018 Hearing on Federal Defendants' Motion to Sever and Transfer (Motion), and to clarify the factual record.

I.     **The Oil and Gas Lease Sales at Issue Unquestionably Involve Real Property Interests under the Venue Statute**

First, the Alliance seeks to clarify the suggestion made at the Hearing on the Motion that this matter does not involve "real property interests." This matter unquestionably involves oil and gas leases that constitute real property interests under 28 U.S.C. § 1391(e).

In fact, this District has confirmed that a challenge to the Bureau of Land Management's (BLM) oil and gas leasing decisions do involve "real property interests" under 28 U.S.C. § 1391(e). *Landis v. Watt*, 510 F. Supp. 178, 180 (D. Idaho 1981). In *Landis*, the Plaintiff brought suit to reinstate several oil and gas leases that BLM canceled. In determining that the case involved real property interests because Section 1391(e) applied, the Court looked to the legislative history of that section. The Court acknowledged that it was the opinion of at least the Justice department that "principal demand for [Section 1391(e)] comes from those who wish to seek review of decisions relating to public lands, *such as the awarding of oil and gas leases*, consideration of land patent applications and the granting of grazing rights or other interests in the public domain. The applicants may reside in any State, or several States of the Union, *and it would be unwise to have the Secretary sued in Maine with respect to an oil and gas lease in Wyoming*." *Id.* at 180–81 (citing S. Rept. No. 1992, 87th Cong., 2d Sess., reprinted in (1962) U.S. Code Cong. & Adm. News 2789). The *Landis* court further found that the Senate adopted the Justice Department's opinion that suits concerning oil and gas leases fell under Section 1391(e), as indicated when the Senate report said: "[f]requently, these proceedings involve problems which are recurrent but peculiar to certain areas, such as water rights, grazing land permits, and *mineral rights*. These are problems with which judges in those areas are familiar and which they can handle expeditiously and intelligently." *Id.* (emphasis added).

Therefore, Congress intended that suits challenging the issuance and cancellation of oil and gas leases, such as the one at issue here, should be governed by Section 1391(e).

This is consistent with federal and state court holdings that oil and gas leases do constitute real property interests. *See Utah v. Babbitt*, 830 F. Supp. 586, 594 n.14 (D. Utah 1993) ("A traditional oil and gas lease is ***an actual conveyance of a real property interest*** . . . .") (emphasis added); *Union Oil Co. v. Morton*, 512 F.2d 743, 747 (9th Cir. 1975) (a mineral lease granted under the Mineral Leasing Act "does convey a property interest enforceable against the Government"); *Mafrige v. United States*, 893 F. Supp. 691, 698 (S.D. Tex. 1995) ("[A]n oil and gas lease under the Mineral Leasing Act for Acquired Lands creates an interest in real property . . . ."); *Wilderness Soc'y v. Wisely*, 524 F. Supp. 2d 1285, 1306 n.12 (D. Colo. 2007) (refusing to void BLM's decision to resume leasing "as doing so might affect ***property interests*** obtained by lessees as a result of the lease sale.") (emphasis added); *Bass Enters. Prod. Co. v. United States*, 45 Fed. Cl. 120 (Fed. Cl. 1999) (holding that BLM's refusal to permit drilling on lease land constituted taking of cognizable property right); *Tex. Architectural Aggregate, Inc. v. ACM-Texas, LLC (In re ACM-Texas, Inc.)*, 430 B.R. 371, 409 (Bankr. W.D. Tex. 2010) (holding that "mineral interests are treated as real property interests"). *Cf. Independence Mining Co. v. Babbitt*, 895 F. Supp. 1356, 1366 (D. Nev. 1995) (finding that mining claims are "real property in the fullest sense").

Thus, the leases at issue do constitute "real property rights" pursuant to 28 U.S.C. §1391(e) and venue is improper in this Court.

## II. The Interest of Justice Factor Weighs in Favor of Transfer

Moreover, the interest of justice factor greatly favors transfer due to the significant localized interest in having this real property decided at home. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). In its Proposed Response to the

Motion to Sever and Transfer, the State of Wyoming highlighted its trustee and police powers over wildlife in its jurisdiction, the more than $50 million the State has spent to implement its conservation strategy, and the taxes generated from oil and gas lease sale production. Dkt. 24 at 7–8. In total, the four Wyoming lease sales challenged by Plaintiffs raised $190,562,752. *See* **Exhibit A**, BLM Oil and Gas Statistics Table 15, available online at https://www.blm.gov/sites/blm.gov/files/Table15_Oil_and_Gas_Lease_Sales_FY2017.pdf; **Exhibit B**, March 2018 Wyoming Lease Sale Results, available at https://eplanning.blm.gov/epl-front-office/projects/nepa/85072/139859/171966/SALERESULTS.pdf. In addition to its interest in wildlife within its borders—more than one-third of all greater sage-grouse are located in Wyoming—the State of Wyoming has a significant localized interest in having challenges to the Wyoming lease sales adjudicated in Wyoming.

As such, contrary to Plaintiffs' arguments, the interests of justice weigh in favor of having the challenge to the Wyoming lease sales reviewed by a Wyoming district court.

**III.   The Applicable RMPs and Lease Sale EAs are Based on Site-Specific Information and Tailored to each State and BLM Resource Management Area**

BLM's analyses and decision-making—both at the land use planning stage and the leasing stage—are tailored to the site-specific features, resources, and issues of the State and BLM resource management areas for particular discrete geographic areas. Plaintiffs' theory that BLM should assess the challenged lease decisions on a range-wide scale rather than as separate actions ignores BLM's statutory and regulatory framework for oil and gas decision-making that forms the basis for both the agency's scope and timing of its corresponding National Environmental Policy Act (NEPA) analyses.

As part of BLM's lease sale decision-making process, BLM imposes stipulations and other management prescriptions based upon the applicable Resource Management Plan (RMP)

4

that is specifically tailored to the various habitat categories for sage grouse (e.g. priority habitat or general habitat). BLM's leasing decisions at issue are consistent with the 2015 RMPs. The leasing stipulations for the lease sales at issue contain extensive restrictions in compliance with the existing RMPs (including the 2015 greater sage-grouse RMP Amendments). *See, e.g.,* **Exhibit C**, relevant excerpts of Wyoming State Office Notice of March 2018 Competitive Oil and Gas Lease Sale, available online at: https://eplanning.blm.gov/epl-front-office/projects/nepa/85072/125831/153379/Sale_Notice.pdf (listing stipulations, lease notices, special conditions, or restrictions for each lease parcel offered for sale).

At bottom, each lease sale is governed by the specific and applicable RMP where the lease parcels are located—and these RMPs are tailored by the State and by resource area to impose lease stipulations and development restrictions appropriate to that State and geographic area.

## IV.   The Challenged IMs are Not Inconsistent with BLM's Recent Leasing Prioritization Guidance

Finally, at the Hearing on the Motion, Plaintiffs argued that Instruction Memorandum (IM) 2018-026: Implementation of Greater Sage-Grouse Resource Management Plan Revisions or Amendments – Oil & Gas Leasing and Development Prioritization Objective (attached hereto as **Exhibit D**) is inconsistent with the numerous 2015 greater sage-grouse RMP Amendments. To the contrary, IM 2018-026 is entirely consistent with the 2015 RMP Amendments' leasing prioritization mandate. This IM provides clarification and guidance as to how prioritization should work, and also clarifies that "prioritization" does not mean "prohibition" of leasing.

IM 2018-026 instructs BLM to prioritize evaluation of leasing expressions of interest first in non-habitat management areas, followed by lower priority habitat management areas, and then higher priority habitat management areas. Ex. D, Leasing. Additionally, IM 2018-026 states that

restrictive stipulations in higher priority habitat management areas encourage lessees to acquire leases outside of greater sage-grouse priority habitat. *Id.* Finally, IM 2018-026 instructs BLM to work with parties who file expressions of interest and potential lessees to voluntarily prioritize leasing in less-sensitive areas. *Id.*

At the hearing, Plaintiffs asserted, among other things, that IM 2018-026 was inconsistent with the greater sage-grouse 2015 RMP Amendments because prioritization outside greater sage-grouse habitat should preclude leasing within habitat. This argument is logically flawed. Simply put, prioritization is not prohibition. IM 2018-026 recognizes that the RMP Amendments established an objective to prioritize oil and gas leasing and development outside of greater sage-grouse habitat management areas, but still allowed for leasing with appropriate stipulations on all BLM mineral estate designated in the RMP Amendments as "open" for leasing. Interpreting prioritization to prohibit leasing in habitat would therefore be contrary to the underlying RMP.

Additionally, Plaintiffs' argument fails to appreciate the site-specific situations faced by each field office. For example, in the Lander, Wyoming BLM Field Office, 99% of the planning area is within occupied greater sage-grouse habitat. **Exhibit E**, Relevant Excerpts of BLM Record of Decision and Approved Resource Management Plan for the Lander Field Office at 3. Plaintiffs' interpretation of the prioritization objective equates to a ban on oil and gas leasing.

Thus, the challenged IMs are wholly consistent with the 2015 greater sage-grouse RMP amendments.

## CONCLUSION

Because the interests involved in the challenged lease sales are unquestionably local interests for which venue is proper in the districts in which those lease sales occurred, to avoid the inefficiency of having multiple courts review the same administrative records and render judgments on the same agency actions, and for the reasons articulated above and more fully

outlined in Defendants' Motion to Sever and Transfer, and in Defendant-Intervenors' State of Wyoming and Western Energy Alliances' Proposed Responses in Support of Defendants' Motion, Western Energy Alliance respectively requests the Court grant Defendants' Motion to Sever and Transfer.

Respectfully submitted this 22nd day of August, 2018.

*/s Bret Sumner*
Bret Sumner
*Pro Hac Vice*

*/s/ Paul Turcke*
Paul Turcke

*Counsel for Defendant-Intervenor Western Energy Alliance*

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2018, I caused the foregoing **INTERVENOR WESTERN ENERGY ALLIANCE'S [PROPOSED] SUR-REPLY TO MOTION TO SEVER AND TRANSFER** to be electronically filed with the Court using the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Laurence J. Lucas
llucas@advocateswest.org

Talasi B. Brooks
tbrooks@advocateswest.org

Todd C. Tucci
ttucci@advocateswest.org

Sarah Stellberg
sstellberg@advocateswest.org

John S. Most
john.most@usdoj.gov

Luther L. Hajek
luke.hajek@usdoj.gov

Erik Petersen
erik.petersen@wyo.gov

Mike Robinson
mike.robinson@wyo.gov

*/s/ Bret Sumner*