Laurence ("Laird") J. Lucas (ISB # 4733)
llucas@advocateswest.org
Todd C. Tucci (ISB # 6526)
ttucci@advocateswest.org
Talasi B. Brooks (ISB # 9712)
tbrooks@advocateswest.org
Sarah K. Stellberg (ISB # 10538)
sstellberg@advocateswest.org
*Advocates for the West*
P.O. Box 1612
Boise, ID 83701
(208) 342-7024
(208) 342-8286 (fax)

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, and CENTER FOR BIOLOGICAL DIVERSITY, | Case No. 1:18-cv-00187-REB |
| Plaintiffs, | **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION (ECF No. 30)** |
| v. | |
| RYAN K. ZINKE, Secretary of Interior; DAVID BERNHARDT, Deputy Secretary of Interior; and UNITED STATES BUREAU OF LAND MANAGEMENT, an agency of the United States, | |
| Defendants. | |

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................... 1

SUPPLEMENTAL FACT STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................................. 2

    I.    IM 2018-034 IS A FINAL AGENCY ACTION ......................................................... 2

        A.    IM 2018-034 Was the Consummation of BLM's Decisionmaking Process ..... 3

        B.    IM 2018-034 Has Legal Consequences and Binding Effects ........................... 4

        C.    Defendants Confuse the Legal Standard under *Bennett*'s Second Prong .......... 6

    II.    PLAINTIFFS HAVE DEMONSTRATED ARTICLE III STANDING .................... 7

        A.    Organizational Standing ................................................................................. 8

        B.    Representational Standing ............................................................................... 9

        C.    Federal Defendants' Standing Arguments Are Unavailing ........................... 10

    III.    THE REQUEST FOR INJUNCTIVE RELIEF IS RIPE ........................................... 12

    IV.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ........................... 13

        A.    BLM Unlawfully Avoided Notice and Comment Rulemaking ...................... 13

        B.    IM 2018-034 Is a De Facto Legislative Rule Subject to Notice and
            Comment .................................................................................................... 15

            1.    IM 2018-034 Is Not a "General Statement of Policy" .......................... 15

            2.    IM 2018-034 Is Not an Interpretative Rule ............................................ 17

        C.    IM 2018-034 is Arbitrary, Capricious, and Contrary to the Public
            Participation Requirements of FLMPA and NEPA ....................................... 19

    V.    PLAINTIFFS HAVE ESTABLISHED IRREPARABLE HARM
        WARRANTING A PRELIMINARY INJUNCTION ............................................. 21

        A.    Bureaucratic Commitment to Leasing Will Bias Any Later NEPA Process,
            Causing Irreparable Harm the Environment ................................................. 21

        B.    Irreparable Harm to Plaintiff Organizations Further Justifies an Injunction ... 23

VI.   THE PUBLIC INTEREST STRONGLY OUTWEIGHS ANY HARDSHIP TO
      DEFENDANTS, WHICH CAN BE AVOIDED THROUGH A TAILORED
      INJUNCTION ...................................................................................................... 23

CONCLUSION ....................................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner,*
    387 U.S. 136 (1967) ................................................................................ 4, 12, 13

*Am. Min. Cong. v. Mine Safety & Health Admin.,*
    995 F.2d 1106 (D.C. Cir. 1993) ........................................................................ 5

*Amoco Prod. Co. v. Village of Gambell,*
    480 U.S. 531 (1987) ........................................................................................ 22

*Appalachian Power Co. v. EPA,*
    208 F.3d 1015 (D.C. Cir. 2000) ................................................................ 4, 5, 6

*Bell v. New Jersey,*
    461 U.S. 773 (1983) .......................................................................................... 3

*Bennett v. Spear,*
    520 U.S. 154 (1997) ......................................................................... 3, 4, 6, 7, 21

*California v. U.S. Bureau of Land Mgmt.,*
    277 F. Supp. 3d 1106 (N.D. Cal. 2017) ........................................................... 20

*California ex rel. Imperial County v. U.S. Dept. of the Interior,*
    767 F.3d 781 (9th Cir. 2014) ............................................................................ 9

*Ctr. For Biological Diversity v. Kempthorne,*
    588 F.3d 701 (9th Cir. 2009) .......................................................................... 12

*Chiang v. Kempthorne,*
    503 F. Supp. 2d 343 (D.D.C. 2007) .................................................................. 4

*Citizens for Better Forestry v. U.S. Dept. of Ag.,*
    341 F.3d 961 (9th Cir. 2003) ...................................................................... 9, 13

*Columbia Riverkeeper v. U.S. Coast Guard,*
    761 F.3d 1084 (9th Cir. 2014) .......................................................................... 6

*Columbia Broad. Sys., Inc. v. United States,*
    316 U.S. 407 (1942) ........................................................................................ 13

*Colwell v. Dept. of Health & Human Servs.*,
  558 F.3d 1112 (9th Cir. 2009)…………………………………………………………..16, 17

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
  657 F.3d 936 (9th Cir. 2011)…………………………………………………………………8

*Cmty. Nutrition Inst. v. Young*,
  818 F.2d 943 (D.C. Cir. 1987)……………………………………………….…........5

*Cottonwood Envtl. L. Ctr. v. U.S. Forest Serv.*,
  789 F.3d 1075 (9th Cir. 2015)…………………………………………………11, 12, 13

*Earth Island Inst. v. Carlton*,
  626 F.3d 462 (9th Cir. 2010)…………………………………………………………7

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*,
  653 F.3d 1 (D.C. Cir. 2011)…………………………………………………………18

*Ethyl Corp. v. EPA*,
  306 F.3d 1144 (D.C. Cir. 2002)…………………………………………………...15

*Fairbanks N. Star Borough v. U.S. Army Corps of Engineers*,
  543 F.3d 586 (9th Cir. 2008)…………………………………………………………3

*Flagstaff Medical Ctr., Inc. v. Sullivan*,
  962 F.2d 879 (9th Cir. 1992)…………………………………………………………16

*Grand Canyon Trust v. Williams*,
  38 F. Supp. 3d 1073 (D. Ariz. 2014)…………………………………………………4

*Gunderson v. Hood*,
  268 F.3d 1149 (9th Cir. 2001)…………………………………………………………17

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982)…………………………………………………………………..8, 9

*Hemp Indus. Ass'n v. DEA*,
  333 F.3d 1082 (9th Cir. 2003)……………………………………………………...7

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990)…………………………………………………………………12

*McLouth Steel Products Corp. v. Thomas*,
  838 F.2d 1317 (D.C. Cir. 1988)……………………………………………...5, 7, 17

*MST Express v. Dep't of Transp.*,
  108 F.3d 401 (D.C. Cir. 1997)…………………………………………………………15

*Nat'l Ass'n of Home Builders v. Norton,*
  415 F.3d 8 (D.C. Cir. 2005)……………………………………………………6,

*Nat. Resources Def. Council v. EPA,*
  643 F.3d 311 (9th Cir. 2013) ………………………………………………..7

*Nat. Resources Def. Council, Inc. v. Hodel,*
  618 F. Supp. 848 (E.D. Cal. 1985)………………………………………………19

*Nat. Resources Def. Council v. Houston,*
  146 F.3d 1118 (9th Cir. 1998)………………………………………………22

*Nat'l Res. Def. Council v. Jamison,*
  787 F. Supp. 231 (D.D.C. 1990)……………………………………………...9

*Nat'l Res. Def. Council v. Jamison,*
  815 F. Supp. 454 (D.D.C. 1992)………………………………………….....14, 15

*N. Cheyenne Tribe v. Hodel,*
  851 F.2d 1152 (9th Cir. 1988)………………………………………………22

*Ohio Forestry Ass'n v. Sierra Club,*
  523 U.S. 72 (1998)………………………………………………..……………12, 13

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.,*
  465 F.3d 977 (9th Cir. 2006)………………………………………...……..4

*Organized Village of Kake v. U.S. Dept. of Agric.,*
  795 F.3d 956 (9th Cir. 2015)………………………………………………..21

*Owner–Operator Indep. Drivers Ass'n v. Fed. Motor Carrier Safety Admin.,*
  494 F.3d 188 (D.C. Cir.2007)………………………………………………20

*Pac. Gas & Elec. Co. v. Fed. Power Comm'n,*
  506 F.2d 33 (D.C. Cir. 1974)………………………………………………3

*Padilla-Ramirez v. Bible,*
  882 F.3d 826 (9th Cir. 2017)………………………………………….....3

*Salmon Spawning & Recovery Alliance v. Gutierrez,*
  545 F.3d 1220 (9th Cir. 2008)………………………………………………10

*Sierra Club v. Marsh,*
872 F.2d 497 (1st Cir. 1989)……………………………………………… 21

*S. Cal. Aerial Advertisers' Ass'n v. FAA,*
  881 F.2d 672 (9th Cir. 1989)………………………………………………5

*Summers v. Earth Island Institute,*
   555 U.S. 488 (2009)…………………………………………………………………11

*Syncor Int'l Corp. v. Shalala,*
   127 F.3d 90 (D.C. Cir. 1997)………………………………………………………… 16

*Texas v. U.S.,*
   523 U.S. 296 (1998)…………………………………………………………………12

*W. Watersheds Project v. Kraayenbrink,*
   632 F.3d 472 (9th Cir. 2011)………………………………………………………9, 10, 13

*W. Watersheds Project v. Kraayenbrink,*
   538 F. Supp. 2d 1302 (D. Id. 2008)………………………………………………....19

*Venetian Casino Resort, LLC v. EEOC,*
   530 F.3d 925 (D.C. Cir. 2008)…………………………………………....…..20

**Statutes**

Administrative Procedure Act
   5 U.S.C. § 551(13)…………………………………………………………..
   5 U.S.C. § 553(b)(A)………………………………………………………16
   5 U.S.C. § 704……………………………………………………..………2, 7, 20
   5 U.S.C. § 706(2)(D)……………………………………………………15, 20

Federal Land Policy and Management Act
   43 U.S.C. § 46.305……………………………………………………..…..
   43 U.S.C. § 1712……………………………………………………………20
   43 U.S.C. § 1739……………………………………………………....14, 20

**Regulations**

40 C.F.R. § 1500.1……………………………………………..…….19
40 C.F.R. § 1500.2…………………………………....…………18
40 C.F.R. § 1501.4………………………………………………18
40 C.F.R. § 1506.6………………………………………………18
43 C.F.R. Part 46…………………………………………………....15
43 C.F.R. § 46.305………………………………………………12
43 C.F.R. § 1610.5-2……………………………………………18
43 C.F.R. § 3120.1-3……………………………………………18
43 C.F.R. Part 3400………………………………………………....15
43 C.F.R. § 3872.1………………………………………………18
43 C.F.R. § 4160.2………………………………………………18
81 Fed. Reg. 89,580 (Jan. 11, 2017)…………………………………15

## INTRODUCTION

Federal Defendants do not dispute Plaintiffs' opening brief and declarations demonstrating that the Trump Administration abruptly adopted IM 2018-034 as part of its "energy dominance" agenda to reduce environmental reviews and public participation in oil and gas leasing. Instead, they seek to portray IM 2018-034 as merely internal "guidance" to avoid this Court's review. Their jurisdictional arguments are unavailing. In truth, IM 2018-34 adopts binding changes to BLM leasing procedures that affect rights of Plaintiffs and the public, and the IM is thus a "final agency action" this Court may review under the APA. And because the IM is being applied in ways that harm Plaintiffs, their challenges are ripe and justiciable.

Widespread expressions of concern about IM 2018-034 are falling on deaf ears. BLM is scheduled to lease millions of acres of public lands in the coming months under the new procedures and will continue to adhere to IM 2018-034 unless enjoined by this Court. Plaintiffs seek a preliminary injunction to preserve the integrity of the NEPA process in these sales, and to avoid substantial and unrecoverable hardships to their organizations, members, and the public. The preliminary relief sought—reinstatement of prior procedures of IM 2010-117 for upcoming sales—requires only administrative changes. Loss of revenue to Wyoming or industry are unwarranted concerns, since Plaintiffs do not seek to halt any lease sale or reverse any lease upon this injunction motion. The Court should thus grant the Motion for Preliminary Injunction.

## SUPPLEMENTAL FACT STATEMENT

Since Plaintiffs submitted their opening brief, new facts and circumstances have emerged about BLM's implementation of IM 2018-034 in the quarterly lease sales held or scheduled for September and December 2018.  In particular, the Wells Declaration submitted by Federal Defendants (ECF No. 52-1) shows that BLM offices have been conforming to the provisions of

IM 2018-034. *See* Wells Decl. ¶ 3. A chart summarizing the schedule for the September and

December sales is provided in Exhibit 1 to the accompanying Declaration of Sarah Stellberg.

The supplemental Fuller and Saul Declarations submitted herewith provide more details on the

recent and upcoming sales. *See* Supp. Fuller Decl. ¶¶ 3–11; Supp. Saul Decl. ¶¶ 4–9. As all four

declarations confirm, BLM offices have reduced their lease review timeframes to 6 months, cut

the protest periods to 10 days, and treated comment periods as optional for lease sales, replacing

comments with scoping periods or eliminating public comment altogether in several sales.

On July 17, 2018, Colorado Governor John W. Hickenlooper wrote to BLM about how

IM 2018-034 is harming Colorado's ability to respond to upcoming lease sales there, stating:

> [T]he new IM [2018-034] has created significant barriers for us to efficiently review the
> [December 2018] parcels under consideration for sale. Colorado Department of Natural
> Resources Executive Director Bob Randall wrote to you in April to express concerns
> about IM 2018-034. I reaffirm those concerns now as we see the impacts of the IM first-
> hand during this sale. With 227 parcels representing 236,010 acres spread across the
> state, I must stress to you the great burden this expanded sale and condensed review
> schedule puts on State staff to adequately review parcels.

*See* Stellberg Decl., Ex. 2.[1] The Hickenlooper letter thus echoes and confirms Plaintiffs'

declarations demonstrating that IM 2018-034 poses unreasonable burdens on all interested

parties seeking to participate in BLM oil and gas leasing decisions.

## ARGUMENT

## I.     IM 2018-034 IS A FINAL AGENCY ACTION.

Characterizing IM 2018-034 as simply an internal "guidance" document, Federal

Defendants argue it is not a "final agency action" subject to judicial review under the APA, 5

U.S.C. § 704, because it neither "mark[s] the consummation of the agency's decisionmaking

---

[1] The Court may take judicial notice of the Hickenlooper letter as a matter of public record under
Fed. R. Evid. 201(b) & (c)(1).

process" nor is an action "by which rights or obligations have been determined, or from which legal consequences will flow," under *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). *See* Def. Opp. at 17-21 (ECF No. 52). Neither argument has merit.

A.      **IM 2018-034 Was the Consummation of BLM's Decisionmaking Process.**

Defendants argue that IM 2018-034 does not mark the consummation of BLM's decisionmaking process, because it "leaves considerable discretion to BLM state office and field office staff as to precisely what procedures to follow." Def. Opp. at 18.  That is incorrect.

IM 2018-034's instructions are neither "tentative" nor "interlocutory." The document is "finally determinative of the issues . . . to which it is addressed." *Pac. Gas & Elec. Co. v. Fed. Power Comm'n*, 506 F.2d 33, 48 (D.C. Cir. 1974). Federal Defendants' own Wells Declaration confirms that IM 2018-034 is already being applied to the pending September and December 2018 oil and gas lease sales, *see* Wells Decl. ¶ 3, and Federal Defendants make no suggestion that BLM offices will reconsider the soundness of its instructions. The fact that BLM field staff retain some discretion in some aspects of the leasing process does not mean the IM itself is merely tentative. Where, as here, an agency's determination on an issue will not be revisited, that determination is final despite the "possibility of further proceedings in the agency" to resolve subsidiary issues. *Bell v. New Jersey*, 461 U.S. 773, 779–80 (1983); *see also Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 593 (9th Cir. 2008) (agency determination was consummation of decisionmaking process because subsequent proceedings would not revisit it); *Padilla-Ramirez v. Bible*, 882 F.3d 826, 836 (9th Cir. 2017) (finding it sufficient that the "agency has consummated its decision-making regarding the first issue, but not the second").

Moreover, IM 2018-034's express statements that "[t]his policy is effective immediately" and "will be implemented across the BLM as described" confirm that it is neither tentative nor

interlocutory. *See Chiang v. Kempthorne*, 503 F. Supp. 2d 343, 350 (D.D.C. 2007) (statement

that agency guidelines were "effective immediately" demonstrated that they were neither

"tentative" nor "interlocutory"); *Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) (fact that agency

action was "made effective upon publication" supported finding that action was final).

### B.   IM 2018-034 Has Legal Consequences and Binding Effects.

Under *Bennett*'s second prong, "the action must be one by which 'rights or obligations

have been determined,' or from which 'legal consequences will flow.'" 520 U.S. at 178. The

Ninth Circuit takes a "pragmatic and flexible" approach to this inquiry, assessing whether the

action has binding effects on the agency or private parties, legally or practically. *See Or. Nat.

Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006); *see also Grand Canyon Tr.

v. Williams*, 38 F. Supp. 3d 1073, 1080 (D. Ariz. 2014) ("practical effect alone is sufficient to

satisfy the second prong of the *Bennett* test"); *Appalachian Power Co. v. EPA*, 208 F.3d 1015,

1023 (D.C. Cir. 2000) (focusing on whether the action was "binding" in a practical sense).

Federal Defendants argue that IM 2018-034 is not binding by focusing on provisions not

challenged here, Def. Opp. at 18–19, while avoiding the mandatory terms that IM 2018-034 does

impose. They also ignore the fact that it is being implemented by BLM as binding in the field.

As identified in Plaintiffs' injunction motion and opening brief, four specific provisions

of IM 2018-034 are the focus of analysis here because they expressly change how BLM conducts

its oil and gas leasing.[2] These passages challenged here are phrased as commands. *See, e.g.*, IM

---

These include: (1) Section III.A - "Parcel Review Timeframes," imposing a mandatory limit of
six months for BLM review of lease parcels nominated by the oil and gas industry; (3) Section
III.B.5 - "Public Participation," making public participation in the NEPA review process a matter
of the agency's discretion; (3) Section III.D - "NEPA Compliance Documentation," eliminating
the prior 30-day public review and comment period; and (4) Section IV.B - "Lease Sale Parcel
Protests," shortening the deadline for public protests of proposed lease sales from 30 days to just
10 days. *See* Pl. Opening Br. at 1, n.1.

2018-034 at III.A ("The timeframe for parcel review for a specific lease sale *is to be* no longer

than 6 months"); *id.* at IV.B ("A 10-day public protest period *will* begin the day the sale notice is

posted"). "The use of the word 'will' suggests the rigor of a rule, not the pliancy of a policy."

*McLouth Steel Prods. Corp. v. Thomas*, 838 F.2d 1317, 1321 (D.C. Cir. 1988); *see also Cmty.*

*Nutrition Inst. v. Young*, 818 F.2d 943, 947 (D.C. Cir. 1987) ("mandatory, definitive language is

a powerful, even potentially dispositive, factor"); *Am. Min. Cong. v. Mine Safety & Health*

*Admin.*, 995 F.2d 1106, 1111 (D.C. Cir. 1993) (agency's decision to use "will" instead of "may"

useful in "drawing a line between policy statements and legislative rules"). The IM's closing

statements that "[t]his policy is effective immediately" and "will be implemented across the

BLM as described" also underscore that immediate compliance is required. *See S. Cal. Aerial*

*Advert. Ass'n v. FAA*, 881 F.2d 672, 675 (9th Cir. 1989) (finality characteristics include "the

expectation of 'immediate compliance with [its] terms'").

Defendants argue around the issue of whether IM 2018-034 is "binding," asserting that

BLM officers still retain discretion on issues not fixed by IM 2018-034. Def. Opp. at 20 n.7 &

26. But they do not dispute that IM 2018-034 is binding on the issues it does address, including

those of concern here: that BLM must complete the parcel review process in six months, need

not involve the public in every lease sale, and must provide a protest period of 10 days. Indeed,

as noted above, BLM field offices have been uniformly applying the IM since its issuance. *See*

Supp. Fuller Decl. ¶¶ 8–11; Supp. Saul Decl. ¶¶ 7–9; Wells Decl. ¶ 3; Stellberg Decl. Ex. 1.

Regular application of the standards in a purported guidance document confirm its binding

character. *See Appalachian Power*, 208 F.3d at 1023 ("If an agency acts as if a document issued

at headquarters is controlling in the field . . . then [it] is for all practical purposes 'binding'").

In addition to its binding effect, "legal consequences" flow from IM 2018-034. The most

notable is Section IV.B, shortening the deadline for public protests to just 10 days. If Plaintiffs or others do not comply with this highly-abbreviated timeframe, they risk losing the ability to challenge a lease sale later, either through administrative appeal or in federal court. Thus, IM 2018-034 effects a "certain change in . . . legal obligations." *See Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 15 (D.C. Cir. 2005). Additionally, Sections III.D and III.B.5 alter the agency's legal regime by stating definitively that public participation is not required in lease sales supported by an EA or DNA, a determination at odds with both IM 2010-117 and existing law. *See* pp. 17-19 *infra* (establishing that these sections are inconsistent with FLPMA and NEPA). As the record shows, BLM officials have been basing their actions on this determination, by eliminating public participation altogether in certain lease sales. *See* Fuller Decl. ¶¶ 3 – 4, 6; Saul Decl. ¶¶ 7–8. This again confirms IM 2018-034 is a final agency action. *See Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 435 (D.C. Cir. 1986) (agency letter was final where it "unequivocally stated EPA's position on the question whether registrants were entitled to a cancellation hearing before labeling changes could be required"); *Appalachian Power*, 208 F.3d at 1021 (agency action is final where the agency "bases enforcement actions on the policies or interpretations formulated in the document").

### C. Defendants Confuse the Legal Standard under *Bennett*'s Second Prong.

Federal Defendants argue that IM 2018-034 fails *Bennett*'s second prong because it (1) does not have "the force and effect of law," (2) is not "legally enforceable" by third parties, and (3) does not affect the legal rights or obligations of third parties. *See* Def. Opp. at 17-20. All three arguments confuse the "final agency action" standard.

First, the "force and effect" language is not contained in *Columbia Riverkeeper v. U.S. Coast Guard*, 761 F.3d 1084, 1095 (9th Cir. 2014), as Federal Defendants assert, nor is it a fair

summary of what constitutes a "final agency action" under *Bennett*. Rather, that phrase is used to distinguish "legislative rules," which generally require notice and comment under the APA, from "general statements of policy" and "interpretive rules," which do not. *See Hemp Indus. Ass'n v. DEA*, 333 F.3d 1082, 1086 (9th Cir. 2003). BLM's reliance on this test is thus inapposite.

Second, Federal Defendants argue that "a private litigant could not file suit to enforce the guidance." Def. Opp. at 18. That is not required under *Bennett* or its progeny. That language comes from *Earth Island Institute v. Carlton*, 626 F.3d 462, 473-74 (9th Cir. 2010), which rejected a complaint that the Forest Service failed to comply with its own guidelines, but did not discuss or rely upon the APA's "final agency action" requirement. Courts have made clear that *Bennett*'s broader conception of legal effect can be satisfied in numerous ways that do not involve legal enforceability in a separate action, as was evidenced in *Bennett* itself.

Third, Federal Defendants argue that IM 2018-034 imposes "no obligations or duties for outside parties." Def. Opp. at 20. But courts consider an agency action final where it alters the obligations of *either* the agency or third parties. When an agency adopts policy that binds itself to a course of action, that action is final regardless of whether private parties are bound. *See McLouth,* 838 F.2d at 1320 ("If a statement denies the decision-maker discretion in the area of its coverage . . . then the statement is binding, and creates rights or obligations"); *Nat. Res. Def. Council v. EPA*, 643 F.3d 311, 319-20 (9th Cir. 2013) (holding that guidance binding on EPA regional administrators was final).

In sum, Federal Defendants do not refute Plaintiffs' showing that IM 2018-034 is a "final agency action" under the APA, 5 U.S.C. § 704.

## II.   PLAINTIFFS HAVE DEMONSTRATED ARTICLE III STANDING.

Federal Defendants also argue that Plaintiffs have not demonstrated Article III standing,

either for a "facial" or "as applied" challenge to IM 2018-034. Def. Opp. at 13-16.[3] To the

contrary, Plaintiffs have shown standing both (1) on their own behalf, by showing injury to the

organizations themselves, and (2) in a representative capacity, by showing injury to one or more

members. *See Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936,

943 (9th Cir. 2011) (en banc) (discussing both these theories for standing).

## A.    Organizational Standing.

First, Plaintiffs have established organizational standing by their declarations identifying

"concrete and demonstrable injury to the[ir] organization[al] activities." *See Havens Realty*

*Corp. v. Coleman*, 455 U.S. 363, 379 (1982). Plaintiffs' declarants discuss in detail their

organizational missions, interests, and activities, and describe how they are being harmed by

BLM's implementation of IM 2018-034. *See* Fuller Decl. ¶¶ 1–18, 37-64 (ECF No. 30-4); Saul

Decl. ¶¶ 21-32 (ECF No. 30-2); Molvar Decl. ¶¶ 4-34, 52 (ECF No. 30-3); Cunningham Decl.,

4-11 (ECF No. 30-5). Plaintiffs regularly participate in BLM leasing decisions and have been

harmed by the new procedures, which impair their ability to submit robust comments and

protests. *Id.* They have been forced to devote extra organizational resources to BLM oil and gas

leasing due to the expanded scope of sales and condensed review schedule, thus draining funds

and staffing available for other conservation programs. *Id.* This harms Plaintiffs' ability to

advance their mission of protecting public land and wildlife species, and to represent their

members' interests in administrative processes. *Id.*

---

[3] Defendants' repeated distinction between "facial" versus "as applied" challenges is confusing
and irrelevant to this injunction motion. Plaintiffs bring a routine challenge to an invalid agency
rule and seek injunctive relief because they are likely to prevail on their claims that IM 2018-034
is procedurally and substantively unlawful. *See* Complaint (ECF No. 1), Fourth and Fifth Claims
for Relief. Whether individual lease decisions should be reversed and set aside because they
were approved under IM 2018-034 is not presently before the Court. Moreover, courts assess
standing and ripeness for facial challenges just as they would for any other claim.

These harms demonstrate injury-in-fact for standing. *See Havens*, 455 U.S. at 379 (organization's impaired ability to provide counseling services constituted injury-in-fact); *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 485 (9th Cir. 2011) (WWP had standing where new grazing regulations posed "an imminent harm to . . . [its] involvement in public land grazing management"); *Nat. Res. Def. Council v. Jamison*, 787 F. Supp. 231, 238 (D.D.C. 1990) (environmental groups demonstrated standing where "elimination of public participation opportunities . . . diminish[ed] their ability to adequately represent their membership").[4]

**B.    Representational Standing.**

Plaintiffs have also demonstrated standing under the representational theory, by showing that IM 2018-034 regularly prevents them from effectively engaging in BLM leasing decisions, and that those BLM actions in turn threaten their members' use and enjoyment of specific public lands and resources, such as sage-grouse, where IM 2018-034 is being applied.

Standing requirements are relaxed in cases where plaintiffs have sustained procedural injury. "[P]laintiffs must establish that the Secretary violated procedural rules designed to protect their concrete interests, and that the challenged action will threaten those interests." *California ex rel. Imperial County v. U.S. Dept. of the Interior*, 767 F.3d 781, 789–90 (9th Cir. 2014). "[T]he court's 'inquiry into the imminence of the threatened harm is less demanding,' and 'the causation and redressability requirements are relaxed.'" *Id.* (internal citations omitted).

To establish a "concrete interest," environmental plaintiffs "must allege that they will suffer harm by virtue of their geographic proximity to and use of areas that will be affected by the [agency's] policy." *Citizens for Better Forestry v. U.S. Dept. of Ag.*, 341 F.3d 961, 971 (9th

---

[4] The remaining Article III standing requirements—causation and redressability—are also met. IM 2018-034's provisions have directly caused the aforementioned harm to Plaintiffs' organizational activities and would be remedied by a ruling enjoining or vacating them.

Cir. 2003). Plaintiffs' declarations describe with specificity their use and enjoyment of public lands in the areas where BLM is now conducting oil and gas leasing under IM 2018-034, including in key sage-grouse habitats. *See* Molvar Decl. ¶¶ 36-51 (Wyoming Q3 & Q4 and Nevada Q2 lease sales); Cunningham Decl. ¶¶ 12-23 (Nevada Q2 lease sale); Saul Supp. Decl. ¶¶ 13–16 (Nevada Q2 lease sale). These declarations establish "a geographic nexus between the individual asserting the claim and the location suffering an environmental impact." *See Kraayenbrink*, 632 F.3d at 485.

Plaintiffs' declarations also demonstrate that IM 2018-034 specifically threatens their concrete interests. Shortened pre-leasing review and public involvement increases the likelihood that BLM will fail to identify or assess potential impacts to resources—including at-risk species such as greater sage-grouse, and other wildlife habitats, recreational resources, and cultural artifacts—that could be protected by adequate stipulations or deferral of leasing. *See* Fuller Decl. ¶ 17–18, 49; Supp. Fuller Decl. ¶ 15; Saul Decl. ¶¶ 31–34; Supp Saul Decl. ¶¶ 25–26, 28, 34.

As for causation and redressability, Plaintiffs "need to show only that the relief requested—that the agency follow the correct procedures—may influence the agency's ultimate decision of whether to take or refrain from taking a certain action." *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1226 (9th Cir. 2008). Plaintiffs' declarations demonstrate that IM 2018-034 has decreased the quality of public data, research, and analysis available to BLM. An order enjoining BLM's reliance on IM 2018-034 and reinstating procedures that provide for more meaningful public participation would redress those harms.

## C.   Federal Defendants' Standing Arguments Are Unavailing.

In arguing that Plaintiffs lack standing, Federal Defendants confuse the issues and ignore the concrete allegations in Plaintiffs' supporting declarations, as discussed above. In particular,

they wrongly rely on *Summers v. Earth Island Institute*, 555 U.S. 488 (2009), arguing that

Plaintiffs have alleged a procedural right "*in vacuo*" insufficient to confer standing. Def. Opp. at

14. In *Summers*, the Supreme Court found that environmental plaintiffs could not establish

standing to challenge Forest Service regulations where they failed to identify any application of

those regulations that impacted their members. *Id.* at 495–96. In contrast here, Plaintiffs have

identified numerous concrete applications of IM 2018-034 in the 2018 lease sales across the

sage-grouse range, threatening lands that Plaintiffs' staff and members use and enjoy. This type

of concrete interest, coupled with the procedural injury, is sufficient to confer standing. *See*

*Cottonwood Envtl. L. Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1081 (9th Cir. 2015).

   Federal Defendants further err in arguing that Plaintiffs "can demonstrate no harm from

the issuance of the IM itself; rather, any such harm would come from the issuance of leases and

the eventual development of oil and gas leases." Def. Opp. at 13. This ignores the tangible

injuries Plaintiffs identified from complying with IM 2018-034 over the past year—including

having to devote personal and organizational resources in response to the abbreviated comment

and protest periods. *See* Fuller Decl. ¶¶ 37–52; Supp Fuller Decl. ¶¶ 17–19; Saul Decl. ¶¶ 21–46,

Supp. Saul Decl. ¶ 11.

   It also disregards the basis for standing in procedural cases. In *Cottonwood*, a post-

*Summers* case, the Ninth Circuit explained that "a procedural injury is complete after [the action]

has been adopted, so long as [ ] it is fairly traceable to some action that will affect the plaintiff's

interests." 789 F.3d at 1081. Thus, "a plaintiff has standing to challenge programmatic

management direction without also challenging an implementing project that will cause discrete

injury." *Id.* Plaintiffs properly allege injuries flowing from IM 2018-034, as required by

*Cottonwood*. They need not await eventual drilling to obtain relief from these injuries.

III.    **THE REQUEST FOR INJUNCTIVE RELIEF IS RIPE.**

There is also no merit to Federal Defendants' further argument that Plaintiffs' motion is not "ripe." Def. Opp. at 21-24. Ripeness requires the Court to "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). Here, both prongs of *Abbott* support immediate judicial relief from IM 2018-034.

On the first prong, "[a] claim is usually ripe if the issues raised are primarily legal" and "do not require further factual development." *Ctr. For Biological Div. v. Kempthorne*, 588 F.3d 701, 708 (9th Cir. 2009). Both considerations are present here. Plaintiffs' procedural claim that BLM violated notice-and-comment requirements is purely legal, and thus "can never get riper." *See Ohio Forestry Ass'n v. Sierra Club,* 523 U.S. 726, 733 (1998). Similarly, whether IM 2018-034 is substantively contrary to NEPA and FLPMA, or was an arbitrary and capricious change in policy under the APA, are primarily questions of law. The salient facts, including the terms of IM 2018-034 and circumstances under which it was issued, are not disputed and will not change.

Moreover, Federal Defendants miss the mark in arguing that Plaintiffs' claims are not ripe because Plaintiffs seek relief as to "lease sales that have not yet been authorized." Def. Opp. at 21-22. Defendants appear to confuse the action challenged with the relief sought.  The final agency action challenged in this Motion for Preliminary Injunction is IM 2018-034. Because BLM is applying IM 2018-034 to past and upcoming 2018 lease sales, *see* Wells Decl. ¶ 3, there is "some concrete action applying the regulation to the claimant's situation in a fashion that harms him or threatens to harm him," confirming ripeness. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). In any event, the "imminence of project-specific implementation 'is irrelevant to the ripeness of an action raising a procedural injury.'" *See Cottonwood*, 789 F.3d at

1084 (*quoting Citizens for Better Forestry*, 341 F.3d at 977). Indeed, the whole purpose of preliminary injunctive relief is to protect Plaintiffs from harms that have not yet occurred.

Judicial economy also supports the ripeness of this controversy. In *Abbott*, immediate review was calculated to avoid a multiplicity of litigation. 387 U.S. at 154. Here too judicial economy is served by immediate review. In effect, Federal Defendants ask Plaintiffs to file a separate lawsuit against each lease sale to challenge the procedures employed. This approach flies directly in the face of efficient judicial administration. *Cf. Kraayenbrink,* 620 F.3d at 486 ("Plaintiffs are 'taking advantage of what may be their only opportunity to challenge [the agency regulations] on a nationwide, programmatic basis'") (alteration in original).

By contrast, delayed review would cause hardship to Plaintiffs, their members, and the public because BLM is actively applying IM 2018-034 to ongoing sales. Plaintiffs' declarations attest to the burden the expanded sales and condensed review schedule puts on their staff. *See* Saul Decl. ¶¶ 21–33, Molvar Decl. ¶¶ 24–29, 33–34, Fuller Decl. ¶¶ 37–52; Supp. Fuller Decl. ¶¶ 17–19. Until enjoined, Plaintiffs must comply with the 10-day protest deadline imposed under IM 2018-034, on pain of forfeiting their right to challenge BLM's leasing decisions in court for failure to exhaust their administrative remedies. *See Columbia Broad. Sys., Inc. v. United States*, 316 U.S. 407, 417–19 (1942) (finding challenge ripe where plaintiffs must comply with FCC rule or risk later consequences); *cf. Ohio Forestry*, 523 U.S. at 733 (finding claim not ripe where it imposed no "practical harm upon the interests that the Sierra Club advances").

For all these reasons, the request for injunctive relief over IM 2018-034 is ripe.

## IV.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

### A.    BLM Unlawfully Avoided Notice and Comment Rulemaking.

Plaintiffs demonstrated in their opening brief that IM 2018-034 is procedurally unlawful,

because FLPMA Section 309(e) requires BLM to structure public participation in public land management decisions "by regulation." 43 U.S.C. § 1739(e).

This case presents a scenario almost identical to that in *Natural Resources Defense Council v. Jamison*, 815 F. Supp. 454 (D.D.C. 1992). In *Jamison*, the Department of the Interior spelled out the procedures for public involvement in coal leasing in a "competitive coal leasing handbook." *Id.* at 468. The environmental plaintiffs, citing to FLPMA Section 309, argued that establishing public participation provisions by informal rule was unlawful. The court agreed, concluding that "Congress left the Secretary no discretion in how to provide that guarantee: notice and comment rulemaking." *Id.* at 468–69.

Federal Defendants attempt to minimize *Jamison*'s importance in a footnote, asserting that "the Department of the Interior, at the time of the suit, had not adopted regulations regarding public participation in the coal leasing process." Def. Opp. at 26, n.10. They wrongly imply that this distinguishes the present case. First, neither DOI nor BLM has adopted comprehensive regulations regarding public participation in the oil and gas leasing process like those at issue in *Jamison*. The Department of Interior has adopted general NEPA regulations, *see* 43 C.F.R. Part 46 ("Implementing the National Environmental Policy Act") but those apply across all DOI sub-agencies and only govern the NEPA process as it affects any Interior program or decision.  They do not specify how the public is to participate in oil and gas leasing, and compliance with NEPA's environmental review process is not a substitute for compliance with FLPMA Section 309. Federal Defendants are well aware of this fact: when implementing FLPMA's public participation mandates in other areas, DOI and BLM have expressly invoked that FLPMA authority, not NEPA. *See* 81 Fed. Reg. 89,580 (Jan. 11, 2017) (citing FLPMA Section 202). Comparing DOI's NEPA regulations to the separate, detailed procedures BLM established for

coal leasing confirms that the general NEPA regulations do not substitute for regulations governing participation in oil and gas leasing. *See* 43 C.F.R. Part 3400 (spelling out details for public involvement in coal leasing, including notification of sale schedules, comment periods and deadlines, and hearing opportunities).

Moreover, the fact that DOI had not yet adopted its own NEPA implementing regulations was irrelevant to the holding in *Jamison*: when establishing procedures for public participation, the agency must undertake notice-and-comment rulemaking. *Id.* at 468. Nor does the existence of other regulations on the general subject does not distinguish the remaining cases cited in Plaintiffs' opening brief. *See MST Express v. Dep't of Transp.*, 108 F.3d 401 (D.C. Cir. 1997); *Ethyl Corp. v. EPA*, 306 F.3d 1144 (D.C. Cir. 2002).

Here, just as in *Jamison*, BLM has attempted to circumvent FLPMA Section 309 in setting out its procedures for involving the public in oil and gas leasing by informal means. Accordingly, IM 2018-034 must be vacated and set aside under the APA as an agency action taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

**B.      IM 2018-034 Is a *De Facto* Legislative Rule Subject to Notice and Comment.**

Federal Defendants argue that IM 2018-034 was exempt from notice-and-comment requirements because it is a mere "statement of policy," not a legislative rule. Def. Opp. at 18, 25-26. Setting aside the question of whether FLPMA intended to adopt this distinction, the exemption is unavailable here.

### 1.      IM 2018-034 Is Not a "General Statement of Policy."

Under the APA, an agency generally must use notice-and-comment procedures to make any "rule." 5 U.S.C. § 553. The APA exempts from this requirement "general statements of policy" and "interpretive rules." *Id.* § 553(b)(A). There is no "bright-line distinction" between

REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION          15

policy statements and legislative rules. *Flagstaff Medical Ctr., Inc. v. Sullivan*, 962 F.2d 879, 886

(9th Cir. 1992). However, the Ninth Circuit has distinguished a policy statement as follows:

> The critical factor to determine whether a directive announcing a new policy constitutes a
> rule or a general statement of policy is the extent to which the challenged [directive]
> leaves the agency, or its implementing official[,] free to exercise discretion to follow, or
> not to follow, the [announced] policy in an individual case. To the extent that the
> directive merely provides guidance to agency officials in exercising their discretionary
> power while preserving their flexibility and their opportunity to make individualized
> determination[s], it constitutes a general statement of policy. . . .
>
> In contrast, to the extent that the directive narrowly limits administrative discretion or
> establishes a binding norm that so fills out the statutory scheme that upon application one
> need only determine whether a given case is within the rule's criterion, it effectively
> replaces agency discretion with a new binding rule of substant[ive] law.

*Sacora v. Thomas*, 628 F.3d 1059, 1069 (9th Cir. 2010) (quoting *Colwell v. Dept. of Health &*

*Human Servs.*, 558 F.3d 1112 (9th Cir. 2009) (alterations in original). The D.C. Circuit uses a

similar standard:

> A policy statement is one that first, does not have "a present-day binding effect," that is,
> it does not "impose any rights and obligations," and second, "genuinely leaves the agency
> and its decision-makers free to exercise discretion." . . . The question for purposes of §
> 533 is whether a statement is a rule of present binding effect; the answer depends on
> whether the statement constrains the agency's discretion.

*McLouth*, 838 F.2d at 1320 (cited approvingly in *Colwell*, 558 F.3d at 1124); *see also Syncor*

*Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997) (the distinction "turns on whether an

agency intends to bind itself").

Federal Defendants attempt to characterize IM 2018-034 as a mere "policy statement."

*See* Def. Opp. at 18, 25-26. The record shows otherwise. IM 2018-034 is written in binding

terms and treated as binding in the field. *See* Section I.B, *supra*. Federal Defendants do not

dispute that IM 2018-034 is binding on the issues it addresses. Instead, they observe that it still

"gives BLM officials ample discretion in conducting the leasing process." Def. Opp. at 19.

However, BLM officials do not retain the relevant kind of discretion—that is, discretion to act at

variance with IM 2018-034 in an individual case. *Colwell*, 558 F.3d at 1124; *Pac. Gas*, 506 F.2d at 39 (agency must state that it will "thoroughly consider not only the policy's applicability to the facts of a given case but also the underlying validity of the policy itself" to qualify for the policy statement exemption). Because IM 2018-034 is binding on BLM offices, it cannot be considered a mere policy statement. *See Sacora*, 628 F.3d 1059; *Colwell*, 558 F.3d 1112.

2.      IM 2018-034 Is Not an Interpretative Rule.

Federal Defendants also contend that IM 2018-034 "is entirely consistent with the procedures in BLM's regulations." Def. Opp. at 25. Though not expressly invoking the "interpretive rule" exception, this argument calls on language used to justify its application. *See Gunderson v. Hood*, 268 F.3d 1149, 1154 (9th Cir. 2001) ("If a rule is inconsistent with or amends an existing legislative rule, then it cannot be interpretive"). The "interpretive rule" exception is equally inapplicable here.

Interpretive rules are those that "clarify or explain existing law or regulations so as to advise the public of the agency's construction of the rules it administers." *Sacora*, 628 F.3d at 1070. However, "'[i]f a rule is inconsistent with or amends an existing legislative rule, then it cannot be interpretive.' This is because a rule that is inconsistent with a rule promulgated subject to notice and comment would impose new rights or obligations and would require compliance with the § 553 procedures." *Id.* (internal citations omitted) (alteration in the original).

IM 2018-034 cannot be deemed an "interpretive rule," for two reasons. First, it imposes a legal right or obligation by requiring BLM to provide a 10-day protest period. *See* IM 2018-034 at IV.B ("A 10-day public protest period will begin the day the sale notice is posted"). This

protest right is not elsewhere codified, by statute or regulation.[5] Nor is the provision a mere gap-filler for existing NEPA regulations. The administrative protest process is distinct from NEPA review; it is a procedure used to seek reconsideration of the agency's decision on grounds not limited to NEPA. Thus, far from merely interpreting existing regulations, BLM has impermissibly effected a substantive change in existing law through informal means. *See Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 653 F.3d 1, 6–7 (D.C. Cir. 2011) (interpretive rule cannot be used to effect "a substantive regulatory change" to the regulatory regime).

Second, IM 2018-034 is inconsistent with NEPA regulations and FLPMA Section 309. The CEQ regulations implementing NEPA specifically provide that agencies "shall" and "must" involve the public in their NEPA reviews. 40 C.F.R. § 1500.2 ("Federal agencies *shall* to the fullest extent possible . . . facilitate public involvement); *id.* § 1501.4(b) ("The agency *shall* involve . . . the public, to the extent practicable"); *id.* § 1506.6 ("Agencies *shall* . . . [m]ake diligent efforts to involve the public in preparing and implementing their NEPA procedures"); *id.* ("Agencies *shall* . . . [s]olicit appropriate information from the public); *id.* § 1500.1(b) ("NEPA procedures *must* insure that environmental information is available to public officials and citizens before decisions are made"). The DOI regulations implementing NEPA contain a similar requirement. *See* 43 C.F.R. § 46.305(a) ("The bureau *must*, to the extent practicable, provide for public notification and public involvement when an environmental assessment is being prepared. However, *the methods for* providing public notification and opportunities for public involvement

---

[5] The protest process is a creature of BLM manuals and purported guidance documents, such as IM 2010-117 and IM 2018-034. BLM sometimes refers to 43 C.F.R. § 3120.1-3 as providing a right to protest oil and gas leasing decisions, but that regulation only *refers* to protests, without *establishing* any right to protest. This is emphasized by BLM's protest regulations applicable to other resources, which are far more explicit. *See, e.g.*, 43 C.F.R. § 4160.2 (grazing); 43 C.F.R. § 3872.1 (mineral leasing); 43 C.F.R. § 1610.5-2 (resource management planning). BLM has no regulation purporting to provide a similar right to protest oil and gas leasing decisions.

are at the discretion of the Responsible Official"). Similarly, FLPMA Section 309 does "not give the BLM any discretion to cut the public out" of its land management decisions. *See W. Watersheds Project v. Kraayenbrink*, 538 F. Supp. 2d 1302, 1315-16 (D. Id. 2008).

In contrast, IM 2018-034 provides that "State and field offices *may* provide for public participation during the NEPA process." *See* IM 2018-034, III.B.5. The use of "may" as opposed to "must" or "shall" is inconsistent with existing NEPA regulations. IM 2018-034 purports to allow BLM officials discretion to decide both *whether*, and *to what extent*, to allow public participation. Existing law provides discretion on the latter, not the former. *Cf. Nat. Res. Def. Council, Inc. v. Hodel*, 618 F. Supp. 848, 875–76 (E.D. Cal. 1985) (noting the substantive significance of a change from "shall" to the discretionary "may").

For these additional reasons, Federal Defendants cannot validate IM 2018-034 as a policy statement or interpretive rule exempt from notice-and-comment rulemaking.

### C.  IM 2018-034 is Arbitrary, Capricious, and Contrary to the Public Participation Requirements of FLMPA and NEPA.

Even assuming IM 2018-034 was lawfully promulgated without notice and comment procedures, Plaintiffs are likely to succeed on their claim that IM 2018-034 is substantively invalid, because it is arbitrary, capricious, and contrary to public participation requirements under FLPMA and NEPA. Federal Defendants' arguments to the contrary are unavailing.

First, IM 2018-034 conflicts with FLPMA, NEPA, and their implementing regulations, because BLM has attempted to give itself complete discretion in whether to involve the public in its land management decisions. As Judge Winmill held in *Kraayenbrink*, 538 F. Supp. 2d at 1315-16, "Congress, in FLPMA, did not give the BLM any discretion to cut the public out of these management and execution issues. Yet the BLM seeks to grant itself that forbidden discretion in its regulatory revisions." Thus IM 2018-034, by its terms, is contrary to law.

Federal Defendants urge that providing public participation during the preparation of the governing RMP is a sufficient substitute, Def. Opp. at 28, but FLPMA requires public participation in both planning *and* management decisions. *See* 43 U.S.C. § 1712(a) (requiring public participation in RMP development); 43 U.S.C. § 1739(e) (requiring public participation in management decisions).

Second, contrary to Federal Defendants' contentions, Def. Opp. at 32–33, the APA's arbitrary and capricious standard embraces all types of final agency actions, not simply rulemaking. *See* 5 U.S.C. § 706(2) ("[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious"); *id.* § 551(13) (defining "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act"). Courts have not hesitated to apply arbitrary and capricious review to agency decisions styled as "policy statements" or "guidance documents" after concluding that the document is a "final agency action" reviewable under 5 U.S.C. § 704. *See, e.g.*, *Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925 (D.C. Cir. 2008) (reviewing agency policy under the arbitrary and capricious standard after determining that it constituted a "final agency action"); *Owner–Operator Indep. Drivers Ass'n v. Fed. Motor Carrier Safety Admin.*, 494 F.3d 188, 206 (D.C. Cir. 2007) (vacating a portion of a rule both because agency failed to provide an opportunity for comment and because agency failed to provide adequate explanation); *California v. U.S. Bureau of Land Mgmt.*, 277 F. Supp. 3d 1106 (N.D. Cal. 2017) (reviewing agency's Postponement Notice, unlawfully issued without notice-and-comment rulemaking, under the arbitrary and capricious standard). As Plaintiffs have established, IM 2018-034 is a "final agency action" under *Bennett* and thus the APA's arbitrary and capricious standard applies.

Relatedly, Federal Defendants argue that because IM 2018-034 "does not deviate from existing regulations, Plaintiffs' arguments regarding the requirements for changing regulations have no legal basis." Def. Opp. at 33. An unexplained change in agency policy, whether or not that action reverses a prior regulation, suffices to set aside that action as "arbitrary and capricious." *See Organized Village of Kake v. U.S. Dept. of Agric.*, 795 F.3d 956, 966 (9th Cir. 2015) ("'Unexplained inconsistency' between agency actions is 'a reason for holding an interpretation to be an arbitrary and capricious change.'").

For all the foregoing reasons, Plaintiffs are likely to succeed on the merits of both their substantive and procedural claims.

## V.     PLAINTIFFS HAVE ESTABLISHED IRREPARABLE HARM WARRANTING A PRELIMINARY INJUNCTION.

### A.     Bureaucratic Commitment to Leasing Will Bias Any Later NEPA Process, Causing Irreparable Harm the Environment.

An injunction is warranted to protect the integrity of BLM's decisionmaking process during the pendency of this case. The bureaucratic commitment theory stands as a basis for a preliminary injunction, and none of the cases cited by Federal Defendants are to the contrary. The harm under this theory flows from the commonsense notion that allowing an agency to commit to a particular outcome before completing proper NEPA analysis may foreclose the opportunity for an unbiased examination of alternatives down the road. The further the agency advances toward an outcome, the harder it will be to convince the agency to change direction. In the NEPA context, that risk is not purely procedural but rather grounded in the *environmental harm* caused by an outcome chosen through inadequate deliberation.

The First Circuit, in *Sierra Club v. Marsh*, 872 F.2d 497, 498 (1st Cir. 1989), squarely reaffirmed that bureaucratic commitment is a viable ground for a preliminary injunction over oil

and gas leases, and held that the Supreme Court "did not overrule or significantly modify" the theory in *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531 (1987).

Federal Defendants incorrectly argue that the Ninth Circuit does not recognize bureaucratic momentum as the basis for an injunction under NEPA. *See* Def. Opp. at 36–37. To the contrary, the Ninth Circuit embraced the theory in *N. Cheyenne Tribe v. Hodel*, 851 F.2d 1152 (9th Cir. 1988). Citing *Watt*, the Circuit agreed that "[b]ureaucratic rationalization and bureaucratic momentum are real dangers," particularly where the agency would be aware of investments lessees made on the leases when reevaluating its decision. *Id.* at 1158. The Court held only that "the Tribe failed to demonstrate any significant difference between voiding and suspending" already-issued coal leases while the Secretary prepared a Supplemental EIS. *Id.* In contrast here, this Court has the opportunity to ensure a proper NEPA process from the start.

And aside from *Watt*, the Ninth Circuit has recognized that committing resources to an action before completing a proper NEPA process can itself constitute irreparable harm to support an injunction. *See Nat. Res. Def. Council v. Houston*, 146 F.3d 1118, 1128-29 (9th Cir. 1998) ("The failure to respect the process mandated by law cannot be corrected with post-hoc assessments of a done deal").

Those authorities are directly relevant here. IM 2018-034 has resulted in abbreviated NEPA reviews and less comprehensive public comments, both of which compromise BLM's decisionmaking process by increasing the likelihood that BLM overlooks impacts to at-risk species, critical habitats, sensitive watersheds, exceptional recreational resources, and cultural artifacts. The declarations of Kelly Fuller and Michael Saul provide concrete examples of lease sales in which the public comment process helped BLM make better decisions. *See* Saul Decl. ¶ 31 (identifying lease deferrals in Nevada, Montana, and the Idaho); *see also* Fuller Decl. ¶ 18.

In sum, a preliminary injunction is warranted here to protect the integrity of the NEPA

process and avoid irreparable environmental harm from leasing decisions made with inadequate

foresight and deliberation.

### B.     Irreparable Harm to Plaintiff Organizations Further Justifies an Injunction.

A preliminary injunction is also necessary to prevent the costs and hardships to Plaintiffs

and the public in attempting to comply with IM 2018-034, which are substantial and

unrecoverable. Again, Plaintiffs routinely review, comment on, and protest oil and gas lease

sales, and have already experienced substantial hardships complying with IM 2018-034. *See* Saul

Decl. ¶¶ 21–33, Molvar Decl. ¶¶ 24–29, 33–34, Fuller Decl. ¶¶ 37–52; Supp. Saul Decl. ¶ 11;

Supp. Fuller Decl. ¶¶ 17–19. Plaintiffs have been forced to divert organizational resources from

other programs to prepare comments or protests within BLM's new procedures. *Id.* If an

injunction is not granted, Plaintiffs will irreparably lose the ability to influence BLM's decisions

in other matters and to spend their limited resources on other programs. *Id.*

### VI.   THE PUBLIC INTEREST STRONGLY OUTWEIGHS ANY HARDSHIP TO DEFENDANTS, WHICH CAN BE AVOIDED THROUGH A TAILORED INJUNCTION.

The relief Plaintiffs seek can be granted without the parade of evils suggested by Federal

Defendants and Intervenors. Specifically, the state of Wyoming insinuates that delaying the

September and December sales would sacrifice millions in royalty payments benefitting their

state treasury. *See* Wyoming Opp. at 7–11 (ECF No. 50). Adjusting the calendar for the

upcoming sales will postpone, not eliminate, potential receipt of those funds, and the true cost of

such delay bears no relation to the monetary figures they cite. WEA, for their part, fails to

explain how delaying the September and December sales until adequate public input can be

solicited would result in a loss of their members' claimed expenditures in evaluating parcels

nominated for the September and December sales. *See* WEA Opp. at 6–8 (ECF No. 51). Assuming BLM proceeds to lease those parcels as planned, these investments will not be lost. To the extent BLM's additional analysis reveals that particular parcels should be withdrawn, or protective stipulations attached, then the process has worked as intended.

Federal Defendants, too, mistakenly suggest that staff time already invested in the September and December sales would be wasted. Def. Opp. at 39–40. But Plaintiffs only ask that BLM submit the existing NEPA documentation for those sales to the public for additional comment, and to lengthen the time for public protests. BLM would not be forced to scrap existing work unless warranted by substantive comments. Although Plaintiffs acknowledge that adjusting the calendar would involve certain administrative inconveniences, BLM itself routinely withdraws or postpones parcels or entire sales for various reasons. Additionally, the harms alleged stem primarily, if not exclusively, from changing course for the September and December lease sales, which are already underway. Accordingly, with a tailored injunction to minimize any delays for those sales, the balance of harms tips decidedly in Plaintiffs' favor.

Finally, Federal Defendants' assertion that the public interest weighs against a preliminary injunction is spurious. The new IM has created serious barriers for citizens to exercise their statutorily-guaranteed right to participate in decisions affecting their public lands. These burdens are palpable in the declarations accompanying Plaintiff's opening brief and confirmed in the recent letter from Governor Hickenlooper. *See* Stellberg Decl., Ex. 2 ("I must stress to you the great burden this expanded sale and condensed review schedule puts on State staff to adequately review parcels"). Removing these barriers, and ensuring that federal projects are properly vetted before approval, are undoubtedly in the public interest.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully pray that this Court grant this motion and

issue the requested preliminary injunction.

DATED: August 24, 2018                    Respectfully submitted,

                                          /s/  Laird J. Lucas_____.
                                          Laurence ("Laird") J. Lucas (ISB # 4733)
                                          Todd C. Tucci (ISB # 6526)
                                          Talasi B. Brooks (ISB #9712)
                                          Sarah Stellberg (ISB # 10538)

                                          Attorneys for Plaintiffs


## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of August 2018, I electronically filed the foregoing
PLAINTIFFS' REPLY BRIEF and the accompanying SUPPLEMENTAL DECLARATION OF
KELLY FULLER, SUPPLEMENTAL SAUL DECLARATION, and DECLARATION OF
SARAH STELLBERG (and all attachments thereto) with the Clerk of the Court using the
CM/ECF system, which sent a Notice of Electronic Filing (NEF) to the following persons:

**Counsel for Federal Defendants**        **Counsel for Intervenor-Movants**
                                          **State of Wyoming & Western Energy Alliance**

John Shaughnessy Most
U.S. Dept. of Justice                     Erik Edward Petersen
john.most@usdoj.gov                       erik.peterson@wyo.gov

Luther L. Hajek                           Michael M. Robinson
U.S. Dept. of Justice                     mike.robinson@wyo.gov
luke.hajek@usdoj.gov
                                          Paul A. Turcke
                                          pat@msbtlaw.com

                                          Bret A. Sumner
                                          bsumner@bwenergylaw.com


                                          /s/ Laird J. Lucas