Laurence ("Laird") J. Lucas (ISB # 4733)
llucas@advocateswest.org
Todd C. Tucci (ISB # 6526)
ttucci@advocateswest.org
Talasi B. Brooks (ISB # 9712)
tbrooks@advocateswest.org
Sarah K. Stellberg (ISB # 10538)
sstellberg@advocateswest.org
*Advocates for the West*
P.O. Box 1612
Boise, ID 83701
(208) 342-7024
(208) 342-8286 (fax)

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, and CENTER FOR BIOLOGICAL DIVERSITY,<br><br>Plaintiffs,<br><br>v.<br><br>RYAN K. ZINKE, Secretary of Interior; DAVID BERNHARDT, Deputy Secretary of Interior; and UNITED STATES BUREAU OF LAND MANAGEMENT, an agency of the United States,<br><br>Defendants. | Case No. 1:18-cv-00187-REB<br><br>**FIRST SUPPLEMENTAL DECLARATION OF MICHAEL SAUL** |

I, Michael A. Saul, hereby declare as follows:

1. The following facts are personally known to me, and if called as a witness I would and could truthfully testify to these facts.

2.      I submit this Declaration to support and more fully elaborate on my first Declaration filed in this matter, ECF No. 30-2.  Since the time when I submitted that Declaration, new facts and circumstances about BLM's implementation of IM 2018-034 have emerged that will be useful to the Court.

3.      Since the BLM has begun implementing the provisions of Instruction Memorandum 2018-034, the task of providing accurate and informed public comment on proposed oil and gas leasing decisions affecting public lands and wildlife has become substantially more difficult, and imposed substantial and unnecessary burdens on the work of the Center for Biological Diversity's staff.

4.      As discussed in detail below, BLM's public disclosure, environmental analysis, and public comment processes, as implemented with regard to its third and fourth quarter 2018 competitive oil and gas lease sales, pose seven substantial difficulties for the public: (a) extremely large lease offerings covering hundreds of thousands of acres across multiple geographic and management areas; (b) minimal or non-existent disclosure of wildlife and other resources affected by proposed leasing actions; (c) shortened or non-existent public comment periods; (d) shortened protest periods; (e) overlapping protest periods for multiple states; (e) outdated and cumbersome submission requirements; (f) unreliable online comment portals.

5.      Based on information provided by my colleagues, the BLM's use of DNAs for third-quarter 2018 lease sales under IM 2018-034 has imposed unique burdens on the Center and the public in attempting to understand potential impacts of leasing and subsequent development that would otherwise be disclosed in an environmental assessment.  Specifically, those burdens include:

a) Researching environmental values and endangered species associated with lease parcels that may be impacted by leasing and development;

b) Fielding dozens of phone calls and emails from the public and elected officials who are attempting to understand environmental impacts that would otherwise be made available to them in an environmental assessment;

c) Fielding dozens of phone calls and emails from the public and elected officials who are attempting to understanding the IM itself, and why public and environmental review under NEPA is no longer available for lease sale decisions;

d) Fielding phone calls and emails from media attempting to understanding environmental values and endangered species associated with lease parcels, and who are attempting to understanding the IM itself, and why public and environmental review under NEPA is no longer available for lease sale decisions;

e) Translating research about environmental values associated with lease parcels into administrative protests of lease sale notices that entirely lack any associated assessment of the potential impacts of leasing and subsequent development.

6. Navigating an entire state's lease sales for one quarter, especially when there are 4-6 simultaneous NEPA processes going on at the same time, has been extremely difficult. The BLM's online systems for comment submission appear are unable to process the demands of multiple comment periods. One colleague has been timed out of at least three different online comment portals on the due dates for fourth quarter 2018 scoping comments. This is a unique burden that we have never encountered with prior to the implementation of the IM.

7. Under IM 2018-034, BLM proposed leasing, relying on two DNAs, DOI-BLM-AZ-G010-2018-0027-DNA and DOI-BLM-AZ-G010-2018-0024-DNA, of three parcels, totaling

approximately 4200 acres, in northern Arizona, near Petrified Forest National Park. BLM conducted no new environmental disclosure or analysis for these parcels, despite that the Resource Management Plan relied upon dates to 1988 and contains no analysis of impacts of oil and gas development. Because BLM provided no information regarding potential impacts of the proposed lease sale on endangered species, water quality and availability, air quality and climate, cultural resources, or affected local communities, the Center and other individuals and organizations were required to investigate such potential impacts independently. Despite reliance on an outdated RMP, significant community opposition, and substantial questions about issues including potential helium fracking, BLM provided the public with only nine business days (July 23 through August 2, 2018) to protest the proposed parcels.

8. Under IM 2018-034, for its third quarter Nevada oil and gas competitive lease sale, BLM has relied on two DNAs - DOI-BLM-NV-E000-2018-0007-DNA, DOI-BLM-NV-L000-2018-0001-DNA, and DOI-BLM-NV-L000-2018-0001-FONSI - for 144 parcels containing 295,174.30 acres of federal public lands and split estate mineral rights administered by BLM in Nevada. BLM provided no opportunity for public comment whatsoever on these DNAs, and did not disclose them to the public until the issuance of a Lease Sale Notice and commencement of a 10-day protest period on July 27, 2018. This provided the public with only seven business days and two cursory six-page documents in order to attempt to evaluate the potential consequences of leasing and development of nearly 300,000 acres of Nevada lands across hundreds of square miles, including 74 parcels containing designated greater sage-grouse habitat. This protest period also coincided with a simultaneous protest period for a BLM Utah third-quarter lease sale involving an additional approximately 26,000 acres of greater sage-grouse habitat.

9. Specifically citing the requirements of IM 2018-034, BLM proposed 350 parcels totaling approximately 355,819 acres for third-quarter 2018 leasing in Wyoming, including approximately 210,000 acres of greater sage-grouse Core Areas. BLM in February 2018 issued two discrete Environmental Assessments, under its pre-2018 procedures, for 124 parcels the High Plains and Wind River/Bighorn Basin Regions. Subsequently, stating that "[t]o comply with IM 2018-034's parcel review timeframes, the WSO is processing two sets of parcels for the Third-Quarter 2018 sale," in May 2018 it issued a second, additional Environmental Assessment for an additional approximately 287,000 acres scattered across the entire State of Wyoming. BLM provided the public with only ten days – from August 2 through August 13 – to map and evaluate resource values and proposed stipulations for over 350,000 acres of public land in greater sage-grouse, mule deer, and pronghorn habitat across multiple regions of Wyoming, from the Red Desert to the Powder River Basin.

10. BLM Lease Sale notices generally provide that "You may file a protest either by mail in hardcopy form or by telefax," although the New Mexico State Office's Final Sale notice for the third quarter New Mexico, Oklahoma, and Texas sale also prohibits protests by fax ("All protests sent any way other than by mail or hand-delivery will be summarily dismissed.") The BLM's insistence on prohibiting electronic filing of protests effectively shortens the protest period further by requiring submission of hard-copy protests within nine days (absent hand-delivery to BLM offices).

11. As a result of these large lease sales, minimal or non-existent comment periods, increased use of DNAs, restrictive filing methods, and shortened and overlapping comment periods, the Center has been required to divert staff resources from other priorities in order to evaluate, respond to, and inform its members, other nongovernmental organizations, and the general public regarding potential impacts from BLM oil and gas leasing actions.

12. For educational, professional and recreational purposes, I have camped, hiked, and viewed sage-grouse in Nevada's Monitor Valley, where, under the procedures established by IM 2018-034, oil and gas leases within greater sage-grouse Priority Habitat Management Areas were sold as part of BLM's June 2018 Nevada oil and gas lease sale.

13. On May 15-16, 2018, I camped in the Monitor Valley on Mosquito Creek, and had the opportunity to view and photograph over ten greater sage-grouse exhibiting dancing behavior on a lek in the Monitor Valley north of Mosquito Creek.



(Greater sage-grouse observed in Monitor Valley May 16, 2018 – photo by Patrick Donnelly)

14.     The Monitor Valley and Monitor Range provide extraordinary opportunities for solitude, natural beauty, and viewing of greater sage-grouse and pronghorn, and I intend to return again in the spring of 2019 to camp, hike, and attempt to observe greater sage-grouse.

15.     BLM's June 2018 Nevada oil and gas lease sale included multiple parcels within designated sage-grouse Priority Habitat Management Areas in the Monitor Valley. BLM denied CBD and WWP protests of the proposed sale According to my review of BLM lease sale records, four parcels – Nevada June lease sale parcels 3, 4, 5, and 10 – located within PHMA in the Monitor Valley sold, either competitively or noncompetitively, at the June 2018 Nevada lease sale.

16.     The Monitor Valley is currently undisturbed by oil and gas exploration or development. Potential oil and gas exploration, development, and/or infrastructure authorized by BLM leasing activity will adversely affect the recreational and aesthetic qualities of the area, and has the potential to limit opportunities for continued greater sage-grouse viewing on the (currently-undisturbed) leks in the Valley.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.  Executed in Denver, Colorado on August 24, 2018.

Signed,



Michael A. Saul