Laurence ("Laird") J. Lucas (ISB # 4733)
llucas@advocateswest.org
Todd C. Tucci (ISB # 6526)
ttucci@advocateswest.org
Talasi B. Brooks (ISB # 9712)
tbrooks@advocateswest.org
Sarah K. Stellberg (ISB # 10538)
sstellberg@advocateswest.org
Advocates for the West
P.O. Box 1612
Boise, ID 83701
(208) 342-7024
(208) 342-8286 (fax)

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, and CENTER FOR BIOLOGICAL DIVERSITY, <br><br> Plaintiffs, <br><br> v. <br><br> RYAN K. ZINKE, Secretary of Interior; DAVID BERNHARDT, Deputy Secretary of Interior; and UNITED STATES BUREAU OF LAND MANAGEMENT, an agency of the United States, <br><br> Defendants. | Case No. 1:18-cv-00187-REB <br><br> **DECLARATION OF SARAH STELLBERG** |

1. I am a Staff Attorney at Advocates for the West. I am admitted to practice law in the States of Idaho and California and the District of Idaho. I am co-counsel for the Plaintiffs in this matter. I make this Declaration in support of Plaintiffs' Motion for Preliminary Injunction. I have personal knowledge of all of the matters stated in this declaration and if called upon to do

DECLARATION OF SARAH STELLBERG - 1

so I am competent to testify to all matters set forth herein. All webpages cited in this declaration were last visited on August 23, 2018.

2. Attached hereto as Exhibit 1 is a table setting forth the schedules for the September 2018 and December 2018 oil and gas lease sales in BLM's western states, including public comment opportunities and protest deadlines. I compiled this information from publicly-accessible webpages and documents on ePlanning.gov, along with the Wells Declaration, ECF No. 62-1, submitted with the Federal Defendants' opening brief.

3. Attached hereto as Exhibit 2 is a true and correct copy of a letter, dated July 17, 2018 and addressed to Gregory Shoop, Acting Colorado State Director, from John W. Hickenlooper, Governor of Colorado, as accessible at:

https://www.colorado.gov/governor/sites/default/files/sage_grouse_2018_07-17.pdf.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 24, 2018 in Boise, Idaho.

_Sarah K. Stellberg_
Sarah K. Stellberg

DECLARATION OF SARAH STELLBERG - 2

# EXHIBIT 1

| | State | Number of Parcels | NEPA Compliance | Scoping Period | Comment Period on Draft EA | NCLS posting date | 10-day Protest Deadline | Lease Sale Date |
|---|---|---|---|---|---|---|---|---|
| **Third Quarter 2018 (September)** | **Arizona** | 3 (4,100 acres) | DNA | No | No | July 23, 2018 | Aug 2, 2018 | Sep 6, 2018 |
| | **Colorado** | 20 (8,160 acres) | EA | Dec 4, 2017 – Jan 4, 2018 (pre-IM 2018-034) | Mar 22 – Apr. 6, 2018 **(15 days)** | Jul 20, 2018 | Jul 30, 2018 | Sep 6, 2018 |
| | **Idaho** | 1 (836 acres) | * In Process | * In Process | * In Process | * In Process | * In Process | * In Process |
| | **Montana/ Dakotas** | 27 (13,712 acres) | DNA | Feb 2 – 20, 2018 **(18 days)** | No | Jul 24, 2018 | Aug 3, 2018 | Sep 11, 2018 |
| | | | EA | Feb 5 – 21, 2018 **(15 days)** | Apr 3 – 17, 2018 **(14 days)** | | | |
| | **Nevada** | 144 (292,545 acres) | DNA | No | No | July 27, 2018 | Aug 6, 2018 | Sep 11, 2018 |
| | **New Mexico** | 142 (50,797 acres) | EA | Apr 9 - 20, 2018 **(11 days)** | No | Jul 23, 2018 | Aug 1, 2018 | Sep 5-6, 2018 |
| | **Utah** | 109 (204,172 acres) | 2 EA | No | Mar 30 – Apr. 16, 2018 **(17 days)** | Jul 26, 2018 | Aug 6, 2018 | Sep 11, 2018 |
| | | | EA | Mar 30 – Apr. 16, 2018 **(17 days)** | No | | | |
| | **Wyoming** | 350 (355,819 acres) | 2 EA | No | Jan 23 – Feb 21, 2018 (pre-IM 2018-034) | Aug 1, 2018 | Aug 13, 2018 | Sep 18-20, 2018 |
| | | | EA | No | May 24 – Jun 7, 2018 **(14 days)** | | | |
| **Fourth Quarter 2018 (December)** | **Colorado** | 227 (235,810 acres) | 2 DNA 2 EA | Jul 2 - 17, 2018 **(15 days)** | *Expected* Aug 27 – Sep 11, 2018 **(15 days)** | Oct 22, 2018 | Nov 1, 2018 | Dec 7, 2018 |
| | **Idaho** | 0 (unless Sept. parcel delayed) | -- | -- | -- | -- | -- | -- |
| | **Montana/ Dakotas** | 103 (69,270 acres) | EA | Jul 6 - 20, 2018 **(14 days)** | Aug 10 - 24, 2018 **(14 days)** | Oct 24, 2018 | Nov 3, 2018 | Dec 11, 2018 |
| | **Nevada** | 141 (208,159 acres) | 1 DNA 1 EA | No | Aug 17 – Sep 4, 2018 **(18 days)** | Oct 24, 2018 | Nov 3, 2018 | Dec 11, 2018 |
| | **New Mexico** | 131 (98,795 acres) | EA | Jul 9 - 27, 2018 **(18 days)** | No | Oct 22, 2018 | Oct 31, 2018 | Week of Dec 3, 2018 |
| | **Utah** | 225 (329,826 acres) | 2 DNA 4 EA | Jul 16 - 31, 2018 **(15 days)** | No | Oct 25, 2018 | Nov 5, 2018 | Week of Dec 10, 2018 |
| | **Wyoming** | 702 (1,040,818 acres) | EA | No | *Expected* Aug 24 – Sep 10, 2018 **(17 days)** | Oct 24, 2018 | Nov 5, 2018 | Week of Dec 10, 2018 |

# EXHIBIT 2



July 17, 2018

Gregory Shoop, Acting Colorado State Director
U.S. Bureau of Land Management
2850 Youngfield Street
Lakewood, Colorado 80205

*Sent via email to gshoop@blm.gov and submitted through the ePlanning portal*

RE: State of Colorado's Scoping Comments to the Bureau of Land Management's (BLM) December 2018 Oil and Gas Lease Sale

Dear Mr. Shoop:

Thank you for the opportunity to provide scoping comments to the BLM for the December 2018 lease sale. With the release of BLM IM 2018-034, I understand it is no longer a policy of the BLM to require public comment during the lease sale process. I applaud you for using your discretion to allow the State and the public the opportunity to provide scoping comments, as well as a public comment opportunity on the Environmental Assessment later this summer.

While I believe you and your staff are doing the best you can to work with the State, the new IM has created significant barriers for us to efficiently review the parcels under consideration for sale. Colorado Department of Natural Resources Executive Director Bob Randall wrote to you in April to express concerns about IM 2018-034.  I reaffirm those concerns now as we see the impacts of the IM first-hand during this sale.  With 227 parcels representing 236,010 acres spread across the state, I must stress to you the great burden this expanded sale and condensed review schedule puts on State staff to adequately review parcels.

Colorado Parks and Wildlife (CPW) routinely reviews BLM parcels proposed for sale and recommends opportunities to avoid or minimize impacts to wildlife.  Detailed comments from CPW are included in Attachments 1 and 2. In addition, below we highlight several issues of particular interest to the State. We encourage BLM staff to respond to these concerns in your Environmental Assessment (EA).

**Greater Sage-Grouse**

This lease sale currently includes 143 parcels totaling approximately 108,600 acres in priority and general habitat for Greater Sage-grouse (GRSG).  That equates to 62% of total parcels and 46% of total acreage in the sale. In May 2018, the BLM published the Northwest Colorado Greater Sage-Grouse Draft Resource Management Plan Amendment (Draft RMPA) and Environmental Impact Statement.  The State supports a targeted plan amendment that maintains a commitment to the overall conservation goals for GRSG and remedies lingering concerns from the 2015 Northwest Colorado Greater Sage-Grouse Approved Resource Management Plan Amendment (ARMPA).  A significant effort is currently underway by the BLM, the State, local governments, and interested parties to achieve this goal in a new RMPA. Given the amount of GRSG habitat potentially impacted by this sale, and the plan amendment process currently underway, we request that any parcels in GRSG habitat be removed from this sale until the RMPA is finalized.

While IM 2018-034 states that the BLM will not routinely defer leasing when waiting for a plan amendment or revision to be signed, it does not remove your discretion to recommend deferral to the Washington Office. If you are unable to remove these parcels from the sale, despite our strong recommendation, then we request the following changes, at a minimum:

1. The 2015 ARMPA stipulates that no new leasing will occur within 1 mile of a GRSG lek. Staff at CPW have identified 19 parcels in the sale that fall within 1 mile of a lek and have requested those parcels be removed from the sale (see Attachment 1). We appreciate the verbal commitment we have received from BLM staff to make this change.

2. CPW staff have informed the BLM's Kremmling Field Office that parcels located in that field office do not have the necessary stipulations to comply with the 2015 ARMPA. BLM staff have acknowledged this oversight and we appreciate the verbal commitment to include the necessary stipulations.

**Big Game Winter Range and Migration Corridors**

Department of the Interior (DOI) Secretarial Order 3362, *Improving Habitat Quality in Western Big-Game Winter Range and Migration Corridors,* directs DOI bureaus to work with the states "to enhance and improve the quality of big-game winter range and migration corridor habitat on Federal lands . . . ." We welcome the direction SO 3362 provides to consider how federal land management actions can improve habitat quality for big-game populations and ensure robust big-game populations persist. SO 3362 specifically directs DOI bureaus to apply actions that conserve habitat necessary to sustain local and regional big-game populations by minimizing development that would fragment winter range and primary migration corridors and limiting disturbance of big game on winter range.

There is a growing body of evidence that timing limitation stipulations on oil and gas drilling activities are not adequate to protect big game use of crucial winter habitats and migratory corridors, and that additional limitations on the density of surface facilities may be necessary to maintain big game populations in areas heavily developed for oil and gas.[1,2,3] Impacts to big game use of crucial winter habitats and migration corridors increase dramatically when well pad densities exceed one pad/mile.[2,4,5] These adverse impacts are a result of reduced habitat effectiveness from increased road densities and well-related traffic. Impacts to big game populations are considered high or extreme when well pad densities and associated roads exceed four pads/mile.[2,6,7]

To respond to the direction provided by SO 3362, we recommend that BLM incorporate a stipulation that limits the density of surface facilities to no greater than one well pad/mile$^2$ for the specific parcels that contain the highest priority big game winter habitats and migratory corridors (see Attachment 1). This recommendation continues to allow for multi-well pads and efficient development of fluid mineral

---

[1] Sawyer H., N.M. Korfanta, R.M. Nielsen, K.L. Monteith, and D. Strickland. 2017, Mule deer and energy development - long term trends of habituation and abundance. Global Change Biology 2017;1-9

[2] Anderson, C.R., Jr., and C.J. Bishop. 2014. Migration patterns of adult female mule deer in response to energy development. Pages 46-50 in R.A. Coon & M.C. Dunfee, editors. Transactions of the 79th North American Wildlife and Natural Resources Conference. Wildlife Management Institute, Gardners, PA, USA

[3] Sawyer H., M.J. Kaufman, A.D. Middleton, T.A. Morrison, R.M. Nielsen, and T.B. Wyckoff. 2013. A framework for understanding semi-permeable barrier effects on migratory ungulates. Journal of Applied Ecology 2013, 50, 68-78

[4] Wilbert, M., Thomson, J., and N. Culver. 2008. Analysis of habitat fragmentation from oil and gas development and its impact on wildlife, The Wilderness Society ecology and economic research department, Washington, D.C. 31 pp.

[5] Hebblewhite, M. 2008. A literature review of the effects of energy development on ungulates: Implications for central and eastern Montana. Report prepared for Montana Fish, Wildlife and Parks, Miles City, MT. 125 pp.

[6] Wyoming Game and Fish Department. 2008. Recommendations for development of oil and gas resources within crucial and important wildlife habitats. Internal Document. Cheyenne, Wyoming. 237 pp.

[7] Lutz, D. W., J. R. Heffelfinger, S. A. Tessmann, R. S. Gamo, and S. Siegel. 2011. Energy development guidelines for mule deer. Mule Deer Working Group, Western Association of Fish and Wildlife Agencies, USA. 27 pp.

resources in Colorado using common development practices and currently available drilling technology. If the specific parcels identified in Attachment 1 cannot be limited to one well pad/mile$^2$ through existing lease stipulations, CPW recommends that BLM defer these parcels from sale until the existing RMPs are updated through plan maintenance to incorporate a stipulation to address well pad density. Staff at CPW are available as needed to assist BLM with efforts to update the existing RMPs to address this issue.

**North Fork Valley Parcels**

Local governments and citizens in the North Fork Valley have been heavily engaged in efforts to grow and diversify its economy. First, the local community has been engaged in the Uncompahgre Field Office (UFO) RMP revision since 2010. The BLM is expected to release a draft of the final RMP to the public this fall, with an anticipated Record of Decision in Spring 2019. The Draft UFO RMP, currently out for public comment, includes Alternative B.1 which is specific to oil and gas leasing in the North Fork Valley. It makes sense to us to defer parcels in the North Fork Valley until the BLM receives public comment on Alternative B.1, and other alternatives, responds to those comments, and publishes a final decision.

Second, the North Fork Coal Mine Methane Working Group was formed in February by local governments, mining companies, electric utilities, and conservation organizations, with assistance from State agencies. The purpose of the group is to support the coal mines and surrounding communities in the North Fork Valley through the development of a comprehensive strategy for education, capture, exploration of mitigation, and economic utilization of coal mine methane.

We ask that the BLM strongly consider the position of the North Fork Valley community and members of the North Fork Coal Mine Methane Working Group as you evaluate public scoping comments and conduct the EA for this lease sale.

Thank you for your consideration of our comments. They have been made to ensure that oil and gas development in Colorado can occur in a manner that avoids or minimizes impacts to our most important natural resources, and takes into account local community interests.

Sincerely,

John W. Hickenlooper
Governor