Bret Sumner, *Pro Hac Vice*
bsumner@bwenergylaw.com
BEATTY & WOZNIAK, P.C.
216 Sixteenth St., Suite 1100
Denver, CO 80202-5115
Telephone: 303-407-4499
Fax: 800-886-6566

Paul A. Turcke, ISB #4759
MSBT LAW
7699 West Riverside Drive
Boise, ID 83714
Telephone: 208-331-1800
Fax: 208-331-1202
Email: pat@msbtlaw.com

Attorneys for Defendant-Intervenor Western Energy Alliance.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **WESTERN WATERSHEDS PROJECT**, *et al.*, | |
| Plaintiffs, | Case No. 1:18-cv-00187-REB |
| v. | |
| **RYAN K. ZINKE,** Secretary of the Interior, *et al.*, | **DEFENDANT-INTERVENOR WESTERN ENERGY ALLIANCE'S [PROPOSED] SUR-REPLY TO MOTION FOR PRELIMINARY INJUNCTION [DKT. 30]** |
| Defendants, | |
| **WESTERN ENERGY ALLIANCE**, | |
| Defendant-Intervenor. | |

Defendant-Intervenor Western Energy Alliance (Alliance) files this [Proposed] Sur-Reply in Opposition to Plaintiffs' Motion for Preliminary Injunction [Dkt. 30] to clarify the factual record, address Plaintiffs' new declarations, and to respond to Plaintiffs' claims that Alliance members would not suffer harm.

The Mineral Leasing Act mandates that the Bureau of Land Management (BLM) hold quarterly lease sales.  30 U.S.C. § 226(b)(1)(A) ("Lease sales shall be held for each State where

eligible lands are available *at least quarterly* and more frequently if the Secretary of the Interior determines such sales are necessary.") (emphasis added).  Plaintiffs, without stating a case or controversy under Article III of the Constitution, seek an injunction that would put BLM in violation of this statutory mandate.

In addition to violating BLM's statutory mandate, Plaintiffs' requested relief violates the Constitution's separation of powers by using the judiciary to improperly override the executive branch's policy guidance and implementation of Instruction Memorandum (IM) 2018-034 in place of IM 2010-117.  Paradoxically, the IM which Plaintiffs seek to re-implement suffers from the same alleged "deficiency" on which they hang their complaint—that the IM did not go through notice-and-comment rulemaking.  Plaintiffs' attempt to use the judiciary to revive the policies of a past administration they found more preferable violates basic Constitutional principles.  Regardless of Plaintiffs' attempts to bypass Constitutional restraints, neither the original, nor the supplemental affidavits, carry Plaintiffs' burden to show irreparable harm. Therefore, Plaintiffs' Motion should be denied.

## ARGUMENT

### I.     Plaintiffs' Alleged Organizational Harms are Moot

Plaintiffs' Reply attaches supplemental declarations in an effort to support their allegations that IM 2018-034 causes irreparable harm to Plaintiff organizations.  *See* Dkt. 63-1; Dkt. 63-2.  Rather than prove irreparable harm, Plaintiffs' supplementary declarations both confirm that IM 2018-034 is not a final agency action and ignore Plaintiffs' extensive participation in the lease sales they seek to enjoin.

Ultimately, Plaintiffs contend that IM 2018-034 is a consummation of BLM's lease sale decision-making process, and therefore a final agency action.  *See* Dkt. 30-1 at 17.  As Federal

Defendants state in their Opposition to Plaintiffs' Motion for Preliminary Injunction [Dkt. 52], IM 2018-034 is not the consummation of BLM's lease sale decision-making process because the IM leaves discretion entirely to BLM state and field offices on how to appropriately comply with NEPA as to each individual lease sale.  Dkt. 52 at 17–18.  *See also Indus. Customer of Nw. Utils. v. Bonneville Power Admin.*, 408 F.3d 638, 646–47 (9th Cir. 2005) (consummation of agency decision-making process does not occur at the time the agency instructs that a decision should be made but occurs at the time the decision is actually made which renders the substantive effect on the interested party).

Plaintiffs' supplementary declarations actually underscore that the consummation of BLM's decision-making process is not IM 2018-034, which merely provides policy guidance for the decisions to be made, but actually when each BLM State or Field Office decides when to start the process and decides the length of time to afford for public review and comment at the lease sale stage.  *See* Dkt. 63-1 ¶¶ 9–10 (Nevada State BLM Office informed declarant that length of a public comment period for a lease sale Environmental Assessment is made at the BLM Field Office level, and Montana-Dakotas BLM office stated they decided to shorten Environmental Assessment comment periods).  The substantive decision—whether to offer lease parcels for sale—is consummated by the BLM state office or respective field office, not by the issuance of the policy guidance found in IM 2018-034.

Another basic tenet of NEPA is that public comment periods are not required for Environmental Assessments (EA).  Contrary to Plaintiffs' allegations, NEPA's implementing regulations do not require public comment except for environmental impact statements (EIS). *Compare* 40 C.F. R. § 1503.1(a)(4) (after preparing an EIS, an agency must request comments from the public) *and* 40 C.F.R. § 1503.4(a) (an agency preparing an EIS shall assess and

consider comments) *with* 40 C.F.R. § 1508.9 (requirements for an EA do not include obligation to solicit public comments); *see also Bering Strait Citizens for Responsible Res. Dev. v. U.S. Army Corps of Eng'rs*, 511 F.3d 1011, 1025 (9th Cir. 2008) (holding that public circulation of a draft EA is not required in every case and nothing in the CEQ regulations requires circulation of a draft EA for public comment).

Importantly, Plaintiffs' supplementary declarations also ignore the fact that Plaintiffs were provided significant advance notice of the lease sales they seek to enjoin, and that Plaintiffs provided BLM with public comments on the lease sales. Instead, Plaintiffs allege that BLM does not provide adequate time to, among other things, survey parcel maps or conduct site visits. *See, e.g.,* Dkt. 30-1 at 24–25; Dkt. 63-1 ¶ 3 (stating that EAs are not provided for until the 10-day protest period).

Significantly, however, BLM provided Plaintiffs notice of lease parcels being considered—far more notice than they insinuate—and numerous opportunities to comment – at the lease sale stage, and also at the preceding land use planning stage. As required by the Federal Land Policy and Management Act (FLPMA), the third and fourth quarter 2018 lease sales Plaintiffs seek to enjoin conform to the parameters of the applicable BLM field office Resource Management Plans (RMP) and applicable 2015 Greater Sage-Grouse RMP Amendments. These federal land use plans were the result of years of planning and public process to designate lands as either open or closed to oil and gas leasing pursuant to FLPMA's multiple use mandate. The RMPs and RMP Amendments identified stipulations and conditions of approval to be attached to leases and subsequent permits that are designed to address impacts to other resources and were subjected to extensive public comment and revisions—including public comment from Plaintiffs. **Exhibit W**, Federal Register Notices of Availability for Public

Comment.  Therefore, from the perspective of initial identification of lands open and closed for oil and gas leasing within each respective state and resource management planning area, Plaintiffs participated fully in the notice and comment process for those federal land use plans.

Moreover, for the lease sale stage, Plaintiffs allegations fail to acknowledge that the BLM identified potential lease parcels months in advance of the challenged lease sales.  The Third and Fourth Quarter oil and gas lease sales in Wyoming were noticed to the public in January of 2018. **Exhibit A**, BLM Wyoming High Plains District (HPD) 3rd Quarter 2018 Lease Sale News Release; **Exhibit B**, BLM Wyoming 3rd Quarter 2018 Preliminary Oil & Gas Sale Parcels Map; **Exhibit C**, BLM Wyoming HPD 3rd Quarter 2018 Lease Sale Initial Parcel List; **Exhibit D**, BLM Wyoming Wind River/Bighorn Basin District (WR/BBD) 3rd Quarter 2018 Lease Sale News Release; **Exhibit E**, BLM Wyoming WR/BBD 3rd Quarter 2018 Lease Sale Initial Parcel List; **Exhibit F**, BLM Wyoming 4th Quarter 2018 Preliminary Oil & Gas Sale Parcels Map.

BLM released to the public the list of potential lease parcels for the 2018 Third Quarter lease sale in Colorado on December 4, 2017.  **Exhibit G**, BLM Colorado 3rd Quarter 2018 Lease Sale Initial Parcel List.  BLM released the list of potential parcels for the 2018 Third Quarter lease sale in New Mexico in April 2018.  **Exhibit H**, BLM New Mexico-Roswell 3rd Quarter 2018 Lease Sale Initial Parcel List; **Exhibit I**, BLM New Mexico-Carlsbad 3rd Quarter 2018 Lease Sale Initial Parcel List.  Thus, Plaintiffs' allegations of an abbreviated comment period on the challenged lease sales ring false.  *See* Dkt.63 at 11.  BLM noticed and disclosed to the public potential parcels to be offered for lease for the 3rd and 4th Quarter 2018 lease sales several months in advance of publishing draft lease sale EAs for public review and comment.

Contrary to allegations in Plaintiffs' supplementary declarations, BLM also published draft EAs seeking public review and comment even though NEPA does not require public

comment periods for EAs.  BLM provided ample opportunity for Plaintiffs and other interested parties to comment on these lease sales.  BLM's Wyoming State Office released the draft EA for the Third Quarter 2018 Lease Sale for the High Plains District on January 19, 2018 – approximately eight months in advance of the sale.  **Exhibit J**, BLM WY HPD 3rd Quarter 2018 Lease Sale Draft EA.  The BLM Wyoming WR/BBD released its draft EA for the Third Quarter 2018 Lease Sale on January 19, 2018.  **Exhibit K**, BLM WY WR/BBD 3rd Quarter 2018 Lease Sale Draft EA.

The BLM Wyoming State Office released a second draft EA for public review and comment for additional parcels proposed to be offered at the Third Quarter Competitive Oil and Gas Lease Sale on May 24, 2018 (Second WY EA).  **Exhibit L**, BLM Wyoming 3rd Quarter 2018 Lease Sale News Release; **Exhibit M**, BLM Wyoming 3rd Quarter 2018 Lease Sale EA. The BLM Wyoming State Office released the Fourth Quarter 2018 Lease Sale draft EA for public review and comment on August 29, 2018.  **Exhibit N**, BLM Wyoming 4th Quarter 2018 Lease Sale News Release; **Exhibit O**, BLM Wyoming 4th Quarter 2018 Lease Sale EA.  Each of these EAs analyzed the direct, indirect and cumulative effects of the proposed leasing on other resources and invited public comment months before the date of the schedule sale.  *See, e.g.,* **Exhibit P**, BLM Response to Public Comments for Second Wyoming EA at WEA 000835 ("A 2-week public comment period for this EA began on May 24, 2018.").

Plaintiffs request for injunctive relief for the September oil and gas lease sales is moot. Plaintiffs submitted detailed comments for the High Plains District EA and the Second WY EA during the comment periods.  On August 3, 2018, BLM published detailed responses to these public comments, providing an opportunity for Plaintiffs and other interested parties to decide whether to protest the third quarter lease sale.  Ex. P; **Exhibit Q**, BLM Public Comments and

Responses to HPD 3rd Quarter 2018 Lease Sale EA.  *See also* **Exhibit R**, Public Comments and Responses to WR/BBD 3rd Quarter 2018 Lease Sale EA.

In sum, BLM notified Plaintiffs of lease parcels for sale in Wyoming in January and May 2018, BLM allowed Plaintiffs to review draft EAs for the lease sale and comment on those draft EAs.  Next, BLM offered Plaintiffs time to review BLM's responses to public comments and provided an opportunity to protest the Wyoming third quarter lease sale.  After this multi-month notice and comment process, Plaintiffs submitted a detailed 62-page protest of the Wyoming third quarter lease sale.  **Exhibit S**, Center for Biological Diversity Protest.  Simply put, Plaintiffs' claim of injury due to an allegedly compressed comment period simply does not hold up to the facts of this case.

Even more detrimental to Plaintiffs' allegations that the third and fourth quarter lease sales should be enjoined because IM 2018-034 prevents adequate notice and comment process is the fact that the NEPA process worked.  In response to Plaintiffs' comments on the Second WY EA, BLM consulted with the Wyoming Game and Fish Department and ultimately removed and deferred certain lease parcels from the lease sale to address Plaintiffs' alleged impacts to designated migration corridors.  Ex. P at WEA 000845–46.

Plaintiffs also seem to advocate for other entities that they do not represent, including the State of Colorado, who is not even a party to this case.  *See* Dkt. 63 at 2; Dkt. 63-3.  The State of Colorado, however, submitted detailed scoping comments and subsequent draft EA comments, for both the third and fourth quarter 2018 Colorado lease sales months in advance, and never requested an extension of time to file comments.  Dkt. 63-3 (July 17, 2018 cover letter for scoping comments on December 2018 lease sale).  *See also* **Exhibit T** (Colorado Parks and Wildlife's January 4, 2018 letter providing scoping comments on the Colorado September 2018

quarterly lease sale); **Exhibit U** (Colorado Parks and Wildlife's April 6, 2018 letter commenting approvingly on Colorado September 2018 quarterly lease sale EA).

Plaintiffs' claimed harms are, at minimum, insufficient to establish standing under Article III of the Constitution.  As discussed further below, if they are found sufficient, they surely do not meet the high burden necessary to establish irreparable harm to justify a preliminary injunction.  Contrary to Plaintiffs' criticisms of the shortened time to comment on or protest the lease sale decisions, BLM noticed upcoming lease sales months in advance, provided repeated opportunities for public comment, and responded to public comment at each stage of the process.  Plaintiffs' allegations of harm are moot because the outcome they seek—opportunity to provide public comment—has already occurred for the September 2018 lease sales and has already started for the December 2018 lease sales.  *See, e.g.,* Exs. N–O; Dkt. 52-1 (Wells Declaration showing ongoing scoping and comment schedule).

## II.    The Balance of Equities Does Not Favor Injunction

As described above, Plaintiffs cannot prove irreparable harm.  Specifically, BLM provided sufficient opportunity for notice and comment on the lease sales they seek to enjoin, and Plaintiffs cannot prove irreparable harm for bureaucratic commitment to leasing because case law shows that procedural harm does not constitute irreparable harm.  *See* Dkt. 51 and 52.

Furthermore, Plaintiffs' argument presumes that any oil and gas leasing causes *per se* irreparable harm to the environment.  Plaintiffs' arguments and presumptions are entirely unsupportable.  Indeed, Plaintiffs do not point to any case law or evidence that supports their assertion; rather they set forth a conclusory allegation that any future development actions "mar[] pristine landscapes, destroy[] fragile ecosystems, disturb[] or displac[e] fish and wildlife populations, and eliminat[e] recreation opportunities."  Dkt. 30-1 at 31.  Plaintiffs fail to show—

or even argue—that additional time would change the substance of the comments they submitted and fail to discuss how the stipulations attached to the lease parcels are insufficient to avoid, minimize or mitigate these potential harms.  **Exhibit V**, BLM Wyoming Notice of Competitive Oil and Gas Lease Sale, September 18–20, 2018.

Furthermore, Plaintiffs' claim completely ignores FLPMA's mandate that public lands be used for multiple uses, and the Mineral Leasing Act's requirement that BLM conduct quarterly lease sales in each state.  Under Plaintiffs' injury theory, BLM's compliance with its statutory mandate to manage public lands for multiple use and to conduct quarterly lease sales under the Mineral Leasing Act automatically constitutes "irreparable harm" that this Court is entitled to enjoin.  This theory is simply not viable under the United States Constitution, governing statutory frameworks, and long-established Supreme Court legal precedent.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573–74 (1992) (generally available grievance about government with harm to public at large does not have Article III standing); *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987) (preliminary injunction not warranted if environmental injury not probable).  Plaintiffs' disagreement with FLMPA's multiple-use mandate, the Mineral Leasing Act, and the federal onshore oil and gas leasing program in general does not provide a legal basis to enjoin IM 2018-034 and upcoming lease sales.

Conversely, the State of Wyoming and the Alliance detailed the significant economic impacts that would result from Plaintiffs' requested injunction.  Plaintiffs' only response to the Alliance's harms is that the Alliance "fails to explain" how delaying the sales would result in lost expenditures.  Dkt. 63 at 23–24.  Plaintiffs misstate the argument made in Alliance's brief.  Alliance members have not just spent significant sums of money evaluating leases, but also spent time and resources modifying business and development plans, and budgeting funds to be used at

lease sales.  Dkt. 51 at 6–7.  A decision to delay and enjoin lease sales will undoubtedly cause significant impacts.  Funds budgeted to be used at lease sales would sit idle, potentially jeopardizing investments and resulting in lost opportunity costs to use the funds for other projects.  *Id.* at 7.  Additionally, operators create development plans years in advance, and delays in lease sales send ripple effects into timing and allocation of resources for existing assets.  Finally, the regulatory and procedural uncertainty that would result from this Court enjoining lease sales at the eleventh hour would discourage future investment.  *Id.*; *see also* Dkt. 50 at 10 ("The lost opportunity caused by a delayed sale will cause some operators to pursue opportunities elsewhere.").  This will result in a direct financial impact to not only Alliance members, but to the United States' taxpayer as well.  *See* Dkt. 52 at 40; Dkt. 52-1 ¶ 9 (discussing lost royalties from drainage of federal minerals).

In contrast, Plaintiffs' alleged harms are speculative and conclusory, and as discussed above, now moot—the public review they seek has already occurred and they participated in that process.  Plaintiffs submitted numerous sets of detailed comments, and certain lease parcels were deferred as a result of those comments.  On the other hand, the Alliance, Federal Defendants and the State of Wyoming have all provided definitive harms that would result from the requested injunction.  Ultimately, Plaintiffs cannot carry the burden of showing that a preliminary injunction is justified, and the balance of harms unequivocally disfavors such a course of action.

## CONCLUSION

For the reasons detailed above, Plaintiffs fail to meet their burden to show they are entitled to the extraordinary relief of a preliminary injunction.  Western Energy Alliance respectfully requests that the Court deny Plaintiffs' Motion for Preliminary Injunction [Dkt. 30].

Respectfully submitted this 31st day of August, 2018.

*/s Bret Sumner*
Bret Sumner
*Pro Hac Vice*

*/s/ Paul Turcke*
Paul Turcke

*Counsel for Defendant-Intervenor Western Energy Alliance*

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2018, I caused the foregoing **DEFENDANT-INTERVENOR WESTERN ENERGY ALLIANCE'S [PROPOSED] SUR-REPLY TO MOTION FOR PRELIMINARY INJUNCTION [DKT. 30]** to be electronically filed with the Court using the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Laurence J. Lucas
llucas@advocateswest.org

Talasi B. Brooks
tbrooks@advocateswest.org

Todd C. Tucci
ttucci@advocateswest.org

Sarah Stellberg
sstellberg@advocateswest.org

John S. Most
john.most@usdoj.gov

Luther L. Hajek
luke.hajek@usdoj.gov

Erik Petersen
erik.petersen@wyo.gov

Mike Robinson
mike.robinson@wyo.gov

*/s/ Bret Sumner*