UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, and CENTER FOR BIOLOGICAL DIVERSITY,<br><br>Plaintiffs,<br><br>vs.<br><br>RYAN K. ZINKE, Secretary of Interior; DAVID BERNHARDT, Deputy Secretary of Interior; and UNITED STATES BUREAU OF LAND MANAGEMENT, an agency of the United States,<br><br>Defendants,<br><br>and<br><br>STATE OF WYOMING; WESTERN ENGERGY ALLIANCE<br><br>Defendant-Intervenors. | Case No.: 1:18-cv-00187-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**DEFENDANTS' MOTION TO SEVER AND TRANSFER**<br>**(Docket No. 12)**<br><br>**DEFENDANTS' MOTION FOR EXPEDITED CONSIDERATION OF MOTION TO SEVER AND TRANSFER**<br>**(Docket No. 33)**<br><br>**PLAINTIFFS' MOTION FOR LEAVE TO FILE SURREPLY BRIEF OPPOSING MOTION TO SEVER AND TRANSFER**<br>**(Docket No. 38)**<br><br>**INTERVENOR WESTERN ENERGY ALLIANCE'S MOTION FOR LEAVE TO FILE SUR-REPLY TO MOTION TO SEVER AND TRANSFER**<br>**(Docket No. 59)** |

Pending before the Court are: (1) Defendants' Motion to Sever and Transfer (Dkt. 12); (2) Defendants' Motion for Expedited Consideration of Motion to Sever and Transfer (Dkt. 33); (3) Plaintiffs' Motion for Leave to File Surreply Brief Opposing Motion to Sever and Transfer (Dkt. 38); and (4) Intervenor Western Energy Alliance's Motion for Leave to File Sur-Reply to Motion to Sever and Transfer (Dkt. 59). Having carefully considered the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

**MEMORANDUM DECISION AND ORDER - 1**

## I. BACKGROUND

Broadly speaking, this case challenges the Trump Administration's allegedly unlawful actions to promote and expedite oil and gas leasing on public lands (or managed by the United States) that, according to Plaintiffs Western Watersheds Project ("WWP") and Center for Biological Diversity ("CBD") (collectively "Plaintiffs" or "WWP"), "will adversely impact essential habitats and populations across the range of the greater sage-grouse . . ., and violate bedrock environmental laws including the Federal Land Policy and Management Act ("FLPMA"), the National Environmental Policy Act ("NEPA"), and the Administrative Procedure Act ("APA"). Compl., ¶ 1 (Dkt. 1). More specifically, WWP alleges that Defendants Ryan Zinke, David Berhnhardt, and the United States Bureau of Land Management ("BLM") (collectively "Federal Defendants") have issued a series of orders, reports, and directives that effectively disregard previously-understood/followed protections for sage-grouse populations, while limiting opportunities for public involvement during the oil and gas leasing process – materializing in eight "final" BLM oil and gas lease sales (three in Montana, one in Utah, and four in Wyoming) that collectively impact sage-grouse habitats. *See id*. at ¶¶ 1-14, 73-225. WWP challenges these leasing actions as violating the 2015 Sage-Grouse Plan Amendments to BLM Resource Management Plans, FLPMA, NEPA, and the APA. *See id*. at ¶¶ 276-307. WWP additionally challenges two recent BLM "Instruction Memoranda" ("IMs") that WWP claims revised BLM oil and gas leasing and development policies without any public procedures (notice and comment) or environmental review – (1) IM 2018-026, which overrides the "prioritization" requirement of the 2015 Sage-Grouse Plan Amendments (prioritizing oil and gas leasing outside of sage-grouse habitat); and (2) IM 2018-034, which avoids environmental analysis of oil and gas leasing and development decisions, while limiting public notice and involvement in those decisions. *See id*. at ¶¶ 98-112.

**MEMORANDUM DECISION AND ORDER - 2**

Federal Defendants and Defendant-Intervenor State of Wyoming ("Wyoming") now seek to sever and transfer the pending action from this Court (in Idaho) to federal district courts in which subject lands are located (outside the District of Idaho). Specifically, they ask for a transfer of challenges to the lease sales in Montana, Utah, and Wyoming to the Districts of Montana, Utah, and Wyoming, respectively. *See generally* Fed. Defs.' Mem. in Supp. of Mot. to Sever & Transfer ("MST") (Dkt. 12-1); Wyoming's Proposed Resp. to Defs.' MST (Dkt. 24).[1] They also argue (at least originally) that WWP's challenges to IM 2018-026 and IM 2018-034 should be transferred to the District of Columbia because the decision-making processes for those IMs occurred in that district and have nation-wide application.[2]

## II. DISCUSSION

Under Federal Rule of Civil Procedure 21, Federal Defendants ask the Court to cut WWP's claims into separate parts, organized primarily by the geographic footprints of the eight challenged oil and gas leases. *See* Fed. Defs.' Mem. in Supp. of MST, pp. 6, 8-10 ("The Court

---

[1] Defendant-Intervenors Wyoming and Western Energy Alliance ("WEA") were not parties at the time Federal Defendants' Motion to Sever and Transfer was filed. Since then, both Wyoming and WEA (collectively "Intervenor-Defendants") have intervened. *See* 8/21/18 MDO (Dkt. 54). WEA, like Wyoming, contends that severance and transfer are appropriate. *See, e.g.*, WEA's Proposed Sur-Reply in Supp. of MST (Dkt. 59-1).

[2] Federal Defendants changed their position and now argue that "the interests of judicial economy would best be served by transferring the IM claims to the U.S. District Court for the District of Montana, along with the claims challenging lease sales in Montana." Fed. Defs.' Resp. to Pls.' Mot. for Leave to File Surreply Brief in Opp. to MST, p. 2 (Dkt. 42). Pointing to their decision *not* to seek a similar transfer (at least as to IM 2018-026) in another case filed in Montana (Case No. 4:18-cv-00069-BMM), Federal Defendants contend that Plaintiffs' challenges to IM 2018-026 and IM 2018-034 here should likewise be resolved in Montana and transferred accordingly. *See id.* at pp. 2-4 ("In the case of the Montana lease sales, the appropriate jurisdiction is the District of Montana. Two of the three Montana lease sales challenged in this case are also challenged in the Montana case. Further, like this case, the Montana case includes claims challenging IM 2018-026. *Resolving those claims together in one case will serve judicial economy, as well as ensure that claims involving lands within Montana are resolved by a Montana court*.") (emphasis added, internal citations omitted).

**MEMORANDUM DECISION AND ORDER - 3**

should sever Plaintiffs' claims relating to the challenged lease sales in Montana, Utah, and Wyoming into three separate actions because they relate to separate lease sales in three different states."). Then, Federal Defendants seek to transfer the "severed" claims to a federal district court in the state where the lease issued, pursuant to 28 U.S.C. § 1404. *See id.* at pp. 6-8, 10-20 ("Should the Court agree that severance is appropriate, it should do so in an order that also transfers the claims to the judicial districts where the land that is the subject of each lease sale is located . . . .").[3] The relief sought would uproot the pending case originally brought in the District of Idaho and transplant it piecemeal elsewhere.

The propriety of using Rule 21 to *entirely* dismantle the pending case through hydra-like transfers (as opposed to, for example, severing a single claim or party, with the remainder of the action proceeding along) is not addressed here. *See, e.g.*, Pls.' Opp. to MST, pp. 9-12 (Dkt. 25) (disputing Federal Defendants' ability to sever claims via Rule 21, stating: "The Court is not broadly authorized under Rule 21 to effectively rewrite Plaintiffs' claims and then sever them all, even though they are properly presented."). Rather, Federal Defendants' Motion to Sever and Transfer fails because transfer is inappropriate regardless.

A.      **Legal Standard:  Motions to Transfer**

The frame of the Court's discretion in dealing with the pending motions is found initially in the general venue statute:  "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it

---

[3] As discussed in more detail *infra*, an action may be transferred to another district where it might properly have been brought originally. *See* 28 U.S.C. § 1404(a). This case could not have been brought in any federal court other than the District of Idaho, except for the District of Columbia. *See supra* (discussing 28 U.S.C. § 1391 vis à vis the various proposed transferee districts). Therefore, to effectively transfer this action from Idaho, Federal Defendants had to first seek to sever all the claims and then seek to transfer those splintered claims to federal courts in four different locales (Montana, Wyoming, Utah, and Washington, D.C.).

**MEMORANDUM DECISION AND ORDER - 4**

might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The statute allows for such a transfer "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quotations omitted). The party seeking the transfer bears the burden of demonstrating that the transferee district is a "more appropriate forum." *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000). District courts have broad discretion to transfer cases on a case-by-case basis, considering the factors of convenience and fairness. *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007).

Two steps are involved in the § 1404(a) analysis. First, the court decides whether "the transferee district was one in which the action might have been brought by the plaintiff." *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960) (quotations omitted); *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). If the answer is yes, then the second step calls for an individualized, case-specific, analysis of convenience and fairness to the parties and witnesses, and an assessment of the interests of justice. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quotations omitted); *Jones*, 211 F.3d at 498-99. The latter step typically assesses these factors: (1) convenience of the parties and witnesses; (2) familiarity of each forum with the applicable law; (3) the plaintiff's choice of forum; (4) contacts of the different parties with the forum; (5) local interest in the controversy; (6) the ease of access to sources of proof and evidence; and (7) relative congestion in each forum. *See Jones*, 211 F.3d at 498-99 (citations omitted).

**B.     On Balance, Having Considered all the Factors, Transfer is Not Warranted**

      1.     <u>Step One:  Where the Action Might Have Been Brought</u>

**MEMORANDUM DECISION AND ORDER - 5**

"In determining whether an action 'might have been brought' in a district, the court looks to whether the action initially could have been commenced in that district." *Hatch*, 758 F.2d at 414. As is the case here, a civil action in which a defendant is an officer or employee of the United States or any agency thereof may be brought in any judicial district in which "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1) (A-C).

It is not contested that venue is improper in the District of Idaho under 28 U.S.C. § 1391(e).[4] Rather, Federal Defendants contend that this lawsuit – or more precisely, the pieces of the lawsuit – are more appropriately contested in some other federal court or courts. Of course, the starting point to that argument is that the action must be one that could have been brought in a transferee district in the first instance. The answer to that question is not so clear as Federal Defendants would contend.

Relying on language found in 28 U.S.C. § 1391(e)(1), Federal Defendants argue in relevant part:

> Transferring claims related to each lease sale to the district in which the parcels are located meets both prongs (A) and (B) [of 28 U.S.C. § 1391(e)] because BLM has offices in each district, the decision-making process occurred in the district where the parcels are located, and the property subject to each sale is located in each of these districts . . . . With regard to 28 U.S.C. § 1391(e)(1)(A), officers and agencies of the United States can have more than one residence. For purposes of this litigation, BLM is a resident of Montana, Utah, and Wyoming because it has offices in all three states and manages land and resources in all three states.

---

[4] Within their Complaint, WWP alleges that "[v]enue is proper in this Court under 28 U.S.C. § 1391(e) because Plaintiff [WWP] resides in this district and Plaintiff [CBD] has staff and members in this district; Defendant BLM has offices and staff that manage greater sage-grouse habitats on public lands and administer federal fluid minerals in Idaho; and a substantial part of the events or omissions giving rise to the claims herein occurred within this district. Compl., ¶ 17; *but see infra*.

**MEMORANDUM DECISION AND ORDER - 6**

> Moreover, the decision-making process for each lease sale occurred in the state office offering the sale. In cases brought under the Administrative Procedure Act, courts generally focus on where the decision-making process occurred to determine where the claims arose. For this same reason, transfer of claims challenging IM 2018-026 and IM 2018-034 to the District Court for the District of Columbia is also proper, because BLM has offices in the District of Columbia, and because according to Plaintiffs' own allegations, the decision-making process for the IMs occurred in DC.
>
> In addition to BLM's residency in each state, the property that is the subject of the action – i.e., the parcels subject to each lease sale – are located in each state, thus making venue appropriate under 28 U.S.C. § 1391(e)(1)(B). The "touchstone" for application of 28 U.S.C. § 1391(e)(1)(B) is whether the action centers directly on the real property, as with actions concerning the right, title, or interest in real property. That requirement is satisfied here because Plaintiffs challenge and seek to vacate BLM's issuance of oil and gas leases, which involve the acquisition of a real property interest.

Fed. Defs.' Mem. in Supp. of MST, pp. 11-12 (internal quotation marks and citations omitted). In other words, Federal Defendants conclude that venue is appropriate in each proposed transferee district because (1) BLM resides there, (2) the decision-making surrounding the oil and gas leases took place there, and (3) the leases themselves involve real property interests located there. On balance, these arguments are unpersuasive for the following reasons.

It is not established law that federal government defendants reside in *every* judicial district in which an agency has a regional office. *See Tsi Akim Maidu of Taylorsville Rancheria v. United States Dep't of Interior*, 2017 WL 2289203, at *2 (N.D. Cal. 2017) (citing *Williams v. United States*, 2001 WL 1352885, at *1 (N.D. Cal. 2001); *Reuben H. Donnelly Corp. v. Federal Trade Comm'n*, 580 F.2d 264, 267 (7th Cir. 1978) ("[T]o hold that a federal agency can be sued . . . wherever it maintains an office would, as a practical matter, render [§ 1391(e)'s other subsections] superfluous," because federal agencies are likely to maintain offices in "most, if not all, judicial districts)); *but see California v. Bureau of Land Mgmt.*, 2018 WL 3439453, at *3 (N.D. Cal. 2018). Instead, federal agency defendants are generally deemed to reside in the District of Columbia. *See Zhang v. Chertoff*, 2008 WL 5271995, at *3 (N.D. Cal. 2008) (citing

**MEMORANDUM DECISION AND ORDER - 7**

*Williams*, 2011 WL 1352885 at *1; *Reuben*, 580 F.2d at 267). In addition, venue with respect to a federal officer or employee is proper in the place of his official residence – in other words, where his official duties are performed. *See Reuben*, 580 F.2d at 266, n.3. Here, neither BLM itself nor any of the individual Federal Defendants reside in Montana, Utah, or Wyoming. Accordingly, 28 U.S.C. § 1391(e)(1)(A) does not support Federal Defendants' position.[5]

Additionally, even though oil and gas lease sales may concern particular federal lands,[6] the fact that oil or gas development rights are leased by the federal government to a non-governmental entity does not mean *ipso facto* that (1) a "substantial part of the events . . . giving rise to the claim" took place in the proposed transferee districts, or (2) a "substantial part of the property that is the subject of the action" is situated in the proposed transferee districts, as 28 U.S.C. § 1391(e)(1)(B) requires. Those distinctions are significant to this case, where Plaintiffs contend that in issuing these oil and gas leases, Federal Defendants violated federal law by

---

[5] The residence of the state of Wyoming is, obviously, Wyoming (one of the proposed transferee districts), not Washington D.C. Wyoming, however, was not a party until it successfully intervened – *after* Federal Defendants filed their Motion to Sever and Transfer and after oral argument on the same. Regardless, the presence of the state of Wyoming as an intervening party does not inform whether venue is proper in either Montana or Utah. Likewise, WEA is not a resident of any of the proposed transferee districts' states; it resides in Colorado.

[6] In granting Wyoming's and WEA's Motions to Intervene, the Court stated:

> This litigation may impact oil and gas leases (both existing and future) in Wyoming, while also affecting regulatory procedures surrounding the issuance of oil and gas leases generally in portions of the Western United States. Hence, both entities have a significantly protectable interest at stake in this litigation – interests that could be impaired if they are not permitted to intervene. . . . .
>
> While Federal Defendants will generally defend the Secretary's decision (and decision-making process), only Wyoming and WEA are uniquely capable of explaining how any potential ruling will affect a state's economy and the property interests of a private trade association that are both heavily dependent on oil and gas production/leasing.

8/21/18 MDO, pp. 5-6 (internal citations omitted).

**MEMORANDUM DECISION AND ORDER - 8**

disregarding *established* mandates for the way oil and gas lease sales are handled on public lands that affect sage-grouse habitat/populations. Hence, the heart of the disputes is not solely about how a local BLM office handled a lease sale, but rather over the legal propriety of "national policies" that Plaintiffs contend "have eroded protections for the sage-grouse and cut the public out of oil and gas planning on public lands." Pls.' Opp. to MST, pp. 16-17.

Though overarching and broad in scope, Plaintiffs' claims in these respects are not amorphous. Rather, they follow the legal and geographic contours of the challenged federal actions, which happen to trace a very large pattern which is not random in nature but rather is connected to the numbered dots of Federal Defendants' alleged improper actions. Thus, this case does not raise the sort of "generic challenge" to agency action proscribed by *Lujan v. National Wildlife Fed'n*, 497 U.S. 871 (1990). *See WWP v. Salazar*, 2009 WL 1299626 (D. Idaho 2009) (rejecting defendant BLM's argument that action must be dismissed under *Lujan*, stating: "The complaint, read broadly, challenges the separate decisions of each BLM office" and "is making a series of individual challenges to discrete final agency actions, each of which will require analysis of the applicable administrative record."); *WWP v. Schneider,* 2017 WL 874568 (D. Idaho 2017) (favorably citing *Salazar*); *see also infra* (discussing localized interests of instant dispute). In this setting, 28 U.S.C. § 1391(e)(1)(B) also does not apply to favor venue in either Montana, Utah, or Wyoming.

These same issues are implicated in considering Plaintiffs' stated justification for venue in Idaho. *See supra* (noting that Plaintiffs alleged that venue is proper because, *inter alia*, BLM has offices and staff in Idaho, and "a substantial part of the events or omissions giving rise to the claims herein occurred within this district."). But importantly, even absent such prerequisites, venue is appropriate in Idaho because, at the very least, WWP resides in Idaho. *See* 28 U.S.C. § 1391(e)(1)(C) (action against federal agency may be brought in any judicial district in which

**MEMORANDUM DECISION AND ORDER - 9**

"plaintiff resides if no real property is involved in the action.");[7] *see also* Compl., ¶ 17 (alleging, as primary basis for venue in Idaho, that "Plaintiff [WWP] resides in this district . . . ."). Therefore, while WWP's residency in Idaho allows for venue in Idaho under 28 U.S.C. § 1391(e)(1)(C), it does nothing to establish venue in either Montana, Utah, or Wyoming.[8]

Hence, with venue uncertain beyond Idaho, the possible transfer of the action in whole or in pieces to some other federal court or courts stumbles at the gate. Even so, the Court will examine the other factors informing a possible change in venue for the case so as to fully consider the merits of doing so.

2. Step Two: Convenience, Fairness, and Interests of Justice

Assuming more than one permissible venue, applicable law imposes a strong presumption in favor of the Plaintiffs' choice of forum. Federal Defendants must make a "strong showing" of inconvenience to warrant upsetting that choice. *See Salazar*, 2009 WL 1299626 at *2 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)). Here, Federal Defendants contend that transfers to the various proposed transferee districts are necessary to (1) have "localized controversies

---

[7] To the extent Federal Defendants argue that real property *is* involved given the very nature of oil and gas leases generally, *Salazar* holds otherwise. *See Salazar*, 2009 WL 1299626 at *2 ("[T]he legislative history to this statute shows that the property limitation was added due to congressional concerns over the local nature of some real property actions, suggesting that it relates to matters of right, title, and interest" and finding persuasive cases that have held that *environmental actions such as this are not actions in which real property is involved*.") (internal citations omitted, emphasis added); *but see* WEA's Proposed Sur-Reply to MSJ, pp. 2-3 (arguing that oil and gas lease sales "unquestionably" involve real property.").

[8] It should also be said that Federal Defendants' changing position on where Plaintiffs' challenges to IM 2018-026 and IM 2018-034 should be transferred to (originally Washington D.C., now Montana) does not fit within the requirements of 28 U.S.C. § 1391(e)(1). The resolution of those disputes could proceed in Washington D.C. (the IMs are national policy memoranda authored there and implicate issues of national scope), but the same cannot be said for Montana.

**MEMORANDUM DECISION AND ORDER - 10**

decided at home, (2) promote consistency among court rulings, and (3) relieve court congestion in the District of Idaho. *See* Fed. Defs.' Mem. in Supp. of MST, pp. 13-19 (Docket No. 12, Att. 1).[9] Such arguments ultimately are veneers because a more in-depth assessment of such factors does not support a transfer.

It can reasonably be assumed, and Federal Defendants affirmatively contend, that there are state-specific interests in the discussed oil and gas lease sales. The subject-matter of this lawsuit, however, is much more expansive. Plaintiffs contend that, as to such sales (regardless of which state is involved), there are common violations of federal laws predicated on strategic policy directives from the Trump Administration, which, in turn, will result in cumulative impacts threatening sage-grouse across the sage-grouse range. *See* Opp. to MST, p. 17. The Plaintiffs' claims are not specific to any particular transferee district; hence, they argue, and the Court is persuaded, that nothing about *the fact of* the lease sales (and any corresponding local interest in the same) raises a compelling argument in favor of transfer. In short, they exist independently from whether Federal Defendants complied with federal law; the leases may be local, but the challenged national policies that created them are not.[10]

*Salazar* considered similar cross-currents. There, the plaintiff (also WWP) described overarching NEPA and FLPMA violations affecting sage-grouse on a broad basis and challenged

---

[9] Federal Defendants concede that (1) each possible forum's familiarity with the applicable law, and (2) the convenience factors are neutral. *See* Fed. Defs.' Mem. in Supp. of MST, pp. 19-20 ("[C]ourts follow the principle that all federal courts are competent to decide federal issues correctly. . . . As this case is brought under the APA and will be decided on the basis of an administrative record, the convenience factors are not particularly relevant.") (internal quotation marks and citations omitted).

[10] Plaintiffs do seek to upend the lease sales, but their challenges are not focused directly upon those sales. Hence, the fact that there is a remedy that seeks to prevent such sales is a piece of the venue analysis. It is not, however, a dispositive piece, as Plaintiffs' more far-reaching claim is that the Defendants' oil and gas lease policies are fundamentally rotten to the core when it comes to sage-grouse protections.

**MEMORANDUM DECISION AND ORDER - 11**

18 Environmental Impact Statements (prepared by 18 separate BLM offices in six different states) that separately supported a Resource Management Plan ("RMP") governing each BLM district. In rejecting the defendant's (also BLM) motion for partial dismissal, or, in the alternative, to sever and transfer, the *Salazar* court explained:

> Even more importantly, the issues do not break down neatly into "home" judicial districts. A key issue in this case is whether the BLM considered the cumulative impact of environmental factors acting in a widespread area stretching beyond RMP boundaries. For example, WWP alleges that each of the RMPs failed to consider the cumulative impacts on particular sage grouse populations, some of which are found in regions governed by several different RMPs. Moreover, WWP alleges that all the RMPs failed to address the cumulative impact of global warming, an impact that may extend beyond the boundaries of a judicial district.
>
> The merits of these claims are not before the Court; it is their mere allegation that affects the venue analysis. And those allegations may require a court to analyze effects beyond the borders of its judicial districts. Thus, the traditional desire to let disputes be resolved in their home court has less weight here where the resolving court may well be considering cumulative impacts in other judicial districts.
>
> Resolution of environmental actions often affects areas far outside the judicial district of the resolving court. For example, Montana District Judge Donald W. Molloy resolved a dispute over the de-listing of a distinct population segment of the Rocky Mountain gray wolf that was found in Idaho, Wyoming, and Montana. A population segment may span several judicial districts requiring a court to look outside its own boundaries. . . .
>
> For these reasons, the Court finds that the BLM has not carried its burden of overcoming the strong presumption in favor of WWP's choice of forum. Accordingly, the Court will deny the BLM's motion.

*Salazar*, 2009 WL 1299626 at *3 (internal citations omitted); *see also Schneider,* 2017 WL 874568 at *3 (same). This analysis applies equally here, and similarly augers against the transfer of this action to another court.

Further, a decision that keeps the case intact in this federal judicial district, largely avoids the risk of inconsistent court rulings, rather than creating such a risk as Federal Defendants contend. *See* Fed. Defs.' Mem. in Supp. of MST, p. 17 ("In these circumstances, the interests of justice strongly favor a single court hearing similar claims regarding the same lease sales to

**MEMORANDUM DECISION AND ORDER - 12**

avoid the risk of conflicting judgments."). There is, as the parties have referenced, a similar (but not identical) case in the District of Montana, filed on the same date as this case. However, the transfer of portions of this action there and to at least two *other* district courts (in the Tenth Circuit) obviously would not serve to lessen the risk of conflicting rulings. The *opposite* is more likely. *See Schneider*, 2017 WL 874568 at *3 ("But transferring the overarching claims to five different courts will force plaintiffs to make five identical arguments before five separate judges, increasing the potential for conflicting rulings while placing a substantial burden on plaintiffs.").

Lastly, whether transfer would relieve congestion in the transferor district misses the point. Any relief to an already-pressed docket must be contrasted against the ability of the proposed transferee districts to consider and resolve the case more efficiently. *See WWP v. Salazar*, 2010 WL 375003, at *3 (D. Idaho 2010) ("The Court recognizes that '[t]he real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.'") (quoting *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984)). With such considerations in mind, there is no indication that the proposed transferee districts can guarantee such economies – especially when considering that severance, by its very nature, necessarily creates multiple overlapping cases instead of one. *See Salazar*, 2010 WL 375003 at *3 ("The Court must also "weigh carefully whether the inconvenience and possible inefficiency of severing the suit outweighs the advantages to be gained from transfer.'") (quoting 15 Wright, Miller and Cooper, *Federal Practice & Procedure*, § 3845 at p. 65 (2007))).[11]

---

[11] Relevant here, Plaintiffs' pending Motion for Preliminary Injunction dealing with IM 2018-034 (Docket No. 30) is currently set for hearing in less than one week – on September 6, 2018 and Plaintiffs seek an expedited decision before September 15, 2018. Additionally, the Montana case does not have any similar claim.

**MEMORANDUM DECISION AND ORDER - 13**

In balancing these factors, the Court finds that Federal Defendants have not met their burden to show that transferring this case, in multiple parts, to the proposed transferee districts is proper.

### III. **ORDER**

Based upon the foregoing, IT IS HEREBY ORDERED that:

1. Defendants' Motion to Sever and Transfer (Docket No. 12) is DENIED;

2. Defendants' Motion for Expedited Consideration of Motion to Sever and Transfer (Docket No. 33) is GRANTED – the Motion to Sever and Transfer is now resolved;

3. Plaintiffs' Motion for Leave to File Surreply Brief Opposing Motion to Sever and Transfer (Docket No. 38) is GRANTED and the Court has considered the same; and

4. Intervenor Western Energy Alliance's Motion for Leave to File Sur-Reply to Motion to Sever and Transfer (Docket No. 59) is GRANTED and the Court has considered the same.

DATED: September 4, 2018

_____
Ronald E. Bush
Chief U.S. Magistrate Judge