BART M. DAVIS, Idaho Bar No. 2696
United States Attorney

CHRISTINE G. ENGLAND, California Bar No. 261501
Assistant United States Attorney
District of Idaho
Washington Group Plaza IV
800 East Park Boulevard, Suite 600
Boise, Id 83712-7788
Tel: (208) 334-1211; Fax: (208) 334-1414
Email: Christine.England@usdoj.gov

JEAN E. WILLIAMS
Deputy Assistant Attorney General

JOHN S. MOST, Virginia Bar No. 27176
LUTHER L. HAJEK, Colorado Bar No. 44303
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
999 18th St., South Terrace – Suite 370
Denver, CO 80202
Tel: (303) 844-1376; Fax: (303) 844-1350
E-mail: Luke.Hajek@usdoj.gov

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, *et al.*,<br><br>          Plaintiffs,<br><br>          vs.<br><br>RYAN K. ZINKE, Secretary of the Interior, *et al.*,<br>          Defendants. | Case No. 1:18-cv-00187-REB<br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR IMPROPER VENUE OR, IN THE ALTERNATIVE TO SEVER AND TRANSFER, PLAINTIFFS' CLAIMS CHALLENGING THE NORMALLY PRESSURED LANCE PROJECT** |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 1

ARGUMENT ................................................................................................ 3

I.     The Case Should Be Dismissed for Improper Venue ............................................. 3

       A.     Standard for Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3)........ 3

       B.     Plaintiffs' Seventh Claim Should Be Dismissed Because Plaintiffs
              Have Not Demonstrated that Venue is Proper Under 28 U.S.C. §
              1391(e)(1) ................................................................................................ 3

II.    In the Alternative, the Claim Regarding the NPL Project Should be Severed
       and Transferred to the U.S. District Court for the District of Wyoming ............... 9

       A.     The Court Should Sever the Claim Regarding the NPL Project.............. 10

       B.     The NPL Project Claim Should Be Transferred to the District of
              Wyoming................................................................................................ 11

              1.     Standard for Transfer Under 28 U.S.C. § 1404(a)........................ 12

              2.     The District of Wyoming is a Proper Venue ................................ 13

              3.     The Interest of Justice Favors Transfer to Wyoming.................... 14

              4.     The Convenience of the Parties and the Court Favors
                     Transfer ................................................................................... 17

              5.     Plaintiffs' Choice of Forum Is Entitled to No Weight................. 19

CONCLUSION................................................................................................ 20

# TABLE OF AUTHORITIES

## Cases

*Adams v. Bell*,
   711 F.2d 161 (D.C. Cir. 1983) ............................................................................ 16

*Agueta v. Banco Mexicano, S.A.*,
   87 F.3d 320 (9th Cir. 1996) ................................................................................ 3

*Amazon.com v. Cendant Corp.*,
   404 F. Supp. 2d 1256 (W.D. Wash. 2005) .......................................................... 20

*Anderson v. Thompson*,
   634 F. Supp. 1201 (D. Mont. 1986) .................................................................... 14

*Ashley v. Andrus*,
   474 F. Supp. 495 (E.D. Wis. 1979) ..................................................................... 7

*Backcountry Against Dumps v. Abbot, No. Civ. S -10-394 FCD/KJN*,
   2010 WL 2349194 (S.D. Cal. June 8, 2010) ....................................................... 15

*California v. Bureau of Land Mgmt.*,
   Nos. 19-cv-521-HSG, 18-cv-524-HSG, 2018 WL 3439453 (N.D. Cal. 2018) ...... 14

*Center for Envtl. Law and Policy v. U.S. Bureau of Reclamation, No. C* 08-1730 RAJ, 2009 WL
   10668581 (W.D. Wash. May 12, 2009) ............................................................... 8

*Coleman v. Quaker Oats Co.*,
   232 F.3d 1271 (9th Cir. 2000) ............................................................................ 10

*Coughlin v. Rogers*,
   130 F.3d 1348 (9th Cir. 1997) ............................................................................ 10

*Ctr. for Biological Diversity v. BLM, No. C-08-05646*,
   2009 WL 1025606 (N.D. Cal. Apr. 14, 2009) ................................................. 6, 8

*Ctr. for Biological Diversity v. Kempthorne*,
   No. C-0-0894 EDL, 2007 WL 2023515 (N.D. Cal. July 12, 2007) ....................... 15

*Ctr. for Biological Diversity v. Rural Utilities Serv.*,
   No. C-08-1240 MMC, 2008 WL 2622868 (N.D. Cal. June 27, 2008) .................. 19

*Decker Coal Co. v. Commonwealth Edison Co.*,
   805 F.2d 834 (9th Cir. 1986) ..................................................................... 5, 12, 15

*Dehaemers v. Wynne*,
   522 F. Supp. 2d 240 (D.D.C. 2007) ..................................................................... 14

*Delce v. Amtrak & Rescoe Holdings, Inc.*,
   180 F.R.D. 316 (E.D. Tex. 1998) ........................................................................ 10

*Dist. No. 1 Pac. Coast Dist. v. Alaska*,
   682 F.2d 797 (9th Cir. 1982) ........................................................................... 3, 4

*Ferger v. C.H. Robinson Worldwide, Inc.*,
  No. C06-174RSL, 2006 WL 2091015 (W.D. Wash. July 25, 2006) ...................................... 10

*Ferguson v. Lieurance*,
  565 F. Supp. 1013 (D. Nev. 1983) ........................................................................................ 6

*Gerin v. Aegon USA, Inc.*,
  No. C06-5407 SBA, 2007 WL 1033472 (N.D. Cal. Apr. 4, 2007) ........................................ 14

*Guardians v. Jewell*,
  No. 15-cv-01984-REB, 2016 WL 796189 (D. Colo. Mar. 1, 2016) ....................................... 17

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947) ............................................................................................... 12, 13, 15

*Hatch v. Reliance Ins. Co.*,
  758 F.2d 409 (9th Cir 1985) ............................................................................................... 12

*Hawksbill Sea Turtle v. FEMA*,
  939 F. Supp. 1 (D.D.C. 1996) ............................................................................................. 15

*In re Horseshoe Entm't*,
  337 F.3d 429 (5th Cir. 2003) .............................................................................................. 19

*Inherent.com v. Martindale-Hubbell*,
  420 F. Supp. 2d 1093 (N.D. Cal. 2006) ............................................................................... 12

*Ironworkers Local Union No. 68 v. Amgen*,
  No. CV 07-5157 PSG (AGRx), 2008 WL 312309 (C.D. Cal. Jan. 22, 2008) ......................... 20

*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000) .............................................................................................. 12

*Khanna v. State Bar of Cal.*,
  No. C-07-2587 EMC, 2007 WL 2288116 (N.D. Cal. Aug. 7, 2007) ..................................... 10

*King v. Russell*,
  963 F.2d 1301 (9th Cir. 1992) .............................................................................................. 3

*Koresko v. RealNetworks, Inc.*,
  291 F. Supp. 2d 1157 (E.D. Cal. 2003) ................................................................................. 3

*Landis v. Watt*,
  510 F. Supp. 178 (D. Idaho 1981) ........................................................................................ 6

*London and Hull Mar. Ins. Co. Ltd. v. Eagle Pac Ins. Co.*,
  1996 WL 479013 (N.D. Cal. Aug. 14, 1996) ........................................................................ 14

*Murphy v. Schneider Nat'l, Inc.*,
  362 F.3d 1133 (9th Cir. 2004) .............................................................................................. 3

*Nat'l Ass'n of Homebuilders v. U.S. EPA*,
  675 F. Supp. 2d 173 (D.D.C. 2009) ..................................................................................... 14

*NRDC v. TVA*,
  340 F. Supp. 400 ........................................................................................................ 8

*Pacific Car & Foundry Co. v. Pence*,
  403 F.2d 949 (9th Cir. 1968) ................................................................................... 19

*Piedmont Label Co. v. Sun Garden Packing Co.*,
  598 F.2d 491 (9th Cir. 1979) ..................................................................................... 3

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) .......................................................................................... 13, 15

*Reuben H. Donnelley Corp. v. FTC*,
  580 F.2d 264 (7th Cir. 1978) ................................................................................ 4, 5

*S. Utah Wilderness All. v. Norton*,
  315 F. Supp. 2d 82 (D.D.C. 2004) ........................................................................... 16

*Santa Fe Int'l Corp. v. Watt*,
  580 F. Supp. 27 (D. Del. 1984) ................................................................................. 7

*Shalaby v. Newell Rubbermaid, Inc.*,
  No. C06-07026 MJJ, 2007 WL 3144357 (N.D. Oct. 24, Cal. 2007) ....................... 20

*Shell Oil Co. v. Babbit*,
  920 F. Supp. 559 (D. Del. 1996) ............................................................................... 7

*Sierra Club v. Flowers*,
  276 F. Supp. 2d 62 (D.D.C. 2003) ..................................................................... 16, 19

*Sierra Club v. U.S. Def. Energy Support Ctr.*,
  No. C 10-2673 JSW, 2011 WL 89644 (N.D. Cal. 2011) .......................................... 20

*Sierra Club v. U.S. Dep't of State*,
  No. C 09-4086 SI, 2009 WL 3112102 (N.D. Cal. Sept. 23, 2009)............................ 15

*Solomon v. Cont'l Am. Life Ins. Co.*,
  472 F.2d 1043 (3d Cir. 1973) ................................................................................... 19

*Stewart Org., Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988) ............................................................................................. 12, 13

*Trout Unlimited v. U.S. Dep't of Agric.*,
  944 F. Supp. 13 (D.D.C. 1996) .......................................................................... 15, 20

*W. Watersheds Project v. Schneider, No. 1:13-cv-261-EJL*,
  2014 WL 12788740 (D. Idaho Mar. 13, 2014) ..................................................... 8, 17

*Western Watersheds Project v. Salazar*,
  Civ. No. 08-0516-E-BLW, 2009 WL 1299626 (D. Idaho May 7, 2009) .................. 7, 8, 17

*Western Watersheds Project v. Salazar*,
  Civ. No. 08-435-E-BLW, 2010 WL 375003 (D. Idaho Jan. 25, 2010) .................... 7, 11

*Western Watersheds Project v. Salazar*,
No. 4:08-CV-516-BLW, 2012 WL 5880658 (D. Idaho Nov. 20, 2012) .................................. 18

*Western Watersheds Project v. U.S. Forest Serv.*,
No. CV-05-189-E-BLW, 2007 WL 129038 (D. Idaho Jan. 12, 2007) ..................................... 18

*WildEarth Guardians v. Jewell*,
No. 1:15-CV-2026-WJM, 2016 WL 8577508 (D. Colo. June 17, 2016) .................................. 17

*WildEarth Guardians v. U.S. Bureau of Land Mgmt.*,
922 F.Supp.2d 51 (D.D.C. 2013) ............................................................................................. 16

*WildEarth Guardians v. U.S. Forest Serv.*,
No. 1:11-cv-03171-AP, 2012 WL 1415378 (D. Colo. Apr. 24, 2012)..................................... 17

*WildEarth Guardians v. U.S. Office of Surface Mining Reclamation  Enf't, No. 1:13-cv-518*,
2014 WL 503635 (D. Colo. Feb. 7, 2014).............................................................................. 16

*Wyndham Assocs. v. Bintliff*,
398 F.2d 614 (2d Cir. 1968) .................................................................................................... 10

**Statutes**

28 U.S.C. § 1391(e) ....................................................................................................... *passim*

28 U.S.C. § 1404(a) ....................................................................................................... *passim*

28 U.S.C. § 1406(a) ...................................................................................................... 3, 9, 20

**Rules**

Fed. R. Civ. P. 12(b)(3)................................................................................................ 3, 9, 20

Fed. R. Civ. P. 21 ................................................................................................................ 10

**Other Authorities**

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §
1689 (3d ed. 2001) ............................................................................................................... 10

Pub. L. No. 87-748, 76 Stat. 744, 744 (1962)............................................................................. 6

S. Rep. No. 87-1992, at 6 (1962) ................................................................................................. 5

U.S. Department of the Interior, Bureau of Land Management, *DOI-BLM-WY-D010-2011-0001-
EIS (Normally Pressured Lance (NPL)),* (08/27/2018). https://eplanning.blm.gov/epl-front-
office/eplanning/planAndProjectSite.do?methodName=dispatchToPatternPage&currentPageId=7
6405............................................................................................................................................ 2

# INTRODUCTION

In their First Amended Complaint (ECF No. 78), Plaintiffs Western Watersheds Project and Center for Biological Diversity ("Plaintiffs") assert a new claim challenging the U.S. Bureau of Land Management's ("BLM") decision to approve the Normally Pressured Lance Natural Gas Development Project ("NPL Project"). The NPL Project is an oil and gas development project that will be conducted on federal, state, and private land in Wyoming and has no relationship to this district. The BLM officials who were involved in formulating and approving the NPL Project do not work or reside in this district. Plaintiffs allege that venue is proper because they reside in this district, but venue cannot be based solely on the plaintiffs' residence when real property is involved. The NPL Project claim directly involves BLM's management of real property in another district, including the development of that land for oil and gas extraction. Therefore, venue is not proper under 28 U.S.C. § 1391(e) and the case should be dismissed for improper venue. In the alternative, the case should be transferred to the U.S. District Court for the District of Wyoming, pursuant to 28 U.S.C. § 1404(a), because that is where the BLM land at issue is located and where the impacts of BLM's decision will be felt.

# BACKGROUND

In this case, Plaintiffs' recently added Seventh Claim for Relief challenges BLM's approval of the NPL Project on BLM land administered by its Pinedale and Rock Springs Field Offices in Wyoming. *See* First Am. Compl. ¶¶ 225mm-225mmm, 332-43; *see also* Normally Pressured Lance Natural Gas Development Project Record of Decision ("NPL Project ROD") at 2, Ex. 1. The project area comprises approximately 140,000 acres of land in southwest Wyoming. NPL Project ROD at 2, 6. BLM's record of decision allows Jonah Energy LLC to submit site-specific plans for oil and gas development within the project area. *Id.* at 3. Such

site-specific plans may include exploration plans, applications for permits to drill ("APD"), and right-of-way applications, which require further approval from BLM.  *Id.*  BLM anticipates that Jonah Energy may, subject to BLM's approval, develop up to 3,500 oil and gas wells over an approximately ten-year development period.  *Id.*  The project will be implemented in accordance with governing resource management plans ("RMP") for BLM Wyoming field offices—the Pinedale RMP, Green River RMP, and Greater Sage Grouse Plan Amendments for the Rocky Mountain Region issued in 2015—and any subsequent amendment or revision of those plans.  *Id.*[1]

Through the preparation of the environmental impact statement ("EIS") for the project, BLM consulted with the State of Wyoming, several Wyoming counties, and the Town of Pinedale, Wyoming, which all participated as cooperating agencies.  *Id.* at 34.  The Wyoming State Historic Preservation Officer ("SHPO") will be involved in the identification of cultural resources that may be adversely affected by subsequently approved ground disturbing activities.  *Id.* at 34.  During the National Environmental Policy Act ("NEPA") process, BLM consulted with several tribes in the region who may be affected by the project.  *Id.* at 35.  BLM also conducted multiple scoping meetings in Pinedale, Marbleton, and Rock Springs, Wyoming.  *Id.* at 36. After the release of the draft EIS in July 2017, BLM held public meetings at its Pinedale and Rock Springs Field Offices.  *Id.*  Comments were received from twelve entities within the State of Wyoming and two local government entities.  *Id.* at 37.  BLM's Wyoming State Director approved the NPL Project.  *Id.* at 1; Declaration of Mary Jo Rugwell ("Rugwell Decl.") ¶ 2.

---

[1] The NPL Project ROD and additional documents relating to the project are available at: https://eplanning.blm.gov/epl-front-office/eplanning/planAndProjectSite.do?methodName=dispatchToPatternPage&currentPageId=76405.

## ARGUMENT

### I.     The Case Should Be Dismissed for Improper Venue

#### A.     Standard for Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3)

Pursuant to Rule 12(b)(3), a complaint may be dismissed if it is brought in an improper

venue, and the plaintiff bears the burden of demonstrating that venue is proper.  *See Piedmont*

*Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979); *see also Koresko v.*

*RealNetworks, Inc.*, 291 F. Supp. 2d 1157, 1160 (E.D. Cal. 2003).  In deciding a Rule 12(b)(3)

motion, the pleadings need not be accepted as true and the court may consider supplemental

written materials and facts outside of the pleadings without transforming the motion into a

motion for summary judgment.  *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir.

2004); *Agueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).  If genuine contested

factual issues are presented, the court draws all reasonable inferences in favor of the non-moving

party.  *Murphy*, 362 F.3d at 1138–40.  Where venue is improper, the district court has the

discretion to dismiss the case under Rule 12(b)(3) or transfer the case in the interests of justice to

an appropriate jurisdiction under 28 U.S.C. § 1406(a).  *See King v. Russell*, 963 F.2d 1301, 1304

(9th Cir. 1992); *Dist. No. 1 Pac. Coast Dist. v. Alaska*, 682 F.2d 797, 799 (9th Cir. 1982).

#### B.     Plaintiffs' Seventh Claim Should Be Dismissed Because Plaintiffs Have Not Demonstrated that Venue is Proper Under 28 U.S.C. § 1391(e)(1)

Plaintiffs' Seventh Claim for Relief challenging the NPL Project should be dismissed for

lack of proper venue because it relates entirely to the authorization of oil and gas development in

Wyoming, the acts and events leading to the decision took place in Wyoming, and it was

approved by BLM's Wyoming State Director.  The claim involves actions affecting real property

and Jonah Energy's interest in that property, and therefore it involves real property for purposes

of the venue statute, 28 U.S.C. § 1391(e)(1).  Because this claim involves real property, the

residence of Western Watersheds Project is insufficient to establish proper venue under 28

U.S.C. § 1391(e)(1)(C), and therefore the Seventh Claim should be dismissed for improper

venue.[2]

In actions against federal agencies or officials, venue is proper "in any judicial district in

which (A) a defendant in the action resides, (B) a substantial part of the events or omissions

giving rise to the claim occurred, or a substantial part of property that is the subject of the action

is situated, or (C) the plaintiff resides if no real property is involved in the action."  28 U.S.C. §

1391(e)(1).  In this case, Plaintiffs have asserted that venue is proper based solely on the third

basis enumerated in the statute – the residence of Western Watersheds Project and the presence

of staff members of the Center for Biological Diversity.  *See* First Am. Compl. ¶ 17.  The other

potential bases for venue are not alleged and, in any case, do not exist here.  Neither the alleged

actions giving rise to the NPL Project claim nor the property that is the subject of that claim are

in this district.  Further, the officials who were involved in approving the NPL Project do not

reside in this district.  *See*, *e.g.*, *Reuben H. Donnelley Corp. v. FTC*, 580 F.2d 264, 266 n.3 (7th

Cir. 1978) (a federal official's residence for venue purposes is the location where he or she

performs official duties).  Accordingly, venue in this case hinges entirely on whether Western

Watersheds' residence in this district alone can satisfy the requirements of the federal venue

---

[2] Plaintiffs' Seventh Claim for Relief appears to encompass all of the claims challenging the
NPL Project.  *See* First Am. Compl. ¶ 332-343.  While the First Amended Complaint states that
the claims regarding the NPL Project are in addition to the claims set forth in the First, Second,
and Third Claims for relief, *id.*, ¶ 333, all of the claims challenging the NPL Project are
duplicated in the Seventh Claim.  *Compare id.* ¶¶ 276-307 *with id.* ¶¶ 332-343.  Therefore, the
dismissal of the Seventh Claim would be a dismissal of all claims relating to the NPL Project.
To the extent, however, that there are additional claims relating to the NPL Project, they should
also be dismissed or, in the alternative, severed and transferred as discussed in section II, *infra*.

statute.[3]  As explained below, it cannot because this is a case where "real property is involved in the action."  28 U.S.C. § 1391(e)(1)(C).

Prior to the enactment of 28 U.S.C. § 1391(e), suits against federal officers and agencies could only be brought in the District of Columbia.  *Donnelley*, 580 F.2d at 267.  The enactment of the modern venue statute liberalized these requirements by increasing the locations in which federal officials can be sued.  *Id.*  The impetus for this change came, in large part, from litigants seeking review of decisions regarding the management of public lands.  A letter from Deputy Attorney General Byron White at the time of enactment of the statute directly addressed this point and also raised the concern that the venue for such claims not be divorced from the locality where such claims arise:

> The principal demand for this proposed legislation comes from those who wish to seek review of decisions relating to public lands, such as the awarding of oil and gas leases, consideration of land patent applications and the granting of grazing rights or other interests in the public domain.  The applicants may reside in any State, or several States of the Union, and it would be unwise to have the Secretary sued in Maine with respect to an oil and gas lease in Wyoming.

S. Rep. No. 87-1992, at 6 (1962), *reprinted in* 1962 U.S.C.C.A.N. 2784, 2789 (Aug. 31, 1962).

The Senate Committee reviewing the bill agreed that the changes to the venue statute would apply specifically to management decisions on federal lands:

> Frequently, these proceedings involve problems which are recurrent but peculiar to certain areas, such as water rights, grazing land permits, and mineral rights. These are problems with which judges in those areas are familiar and which they can handle expeditiously and intelligently.

---

[3] The Center is not a resident of this district.  In determining where an organization resides for venue purposes, a court should consider where the organization is headquartered and where it conducts a substantial amount of its activities.  *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 841-42 (9th Cir. 1986).  Merely having staff members in a district is insufficient to demonstrate that the Center resides in this district for venue purposes.  *See id.* Indeed, Plaintiffs do not allege that the Center resides in this district.  *See First Am. Compl. ¶ 17.

*Id.* at 3, 1962 U.S.C.C.A.N. at 2786.  Further, the Committee considered and agreed with the

comment by the Deputy Attorney General regarding the desirability of having cases heard where

the land at issue was located:

> The Department of Justice also expressed concern that where the plaintiff resides in a different judicial district than that in which real property involved in the action is situated, it would not be in the interest of an expeditious proceeding to have the action brought in a judicial district where the plaintiff resides.  The committee considered the suggestion meritorious and approved the amendment set out to section 2 of the bill.

*Id.* at 4, 1962 U.S.C.C.A.N. at 2787.  Section 2 of the bill that was ultimately enacted contains

the provision that venue is proper where the "plaintiff resides if no real property is involved in

the action."  *See* Pub. L. No. 87-748, 76 Stat. 744, 744 (1962).  Thus, both the legislative history

and the enacted statute clearly indicate that if the plaintiff's residence is in a different judicial

district from the location of the property at issue, venue is only proper where the property is

located.

In an early decision interpreting this provision of the statute and relying on the legislative

history, the Chief Judge of the District of Idaho found that venue did not properly lie in Idaho for

claims regarding the cancellation of oil and gas leases in Colorado, New Mexico, and Montana.

*Landis v. Watt,* 510 F. Supp. 178, 180 (D. Idaho 1981).  Similarly, a later decision in the District

of Nevada found that a claim challenging the rejection of applications for oil and gas leases was

an action involving real property.  *Ferguson v. Lieurance*, 565 F. Supp. 1013, 1015 (D. Nev.

1983).  More recently, the Northern District of California held that a challenge to BLM's plan to

manage the California Desert Conservation Area involved real property for venue purposes, and

therefore venue could not be based solely on the plaintiffs' residence.  *Ctr. for Biological*

*Diversity v. BLM*, No. C-08-05646, 2009 WL 1025606, at *3 (N.D. Cal. Apr. 14, 2009).  The

plaintiffs in that case alleged that the plan violated NEPA and FLPMA.  *Id.* at *1.  The court

found that plaintiff's argument—that a challenge to BLM's plan did not involve real property—amounted to "legal sophistry." *Id.* at *3.

In some cases, courts have found that, even though the dispute was related to a parcel of land, the claims were only peripherally related to real property and therefore the restriction on venue did not apply. *See Shell Oil Co. v. Babbit*, 920 F. Supp. 559, 564-66 (D. Del. 1996) (holding that a case relating to oil and gas leases did not involve real property for venue purposes because the only issue in the case was the disclosure of certain documents); *Santa Fe Int'l Corp. v. Watt*, 580 F. Supp. 27, 28, 31 (D. Del. 1984) (holding that a case relating to oil and gas leases did not involve real property because the claim involved Secretary Watt's decision that citizens of Kuwait could not hold oil and gas leases); *Ashley v. Andrus*, 474 F. Supp. 495, 497 (E.D. Wis. 1979) (holding that a case relating to oil and gas leases did not involve real property because the issue in the case was whether a representative of an applicant for a leasehold was able to receive the leasehold after the applicant's death). In none of these cases was the issuance of leases or the management of those leases directly at issue.

Defendants recognize that two opinions by Chief Judge Winmill in this district have rejected the notion that challenges to BLM's management of federal lands were cases that involved real property for purposes of venue. *See W. Watersheds Project v. Salazar*, Civ. No. 08-0516-E-BLW, 2009 WL 1299626, at *2 (D. Idaho May 7, 2009); *W. Watersheds Project v. Salazar*, Civ. No. 08-435-E-BLW, 2010 WL 375003, at *2 (D. Idaho Jan. 25, 2010). Defendants argued that those cases involved real property because BLM's management of federal lands under its responsibility was directly at issue. But the Court disagreed, in part, because it determined that cases involving environmental issues were not cases involving real property for

venue purposes.  *W. Watersheds Project*, 2009 WL 1299626, at *2 (citing *NRDC v. TVA*, 340 F.

Supp. 400 (S.D.N.Y. 1971), *rev'd on other grounds*, 459 F.2d 2d 255 (2d Cir. 1972)).[4]

Significantly, the *NRDC* decision was vacated, albeit on other grounds, by the Second

Circuit.  Further, even that decision recognized that an action which "center[s] directly on the

real property" involves real property for venue purposes.  *NRDC*, 340 F. Supp. at 406.  An action

that challenges BLM's planning and implementation decisions regarding the land that it

administers, particularly it if contains a claim that BLM has violated FLPMA, is an action that

directly centers on real property.  *See Ctr. for Biological Diversity*, 2009 WL 1025606, at *3; *see*

*also Ctr. for Envtl. Law and Policy v. U.S. Bureau of Reclamation*, No. C 08-1730 RAJ, 2009

WL 10668581, at *2-6 (W.D. Wash. May 12, 2009) (ECF No. 18) (finding that a NEPA

challenge to the Bureau's decision to draw down water from a reservoir did not involve real

property because, unlike *Center for Biological Diversity*, no FLPMA claim was at issue, but

granting motion to transfer because the land and water at issue were located elsewhere).

But even if the Court were to find the reasoning of the prior *Western Watersheds Project*

decisions persuasive, the circumstances in this case are different.  The claims challenging the

resource management plans involved "BLM management of millions of acres of public lands"

across several management areas in different states on similar grounds.  *W. Watersheds Project*,

2009 WL 1299626, at *2-3.  In contrast, the claim challenging the NPL Project involves only

BLM's approval of a discrete oil and gas development project in Wyoming.  First Am. Compl.

¶¶ 225nn, 225oo, 332-43; NPL Project ROD at 2, 6.

---

[4] In a subsequent case regarding a watershed restoration plan in Nevada, Judge Lodge declined to
rule on the improper venue issue and instead transferred the case to the District of Nevada.  *See*
*W. Watersheds Project v. Schneider*, No. 1:13-cv-261-EJL, 2014 WL 12788740, at *2-6 (D.
Idaho Mar. 13, 2014).

Further, Plaintiffs specifically challenge BLM's approval of the project because it will allow the development of up to 3,500 oil and gas wells and associated facilities that will be developed on federal, state, and private land in Wyoming.  First Am. Compl. ¶ 225nn; *see also* NPL Project ROD at 2.  The approval of the NPL Project grants Jonah Energy the right to seek site-specific approvals for oil and gas drilling within the project area in Wyoming.  NPL Project ROD at 3; *see also* Rugwell Decl. ¶ 9.  Jonah Energy has made substantial investments to purchase the leases in the NPL Project area in Wyoming.  *See* Declaration of Paul Ulrich in Support of Proposed Intervenor-Defendant Jonah Energy LLC's Motion to Intervene ¶ 9 (ECF No. 85-2).  In addition, under the Federal Oil and Gas Royalty Management Act of 1982, the State of Wyoming and Wyoming counties where the project is located receive a significant portion of the royalties for produced federal minerals from the project.  *See* 30 U.S.C. § 1701 *et seq.*  Thus, under any standard, the NPL Project claims center on real property and venue is not proper in Idaho under the federal venue statute.  *See* 28 U.S.C. § 1391(e).

Accordingly, the Seventh Claim for Relief should be dismissed for improper venue pursuant Fed. R. Civ. P. 12(b)(3) or transferred pursuant to 28 U.S.C. § 1406(a).

## II.	In the Alternative, the Claim Regarding the NPL Project Should be Severed and Transferred to the U.S. District Court for the District of Wyoming

If the Court does not dismiss the NPL Project claim for improper venue, it should sever and transfer those claims to the District of Wyoming, pursuant to 28 U.S.C. § 1404(a), because that is where the land at issue is located and where a share of the royalties associated with the production from the project will be disbursed.  The local cooperating agencies and citizens in the project area most affected by BLM's approval of the NPL Project also have a strong interest in having disputes regarding BLM's approval of the Project resolved in Wyoming.

### A.      The Court Should Sever the Claim Regarding the NPL Project

The Court should sever the Seventh Claim for Relief regarding the NPL Project to enable the transfer of that claim to the District of Wyoming.  Under Rule 21, a court may "sever any claim against a party."  Fed. R. Civ. P. 21.  Courts have broad discretion in determining whether to sever claims under Rule 21. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1297 (9th Cir. 2000); 4-21 Moore's Federal Practice Civil § 21.05 (2010) (stating that courts have "great discretion under Rule 21 to restructure an action to promote the efficient administration of justice"); 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1689 (3d ed. 2001) ("Questions of severance are addressed to the broad discretion of the district court.").  A complaint that advances one or two legal theories applied to multiple, unique factual situations will be treated as pleading multiple claims that may be severed under Rule 21. *Coughlin v. Rogers*, 130 F.3d 1348, 1350–51 (9th Cir. 1997).

Rule 21 "authorizes the severance of any claim, even without a finding of improper joinder, where there are sufficient other reasons . . . . [such as where] they arise from different factual situations."  *Khanna v. State Bar of Cal.*, No. C-07-2587 EMC, 2007 WL 2288116, at *2 (N.D. Cal. Aug. 7, 2007); *see also Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968).  Rule 21 can also be used "to sever claims of parties, otherwise permissibly joined, for purposes of convenience, to avoid prejudice, or to promote the expeditious resolution of the litigation." *Ferger v. C.H. Robinson Worldwide*, Inc., No. C06-174RSL, 2006 WL 2091015, at *1 (W.D. Wash. July 25, 2006).  Severance is appropriate where there are "legal and factual differences" between the various claims.  *Delce v. Amtrak & Rescoe Holdings, Inc.*, 180 F.R.D. 316, 319 (E.D. Tex. 1998).  Further, "where claims are more properly tried in another forum, severance is the judicial tool of choice."  *Id.*

Severance of the NPL Project claim is appropriate because that claim relates specifically to a discrete oil and gas project in Wyoming and therefore is factually and legally distinct from Plaintiffs' other claims challenging Instruction Memorandum ("IM") 2018-026 and IM 2018-034 and the oil and gas lease sales at issue in the case.  Unlike the other claims, the NPL Project claim is a challenge to a distinct project based on specific allegations regarding the planning and NEPA process for that project.  In that claim, Plaintiffs make factual and legal assertions that are relevant only to the NPL Project and not Plaintiffs' other claims.  Plaintiffs allege, for example, that BLM's approval of the NPL Project violated FLPMA by failing to comply with the governing land use plans and specific management objectives in those plans and violated NEPA, among other reasons, by failing to consider an adequate range of alternatives, failing to analyze an adequate baseline, failing to disclose site-specific impacts, and failing to analyze cumulative impacts.  All of those allegations are specific to the claims challenging the NPL Project and can be severed from Plaintiffs' remaining claims.  Severance is appropriate to enable the transfer of the claim to a more appropriate forum.  *See W. Watersheds Project*, 2010 WL 375003, at *3 (severing and transferring challenges to grazing permits regarding lands in Nevada to the District of Nevada).

Accordingly, Plaintiffs' Seventh Claim for Relief challenging the NPL Project should be severed.

## B.     The NPL Project Claim Should Be Transferred to the District of Wyoming

The NPL Project Claim should be transferred to the District of Wyoming where the project is located and where the BLM officials who approved the project are located.

### 1.      Standard for Transfer Under 28 U.S.C. § 1404(a)

This Court has broad discretion under 28 U.S.C. § 1404(a) to transfer claims to another judicial district based on considerations of convenience and fairness.  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  In determining whether an action should be transferred under section 1404(a), courts employ a two-step analysis.  First, a court considers whether the action could have originally been brought in those districts to which the transfer is sought.  *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir 1985); *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1098 (N.D. Cal. 2006).  Second, a court undertakes an individualized, case-by-case consideration of convenience and fairness, taking into account the convenience of the parties and the interests of justice.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

In the Ninth Circuit, the "convenience" factor typically requires that a court consider a number of *private* interests, including:  (1) the relative ease of access to sources of proof; (2) the cost of obtaining witnesses; (3) the availability of compulsory process for attendance of unwilling non-party witnesses; and (4) the possibility of a view of the premises, if a view would be appropriate to the action.  *See Decker*, 805 F.2d at 843 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  The "interest of justice" factor requires the consideration of several *public* interests, including (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having a case heard in the state that is most familiar with the governing law; (4) the relevant public policy

of the forum state; (5) the desire to avoid multiple litigation from a single transaction and to promote consistency among court rulings that affect the development of the case; and (6) the relative intensity in the two jurisdictions of any local interests that the litigation might implicate. *See id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

As discussed below, the Court should transfer the case, pursuant to 28 U.S.C. § 1404(a), to the U.S. District Court for the District of Wyoming because venue would be proper in that district and the interest of justice and convenience of the parties and the court both weigh in favor of a transfer.

### 2.    The District of Wyoming is a Proper Venue

Under 28 U.S.C. § 1391(e), Plaintiffs could have brought challenged the NPL Project in district court in Wyoming or the District of Columbia.  Wyoming is a proper venue because the events or omissions giving rise to the NPL Project claim occurred in Wyoming.  *See* 28 U.S.C. § 1391(e)(1)(B).  The NPL Project is located in BLM's Pinedale and Rock Springs Field Offices in Wyoming.  First Am. Compl. ¶¶ 225nn, 225oo.  The approval process involved consultation with the State of Wyoming, several Wyoming counties, and the Town of Pinedale, Wyoming, which participated as cooperating agencies during the NEPA process.  NPL Project ROD at 34.  The NEPA process also involved consultation with several tribes in the region.  *Id.* at 35.  BLM also conducted multiple scoping meetings in Pinedale, Marbleton, and Rock Springs, Wyoming and also held multiple public meetings on the draft EIS in the Pinedale and Rock Springs Field Offices.  *Id.* at 36.  State and local officials were actively engaged in the process, as evidence by the comments they submitted during the NEPA process.  *Id.* at 37.  BLM's Wyoming State Director made the decision to approve the NPL Project.  *Id.* at 1; *see also* Rugwell Decl. ¶¶ 2-8.  Accordingly, the events giving rise to Plaintiffs' claim challenging the NPL Project occurred in the District of Wyoming, and therefore venue in Wyoming is proper under 28 U.S.C. §

1391(e)(1)(B).  *See Nat'l Ass'n of Homebuilders v. U.S. EPA*, 675 F. Supp. 2d 173, 179 (D.D.C. 2009) ("In cases brought under the [Administrative Procedure Act ("APA")], courts generally focus on where the decisionmaking process occurred to determine where the claims arose.").

Venue in Wyoming is also proper under 28 U.S.C. § 1391(e)(1)(A) because the BLM official who approved the NPL Project—the BLM Wyoming State Director—resides in Wyoming.  *See Dehaemers v. Wynne*, 522 F. Supp. 2d 240, 248 (D.D.C. 2007) (finding that an agency head may have multiple residences for venue purposes depending upon where the agency head conducts a "significant amount" of their duties); *California v. Bureau of Land Mgmt.*, Nos. 18-cv-521-HSG, 18-cv-524-HSG, 2018 WL 3439453, at *3 (N.D. Cal. 2018) (finding that venue in Wyoming would be proper because BLM has an office in the state, manages a substantial amount of public land in the state, and manages land subject to the regulation challenged in the case).  Accordingly, this case could have been brought in the District of Wyoming.

### 3.      The Interest of Justice Favors Transfer to Wyoming

Courts generally place the greatest weight on the interest of justice factor in determining whether transfer is appropriate.  *Gerin v. Aegon USA, Inc.*, No. C06-5407 SBA, 2007 WL 1033472, at *6 (N.D. Cal. Apr. 4, 2007) ("The 'interests of justice' consideration is the most important factor a court must consider, and may be decisive in a transfer motion even when all other factors points the other way.") (quoting *London and Hull Mar. Ins. Co. v. Eagle Pac. Ins. Co.*, No. C 96-01512 CW, 1996 WL 479013, at *3 (N.D. Cal. Aug. 14, 1996)); *see Anderson v. Thompson*, 634 F. Supp. 1201, 1204 (D. Mont. 1986) ("As a general proposition, it may be said that the convenience of the parties and witnesses is subordinate to the interests of justice factor.").  This factor strongly favors transferring this case to the District of Wyoming.

In environmental suits brought pursuant to the Administrative Procedure Act ("APA"), such as this one, many of the interest of justice factors will be inapplicable or neutral, and therefore the most salient factor in determining the appropriate venue is the interest in resolving controversies in the regions that will be most immediately affected by the litigation. *See Ctr. for Biological Diversity v. Kempthorne*, No. C-07-0894 EDL, 2007 WL 2023515, at *5 (N.D. Cal. July 12, 2007).   Here, the State of Wyoming, Wyoming counties and local governments, and residents of Wyoming—where the BLM land at issue is located—have a compelling interest in seeing that the claims regarding the NPL Project are decided locally. *See id.* at *5-6; *see also Sierra Club v. U.S. Dep't of State*, No. C 09-4086 SI, 2009 WL 3112102, at *4 (N.D. Cal. Sept. 23, 2009) (transferring an environmental challenge to an oil pipeline that would be constructed primarily in Minnesota); *Backcountry Against Dumps v. Abbot*, No. Civ. S -10-394 FCD/KJN, 2010 WL 2349194, at *4 (S.D. Cal. June 8, 2010) (transferring a case, in part, because "all land and real property related to" the challenged plan lay outside the district).

The interest of justice is promoted when a localized controversy is decided in the region it impacts. *See Piper*, 454 U.S. at 241 n.6; *Decker*, 805 F.2d at 843.   "In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only." *Gulf Oil Corp.* 330 U.S. at 509; *see also Hawksbill Sea Turtle v. FEMA*, 939 F. Supp. 1, 3 n.5 (D.D.C. 1996) ("The Court . . . notes the importance of allowing local citizens to attend and observe the proceedings of this case.").   In matters of environmental law and land use decisions such as those involved here, disputes "that are of great importance in the State . . . should be resolved in the forum where the people 'whose rights and interests are in fact most vitally affected by the suit'" are located. *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 19-20 (D.D.C. 1996) (quoting *Adams v.*

*Bell*, 711 F.2d 161, 167 n.34 (D.C. Cir. 1983)); *see also S. Utah Wilderness All. v. Norton*, 315 F. Supp. 2d 82, 88 (D.D.C. 2004) ("Land is a localized interest because its management directly touches local citizens."); *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 70 (D.D.C. 2003).  The District of Idaho is not a convenient forum for those individuals with the greatest interest in viewing the proceedings.

In this case, the NPL Project will be implemented in the Pinedale and Rock Springs Field Offices in Wyoming.  A court decision regarding the project will have the most immediate impact on the State of Wyoming, counties and local governments, and the residents of Wyoming. Demonstrating the local interest in the plan, the State of Wyoming, several Wyoming counties, and the Town of Pinedale were cooperating agencies in the NEPA process, and twelve entities within the State of Wyoming government and two counties submitted comments on the draft EIS.  NPL Project ROD at 34, 36; *see also* Rugwell Decl. ¶¶ 6-8.  Therefore, transfer to the District of Wyoming is appropriate.  *See*, *e.g.*, *S. Utah Wilderness All.*, 315 F. Supp. 2d at 88 (transferring claims involving oil and gas leases in Utah to district court in Utah and explaining that "[t]he controversy is localized in the sense that it involves Utah lands" and "hence there is a strong local interest in having this case heard in Utah"); *WildEarth Guardians v. U.S. Office of Surface Mining Reclamation Enf't*, No. 1:13-cv-518, 2014 WL 503635, at *1 (D. Colo. Feb. 7, 2014) (transferring surface mining claims to Wyoming, New Mexico and Montana and noting that the "value in having environmental claims litigated where their impacts resonate most deeply eclipses any alleged judicial economy in lumping together in one suit and one venue various locally charged claims"); *WildEarth Guardians v. U.S. Bureau of Land Mgmt.*, 922 F .

Supp. 2d 51 (D.D.C. 2013) (transferring claims challenging the "Wright Area" leasing decisions in Wyoming to Wyoming).[5]

Plaintiffs may attempt to rely on Judge Winmill's 2009 opinion regarding Western Watersheds' claims challenging RMPs, but that decision does not support venue in Idaho for the NPL Project claim.  In that case, the court found that found that the interest in having localized controversies decided locally was not sufficient to justify transfer in that instance because the claims involved broad management issues stretching across geographic boundaries.  *W. Watersheds Project*, 2009 WL 1299626, at *3.  The same is not true with respect to Plaintiffs' Seventh Claim for relief, which addresses a single oil and gas development project in Wyoming.

In sum, the interest in resolving controversies locally is the overriding factor in this case and it weighs heavily in favor or transfer to Wyoming.  *See W. Watersheds Project*, 2014 WL 12788740, at *5-6 (finding that the interest of justice favored transferring claims involving a watershed restoration plan to the District of Nevada because the "impact from [the plan] and the resolution of this matter will be felt most in Nevada").

### 4.      The Convenience of the Parties and the Court Favors Transfer

The convenience of the parties and the Court also favors transfer of the case to Wyoming. The NPL Project was approved by the BLM Wyoming State Director and the planning process was conducted in BLM's Pinedale and Rock Springs Field Offices.  *See* NPL Project ROD at 1, 36; Rugwell Decl. ¶¶ 2, 5.  Accordingly, the BLM staff members who were involved in the

---

[5] *See also WildEarth Guardians v. Jewell*, No. 1:15-CV-2026-WJM, 2016 WL 8577508, at *6–7 (D. Colo. June 17, 2016) (transferring surface mining claims to the District of New Mexico and the District of Wyoming); *WildEarth Guardians v. Jewell*, No. 15-cv-01984-REB, 2016 WL 796189, at *3 (D. Colo. Mar. 1, 2016) (transferring surface mining claims to the District of Utah);  *WildEarth Guardians v. U.S. Forest Serv.*, No. 1:11-cv-03171-AP, 2012 WL 1415378, at *4 (D. Colo. Apr. 24, 2012) (transferring claims challenging leasing decisions in Wyoming to Wyoming).

planning process are located in Wyoming, as are most of the documents that relate to the preparation of the plan; other documents may be located at BLM's headquarters in Washington, D.C.  Because this is an APA case, it is unlikely that there will be a need to conduct discovery and gather evidence.  Nevertheless, there are some instances in APA cases in which discovery or evidentiary hearings occur.  In the case involving BLM's RMPs, the Court conducted an evidentiary hearing and heard evidence from witnesses regarding the appropriate remedy.  *See W. Watersheds Project v. Salazar*, No. 4:08-CV-516-BLW, 2012 WL 5880658, at *2-9 (D. Idaho Nov. 20, 2012).  If a need for an evidentiary hearing were to arise in this case, it would be more convenient for the parties and witnesses if the case were litigated in Wyoming, where the relevant witnesses are likely to be located.

In addition, in environmental cases, a judge may conduct a site visit of the area affected by the litigation to gain a better understanding of the issues in the case.  Indeed, in a prior case brought by Western Watersheds, Chief Judge Winmill conducted a site visit of grazing allotments and found it to be helpful.  *See W. Watersheds Project v. U.S. Forest Serv.*, No. CV-05-189-E-BLW, 2007 WL 129038, at *1 (D. Idaho Jan. 12, 2007).  It would be less convenient for the parties and the court to conduct a site visit in an area far away in another state. Accordingly, Wyoming would be a more convenient venue.

Moreover, Wyoming would not be significantly less convenient for Plaintiffs.  While Western Watersheds' headquarters are in Idaho, its members and supporters are located in various locations throughout the west.  As indicated in the complaint, "Western Watersheds Project is headquartered in Hailey, Idaho, and has additional staff and offices in Boise, as well as Wyoming, Montana, Nevada, Arizona, Utah, and Oregon."  First Am. Compl. ¶ 19.A.  The Center for Biological Diversity likewise states that it advocates "for increased protections for

greater sage-grouse and other sagebrush obligates in Idaho, Montana, Nevada, Wyoming, and elsewhere." *Id.* ¶ 19.B. Accordingly, litigating the case in Wyoming would not be more inconvenient for the Plaintiffs.

Further, even if it were more convenient for Plaintiffs' attorneys to litigate the case in this district than elsewhere, that is not a factor that the Court should consider in determining which venue is the most appropriate. *See Ctr. for Biological Diversity v. Rural Utilities Serv.*, No. C-08-1240 MMC, 2008 WL 2622868, at *1 (N.D. Cal. June 27, 2008) (holding "the convenience of counsel is not a recognized factor" to be considered); *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003) ("The factor of 'location of counsel' is irrelevant and improper for consideration in determining the question of transfer of venue"); *Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973) ("The convenience of counsel is not a factor to be considered"); *Sierra Club*, 276 F. Supp. 2d at 69 ("Because this action involves an administrative review that the court is likely to determine on the papers, the location of counsel — already given little, if any, weight in transfer determinations — makes no difference here.") (quotation marks and citation omitted). Therefore, the location of Plaintiffs' attorneys should be given no weight.

### 5.   Plaintiffs' Choice of Forum Is Entitled to No Weight

Plaintiffs' decision to challenge the NPL Project in this district is entitled to no weight. While, as a general rule, some deference should be given to a plaintiff's choice of forum, no such deference is appropriate here because the events giving rise to Plaintiffs' Seventh Claim for Relief regarding the NPL Project occurred totally outside of this district. *See Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) ("If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the

parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration."); *see also Ironworkers Local Union No. 68 v. Amgen*, No. CV 07-5157 PSG (AGRx), 2008 WL 312309, at *4 (C.D. Cal. Jan. 22, 2008); *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1260 (W.D. Wash. 2005).  In cases such as this, where a plaintiff's choice of forum has "no meaningful ties to the controversy and no particular interest in the parties or subject matter," that choice is no longer afforded deference.  *Trout Unlimited*, 944 F. Supp. at 17 (citation omitted); *see also Sierra Club v. U.S. Def. Energy Support Ctr.*, No. C 10-2673 JSW, 2011 WL 89644, at *2 (N.D. Cal. 2011) (transferring the case and noting that "Plaintiff's choice of forum is given little weight" because the action had no connection to the forum); *Shalaby v. Newell Rubbermaid, Inc.*, No. C06-07026 MJJ, 2007 WL 3144357, at *6 (N.D. Oct. 24, Cal. 2007). Because none of the operative facts giving rise to Plaintiffs' NPL Project claim occurred in this district, the fact that Plaintiffs chose to file suit in this district should be given no weight.

## CONCLUSION

As demonstrated above, the real property that is at issue in this lawsuit is located outside of this district and the actions giving rise to Plaintiffs' Seventh Claim for Relief regarding the NPL Project occurred entirely outside of this district.  Accordingly, venue for that claim is improper and the Seventh Claim for Relief should either be dismissed pursuant to Fed. R. Civ. P. 12(b)(3) or transferred to the District of Wyoming pursuant to 28 U.S.C. § 1406(a).  In the alternative, the case should be transferred to the District of Wyoming in the interest of justice and for the convenience of the parties and the court pursuant to 28 U.S.C. § 1404(a).

Respectfully submitted this 16th day of November, 2018,

BART M. DAVIS, Idaho Bar No. 2696
United States Attorney

CHRISTINE G. ENGLAND, California Bar No. 261501

Assistant United States Attorney
District of Idaho
Washington Group Plaza IV
800 East Park Boulevard, Suite 600
Boise, Id 83712-7788
Telephone: (208) 334-1211
Facsimile:   (208) 334-1414
E-mail: Christine.England@usdoj.gov

JEAN E. WILLIAMS
Deputy Assistant Attorney General

JOHN S. MOST, Virginia Bar No. 27176
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044
Tel: (202) 724-7386; Fax: (202) 526-6665
E-mail: John.Most@usdoj.gov

LUTHER L. HAJEK, Colorado Bar No. 44303
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
999 18th Street
South Terrace, Suite 370
Denver, CO 80202
Tel: (303) 844-1376; Fax: (303) 844-1350
E-mail: Luke.Hajek@usdoj.gov

*Counsel for Defendants*