BART M. DAVIS, Idaho Bar No. 2696
United States Attorney

CHRISTINE G. ENGLAND, California Bar No. 261501
Assistant United States Attorney
District of Idaho
Washington Group Plaza IV
800 East Park Boulevard, Suite 600
Boise, Id 83712-7788
Tel: (208) 334-1211; Fax: (208) 334-1414
Email: Christine.England@usdoj.gov

JEAN E. WILLIAMS
Deputy Assistant Attorney General

JOHN S. MOST, Virginia Bar No. 27176
LUTHER L. HAJEK, Colorado Bar No. 44303
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
999 18th St., South Terrace – Suite 370
Denver, CO 80202
Tel: (303) 844-1376; Fax: (303) 844-1350
E-mail: Luke.Hajek@usdoj.gov

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, *et al.*,<br>　　　　Plaintiffs,<br><br>　　vs.<br><br>RYAN K. ZINKE, Secretary of the Interior, *et al.*,<br>　　　　Defendants. | Case No. 1:18-cv-00187-REB<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR IMPROPER VENUE OR, IN THE ALTERNATIVE TO SEVER AND TRANSFER, PLAINTIFFS' CLAIMS CHALLENGING THE NORMALLY PRESSURED LANCE PROJECT** |

# INTRODUCTION

Plaintiffs' Seventh Claim for Relief challenges the U.S. Bureau of Land Management's ("BLM") decision to approve the Normally Pressured Lance Natural Gas Development Project ("NPL Project")—a decision that was made after a lengthy approval process that occurred in BLM field offices in Wyoming. BLM's decision grants Jonah Energy the right to seek approval for site-specific oil and gas development operations in Wyoming. Plaintiffs seek to overturn that decision, which would directly affect Jonah Energy's and the State of Wyoming's interests in the project. Therefore, it is a claim that involves real property under the venue statute, 28 U.S.C. § 1391(e), and because the property at issue is outside of this district, the claim must be dismissed for improper venue. Alternatively, the claim should be transferred to the District of Wyoming because the NPL Project has no connection to this district and the claim challenging it presents distinct legal and factual issues that are separate from Plaintiffs' remaining claims.

# ARGUMENT

**I.      Plaintiffs' Seventh Claim Involves Real Property in Wyoming and Therefore Should Be Dismissed for Improper Venue**

Plaintiffs' challenge to the NPL Project should be dismissed because it involves property in Wyoming, and therefore venue is improper in this district under 28 U.S.C. § 1391(e)(3).

**A.      Claims That Involve Real Property for Venue Purposes are Not Limited to Ones that Involve a Right, Title, or Interest in Real Property**

Plaintiffs argue that venue is proper based on two prior opinions by Chief Judge Winmill. *See W. Watersheds Project v. Salazar*, Civ. No. 08-0516-E-BLW, 2009 WL 1299626, at *2 (D. Idaho May 7, 2009) ("*Salazar I*"); *W. Watersheds Project v. Salazar*, Civ. No. 08-435-E-BLW, 2010 WL 375003, at *2 (D. Idaho Jan. 25, 2010) ("*Salazar II*"). Defendants respectfully submit that those cases were decided incorrectly and are distinguishable.

Defendants' Reply in Supp. of Motion to Dismiss or, In the Alternative,
to Sever and Transfer, Plaintiffs' Claims Challenging the Normally Pressured Lance Project      1

In *Salazar I*, the court stated that the legislative history "shows that the real property limitation was added due to congressional concerns over the local nature of some real property actions," and erroneously concluded that the real property provision refers only to actions involving "matters of right, title, and interest." 2009 WL 1299626, at *2 (internal quotation marks and citations omitted). In fact, the legislative history demonstrates that this provision was added, not out of concern over local property disputes (which are less likely to be in federal court), but rather out of concern that "decisions relating to public lands" be decided locally. S. Rep. No. 87-1992 (1962), at 6, *reprinted in* 1962 U.S.C.C.A.N. 2784, 2789. Plaintiffs ignore the legislative history, which is crucial to understanding the real property provision.

The modern venue statute was enacted, in part, for the purpose of allowing judicial "review of decisions relating to public lands" in federal courts around the country. *Id.* But it was never intended that review of decisions affecting the public lands would occur in any district of a plaintiff's choosing. Indeed, the Deputy Attorney General expressly raised the concern that "it would be unwise to have the Secretary sued in Maine with respect to an oil and gas lease in Wyoming." *Id.* The Senate Committee agreed with that concern and added the requirement that venue would be proper only where "the plaintiff resides if no real property is involved in the action." Pub. L. No. 87-748, 76 Stat. 744, 744 (1962); *see* Defs.' Mem. in Supp. of Mot. to Dismiss at 4-5 (ECF No. 99-1) ("Def. Mem."). The current action is one that involves a challenge to BLM's management of public lands in Wyoming. Under a plain reading of the statute and the legislative history, venue is not proper in Idaho because Plaintiffs' Seventh Claim involves real property in Wyoming. *See* 28 U.S.C. § 1391(e)(1)(C).

The court in *Salazar I* also stated that "it finds persuasive cases that have held that environmental actions such as this are not actions in which 'real property is involved.'" 2009

WL 1299626, at *2 (citing *Nat. Res. Def. Council v. Tenn. Valley Auth.*, 340 F. Supp. 400 (S.D.N.Y. 1971), *rev'd on other grounds*, 459 F.2d 255 (2d. Cir. 1972).  The *Natural Resources Defense Council* case, however, was reversed on appeal and, in any event, did not involve the management of public land—the issue directly referenced in the legislative history.  Therefore, Judge Winmill was mistaken to conclude that the real property provision does not apply in environmental cases.

In *Salazar II*, Judge Winmill declined, without additional analysis, to depart from his prior ruling regarding proper venue, but the court did sever and transfer the claims regarding grazing permits in Nevada to the District of Nevada.  *Id.* at *2-3.  In a third case brought by Western Watersheds Project involving a watersheds restoration plan governing public land in Nevada, Judge Lodge declined to rule on the issue of proper venue and instead transferred the case.  *See W. Watersheds Project v. Lueders*, No. 1:13-cv-261-EJL, 2014 WL 12788740, at *2-6 (D. Idaho Mar. 13, 2014).  Thus, Plaintiffs are wrong to suggest that the application of the real property provision of 28 U.S.C. § 1391 is settled in this district.

Finally, the law of the case doctrine is inapplicable on this point because Defendants did not argue in the prior transfer motion that venue was improper, and the Court addressed the issue only in passing.  *See* Defs.' Mem. in Supp. of Mot. to Sever and Transfer (ECF. No. 12-1); Mem. Decision and Order at 10 n.7 (ECF No. 66).[1]  The issue or improper venue was not before the Court, and therefore any discussion of the issues was *dicta* and has "no preclusive effect." *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990).  And even if the Court decided whether venue was proper for the oil and gas leasing decisions, it did not

---

[1] Western Energy Alliance discussed the issue in its briefing, but it did not move to dismiss the prior claims for improper venue.  *See* Int. W. Energy All. Prop. Sur-reply to Mot. to Sever and Transfer at 2-3 (ECF No. 59-1).

Defendants' Reply in Supp. of Motion to Dismiss or, In the Alternative,
to Sever and Transfer, Plaintiffs' Claims Challenging the Normally Pressured Lance Project    3

decide the issue with respect to the exercise of valid rights to develop existing leases within the NPL Project.[2]

### B. The NPL Project Claim Challenges BLM's Management of Public Land and Therefore Is One that "Involves" Real Property for Venue Purposes

A claim regarding BLM's management of the public lands under its authority, including the issuance of permits and other approvals for the uses of the public lands, is a claim that involves real property. *See Ctr. for Biological Diversity v. U.S. BLM*, No. C 08-5646 JSW, 2009 WL 1025606, at *3 (N.D. Cal. Apr. 14, 2009). In *Center for Biological Diversity*, the court expressly found that a challenge to a BLM management plan amendment claiming violations of environmental laws was an action involving real property. *Id.* at *1, 3.

Plaintiffs attempt to distinguish *Center for Biological Diversity* on the grounds that the plan at issue governed "rights of way and easements . . . , land withdrawals and land exchanges and acquisitions." Pls.' Opp. to Defs.' and Def-Ints.' Mots. to Dismiss or Transfer ("Pls. Opp.") at 11 (ECF No. 106) (citing 2009 WL 1025606, at *1). But the case did not actually involve rights-of-way or other specific property rights; rather, the case was about a BLM plan for managing public land. 2009 WL 1025606, at *1. Thus, specific property rights were not central to the case. In contrast, such specific property rights are at issue here because the approval of the NPL Project grants Jonah Energy the right to seek site-specific approval for oil and gas drilling in a specific location on public land in Wyoming. *See* NPL Project Record of Decision ("ROD") at 3 (ECF No. 99-2). Through their claims, Plaintiffs seek to invalidate those rights.[3]

---

[2] A court may reconsider a prior order to correct a legal error. *See* Fed. R. Civ. P. 60(b); *Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 887 (9th Cir. 2001). The law of the case doctrine is "wholly inapplicable" to a district court's reconsideration of an issue before it has been divested of jurisdiction. *United States v. Smith*, 389 F.3d 944, 949 (9th Cir. 2004).

[3] In *Earth Island Institute v. Quinn*, 56 F. Supp. 3d 1110 (N.D. Cal. 2014), the court mistakenly concluded that a claim involving the management of the national forest was not one that

Plaintiffs' attempts to distinguish *Ferguson v. Lieurance*, 565 F. Supp. 1013 (D. Nev. 1983) and *Landis v. Watt,* 510 F. Supp. 178 (D. Idaho 1981) likewise fall flat. Plaintiffs argue that those cases were different because the plaintiffs in those cases were challenging the rejection or cancellation of oil and gas leases. *See* Pls.' Opp. at 10. But that is a distinction without a difference. Under Plaintiffs' theory, if BLM had made a decision to reject the NPL Project, Jonah Energy would have been required to challenge that decision in Wyoming, but because BLM approved the project, its decision can be challenged in any district where a plaintiff resides. That distinction makes no sense. If a decision regarding the management of federal public land is central to the case, as it is here, then the case is one that involves real property.

Plaintiffs rely on a line of cases—*Shell*, *Ashley*, and *Watt*—in which the management of public land was not central to the case. For example, *Shell Oil Co. v. Babbitt*, 920 F. Supp. 559 (D. Del. 1996), involved an administrative order to produce documents and thus did not involve real property. *Id.* at 566. Similarly, in *Ashley v. Andrus*, 474 F. Supp. 495, 497 (E.D. Wis. 1979), the plaintiff sought a legal determination that she was entitled to receive a leasehold following the death of her husband, but did not seek an order awarding the leasehold. *Id.* at 496-97. Finally, *Santa Fe Int'l Corp. v. Watt*, 580 F. Supp. 27 (D. Del. 1984), involved a challenge to Secretarial decision that prevented citizens of Kuwait from holding oil and gas leases, but did not relate to the "leasing of particular local lands." *Id.* at 28, 31. In none of these cases was the management of public land central to the issues in the case, and therefore they are inapposite.[4]

---

involved real property, but the court nevertheless transferred the case to the district where the forest was located. *See id.* at 1116-20.

[4] Plaintiffs also rely on several other cases that do not involve the management of federal public land. *See Animal Legal Def. Fund v. U.S. Dep't of Agric.*, No. CV 12-4407-SC, 2013 WL 120185, at *2 (N.D. Cal. Jan. 8, 2013) (challenge to administrative licensing decision); *Ctr. for Envtl. Law and Policy v. U.S. Bureau of Reclamation*, No. C 08-1730 RAJ, 2009 WL 10668581,

Finally, even if the Court adopts the standard proposed by Plaintiffs and asks whether a right, title, or interest in real property is at issue, the challenge to the NPL Project is still a claim that involves real property.  The approval of the NPL Project grants Jonah Energy the right to seek site-specific approvals for oil and gas drilling on existing federal leases within the project area.  NPL Project ROD at 3; Declaration of Mary Jo Rugwell ¶ 9 (ECF No. 99-7).  Plaintiffs assert that these rights are not at issue because they seek only to ensure compliance with National Environmental Policy Act ("NEPA") and the Federal Land Policy and Management Act ("FLPMA").  *See* Pls. Opp. at 9-10.  This assertion, however, is misleading because Plaintiffs also expressly seek to have the approval of the NPL Project set aside.  First Am. Compl., Prayer for Relief, ¶ E (ECF No. 78).  Setting aside BLM's approval of the project will have a direct effect on Jonah Energy's rights and interests.

In sum, Plaintiffs' challenge to BLM's approval of the NPL Project is a claim that involves real property and should be dismissed for improper venue.

## II.     In the Alternative, Plaintiffs' Seventh Claim for Relief Should be Severed and Transferred to the District of Wyoming

If the Court does not dismiss the NPL Project claim for improper venue, it should sever and transfer the claim to the District of Wyoming, pursuant to 28 U.S.C. § 1404(a).

### A.     The Claim Regarding the NPL Project Should Be Severed Because it is Unrelated to Plaintiffs' Other Claims

The Court should sever the Seventh Claim for Relief regarding the NPL Project to enable the transfer of that claim to the District of Wyoming.  Plaintiffs argue that the claim involving the NPL Project cannot be severed from its other claims because it arises from the same

---

at *3 (W.D. Wash. May 12, 2009) (challenge to a proposed water drawdown for irrigation purposes); *McCloskey & Co. v. U.S. Postal Serv.*, CIV. A. No. 87-5563, 1988 WL 29291, at *1 (E.D. Pa. Mar. 24, 1988) (dispute regarding rental payments).

transaction or event as the other claims and presents common questions of law and fact.  *See* Pls. Opp. at 12-13.  Plaintiffs' assertions are belied by their own pleading.

Plaintiffs' First through Sixth claims allege that BLM violated FLPMA and NEPA for various oil and gas leasing decisions by failing to follow the prioritization directives in the 2015 Greater Sage Grouse Plan Amendments and by failing to adequately analyze impacts to greater sage grouse.  First Am. Compl. ¶¶ 276-307.  They also claim that BLM's adoption of IM 2018-034 regarding the oil and gas leasing process and IM 2018-026 regarding the prioritization of oil and gas development violated NEPA and FLPMA.  *See id.* ¶¶ 308-331.  The Seventh Claim for Relief, by contrast, specifically challenges the approval of the NPL Project and alleges several unique NEPA and FLPMA claims.  *See id.* ¶¶ 332-343.[5]  This claim challenges an entirely separate action that does not arise out of the same transaction or event as Plaintiffs' other claims.

The Seventh Claim for Relief also presents separate legal and factual issues.  The claim regarding IM 2018-034 is inapplicable because Plaintiffs concede that there was a 45-day public comment period on the draft environmental impact statement for the NPL Project.  *See id.*  Plaintiffs allege, without evidence, that BLM applied IM 2018-026 during its consideration of the NPL Project.  BLM did not reference IM 2018-026 in the Record of Decision approving the NPL Project, and the NEPA process for the NPL Project began years before the IM was issued.  Even if BLM did consider IM 2018-026 in the course of considering the NPL Project, the prioritization of areas for oil and gas leasing presents different legal and factual issues from the prioritization of development in areas that have already been leased.

---

[5] Defendants recognize that the First, Second, and Third claims refer to all of the "Final Actions," which include the NPL Project, *see*, *e.g.*, First Am. Compl. ¶ 282, but Plaintiffs cannot avoid severance through artful pleading.  All of Plaintiffs' claims regarding the NPL Project are set forth in the Seventh Claim and that claim can readily be severed from the rest of the case.

Accordingly, the claim challenging the NPL Project is legally and factually distinct and should be severed and transferred. *See Salazar II*, 2010 WL 375003, at *3.[6]

B.      The NPL Project Claim Should Be Transferred to the District of Wyoming

The NPL Project Claim should be transferred to the District of Wyoming where the project is located and where the BLM officials who approved the project are located.

1.      Plaintiffs' Choice of Forum is Not Entitled to Deference Because the Only Tie to this District is Plaintiffs' Residence

Plaintiffs' primary argument against transfer is that Western Watersheds resides in this district and therefore their choice of forum is entitled to deference. *See* Pls. Opp. at 15. But this choice is not entitled to deference where the events given rise to the claim occurred entirely outside of the district. *See* Def. Mem. at 19-20. Plaintiffs simply ignore the numerous cases we cited for that proposition. *See*, *e.g.*, *Sierra Club v. U.S. Def. Energy Support Ctr.*, No. C 10-2673 JSW, 2011 WL 89644, at *2 (N.D. Cal. Jan. 11, 2011) (transferring the case and noting that "Plaintiff's choice of forum is given little weight" because the action had no connection to the forum). Plaintiffs' residence alone is an insufficient basis on which to avoid transfer.

Plaintiffs also assert that the District of Idaho "has an interest in the subject matter of this case." Pls. Opp. at 16. But merely because the District of Idaho has handled cases involving sage grouse and energy resources in the past does not mean that this district is somehow especially qualified to handle such claims or that such an interest by this district would render venue rules superfluous. Plaintiffs also seem to suggest that the NPL Project was the subject of litigation in this district six years ago, *see id.*, but it was not. The NPL Project was mentioned in the context of remedy proceedings regarding challenges to resource management plans, but the

---

[6] Plaintiffs rely on *Montana Wildlife Federation v. Zinke*, No. CV-18-69-GF-BMM, 2018 WL 5810502 (D. Mont. Nov. 6, 2018), but that case involves only claims relating to national policies and oil and gas lease sales, not a discrete development project in another district.

Defendants' Reply in Supp. of Motion to Dismiss or, In the Alternative,
to Sever and Transfer, Plaintiffs' Claims Challenging the Normally Pressured Lance Project     8

project was not the subject of the proceedings and the Court ordered no relief relating to the NPL Project.  *See W. Watersheds Project v. Salazar*, No. 4:08-CV-516-BLW, 2012 WL 5880658, at *6 (D. Idaho Nov 20, 2012).

## 2. The Interest of Justice Strongly Favors Transfer to Wyoming

The interest of justice is promoted when cases are heard in the geographic regions that are impacted by the challenged action and any court decision regarding that action.  *See* Def. Mem. at 14-17.  Plaintiffs do not dispute that principle.  Nor do they dispute that the NPL Project was approved after a seven-year process that occurred primarily in Wyoming with the input of the State of Wyoming, Wyoming counties, and other stakeholders in Wyoming, and that it was approved by BLM's Wyoming State Director.  *See id.* at 16.  Instead, they argue that the issues presented by the current motion are no different than the issues presented by Defendants' prior transfer motion.  They are wrong.

In the current motion, Defendants seek to transfer a claim regarding BLM's approval of a discrete oil and gas development project, where the State of Wyoming has a significant interest in the royalties and ad valorem taxes associated with oil and gas production from the project. Unlike Plaintiffs' other claims, the NPL Project claim is not a claim about a national policy or oil and gas leasing decisions that followed those national policies; rather, it is a challenge to a specific project involving the development of existing leases.  In its ruling on the prior transfer motion, the Court accepted Plaintiffs' arguments that the oil and gas leasing decisions at issue in this case flowed directly from BLM's national policies regarding the procedures for oil and gas leasing and the prioritization of sage grouse habitat for oil and gas leasing.  *See* Mem. Decision and Order at 11.  But the same reasoning cannot be applied to a decision regarding a discrete

project that was in the planning stages for five years under the prior administration, well before the creation of the new national policies that are at issue in this lawsuit.

The State of Wyoming and several Wyoming counties were actively involved in the planning process, and numerous entities and individuals in Wyoming provided input during the public comment period. *See* Def. Mem. at 2, 16. This process has included extensive consultation among federal and state wildlife agencies and environmental groups in Wyoming regarding impacts to sage grouse habitat and mitigation to avoid such impacts. *See* Declaration of Paul Ulrich ¶¶ 30-36 (ECF No. 96-2). In light of these local efforts, Plaintiffs' assertion that the NPL Project decision was directed by national policy rings hollow. Therefore, the case should be transferred to the district that will be most impacted by the challenged action and the litigation surrounding it. *See Lueders*, 2014 WL 12788740, at *5-6.

### 3. The Convenience of the Parties and Witnesses Favors Transfer

This district is not more convenient than the District of Wyoming. While it may be more convenient for Plaintiffs, it is not more convenient for Defendants based on the location of the relevant BLM field offices and staff in Wyoming. *See* Def. Mem. at 17-18. Plaintiffs argue that the cost of witnesses attending hearings would likely be similar given the location of the NPL Project. *See* Pls. Opp. at 20. Even if that is true, Plaintiffs ignore the fact that some witnesses in Wyoming maybe outside the subpoena authority of this district. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (the ability to compel witness attendance is a convenience factor). Accordingly, convenience does not weigh against transfer.

### CONCLUSION

Accordingly, Plaintiffs' Seventh Claim for Relief regarding the NPL Project should be dismissed for improper venue or, alternatively, transferred to the District of Wyoming.

Respectfully submitted this 20th day of December, 2018,

    BART M. DAVIS, Idaho Bar No. 2696
    United States Attorney

    CHRISTINE G. ENGLAND, California Bar No. 261501
    Assistant United States Attorney
    District of Idaho
    Washington Group Plaza IV
    800 East Park Boulevard, Suite 600
    Boise, Id 83712-7788
    Telephone: (208) 334-1211
    Facsimile:   (208) 334-1414
    E-mail: Christine.England@usdoj.gov

    JEAN E. WILLIAMS
    Deputy Assistant Attorney General

    JOHN S. MOST, Virginia Bar No. 27176
    U.S. Department of Justice
    Environment and Natural Resources Division
    Natural Resources Section
    P.O. Box 7611
    Washington, DC 20044
    Tel: (202) 724-7386; Fax: (202) 526-6665
    E-mail: John.Most@usdoj.gov

    LUTHER L. HAJEK, Colorado Bar No. 44303
    U.S. Department of Justice
    Environment and Natural Resources Division
    Natural Resources Section
    999 18th Street
    South Terrace, Suite 370
    Denver, CO 80202
    Tel: (303) 844-1376; Fax: (303) 844-1350
    E-mail: Luke.Hajek@usdoj.gov

    *Counsel for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of December, 2018, I filed a copy of the foregoing Defendants' Reply in Support of Motion to Dismiss for Improper Venue or, In the Alternative, to Sever and Transfer, Plaintiffs' Claims Challenging the Normally Pressured Lance Project electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

<u>Attorneys for Plaintiffs Western Watersheds Project and Center for Biological Diversity</u>

Laurence J. Lucas
llucas@advocateswest.org

Sarah Stellberg
sstellberg@advocateswest.org

Talasi B. Brooks
tbrooks@advocateswest.org

Todd C. Tucci
ttucci@advocateswest.org

<u>Counsel for Intervenor-Defendant State of Wyoming</u>

Erik Edward Petersen
erik.petersen@wyo.gov

Michael M. Robinson
mike.robinson@wyo.gov

Paul A. Turcke
pat@msbtlaw.com

<u>Counsel for Intervenor-Defendant Western Energy Alliance</u>

Bret A. Sumner
bsumner@bwenergylaw.com

Michael K. Cross
mcross@bwenergylaw.com

                                                */s/ Luther L. Hajek*
                                                Luther L. Hajek