Laurence J. ("Laird") Lucas (ISB # 4733)
llucas@advocateswest.org
Todd C. Tucci (ISB # 6526)
ttucci@advocateswest.org
Sarah Stellberg (ISB #10538)
sstellberg@advocateswest.org
Advocates for the West
P.O. Box 1612
Boise, ID 83701
(208) 342-7024
(208) 342-8286 (fax)

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| WESTERN WATERSHEDS PROJECT, and CENTER FOR BIOLOGICAL DIVERSITY,<br><br>      Plaintiffs,<br><br>      v.<br><br>DAVID BERNHARDT,* Secretary of Interior, *et al.*,<br><br>      Defendants. | Case No. 1:18-cv-00187-REB<br><br>**OPENING BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (PHASE ONE)** |

*\* Official Defendant automatically substituted per Fed. R. Civ. P. 25(d)*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 2

LEGAL BACKGROUND ........................................................................................................ 4

ARGUMENT ............................................................................................................................ 6

    I.      PLAINTIFFS HAVE STANDING ................................................................. 6

    II.    IM 2018-034 IS PROCEDURALLY AND SUBSTANTIVELY INVALID ............. 7

          A.    BLM Unlawfully Issued IM 2018-034 Without Notice-and-Comment
              Procedures Required Under FLPMA and the APA ........................................... 7

          B.    BLM Unlawfully Issued IM 2018-034 Without the "Diligent Efforts" to
              Involve the Public Required by CEQ's NEPA Regulations ............................. 9

          C.    IM 2018-034 Is Substantively Invalid, as It Improperly Constrains Public
              Participation in BLM Oil and Gas Leasing Decisions ................................... 10

          D.    IM 2018-034 Is Arbitrary and Capricious ..................................................... 12

    III.   THE PHASE ONE LEASE SALES WERE CONDUCTED UNDER IM 2018-
          034 AND UNLAWFULLY RESTRICTED PUBLIC COMMENT ...............…15

    IV.   VACATUR IS THE PROPER REMEDY UNDER THE APA ............................ 19

CONCLUSION ...................................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Amerijet International, Inc. v. Pistole*, 753 F.3d 1343 (D.C. Cir. 2014) ........................ 13, 14

*Appalachian Power Co. v. Environmental Protection Agency*, 208 F.3d 1015 (D.C. Cir. 2000) ...................................................................................................................... 14

*Bering Strait Citizens for Responsible Development v. U.S. Army Corps of Engineers*, 524 F.3d 938 (9th Cir. 2008) ....................................................................................... 12

*California v. Bureau of Land Management*, 277 F. Supp. 3d 1106 (N.D. Cal. 2017).......... 14

*California ex rel. Lockyer v. United States*, 575 F.3d 999 (9th Cir. 2009).......................... 20

*Calvert Cliffs' Coordinating Committee, Inc. v. U.S. Atomic Energy Commission*, 449 F.2d 1109 (D.C. Cir. 1971) ............................................................................................... 14

*Churchill County v. Norton*, 276 F.3d 1060 (9th Cir. 2001) ............................................... 11

*Citizens for Better Forestry v. U.S. Department of Agriculture*, 341 F.3d 961 (9th Cir. 2003) ...................................................................................................................... 12

*Community Advocates for Renewable Energy Stewardship v. U.S. Department of The Interior*, No. 12-CV-1499, 2012 WL 4471562 (S.D. Cal. Sept. 25, 2012) ............ 17

*Federal Communications Commission v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009)....................................................................................................................... 14

*Havens Realty Corporation v. Coleman*, 455 U.S. 363 (1982) ............................................. 7

*Humane Society v. Locke*, 626 F.3d 1040 (9th Cir. 2010) ................................................... 19

*Judulang v. Holder*, 565 U.S. 42 (2011)............................................................................... 13

*Mada-Luna v. Fitzpatrick*, 813 F.2d 1006 (9th Cir. 1987) .................................................... 8

*Michigan v. Environmental Protection Agency*, 135 S. Ct. 2699 (2015) ............................ 14

*Motor Vehicle Manufacturers Association of U.S., Inc. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29 (1983) .......................................................................... 13

*National Association of Home Builders v. Defenders of Wildlife*, 551 U.S. 644 (2007)....... 13

*National Parks Conservation Association v. Bureau of Land Management*, 606 F.3d 1058 (9th Cir. 2010)......................................................................................................... 18

*Natural Resources Defense Council v. Jamison*, 815 F. Supp. 454 (D.D.C. 1992) ............... 9

*Natural Resources Defense Council, Inc. v. Pritzker*, 828 F.3d 1125 (9th Cir. 2016) ......... 11

*Oregon Natural Desert Association v. Zinke*, 250 F. Supp. 3d 773 (D. Or. 2017) ............. 19

*Organized Village of Kake v. U.S. Department of Agriculture*, 795 F.3d 956 (9th Cir. 2015) ................................................................................. 14, 15

*Pacific Gas & Electric Co. v. Federal Power Commission*, 506 F.2d 33 (D.C. Cir. 1974) .... 8

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. U.S. Department of Agriculture*, 499 F.3d 1108 (9th Cir. 2007) .................................... 13

*Robertson v. Methow Valley Citizens Council*, 490 U.S. 332 (1989) ...................................... 4

*Sacora v. Thomas*, 628 F.3d 1059 (9th Cir. 2010) ................................................................. 7

*Turtle Island Restoration Network v. U.S. Department of Commerce*, 672 F.3d 1160 (9th Cir. 2012) ................................................................................. 20

*Western Watersheds Project v. Kraayenbrink*, 632 F.3d 472 (9th Cir. 2011) ........................ 6

*Western Watersheds Project v. Kraayenbrink*, 538 F. Supp. 2d 1302 (D. Idaho 2008) .. 11, 12

*Western Watersheds Project v. Kraayenbrink*, No. 4:05-cv-297, 2006 WL 2348080 (D. Idaho 2006) ................................................................................. 10

**Statutes**

5 U.S.C. § 553 ................................................................................................................. 7

5 U.S.C. § 706 ............................................................................................................... 19

43 U.S.C. §§ 1701 et seq. ............................................................................................... 5

43 U.S.C. § 1702 ........................................................................................................... 10

43 U.S.C. § 1739 ..................................................................................................... 5, 7, 10

43 U.S.C. § 1740 ....................................................................................................... 5, 7

**Regulations**

40 C.F.R. § 1500.1 ................................................................................................... 4, 5, 10

40 C.F.R. § 1500.2 ..................................................................................................... 4, 10

40 C.F.R. § 1501.4 ..................................................................................................... 4, 10

40 C.F.R. § 1506.6 ....................................................................................................... 4, 9

**Other Authorities**

68 Fed. Reg. 33794, 33796 (June 5, 2003) ................................................................................ 12

CEQ, Second Annual Report of the Council on Environmental Quality (Aug. 1971),
https://www.whitehouse.gov/ceq/foia/ (under "Reports") ........................................................... 5

## INTRODUCTION

On September 21, 2018, the Court issued its Preliminary Injunction Order, ECF No. 74, enjoining the Bureau of Land Management (BLM) from conducting oil and gas lease sales in greater sage-grouse habitat under Instruction Memorandum 2018-034, finding that Plaintiffs were likely to succeed on the merits of their claims that IM 2018-034 was unlawfully issued without notice and comment and was contrary to substantive federal law. The Administrative Record filed by the government has provided no new facts or considerations that would justify a different result now. Thus, pursuant to the Court's Case Management Orders, ECF Nos. 105 and 127, Plaintiffs Western Watersheds Project (WWP) and Center for Biological Diversity (CBD) respectfully move the Court to enter "Phase One" summary judgment in their favor on their Fourth and Fifth Claims for Relief in the First Amended Complaint, ECF No. 78, and reverse and set aside IM 2018-034 and June and September 2018 lease sales approved under it.

BLM administers a Federal mineral estate of nearly 700 million acres across the United States. The challenged IM 2018-034 purports to allow BLM, in the name of "energy dominance," to lease these lands for oil and gas fracking and drilling without the public involvement Congress required under both the National Environmental Policy Act (NEPA) and the Federal Land Policy and Management Act (FLPMA). The Trump Administration's open hostility to citizen involvement, designed to further the narrow concerns of regulated industries, cannot be sustained in light of these statutory mandates.

IM 2018-034 was also issued by executive fiat, in violation of the notice-and-comment procedures required under FLPMA and the Administrative Procedure Act (APA). Given BLM's defiance of those procedures—which are designed to ensure deliberative agency decisionmaking—it is unsurprising that the Administrative Record reveals no reasoned

justification for BLM's change in policy, rendering IM 2018-034 arbitrary and capricious.

To remedy these violations of law, Plaintiffs seek an order vacating the challenged provisions of IM 2018-034 and reinstating the corresponding rules previously in effect under IM 2010-117, until BLM lawfully changes these procedures through notice-and-comment rulemaking. Plaintiffs also seek an order vacating the leases and underlying decision documents for the five "Phase One lease sales"—June and September 2018 sales in Nevada, Utah, and Wyoming—in which BLM applied IM 2018-034 to unlawfully constrain public participation.

## FACTUAL BACKGROUND

As the Court accurately characterized it, this case broadly "challenges the Trump Administration's allegedly unlawful actions to promote and expedite oil and gas leasing on public lands (or managed by the United States) that . . . 'will adversely impact essential habitats and populations across the range of the greater sage-grouse . . . and violate bedrock environmental laws," including FLPMA, NEPA and the APA. *See* Memorandum Decision and Order Re: Defendants' Motion to Sever and Transfer, ECF No. 66 at 2 (quoting Compl. ¶ 1).

The Court's September 2018 Preliminary Injunction Order described the background of IM 2018-034 and the changes it made to BLM's prior policies—set forth in IM 2010-117—on public involvement (notice, comment, protest) in proposed oil and gas leases and associated environmental reviews. *See* ECF No. 74 at 4–9. Whereas IM 2010-117 directed that BLM offices "will provide for public participation" and required at least 30-day public comment and protest periods on proposed oil and gas lease sales, in response to the Trump Administration's new "energy dominance" agenda, IM 2018-034 eliminated the prior mandatory requirement for public participation in the NEPA process, removed the requirement for 30-day comment periods, and shortened the protest deadline to 10 days, among other changes. *Id.* Because IM 2018-034

was issued without public notice and comment, and improperly constrained public participation in BLM oil and gas leasing decisions, the Court concluded Plaintiffs were likely to prevail on the merits of their procedural and substantive challenges and faced irreparable harms, warranting interim injunctive relief. *Id.* at 33–42.

Federal Defendants did not appeal the Preliminary Injunction Order; instead they postponed upcoming December 2018 lease sales in sage-grouse habitats to follow the procedures of IM 2010-117. *See* Defs' Notice of Compliance with Preliminary Injunction, ECF No. 83.

On October 17, 2018, Plaintiffs filed their First Amended Complaint to update the challenged "Final Actions," including the five lease sales in sage-grouse habitats that BLM conducted in June and September 2018 under IM 2018-034. *See* ECF No. 78. In December 2018, the Court approved the Case Management Order, providing for this "Phase One" partial summary judgment motion to adjudicate Plaintiffs' challenges to IM 2018-034 and the Phase One lease sales under the Fourth and Fifth Claims for Relief. ECF No. 105.

Defendants filed the Administrative Record for IM 2018-034 and the Phase One lease sales on March 5, ECF No. 121.[1] As set forth in more detail in the accompanying Statement of Facts (SOF), the Administrative Record for IM 2018-034 confirms the facts presented in the preliminary injunction proceedings about how IM 2018-034 was adopted to weaken public participation and environmental review requirements. *See* SOF ¶¶ 1–15. Notably absent from the record is any reasoned justification for these changes, other than to advance the Trump Administration's "energy dominance" agenda. *Id.*

The record also demonstrates that BLM followed IM 2018-034 in conducting the June and September 2018 lease sales in Wyoming, Nevada, and Utah. *See* SOF ¶¶ 16–51. BLM staff

---

[1] Federal Defendants provided a corrected index for the Wyoming records on April 17, 2019. ECF No. 131.

began discussing how IM 2018-034 would impact their schedule just days after its issuance. *Id.* ¶ 21. In an email exchange, BLM staff in Wyoming queried whether they could keep the previously-announced 30-day protest period to avoid prejudicing the public but were instructed by BLM's Washington, D.C. headquarters that "the IM was effective immediately." *Id.*

As detailed further below, BLM followed IM 2018-034 by limiting public notice, shortening comment and protest periods, and selling numerous lease parcels in sage-grouse habitats for all ensuing lease sales, including the Phase One sales here. SOF ¶¶ 16–51.

## LEGAL BACKGROUND

BLM's public participation mandates flow from both NEPA and FLPMA. NEPA is designed to ensure that federal agencies "will have available, and will carefully consider, detailed information concerning significant environmental impacts" of the proposed actions before they occur. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989); 40 C.F.R. § 1500.1(c). NEPA "also guarantees that the relevant information will be made available to the larger [public] audience that may also play a role in both the decisionmaking process and the implementation of that decision." *Robertson,* 490 U.S. at 349; 40 C.F.R. § 1500.1(b); *see also Trustees for Alaska v. Hodel*, 806 F.2d 1378, 1383 (9th Cir. 1986) ("One of the policies of NEPA is to encourage and facilitate public involvement in decisions concerning environmental issues").

CEQ regulations implementing NEPA direct federal agencies to encourage and facilitate public involvement "to the fullest extent possible," 40 C.F.R. § 1500.2, and identify public scrutiny as an "essential" part of the NEPA process, *id.* § 1500.1(b). *See also id.* § 1501.4(b) (Agencies must "involve . . . the public, to the extent practicable"); *id.* § 1506.6 ("Agencies shall: . . . (a) Make diligent efforts to involve the public in preparing and implementing their NEPA procedures"). They

also provide that "NEPA procedures must insure that environmental information is available to . . .

citizens before decisions are made and before actions are taken." *Id.* § 1500.1(b).

In a report to Congress, CEQ expressed that "[t]he ability of citizens and citizen groups to

make their views known and to participate in government decision-making on the environment is

critically important. Often, individuals and groups can contribute data and insights beyond the

expertise of the agency involved. . . . [C]itizen involvement is bound to check, stimulate, and test

future Federal agency activities'" *See* CEQ, Second Annual Report of the Council on

Environmental Quality (Aug. 1971), https://www.whitehouse.gov/ceq/foia/ (under "Reports").

FLPMA similarly requires public participation in BLM's management of public lands.

*See* 43 U.S.C. §§ 1701 *et seq.* FLPMA requires that BLM Resource Management Plans (RMPs)

be developed with public input. *See* 43 U.S.C. § 1712(a) (Secretary "shall, with public

involvement . . . develop, maintain, and, when appropriate, revise land use plans which provide

by tracts or areas for the use of the public lands"). FLPMA Section 309(e) separately requires

public participation in BLM land management decisions implementing such RMPs. *See* 43

U.S.C. § 1739(e). It provides:

> In exercising his authorities under this Act, the Secretary, by regulation, shall establish procedures . . . to give the Federal, State, and local governments and the public adequate notice and an opportunity to comment upon the formulation of standards and criteria for, and to participate in, the preparation and execution of plans and programs for, and the management of, the public lands.

*Id*. FLPMA Section 310 further directs BLM to follow APA procedures in promulgating such

procedures. *See* 43 U.S.C. § 1740. FLPMA Section 102 reiterates that "it is the policy of the

United States that [the Secretary of Interior] be required to establish comprehensive rules and

regulations after considering the views of the general public[.]" 43 U.S.C. § 1701(a).

## ARGUMENT

## I.   PLAINTIFFS HAVE STANDING

The Court has already found that Plaintiffs have standing to challenge IM 2018-034, *see* PI Order, ECF No. 74, and the supplemental declarations filed herewith further support Plaintiffs' standing, *see* Supp. Molvar Decl.; Donnelly Decl.; McKinnon Decl.; Ratner Decl.; Ruprecht Decl. Plaintiffs and their members have suffered and will continue to suffer procedural injuries—namely, the denial of their right to meaningfully participate in BLM's leasing decisions. These injuries threaten their concrete interests in recreating and otherwise enjoying BLM public lands, as established by the numerous declarations from WWP and CBD members. These individuals extensively utilize and intend to return to public lands leased for oil and gas development under IM 2018-034, including through the five sales challenged here. *See* Molvar Decl. ¶¶ 47, 49, 50, ECF No. 30-3 (NV, WY); Supp. Molvar Decl. (same); Cunningham Decl. ¶¶ 12–22, ECF No. 30-5 (NV); Supp. Saul Decl. ¶¶ 12–16, ECF No. 63-2 (NV); Ratner Decl. ¶¶ 13–21 (UT, WY); Ruprecht Decl. ¶¶ 13–31 (NV); Donnelly Decl. ¶¶ 7–12 (NV); McKinnon Decl. ¶¶ 9–11 (UT). As for causation and redressability, the declarations also establish that the relief requested may influence BLM's leasing decisions and compel BLM to defer certain parcels or attach more protective stipulations in response to additional public comments. This is sufficient to confer associational standing to sue on behalf of Plaintiffs' members. *See W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 486 (9th Cir. 2011).

Plaintiffs' declarants also discuss in detail how the Plaintiff organizations are directly harmed by BLM's implementation of IM 2018-034, including by having to devote more of their limited organizational resources in response to the abbreviated comment and protest periods, draining resources available for their other programs. *See, e.g.*, Fuller Decl. ¶¶ 37–52, ECF No.

30-4; Supp. Fuller Decl. ¶¶ 17–19, ECF No. 63-1; Saul Decl. ¶¶ 21–46; Supp. Saul Decl. ¶ 11;

Molvar Decl. ¶¶ 4–34, 52. These harms are also sufficient to demonstrate standing. *See Havens*

*Realty Corporation v. Coleman*, 455 U.S. 363, 379 (1982) (organization's impaired ability to

provide counseling services constituted injury-in-fact, "far more than simply a setback to the

organization's abstract social interests").

## II.   IM 2018-034 IS PROCEDURALLY AND SUBSTANTIVELY INVALID

### A.   BLM Unlawfully Issued IM 2018-034 Without Notice-and-Comment Procedures Required Under FLPMA and the APA

As this Court previously held, Defendants promulgated IM 2018-034 without adhering to

mandatory notice-and-comment procedures required under FLPMA and the APA.

FLMPA Section 309(e) requires BLM to allow opportunities for public participation in

its management decisions, and to structure this public involvement by notice-and-comment

rulemaking. *See* 43 U.S.C. §§ 1739(e), 1740. Under the APA, an agency must use notice-and-

comment procedures to make any "rule," subject to limited exceptions. 5 U.S.C. § 553. IM 2018-

034 undoubtedly falls within the scope of FLPMA Section 309, because it establishes procedures

for public participation in oil and gas leasing on BLM-administered lands. It also constitutes a

substantive "rule" to which APA notice-and-comment procedures apply, not a mere "general

statement of policy" as Federal Defendants assert.

"The critical factor" in determining whether a directive constitutes a policy statement "is

the extent to which the challenged [directive] leaves the agency, or its implementing official[,]

free to exercise discretion to follow, or not to follow, the [announced] policy in an individual

case." *Sacora v. Thomas*, 628 F.3d 1059, 1069 (9th Cir. 2010) (citations omitted; alterations in

original). Thus, to qualify as a statement of policy, a directive must "not establish a binding

norm," or be "finally determinative of the issues or rights to which [it] address[es]," but instead

leave officials "free to consider the individual facts in the various cases that arise." *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1014 (9th Cir. 1987) (citations omitted).

As this Court already articulated, IM 2018-023 is a substantive rule, as it is both written in binding terms and treated as binding in the field. *See* PI Order at 34; *see also* SOF ¶¶ 16-51. The four provisions challenged here are definitive on the issues they address: that BLM must complete the parcel review process in six months, need not involve the public in every lease sale, and must provide a protest period of 10 days. *See, e.g.*, IM 2018-034, BLMW828–32 at § III.A ("The timeframe for parcel review for a specific lease sale *is to be* no longer than 6 months"); *id.* § IV.B ("A 10-day public protest period *will* begin the day the sale notice is posted"); *id.* at "Implementation Timeframe" ("This policy is effective immediately" and "will guide leasing procedures for all current and future parcels under review by the field offices as of the date of this IM"); *id.* n.1 ("This policy will be implemented across the BLM as described"). This language is not merely "tentative" but rather "finally determinative of the issues or rights to which it is addressed." *Pacific Gas & Elec. Co. v. Fed. Power Comm'n*, 506 F.2d 33, 48 (D.C. Cir. 1974).

Importantly, BLM officials do not retain the kind of discretion necessary to fall under the "statement of policy" exception—that is, discretion to act at variance with IM 2018-034 in an individual case. *Mada-Luna*, 813 F.2d at 1013 (policy statement must leave implementing officials discretion "not to follow[] the [announced] policy in an individual case") (alteration in original); *Pac. Gas & Elec. Co. v. Fed. Power Comm'n*, 506 F.2d 33, 48 (D.C. Cir. 1974) (agency must state that it will "thoroughly consider not only the policy's applicability to the facts of a given case but also the underlying validity of the policy itself" to qualify for the policy statement exception).

The Administrative Record confirms that BLM field offices immediately applied the IM after it was issued until the Court issued the PI Order. *See* SOF ¶¶ 16-21, 29; *see also* Supp. Fuller Decl. ¶¶ 8–11; Supp. Saul Decl. ¶¶ 7–9; Wells Decl. ¶ 3.  Indeed, because the PI Order was limited to sage-grouse habitats, BLM has continued to follow IM 2018-034 in other lease sales even after the injunction issued.[2] Such regular application of the standards in a purported guidance document confirms its binding character. *See Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1023 (D.C. Cir. 2000) ("If an agency acts as if a document issued at headquarters is controlling in the field . . . then [it] is for all practical purposes 'binding'").

In sum, IM 2018-034 is far more than merely a policy statement. It prescribes a new regime governing BLM's leasing process, and as such, should have been issued through APA notice-and-comment procedures. Because Defendants did not undertake such procedures, IM 2018-034 is procedurally invalid, as the Court previously explained in granting the injunction. PI Order at 33–35; *accord Nat. Res. Def. Council v. Jamison*, 815 F. Supp. 454 (D.D.C. 1992).[3]

B.   BLM Unlawfully Issued IM 2018-034 Without the "Diligent Efforts" to Involve the Public Required by CEQ's NEPA Regulations.

BLM's issuance of IM 2018-034 also violated its obligation to "make diligent efforts to involve the public in preparing . . . [its] NEPA procedures." 40 C.F.R. § 1506.6. Here, BLM used IM 2018-034 to revise its NEPA procedures for oil and gas leasing, without publishing the

---

[2] As just two examples, the June 2019 Utah sale allowed only a 15-day comment period and 10-day protest period; the March 2019 New Mexico lease sale offered only a 15-day scoping period, during which time BLM disclosed only a parcel list, and a 10-day protest period. *See* https://eplanning.blm.gov/epl-front-office/eplanning/planAndProjectSite.do?methodName=dispatchToPatternPage&currentPageId=178500; https://eplanning.blm.gov/epl-front-office/eplanning/planAndProjectSite.do?methodName=dispatchToPatternPage&currentPageId=170868

[3] For similar reasons, IM 2018-034 constitutes a "final agency action" under *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997), as this Court previously held. *See* PI Order at 19–26.

proposed changes in the Federal Register for public comment or otherwise seeking public

participation. This compounds its FLPMA violations and again demonstrates that the issuance of

IM 2018-034 was procedurally improper.

C.     IM 2018-034 is Substantively Invalid, as it Improperly Constrains Public
       Participation in BLM Oil and Gas Leasing Decisions

The PI Order held that Plaintiffs were likely to succeed on the merits of their claims that

Federal Defendants violated FLPMA and NEPA by applying IM 2018-034 to exclude or sharply

limit public participation in BLM oil and gas leasing decisions. The Administrative Record only

strengthens Plaintiffs' case on the merits.

As quoted above, FLPMA Section 309(e) requires BLM to "give . . . the public adequate

notice and an opportunity to comment upon the formulation of standards and criteria for, and to

participate in, the preparation and execution of plans and programs for, and the management of,

the public lands." 43 U.S.C. § 1739(e). FLMPA Section 103 defines "public involvement" as

"the opportunity for participation by affected citizens in rule making, decision making, and

planning with respect to the public lands, including public meetings or hearings held at locations

near the affected lands, or advisory mechanisms, or such other procedures as may be necessary

to provide public comment in a particular instance." 43 U.S.C. § 1702(d). As Judge Winmill

previously explained, these provisions require public involvement in BLM management

decisions, such as permit or lease issuances. *See W. Watersheds Project v. Kraayenbrink*, No.

4:05-cv-297, 2006 WL 2348080, at *7 (D. Idaho 2006).

CEQ's NEPA regulations also direct federal agencies to encourage and facilitate public

involvement "to the fullest extent possible," 40 C.F.R. § 1500.2; *see also id.* § 1501.4(b)

(agencies must "involve . . . the public, to the extent practicable"). They also provide that

"NEPA procedures must insure that environmental information is available to public officials

and citizens before decisions are made[.]" 40 C.F.R. § 1500.1(b). The Ninth Circuit has

admonished that courts must "strictly interpret the procedural requirements in NEPA . . . 'to the

fullest extent possible' consistent with the policies embodied in NEPA. '[G]rudging, pro forma

compliance will not do.'" *Churchill Cty. v. Norton*, 276 F.3d 1060, 1072 (9th Cir. 2001), opinion

amended, 282 F.3d 1055 (9th Cir. 2002) (final alteration in original) (citation omitted).

IM 2018-034 violates these mandates, for several reasons. First, as this Court previously

found, "it strains common sense" to say that IM 2018-034 provides for public participation "'to

the fullest extent possible' and 'to the extent practicable,' when it is dramatically more

restrictive" than the procedures under IM 2010-117 it replaced. PI Order at 37. "Practicable"

means that something is capable of being done. *See Nat. Res. Def. Council, Inc. v. Pritzker*, 828

F.3d 1125, 1134 (9th Cir. 2016) (quoting Oxford's English and Merriam–Webster Dictionaries).

In issuing IM 2018-034, BLM did not claim that it was no longer "practicable" or "possible" to

provide 30-day comment and protest periods in all lease sales, nor is there any record evidence

that would have supported such a finding. This also renders the decision arbitrary and capricious.

Second, as this Court also previously found, IM 2018-034 attempts to grant BLM

officials impermissible discretion in determining whether to involve the public in oil and gas

leasing decisions, by removing the term "will" and replacing it with a "may." PI Order at 38

(comparing IM 2010-117 § III.C.7 with IM 2018-034 § III.B.5). Discretionary public

participation opportunities are not consistent with FLPMA and NEPA. *Id.* (citing *W. Watersheds

Project v. Kraayenbrink*, 538 F. Supp. 2d 1302, 1315-16 (D. Idaho 2008)). IM 2018-034's

aggressive 6-month time-frame for parcel review also forces staff to cut down on the length of

comment periods, even where they are provided. *See* Fuller Decl. ¶¶ 8–10 (describing telephone

calls with BLM staff from 3 states who explained that IM 2018-034's expedited timeframe was forcing changes to their timelines for public involvement).

Third, for leases issued through a DNA, IM 2018-034 goes further to declare that public comment is not required.  "A complete failure to involve" the public in the environmental review process in this way violates NEPA. *See Citizens for Better Forestry v. U.S. Dept. Agric.*, 341 F.3d 961, 970 (9th Cir. 2003); *see also Bering Strait Citizens for Responsible Res. Dev. v. U.S. Army Corps of Eng'rs*, 524 F.3d 938, 953 (9th Cir. 2008) ("[a]gencies must give the public an adequate pre-decisional opportunity to participate in and inform the agency's NEPA analysis and decision-making process.").

Finally, the adversarial protest process—now abbreviated to just a 10-day period, SOF ¶ 13—is not a substitute for pre-decisional comment periods required under NEPA and FLPMA. Protests and administrative appeals occur late in the decisionmaking process and ask the agency to reconsider a decision already made, which diminishes the value of such input. *Accord Kraayenbrink*, 538 F. Supp. 2d at 1309 (holding that BLM violated FLPMA and NEPA, in part, by "cut[ting] [the interested public] out of the discussions between the BLM and the ranchers *at the formation stage of decisions*"); *see also* 68 Fed. Reg. 33794, 33796 (June 5, 2003) ("The appeal process is not part of the public participation required by Section 309(e) of FLPMA").

For all these reasons, IM 2018-034's constraints on public participation in BLM oil and gas leasing decisions violate FLPMA and NEPA.

D.    IM 2018-034 Is Arbitrary and Capricious

Finally, IM 2018-034 must be vacated because it is not the product of reasoned decisionmaking. Agency action is arbitrary and capricious when the agency has "[1] relied on factors which Congress has not intended it to consider, [2] entirely failed to consider an

important aspect of the problem, [3] offered an explanation for its decision that runs counter to the evidence before the agency, or [4] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1115 (9th Cir. 2007) (quotations omitted). An agency also breaches that duty when it fails to "cogently explain why it has exercised its discretion in a given manner." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 48–49 (1983). These standards accord some deference to the agency, but the reviewing court retains a critical role in "ensuring that [the] agenc[y] [has] engaged in reasoned decisionmaking." *Judulang v. Holder*, 565 U.S. 42, 53 (2011). The court's analysis is limited to the rationale presented in the administrative record. *See National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 683–84 (2007).

BLM not only failed to articulate a reasonable explanation for IM 2018-034, it failed to provide *any* explanation. The record reveals no contemporaneous analysis by BLM that would explain or justify its determination that longer comment and protest periods were not "practicable" or "possible," or even a record of how IM 2018-034 was developed. *See* SOF ¶¶ 9-11. This violates the fundamental requirement that an agency must actually "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicles Mfrs.*, 463 U.S. at 43.

Insofar as the "Purpose" statement in IM 2018-034 might be generously read as an explanation, this too is insufficient. *See* SOF ¶ 9-11. The Administrative Record is devoid of any data or evidence to support BLM's statement that the 30-day comment and protest periods it formerly provided were "unnecessary." *Id.* Common sense and experience suggest that pre-decisional comment periods, and timeframes longer than 10 to 15 days, are necessary for

meaningful public engagement. BLM's conclusory and unsupported statement to the contrary

fails to provide the type of reasoned explanation required under the APA. *See, e.g.*, *Amerijet*

*Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) ("conclusory statements will not do;

an agency's statement must be one of reasoning").

The Administrative Record also reveals that BLM's sole consideration in issuing IM

2018-034 was its desire to make it faster and easier for industry to get leases. *See* SOF ¶¶ 5–15.

There is no record evidence that BLM considered other "important aspects of the problem"—

namely, burdens on the commenting public, impacts to the quality of its decisionmaking, or other

competing environmental and public interest mandates under NEPA and FLPMA. BLM's failure

to consider these trade-offs renders IM 2018-034 arbitrary and capricious. *See Michigan v. EPA*,

135 S. Ct. 2699, 2707 (2015) ("reasonable regulation ordinarily requires paying attention to the

advantages and the disadvantages of agency decisions"); *California v. Bureau of Land Mgmt.*,

277 F. Supp. 3d 1106, 1122 (N.D. Cal. 2017) (BLM arbitrary and capricious where it "only took

into account the costs to the oil and gas industry of complying with [the prior administration's

rule] and completely ignored the benefits"). A decision based only on a desire to expedite oil and

gas leasing is also contrary to FLPMA and NEPA, which reflect a conscious decision by

Congress to require public participation regardless of its costs. *See Calvert Cliffs' Coordinating*

*Comm., Inc. v. U. S. Atomic Energy Comm'n*, 449 F.2d 1109, 1118–19 (D.C. Cir. 1971) ("[A]ll

of the NEPA procedures take time. Such administrative costs are not enough to undercut the

Act's requirement that environmental protection be considered 'to the fullest extent possible'").

Finally, IM 2018-034 fails to comply with the APA standard for a policy change. Where

an agency changes its existing policy, it must provide "a reasoned explanation . . . for

disregarding facts and circumstances that underlay or were engendered by the prior policy[.]"

*See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *see also Organized Village of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 966 (9th Cir. 2015). In adopting its prior lease review procedures under IM 2010-117, BLM determined that longer timeframes and public comment periods were necessary to "ensure that the parcel review process is efficient, yet allows adequate time for a thorough and complete review," to "ensure there is adequate time for the field offices to conduct comprehensive parcel reviews," and to provide for "meaningful public involvement." *See* SOF ¶¶ 1-4. In 2018, "[o]n precisely the same record," *Kake.*, 795 F.3d at 967, BLM claimed without explanation that its former timeframes for public participation and lease review were "unnecessary." SOF ¶¶ 9-11. BLM cited no changed circumstances or evidence that would justify that finding. Nor does the Administrative Record fill that void. *Id.* That, too, compels vacatur. *See Kake,* 795 F.3d at 969 ("The absence of a reasoned explanation for disregarding previous factual findings violates the APA"); *see also California*, 277 F. Supp. 3d at 1123 ("New presidential administrations are entitled to change policy positions, but to meet the requirements of the APA they must give reasoned explanations for those changes").

In summary, there is no dispute about the facts here: BLM jettisoned its prior procedures for involving the public and reduced or eliminated timeframes for public involvement in oil and gas leasing decisions, without any notice-and-comment rulemaking or reasoned explanation, and in violation of the public involvement commands of FLPMA and NEPA. The Court should thus affirm its Preliminary Injunction rulings, grant summary judgment for Plaintiffs on their Fourth and Fifth Claims, hold IM 2018-034 to be unlawful, and vacate and set it aside.

## III.   THE PHASE ONE LEASE SALES WERE CONDUCTED UNDER IM 2018-034 AND UNLAWFULLY RESTRICTED PUBLIC COMMENT

As noted above, BLM field offices began applying IM 2018-034 immediately after it was issued, and unlawfully constrained public involvement in the Phase One lease sales in June and

September 2018, before this Court issued its Preliminary Injunction. SOF ¶¶ 16-51. Because those lease sales applied IM 2018-034 in unlawfully restricting input from Plaintiffs and the public, the Court must reverse and vacate them as well.[4]

As set forth in more detail in the SOF and above, the lease approvals were made partially or completely under IM 2018-034, such that public involvement in these sales was severely constrained. SOF ¶¶ 16-51. For example, under IM 2018-034, BLM relied on two "Determinations of NEPA Adequacy" (DNAs) to approve the leasing of 144 parcels in its September 2018 Nevada lease sale. *Id.* ¶¶ 33-37. The public received no opportunity to comment on these DNAs and BLM did not disclose them to the public until issuing a Lease Sale Notice on July 27, 2018, which immediately commenced a 10-day protest period. This provided the public with only seven business days and two cursory six-page documents to evaluate the consequences of fracking and drilling on nearly 300,000 acres of Nevada lands across hundreds of square miles, including greater sage-grouse habitat. *Id.* This protest period also coincided with a simultaneous protest period for the September lease sale in Utah. *Id.*

The September 2018 Wyoming sale, which involved 350 parcels totaling approximately 355,819 acres—including approximately 210,000 acres of greater sage-grouse Core Areas—was approved under three separate EAs. SOF ¶¶ 16-27. BLM issued the first two of these EAs, covering 124 parcels, in January 2018 following its IM 2010-117 procedures. However, on May 24, 2018—specifically citing the requirements of IM 2018-034—BLM issued a third EA for an additional 287,000 acres scattered across the entire State of Wyoming. *Id.* BLM provided the

---

[4] Plaintiffs also challenge these sales under their First, Second, and Third Claims for Relief. *See* First Amended Compl. ¶¶ 276–317, ECF No. 78.  However, because the sales unlawfully implemented IM 2018-034 and thus should be reversed through this Phase One summary judgment motion, the Court need not address those additional claims here.

public with only 10 business days to map and evaluate resource values and proposed stipulations for these parcels, which included sage-grouse, mule deer, and pronghorn habitat across multiple regions of Wyoming, from the Red Desert to the Powder River Basin. *Id.*

The September 2018 Utah sale, which involved 109 parcels totaling some 204,172 acres—including 26,000 acres of greater sage-grouse habitat—was issued under three separate EAs. SOF ¶¶ 38-42. BLM released only two of the draft EAs for public comment, giving the public only a cursory list of parcels and stipulations for the third batch of parcels. These comment periods for these EAs ran simultaneously for a period of only 11 business days. *Id*

Finally, the comment periods for the June 2018 sales in Wyoming and Nevada predated IM 2018-034, and thus ran for 30 days, but BLM allowed only 10-day protest periods for each sale in compliance with IM 2018-034. SOF ¶¶ 16-32. These abbreviated protest periods, like the shorter comment periods, imposed burdens on Plaintiffs to hurriedly review and critique the Final EAs for these lease sales, including BLM's responses to their prior comments. *Id.* By shortening the protest period from 30 days to just 10 days, BLM erected an additional barrier to judicial review of these leasing decisions. Under the administrative exhaustion doctrine, the failure to timely protest within this 10-day window could prevent a party from challenging that lease sale in federal court. *See, e.g.*, *Cmty. Advocates for Renewable Energy Stewardship v. U.S. Dep't of The Interior*, No. 12-CV-1499, 2012 WL 4471562, at *1 (S.D. Cal. Sept. 25, 2012) (dismissing suit due to Plaintiff's failure to administratively protest BLM's approval of a wind project).[5] Moreover, under the issue exhaustion doctrine, issues not sufficiently raised during the

---

[5] Plaintiffs do not concur in the holding of this case but cite it to illustrate how adverse consequences can flow from a failure to protest a BLM decision. *See also generally* B. Clark and A. Leiter, Regulatory Hide and Seek: What Agencies Can (and Can't) Do to Limit Judicial Review, 52 B.C.L. Rev. 1687 (2011) (discussing agencies' role in curtailing judicial oversight).

protest period might be deemed waived during subsequent litigation. *See Nat'l Parks Cons. Ass'n v. Bureau of Land Mgmt.*, 606 F.3d 1058 (9th Cir. 2010).

Each of the Phase One leasing decisions violates BLM's public involvement obligations under NEPA and FLPMA. It defies reason to suggest that these sales involved the public "to the fullest extent possible" and "to the extent practicable" when they were far more restrictive than the process under IM 2010-117 that BLM offices implemented only months prior.

Federal Defendants and Intervenors will likely note that some form of public participation existed with respect to each of these five sales, and that Plaintiffs were able to comment, despite additional hardships. However, as Plaintiffs' staff explain, the shortened comment and protest periods reduced the quality of their participation in these sales, depriving BLM of the full benefit of their input and creating a risk that environmental effects were overlooked or underestimated. *See, e.g.*, Fuller Decl. ¶¶ 45–48, 54, 56–58. And the fact that Plaintiffs managed to submit comments within the abbreviated deadlines does not mean all interested citizens and organizations had the information, energy, and resources required to participate, especially in light of the overlapping deadlines and immense scale of these auctions. The accompanying declarations provide just a few examples of the hardships BLM's new procedures have placed upon local community groups, in particular. *See* Baker Decl. ¶¶ 34–44, ECF No. 30-6; Emmerich Decl. ¶¶ 15–25, ECF No. 30-7; Harrison Decl. ¶¶ 10–15, ECF No. 30-8; Kuyper Decl. ¶¶ 10–20, ECF No. 30-9.

In sum, BLM's processes for these five challenged lease sales violated its obligation under CEQ regulations to ensure public involvement "to the greatest extent possible" and similar mandates under FLPMA, rendering the sales unlawful.

## IV.     VACATUR IS THE PROPER REMEDY UNDER THE APA

Plaintiffs request that the Court vacate the challenged provisions of IM 2018-034 and the leases unlawfully issued in reliance on that IM. Specifically, Plaintiffs seek vacatur of the following provisions of IM 2018-034, and to restore the status quo ante through an order directing BLM to follow the procedures under IM 2010-117 until it completes a proper notice-and-comment rulemaking to govern its lease review process:

> (a) Vacate IM 2018-034, Section III.B.5 - "Public Participation" and reinstate IM 2010-117, Section III.C.7 - "Public Participation";

> (b) Vacate IM 2018-034, Section III.D - "NEPA Compliance Documentation" and reinstate IM 2010-117, Section III.E - "NEPA Compliance Documentation";

> (c) Vacate IM 2018-034, Section IV.B - "Lease Sale Parcel Protests" and reinstate IM 2010-117, Section III.H - "Lease Sale Parcel Protests"; and

> (d) Vacate IM 2018-034: Section III.A - "Parcel Review Timeframes" and reinstate IM 2010-117, Section III.A- "Parcel Review Timeframes."

Vacatur is the presumptive remedy when a court finds an agency's decision unlawful under the APA. *See* 5 U.S.C. § 706(2)(A) ("The reviewing court *shall* hold unlawful and *set aside* agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]") (emphasis added). Courts in the Ninth Circuit decline to vacate unlawful agency actions only in rare circumstances. *See Humane Soc'y v. Locke*, 626 F.3d 1040, 1053 n.7 (9th Cir. 2010) ("In rare circumstances, when we deem it advisable that the agency action remain in force until the action can be reconsidered or replaced, we will remand without vacating the agency's action"). The burden thus is on the defendant agency to show that compelling equities demand anything less than vacatur. *See Or. Nat. Desert Ass'n v. Zinke*, 250 F. Supp. 3d 773 (D. Or. 2017) (agency failed to sustain its burden of showing why default APA remedy of vacatur was not appropriate).

Regulations governing public involvement in BLM's oil and gas leasing process are decades overdue under FLPMA. Thus, Plaintiffs reserve the right to move the Court to compel BLM to undertake a rulemaking process to issue such rules, as required by FLPMA Section 309. In the interim, restoring the status quo ante would protect a baseline level of public involvement in BLM leasing decisions. Indeed, reinstatement of the relevant provisions of IM 2010-117 should "operate[] as a matter of law under the vacatur." *See Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 672 F.3d 1160 (9th Cir. 2012) (*citing Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005) ("The effect of invalidating an agency rule is to reinstate the rule previously in force."). However, it is also within the Court's equitable jurisdiction to impose injunctive relief requiring Federal Defendants to continue applying IM 2010-117's procedures. *See Cal. ex rel. Lockyer v. United States*, 575 F.3d 999, 1019–20 (9th Cir. 2009) (treating an order reinstating a prior rule after a vacatur as an injunction). Such relief is warranted on the same grounds that justified the preliminary injunction.

## CONCLUSION

For these reasons, Plaintiffs respectfully pray that the Court grant this Phase One partial summary judgment motion, enter summary judgment in their favor on their Fourth and Fifth Claims for Relief, and reverse and vacate IM 2018-034 and the five challenged June and September 2018 lease sales.

Dated: April 26, 2019               Respectfully submitted.

                                    /s/  *Sarah K. Stellberg*          .
                                    Sarah Stellberg (ISB #10538)
                                    Laurence ("Laird") J. Lucas (ISB # 4733)
                                    Todd C. Tucci (ISB # 6526)

                                    Attorneys for Plaintiffs