BART M. DAVIS, Idaho Bar No. 2696
United States Attorney

CHRISTINE G. ENGLAND, California Bar No. 261501
Assistant United States Attorney
District of Idaho
Washington Group Plaza IV
800 East Park Boulevard, Suite 600
Boise, Id 83712-7788
Tel: (208) 334-1211; Fax: (208) 334-1414
Email: Christine.England@usdoj.gov

JEFFREY H. WOOD
Acting Assistant Attorney General

JOHN S. MOST, Virginia Bar No. 27176
LUTHER L. HAJEK, Colorado Bar No. 44303
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
999 18th St., South Terrace – Suite 370
Denver, CO 80202
Tel: (303) 844-1376; Fax: (303) 844-1350
E-mail: Luke.Hajek@usdoj.gov

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, *et al.*,<br><br>        Plaintiffs,<br><br>        vs.<br><br>RYAN K. ZINKE, Secretary of the Interior, *et al.*,<br>        Defendants. | Case No. 1:18-cv-00187-REB<br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (PHASE ONE) [ECF No. 135]** |

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 2

    I.      Legal Background ................................................................................ 2

           A.     Federal Land Policy and Management Act ................................ 2

           B.     National Environmental Policy Act ........................................... 3

           C.     Oil and Gas Leasing on Public Lands ....................................... 5

    II.     Factual Background ............................................................................. 7

           A.     BLM's Oil and Gas Leasing Reform Guidance .......................... 7

           B.     Oil and Gas Lease Sales at Issue in Phase One ......................... 9

STANDARDS OF REVIEW ............................................................................. 11

ARGUMENT .................................................................................................... 12

    I.      Plaintiffs' Claims Challenging IM 2018-034 Are Without Merit ....... 12

           A.     The Issue of IM 2018-034 Was Not a Final Agency Action and Therefore It Is Not Reviewable Under the Administrative Procedure Act .......................................................................................... 12

           B.     BLM Was Not Required to Complete a Rulemaking or NEPA Process Before Issuing IM 2018-034 ........................................ 17

           C.     The Procedures in Instruction Memorandum 2018-034 Are Consistent with FLPMA and NEPA ......................................... 20

                1.     Public Participation Under NEPA and FLPMA .......................... 21

                     a.     Public Participation Under NEPA ................................... 21

                     b.     Public Participation Under Section 309(e) of FLPMA ..... 23

                2.     Lease Sale Protests ......................................................... 25

                3.     Parcel Review Timeframes ............................................. 26

            D.     The Issuance of IM 2018-034 Was Not Arbitrary or Capricious ............. 27

E. The Court Lacks the Authority to Reinstate the Provisions of IM 2010-117 ................................................................................... 28

II. Plaintiffs' Challenges to the Application of IM 2018-034 to Oil and Gas Lease Sales Are Without Merit ................................................................. 30

 A. The Wyoming, Nevada, and Utah Lease Sales Complied with NEPA and FLPMA ......................................................................... 30

  1. June 2018 Wyoming and Nevada Lease Sales ............................ 30

  2. September 2018 Wyoming Lease Sale ........................................ 31

  3. September 2018 Nevada Lease Sale ............................................ 32

  4. September 2018 Utah Lease Sale ................................................ 34

 B. If the Court Finds that the Lease Sale Decisions Violated NEPA or FLPMA, It Should Suspend the Leases .................................................. 35

CONCLUSION ................................................................................................ 36

# TABLE OF AUTHORITIES

Cases

*Alaska v. Andrus*,
591 F.2d 537 (9th Cir. 1979) ................................................. 19

*Alliance for the Wild Rockies v. Farnsworth,*
709 F. Appx. 461 (9th Cir. 2018) ........................................ 22

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*,
988 F.2d 146 (9th Cir. 1993) ............................................... 36

*Amigos Bravos v. U.S. Bureau of Land Mgmt.*,
Nos. 6:09-cv-00037-RB-LFG, 2011 WL 7701433 (D.N.M. Aug. 3, 2011) ........................ 7, 16

*Ass'n of Flight Attendants-CWA v. Huerta*,
785 F.3d 710 (D.C. Cir. 2015) ............................................. 15

*Bennett v. Spear*,
520 U.S. 154 (1997) .............................................. 12, 13, 15

*Bering Strait Citizens for Responsible Res. Dev. v. U.S. Army Corps of Eng'rs*,
524 F.3d 938 (9th Cir. 2008) ............................. 4, 21, 22, 32, 34

*Cal. Cmtys. Against Toxics v. U.S. EPA*,
688 F.3d 989 (9th Cir. 2012) ............................................... 35

*California v. U.S. Bureau of Land Management*,
277 F. Supp. 3d 1106 (N.D. Cal. 2017) ................................... 27

*Cheyenne Tribe v. Norton*,
503 F.3d 836 (9th Cir. 2007) ............................................... 36

*Cmty. Advocates for Renewable Energy Stewardship v. U.S. Dep't of the Interior*,
No. 12-CV-1499-WQH-MDD, 2012 WL 4471562 (S.D. Cal. Sept. 25, 2012) ................ 25, 26

*Colo. Envtl. Coal. v. Office of Legacy Mgmt.*,
819 F. Supp. 2d 1193 (D. Colo. 2011) .................................... 36

*Colo. Envtl. Coal. v. Office of Legacy Mgmt.*,
No. 08-CV-01624-WJM-MJW, 2012 WL 628547 (D. Colo. Feb. 27, 2012) ........................ 36

*Columbia Riverkeeper v. U.S. Coast Guard*,
761 F.3d 1084 (9th Cir. 2014) ....................................... 12, 13

*Colwell v. Dep't of Health & Human Servs.*,
558 F.3d 1112 (9th Cir. 2009) ....................................... 14, 17

*Conner v. Burford*,
848 F.2d 1441 (9th Cir. 1988) ............................................. 36

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*,
452 F.3d 798 (D.C. Cir. 2006) ................................................................. 15

*Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*,
No. 3:17-CV-553-LRH-WGC, 2019 WL 236727 (D. Nev. Jan. 15, 2019) ........... 34

*Darby v. Cisneros*,
509 U.S. 137 (1993) ................................................................................ 26

*Earth Island Inst. v. Carlton*,
626 F.3d 462 (9th Cir. 2010) ............................................................. 13, 14

*Earth Island Inst. v. U.S. Forest Serv.*,
351 F.3d 1291 (9th Cir. 2003) .................................................................. 12

*FCC v. Fox Television Stations*,
556 U.S. 502 (2009) ................................................................................ 28

*Friends of Animals v. Haugrud*,
236 F. Supp. 3d 131 (D.D.C. 2017) ............................................................ 33

*Gardner v. U.S. Bureau of Land Mgmt.*,
638 F.3d 1217 (9th Cir. 2011) .................................................................. 29

*Idaho Cmty. Action Network v. U.S. Dep't of Transp.*,
545 F.3d 1147 (9th Cir. 2008) .................................................................. 33

*Idaho Farm Bureau Fed'n v. Babbitt*,
58 F.3d 1392 (9th Cir. 1995) ............................................................. 28, 35

*Indus. Customers of Nw. Utils. v. Bonneville Power Admin.*,
408 F.3d 638 (9th Cir. 2005) .................................................................... 14

*Isaacson v. Horne*,
716 F.3d 1213 (9th Cir. 2013) .................................................................. 20

*Lands Council v. McNair*,
537 F.3d 981 (9th Cir. 2008) .................................................................... 11

*Mada-Luna v. Fitzpatrick*,
813 F.2d 1006 (9th Cir. 1987) .................................................................. 17

*McFarland v. Kempthorne*,
545 F.3d 1106 (9th Cir. 2008) .................................................................. 11

*Mora-Meraz v. Thomas*,
601 F.3d 933 (9th Cir. 2010) .................................................................... 18

*Mt. St. Helens Mining and Recovery Ltd. P'ship v. United States*,
384 F.3d 721 (9th Cir. 2004) .................................................................... 29

*Nat'l Mining Ass'n v. McCarthy*,
 758 F.3d 243 (D.C. Cir. 2014) ................................................................... 15

*Nat'l Parks Conservation Ass'n v. BLM*,
 606 F.3d 1058 (9th Cir. 2010) .................................................................. 31

*Natural Resources Defense Council v. Jamison*,
 815 F. Supp. 454 (D.D.C. 1992) ......................................................... 19, 20

*Norton v. S. Utah Wilderness*,
 All., 542 U.S. 55 (2004) ............................................................................ 2

*Nw. Ecosystem All. v. U.S. Fish & Wildlife Serv.*,
 475 F.3d 1136 (9th Cir. 2007) .................................................................. 11

*Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*,
 18 F.3d 1468 (9th Cir. 1994) .................................................................... 11

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
 465 F.3d 977 (9th Cir. 2006) .................................................................... 12

*Organized Vill. of Kake v. U.S. Dep't of Agric.*,
 795 F.3d 956 (9th Cir. 2015) .............................................................. 27, 28

*Paulsen v. Daniels*,
 413 F.3d 999 (9th Cir. 2005) .................................................................... 29

*Pennaco Energy, Inc. v. U.S. Dep't of Interior*,
 377 F.3d 1147 (10th Cir. 2004) .................................................................. 5

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*,
 499 F.3d 1108 (9th Cir. 2007) .................................................................. 27

*River Runners for Wilderness v. Martin*,
 593 F.3d 1064 (9th Cir. 2010) .................................................................. 11

*Robertson v. Methow Valley Citizens Council*,
 490 U.S. 332 (1989) ................................................................................... 3

*Sacora v. Thomas*,
 628 F.3d 1059 (9th Cir. 2010) .............................................................. 17, 18

*San Juan Citizens' All. v. Babbitt*,
 228 F. Supp. 2d 1224 (D. Colo. 2002) ...................................................... 26

*SEC v. Chenery Corp.*,
 332 U.S. 194 (1947) ................................................................................. 30

*Sierra Club v. Envtl. Prot. Agency*,
 873 F.3d 946 (D.C. Cir. 2017) .................................................................. 15

*Summit Lake Paiute Tribe of Nev. v. U.S. Bureau of Land Mgmt.*,
496 Fed. Appx. 712 (9th Cir. 2012) ................................................................. 23, 33

*United States v. Dang*,
488 F.3d 1135 (9th Cir. 2007) ........................................................................... 21

*United States v. Salerno*,
481 U.S. 739 (1987) ..................................................................................... 20, 21

*Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council*,
435 U.S. 519 (1978) ............................................................................. 29, 30, 31

*W. Oil & Gas Ass'n v. EPA*,
633 F.2d 803 (9th Cir. 1980) ............................................................................ 28

*W. Watersheds Project v. Kraayenbrink*,
538 F. Supp. 2d 1302 (D. Idaho 2008) ........................................................ 24, 32

*Western Energy All. v. Salazar*,
No. 10-cv-237F, 2011 WL 3738240 (D. Wyo. Aug. 12, 2011) ........................... 16

*Wild Rockies v. Farnsworth*,
No. 2:16-cv-433-BLW, 2017 WL 1591840 (D. Idaho May 1, 2017) ......... 22, 26, 32, 34

*Wilderness Ass'n v. Fry*,
408 F. Supp. 2d 1032 (D. Mont. 2006) ............................................................. 36

*Wilderness Soc'y v. U.S. Forest Serv.*,
850 F. Supp. 2d 1144 (D. Idaho 2012) .............................................................. 34

*Winter v. Natural Res. Def. Council*,
555 U.S. 7 (2008) ............................................................................................ 36

Statutes

*Administrative Procedure Act*,
5 U.S.C. § 553(b)(3)(A) .................................................................................... 17

5 U.S.C. § 706(2)(A) ........................................................................................ 11

5 U.S.C. §§ 701-06 ......................................................................................... 11

*Mineral Lands Leasing Act*,
30 U.S.C. § 226 ........................................................................................... 8, 27

30 U.S.C. § 226(b)(1)(A) ................................................................................... 6

30 U.S.C. § 226(f) ......................................................................................... 6, 9

30 U.S.C. § 226(g) ............................................................................................ 7

30 U.S.C. §§ 181–287 ....................................................................................... 5

*National Environmental Policy Act,*
    42 U.S.C. § 4332(2)(C)................................................................................ 3

*Federal Land Policy and Management Act,*
    43 U.S.C. § 1701(a)(1)-(8)......................................................................... 2

    43 U.S.C. § 1712(a) ...................................................................................... 2

    43 U.S.C. § 1739(e) ........................................................................... 3, 23, 32

Regulations

*Council on Environmental Quality,*
    40 C.F.R. § 1500.2 ...................................................................................... 22

    40 C.F.R. § 1501.3 ........................................................................................ 3

    40 C.F.R. § 1501.4(b) ...................................................................... 3, 21, 22

    40 C.F.R. § 1503.1(a)(4) ............................................................................... 3

    40 C.F.R. §§ 1500.1(b) ................................................................................. 3

    40 C.F.R. §§ 1502.20 ................................................................................ 3, 6

*U.S. Department of the Interior,*
    43 C.F.R. § 1601.0-5(n) ............................................................................... 5

    43 C.F.R. § 1601.0-6 ..................................................................................... 5

    43 C.F.R. § 1610.5-3(a) ................................................................................ 6

    43 C.F.R. § 3100.0-3 ..................................................................................... 5

    43 C.F.R. § 3120.1-1 ..................................................................................... 6

    43 C.F.R. § 3120.1-2(a) ................................................................................ 6

    43 C.F.R. § 3120.1-3 ................................................................................... 25

    43 C.F.R. § 3120.2-1 ..................................................................................... 7

    43 C.F.R. § 3120.4-2 .......................................................................... 6, 9, 25

    43 C.F.R. §§ 3120.5-1 ................................................................................... 6

    43 C.F.R. §§ 3100-3180 ........................................................................... 5, 6

    43 C.F.R. § 4.21(b)(1) ................................................................................. 26

    43 C.F.R. § 46 ......................................................................................... 4, 18

    43 C.F.R. § 46.120(c) ............................................................... 4, 6, 23, 24, 32

    43 C.F.R. § 46.300 ........................................................................................ 4

43 C.F.R. § 46.305(a) ................................................................................... 4

46 C.F.R. § 46.305(b) ................................................................................. 22

Federal Register

72 Fed. Reg. 10,308, 10,334 (Mar. 7, 2007)................................................ 7

82 Fed. Reg. 2906, 2914 (Jan. 10, 2017) .................................................... 9

Other Authorities

Executive Order 13783 ................................................................. 8, 9, 27, 28

## INTRODUCTION

The U.S. Bureau of Land Management's ("BLM") issuance of Instruction Memorandum ("IM") 2018-034 was procedurally valid and did not violate the National Environmental Policy Act ("NEPA") or the Federal Land Policy and Management Act ("FLPMA").  There was no need for BLM to go through a lengthy rulemaking process—one that would likely take up to two years—to provide guidance to BLM field offices based on existing statutory and regulatory requirements.  Plaintiffs complain that IM 2018-034 was issued by "executive fiat."  Pls.' Opening Br. in Supp. of Pls.' Mot. for Partial Summ. J. (Phase One) at 1 (ECF No. 135-1) ("Pls. Br.").  But to the extent that is true, the same could be said of Plaintiffs preferred oil and gas leasing procedures in now defunct IM 2010-117.  The irony of this lawsuit is that Plaintiffs complain that BLM bypassed the public notice and comment period of the Administrative Procedure Act ("APA"), but they seek to do the very same thing by having the Court put in place a different set of oil and gas leasing procedures that have never gone through a rulemaking process.  Such a result is prohibited by well-established APA principles.  If the Court finds that the issuance of IM 2018-034 violated APA rulemaking procedures or is otherwise invalid, it may vacate the IM, but it may not order BLM to follow a different procedure of its own, or Plaintiffs', making.

The substantive challenges to IM 2018-034 also are without merit.  Plaintiffs' biggest misconception is that the prior requirements in IM 2010-117 to offer 30-day public comment periods for environmental assessments ("EA") and determinations of NEPA adequacy ("DNA") and to offer a 30-day public protest period are required by statute or BLM regulations—they are not.  By rescinding IM 2010-117, IM 2018-034 restores to BLM field offices the discretion to determine the appropriate level of NEPA compliance and the appropriate length of comment

period for each lease sale.  Contrary to Plaintiffs' suggestion, IM 2018-034 contains no mandate

for a NEPA comment period of a particular length.  Plaintiffs have failed to demonstrate that the

procedures in IM 2018-034 violate NEPA or FLPMA either on their face or as applied to the five

lease sales at issue.  Therefore, summary judgment should be granted to Defendants on the

Fourth and Fifth Claims for Relief.

## BACKGROUND

### I.      Legal Background

####     A.      Federal Land Policy and Management Act

BLM manages the federal lands under its jurisdiction under a broad multiple use

mandate.  FLPMA charges BLM with protecting environmental, ecological, and recreational

values while also providing for "multiple use and sustained yield" management.  43 U.S.C. §

1701(a)(1)-(8); *see also id.* § 1702(c).  The Supreme Court has described multiple use

management as "a deceptively simple term that describes the enormously complicated task of

striking a balance among the many competing uses to which land can be put. *Norton v. S. Utah*

*Wilderness All.*, 542 U.S. 55, 58 (2004).

In order to meet the management objectives of FLPMA, the statute requires BLM to

prepare land use plans, which BLM refers to as resource management plans ("RMP"), setting

forth goals and objectives for the management of particular management units.  *See* 43 U.S.C. §

1712(a).  The statute provides that land use plans shall be developed "with public involvement."

*Id.*  Section 309(e) of FLPMA also provides that the Secretary of the Interior:

> shall establish procedures, including public hearings where appropriate, to give
> the Federal, State, and local governments and the public adequate notice and an
> opportunity to comment upon the formulation of standards and criteria for, and to
> participate in, the preparation and execution of plans and programs for, and the
> management of, the public lands.

43 U.S.C. § 1739(e).

### B.     National Environmental Policy Act

NEPA serves the dual purpose of informing agency decision-makers of the significant

environmental effects of proposed major federal actions and ensuring that relevant information is

made available to members of the public so that they "may also play a role in both the

decisionmaking process and the implementation of that decision."  *See Robertson v. Methow*

*Valley Citizens Council*, 490 U.S. 332, 349 (1989).  To meet these dual purposes, NEPA requires

that an agency prepare a comprehensive EIS for "major Federal actions significantly affecting

the quality of the human environment."  42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1501.3.  Not every

federal action or proposal, however, requires an EIS.  As set forth in the Council on

Environmental Quality's ("CEQ") regulations implementing NEPA, an agency may prepare an

EA to determine whether the impacts of an action will be significant, and if not, the agency may

prepare a finding of no significant impact ("FONSI").  *See* 40 C.F.R. §§ 1501.3, 1501.4(c), (e),

1508.9, 1508.13.  An agency may tier its analysis to a prior, broader NEPA analysis, meaning

that the prior analysis is incorporated by reference and need not be repeated in the later NEPA

document.  40 C.F.R. §§ 1502.20, 1508.28.

Public participation in the development of environmental reviews is an important

component of NEPA.  *See* 40 C.F.R. §§ 1500.1(b), 1500.2(d).  If an agency prepares an EIS, it

must request comments from the public on a draft EIS.  40 C.F.R. § 1503.1(a)(4).  If an agency

prepares an EA, CEQ's regulations are more flexible and require that the agency "involve

environmental agencies, applicants, and the public, to the extent practicable."  40 C.F.R. §

1501.4(b).  The Ninth Circuit has interpreted this as follows:  "An agency, when preparing an

EA, must provide the public with sufficient environmental information, considered in the totality

of circumstances, to permit members of the public to weigh in with their views and thus inform the agency decision-making process." *Bering Strait Citizens for Responsible Res. Dev. v. U.S. Army Corps of Eng'rs*, 524 F.3d 938, 953 (9th Cir. 2008). The Ninth Circuit also held that "the circulation of a draft EA is not required in every case" and the public participation required by NEPA may be accomplished "through other means." *Id.* at 952. Thus, there is no public comment requirement for draft EAs. And, to the extent public comments are solicited, there is no minimum time period for public comment on a draft EA. *See id.* at 952-53.

The Department of the Interior has promulgated regulations implementing NEPA. *See* 43 C.F.R. pt. 46. Under these regulations, BLM is required to prepare an EA for many actions. 43 C.F.R. § 46.300. The regulations require that BLM "to the extent practicable, provide for public notification and public involvement when an environmental assessment is being prepared," but "the methods for providing public notification and opportunities for public involvement are at the discretion of the Responsible Official." 43 C.F.R. § 46.305(a). Interior's regulations do not require the circulation of a draft EA, but BLM offices "may seek comments on an environmental assessment if they determine it to be appropriate, such as when the level of public interest or the uncertainty of effects warrants." *Id.* § 46.305(b). If BLM revises an EA based on comments received, it need not circulate the revised EA for another public comment period. *Id.* BLM must notify the public of the availability of an EA and FONSI after they have been completed. *Id.* § 46.305(c).

In some instances, BLM may rely on an existing NEPA document to satisfy its obligations under NEPA. *See* 43 C.F.R. §§ 46.120(c), 46.300(a)(2). In such instances, BLM will prepare a DNA to confirm that the environmental impacts of an action have already been analyzed in a prior NEPA document. *See* BLM NEPA Handbook at 22-24 (ECF No. 30-14). In

considering whether the use of a DNA is appropriate, BLM officials are required to consider "whether the public involvement and interagency review associated with existing EAs or EISs are adequate for the new proposed action." *Id.* at 23.  If the applicable BLM official determines that additional public input is necessary, BLM may incorporate additional public input through a variety of means, including "external scoping, public notification before or during [the] review of the existing EA or EIS, public meetings, or public notification or review of a completed DNA Worksheet." *Id.* at 24.

### C.    Oil and Gas Leasing on Public Lands

The Mineral Leasing Act ("MLA"), 30 U.S.C. §§ 181–287, authorizes the Secretary of the Interior to offer certain federal minerals for lease, including oil and gas.  The Secretary has delegated this authority to BLM for onshore minerals.  *See* 43 C.F.R. § 3100.0-3.  In accordance with the MLA, BLM has promulgated regulations that govern the leasing and development of federal onshore oil and gas on public lands and federal mineral estates.  *See* 43 C.F.R. pts. 3100-3180.

BLM employs a three-stage decision-making process for managing public lands for oil and gas leasing and development.  *See Pennaco Energy, Inc. v. U.S. Dep't of Interior*, 377 F.3d 1147, 1151-52 (10th Cir. 2004).  First, BLM broadly assesses the presence of minerals and other resources on public lands through land-use planning, which includes determining areas open to and closed to potential oil and gas development, and determining, for open areas, what conservation stipulations should apply to future leases.  43 C.F.R. § 1601.0-5(n).  The RMPs that result from this process guide future decision making but do not authorize specific projects, unless expressly stated.  *See id.*  These RMPs are supported by EISs prepared in accordance with NEPA.  43 C.F.R. § 1601.0-6.  The EISs analyze the potential environmental impacts of oil and

gas development under different alternatives based on reasonably foreseeable development scenarios.  Once BLM issues an RMP, subsequent, more specific decisions implementing specific projects must conform to the plan.  43 C.F.R. § 1610.5-3(a).

In the second stage of oil and gas management, BLM conducts a NEPA review and holds competitive oil and gas lease sales on a quarterly basis, as required by the MLA.  30 U.S.C. § 226(b)(1)(A); *see* 43 C.F.R. pt. 3120; 43 C.F.R. § 3120.1-2(a).  Lands that may be offered for leasing include: lands formerly subject to oil and gas leases that "have terminated, expired, been canceled or relinquished"; lands selected by the authorized officer; lands where federal mineral resources are being drained by the development of connected non-federal resources; and lands identified in "expression[s] of interest" from the public. 43 C.F.R. § 3120.1-1.  For each oil and gas lease sale, BLM may prepare one or more EAs that "tier" to an EIS prepared at the RMP stage.  *See* 40 C.F.R. §§ 1502.20, 1508.28 (NEPA regulations on tiering).  If appropriate, BLM may prepare a DNA for a lease sale.  *See* 43 C.F.R. §§ 46.120(c), 46.300(a)(2).  Once BLM completes required analysis and identifies parcels to be offered, it holds a competitive lease sale, where the parcels are auctioned and sold to the highest qualified bidder.  43 C.F.R. §§ 3120.5-1, 3120.5-3.  Forty-five days in advance of sales BLM state offices post on agency webpages, and in the responsible district or field offices, notices that include lists of parcels proposed to be offered, and their stipulations.  *See* 30 U.S.C. § 226(f); 43 C.F.R. § 3120.4-2.  Any interested party may protest the offering of a parcel for sale within ten days of posting of the notice.  *See*

Updating Oil and Gas Leasing Reform – Land Use Planning and Lease Parcel Reviews, IM 2018-034 § IV.B (2018).  BLMW 828-32.[1]

The third stage of oil and gas management occurs after lease issuance, when BLM determines whether, and under what conditions, it will approve specific development proposals. 30 U.S.C. § 226(g); 43 C.F.R. § 3162.3-1 (2017); Onshore Order No. 1, Approval of Operations, 82 Fed. Reg. 2906, 2914 (Jan. 10, 2017), *amending* 72 Fed. Reg. 10,308, 10,334 (Mar. 7, 2007). The development of the lease does not necessarily occur soon after lease issuance and may occur any time during the 10-year lease term.  *See* 43 C.F.R. § 3120.2-1.  Before an oil and gas operator may undertake any drilling or surface disturbance, it must submit an application for a permit to drill ("APD").  BLM reviews the application, completes additional environmental review, as necessary, to ensure NEPA compliance, decides whether to approve the permit, and imposes any necessary conditions on its approval.  *See* 43 C.F.R. § 3162.3-1; *see also Amigos Bravos v. U.S. Bureau of Land Mgmt.*, Nos. 6:09-cv-00037-RB-LFG; 6:09-cv-00414-RB-LFG, 2011 WL 7701433, at *5 (D.N.M. Aug. 3, 2011).

## II.    Factual Background

### A.    BLM's Oil and Gas Leasing Reform Guidance

IM 2018-034 is a guidance document for BLM offices regarding BLM's oil and gas leasing process.  It supersedes Oil and Gas Leasing Reform Land Use Planning and Lease Parcel Reviews, IM 2010-117 (2010) and replaces any conflicting guidance in the BLM Manual or leasing handbook.  BLMW 450-63.  The purpose of IM 2018-034 is to "streamline the leasing

---

[1] The respective administrative records are referred to as follows:  IM 2018-034 ("BLMW"), Nevada June 2018 lease sale ("NV2Q"), Nevada September 2018 lease sale ("NV3Q"), Utah September 2018 lease sale ("UT"), and June and September 2018 Wyoming lease sales ("WY").

process to alleviate unnecessary impediments and burdens, to expedite the offering of lands for

lease, and to ensure quarterly oil and gas lease sales are consistently held in accordance with the

Mineral Leasing Act (30 U.S.C. § 226), Executive Order 13783, and Secretary Order 3354."  IM

2018-034 at 1.

    In keeping with this purpose, IM 2018-034 changes preexisting policy in a number of

ways.  Specifically, Plaintiffs complain about four changes made in the new guidance.  First, it

adopts a six-month timeframe for BLM's review of parcels after they have been identified for

consideration through an expression of interest ("EOI").  *Id.* § III.A.  Previously there was no

time limit.

    Second, the guidance states that "State and field offices may provide for public

participation during the NEPA process as part of the review of parcels identified for potential

leasing."  *Id.* § III.B.5.  The prior guidance stated that "State and field offices will provide for

public participation as part of the review of parcels identified for potential leasing."  IM 2010-

117 § III.C.7.

    Third, the new guidance leaves to the discretion of the state office or field office the form

of NEPA compliance documentation that is required to support the leasing of parcels.  IM 2018-

034 § III.D.  Under the guidance, the applicable BLM officer can choose to prepare a DNA, if

sufficient NEPA analysis already exists, or may choose to prepare an EA or an EIS.  *See id.*  The

prior guidance provided that "the NEPA compliance documentation for oil and gas leasing must

include an opportunity for public review."  IM 2010-117 § III.E.   It also provided that, if a DNA

was used, "[a]lthough not required by law or regulation, field offices will provide a 30-day

public review and comment period for the DNA."  *Id.*  Similarly, if BLM relied on an EA, the

policy provided that "[a]lthough not required by law or regulation, field offices will provide a 30-day public review and comment period for the EA." *Id.*

Fourth, the new guidance, IM 2018-034, provides for a 10-day protest period following the public notice of the sale. IM 2018-034 § IV.B. Public notice of the sale is to be given 45 days prior to the sale. *Id.* § IV.A; *see also* 30 U.S.C. § 226(f); 43 C.F.R. § 3120.4-2. The prior guidance provided for a 30-day protest period. IM 2010-117 § III.H. It also provided that public notice of the sale was to be provided 90 days prior to the lease sale. *Id.* § III.G.

**B.     Oil and Gas Lease Sales at Issue in Phase One**

Plaintiffs challenge the application of IM 2018-034 to five oil and gas lease sales: the June and September 2018 Wyoming lease sales, the June and September 2018 Nevada lease sales, and the September 2018 Utah lease sale. A summary of those lease sales and the associated public comment periods are set forth below.

*Wyoming.* For the June 2018 lease sale, BLM prepared a draft EA. WY 3618-3765. BLM circulated the draft EA for a 30-day public comment period. WY 3779. Plaintiffs submitted comments on the draft EA. *See* WY 5948-82. Plaintiffs also submitted a timely protest on May 16, 2018. WY 9682-9767.

For the September 2018 lease sale, BLM prepared two draft EAs analyzing the potential impacts of leasing parcels in the High Plains and Wind River/Bighorn Basin Districts. WY 18791-867 (High Plains draft EA); WY 18642-696 (Wind River/Bighorn Basin draft EA). BLM posted those draft EAs for 30-day public comment periods on January 23, 2018. WY 19262-65. Plaintiffs submitted comments on the High Plains draft EA. WY 19401. Subsequently, BLM prepared a third draft EA analyzing the potential impacts associated with the leasing of additional parcels located in all three BLM Wyoming districts. WY 24013-236. BLM posted

that draft EA for a two-week public comment period on May 24, 2018.  WY 24270.  Plaintiffs

submitted public comment within the public comment period.  WY 28124-60.  BLM posted a

notice of the sale on Aug. 1, 2018, initiating a ten-day protest period.  WY 27424.  Plaintiffs

submitted a protest on August 13, 2018.  WY 28356-417.

*Nevada:*  For the June 2018 lease sale, BLM prepared a draft EA, NV2Q 169-323, and

circulated it for a 30-day public comment period.  NV2Q 8832.  Plaintiffs submitted comments

on the draft EA.  NV2Q 1850-1923.  BLM posted a notice of sale in April 27, 2018, *see* NV2Q

3097, triggering a 10-day protest period.  Plaintiffs timely submitted a protest on May 7, 2018.

NV2Q 2039-2104.

For the September 2018 lease sale, BLM prepared two DNAs.  NV3Q 880-935 (Ely);

NV3Q 1914-37 (Elko).  The Ely District DNA relied on EAs prepared in 2013, 2014, and 2017,

each of which was subject to a 30-day public comment period.  NV3Q 881, 883-84.  The Elko

District DNA relied on EAs prepared two EAs prepared in 2017 and 2018, each of which were

subject to lengthy scoping periods of 72 days and 48 days, respectively.  NV3Q 1922.  The Elko

District DNA also was available for a 30-day public review period ending on August 24, 2018.

NV3Q; BLM ePlanning web page for the September 2018 Nevada lease sale, Ex. 1.  BLM

posted a notice of the sale on July 27, 2018, initiating a ten-day protest period.  NV3Q 1659-68.

On August 6, 2018, Plaintiffs filed a timely protest.  NV3Q 1310-59.

*Utah:*  To support the September 2018 lease sale, BLM completed three EAs and

circulated two of them, one from the Fillmore Field Office, UT 2723-99, and one from the Salt

Lake Field Office, UT 22840-995, for 15-day comment periods.  UT 2730-31, 22902, 36657.

Plaintiffs submitted timely public comments on the draft EAs.  UT 2815-34, 23003-22.  For the

third EA (Price/Richfield), UT 11677-875, BLM held a 15-day scoping period.  UT 7503-18,

11688.  Several entities submitted scoping comments, UT 7586-8545, but plaintiffs did not.

BLM posted a notice of the sale initiating a ten-day protest period on July 26, 2018.  UT 40173.

Plaintiffs submitted a timely protest on August 6, 2018.  UT 40255-98.

## STANDARD OF REVIEW

Agency decisions are reviewed under the judicial review provisions of the APA, 5 U.S.C.

§§ 701-06.  *See Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008).  Under the APA,

agency decisions may be set aside if they are "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  In accordance with that standard,

an agency's decision will be overturned

> [O]nly if the agency relied on factors which Congress has not intended it to
> consider, entirely failed to consider an important aspect of the problem, offered an
> explanation for its decision that runs counter to the evidence before the agency, or
> is so implausible that it could not be ascribed to a difference in view or the
> product of agency expertise.

*McFarland v. Kempthorne*, 545 F.3d 1106, 1110 (9th Cir. 2008) (citation and quotation marks

omitted).  The standard of review is "highly deferential, presuming the agency action to be valid

and affirming the agency action if a reasonable basis exists for its decision." *Nw. Ecosystem All.

v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1140 (9th Cir. 2007) (citation omitted).  The APA

"does not allow the court to overturn an agency decision because it disagrees with the decision or

with the agency's conclusions about environmental impacts." *River Runners for Wilderness v.

Martin*, 593 F.3d 1064, 1070 (9th Cir. 2010) (citation omitted).  APA claims are resolved on

summary judgment based on the agency's administrative record.  *See Nw. Motorcycle Ass'n v.

U.S. Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir. 1994).

## ARGUMENT

**I.     Plaintiffs' Claims Challenging IM 2018-034 Are Without Merit**

**A.     The Issuance of IM 2018-034 Was Not a Final Agency Action and Therefore It Is Not Reviewable Under the Administrative Procedure Act**

NEPA and FLPMA do not provide a private right of action, and therefore Plaintiffs' claims must be brought under the APA.  *See Earth Island Inst. v. U.S. Forest Serv*., 351 F.3d 1291, 1300 (9th Cir. 2003).  The APA requires that a plaintiff challenge final agency action.  *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006).  Agency action is "final" if (1) it "mark[s] the 'consummation' of the agency's decisionmaking process," and (2) is "one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citation omitted).  An action is not a final agency action unless it "has the status of law or comparable legal force."  *Columbia Riverkeeper v. U.S. Coast Guard*, 761 F.3d 1084, 1095 (9th Cir. 2014) (quoting *Or. Nat. Desert Ass'n*, 465 F.3d at 987).  An agency pronouncement that does not have the force and effect of law is not a final agency action under the APA.  *See id.*

IM 2018-034 is not a final agency action because it does not meet either of the two prongs of the *Bennett* test.  First, IM 2018-034 is not the "consummation" of the agency's decision-making process.  *Bennett*, 520 U.S. at 177-78.  In order to meet this first prong, "[t]he action 'must not be of a merely tentative or interlocutory nature.'"  *Or. Nat. Desert Ass'n*, 465 F.3d at 984 (quoting *Bennett*, 520 U.S. at 178).  Rather, a court should consider "whether the agency has rendered its last word on the matter to determine whether an action is final and is ripe for judicial review."  *Id.* (citation and quotation marks omitted).  IM 2018-034 merely establishes guidelines for certain procedures that BLM will follow in reviewing parcels for potential leasing,

conducting environmental analyses of the proposed parcels, and considering and responding to protests. *See* IM 2018-034 § III. Further, the IM leaves considerable discretion to BLM state office and field office staff as to precisely what procedures to follow. *See*, *e.g.*, *id.* § III.D. ("The state/field office will determine the appropriate form of NEPA compliance documentation."). Accordingly, IM 2018-034 is not the consummation of the agency's decision-making process.

Second, IM 2018-034 is not an action that determines "rights or obligations" or from which "legal consequences will flow." *Bennett*, 520 U.S. at 177-78. The key inquiry is whether the guidance document has the force and effect of law. *See Columbia Riverkeeper*, 761 F.3d at 1095. IM 2018-034 does not have such legal effect. The guidance itself does not affect the legal rights or obligations of the oil and gas industry or the Plaintiffs. Nor does the guidance create legally enforceable requirements for BLM. *See Earth Island Inst. v. Carlton*, 626 F.3d 462, 473-74 (9th Cir. 2010) (in order to create legally enforceable obligations with the force and effect of law, an agency must promulgate a substantive rule in accordance with applicable procedural requirements). Instead, the legally enforceable obligations regarding BLM's leasing process flow directly from FLPMA, NEPA, and BLM's regulations.

In its preliminary injunction opinion, the Court found that IM 2018-034 met the first *Bennett* prong because it set forth procedural requirements for oil and gas leasing that BLM field offices were required to follow. *See* Mem. Decision and Order re: Pls.' Mot. for Prelim. Inj. at 20-26 (ECF No. 74) ("PI Order"). Defendants do not dispute that the IM is final in the sense that BLM intended the procedures would govern oil and gas leasing until the procedures were changed through a subsequent IM or regulation. But as the Court recognized, the IM left considerable discretion to the field offices to decide how to apply the oil and gas procedures in particular circumstances. *Id.* at 22. For example, under IM 2018-034, the state and field offices

determine what sort of NEPA document is appropriate and the corresponding level of public participation.  *See id.*  Thus, rather than finally set these requirements in the policy, BLM left these decisions to individual BLM officials to make.

As to the second prong of *Bennett*, the Court determined that legal rights or obligations were established because entities that wished to comment during the NEPA process or file protests would be constrained by the requirements of IM 2018-034.  *See* PI Order at 25-26. Plaintiffs' rights would only be implicated, however, if BLM offered parcels for oil and gas leasing in locations that affect Plaintiffs' interests.  Further, the way in which their rights would be implicated would depend on the type of NEPA document that the BLM field office chose to prepare, whether the field office chose to allow for public comment, and the length of the comment period allowed.  IM 2018-034 mandates none of those choices.  It is true that the length of the protest period is set at 10 days, but as discussed below, there is no requirement in FLPMA to offer a protest period; and the protest provision would only come into play if Plaintiffs had an interest in a particular oil and gas lease sale and, following the NEPA process, wished to file a protest.  In short, merely by setting forth procedural guidelines within the bounds of applicable regulations, IM 2018-034 has no "immediate effect" on Plaintiffs' rights or obligations.  *Indus. Customers of Nw. Utils. v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005).

Further, IM 2018-034 is not a substantive rule, and instead is a general statement of policy.  As discussed below, *see* section I.B, *infra*, statements of policy are distinguished from substantive rules, which undergo notice and comment rulemaking, by the extent to which they leave discretion to agency staff as to how to follow the policy.  *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1124 (9th Cir. 2009).  As already shown, IM 2018-034 does not impose rights or obligations and gives BLM officials ample discretion in conducting the leasing

process.  *See* IM 2018-034 § III.B. (allowing BLM the discretion to determine whether to gather additional data for compliance with NEPA and other statutes, to determine conformity with applicable resource management plans, to determine whether to conduct a site visit, and to determine the degree of public participation in the parcel review and NEPA process).

Moreover, numerous courts have ruled that guidance documents directing subordinate officials on certain issues did not constitute final agency action subject to judicial review under the APA.  *See Sierra Club v. Envtl. Prot. Agency*, 873 F.3d 946, 952-53 (D.C. Cir. 2017) (EPA guidance document regarding the methodology for evaluating particulate matter was not a final agency action); *Ass'n of Flight Attendants-CWA v. Huerta*, 785 F.3d 710, 717-19 (D.C. Cir. 2015) (FAA guidance document regarding carry-on baggage was a general statement of policy, not a substantive rule, and therefore not a final agency action); *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 250-53 (D.C. Cir. 2014) (EPA guidance document recommending pollutant limits for discharge permits was not a final agency action); *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 807-11 (D.C. Cir. 2006) (guidance for conducting automobile recalls was a general statement of policy and not a final agency action).

As in those cases, IM 2018-034 is a general statement of policy and not a final agency action.  Plaintiffs' attempt to cast the potential to participate in a NEPA comment period or FLPMA protest period as "rights or obligations," but the impact on their ability to submit comments and file protests is "practical, not legal."  *Ctr. for Auto Safety*, 452 F.3d at 811. Merely setting forth internal procedures for the agency to follow has no immediate legal effect on Plaintiffs "rights or obligations" within the meaning of *Bennett*, 520 U.S. at 177-78. Moreover, cases involving agency guidance typically involve standards directed towards the regulated industry.  *See*, *e.g.*, *Sierra Club*, 873 F.3d at 952-53.  In contrast, the guidance at issue

here directs *the agency* to follow a particular process in considering parcels for lease and conducting environmental reviews.  The only way in which Plaintiffs' interests could be affected would be if they choose to participate in the administrative process and/or submit a protest at its conclusion.

The only case that Defendants are aware of where a court found that an IM issued by BLM was a reviewable final agency action is *Western Energy All. v. Salazar*, No. 10-cv-237F, 2011 WL 3738240 (D. Wyo. Aug. 12, 2011).  While Defendants disagree with the court's holding in that case, the case is also distinguishable and provides no support for Plaintiffs' argument.  In *Western Energy Alliance*, the plaintiffs alleged that procedures issued by BLM in an IM were directly contrary to Section 390 of the Energy Policy Act, which established a categorical exclusion (no requirement to prepare a NEPA document) for certain oil and gas development activities.  *Id.* at *2-3.  The court found that the procedures were, in fact, contrary to the requirements of Section 390.  *Id.* at *7 (finding "no obvious consistency between Section 390 and the 2010 Instructions").  In contrast, IM 2018-034 does not contravene a specific statutory requirement to conduct NEPA in a particular way.  Instead, the crux of Plaintiffs' argument is that the procedures in IM 2018-034 are in conflict with a prior guidance document, IM 2010-117.  Therefore the specific issue in *Western Energy Alliance*—a guidance document apparently at odds with an express statutory mandate—is not present here.

Accordingly, Plaintiffs have failed to demonstrate that the issuance of IM 2018-034 was a final agency action and therefore the Court lacks jurisdiction to review the claim.

**B.      BLM Was Not Required to Complete a Rulemaking or NEPA Process Before Issuing IM 2018-034**

BLM was not required to complete a rulemaking process before issuing IM 2018-034

because the IM is a general statement of policy and established only internal procedures for

BLM field offices to follow.  It does not establish new regulations governing public participation

during the NEPA process or procedures for public participation under FLPMA.  It merely

informs BLM field offices of the procedures they are to follow when engaging in the oil and gas

leasing process.  Therefore, no rulemaking was required.

An agency is required to go through a rulemaking process before issuing substantive

rules.  *Colwell*, 558 F.3d at 1124.  An agency is not required to complete a rulemaking, however,

before issuing "interpretative rules, general statements of policy, or rules of agency organization,

procedure or practice."  5 U.S.C. § 553(b)(3)(A); *see also Sacora v. Thomas*, 628 F.3d 1059,

1069 (9th Cir. 2010).  In distinguishing general statements of policy from substantive rules, the

Ninth Circuit has explained that "[t]o the extent that the directive merely provides *guidance* to

agency officials in exercising their discretionary power while preserving their flexibility and

their opportunity to make 'individualized determination[s],' it constitutes a general statement of

policy."  *Colwell*, 558 F.3d at 1124 (quoting *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1013-14

(9th Cir. 1987)).  As the Ninth Circuit explained,

> In contrast, to the extent that the directive "narrowly limits administrative
> discretion" or establishes a "*binding norm*" that "so fills out the statutory scheme
> that upon application one need only determine whether a given case is within the
> rule's criterion," it effectively replaces agency discretion with a new "binding rule
> of substantial law."

*Id.* (quoting *Mada-Luna*, 813 F.2d at 1013-14); *see also Sacaro*, 628 F.3d at 1069.  An

interpretive rule "clarify[ies] or explain[s] existing law or regulations so as to advise the public

of the agency's construction of the rules it administers." *Sacaro*, 628 F.3d at 1070 (quoting

*Mora-Meraz v. Thomas*, 601 F.3d 933, 940 (9th Cir. 2010)). An interpretive rule cannot be

"inconsistent with or amend[] an existing legislative rule." *Id.* (quoting *Mora-Meraz*, 601 F.3d at

940).

Applying these standards, IM 2018-034 contains elements of a rule of agency procedure,

a general statement of policy, and an interpretive rule, but it is not a substantive rule. It

supersedes prior policies in IM 2010-117 and establishes new general policies, *e.g.*, it instructs

BLM to no longer apply the mandatory 30-day public notice and comment period for EAs and

DNAs required by IM 2010-117. IM 2018-034 § III.B.5. It also establishes a process for the

agency to follow in conducting its oil and gas leasing program. IM 2018-034 §§ I-IV. And, to a

certain extent, it could also be considered to be an interpretive rule, as it advises the public about

how it will carry out the oil and gas leasing process in accordance with existing rules and

regulations. *See Sacora*, 628 F.3d at 1070. But IM 2018-034 is not a substantive rule because it

does not establish any new rules or require procedures that would be inconsistent with existing

regulations.

The Department of the Interior has existing NEPA regulations, which BLM follows in

conducting its oil and gas leasing program. *See* 43 C.F.R. pt. 46. Plaintiffs have failed to

demonstrate in any way that the procedures in IM 2018-034 are inconsistent with those

regulations. To the extent Plaintiffs are claiming that BLM must go through a rulemaking

process to modify the procedures in IM 2010-117, the argument is nonsensical because, under

Plaintiffs' theory, IM 2010-117 was also "dead on arrival" because it did not result from a

rulemaking. BLM was not required to go through a rulemaking process because the procedures

in IM 2018-034 are consistent with Interior's NEPA regulations. And because BLM did not

amend existing NEPA regulations and was not required to go through a rulemaking process, there was no major federal action requiring NEPA review.  *Cf. Alaska v. Andrus*, 591 F.2d 537, 541-42 (9th Cir. 1979) (a decision not to exercise regulatory authority is not a major federal action under NEPA).  Indeed, no NEPA analysis was prepared in conjunction with IM 2010-117.

With respect to FLPMA, Plaintiffs apparently claim that IM 2018-034 § III.B. created a substantive rule under Section 309(e) of FLPMA.  But Section III.B.5 contains no mention of FLPMA and instead states that, "State and field offices may provide for public participation during the NEPA process as part of the review of parcels identified for potential leasing."  IM 2018-034 § III.B.5.  In other words, Section III.B.5 does not purport to interpret Section 309(e) of FLPMA, let alone create a binding rule.  While it is true that BLM often engages in NEPA and FLPMA compliance simultaneously, the IM refers only to NEPA.  If through reliance on the IM, a BLM field office were to commit a violation of Section 309(e) of FLPMA, then Plaintiffs could bring a claim alleging violation of Section 309(e).  The claim that BLM has effectively issued a new substantive rule regarding Section 309(e) of FLPMA, however, is simply not supported by the language of IM 2018-034.

What Plaintiffs really seems to be arguing is that BLM should promulgate a rule relating to oil and gas leasing in accordance with Section 309(e).  *See* Pls. Br. at 20.  Such a claim could have been brought anytime during the more than four decades since FLPMA's enactment, but it is not the claim that they brought in this case.  Their claim in this case is that BLM violated APA rulemaking procedures by issuing IM 2018-034.  *See* First Am. Compl. at 112-14 (Fifth Claim for Relief) (ECF No. 78).  By contrast, in *Natural Resources Defense Council v. Jamison*, 815 F. Supp. 454 (D.D.C. 1992), Plaintiffs brought a claim alleging that the Department of the Interior had failed to promulgate regulations for mining in accordance with Section 309(e).  *Id.* at 468.

The court granted summary judgment on that claim and required BLM to engage in a rulemaking.  *Id.*  Plaintiffs could have brought a similar claim in this case, but they chose not to do so.

In sum, Plaintiffs are wrong that BLM was required to engage in a rulemaking process prior to issuing IM 2018-034, and their argument is ultimately self-defeating.  If Plaintiffs are correct, then not only was IM 2010-117 invalid on its face, BLM also would be prohibited from providing any sort of guidance to its field offices on how to conduct the NEPA process in particular contexts.  For example, if a particular form of leasing were more complicated, and BLM wanted to instruct the field offices to review the parcels more slowly and to allow additional time for public comment, it would be prohibited from doing so unless it engaged in a rulemaking process, which could take a year and a half to two years.  The APA is not so rigid that it does not allow agencies to issue informal policies to allow for variations in procedures within the bounds of existing laws and regulations.  The APA is clear that no rulemaking is required for such rules of procedure or general policy, and no rulemaking was required here.

## C.     The Procedures in Instruction Memorandum 2018-034 Are Consistent with FLPMA and NEPA

The procedures in IM 2018-034 do not violate NEPA or FLPMA.  As a threshold matter, because Plaintiffs are challenging IM 2018-034 on its face (in addition to their as-applied challenges to individual lease sales, discussed below), they face a higher burden of demonstrating success.  "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."  *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see also Isaacson v. Horne*, 716 F.3d 1213, 1230 (9th Cir. 2013).  The same standard applies to a

facial challenge to a regulation, *see United States v. Dang*, 488 F.3d 1135, 1142 (9th Cir. 2007), and therefore by extension to the guidance document challenged here, which Plaintiffs claim should have gone through a rulemaking process.  Therefore, in order to succeed on their facial challenge to IM 2018-034, Plaintiffs must show that there is no set of facts under which the procedures in the IM would be valid.  *See Salerno*, 481 U.S. at 745.  Plaintiffs fail to do so.

### 1.       Public Participation Under NEPA and FLPMA

Plaintiffs' primary complaint regarding IM 2018-034 is that it eliminated the mandatory public comment periods in IM 2010-117 and instead left it to the discretion of BLM field managers to choose the type of documentation, whether to allow public participation, and the length of the comment period.  *See* IM 2018-034 §§ III.B.5, III.D.  The requirements of NEPA and FLPMA are different and therefore are addressed separately.

### a.       Public Participation Under NEPA

Plaintiffs have failed to show that the procedures in IM 2018-034 violate NEPA under the standard for a facial challenge.  In terms of public participation, when an agency prepares an EA, it must "involve environmental agencies, applicants, and the public, to the extent practicable." 40 C.F.R. § 1501.4(b).  This means, as the Ninth Circuit has interpreted it, that:  "An agency, when preparing an EA, must provide the public with sufficient environmental information, considered in the totality of circumstances, to permit members of the public to weigh in with their views and thus inform the agency decision-making process."  *Bering Strait*, 524 F.3d at 953.  The Ninth Circuit has clarified that "the circulation of a draft EA is not required in every case" and the public participation required by NEPA may be accomplished "through other means."  *Id.* at 952.  Thus, not every EA requires public comment.  And, where an agency opts to provide a public comment period, there is no minimum required duration.  *See id.* at 952-53; *see*

*also All. for Wild Rockies v. Farnsworth*, No. 2:16-cv-433-BLW, 2017 WL 1591840, at *6 (D.

Idaho May 1, 2017) ("There is no requirement in every case that a draft EA be submitted for

public comment before the final EA and FONSI are issued."), *aff'd*, 709 F. Appx. 461 (9th Cir.

2018).  The Department of the Interior NEPA regulations also do not require a comment period

of a particular length and state only that sub-agencies "may seek comments on an environmental

assessment if they determine it to be appropriate."  46 C.F.R. § 46.305(b).

On its face, IM 2018-034 allows BLM to determine what NEPA documentation to rely

on and to choose the length of particular comment periods.  IM 2018-034 §§ III.B.5, III.D.

While the mandatory 30-day requirement under IM 2010-117 was eliminated, BLM officials

may hold a 30-day comment period under IM 2018-034, or they may hold an even longer public

comment period if the deem it appropriate, or none at all.  This complies with NEPA.

Selectively quoting the NEPA regulations, Plaintiffs argue that BLM must allow public comment

to the "fullest extent possible."  Pls. Br. at 10-11 (quoting 40 C.F.R. § 1500.2).  Notwithstanding

the precatory language in the "Policy" section of the NEPA regulations, the more specific

regulation requires public involvement only "to the extent practicable," 40 C.F.R. § 1501.4(b),

and the Ninth Circuit views whether sufficient opportunities for public comment were provided

based on "the totality of the circumstances."  *Bering Strait*, 524 F.3d at 953.  Under the more

lenient test applicable to facial challenges, *i.e.*, whether there is any set of circumstances under

which the guidance could be valid, Plaintiffs fail to show the IM violates NEPA.

Plaintiffs also complain that, if BLM chooses to use a DNA there would be no

opportunity for public involvement.  Pls. Br. at 12.  The use of DNAs, however, is not a product

of IM 2018-034.  According to Department of the Interior regulations, BLM may use a DNA if it

has already analyzed the impacts of its leasing decision in another NEPA document and has

provided sufficient opportunity for public participation during the preparation of that earlier

document. *See* 43 C.F.R. §§ 46.120(c), 46.300(a)(2). Reliance on prior NEPA documentation

and documentation through a DNA is an accepted NEPA practice. *Summit Lake Paiute Tribe of*

*Nev. v. U.S. Bureau of Land Mgmt.*, 496 Fed. Appx. 712, 715-16 (9th Cir. 2012).

In sum, Plaintiffs have failed to show that the procedures in IM 2018-034 violate the

public participation requirement of NEPA.

### b. Public Participation Under Section 309(e) of FLPMA

Plaintiffs also fail to show that the provisions of IM 2018-034 violate Section 309(e) of

FLPMA. They claim that by giving BLM officers the discretion to decide whether, and to what

extent, to allow public participation, *see* IM 2018-034 § III.B.5, BLM has violated the

requirement in Section 309(e) of FLPMA, 43 U.S.C. § 1739(e), to provide for public

participation in the leasing process. Plaintiffs cannot show that the procedure in the IM is

facially invalid, however, because the IM allows BLM officials to provide for public

participation when it deems such participation to be appropriate. While BLM officials may

choose not to allow public participation in some instances, for instance if a prior NEPA analysis

was conducted and BLM relies on a DNA, the IM does not, as a rule, prohibit public

involvement. Therefore, Plaintiffs' facial challenge should be rejected.

Moreover, Section 309(e) gives considerable discretion to the Department of the Interior

as to how to incorporate public participation into its management of public lands. The statute

requires the Department of the Interior to establish procedures for the public "to comment upon

the formulation of standards and criteria for, and to participate in, the preparation and execution

of plans and programs for, and the management of, the public lands." 43 U.S.C. § 1739(e).

Thus, the statute leaves a great deal of discretion to the Department of the Interior as to the

nature and timing of public participation in particular contexts.  Therefore, whether BLM allows sufficient public involvement in relation to a leasing decision should be judged in the context of all of the prior planning and public involvement that preceded the leasing decision.

It is true that BLM may not entirely shut out the public from decision making.  *See W. Watersheds Project v. Kraayenbrink*, 538 F. Supp. 2d 1302, 1315-16 (D. Idaho 2008), *aff'd in part and vacated in part*, 632 F.3d 472 (9th Cir. 2011).  The regulations at issue in *Kraayenbrink* changed the public participation provisions in prior regulations in two primary ways:  (1) by revising the list of "interested publics" who would receive notice of grazing decisions, such that individuals or entities would be removed from the list of they did not provide comment in response to a notice, and (2) by eliminating the requirement to consult with interested publics for a variety of actions involving grazing, including "adjustments to allotment boundaries," "changes in active use," and the "issuance or renewal of individual permits or leases."  *Id.* at 1309.  Thus, the procedures in the regulations were changed—not just, as in the present case, to change "will" to "may"—but to fundamentally eliminate public involvement from actions that the public was previously invited to provide input on.

IM 2018-034 did not adopt changes akin to the changes to the grazing regulations. Unlike those regulations, the procedures adopted in IM 2018-034 do not exclude particular groups from decision-making and do not eliminate public involvement in particular actions. BLM may rely on a DNA, meaning that it has confirmed that the action is covered by a prior NEPA process and that there was sufficient public involvement in that process.  *See* 43 C.F.R. § 46.120(c).  While it is true that IM 2010-117 required a 30-day comment period for DNAs, IM 2010-117 was not a validly promulgated rule, meaning that it was subject to modification at any time, and IM 2010-117 even recognized that a 30-day comment period for a DNA is "not

required by law or regulation."  IM 2010-117 § III.E.  Although BLM may in certain circumstances choose to do more than is required by the law, it cannot be required by a Court to do so.  Further, if BLM relies on a prior NEPA analysis and issues a DNA, the public process for the prior NEPA document would also serve as the opportunity for public involvement under Section 309(e), in addition to any opportunities for public involvement that were provided earlier in the process.  Plaintiffs cannot demonstrate that there are "no set of circumstances" in which BLM could comply with Section 309(e) of FLMPA while complying with the provisions of 2018-034, and therefore their challenge should be rejected.

In sum, Plaintiffs have failed to show that IM 2018-034 allows no set of circumstances under which BLM could comply with Section 309(e) of FLPMA.

### 2.    Lease Sale Protests

The lease sale protest is a creature of BLM's regulations and procedures, *see* 43 C.F.R. § 3120.1-3, and is not required by FLPMA or NEPA.  Department of the Interior regulations contain no requirement for a 30-day protest period and require only that BLM provide notice to the public 45 days in advance of a lease sale.  43 C.F.R. § 3120.4-2.  Plaintiffs have pointed to no provision of the law or regulations that require a longer protest period.  They argue that a 10-day protest period is no substitute for public involvement under NEPA and FLPMA prior to a leasing decision, Pls. Br. at 12, but BLM has never claimed that it serves that purpose.

Plaintiffs also claim that a shorter protest period may result in a waiver of claims if they fail to file a timely protest.  *See* Pls. Br. at 17 (citing *Cmty. Advocates for Renewable Energy Stewardship v. U.S. Dep't of the Interior*, No. 12-CV-1499-WQH-MDD, 2012 WL 4471562, at *1 (S.D. Cal. Sept. 25, 2012)).  In *Community Advocates*, the plaintiffs failed to provide comments on an EIS during the public comment period or to file a protest after the completion of

the plan amendments at issue in the case.  2012 WL 4471562, at *5.  Based on those facts and on

BLM regulations governing the plan amendment process, the court apparently found that

plaintiffs had waived their ability to make arguments under NEPA that they had not raised

during the comment process and that they had failed to exhaust administrative remedies.  *Id.* at

*6.  The ruling is somewhat unclear because the court concludes by stating that the case was

dismissed for lack of standing.  *Id.*  Regardless of the court's actual reasoning, it does not apply

here because the case involved the land management planning process, not an oil and gas leasing

decision.  Oil and gas leasing decisions are final when issued and will only be stayed if a party

requests a stay and makes a showing of "substantial justification."  43 C.F.R. § 4.21(b)(1).

Therefore, there is no requirement to exhaust administrative remedies before challenging the

leasing decision in district court.  *See Darby v. Cisneros*, 509 U.S. 137, 154 (1993) (exhaustion

of administrative remedies "is a prerequisite to judicial review *only* when expressly required by

statute or when an agency rule requires appeal before review and the administrative action is

made inoperative pending that review"); *see also San Juan Citizens' All. v. Babbitt*, 228 F. Supp.

2d 1224, 1232 (D. Colo. 2002) (holding that plaintiffs were not required to exhaust

administrative remedies before challenging agency orders relating to coalbed methane

production).

### 3.    Parcel Review Timeframes

Although Plaintiffs mention the six-month parcel review timeframe in passing, *see* Pls.

Br. at 11, they fail to argue that the provision violates FLMPA or NEPA.  In fact, there is nothing

in the statute or regulations that prohibits BLM from conducting parcel reviews in a six-month

period if it chooses to do so.  The IM also allows an escape hatch for "unforeseen

circumstances."  IM 2018-034 § III.A.  In its preliminary injunction ruling, the Court did not

enjoin the six-month parcel review provision, stating that the provision did not appear to be in "clear . . . conflict" with the public participation requirements of IM 2010-117.  PI Order at 56 n.21.  Plaintiffs have offered no basis to disturb this ruling.

Accordingly, Plaintiffs have failed to show a likelihood of success on their claim that IM 2018-034, on its face, violates Section 309(e) of FLPMA.

### D.      The Issuance of IM 2018-034 Was Not Arbitrary or Capricious

Plaintiffs argue that BLM did not properly explain its reasons for adopting IM 2018-034 or explain why it departed from its prior policy in IM 2010-117.  Pls. Br. at 12-15.  This argument assumes that a rulemaking process was required for the adoption of IM 2018-034.  *See Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1115-16 (9th Cir. 2007) (reviewing Department of Agriculture regulations regarding the import of cattle); *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 962, 966-70 (9th Cir. 2015) (reviewing whether the U.S. Forest Service had adequately explained the reasons for adopting new regulations governing the Tongass National Forest); *California v. U.S. Bureau of Land Management*, 277 F. Supp. 3d 1106, 1122 (N.D. Cal. 2017).  These standards do not apply here because, as discussed above, BLM established no new regulation for oil and gas leasing and therefore was not required to engage in a rulemaking.

To the extent the Court determines that BLM was required to provide an explanation for the issuance of the policy, the record provides a sufficient explanation.  IM 2018-034 states that its purpose is to "simplify and streamline the leasing process to alleviate unnecessary impediments and burdens, to expedite the offering of land for lease, and to ensure quarterly oil and gas lease sales are consistently held in accordance with the Mineral Leasing Act (30 U.S.C. § 226), Executive Order 13783, and Secretary Order 3354."  IM 2018-034 at 1 (Purpose).

Similarly, the Secretary issued Secretarial Order 3354 in order to ensure that BLM met the

requirement in the Mineral Leasing Act to hold quarterly lease sales.  BLMW 767, 781.  Further,

a Department of the Interior report prepared in response to Executive Order 13783 explained that

IM 2010-117 had "resulted in longer time frames in analyzing and responding to protests and

appeals, as well as longer lead times for BLM to clear and make available parcels for oil and gas

lease sales."  BLMW 784.  IM 2010-117 "also resulted in increased workload and staffing needs

to conduct additional upfront environmental analysis."  *Id.*  The new policy was developed in

order to "streamline the leasing process" and shorten the time to evaluate and offer parcels for

lease.  *Id.*  Accordingly, the record reasonably explains the basis for the new policy.  *Organized*

*Vill. of Kake*, 795 F.3d at 981 ("While the APA requires a reasoned explanation for a change in

policy, 'a court is not to substitute its judgment for that of the agency and should uphold a

decision of less than ideal clarity if the agency's path may be reasonably discerned.'") (quoting

*FCC v. Fox Television Stations*, 556 U.S. 502, 513-15 (2009)).[2]

In sum, for all of the foregoing reasons, Plaintiffs' facial challenge to IM 2018-034 is

without merit.

### E.  The Court Lacks the Authority to Reinstate the Provisions of IM 2010-117

If the Court finds that any provision of IM 2018-034 is unlawful, it may, but is not

required to, vacate the IM in whole or in part.  *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d

1392, 1405 (9th Cir. 1995) ("[W]hen equity demands," an agency's decision may "be left in

place while the agency follows the necessary procedures.") (citing *W. Oil & Gas Ass'n v. EPA*,

---

[2] Plaintiffs argue that "timeframes longer than 10 to 15 days" are necessary for meaningful
public comment periods.  Pls. Br. at 13-14.  Even if that is true in particular instances, IM 2018-
034 contains *no* requirement for a comment period of 10 or 15 days.  The IM leaves it to the
discretion of BLM offices to determine the length of the comment period.  IM 2018-034 § III.D.

633 F.2d 803, 813 (9th Cir. 1980)).  Vacating IM 2018-034 will not have the effect, however, of

reinstating the relevant provisions in IM 2010-117.  *See* Pls. Br. at 20.  When a court invalidates

a regulation, generally the prior regulation is reinstated.  *See Paulsen v. Daniels*, 413 F.3d 999,

1008 (9th Cir. 2005).  But the same is not true of an IM, especially where the previous IM (IM

2010-117) suffers from the same alleged procedural deficiencies as IM 2018-034.  Simply put,

there is no legal authority for the proposition that provisions of a guidance document spring back

into place upon the Court's invalidation of a subsequent guidance document.  Indeed, the

suggestion that a prior guidance document, which was issued without a notice and comment

rulemaking, would be reinstated is entirely contrary to Plaintiffs' theory that any such guidance

document is "dead on arrival."

Nor can the Court order BLM to conduct its oil and gas leasing program in a particular

way.  As the Ninth Circuit has explained, "the APA does not empower the district court to

conduct a de novo review of the administrative decision and order the agency to reach a

particular result."  *Mt. St. Helens Mining and Recovery Ltd. P'ship v. United States*, 384 F.3d

721, 728 (9th Cir. 2004); *see also Gardner v. U.S. Bureau of Land Mgmt.*, 638 F.3d 1217, 1224

(9th Cir. 2011) (same).  Thus, the Court cannot compel BLM to reinstate particular provisions of

IM 2010-117.  Moreover, the Court is not permitted to direct the procedures that BLM uses to

make oil and gas leasing decisions.  *See Vermont Yankee Nuclear Power Corp. v. Natural Res.

Def. Council*, 435 U.S. 519, 543-44 (1978).  As the Supreme Court has explained:

> Absent constitutional constraints or extremely compelling circumstances, the
> administrative agencies should be free to fashion their own rules of procedure and
> to pursue methods of inquiry capable of permitting them to discharge their
> multitudinous duties.  Such a procedure clearly runs the risk of propelling the
> court into the domain which Congress has set aside exclusively for the
> administrative agency.

*Id.* (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (and internal quotation marks and brackets omitted).

In sum, the Court may vacate provisions of IM 2018-034, but if it chooses to do so, that will not have the effect of reinstating provisions in IM 2010-117, and the Court may not order BLM to follow particular rules in conducting its oil and gas leasing program.

## II.     Plaintiffs' Challenges to the Application of IM 2018-034 to Oil and Gas Lease Sales Are Without Merit

The as-applied challenges to the specific lease sales in June and September 2018 Wyoming lease sales, June and September 2018 Nevada lease sales, and the September 2018 Utah lease sale are without merit.  Even if the Court finds that a NEPA or FLPMA violation occurred, the leases should be suspended, rather than vacated, pending corrective action by the agency.

### A.     The Wyoming, Nevada, and Utah Lease Sales Complied with NEPA and FLPMA

As discussed below, Plaintiff have failed to show that BLM provided inadequate opportunities for public comment regarding the Wyoming, Nevada, and Utah lease sales at issue in order to meet the requirements of NEPA and FLPMA.

#### 1.     June 2018 Wyoming and Nevada Lease Sales

As Plaintiffs acknowledge, for the June 2018 Wyoming and Nevada lease sales, BLM prepared draft EAs and circulated them for 30-day public comment periods.  Pls. Br. at 17; *see also* WY 3618-3765 (draft EA in Wyoming); WY 3779 (announcement of public comment period); NV2Q 169-323 (draft EA in Nevada); NV2Q 8832 (announcement of public comment period).  Plaintiffs offer no argument as to why a comment period of 30 days on the draft EAs was insufficient to comply with NEPA or FLPMA.  Indeed, they seek through this lawsuit to

require BLM to offer comment periods of 30 days.  Therefore, any suggestion that offering the draft EAs for 30 days was insufficient should be rejected.

Plaintiffs also suggest that offering only a 10-day protest period violated NEPA or FLPMA, and they claim that the failure to provide timely protests could result in a waiver of arguments in litigation.  *See* Pls. Br. at 17-18.  As discussed in section I.C.2, *supra*, there is no requirement for a protest period in NEPA or FLMPA and, in the oil and gas leasing context, there is no requirement to exhaust administrative remedies before filing suit in district court.  A party may waive an argument if it does not put the agency on notice of an issue when given the opportunity to do so during the administrative process.  *See Vermont Yankee*, 435 U.S. at 553-54; *Nat'l Parks Conservation Ass'n v. BLM*, 606 F.3d 1058, 1093-94 (9th Cir. 2010).  A party does not waive an argument, however, if it has provided sufficient notice of its concerns regarding an agency action during the NEPA process, which Plaintiffs had every opportunity to do with respect to the June 2018 Wyoming and Nevada lease sales.  Plaintiffs do not waive an argument merely because they do not raise the issues again in a protest; and there is no statutory or regulatory requirement for BLM to hold a protest period at all.  And, in any event, Plaintiffs were able to submit timely protests.  WY 9682-767; NV2Q 2039-2104.

## 2. September 2018 Wyoming Lease Sale

The September 2018 Wyoming lease sale complied with the public involvement requirements of NEPA and FLPMA.  BLM circulated two draft EAs for the High Plains and Wind River/Bighorn Basin Districts for 30-day comment periods, WY 19262-65, and circulated a third EA for a 15-day comment period.  WY 24270.  Plaintiffs fail to demonstrate that these procedures violated NEPA or FLMPA.

In order to satisfy the public involvement requirement of NEPA, an agency "must provide the public with sufficient environmental information, considered in the totality of circumstances, to permit members of the public to weigh in with their views and thus inform the agency decision-making process." *Bering Strait*, 524 F.3d at 953.  Plaintiffs fail to show that they were not given sufficient information to provide their input on the lease sale.  Indeed, the fact that they submitted public comments on the draft EAs, *see* WY 19401, 28124-60, shows that they were given sufficient information and time to comment on the proposed lease sale.  *See All. for Wild Rockies*, 2017 WL 1591840, at *6 ("Moreover, Alliance filed comments during the public comment period and those comments cover the same issues it now raises, showing that it had enough information to flag these issues for the Forest Service.").

In order to comply with Section 309(e) of FLPMA, BLM must allow the public "to comment upon the formulation of standards and criteria for, and to participate in, the preparation and execution of plans and programs for, and the management of, the public lands."  43 U.S.C. § 1739(e).  It may not "cut the public out" of management decisions.  *Kraayenbrink*, 538 F. Supp. 2d at 1316.  Plaintiffs fail to show that they were cut out of public involvement in the lease sale.

Finally, their reference to the 10-day protest period is to no avail because the protest period is not required by NEPA or FLPMA and, in any event, they submitted timely protests on the September 2018 Wyoming lease sale.  WY 28356-417.

### 3.    September 2018 Nevada Lease Sale

For the September 2018 Nevada lease sale, BLM determined that prior NEPA analyses and associated public comment periods were sufficient to comply with NEPA.  NV3Q 880-935 (Ely); NV3Q 1914-37 (Elko).  Reliance on a DNA is a valid form of NEPA compliance under the Department of the Interior's NEPA regulations.  *See* 43 C.F.R. §§ 46.120(c), 46.300(a)(2).

Where BLM determines that a proposed action is "essentially similar to" an earlier action that has already been analyzed in an existing NEPA document, then it may prepare a DNA and forego further NEPA analysis.  NEPA Handbook at 23; *see also Friends of Animals v. Haugrud*, 236 F. Supp. 3d 131, 132-33 (D.D.C. 2017) (discussing BLM's NEPA Handbook).  Reliance on a DNA may meet the requirements of NEPA.  *Summit Lake Paiute Tribe of Nev.*, 496 F. Appx. at 715-16; *cf. N. Idaho Cmty. Action Network v. U.S. Dep't of Transp.*, 545 F.3d 1147, 1154-55 (9th Cir. 2008) (when an agency determines that additional impacts on the environment will not be significant, it need not prepare a supplemental NEPA analysis).

Here, the record show that the public was involved during the preparation of the underling NEPA documents supporting the DNAs.  In the worksheet supporting the DNA, BLM's Ely District explained that the parcels offered for lease were adjacent to parcels that were previously analyzed in environmental assessments in 2013, 2014, and 2017.  NV3Q 881.  The prior EAs were each circulated for a 30-day public comment period, and there was an additional opportunity for public comment regarding areas offered for oil and gas leasing during the public comment period on the 2008 Ely RMP.  *Id.*

Similarly, the Elko District determined that two prior EAs prepared in 2017 and 2018, a programmatic oil and gas leasing EA, and the EIS for the Elko RMP were sufficient to provide NEPA coverage for the parcels that would be offered for sale in the Elko District.  NV3Q 1918-24.  Public involvement on the 2018 EA was provided by posting the nominated lease parcels in the Nevada State Office for a 48-day scoping period in August and September 2017 and posting the nominated parcels for the 2017 EA for 72-day scoping period from August to October 2016.  NV3Q 1922.  The Elko District DNA was made available for a 30-day public review period on n BLM's ePlanning website.  NV3Q 873; *see also* BLM ePlanning web page for the September

2018 Nevada lease sale, Ex. 1.  Plaintiffs have failed to demonstrate that these prior opportunities

for public comment were insufficient to meet the requirements of NEPA and FLPMA with

respect to the September 2018 Nevada lease sale.  *See Ctr. for Biological Diversity v. U.S.*

*Bureau of Land Mgmt.*, No. 3:17-CV-553-LRH-WGC, 2019 WL 236727, at *14 (D. Nev. Jan.

15, 2019) (upholding reliance on a DNA for an oil and gas lease sale).

Finally, as with the other sales, there is no requirement for a protest period under NEPA

or FLMPA, and therefore Plaintiffs' complaint that the protest period was too short fails to

demonstrate a statutory violation.

### 4.    September 2018 Utah Lease Sale

For the September 2018 Utah lease sale, BLM circulated EAs from the Fillmore Field

Office, UT 2723-99, and the Salt Lake Field Office, UT 22840-995, for 15-day public comment

periods.  UT 36657.  Plaintiffs submitted timely comments on the draft EAs.  UT 2815-34,

23003-22.  BLM held a 15-day scoping period for the third EA for the Price/Richfield Field

Offices, but Plaintiffs did not submit scoping comments.  Despite the shortened comment

periods, Plaintiff fail to demonstrate that the opportunities for public comment were inadequate

under the "totality of circumstances."  *Bering Strait*, 524 F.3d at 953.  Further, a scoping period

may suffice for purposes of allowing public involvement on an EA.  *See Wilderness Soc'y v. U.S.*

*Forest Serv.*, 850 F. Supp. 2d 1144, 1164 (D. Idaho 2012) ("Depending on the circumstances, the

agency could provide adequate information through public meetings or by a reasonably thorough

scoping notice.") (quoting *Bering Strait*, 524 F.3d at 951-52).  And the fact that they provided

comments undermines their argument that the opportunities for public involvement were

insufficient to comply with NEPA.  *See All. for Wild Rockies*, 2017 WL 1591840, at *6.  While

plaintiffs did not submit scoping comments on the Price Richfield EA, other entities did.  UT 7586-8545.

In sum, Plaintiffs have failed to demonstrate that BLM provided inadequate opportunities for public involvement with respect to the lease sales at issue.

**B.      If the Court Finds that the Lease Sale Decisions Violated NEPA or FLPMA, It Should Suspend the Leases**

If the Court finds that BLM violated NEPA or FLMPA with respect to the lease sales at issue, it should not vacate the leases sold and issued at those sales, but instead should suspend the oil and gas leasing decisions without vacating them.  Plaintiffs ask that the five lease sales be vacated.  Pls. Br. at 20.  The vacatur of the lease sales would result in the vacatur of any leases sold at those lease sales, which would impact the rights of lessees who are not before the Court. For that reason, courts have often suspended leases in such circumstances rather than issuing relief that would have the effect of voiding them.  The Court should do the same here.

Vacatur of a challenged action does not automatically flow from a NEPA violation. "Whether agency action should be vacated depends on how serious the agency's errors are and the disruptive consequences of an interim change that may itself be changed."  *Cal. Cmtys. Against Toxics v. U.S. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (internal quotation marks and citation omitted).  "[W]hen equity demands," an agency's decision may "be left in place while the agency follows the necessary procedures."  *Idaho Farm Bureau Fed'n*, 58 F.3d at 1405.  If the Court finds that BLM failed to sufficiently involve the public with respect to any of the challenged lease sales, BLM could remedy the defect by providing additional public comment.

Further, vacatur of the lease sales would have significant disruptive consequences for the lessees.  Declaring the lease sale void would terminate the lease rights of lessees who expended

significant effort and funds to obtain those rights and therefore should be denied.  *See Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 151 (9th Cir. 1993) (declining to vacate a rule due to the potential disruptive consequences).  In order to avoid the unjust result of stripping lessees of their lease rights, the Ninth Circuit has on several occasions sanctioned a remedy that fell short of vacating an oil and gas lease sale.  *See Conner v. Burford*, 848 F.2d 1441, 1460-61 & n.50 (9th Cir. 1988) (modifying a district court's order regarding oil and gas leases to clarify that the leases were suspended, not set aside, and enjoining surface-disturbing activity pending compliance with NEPA and the ESA); *N. Cheyenne Tribe v. Norton*, 503 F.3d 836, 842-44 (9th Cir. 2007) (upholding a partial injunction for coalbed methane development pending the preparation of additional NEPA analysis); *see also Mont. Wilderness Ass'n v. Fry*, 408 F. Supp. 2d 1032, 1038 (D. Mont. 2006) (suspending, rather than rescinding, leases issued in violation of NEPA and other statutes); *Colo. Envtl. Coal. v. Office of Legacy Mgmt.*, 819 F. Supp. 2d 1193, 1224 (D. Colo. 2011) (staying leases issued pursuant to an EA and FONSI), *amended on reconsideration*, No. 08-CV-01624-WJM-MJW, 2012 WL 628547 (D. Colo. Feb. 27, 2012).

Therefore, if the Court finds a violation, it should suspend the lease sale decisions, not vacate them, and order other appropriate relief.  *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 33 (2008) (a court finding a NEPA violation "has many remedial tools at its disposal, including declaratory relief or an injunction tailored to the preparation of an EIS").

## CONCLUSION

For the reasons stated above, summary judgment should be granted to Defendants on Plaintiffs' Fourth and Fifth Claims for Relief.

Respectfully submitted this 5th day of June, 2019,

BART M. DAVIS, Idaho Bar No. 2696
United States Attorney

CHRISTINE G. ENGLAND, California Bar No. 261501
Assistant United States Attorney
District of Idaho
Washington Group Plaza IV
800 East Park Boulevard, Suite 600
Boise, Id 83712-7788
Telephone: (208) 334-1211
Facsimile:   (208) 334-1414
E-mail: Christine.England@usdoj.gov

JEFFREY H. WOOD
Acting Assistant Attorney General

JOHN S. MOST, Virginia Bar No. 27176
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044
Tel: (202) 724-7386; Fax: (202) 526-6665
E-mail: John.Most@usdoj.gov

LUTHER L. HAJEK, Colorado Bar No. 44303
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
999 18th Street
South Terrace, Suite 370
Denver, CO 80202
Tel: (303) 844-1376; Fax: (303) 844-1350
E-mail: Luke.Hajek@usdoj.gov

*Counsel for Defendants*