BART M. DAVIS, Idaho Bar No. 2696
United States Attorney

CHRISTINE G. ENGLAND, California Bar No. 261501
Assistant United States Attorney
District of Idaho
Washington Group Plaza IV
800 East Park Boulevard, Suite 600
Boise, Id 83712-7788
Tel: (208) 334-1211; Fax: (208) 334-1414
Email: Christine.England@usdoj.gov

JEAN E. WILLIAMS
Deputy Assistant Attorney General

JOHN S. MOST, Virginia Bar No. 27176
LUTHER L. HAJEK, Colorado Bar No. 44303
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
999 18th St., South Terrace – Suite 370
Denver, CO 80202
Tel: (303) 844-1376; Fax: (303) 844-1350
E-mail: Luke.Hajek@usdoj.gov

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, *et al.*,<br><br>          Plaintiffs,<br><br>     vs.<br><br>DAVID BERNHARDT, Secretary of the Interior, *et al.*,<br>          Defendants. | Case No. 1:18-cv-00187-REB<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (PHASE ONE) [ECF No. 140]** |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

    I.    Plaintiffs' Claims Challenging IM 2018-034 Are Without Merit ......................... 2

        A.    The Issuance of IM 2018-034 Was Not a Final Agency Action................. 2

        B.    The Issuance of IM 2018-034 Did Not Require a Rulemaking or a
            NEPA Process ...................................................................................... 4

        C.    The Procedures in Instruction Memorandum 2018-034 Are
            Consistent with FLPMA and NEPA ........................................................ 5

            1.    Public Participation Under NEPA and FLPMA ........................... 5

            2.    Lease Sale Protests.......................................................................... 7

            3.    Parcel Review Timeframes ............................................................. 7

        D.    The Vacatur of IM 2018-034 Will Not Reinstate IM 2010-117, and
            Plaintiffs Have Not Demonstrated that Injunctive Relief Is
            Appropriate ......................................................................................... 8

    II.    BLM Provided Adequate Opportunities for Public Involvement With
        Respect to the Challenged Oil and Gas Lease Sales.......................................... 10

        A.    The Ten-Day Protest Periods Did not Violate NEPA or FLPMA ............ 10

        B.    The Wyoming, Nevada, and Utah Lease Sales Complied with NEPA
            and FLPMA ........................................................................................ 11

            1.    September 2018 Wyoming Lease Sale ......................................... 11

            2.    September 2018 Utah Lease Sale ................................................. 11

            3.    September 2018 Nevada Lease Sale ............................................. 12

            4.    June 2018 Wyoming and Nevada Lease Sales ............................. 13

        B.    If the Court Finds that the Lease Sale Decisions Violated NEPA or
            FLPMA, It Should Enjoin Surface Disturbing Activities on the
            Leases................................................................................................. 14

CONCLUSION................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*All. for Wild Rockies v. Farnsworth,*

No. 2:16-cv-433-BLW, 2017 WL 1591840 (D. Idaho May 1, 2017)...................................... 11

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n,*

988 F.2d 146 (D.C. Cir. 1993).................................................................................... 14

*Asarco, Inc. v. EPA,*

616 F.2d 1153 (9th Cir. 1980) .................................................................................... 8

*Bennett v. Spear,*

520 U.S. 154 (1997)................................................................................................... 2

*Bering Strait Citizens for Responsible Res. Dev. v. U.S. Army Corps of Eng'rs,*

524 F.3d 938 (9th Cir. 2008) ............................................................................. 5, 9, 11

*California v. U.S. Dep't of Agric.,*

575 F.3d 999 (9th Cir. 2009) ................................................................................ 9, 10

*Connor v. Buford,*

848 F.2d 1441 (9th Cir. 1988) ................................................................................. 15

*CropLife America v. EPA,*

329 F.3d 876 (D.C. Cir. 2003)................................................................................... 8

*Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.,*

No. 3:17-cv-553-LRH-WGC, 2019 WL 236727 (D. Nev. Jan. 15, 2019) .............................. 12

*Defs. of Wildlife v. Salazar,*

    776 F. Supp. 2d 1178 ................................................................................ 8

*Idaho Watersheds Project v. Hahn,*

    307 F.3d 815 (9th Cir. 2002) .................................................................... 7

*Mada-Luna v. Fitzpatrick,*

    813 F.2d 1006 (9th Cir. 1987) .............................................................. 4, 5

*Montana Wilderness Ass'n v. Fry,*

    408 F. Supp.2d 1032 (D. Mont. 2006) ................................................... 15

*N.Cheyenne Tribe v. Hodel,*

    851 F.2d 1152 (9th Cir. 1988) ............................................................... 15

*Paulsen v. Daniels,*

    413 F.3d 999 (9th Cir. 2005) ...................................................... 8, 10, 11

*San Juan Citizens All. v. U.S. Bureau of Land Mgmt.,*

    326 F. Supp. 3d 1227 (D.N.M. 2018) .................................................... 14

*Turtle Island Restoration Network v. U.S. Department of Commerce,*

    672 F.3d 1160 (9th Cir. 2012) ................................................................. 8

*United States v. Alameda Gateway Ltd.,*

    213 F.3d 1161 (9th Cir. 2000) ................................................................. 9

*United States v. Fifty-Three Eclectus Parrots,*

    685 F.2d 1131 (9th Cir. 1982) ................................................................. 9

*Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council,*

    435 U.S. 519 (1978)................................................................................. 9

*Western Energy Alliance v. Salazar*,

    No. 10-cv-237F, 2011 WL 3738240 (D. Wyo. Aug. 12, 2011)............................................. 3, 4

*Western Watersheds Project v. Kraayenbrink*,

    538 F. Supp. 2d 1302 (D. Idaho 2008) ..................................................................... 6

*WildEarth Guardians v. Zinke*,

    368 F. Supp. 3d 41 (D.D.C. 2019) .......................................................................... 15

*Wilderness Society v. Wisely*,

    524 F. Supp. 2d 1285 (D. Colo. 2007)..................................................................... 15

**Statutes**

5 U.S.C. § 553 ..................................................................................................................... 8

30 U.S.C. § 191(b) .............................................................................................................. 15

**Regulations**

43 C.F.R. §§ 46.120(c)................................................................................................. 6, 12

# INTRODUCTION

Plaintiffs' lawsuit presents the Court with a conundrum.  Plaintiffs argue that instruction memorandum ("IM") 2018-034 was improperly issued because it did not go through a rulemaking process pursuant to the Administrative Procedure Act ("APA") or a National Environmental Policy Act ("NEPA") process.  But the provisions of IM 2010-117 that Plaintiffs are asking the Court to reinstate suffer from the same alleged deficiencies.  Plaintiffs cannot have it both ways.  Either both IMs were validly issued, in which case IM 2018-034 is procedurally valid, or both IMs were invalidly issued, in which case neither can stand.  But the Court cannot vacate provisions in IM 2018-034 and then reinstate provisions of IM 2010-117.

As for the alleged substantive violations presented by IM 2018-034, Plaintiffs struggle to identify the legal violations that the IM purportedly commits.  Their latest brief focuses on the ten-day protest period and six-month parcel review periods, but neither of those provisions is contrary to any existing law or regulation.  With respect to the comment periods, Plaintiffs tacitly concede that the IM leaves the discretion to BLM employees to determine the nature and extent of public participation during the NEPA process in the oil and gas leasing context.  They would prefer that the Court impose the mandatory 30-day comment periods in the previous IM 2010-117, but those comment periods are not required by law, as BLM clearly stated when it adopted those provisions in IM 2010-117.  The Court cannot compel BLM to follow procedures beyond those that are required by law.

Plaintiffs have also failed to show that BLM violated the public participation requirements of NEPA or FLPMA with respect to any of the oil and gas lease sales at issue, at least two of which were subject to 30-day comment periods and all of which Plaintiffs provided comments on.  Accordingly, summary judgment should be granted to Defendants.

**ARGUMENT**

I.     **Plaintiffs' Claims Challenging IM 2018-034 Are Without Merit**

    A.     **The Issuance of IM 2018-034 Was Not a Final Agency Action**

IM 2018-034 is not a final agency action because it neither consummated the agency's decision-making process nor determined legal rights or obligations. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). Instead, it merely establishes a framework for the oil and gas leasing process, which is within the bounds of existing regulations and provides ample opportunity for agency officials to make choices that ultimately may affect the rights or obligations of third parties. The issuance of the IM itself is not a final agency action.

First, IM 2018-034 is not the "consummation" of the agency's decision-making process because it does not definitively direct BLM officials to follow a specific process for each oil and gas lease sale. Instead, it leaves the discretion to agency officials to decide what level of NEPA analysis to prepare and the degree of public comment to allow. *See* IM 2018-034 § III. Seizing on the provisions that they view as most definitive—the six-month parcel review period and the ten-day protest period—Plaintiffs argue that the IM removes agency discretion. But those provisions are not mandated (or restricted) by any law. Further, the time for parcel review can be extended "due to unforeseen circumstances," which leaves agency officials ample discretion to extend that time if necessary. *Id.* § III.A.

As to the central issue in Plaintiffs' case—the length of public comment periods—IM 2018-034 grants the discretion entirely to BLM officials. Indeed, it was IM 2010-117 that *removed* the discretion from agency officials to make those determinations and instead *mandated* 30-day public comment periods for both environmental assessments ("EA") and determinations of NEPA adequacy ("DNA"). *See* IM 2010-117 § III.E. And it did so *without* going through a

rulemaking process or a NEPA process, which Plaintiffs now claim was required for IM 2018-034. Plaintiffs argue that IM 2018-034 imposes a requirement on BLM officials to rely on a DNA if the agency has performed prior adequate NEPA analysis. *See* Pls.' Resp. at 12 (citing IM 2018-034 § III.D.). But they quote language out of context. In fact, that section gives BLM officials the discretion, even where prior NEPA analysis has been prepared, to do additional analysis. *See* IM 2018-034 ("If the authorized officer deems additional analysis to be necessary, then BLM can prepare an [EA] or Environmental Impact Statement (EIS), as appropriate."). Therefore, on the central issue in this case, IM 2018-034 leaves the discretion to the agency.

As to the second *Bennett* prong, IM 2018-034 does not determine rights or obligations. The procedures in the IM do not establish any legal rights—at most, the IM establishes procedures which ultimately could establish legal rights or obligations. The only case that Defendants are aware of that involved an IM regarding agency procedures is *Western Energy Alliance v. Salazar*, No. 10-cv-237F, 2011 WL 3738240 (D. Wyo. Aug. 12, 2011). In that case, the court determined that the guidance document at issue did not simply provide further detail consistent with existing statutes and regulations, and instead directly conflicted with a provision of the Energy Policy Act establishing a categorical exclusion. *Id.*; *see also id.* at *2-3. By contrast, in this case, Plaintiffs claim that the procedures in IM 2018-034 could lead BLM to violate NEPA or FLPMA when the procedures are applied to particular oil and gas lease sales, but they fail to identify the sort of direct statutory conflict at issue in *Western Energy Alliance*. Moreover, in *Western Energy Alliance*, the Court did not review the substance of the IM out of a "reluctance . . . to prejudge the public notice and comment process." *Id.* at *7. Likewise here, if the Court finds that IM 2018-034 is procedurally invalid, it should simply vacate the IM and remand to BLM for further analysis.

**B.     The Issuance of IM 2018-034 Did Not Require a Rulemaking or a NEPA Process**

IM 2018-034 is a general statement of policy establishing internal agency procedures and therefore did not require notice and comment rulemaking or a NEPA process.  Defendants agree that the critical factor in distinguishing a statement of policy or interpretive rule from a substantive rule is the degree of discretion accorded to agency officials to carry out the policy.  *See* Pls.' Resp. at 7.  But Defendants disagree with Plaintiffs that IM 2018-034 "leaves BLM officials no discretion as to the details relevant here."  *Id.*  In support of this broad statement, Plaintiffs again cite the six-month parcel review period and the ten-day protest period.  *See id.*  But these periods are not prescribed by law, and they are not the public review provisions.

Plaintiffs have built their case around the notion that IM 2018-034 imposes a "severe restriction of public involvement" in the oil and gas leasing process.  Pls.' Reply at 1.  But to the extent that comment periods have been streamlined for recent oil and gas lease sales, that is not mandated by IM 2018-034.  Instead, IM 2018-034 provides that BLM "may provide for public participation during the NEPA process" and leaves it to BLM state and field offices to "determine the appropriate form of NEPA compliance documentation" for oil and gas lease sales.  IM 2018-034 §§ III.B.5 & III.D.  Therefore, it is not a substantive rule.  *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1013 (9th Cir. 1987) (recognizing that an agency pronouncement is not legislative in nature when it leaves officials "free to exercise discretion").  Further, no NEPA compliance was required because the issuance of IM 2018-034 was not a major federal action requiring a NEPA process.  *See* Defs.' Mem. at 18-19.

The logical conclusion of Plaintiffs' position is that BLM cannot provide any guidance to its stated and field offices about compliance with NEPA and FLPMA in carrying out the oil and

gas leasing process without undertaking a substantive rulemaking action.  Plaintiffs dismiss this as an "extremist position," Pls.' Resp. at 8, but they fail to explain what sort of guidance BLM may provide without going through those processes.  Instead, they suggest that "[i]f BLM objects to the time a proper rulemaking process would take, its complaints should be addressed to Congress."  *Id.*  This glib response does nothing to address BLM's real world problem of providing timely guidance to its state and field offices regarding the oil and gas leasing process.  And it cannot be reconciled with Plaintiffs' desire to impose the non-discretionary comment and protest periods described in IM 2010-117 without going through a rulemaking process.

Accordingly, Plaintiffs' argument that IM 2018-034 violated rulemaking requirements has no basis in law and should be rejected.

### C.    The Procedures in Instruction Memorandum 2018-034 Are Consistent with FLPMA and NEPA

On their face, the procedures in IM 2018-034 are consistent with the requirements of NEPA or FLPMA, and Plaintiffs fail to demonstrate otherwise.

### 1.    Public Participation Under NEPA and FLPMA

The public participation provisions in IM 2018-034 comply with NEPA and FLPMA. *See* IM 2018-034 §§ III.B.5, III.D.  Plaintiffs largely gloss over NEPA, failing to refer to the binding standards established by the Ninth Circuit.  *See Bering Strait Citizens for Responsible Res. Dev. v. U.S. Army Corps of Eng'rs*, 524 F.3d 938 (9th Cir. 2008).  As the Ninth Circuit has explained, the sufficiency of the opportunity for public comment for an EA is to be judged based on "the totality of circumstances," and "the circulation of a draft EA is not required in every case."  *Id.* at 952-53.  By allowing BLM and state and field offices to choose the appropriate level of public participation in particular circumstances, the IM does not violate NEPA.

Plaintiffs counter that, if BLM chooses to use a DNA, there would be no opportunity for public involvement.  Pls.' Resp. at 9.  But the practice of using a DNA is expressly adopted in BLM's regulations, *see* 43 C.F.R. §§ 46.120(c), 46.300(a)(2), and plaintiffs do not challenge the regulations or the legality of relying on DNAs.  Plaintiffs' argument, moreover, collapses because the very purpose of a DNA is to determine whether pre-existing NEPA analysis fully satisfies BLM's NEPA obligations—including its public involvement obligations—with respect to a particular proposed action.  It would make little sense to impose a public involvement requirement at this stage, and indeed, NEPA does no such thing.

Plaintiffs next argue, if no opportunity for public involvement is provided at the leasing stage, that would be a violation of section 309(e) of FLPMA.  *See* Pls.' Resp. at 9-10.  But Plaintiffs cite no case holding that a separate public comment period at the leasing stage is required by section 309(e).  They compare the IM to the circumstances in *Western Watersheds Project v. Kraayenbrink*, 538 F. Supp. 2d 1302, 1315-16 (D. Idaho 2008), *aff'd in part and vacated in part*, 632 F.3d 472 (9th Cir. 2011), but *Kraayenbrink* does not support Plaintiffs' arguments.  The grazing regulations at issue in *Kraayenbrink* removed public participation provisions from BLM's existing regulations.  *See* 538 F. Supp. 2d at 1309.  IM 2018-034 does not change any existing regulations and does not even mention FLPMA.  *See* IM 2018-034 § III.5.  In other words, the IM does nothing to affect any legal obligations that BLM has under section 309(e).

Moreover, the FLPMA ruling on which Plaintiffs rely was reversed and vacated on appeal.  *See Kraayenbrink*, 632 F.3d at 498-500.  Evaluating the section 309(e) claim, the Ninth Circuit stated that "[i]t is not obvious, however, whether the 2006 regulations—limiting input and eliminating it entirely from certain management decisions—were in direct and unreasonable

disregard of that statutory requirement." *Id.* at 499.  The court then explained that the district

court had failed to properly apply *Chevron* deference to the agency's interpretation of FLPMA

and therefore "vacate[d] the district court's grant of summary judgment to Plaintiffs on this

claim." *Id.*  Accordingly, *Kraayenbrink* cannot support Plaintiffs' section 309(e) argument.

### 2.      Lease Sale Protests

Plaintiffs point to no provision of law or BLM's regulations that require a protest period

to be of a particular length.  Instead, they argue that, under a shortened protest period, they risk

waiver of claims.  *See* Pls.' Resp. at 6.  The cases they cite, however, were in the grazing context

and involved the question of whether the plaintiffs were required by BLM's regulations to appeal

grazing decisions to the Interior Board of Land Appeals before filing suit in district court.  *See*

*Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 824-29 (9th Cir. 2002); Mem. Dec. & Order at

31-33, ECF No. 52, *W. Watersheds Project v. U.S. Dep't of the Interior*, No. 1:15-cv-REB (D.

Idaho Sept. 30, 2016).  There is no requirement to exhaust administrative remedies in the oil and

gas leasing context.  *See* Defs.' Mem. at 26.  Moreover, Plaintiffs were able to file protest within

the protest periods.  *See*, *e.g.*, WY 9682-9767.

### 3.      Parcel Review Timeframes

Plaintiffs fail to demonstrate that a six-month parcel review timeframe, on its face,

violates NEPA or FLPMA.  The Court did not previously enjoin this provision, and although

Plaintiffs claim that the circumstances are different now because the Court has the full record,

they cite only a declaration that was submitted during the preliminary injunction phase.  *See* Pls.'

Resp.  at 7 n.4.  Moreover, while the Court may consider Plaintiff's declarations for purposes of

determining whether they have standing, it may not consider extra-record evidence "to determine

the correctness or wisdom of the agency's decision." *Asarco, Inc. v. EPA*, 616 F.2d 1153, 1160

(9th Cir. 1980).

Accordingly, Plaintiffs have failed to show that IM 2018-034, on its face, violates NEPA

or FLPMA.

### D.   The Vacatur of IM 2018-034 Will Not Reinstate IM 2010-117, and Plaintiffs Have Not Demonstrated that Injunctive Relief Is Appropriate

If the Court finds that any provision of IM 2018-034 is unlawful, it may vacate those

provisions, but the result of the vacatur will not be to reinstate provisions of IM 2010-117.

Plaintiffs cite no authority for the proposition that the vacatur of an IM would reinstate a prior

IM, particularly one that was issued without notice and comment rulemaking.  *See* Pls.' Resp. at

22 & n.10.  Instead, the cases they cite involve the reinstatement of prior rules, not policies.  *See*

*Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005) (prison regulations); *Defs. of Wildlife v.*

*Salazar*, 776 F. Supp. 2d 1178, 1186 (D. Mont. 2011 (wolf delisting rule).  As Plaintiffs note, the

D.C. Circuit's decision in *CropLife America v. EPA*, 329 F.3d 876 (D.C. Cir. 2003), refers to the

reinstatement of a "previous practice," *id.* at 884, but the previous practice was based on

"statutory requirements" and preexisting regulations.  *Id.* at 884-85.  There is no authority for the

reinstatement of a prior guidance document.[1]

Plaintiffs suggest that IM 2010-117 is, in fact, a "rule," Pls.' Resp. at 22, but IM 2010-

117 cannot be considered to be a rule because it did not go through a rulemaking process.  *See* 5

U.S.C. § 553.  In order to have the force and effect of law and thus be enforceable against the

---

[1] Plaintiffs also cite *Turtle Island Restoration Network v. U.S. Department of Commerce*, 672 F.3d 1160, 1165 (9th Cir. 2012), but that case involved a consent decree, so any statements in the opinion as to what would have resulted had a consent decree not been entered are *dicta*. Moreover, the court concluded that the consent decree did more than a simple vacatur and remand and, in fact "function[ed] as an injunction by both prohibiting and ordering actions."  *Id.*

Defendants' Reply in Support of Motion for
Summary Judgment (Phase One) [ECF No. 140]                                                   8

agency (as a rule would), an "agency pronouncement must (1) prescribe substantive rules—not interpretive rules, general statements of policy or rules of agency organization, procedure or practice—and, (2) conform to certain procedural requirements." *United States v. Fifty-Three Eclectus Parrots*, 685 F.2d 1131, 1136 (9th Cir. 1982) (citation and internal quotation marks omitted); *see also United States v. Alameda Gateway Ltd.*, 213 F.3d 1161, 1168 (9th Cir. 2000). IM 2010-117 does not have the force and effect of law because it was a general statement of policy and did not go through the required process for a substantive rule; therefore, it cannot be enforced against the agency.

Further, the Court cannot reinstate provisions of IM 2010-117 as an equitable remedy. A court cannot order an agency to follow procedures beyond those that are required by law. *See Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council*, 435 U.S. 519, 548 (1978) (a court cannot compel an agency to follow procedures beyond the "statutory *minima*"). The provisions of IM 2010-117 that Plaintiffs seek to have the Court impose go beyond the minimum requirements of NEPA and FLPMA. Even when BLM imposed the non-discretionary 30-day comment periods for EAs and DNAs in 2010, it recognized that such comment periods were "not required by law or regulation." IM 2010-117 § III.E. That remains true today—a 30-day public comment period is not mandated by NEPA, and instead public participation must be judged based on the "totality of circumstances." *Bering Strait*, 524 F.3d at 953. Therefore, under *Vermont Yankee*, the Court may not order BLM to follow procedures that go beyond what is required by the statute.

Plaintiffs argue that the Court could reinstate provisions of IM 2010-117 as an equitable remedy based on the court's reinstatement of the roadless rule in *California v. U.S. Dep't of Agric.*, 575 F.3d 999, 1019-20 (9th Cir. 2009). But that was merely another instance in which a

court reinstated a validly promulgated rule.  *See id.* at 1020 (citing *Paulsen*, 413 F.3d at 1008).  It does not support the proposition that a court may reinstate provisions of an IM, which went through no rulemaking process and which contains provisions that go beyond what is required by law.

In sum, Plaintiffs have failed to demonstrate that reinstatement of provisions of IM 2010-117 is appropriate.

## II.     BLM Provided Adequate Opportunities for Public Involvement With Respect to the Challenged Oil and Gas Lease Sales

As to the five challenged oil and gas lease sales, Plaintiffs fail to demonstrate that the opportunities for public comment were insufficient to comply with NEPA and FLPMA.  Even if the Court finds that a procedural violation occurred, it should remand the leasing decisions and enjoin surface disturbing activities while BLM allows additional comment.  The Court should not take the drastic step of vacating leases—and thereby cancelling lease rights and requiring the return of millions of dollars in bonus bids, almost have of which have already been disbursed to the respective states—when the procedural violation could be cured in a matter of weeks.

### A.     The Ten-Day Protest Periods Did not Violate NEPA or FLPMA

Plaintiffs again place great weight on the shortened protest period, *see* Pls.' Resp. at 12-14, but a ten-day protest period does not violate NEPA or FLPMA.  They still fail to cite any authority to the contrary; nor is exhaustion of administrative remedies required in the oil and gas leasing context.  Plaintiffs discuss the difficulties that they had in complying with the deadline, but the question for the Court is not whether complying with the deadline was difficult, but whether it violated a statutory mandate.  Plaintiffs point to no such authority, and they fail to identify any lease sale for which they were unable to submit a protest.

**B.      The Wyoming, Nevada, and Utah Lease Sales Complied with NEPA and FLPMA**

As discussed below, Plaintiff have failed to show that BLM provided inadequate opportunities for public comment regarding the Wyoming, Nevada, and Utah lease sales at issue in order to meet the requirements of NEPA and FLPMA.

**1.      September 2018 Wyoming Lease Sale**

As Plaintiffs acknowledge, BLM circulated two draft EAs regarding a first batch of parcels for 30-day public comment periods. *See* Pls.' Resp. at 14; WY 19262-65. They complain that BLM posted a third EA for only a 14-day comment period. Pls.' Resp. at 14-15; WY 24270. They do not dispute, however, that they submitted comments in response to the third EA. *See* WY 28124-60. In fact, they submitted detailed comments covering a range of topics, including greenhouse gas emissions, impacts on Sage-Grouse, and impacts on air and water resources. *See id.* Plaintiffs fail to demonstrate that they were not provided sufficient information or sufficient time in order to provide their views to the agency. *See Bering Strait*, 524 F.3d at 953; *All. for Wild Rockies v. Farnsworth*, No. 2:16-cv-433-BLW, 2017 WL 1591840, at *6 (D. Idaho May 1, 2017).

**2.      September 2018 Utah Lease Sale**

For the September 2018 Utah lease sale, BLM circulated two EAs for 15-day public comment periods. *See* UT 2723-99, 22840-995, 36657. Plaintiffs submitted detailed comments on the two EAs. UT 2815-34, 23003-22. They do no explain what other issues they could have raised or discussed in more detail had the comment periods been longer. They argue that the 15-day scoping period that BLM held for a third EA was too short for them to provide comment, Pls.' Resp. at 15-16, but they fail to explain why other parties were able to submit scoping

comments, *see* UT 7586-8545, while they did not.   And, in any event, they point to no statutory

provision or case requiring a comment period of any particular length, let alone 30 days.

### 3.     September 2018 Nevada Lease Sale

For the September 2018 Nevada lease sale, BLM issued a DNA, thus certifying that the

environmental impacts of the sale were analyzed in prior NEPA documents.  *See* Defs.' Mem. at

32-34.  Plaintiffs fail to refute that a DNA is valid evidence of NEPA compliance under the

Department of the Interior's NEPA regulations.  *See* 43 C.F.R. §§ 46.120(c), 46.300(a)(2).[2]

Nevertheless, they argue that reliance on a DNA for the September 2018 Nevada lease sale was

improper because BLM did not previously analyze site-specific impacts and BLM violated its

NEPA Handbook by not allowing additional comments.  Neither of these arguments has merit.

First, BLM explained in the worksheets prepared by the Ely District Office and the Elko

District Office that the lease parcels subject to the sales were previously analyzed in prior EAs

that were subject to 30-day public review periods, as well as in prior EISs supporting the

resource management plans for the Ely and Elko Districts.  *See* Defs.' Mem. at 32-4; Defs.'

Statement of Material Facts in Supp. of Mot. for Partial Summ. J. (Phase One) ¶¶ 14-15, ECF

No. 140-3.  Plaintiffs argue that BLM's DNAs were necessarily insufficient because the prior

EAs analyzed adjacent parcels, not the parcels subject to the current lease sale.  *See* Pls.' Resp. at

17.  But a DNA may suffice as long as BLM determines that the impacts of the proposed sale of

the parcels would be similar to the impacts of the ones that were already analyzed.  *See Ctr. for*

*Biological Diversity v. U.S. Bureau of Land Mgmt.*, No. 3:17-cv-553-LRH-WGC, 2019 WL

---

[2] Plaintiffs cite Mem. Decision & Order, ECF No. 129, *Idaho Watersheds Project v. Hahn*, No.
97-cv-519-S-BLW (D. Idaho Mar. 31, 1999), but they fail to explain how that decision, which
involved whether BLM was required to supplement its NEPA analysis before issuing grazing
permits, *see id.* at 1, is relevant here.

236727, at *13-14 (D. Nev. Jan. 15, 2019) (upholding BLM's reliance on a DNA for an oil and gas lease sale comprised of parcels that were "adjacent to or very near one of the parcels" previously analyzed under NEPA), *amended on reconsideration*, 2019 WL 3848788 (Aug. 15, 2019).  Similarly here, BLM determined that additional NEPA analysis would not reveal additional impacts that had not already been considered in the prior EAs and EISs.  *See* NV3Q 880-84, 1918-24.

Second, Plaintiffs claim that BLM violated the procedures in its own NEPA Handbook regarding DNAs.  *See* Pls.' Resp. at 17-18.  They argue that the handbook requires BLM to provide for additional public participation if "the new proposed action has not already been discussed during public involvement for the existing EA or EIS."  Pls.' Resp. at 18 (quoting BLMW 298).  In accordance with the handbook, however, BLM officials have the discretion to decide whether additional public participation is warranted.  *See* BLMW 299.  Moreover, Plaintiffs ignore the fact that the Elko District DNA was made available for a 30-day public comment period.  *See* Defs.' Mem. at 33-34.

### 4.    June 2018 Wyoming and Nevada Lease Sales

Plaintiffs offer no additional argument as to the June 2018 Wyoming and Nevada lease sales.  As already demonstrated, BLM prepared draft EAs and circulated them for 30-day public comment periods.  *See* Defs.' Mem. at 30-31.  Therefore, BLM complied with NEPA and FLPMA.

In sum, Plaintiffs have failed to demonstrate that BLM provided inadequate opportunities for public involvement with respect to the lease sales at issue.

**B.** **If the Court Finds that the Lease Sale Decisions Violated NEPA or FLPMA, It Should Enjoin Surface Disturbing Activities on the Leases**

If the Court finds that BLM violated NEPA or FLPMA with respect to the lease sales at issue, it should not vacate the leases sold, but instead should enjoin surface disturbing activities on the leases pending further public comment. Vacatur of the leases would be very disruptive and it is not warranted given that any violation that the Court might find in this phase of the litigation could be cured by providing additional opportunities for public comment.

Applying the factors in *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146 (D.C. Cir. 1993), Plaintiffs argue that a violation of the public review requirements of NEPA is a serious deficiency. *See* Pls.' Resp. at 25-26. Defendants disagree, of course, that the Court should find any violations of NEPA, let alone any serious violations. But the most that the Court could find is that BLM violated one aspect of NEPA, *i.e.*, the requirement for adequate public review. In other words, this is not a typical case where a court is asked to review the entirety of the agency's NEPA compliance. Therefore, this case is unlike other cases cited by Plaintiffs that involved a court's review of the agency's NEPA compliance as a whole. *See*, *e.g.*, *San Juan Citizens All. v. U.S. Bureau of Land Mgmt.*, 326 F. Supp. 3d 1227, 1239-57 (D.N.M. 2018) (setting aside leases after finding that BLM had violated NEPA by failing to adequately analyze several categories of impacts).

Instead, this phase of the litigation involves only consideration of whether the opportunities for public comment were sufficient. While this aspect of NEPA clearly is important, any violation that the Court might find at this stage could be addressed by reopening the public comment periods for some additional time, after which BLM would consider those comments. As in *Allied-Signal*, after this review is completed, it may be the case that BLM "will

be able to substantiate" its prior leasing decisions.  988 F.3d at 151.  Vacatur of the leases is not

warranted where the deficiencies identified by the Court could be remedied in a matter of weeks.

Further, as Plaintiffs concede, vacatur of the lease sales would have significant disruptive

consequences for the lessees.  *See* Pls.' Resp. at 28.  The lease rights would be terminated, and

BLM would be required to return over $125 million to the lessees (almost half of which has

already been disbursed to the respective states pursuant to 30 U.S.C. § 191(b)).  *See* Def.-Ints.'

Mem. in Supp. of Mot. for Partial Summ. J. (Phase One) at 19, ECF No. 148-1.  Moreover, harm

to the environment can be avoided during the remand period by enjoining surface disturbing

activities rather than vacating the leases.  *See Connor v. Buford*, 848 F.2d 1441, 1460-61 (9th

Cir. 1988) (enjoining surface disturbing activities pending pending compliance with NEPA and

the Endangered Species Act ("ESA")); *WildEarth Guardians v. Zinke*, 368 F. Supp. 3d 41, 85

(D.D.C. 2019) (enjoining BLM from issuing APDs pending further NEPA analysis); *Wilderness*

*Society v. Wisely*, 524 F. Supp. 2d 1285, 1305-06 (D. Colo. 2007) (enjoining activity on the

leases pending further consultation under the ESA); *Montana Wilderness Ass'n v. Fry*, 408 F.

Supp.2d 1032, 1038 (D. Mont. 2006) (enjoining surface disturbing activities on oil and gas leases

pending compliance with NEPA and the ESA).  Plaintiffs suggest that, if the leases are not

suspended, the analysis on remand will not be sufficiently robust.  *See* Pls.' Resp. at 27.  The

Court, however, must "assume the [agency] will comply with the law."  *N. Cheyenne Tribe v.*

*Hodel*, 851 F.2d 1152, 1157 (9th Cir. 1988).  Therefore, if the Court finds a violation, it should

suspend the lease sale decisions, not vacate them.

## CONCLUSION

For the reasons stated above and in Defendants' opening brief, summary judgment should

be granted to Defendants on Plaintiffs' Fourth and Fifth Claims for Relief.

Respectfully submitted this 20th day of August, 2019,

BART M. DAVIS, Idaho Bar No. 2696
United States Attorney

CHRISTINE G. ENGLAND, California Bar No. 261501
Assistant United States Attorney
District of Idaho
Washington Group Plaza IV
800 East Park Boulevard, Suite 600
Boise, Id 83712-7788
Telephone: (208) 334-1211
Facsimile:   (208) 334-1414
E-mail: Christine.England@usdoj.gov

JEAN E. WILLIAMS
Acting Assistant Attorney General

JOHN S. MOST, Virginia Bar No. 27176
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044
Tel: (202) 724-7386; Fax: (202) 526-6665
E-mail: John.Most@usdoj.gov

LUTHER L. HAJEK, Colorado Bar No. 44303
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
999 18th Street
South Terrace, Suite 370
Denver, CO 80202
Tel: (303) 844-1376; Fax: (303) 844-1350
E-mail: Luke.Hajek@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of August, 2019, I filed a copy of the foregoing Defendants' Reply in Support of Motion for Summary Judgment (Phase One) [ECF No. 140] electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

Attorneys for Plaintiffs Western Watersheds Project and Center for Biological Diversity

Laurence J. Lucas
llucas@advocateswest.org

Talasi B. Brooks
tbrooks@advocateswest.org

Todd C. Tucci
ttucci@advocateswest.org

Counsel for Intervenor-Defendant State of Wyoming

Erik Edward Petersen
erik.petersen@wyo.gov

Michael M. Robinson
mike.robinson@wyo.gov

Paul A. Turcke
pat@msbtlaw.com

Counsel for Intervenor-Defendant Western Energy Alliance

Bret A. Sumner
bsumner@bwenergylaw.com


/s/ Luther L. Hajek
Luther L. Hajek