Laurence J. ("Laird") Lucas (ISB # 4733)
llucas@advocateswest.org
Todd C. Tucci (ISB # 6526)
ttucci@advocateswest.org
Sarah Stellberg (ISB #10538)
sstellberg@advocateswest.org
Advocates for the West
P.O. Box 1612
Boise, ID 83701
(208) 342-7024
(208) 342-8286 (fax)

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT and CENTER FOR BIOLOGICAL DIVERSITY, | Case No. 1:18-cv-00187-REB |
| Plaintiffs, | **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION AND CLARIFICATION OF PHASE ONE REMEDIES [ECF NO. 175]** |
| v. | |
| DAVID BERNHARDT,* Secretary of Interior, *et al.*, | |
| Defendants, | |
| and, | |
| STATE OF WYOMING; WESTERN ENERGY ALLIANCE, | |
| Defendants-Intervenors. | |

*\* Official Defendant automatically substituted
per Fed. R. Civ. P. 25(d)*

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 54(b), Plaintiffs Western Watershed Project and Center for Biological Diversity respectfully seek limited reconsideration and clarification of the remedies portion of the Court's February 27, 2020 Memorandum Decision and Order. Specifically, Plaintiffs respectfully request that the Court (1) reconsider the geographic limitation on its vacatur of IM 2018-034, an issue the parties did not address in briefing; (2) clarify that it vacated, rather than enjoined, the relevant portions of IM 2018-034.

On February 27, 2020, this Court issued a decision granting Plaintiffs' Motion for Partial Summary Judgment (Phase One) ("Phase One Order"). ECF No. 174. With regard to Plaintiffs' challenge to IM 2018-034, the Court concluded that the IM should have been issued through notice-and-comment procedures, *id.* at 31; was substantively inconsistent with FLPMA's and NEPA's public participation mandates, *id.* at 37; and arbitrary and capricious, *id.* at 41.

As a remedy for these violations, the Court determined that vacatur was warranted under the *Allied Signal* factors, but limited its vacatur to "oil and gas lease sales contained in whole or in part within the Sage-Grouse Plan Amendments' recognized 'Planning Area Boundaries' encompassing 'Greater-Sage-Grouse Habitat Management Areas,'" given the overarching focus of this case on leasing in sage-grouse habitat. *Id.* at 62. The Court declined to vacate the at-issue provisions of IM 2018-034 as to lease sales encompassing other public lands. *Id.*

Plaintiffs respectfully urge the Court to reconsider this geographically-limited vacatur. As discussed below, the Court reached its decision without the benefit of adversarial briefing and erred by applying a standard of "narrow tailoring" applicable only to injunctive relief. This approach is at odds with longstanding precedent and would constitute a major expansion of the narrow *Allied-Signal* exception to the presumptive APA remedy of vacatur.

## LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) allows for reconsideration of any order "that adjudicates fewer than all the claims" "at any time."[1] A district court can reconsider an interlocutory order "for cause seen by it to be sufficient." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001); *see also Limary v. United Parcel Serv., Inc.*, No. 1:15-CV-00394-EJL, 2018 WL 1434806, at *1 (D. Idaho Mar. 22, 2018) (court has "broad discretion" to reconsider under Rule 54); Notes of Advisory Committee on Rules, Fed. R. Civ. P. 60(b) (reconsideration of interlocutory judgments allowed "as justice requires").

Appropriate circumstances for reconsideration under Rule 54 include where the court has "patently misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or [where] a controlling or significant change in the law has occurred." *Washington Tennis & Educ. Found., Inc. v. Clark Nexsen, Inc.*, 324 F. Supp. 3d 128, 135 (D.D.C. 2018) (citation omitted); *see also Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (listing similar examples); *United States v. Hoyts Cinemas Corp.*, 380 F.3d 558, 574 (1st Cir. 2004) ("[C]ourts often address issues on which the parties may not earlier have focused fully; motions to reconsider exist partly for this reason."); *Above the Belt, Inc. v. Mel Bohannon Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983) ("[A] motion to reconsider may perform a valuable function . . .

---

[1] Rules 59(e) and 60(b) also govern reconsideration but come into play only after final judgment has been issued. *See* Fed. R. Civ. P. 59(e) (providing for a "motion to alter or amend a judgment"); Fed. R. Civ. P. 60(b) (providing "grounds for relief from a final judgment"). Rule 54's approach to reconsideration is more flexible. *See Cobell v. Jewell*, 802 F.3d 12, 19 (D.C. Cir. 2015) (district court erred in applying the more stringent Rule 59(e) standard to reconsideration of an interlocutory order); *Cabral v. Brennan*, 853 F.3d 763, 766 (5th Cir. 2017) (reconsideration of partial summary judgment should be analyzed under Rule 54(b)).

[where the Court] has made a decision outside the adversarial issues presented to the Court by the parties[.]"); *Neal v. Honeywell, Inc.*, 958 F. Supp. 345, 347 (N.D. Ill. 1997) (reconsidering ruling where parties "had not raised the issue and hence . . . had not briefed it on the motion for summary judgment").

## ARGUMENT

## I.   RECONSIDERATION IS WARRANTED.

Plaintiffs recognize that reconsideration is appropriate in limited circumstances only. However, a reexamination of the geographic limitation on the Court's vacatur of IM 2018-034 is warranted here for several reasons.

First, the appropriateness of a geographically-tailored vacatur was not addressed in the parties' briefing, as Defendants and Intervenors did not argue for this limitation. Under the APA, the default statutory remedy is vacatur of the challenged action in its entirety. *See* 5 U.S.C. § 706(2)(A). Plaintiffs argued for that default remedy in briefing. *See* Pls. Op. Br. at 2, 19 (ECF No. 135-1); Pls. Reply Br. at 21–22 (ECF No.158). The burden was on Defendants to show that compelling equities demanded anything less. *Ctr. for Envtl. Health v. Vilsack*, No. 15-cv-01690-JSC, 2016 WL 3383954, at *13 (N.D. Cal. June 20, 2016). Nonetheless, Defendants and Intervenors presented *no* argument about the appropriate remedy for IM 2018-034. Neither did they argue that the equities favored leaving IM 2018-034 intact in non-sage-grouse habitat. Accordingly, Plaintiffs did not anticipate the need to defend against a possible limitation, because it appeared to be a nonissue or a conceded one. *Cf. Greenlaw v. United States*, 554 U.S. 237 (2008) ("In our adversary system, . . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.").

Plaintiffs recognize that the Court narrowed its preliminary injunction in the same

fashion. However, vacatur under the APA is distinct from the extraordinary remedy of preliminary injunctive relief and is *not* subject to the same narrow tailoring. *See infra* II.C (distinguishing vacatur and injunctive relief). Additionally, while Plaintiffs bore the burden of demonstrating the propriety of preliminary injunctive relief, the defendant must establish that vacatur is unwarranted. *See Ctr. for Envtl. Health*, 2016 WL 3383954, at *13. In light of the different standard, burden, and nature of the remedy of vacatur—and lack of any party's request for such narrowing—Plaintiffs did not anticipate the need to brief this issue.

As a result, Plaintiffs were unable to bring to the Court's attention controlling and persuasive cases on the proper scope of vacatur, including a growing body of district court decisions that have deemed similar geographic limitations on vacatur inappropriate. Thus, reconsideration is also warranted to allow the Court to examine these authorities and prevent a manifest error of law.

## II.     VACATUR OF IM 2018-034 SHOULD NOT BE GEOGRAPHICALLY LIMITED.

### A.     The APA Statutorily Prescribes Vacatur of Invalid Actions.

Where an agency action is found invalid, the APA dictates a remedy: the action "shall be . . . set aside." 5 U.S.C. § 706. The U.S. Supreme Court describes the remedy of vacatur as mandatory. *See, e.g.*, *FCC v. Nextwave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003) ("The [APA] requires federal courts to set aside federal agency action that is 'not in accordance with law.'"); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (the APA "commands reviewing courts to 'hold unlawful and set aside'" unlawful agency action).

Courts have long understood the "set aside" language to require wholesale invalidation of an unlawful rule—rather than an order proscribing the rule's application to the geography, circumstances, or plaintiffs at issue. As Justice Blackmun observed in *Lujan v. National Wildlife*

*Federation*, 497 U.S. 871 (1990):

> The Administrative Procedure Act permits suit to be brought by any person "adversely affected or aggrieved by agency action." 5 U.S.C. § 702. In some cases the "agency action" will consist of a rule of broad applicability; and if the plaintiff prevails, the result is that the rule is invalidated, not simply that the court forbids its application to a particular individual. Under these circumstances a single plaintiff, so long as he is injured by the rule, may obtain "programmatic" relief that affects the rights of parties not before the court. On the other hand, if a generally lawful policy is applied in an illegal manner on a particular occasion, one who is injured is not thereby entitled to challenge other applications of the rule.

*Id.* at 913 (Blackmun, J., dissenting).[2] This is consistent with the notion that agency action taken in violation of the APA "cannot be afforded the 'force and effect of law.'" *Chrysler Corp. v. Brown*, 441 U.S. 281, 313 (1979); *see also W.C. v. Bowen*, 807 F.2d 1502, 1505 (9th Cir. 1987) ("An agency rule which violates the APA is void."). It also tracks the traditional remedy for a successful facial challenge. *Norton v. Shelby County*, 118 U.S. 425, 442 (1886) ("An unconstitutional act is not a law . . . [I]t is, in legal contemplation, as inoperative as though it had never been passed."); *Ezell v. City of Chicago* (7th Cir. 2011) 651 F.3d 684, 698 ("a successful facial attack means the statute is wholly invalid and cannot be applied to anyone.").

The D.C. Circuit has long held that because the APA remedy is directed at the entire "final agency action," the proper remedy is to set aside the action wholesale. *See Nat'l Mining*, 145 F.3d at 1409 ("When a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed.") (quoting *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989)); *Make the Road N.Y. v. McAleenan*, 405 F. Supp. 3d 1, 67 (D.D.C. 2019) ("the

---

[2] While writing in dissent, Blackmun expressed the view of all nine Justices on this issue. *See Lujan,* 497 U.S. at 890 n. 2 (majority opinion) (agreeing that a person aggrieved by an agency regulation can secure programmatic relief through an APA challenge); *see also Nat'l Mining Ass'n v. U.S. Army Corps of Engrs.*, 145 F.3d 1399 (D.C. Cir. 1998).

appropriate remedy under the APA is for the court to prohibit the rule's applicability in any and all circumstances").

The Ninth Circuit, citing *Lujan* and *National Mining*, has similarly found that the proper scope of vacatur is necessarily the same as the "final agency action" itself. *See Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018); *see also Earth Island Inst. v. Ruthenbeck*, 490 F.3d 687, 699 (9th Cir. 2007) (vacatur "is compelled by the text of the [APA]"). In decision issued just last month, the Ninth Circuit observed that under the APA, the "offending agency action should be set aside in its entirety rather than only in limited geographical areas." *Innovation Law Lab v. Wolf*, No. 19-15716, 2020 WL 964402, at \*19 (9th Cir. Feb. 28, 2020) (noting this as grounds for broader relief at preliminary injunction stage).

Following the APA's clear statutory command, courts vacate unlawful actions as a matter of course—without geographically tailoring the relief as they might for an injunction. *See, e.g.*, *Northwest Envtl. Advocates v. U.S. EPA*, 537 F.3d 1006, 1026-27 (9th Cir. 2008) (vacating Clean Water Act rule); *Earth Island Inst. v. Ruthenbeck*, 490 F.3d 687, 699 (9th Cir. 2007) (vacating Forest Service regulations relating to public comment), rev'd in part on other grounds, *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009); *NRDC v. EPA*, 966 F.2d 1292, 1304 (9th Cir. 1992) (vacating Clean Water Act rule); *Asarco v. EPA*, 616 F.2d 1153, 1162 (9th Cir. 1980) (vacating Clean Air Act rule).

### B.    *Allied Signal* Embodies a Limited Exception to the Default APA Standard, and Nonetheless Favors Vacatur Here.

While the plain text of the APA compels vacatur, courts have crafted a limited equitable exception applied where vacatur would cause serious harm that significantly outweighs the magnitude of the agency's error. *See Allied Signal Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993). Given the APA's clear command, this exception is applied

sparingly. *See Humane Soc'y v. Locke*, 626 F.3d 1040, 1053 n.7 (9th Cir. 2010).

The Court's opinion identified the correct two-factor *Allied Signal* test for determining whether remand without vacatur was warranted. It found that the seriousness of BLM's multiple legal violations were "self-evident and weigh[] heavily in WWP's favor," and observed that BLM claimed no hardship from returning to the provisions of IM 2018-034, "let alone the type of serious consequences required to disrupt the APA's presumptive vacatur remedy." ECF No. 174 at 52. The Court then concluded that the seriousness of BLM's errors outweighed the disruptive consequences resulting from vacatur. *Id.* BLM did not claim, nor did the Court find, that the two-prong analysis would be different in greater sage-grouse habitat. Accordingly, the *Allied Signal* factors provide no support for the limited vacatur of IM 2018-034.

### C.    The Statutory Remedy of Vacatur, Unlike Injunctive Relief, Does Not Require Narrow Tailoring.

The Court appeared to limit its vacatur of IM 2018-034 based on a desire to "specifically tailor[]" the remedy "to fit the dispute generating such a remedy." *Id.* at 54. The Court originally crafted this geographic limitation to adhere to the requirement that a preliminary injunction "must be narrowly and specifically tailored to fit the dispute." *See* Memorandum Decision and Order Re: Plaintiffs' Motion for Preliminary Injunction, at 74 (ECF No. 74).

However, the two remedies—vacatur and injunction—are distinct. The U.S. Supreme Court has described the statutory remedy of vacatur as a "less drastic" remedy than an equitable injunction. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). Whereas injunctions must be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994), Congress explicitly required broader correction of agency violations under the APA. The scope of vacatur is necessarily the same as the "final agency action" itself. *See Lujan,* 497 U.S. at 913

(under the APA "the ordinary result is that the rule[ is] vacated—not that [its] application to the individual petitioners is proscribed."); *see also Nat'l Mining*, 145 F.3d at 1409.

Accordingly, vacatur is *not* subject to the same four-factor balancing or tailoring as injunctive relief. *See Pennsylvania v. President U.S.*, 930 F.3d 543, 575 (3d Cir. 2019) ("Congress determined that rule-vacatur was not unnecessarily burdensome on agencies when it provided vacatur as a standard remedy for APA violations."); *Oglala Sioux Tribe v. U.S. Nuclear Regulatory Comm'n*, 896 F.3d 520, 535 (D.C. Cir. 2018) (the four-factor test for injunctive relief "is not the standard for the less drastic APA remedy of vacatur"); *see also infra* II.D (citing recent cases distinguishing vacatur and injunctions).

It bears noting that *Allied-Signal* does not provide a basis for imposing the narrow tailoring from the injunction context to vacatur. In *Allied-Signal*, the D.C. Circuit carved out a narrow exception to the remedy Congress mandated where vacatur would cause serious disruption without yielding countervailing societal benefits. 988 F.2d at 150–51. The focus of that test is on serving the public equities—rather than winnowing down the relief to serve a plaintiff's interests while avoiding undue burden on the defendant. Employing *Allied Signal* to tailor vacatur in this fashion would constitute an unprecedented expansion of that exception.

In sum, the Court erred by applying a standard of "narrow tailoring" applicable only to injunctive relief. Reconsideration is thus warranted to prevent a "clear error of law."

### D.     Courts Regard Vacatur as Distinct from a Disfavored "Nationwide Injunction" and Consistently Reject Requests For Geographic Limitation.

In light of the current debate over so-called "nationwide" injunctions,[3] it is also worth

---

[3] *See Dep't of Homeland Security v. New York*, 140 S.Ct. 599 (2020) (Mem) (Gorsuch, J., concurring); *Trump v. Hawaii*, 138 S. Ct. 2392, 2425–29 (2018) (Thomas, J., concurring).

noting that vacatur is not similarly disfavored. *See New York v. U.S. Dep't of Health & Human Servs.*, 414 F. Supp. 3d 475, 579 (S.D.N.Y. 2019) (agency's attempt to cast vacatur as a disfavored nationwide injunction "an odd fit indeed" because the APA compels complete invalidation of unlawful actions); *O.A. v. Trump*, 404 F. Supp. 3d 109, 118 (D.D.C. 2019) (order vacating agency decision under APA does not implicate concerns about nationwide injunctions).

Nonetheless, district courts have recently been flooded with requests for narrowly-tailored vacaturs in APA cases—and have consistently rejected them.[4] *See, e.g., City & Cty. of San Francisco v. Azar*, 411 F. Supp. 3d 1001, 1025 (N.D. Cal. 2019); *Desert Survivors v. U.S. Dep't of the Interior*, 336 F. Supp. 3d 1131, 1134 (N.D. Cal. 2018); *Guilford Coll. v. Wolf*, No. 1:18-CV-891, 2020 WL 586672, at *10 (M.D.N.C. Feb. 6, 2020); *O.A. v. Trump*, 404 F. Supp. 3d 109, 153–54 (D.D.C. 2019); *Children's Hosp. Ass'n of Texas v. Azar*, 300 F. Supp. 3d 190, 210 (D.D.C. 2018), rev'd on other grounds, 933 F.3d 764 (D.C. Cir. 2019); *New York v. U.S.*

---

[4] Plaintiffs are aware of only two cases in which vacatur has ever been geographically limited. In the first, *Cape Hatteras Access Preservation Alliance v. U.S. Department of Interior*, 344 F. Supp. 2d 108 (D.D.C. 2004), the court limited the scope of the vacatur by request of the parties and did not discuss the issues raised here. In the second, *Center for Biological Diversity v. Jewell*, No. 14-cv-02506-TUC-RM, 2017 WL 8788052, at *1 (D. Ariz. Oct. 25, 2017), the court incorrectly held that Article III standing requires vacatur to be geographically limited to the area of the plaintiff's injury. This view cannot be squared with the plain text of the APA or the Supreme Court's longstanding view that the APA entitles a plaintiff, so long as he is injured by an agency rule, to have the challenged rule invalidated in all applications. 497 U.S. at 913 (Blackmun, J., dissenting); *id.* at 890 n. 2 (majority opinion); *Nat'l Mining*, 145 F.3d at 1409; *see also Am. Biosci., Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2001) ("If an appellant has standing . . . and prevails on its APA claim, it is entitled to relief under that statute, which normally will be a vacatur"). The notion that Article III standing provides a basis for limiting vacatur was also soundly rejected in *Desert Survivors*, which addressed and fully vacated the same agency action at issue in *CBD v. Jewell*. *See Desert Survivors*, 336 F. Supp. 3d at 1134 ("The Court finds nothing in *Lujan* that suggests that a party who brings a facial challenge based on a concrete injury has standing only as to the geographical area where the injury occurred."); *see also New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502, 674 (S.D.N.Y. 2019) (this standing argument implausibly "implies that the judicial review provision of the APA is inconsistent with Article III").

*Dep't of Commerce*, 351 F. Supp. 3d 502, 677 (S.D.N.Y. 2019); *New York v. U.S. Dep't of Health & Human Servs.*, 414 F. Supp. 3d at 579; *see also Make the Rd. N.Y. v. McAleenan*, 405 F.Supp.3d 1, 72 (D.D.C. Sept. 27, 2019). These cases provided added grounds for reconsideration of the Court's remedies decision here.

*Desert Survivors* is most factually analogous. 336 F. Supp. 3d 1131. That case involved a challenge to the U.S. Fish and Wildlife Service's withdrawal of its proposed listing of the Bi-State Sage-Grouse as "threatened" under the Endangered Species Act (ESA). *Id.* at 1132. As part of that lawsuit, the plaintiffs also challenged a broadly-applicable administrative policy (the "SPR Policy") that the Service applied when making its Bi-State listing decision. *Id.* at 1133. After the court granted Plaintiffs' summary judgment motion, Defendants argued that the Court should geographically limit its vacatur of the SPR Policy to the region in which the Bi-State Sage-Grouse is found. *Id.* at 1134. The court disagreed, observing the longstanding rule that "[w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." *Id.* (citing *Nat'l Mining*, 145 F.3d at 1409).

The remaining cases similarly held that the APA's unambiguous remedial requirement, as confirmed by longstanding Supreme Court and D.C. Circuit precedent, requires vacatur of challenged actions in their entirety. As one court persuasively reasoned:

> [T]he argument that an administrative agency should be permitted to side-step the required result of a fair-fought fight [through a limited remedy] . . . is patently inconsistent with the dictates of the law. . . . Section 706 of Title 5 of the United States Code tells the federal courts in no uncertain terms exactly what they must to do if they find [an agency action unlawful] . . . . Importantly, the scope-of-remedy principle that is laid out in the APA and is echoed in the clear pronouncements of both the Supreme Court and the D.C. Circuit also reflects a common-sense understanding of what it means for a court to determine, at the conclusion of a case, that a formerly binding legal act of one of the parties is null and void.

*See Make the Rd. N.Y.*, 405 F.Supp.3d at 66–67; *see also O.A. v. Trump*, 404 F. Supp. 3d at 153–

54 ("the language of the APA and the controlling D.C. Circuit precedent are unambiguous");

*New York*, 414 F. Supp. 3d at 579 ("More than 30 years ago, the D.C. Circuit foreclosed [the

agency's] audacious argument" for a limited vacatur).

These decisions also emphasized the important policy values vacatur serves. These

include (1) the societal interest in avoiding perpetuation of unlawful conduct; (2) avoiding

wasteful, repetitive litigation of identical legal issues; (3) securing uniformity in federal law; (4)

providing fair relief to the plaintiffs; (5) administrative difficulties with leaving an invalid rule

partially on the books; and (6) the notion that limiting vacatur geographically would do away

with the very concept of an APA facial challenge.

These policy considerations apply equally here. First, there is an obvious public interest

in avoiding BLM's continued application of IM 2018-034. This Court found IM 2018-034

unlawful on its face, meaning it cannot be lawfully applied in any circumstances. Allowing BLM

to continue to apply IM 2018-034 outside sage-grouse habitat would condone BLM's continued

deprivation of meaningful public participation in leasing decisions.

Second, complete vacatur would prevent the need for repetitive litigation seeking

invalidation of IM 2018-034 in non-sage-grouse habitat. It would also avoid the proliferation of

subsequent litigation over future leasing decisions outside of Sage-Grouse habitat carried out

under the unlawful procedures of IM 2018-034.

Third, leaving IM 2018-034 partially on the books presents administrative difficulties.

Under this Court's preliminary injunction, BLM continued to apply IM 2018-034 outside sage-

grouse habitat. *See* Stellberg Decl. ¶¶ 7–10 (filed herewith). As a practical matter, this scheme

forced BLM officials, Plaintiffs, and other interested parties to carefully monitor habitat maps to

ensure that sales including sage-grouse habitat were issued with 30-day comment and protest periods. On at least one occasion, Plaintiffs had to request that BLM remove sage-grouse parcels from a sale in which BLM allowed only a 10-day protest period, to avoid a violation of the injunction order. *Id.* ¶¶ 2–6. Complete vacatur would eliminate the burden on Plaintiffs and others to continue monitoring BLM's compliance.

Finally, Plaintiff organizations would be harmed by the continued application of IM 2018-034 outside greater sage-grouse habitat.[5] Both the Center for Biological Diversity (CBD) and Western Watersheds Project (WWP) routinely engage in BLM oil and gas lease sales inside and outside the greater sage-grouse range. *See, e.g.*, Supp. Saul Decl. ¶¶ 7, 10 (ECF No. 63-2) (explaining how the IM affected CBD's participation in lease sales outside sage-grouse habitat, including in Arizona, New Mexico, Oklahoma, and Texas); Supp. Fuller Decl. ¶ 4 (ECF No. 63-1) (same for New Mexico, Oklahoma).[6] Their participation in BLM lease sales aims to protect numerous resources beyond greater sage-grouse, including at-risk wildlife, habitat, recreational opportunities, and cultural artifacts. *See, e.g.*, Saul Decl. ¶¶ 14, 19 (ECF No. 30-2) (noting that CBD provides science-based comments on "climate, air, water, health, and wildlife"); *id.* ¶¶ 15, 31, 42 (specifically listing the desert tortoise, pallid sturgeon, big game, Gunnison sage-grouse,

---

[5] Plaintiffs include this factor only to stress why the geographic limitation would lead to manifestly unjust results here. The extent of a plaintiff's injuries is not a basis for limiting vacatur. A plaintiff with standing to challenge an agency rule—i.e., injured in some fashion by that rule—is statutorily entitled to vacatur of that rule. *See supra* note 4. Vacatur is also not subject to the rule that injunctions should be no greater than necessary to provide "complete relief" to the plaintiffs. *See Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 778 (1994).

[6] CBD has also filed numerous lawsuits challenging BLM oil and gas leasing outside sage-grouse habitat, based on impacts to other environmental resources. *See, e.g.*, *Center for Biological Diversity v. U.S. Forest Service*, Case No. 2:17-cv-372 (S.D. Ohio) (challenge to BLM oil and gas lease sales in Ohio); *Center for Biological Diversity v. Suazo*, Case No. 3:19-cv-8204 (D. AZ) (challenge to BLM oil and gas lease sale in Arizona); *Wilderness Workshop v. BLM*, Case No. 1:18-cv-987 (D. Colo.) (challenge to BLM oil and gas lease sale in Colorado).

and lesser prairie chicken as species on which CBD has commented); Fuller Decl. ¶ 11 (ECF No.

30-4) (noting that WWP works to protect "ecological, biological, cultural, historic, archeological,

scenic resources, wilderness values, roadless areas, Wilderness Study Areas and designated

Wilderness" across Western states).

Moreover, to remedy BLM's failure to engage in notice-and-comment rulemaking, it is

not enough to prevent IM 2018-034's application on some public lands. As one judge recently

observed,

> [T]he true gravamen of an APA claim is . . . that the agency has breached the plaintiff's
> (and the public's) entitlement to non-arbitrary decision making and/or their right to
> participate in the rulemaking process. Consequently, to provide the relief that any APA
> plaintiff is entitled to receive for establishing that an agency's rule is procedurally
> invalid, the rule must be invalidated, so as to give interested parties (the plaintiff, the
> agency, and the public) a meaningful opportunity to try again." *Id.*

*See Make the Rd. New York*, 405 F. Supp. 3d at 72. For both reasons, a piecemeal vacatur would

be insufficient to remedy Plaintiffs' injuries.

\* \* \*

In sum, the plain language of the APA and longstanding precedent make clear that if an

agency rule is found facially invalid, it should be completely invalidated. Vacatur is not subject

to the same narrow tailoring as injunctive relief, as a wave of recent decisions has held. While

the *Allied Signal* test provides a narrow exception to this presumed remedy, that test weighs

strongly in favor of vacatur here—and does not provide grounds for leaving the IM partially in

effect. For all of these reasons, Plaintiffs respectfully request that the Court reconsider and

eliminate the geographic limitation on its vacatur of IM 2018-034.

## III.   MOTION FOR CLARIFICATION

Plaintiffs also request that the Court correct and/or clarify sections of its decision

regarding the nature of relief granted as to IM 2018-034. The Court's opinion indicated that it

was ordering vacatur—not a permanent injunction—of the at-issue provisions of IM 2018-034. Memorandum Decision and Order at 61 (ECF No. 174) ("IM 2018-034's at-issue provisions are set aside"); *id.* at 50–56 (referring to vacatur); *id.* at 56 (referring to the "vacatur of IM 2018-034"). Vacatur is the relief Plaintiffs' sought in their complaint and "less drastic" than a permanent injunction. *See Monsanto*, 561 U.S. at 165. Vacatur is also the relief Plaintiffs' sought in their complaint and which the parties discussed throughout summary judgment briefing.

However, sections (a)(i)–(iv) of the Order direct that provisions of the IM were "enjoined" rather than "vacated." *See* Memorandum Decision and Order at 61–62 (ECF No. 174) ("V. ORDER"). The term "enjoined" in the subsections of the Court's order appears to be a remnant of the Court's earlier preliminary injunction decision.

These references to injunctive relief warrant correction as they may unnecessarily complicate the issues on appeal, given that the Court did not expressly undertake the four-factor balancing test applicable to permanent injunctions. This issue has arisen in at least one recent case. *See, e.g.*, *S. Carolina Coastal Conservation League v. Wheeler*, No. 2:18-cv-330-DCN (D.S.C. 2018) (ECF No. 72) (motion seeking clarification on similar grounds). Accordingly, Plaintiffs respectfully request that the Court clarify the nature of relief it granted as to IM 2018-034 and enter a corrected Order as follows:

      i.     For all succeeding oil and gas lease sales, use of IM 2018-034, Section III.A – "Parcel Review Timeframes" is ~~enjoined~~ **vacated** and replaced with IM 2010-117, Section III.A – "Parcel Review Timeframes";

      ii.     For all succeeding oil and gas lease sales, use of IM 2018-034, Section III.B.5 – "Public Participation" is ~~enjoined~~ **vacated** and replaced with IM 2010-117, Section III.C.7 – "Public Participation";

      iii.     For all succeeding oil and gas lease sales, use of IM 2018-034, Section III.D. – "NEPA Compliance Documentation" is ~~enjoined~~ **vacated** and replaced with IM 2010- 117, Section III.E – "NEPA Compliance Documentation"; and

      iv.     For all succeeding oil and gas lease sales, use of IM 2018-034, Section IV.B – "Lease Sale Parcel Protests" is ~~enjoined~~ **vacated** and replaced with IM 2010-117, Section III.H – "Lease Sale Parcel Protests."

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court reconsider and clarify its remedy as to IM 2018-034 and issue a revised remedy order that (1) vacates IM 2018-034 without any geographical limitation; (2) corrects the Order's references to injunctive relief.

Dated: March 17, 2020               Respectfully submitted.

                                  /s/  Sarah K. Stellberg    .
                                  Sarah Stellberg (ISB #10538)
                                  Laurence ("Laird") J. Lucas (ISB # 4733)
                                  Todd C. Tucci (ISB # 6526)

                                  Attorneys for Plaintiffs