Lee Radford, ISB #5719
PARSONS BEHLE & LATIMER
350 Memorial Drive, Suite 300
Idaho Falls, Idaho 83402
Telephone:  208.522.6700
Facsimile:  208.522.5111
LRadford@parsonsbehle.com

*Attorneys for Proposed Defendant-Intervenor*
      *Anschutz Exploration Corp.*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT COURT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT and CENTER FOR BIOLOGICAL DIVERSITY,<br><br>Plaintiffs,<br><br>        vs.<br><br>DAVID BERNHARDT, Secretary of Interior, and UNITED STATES BUREAU OF LAND MANAGEMENT, an agency of the United States,<br><br>        Defendants,<br><br>        and,<br><br>STATE OF WYOMING and WESTERN ENERGY ALLIANCE,<br><br>        Defendants-Intervenors. | Case No. 1:18-cv-00187-REB<br><br>**MEMORANDUM IN SUPPORT OF PROPOSED DEFENDANT-INTERVENOR'S MOTION TO INTERVENE** |

## INTRODUCTION

The Anschutz Exploration Corporation ("AEC") is an independent oil-and-gas exploration and development company with operations in Wyoming, Colorado, and Utah. Ex. 1, ¶ 2 (Declaration of J. DeDominic). Since its founding, AEC has focused on responsible development of oil-and-gas resources in the Rocky Mountains, and it is actively involved in a

**MEMORANDUM IN SUPPORT OF PROPOSED
DEFENDANT-INTERVENOR'S MOTION TO INTERVENE - 1**

drilling and development program, including federal leases in the Powder River Basin located in Wyoming, and exploration leasehold positions in the Big Horn, Wind River, and Green River Basins of Wyoming. *Id.* ¶ 3.

In early 2018, the Bureau of Land Management issued IM 2018-034, a new set of procedures for BLM offices to follow when managing oil-and-gas leasing on certain federal lands. Using those procedures, the BLM conducted an oil-and-gas lease sale in Wyoming in June 2018. During that sale, the Anschutz Exploration Corporation paid over $1 million for leases on about 24,000 acres. Id. ¶ 4. In September 2018, the BLM conducted a similar lease sale under IM 2018-034 in Wyoming. AEC paid about $5.6 million for leases encompassing about 48,000 acres. *Id.* ¶ 5. Together, AEC spent over six years conducting technical and scientific operational work related to these leases. *Id.* ¶ 6. It also invested over $10 million in preparing to acquire, acquiring, and analyzing development of these two leaseholds covering over 72,000 acres. *Id.*

But those leases are now a legal nullity. About a month ago, the Court issued an order directing the BLM to (among other things) cancel these oil-and-gas leases in Wyoming. The Court issued this order, addressing Phase One of the case, even though AEC is not a party to this case, even though AEC was not provided notice or an opportunity to be heard before being deprived of those multimillion-dollar property interests, and even though nobody sought to join AEC as a required, indispensable party under Federal Rule of Civil Procedure 19.

AEC also holds leases from the BLM that are subject to the Court's adjudication of Phase Two of this case. *Id.* ¶ 7. AEC purchased these phase two leases, encompassing over 118,000 acres, for over $25 million in separate lease sales in Wyoming in February 2017, September 2017, and February 2019. *Id.* In Phase Two, Plaintiffs want the Court to wipe out those leases, too, urging the Court to "[r]everse, set aside, hold unlawful, and/or vacate" the phase two leases.

Second Am. Compl. at 88, ECF No. 165. According to Plaintiffs, the BLM approved the leases in violation of federal law and under IM 2018-026, which Plaintiffs say also violates federal law by revising the prioritization requirement of the sage-grouse plan amendments. *Id.* at 87–89.

There is no question that AEC validly secured all its leases through established BLM lease-sale protocols. And it is plain that AEC's interests are directly affected by the government's actions related to oil-and-gas leasing and development in sage-grouse habitat, Plaintiffs' claims that the government violated the law, and the Court's adjudication of this case. AEC's phase-one leases have been extinguished by the Court's recent order, and its phase two leases will be severely impaired, if not eviscerated, by Plaintiffs' requested relief in Phase Two. *See* Ex. 1, ¶ 8–9.

AEC now moves to intervene as the only party that can adequately protect those interests.

To protect AEC's property rights, the Court should join AEC as an indispensable, required party under Rule 19. Unfortunately, before the Court issued its order, nobody recognized that AEC—as one of the leasehold owners—is a required party that must be joined. Thankfully, the Court can remedy that oversight now by joining AEC as a defendant.

Although the Court, on its own, should join AEC as a required party under Rule 19, AEC asks the Court to allow it to intervene as a defendant, either by right under Rule 24(a) or by permission under Rule 24(b). AEC has a right to intervene because its constitutionally protected interests are directly at stake; this case has impaired, and could further impair, those interests; and there is reasonable doubt about whether AEC's property interests are adequately represented. At a minimum, the Court should permit AEC to intervene because AEC's defenses go to two central questions in this case—whether its leases are valid and, if not, whether the proper remedy

is to exterminate them—and AEC's intervention would not unduly delay or prejudice adjudication of this case.

Basic fairness necessitates granting this motion: making AEC a party would allow AEC not only to participate in the upcoming interlocutory appeal to the Ninth Circuit but also to protect its interests during Phase Two.

For all these reasons, the Court should grant this motion.

## ARGUMENT

AEC should be a party to this case for three reasons. First, AEC is a required party that should have been joined as a defendant under Rule 19(a). Second, AEC has a right to intervene under Rule 24(a)(2). And third, AEC should be permitted to intervene under Rule 24(b)(1)(B).

## I. AEC SHOULD HAVE BEEN JOINED AS A REQUIRED PARTY, AND THE COURT SHOULD JOIN AEC AS A DEFENDANT.

Rule 19(a)(1) states:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction *must be joined as a party* if: … (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations be-cause of the interest.

Fed. R. Civ. P. 19(a)(1) (emphasis added). Rule 19(a)(2) states that if "a person has not been joined as required, the court *must* order that the person be made a party." Fed. R. Civ. P. 19(a)(2) (emphasis added). The issue of a party's alleged indispensability "is sufficiently important that it can be raised at any stage of the proceedings—even *sua sponte*." *McCowen v. Jamieson*, 724 F.2d 1421, 1424 (9th Cir. 1984).

"[I]n the absence of [necessary] parties a court of course cannot validly enter a judgment." *W. Coast Expl. Co. v. McKay*, 213 F.2d 582, 592 (D.C. Cir. 1954). And it is a firmly established maxim that a judgment that substantially affects the rights of a party who is not joined violates due process. *Hanson v. Denckla*, 357 U.S. 235, 254–55 (1958); *see R. J. Williams Co. v. Fort Belknap Hous. Auth.*, 92 F.R.D. 17, 21 (D. Mont. 1981) ("[A] court must protect the interests of the parties not before it to avoid possible prejudicial effect; failure of a court to protect those interests by joinder may amount to a violation of due process.").

Here, whether AEC is a required party was seemingly overlooked. But there can be no doubt that it is. Both the Ninth Circuit and other courts have repeatedly held that a party to a lease agreement is an indispensable party under Rule 19 when the lawsuit—like this one—seeks to set aside the lease. *See, e.g., Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788 (D.C. Cir. 1983) ("[P]arties who hold royalty interests, assignments, or interests in the title of federal leases, in the absence of special circumstances not present here, are indispensable parties in an action to cancel the lease or to try title to the lease."); *Sierra Club v. Hathaway*, 579 F.2d 1162, 1166 (9th Cir. 1978) (where environmental organizations sued to prevent Secretary of Interior from executing lease agreements, lessees were persons who should have been joined because lessee's interests were not distinct and severable and court order prohibiting Secretary from allowing lessees to undertake any exploration operations pursuant to their leases would have injurious effect upon their interest); *Cole v. Cont'l Oil Co.*, 240 F. Supp. 642, 645 (W.D. Okla. 1965) (holding that a person with an interest in an oil-and-gas lease was an indispensable party in an action to cancel the lease). Indeed, the Ninth Circuit has declared that "[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are

**MEMORANDUM IN SUPPORT OF PROPOSED**
**DEFENDANT-INTERVENOR'S MOTION TO INTERVENE - 5**

indispensable." *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975); *cf. McClendon v. United States*, 885 F.2d 627, 632–33 (9th Cir. 1989) (holding that an Indian tribe was an indispensable party under Rule 19 because it was "a party to the lease agreement sought to be enforced").

What's more, if the Court were to decline to join AEC as a defendant, that would "leave an existing party" (the government) subject to a substantial risk of facing inconsistent obligations. Fed. R. Civ. P. 19(a)(1)(B)(ii). Because AEC would not be a party to this case, nothing would bar AEC from bringing an action against the government seeking a declaratory judgment that AEC's leases are valid. And if a court agreed with AEC's contention that they are valid, then the government would be in the impossible position of facing inconsistent judgments.

Simply put, both the plain text of Rule 19 and the caselaw show that AEC is an indispensable party. The Court should therefore *sua sponte* join it as such. McCowen, 724 F.2d at 1424.

## II.    AEC HAS A RIGHT TO INTERVENE UNDER RULE 24(A).

Even if the Court were to decline to join AEC as a required, indispensable party under Rule 19(a), it should allow AEC to intervene by right under Rule 24(a). Intervention by right requires that "(1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest related to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003); *see* Fed. R. Civ. P. 24(a)(2). In general, courts construe Rule 24(a) liberally in favor of intervention. *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001).

The court's evaluation is "'guided primarily by practical considerations,' not technical distinctions." *Id.*

A. <u>**AEC's Motion is Timely**</u>

Timeliness depends on three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). All these factors cut in AEC's favor.

As to the first, AEC seeks to intervene at a time when much of the lawsuit remains to be adjudicated and judgment regarding AEC's phase two leases remains for a later day. The Court accepted the parties' segmented approach to this case, adjudicating in Phase One Plaintiffs' fourth and fifth claims for relief, which challenge IM 2018-034 and the five lease sales subject to that IM. Case-Management Order at 1–2, ECF No. 107; Scheduling-Conference Form at 3–4, ECF No. 79. The Court's order disposes of the Phase One issues, but what remains are Plaintiffs' first, second, third, and sixth claims for relief, where Plaintiffs challenge IM 2018-026 and eight additional lease sales. Case-Management Order at 3; Scheduling-Conference Form at 3, 5. Plus, as soon as AEC heard about the Court's order, which significantly altered the nature of the case by eliminating AEC's property rights, AEC immediately began preparing this motion to intervene. Ex. 1, ¶ 10.

As to the prejudice factor, AEC's intervention would not cause prejudice. Each party will have the same opportunity to make its best arguments moving forward, and to protect its own interests, as if AEC were not a party.

And as to the third timeliness factor (the reason for the delay), AEC did not intervene earlier because it believed the government and the Alliance already represented its interest in

**MEMORANDUM IN SUPPORT OF PROPOSED**
**DEFENDANT-INTERVENOR'S MOTION TO INTERVENE - 7**

defending the procedural and substantive validity of IM 2018-034. *Id.* ¶ 11; *see* Order at 4–5, ECF No. 54 (granting the Alliance's motion to intervene and recognizing that its members include oil-and-gas producers with leases in question). AEC had no reason to suspect that its property rights would be cancelled. That's because the remedy in cases like this traditionally stops well short of cancellation. *See, e.g., N. Cheyenne Tribe v. Hodel*, 851 F.2d 1152, 1157–58 (9th Cir. 1988) (upholding order suspending coal-mining operations, rather than voiding the leases); *Conner v. Burford*, 848 F.2d 1441, 1460–61 & n. 50 (9th Cir. 1988) (clarifying that the district court's order merely suspended activity on the leases, thus avoiding "the unnecessarily harsh result of completely divesting the lessees of their property rights"); *accord W. Oil & Gas Ass'n v. EPA*, 633 F.2d 803, 812–13 (9th Cir. 1980) (noting that "relief for agency procedural error should be a strict reconstruction of procedural rights," and that the remedy should avoid unnecessarily harsh and undesirable consequences); Order at 5 (identifying the Alliance's assessment of the risks to its members as "'economic harm from greater restrictions that would be imposed on federal leases and property rights owned by them'" but not the complete elimination of those property rights).

But the Court's order did in fact completely divest AEC of its property rights. *That is a game-changer*. And that is why AEC has brought this motion—to protect its property rights in the phase-one leases from being completely lost, and to represent and advocate on behalf of its property rights in the phase two leases going forward. *Cf. Hodel*, 851 F.2d at 1154 (noting that the district court allowed coal lessees to intervene *after* the court entered a judgment voiding the leases); Conner, 848 F.2d at 1445 (noting that the district court allowed oil-and-gas lessees to intervene for purposes of appeal after the court entered an order seemingly voiding the leases).

### B.   AEC Has a Significantly Protected Interest

AEC's leases are real property rights now at the center of this lawsuit. As a basic proposition, AEC's leases are significantly protectable interests that are not merely "relat[ed] to" "the property or transaction that is the subject of the action"—*they are the property itself*. Fed. R. Civ. P. 24(a)(2).

To demonstrate a sufficient interest related to the subject of this action, AEC must establish a significantly protectable interest that has some relationship with the claims at issue. *NW. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996). The Ninth Circuit liberally construes Rule 24(a), *see Greene v. United States*, 996 F.2d 973 (9th Cir. 1993), and has "rejected the notion that Rule 24(a)(2) requires a specific legal or equitable interest," *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980). Rather, the interest test is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.* at 438.

Federal oil-and-gas leases constitute binding and enforceable contractual arrangements that govern the rights and obligations of BLM and the lessees, including AEC. This contractual arrangement creates a significant and protectable property interest in the lessees. Indeed, the mere threat of economic injury is a legally protected interest that warrants intervention as a matter of right (much less the actual, impending economic injury that flows directly from the Court's order cancelling the leases here). *Ass'n of Pub. Agency Customers v. Bonneville Power Admin.*, 733 F.3d 939, 951 (9th Cir. 2013); *Utahans for Better Transp. v. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002) (holding that the threat of economic injury provides requisite interest); *Nat. Resources Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n*, 578 F.2d 1341 (10th Cir. 1978) (concluding that potential recipients of licenses for the operation of uranium

mills had sufficient interest to intervene in action by environmentalists against government agencies seeking to prohibit issuance of licenses because the outcome of the litigation would have profound economic impact on potential intervenors). Both the Court's order and Plaintiffs' requested relief in Phase Two pose a direct and substantial threat to AEC legally protectable interests in defending its property rights and avoiding economic injury. *Theodore Roosevelt Conserv. P'ship v. Salazar*, 605 F.Supp.2d 263, 269 (D.D.C. 2009) (allowing oil-and-gas operators with federal drilling permits to intervene in suit challenging BLM's NEPA compliance after issuing permits at issue).

C.   **Disposition of This Case Has Impaired and May Continue to Impair AEC's Ability to Protect its Interests**

In determining the impairment of an applicant's ability to protect its interest, the Ninth Circuit follows the "guidance of Rule 24 advisory notes that state that '[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'" Sw. Ctr. for Biological Diversity, 268 F.3d at 822.

That rule captures this case for one simple reason: the Court's order wiped out AEC's multimillion dollar real property interests in two oil-and-gas leases in Wyoming. *See Levin v. Ruby Trading Corp.*, 333 F.2d 592, 595–596 (2d Cir. 1964) (lessee who asserted invalidity of lease cancellation by receiver entitled to intervene as of right); *cf. Fuentes v. Shevin*, 407 U.S. 67, 87 (1972) (possessory interest in property that arises in a lease held "sufficient to invoke the protection of the Due Process Clause"). AEC has thus been "substantially affected in a practical sense" by the Court's Phase One determination. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822. As a result, it is entitled to intervene.

AEC has not only been substantially affected by the Court's order, but also it would be substantially affected if the Court were to rule in Plaintiffs' favor in Phase Two. *See*

**MEMORANDUM IN SUPPORT OF PROPOSED DEFENDANT-INTERVENOR'S MOTION TO INTERVENE - 10**

*W. Watershed Project v. U.S. Fish and Wildlife Serv.*, No. 4:CV 10-229-BLW, 2011 WL 2690430, *3–4 (D. Idaho 2011) (granting intervention upon showing that relief might consist of mitigation measures that could have substantial effect on permits held by proposed intervenors).

### D.     The Current Parties Do Not Adequately Represent AEC's Interests

The fourth factor examines whether AEC's interests are adequately represented by the existing parties. The burden for this prong of intervention as of right is "minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972). To resolve this issue, courts consider: "(1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect." *Berg*, 268 F.3d at 822. AEC need only show that representation of its interests by the government and Defendants-Intervenors "may be" inadequate. *Id.* In assessing the adequacy of representation, the focus should be on the "subject of the action," not just the specific issues before the court at the time of the motion. *See id.*

The government has a duty to represent the interests of the public, but it has no duty to represent the personal or economic interests of private entities such as AEC. *See, e.g., Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995) (finding that federal government is "required to represent a broader view than the more narrow, parochial interests" of a proposed state or county intervenor).

And Defendants-Intervenors' interests, while similar to AEC's interests, depart where Plaintiffs target the leases specifically, and do so arguably in ways that do not neatly parallel the balance of Plaintiffs' claims or Federal Defendants' and Defendants-Intervenors' defenses of certain lease sales. Specifically, AEC and other oil-and-gas companies relied on the Alliance, a

**MEMORANDUM IN SUPPORT OF PROPOSED**
**DEFENDANT-INTERVENOR'S MOTION TO INTERVENE - 11**

trade organization, to represent their interests in this matter. If the order had only nullified IM 2018-034 and required BLM to reconsider and redraft its guidance, without more, the Alliance (which does not have property interests of its own to protect) might have been an adequate surrogate. Certainly, as the Alliance itself put it, "[A]s a trade association representing the interests of its member companies on federal public lands, the Alliance has an organizational interest in maintaining regulatory certainty in BLM's oil and gas leasing program." Alliance Motion to Intervene at 6, ECF No. 20-1. But the Court's order went further than merely invalidating IM 2018-034; it retroactively cancelled specific leases that the BLM had entered into with operators such as AEC under the procedures outlined in IM 2018-034. The Alliance's organizational representation of the industry at that point was no longer adequate. WEA does not have property interests at stake. AEC does. And the Court's order destroyed them.

In sum, neither the Federal Defendants nor the Defendants-Intervenors have made sufficient arguments as part of their own contentions to protect AEC's constitutionally protected property interests, and they are not certain to make AEC's arguments as part of their own positions going forward during Phase Two. Nor would they be certain to do so with the same level of urgency and priority that AEC now possesses. AEC is best able to explain how it has been injured, the existing disruption to its business, and how it will suffer going forward. AEC's significant, constitutional interest in defending its property is distinct from the other parties' interests. As a result, AEC has met the requisite "minimal" showing under this factor.

Because AEC meets the rule's four requirements, AEC should be allowed to intervene under Fed. R. Civ. P. 24(a)(2).

III.   **AT A MINIMUM, THE COURT SHOULD PERMIT AEC TO INTERVENE UNDER RULE 24(B).**

Under Rule 24(b), "the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Rule also requires the court to consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). As with Rule 24(a) intervention, the court should interpret the requirements broadly in favor of intervention. *See United States v. Aerojet*, 606 F.3d 1142, 1148 (9th Cir. 2010).

To be sure, many of AEC's defenses are aligned to some degree with both the government's and the Defendants-Intervenors'. But AEC's defenses—in particular its arguments that the government cannot take its property interests without due process or just compensation under the U.S. Constitution—go further because it is AEC that is directly affected as a real-property owner by the claims and defenses at issue in this case. AEC's existing interests in the federal leases on lands within greater sage-grouse habitat across the West reflect AEC's investment of tens of millions of dollars in the leases, all of which are subject to Plaintiffs' challenge. Should Plain-tiffs' action prove successful, AEC would itself suffer economic injury and harm to its rights in leases on lands underlying the challenged plans.

AEC's intervention will not unduly delay or prejudice the adjudication of any of the rights of the parties to the lawsuit. Its entry comes at a time when the parties have litigated Phase One, and are considering the order.  Plaintiffs have moved the Court to reconsider aspects of the order. Pls.' Mot. for Reconsideration, ECF No. 175. And the government and Defendants-Intervenors have moved to stay the court's order pending an appeal to the Ninth Circuit. Government's Mot. to Stay, ECF No. 176; Alliance's Motion to Stay, ECF No. 177; Wyoming's Motion to Stay, ECF No. 181. The parties have yet to begin litigating Phase Two—the factual

**MEMORANDUM IN SUPPORT OF PROPOSED DEFENDANT-INTERVENOR'S MOTION TO INTERVENE - 13**

and legal is-sues remaining in this case thus are still to be adjudicated. Because AEC's defenses are aligned with the central issues in the case and its presence will not delay or otherwise alter the course of the proceedings to any party's prejudice, it should be permitted to intervene under Rule 24(b)(1)(B).

**CONCLUSION**

Allowing AEC to intervene would recognize that AEC is a required, indispensable party. It would also accord with both the liberal approach to intervention and the purpose behind Rule 24. The Court should therefore grant this motion and either join AEC as a required party under Rule 19 or allow AEC to intervene under Rule 24.

Respectfully submitted,

/s/ Lee Radford

Lee Radford
PARSONS BEHLE & LATIMER
350 Memorial Drive, Suite 300
Idaho Falls, ID  83402
Phone:  (208) 528-5252
Fax: (208) 522-5111
Email: lradford@parsonsbehle.com

/s/ Andrew C. Lillie

Andrew C. Lillie, *pro hac vice* pending
Jessica Black Livingston, *pro hac vice* pending
Mark D. Gibson, *pro hac vice* pending
HOGAN LOVELLS US LLP
1601 Wewatta Street, Suite 900
Denver, CO 80202
E-mail: andrew.lillie@hoganlovells.com
          jessica.livingston@hoganlovells.com
          mark.gibson@hoganlovells.com
Phone: (303) 899-7300
Facsimile: (303) 899-7333
*Attorneys for Proposed Defendant–Intervenor*
*Anschutz Exploration Corporation*

**MEMORANDUM IN SUPPORT OF PROPOSED**
**DEFENDANT-INTERVENOR'S MOTION TO INTERVENE - 14**

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of April, 2020, I served a true and correct copy of

the foregoing **MEMORANDUM IN SUPPORT OF PROPOSED DEFENDANT-**

**INTERVENOR'S MOTION TO INTERVENE** via the Court's electronic case filing system

that will cause the foregoing to be served upon all counsel of record.

*/s/ Lee Radford*

Lee Radford

# EXHIBIT 1

Lee Radford
E-mail: lradford@parsonsbehle.com
Idaho Bar No. 5719
PARSONS BEHLE & LATIMER
350 Memorial Drive, Suite 300
Idaho Falls, Idaho 83402
Phone: (208) 528-5252
Fax: (208) 522-5111
*Attorney for Proposed Defendant–Intervenor Anschutz Exploration Corp.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT and CENTER FOR BIOLOGICAL DIVERSITY, | |
| Plaintiffs, | |
| v. | |
| DAVID BERNHARDT, Secretary of Interior, and UNITED STATES BUREAU OF LAND MANAGEMENT, an agency of the United States, | Case No. 1:18-cv-00187-REB **PROPOSED DEFENDANT– INTERVENOR'S DECLARATION OF JOSEPH DeDOMINIC** |
| Defendants, | |
| and, | |
| STATE OF WYOMING and WESTERN ENERGY ALLIANCE, | |
| Defendants–Intervenors. | |

I, Joseph DeDominic, in accordance with the requirements of 28 U.S.C. § 1746, declare as follows:

1.     I am the President and COO for Anschutz Exploration Corporation ("AEC"), a position I have held since January 1, 2014.  I make the following statements from personal knowledge.

2.     AEC is an independent oil-and-gas exploration and development company with operations in Wyoming, Colorado, and Utah.

3.     Since its founding, AEC has focused on responsible development of oil-and-gas resources in the Rocky Mountains, and it is actively involved in a drilling and development program, including federal leases in the Powder River Basin located in Wyoming, and exploration leasehold positions in the Big Horn, Wind River, and Green River Basins of Wyoming.

4.     The BLM conducted an oil-and-gas lease sale in Wyoming in June 2018. During that sale, AEC paid over $1 million for leases on about 24,000 acres.

5.     In September 2018, the BLM conducted a similar lease sale under IM 2018-034 in Wyoming. AEC paid about $5.6 million for leases encompassing about 48,000 acres.

6.     AEC spent over six years conducting technical and scientific operational work related to these two leases. AEC also invested over $10 million in preparing to acquire, acquiring, and analyzing development of these two leaseholds covering over 72,000 acres.

7.     AEC also holds leases from the BLM that are subject to the Court's adjudication of Phase Two of this case. AEC purchased these phase-two leases, encompassing over 118,000 acres, for over $25 million in separate lease sales in Wyoming in February 2017, September 2017, and February 2019.

8.   AEC's phase-one leases have been extinguished by the Court's February 27, 2020 order, EFC No. 174.

9.   AEC's phase-two leases will be severely impaired, if not eviscerated, if Plaintiffs' obtain their requested relief in Phase Two of this lawsuit.

10.   As soon as AEC heard about the Court's February 27, 2020 order, which significantly altered the nature of the case by eliminating AEC's property rights, AEC immediately began preparing its motion to intervene.

11.   AEC did not intervene earlier because it believed the government and Western Energy Alliance already represented its interest in defending the procedural and substantive validity of IM 2018-034.

*       *       *

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on April 15, 2020 in Denver, Colorado.

/s/ Joseph DeDominic
Joseph DeDominic