Laurence J. ("Laird") Lucas (ISB # 4733)
llucas@advocateswest.org
Todd C. Tucci (ISB # 6526)
ttucci@advocateswest.org
Sarah Stellberg (ISB #10538)
sstellberg@advocateswest.org
Advocates for the West
P.O. Box 1612
Boise, ID 83701
(208) 342-7024
(208) 342-8286 (fax)

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, and CENTER FOR BIOLOGICAL DIVERSITY, <br><br> Plaintiffs, <br><br> v. <br><br> DAVID BERNHARDT*, Secretary of Interior, *et al.*, <br><br> Defendants. | Case No. 1:18-cv-00187-REB <br><br> **PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE BY ANSCHUTZ EXPLORATION CORPORATION (ECF NO. 198)** |

*\* Official Defendant automatically substituted per Fed. R. Civ. P. 25(d)*

**INTRODUCTION**

Anschutz Exploration Corporation has been on notice for two years that Plaintiffs were seeking to vacate its leases yet sat on its intervention motion until now, without a convincing reason for its delay. The motion to intervene is thus untimely and for that reason alone should be denied. The requests for intervention and Rule 19 joinder also fail because Anschutz's interests are adequately protected by existing Intervenor Western Energy Alliance (WEA), an oil and gas trade group of which Anschutz is a member. WEA intervened for the express purpose of

PLAINTIFFS' OPPOSITION TO ANSCHUTZ MOTION TO INTERVENE - 1

defending the lease interests of its members, including Anschutz, and has thus far diligently represented those interests. Indeed, Anschutz has utilized its WEA membership to oppose Plaintiffs' claims in this case, including seeking a stay pending appeal of the Phase One lease sale vacatur. *See* ECF No. 177-5 (Anschutz declaration in support of WEA stay motion).

Anschutz's participation in this case is thus neither necessary nor helpful. Piling on another adverse party would simply prejudice Plaintiffs and consume additional resources of all parties. This Court should deny the motion.

## ARGUMENT

### I. Anschutz Is Not a Required Party under Rule 19

Anschutz claims it is a "required party" under Federal Rule of Civil Procedure 19 and must be joined into this case. Rule 19 provides that a party must be joined, if feasible, where:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. Rule 19(a)(1).

Anschutz argues that its lease interests render it a required party under both Rule 19(a)(1)(B)(i) and (ii). Anschutz Br. at 4–6. However, subsection (B)(i) is inapplicable here because Anschutz's absence will not "impair or impede its ability to protect" its lease interests. Fed. R. Civ. P. 19(a)(1)(B)(i). An absent party's ability to protect its interest cannot be impaired where the party's interest is "adequately represented" by existing parties. *See Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1180 (9th Cir. 2012). The adequacy of

PLAINTIFFS' OPPOSITION TO ANSCHUTZ MOTION TO INTERVENE - 2

representation for a necessary party under Rule 19 parallels the same inquiry for intervention under Rule 24(a). *Id.*

Here, existing Defendant-Intervenor WEA adequately represents Anschutz's lease interests. As explained in detail below, WEA intervened for the express purpose of protecting the lease rights of its members, including Anschutz, and has been diligently representing those interests thus far. This includes WEA's recent motion to stay the Phase One lease vacatur, which WEA supported with a declaration from Anschutz's President just two weeks before Anschutz filed its motion to intervene. *See* DeDominic Decl., ECF No. 177-5. Anschutz's motion fails to acknowledge that WEA has thus worked hand-in-glove with its members to protect their lease interests or make any effort to explain why WEA is supposedly now unable to adequately represent Anschutz's interests.[1]

Subsection (B)(ii) is also inapplicable as Anschutz's absence will not "leave an existing party subject to a substantial risk of . . . inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B)(ii). Anschutz argues that BLM could face inconsistent judgments if Anschutz later brings a suit for a declaration that its contract right is valid. Anschutz Br. at 6. But principles of res judicata and collateral estoppel would prevent Anschutz from relitigating the validity of its lease rights as it is in privity with WEA. Courts have long held that trade association members cannot relitigate claims and issues the association previously litigated on their behalf. *See* Anschutz Br. at 11–12 ("AEC . . . relied on the Alliance, a trade organization, to represent [its] interests in this matter."); *see also, e.g., Gen. Foods Corp. v. Mass. Dep't of Pub. Health*, 648 F.2d 784 (1st Cir. 1981); *Expert Elec., Inc. v. Levine*, 554 F.2d 1227 (2d Cir. 1977); *Aluminum Co. of Am. v.*

---

[1] Adequate representation by an existing party distinguishes this case from those cited by Anschutz in which lessees were deemed necessary parties. *See* Anschutz Br. 5–6.

PLAINTIFFS' OPPOSITION TO ANSCHUTZ MOTION TO INTERVENE - 3

*Admiral Merchants Motor Freight, Inc.*, 486 F.2d 717 (7th Cir. 1973); *cf. Shaw v. Hahn*, 56 F.3d 1128, 1131–32 (9th Cir. 1995) (finding privity due to shared interests and adequate representation by a third party in former action).

Further, inconsistent holdings about the validity of the leases would not actually subject BLM to "inconsistent obligations," which arise only "when a party is unable to comply with one court's order without breaching another court's order concerning the same incident." *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 976 (9th Cir. 2008) (distinguishing from mere inconsistent judgments). The only possible obligation BLM would incur from a future, conflicting judgment holding the leases valid is a damage award. *Cf. United States v. Jones*, 131 U.S. 1 (1889) (specific performance not available against federal government). That would not render BLM "unable to comply" with this Court's order.

Therefore, Anschutz is not a necessary party within the meaning of Rule 19 and should not be joined as a defendant in this action.

## II.     Anschutz Is Not Entitled to Intervention as of Right

Anschutz also fails to meet the standards for intervention. An applicant for intervention as of right under Federal Rule of Civil Procedure 24(a)(2) must satisfy four criteria: (1) the motion must be timely; (2) the movant must claim a "significantly protectable" interest relating to the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impeded its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action. *See Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). "Failure to satisfy any one of the requirements is fatal to the application." *Id.*

PLAINTIFFS' OPPOSITION TO ANSCHUTZ MOTION TO INTERVENE - 4

A.     The Motion is Untimely

The Court should deny Anschutz's motion to intervene first because it is untimely. Timeliness is "the threshold requirement" for intervention and if unsatisfied, the Court "need not reach any of the remaining elements of Rule 24." *See United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996). Timeliness depends on three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). "[A]ny substantial lapse of time weighs heavily against intervention." *Washington*, 86 F.3d at 1503.

This case has been pending for over two years. In that time, the district court has permitted three other parties to intervene, denied various motions to dismiss, transferred a portion of the case to Wyoming, granted a motion for preliminary injunction, and ultimately granted partial summary judgment for Plaintiffs. The fact that the Court and original parties have "covered a lot of legal ground together . . . weighs heavily against allowing intervention as of right under Rule 24(a)(2)." *See League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) ("*LULAC*"); *see also Smith v. Marsh*, 194 F.3d 1045, 1051 (9th Cir. 1999) ("substantial engagement by the district court with the issues in a case 'weighs heavily against allowing intervention as of right'") (citation omitted); *Alisal Water*, 370 F.3d at 922 (intervention properly denied "even at the pretrial stages when 'a lot of water [has] passed under . . . [the] litigation bridge.'"). Further, Anschutz dragged its feet even *after* the Court vacated its leases, waiting seven weeks after the Phase One decision to file its intervention papers and meanwhile supporting WEA in its motion for stay pending appeal. *See* ECF No. 177-5 (declaration from Anschutz's President DeDominico in support of WEA stay motion).

PLAINTIFFS' OPPOSITION TO ANSCHUTZ MOTION TO INTERVENE - 5

As for the second factor, allowing Anschutz to intervene would prejudice Plaintiffs. Anschutz apparently seeks to introduce new arguments or evidence that was not already presented to or ruled upon by this Court, including a new constitutional defense. If allowed to intervene, Anschutz could also object to the Magistrate assignment, harming Plaintiffs' ability to obtain timely and meaningful judicial relief. Piling on a fourth adverse party would also inevitably consume additional time and resources of both Plaintiffs and the Court and further complicate this case. *See Mass. Sch. of Law at Andover, Inc. v. United States*, 118 F.3d 776, 782 (D.C. Cir. 1997) (prejudice from untimely intervention includes "all the possible drawbacks of piling on parties," including issue proliferation and delay "as parties and court expend resources trying to overcome the centrifugal forces springing from intervention").

As for the third factor, Anschutz provides no compelling reason for its delay. "A party must intervene when he 'knows or has reason to know that his interests might be adversely affected by the outcome of litigation.'" *Alisal Water*, 370 F.3d at 930; *see also Garza v. County of Los Angeles*, 918 F.2d 763, 777 (9th Cir. 1990) (intervention motion untimely where proponent delayed in moving for intervention despite knowledge that lawsuit might adversely affect her interests). Here, Anschutz does not argue that it was unaware of this litigation; nor could it, as the company is a member of an existing party. Anschutz instead claims it "had no reason to suspect that its property rights would be cancelled." Anschutz Br. at 8.

The Court can easily discredit this statement. Anschutz had ample notice from Plaintiffs' April 2018 complaint that its lease interests might be vacated or otherwise adversely affected by this litigation. *See* Compl. ¶ 112, ECF No. 1 ("BLM oil and gas leasing decisions that have been made, or hereafter are made, under . . . IM 2018-034 are unlawful and should be reversed and set aside"); *id.* ¶¶ 308–319 (claim for relief against leases issued under IM 2018-034); *id.* ¶¶ 150–57,

PLAINTIFFS' OPPOSITION TO ANSCHUTZ MOTION TO INTERVENE - 6

177–85, 276–307 (challenging Feb. and Sept. 2017 Wyoming lease sales on other grounds); *id.* at "Prayer for Relief" ¶ B (specifically requesting that the court "vacate" all challenged leases); *see also* First Am. Compl. (ECF No. 78) ¶¶ 225a – 225ll (adding the "Phase One" lease sales as challenged actions); 2d. Am. Compl. ¶¶ 274–83 (ECF No. 165) (adding Feb. 2019 Wyoming lease sale as a challenged action). The request for vacatur of the Phase One leases was also clearly spelled out in Plaintiffs' Motion for Partial Summary Judgment, filed over a year ago. *See* ECF No. 135. Anschutz's claimed ignorance is further suspect as WEA has long recognized the risk of lease vacatur in this case. *See* ECF No. 35 at 8 (WEA motion seeking intervention "to represent its members' leasehold interests which the Plaintiffs seek to have vacated"); *id.* at 4 (arguing for intervention because the "vacatur of the lease sales . . . poses a direct and substantial threat to [WEA members'] legally protectable interests").

Anschutz's apparent shock that the Court would vacate the leases is also completely unjustified, as vacatur is a common and presumptively appropriate remedy for oil and gas leases and permits issued in violation of NEPA. *See, e.g.*, *San Juan Citizens Alliance v. BLM*, 326 F. Supp. 3d 1227 (D.N.M. 2018) (vacating oil and gas leases for NEPA violation); *Bob Marshall Alliance v. Lujan*, 804 F. Supp. 1292, 1298 (D. Mont. 1992) (cancelling leases, rather than merely suspending them, because it is "the only remedy which will effectively foster NEPA's mandate"); *Diné Citizens Against Ruining Our Env't v. Bernhardt*, 923 F.3d 831 (10th Cir. 2019) (vacating BLM drilling permits due to NEPA violations); *see also Humane Soc'y of U.S. v. Johanns*, 520 F. Supp. 2d 8, 37 (D.D.C. 2007) ("vacating a rule or action promulgated in violation of NEPA is the standard remedy"). Thus, Anschutz clearly had "reason to know" that its interests "might be adversely affected" by this case. *Alisal Water*, 370 F.3d at 930.

PLAINTIFFS' OPPOSITION TO ANSCHUTZ MOTION TO INTERVENE - 7

Anschutz also claims that its two-year delay is justified because it previously believed WEA adequately represented its interests. *See* Anschutz Br. at 7, 12 ("The Alliance's organizational representation of the industry at that point [of lease cancellation] was no longer adequate."). This argument is unavailing for two reasons. First, as explained in detail below, Anschutz cannot establish that WEA inadequately defends its interests. Second, even if it could, Anschutz fails to convincingly explain why that representation is only now inadequate. Anschutz asserts that WEA has adequately defended its lease interests to this point, Anschutz Br. at 11–12, but fails to explain how defending against *possible* vacatur and *actual* vacatur is any different. If true that WEA cannot adequately represent Anschutz because it does itself not own any leases, then Anschutz should have moved to intervene on day one. *See LULAC*, 131 F.3d at 1302 (timeliness measured from when movant "should have been aware [its] 'interest[s] would no longer be protected adequately by the parties'").

In sum, Anschutz "slept on its intervention rights for more than two years. When it awoke, it was unable convincingly to explain its delay." *LULAC*, 131 F.3d at 1308. The motion to intervene should thus be denied as untimely.[2]

    B.    <u>Anschutz's Interests are Adequately Represented by WEA</u>

Anschutz also fails to make the "compelling showing" required to overcome the presumption that WEA adequately represents its interests. Adequacy of representation is ordinarily determined by considering: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is

---

[2] Adequate representation by an existing party also distinguishes this case from *Conner* and *Hodel*, in which the district court allowed lessees to intervene after entering an order voiding their leases. *See* Anschutz Br. at 8–10 (citing *N. Cheyenne Tribe v. Hodel*, 851 F.2d 1152 (9th Cir. 1988) and *Conner v. Burford*, 848 F.2d 1441 (9th Cir. 1988)).

PLAINTIFFS' OPPOSITION TO ANSCHUTZ MOTION TO INTERVENE - 8

capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).

However, the Ninth Circuit demands a more rigorous showing of inadequacy where, as here, the proposed intervenor shares the same ultimate objective as an existing party. "Where the party and the proposed intervenor share the same 'ultimate objective,' a presumption of adequacy of representation applies, and the intervenor can rebut that presumption only with a 'compelling showing' to the contrary." *Proposition 8*, 587 F.3d at 951 (quoting *Arakaki*, 324 F.3d at 1086). The presumption may be overcome by evidence of collusion, adversity of interest, nonfeasance, incompetence, or lack of financial resources. *See Farmland Irr. Co. v. Dopplmaier,* 220 F.2d 248, 248–49 (9th Cir. 1955).

Here, Anschutz is a member of WEA, and the two entities share the same ultimate objective in this lawsuit: upholding the validity of the contested lease sales and avoiding lease vacatur.  By selectively and misleadingly quoting WEA's motion to intervene, Anschutz suggests that WEA only intervened to protect its own "organizational interest in maintaining regulatory certainty in BLM's oil and gas leasing program." WEA Interv. Br. at 6, ECF No. 20-1. That is clearly untrue. WEA's primary argument for intervention was a stated desire to protect its members' "monetary interests in the challenged federal oil and gas leases on the federal lands at issue in this case." *Id.* at 5–6; *see also* WEA Interv. Reply at 1, 3–4, ECF No. 35 ("The Alliance seeks intervention to protect its members' valid and significant interests and property rights"); *id.* at 6 ("the Alliance is defending the property rights and business interests of its members"). This is the very same interest that Anschutz seeks to protect.

PLAINTIFFS' OPPOSITION TO ANSCHUTZ MOTION TO INTERVENE - 9

This unity of interests creates a presumption of adequate representation which Anschutz fails to rebut. There is no reason to believe that WEA cannot or will not make any reasonable argument that Anschutz would make if it were a party. WEA has thus far diligently represented the interests of the entire lessee class. WEA fully participated in the preliminary injunction proceedings to defend its members' interests in upcoming oil and gas lease sales and emphasized the financial impacts on its members' existing lease interests. *See* ECF Nos. 51, 51-1, 65. WEA also fully participated in the Phase One summary judgment proceedings, again emphasizing its members' leasehold and financial interests in the Phase One lease sales and challenging the decision to vacate rather than suspend the Phase One leases. *See* ECF Nos. 148-49, 163. Most recently, WEA filed a notice of appeal from the Phase One summary judgment decision and moved for a stay pending appeal of the order vacating the Phase One lease sales. *See* ECF Nos. 177, 184. As noted above, WEA supported its motion for stay with a declaration from Anschutz President DeDominco. ECF No. 177-5. Anschutz's moving papers fail to acknowledge that WEA has taken all these litigation steps to protect its lease interests. *See* ECF No. 199 (Anschutz brief, and DeDomino declaration). Further confirming the adequacy of WEA's representation, Anschutz has filed a motion for stay pending appeal which simply "joins" in WEA's prior motion for stay, instead of raising the new facts or arguments Anschutz claims to offer. *See* ECF No. 205.

Anschutz's only basis for contesting the adequacy of WEA's representation is its vague desire to inject a new defense "that the government cannot take its property interests without due process or just compensation under the U.S. Constitution." *See* Anschutz Br. at 13. But this is simply a difference in legal strategy that the Ninth Circuit has repeatedly held is "not enough to justify intervention as a matter of right." *Proposition 8*, 587 F.3d at 951 (disagreement about

PLAINTIFFS' OPPOSITION TO ANSCHUTZ MOTION TO INTERVENE - 10

whether to make particular arguments does not present a "compelling showing" of inadequate representation); *Arakaki*, 324 F.3d at 1082, 86 (same). Anschutz itself appears unprepared to press this constitutional defense as it was not pled in its proposed answer. *See* ECF No. 200. There is also nothing in the record to suggest that WEA is unable or unwilling to raise this issue if it has a reasonable basis in law and fact—which appears doubtful.[3] Finally, to the extent that Anschutz claims to have a unique perspective on the disruptive consequences of lease vacatur, that perspective can be easily presented through WEA's filings, as it has already done. *See, e.g.*, DeDominico Decl., ECF No. 177-5. That does not provide a basis for intervention.

In sum, Anschutz fails to provide the required "compelling showing" that WEA inadequately represents its interests here, a second fatal blow to its request for intervention.

## III. Anschutz Is Also Not Entitled to Permissive Intervention

The Court should deny permissive intervention for essentially the same reasons. As with motions for intervention as of right, "[a] finding of untimeliness defeats a motion for permissive intervention." *Washington*, 86 F.3d at 1507. Timeliness is even more strictly enforced for permissive intervention. *See LULAC*, 131 F.3d at 1308. The Court should thus deny the motion

---

[3] While Anschutz's brief is quite vague, the company appears to claim that vacating its lease rights without prior notice and an opportunity to be heard violated its procedural due process rights. But Anschutz had actual notice of this case, an opportunity to timely intervene, and adequate representation in by WEA. Further, to establish a procedural due process claim, Anschutz must have a legitimate claim of entitlement to a property interest, which cannot be found in an invalidly-issued lease. *See, e.g.*, *Sangre de Cristo Dev. Co. v. United States*, 932 F.2d 891, 894 (10th Cir. 1991) (rejecting due process claim brought after court invalidated oil and gas lease issued in violation of NEPA, as an invalid lease "vest[s] no property interest"); *Shiny Rock Min. Corp. v. U.S.*, 825 F.2d 216, 219 (9th Cir. 1987) (finding that void mineral claim vested no property right for which due process could be violated). As to the supposed taking of property without just compensation, this is an affirmative claim for monetary relief Anschutz can bring against BLM in a future suit. *Cf. Alisal Water*, 370 F.3d at 921 (no impairment of rights when proposed intervenor had alternative means of redress); *but see Sangre de Cristo*, 932 F.2d at 894 (rejecting identical takings claim). A decision by WEA not to press this apparently baseless constitutional defense thus could not be deemed inadequate representation.

PLAINTIFFS' OPPOSITION TO ANSCHUTZ MOTION TO INTERVENE - 11

as untimely.

Permissive intervention is also unwarranted based on a host of other factors, including prejudice to Plaintiffs, adequate representation by an existing party, unlikely contributions to the case, and efficiency of the litigation process. *See, e.g., Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011) (upholding denial of permissive intervention where purported intervenors had nothing to contribute); *Proposition 8*, 587 F.3d at 955 (upholding denial based on adequate representation and likelihood that intervenor participation "would consume additional time and resources of both the Court and the parties"); *Exec. Risk Specialty Ins. Co. v. Rutter Hobbs & Davidoff, Inc.*, 564 F. App'x 887, 889–90 (9th Cir. 2014) (upholding denial where intervenor had nothing new to contribute and "would [only] add . . . emphasis to the position taken by" another party); *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998) (upholding denial where it would "only serve to undermine the efficiency of the litigation process"); *United States ex rel. Richards v. De Leon Guerrero*, 4 F.3d 749, 756 (9th Cir. 1993) (upholding denial where the government party would adequately represent applicant's interests).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Anschutz Exploration Corporation's motion to intervene.

Dated: May 1, 2020                          Respectfully submitted.

　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Sarah K. Stellberg*
　　　　　　　　　　　　　　　　　　　　　　　　Sarah Stellberg (ISB #10538)
　　　　　　　　　　　　　　　　　　　　　　　　Laurence ("Laird") J. Lucas (ISB # 4733)
　　　　　　　　　　　　　　　　　　　　　　　　Todd C. Tucci (ISB # 6526)

　　　　　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of May, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent a Notice of Electronic Filing (NEF) to the following persons who are counsel for opposing parties in this matter:

**Counsel for Federal Defendants**

Luther L. Hajek
U.S. Dept. of Justice
luke.hajek@usdoj.gov

Christine Gealy England
christine.england@usdoj.gov

**Counsel for Intervenors State of Wyoming & Western Energy Alliance**

Bret A. Sumner
bsumner@bwenergylaw.com

Malinda Morain
mmorain@bwenergylaw.com

Cherese De'Dominiq McLain
cdm@msbtlaw.com

James Kaste
james.kaste@wyo.gov

Elliott Adler
elliott.adler@wyo.gov

**Counsel for Proposed Intervenor Anschutz Exploration Corporation**

Lee Radford
LRadford@parsonsbehle.com

Jessica Livingston
jessica.livingston@hoganlovells.com

Andrew Lillie
andrew.lillie@hoganlovells.com

Mark Gibson
mark.gibson@hoganlovells.com

*/s/ Sarah K.Stellberg*
Sarah K. Stellberg

PLAINTIFFS' OPPOSITION TO ANSCHUTZ MOTION TO INTERVENE - 13