James Kaste, WSB No. 6-3244
Deputy Attorney General
Elliott Adler, WSB No. 7-6434
Assistant Attorney General
Wyoming Attorney General's Office
2320 Capitol Avenue
Cheyenne, WY  82002
(307) 777-7895 (phone)
(307) 777-3542 (fax)
james.kaste@wyo.gov
elliott.adler@wyo.gov

Cherese D. McLain (ISB No. 7911)
MSBT Law, Chtd.
7699 W. Riverside Dr.
Boise, ID 83714
Telephone: (208) 331-1800
Facsimile: (208) 331-1202
Email: cdm@msbtlaw.com

*Attorneys for the State of Wyoming*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, *et al.*<br>        Plaintiffs,<br><br>    v.<br><br>RYAN ZINKE, Secretary of Interior, *et al*<br>        Defendants,<br><br>STATE OF WYOMING, WESTERN ENERGY ALLIANCE,<br><br>        Intervenor-Defendants. | Case No. 1:18-cv-00187-REB<br><br>**INTERVENOR-DEFENDANT STATE OF WYOMING'S REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL** |

The State of Wyoming offers the following reply in support of its Motion for Stay Pending Appeal (ECF_181):

The Court's February 27, 2020, order vacating approximately $100 million in lease sales by the Bureau of Land Management across Wyoming, Nevada, and Utah threatens to cause significant disruptive consequences to the State of Wyoming, the Bureau, and the lessees. (ECF_174 at 57-61). The disruptive consequences of the Court's unexpected and, in Wyoming's view, disproportionate remedy are illustrated by the recent request of Anschutz Energy Corporation to intervene in this litigation. (ECF_198). The Court's deviation from the routine remedy of remand transformed an otherwise interested party into an indispensable party, and the same is true for every other successful lease bidder whose real property rights would be extinguished without notice or due process if the leases are immediately vacated. To minimize the somewhat chaotic consequences of the Court's order, the Defendants and Defendant-Intervenors each requested, and proved they are entitled to, a stay pending appeal of that portion of the Court's order vacating the leases.

For their part, Plaintiffs, Western Watersheds Project and the Center for Biological Diversity (Advocacy Groups), contend that vacating the leases would not be disruptive, the leases can simply be reinstated if the Court's order is reversed on appeal. Not so. The regulations the Advocacy Groups point to, 43 CFR §§ 3108.2-2 and 3108.2-3, authorize reinstatement of leases that were terminated for "failure to pay on or before the anniversary date the full amount of rental due" or "terminated by operation of law for failure to pay rental timely when the rental was not paid or tendered within 20 days of the termination date[.]" Neither regulation authorizes reinstatement after vacatur by a court. In fact, Wyoming is not aware of any regulatory process for reinstatement if the leases are vacated. Instead, Wyoming believes that if the Court's order is not

stayed those leases must be cancelled, approved applications for permits to drill (APDs) must be cancelled, monies returned, operations halted, existing infrastructure shut in, and the tracts re-offered for lease at a subsequent sale. As set forth in the respective motions for stay, these actions pose real and undue burdens on Wyoming, the Bureau, and the lessees. And once done, these actions cannot simply be undone by an order from the Court of Appeals reinstating the leases. *See Nken v. Holder*, 556 U.S. 418, 427 (2009) (quoting *Scripps-Howard Radio Inc. v. FCC*, 316 U.S. 4, 10 (1942) ("The choice for a reviewing court should not be between justice on the fly or participation in what may be an 'idle ceremony.'").

Accordingly, it is imperative that the Court maintain the status quo while the appeal proceeds to prevent what would otherwise be irreversible adverse consequences. *See, e.g., Duncan v. Becerra*, 2019 U.S. Dist. LEXIS 63045, at *6-7 (S.D. Cal. Apr. 4, 2019) ("There is an immeasurable societal benefit of maintaining the immediate status quo while the process of judicial review takes place."). This can be done in a manner that protects the interests of all parties. Wyoming requested in its motion for stay that the portion of the Court's order vacating the leases be stayed. In response, the Advocacy Groups assert that such a broad order would permit the continued development of leases to the detriment of greater sage-grouse habitat. But a stay, like an injunction, can take many forms and can be tailored to fit the circumstances of the case. *See, e.g., Id*. at *8-9 (granting partial stay).

Wyoming asserts that the Court can and should enter a partial stay in this case that balances all the competing interests before the Court. A stay that maintains the status quo as it exists today without prejudicing the real property rights of the lessees or the revenue interests of the states and the Bureau **and** which protects undisturbed greater sage-grouse habitat. To this end, Wyoming proposes the Court partially stay its vacatur order to the extent vacatur would otherwise: (1) require

the Bureau to cancel the leases issued in Nevada, Utah, and Wyoming based on the June and September 2018 lease sales under IM 2018-034; (2) require the Bureau to cancel already approved APDs on these leases; or (3) require lessees on the 16 leases where operations have begun to cease ongoing operations. Such a partial stay would continue to prohibit the BLM from issuing any new APDs on the leases and would continue to prevent lessees from commencing operations on any lease with an already-approved APD.[1]

Since Wyoming filed its motion, at the request of counsel, the Wyoming Oil and Gas Conservation Commission and the Bureau investigated the status of operations on the leases. The results of this investigation are set forth in the affidavit and spreadsheet attached to the Bureau's reply brief. (ECF_215-1 and -2). The best information available to both agencies indicates that of the hundreds of leases at issue in these proceedings only sixteen are actively drilling or producing in Wyoming. *Id.* Of those sixteen, six are already producing, eight are actively drilling, and two are shut in. Of the six wells that are already producing, the surface-hole locations of three of the wells are actually located off the surface of the lease. Of the eight wells that are actively drilling only one surface-hole is located on the lease. None of the leases in Nevada or Utah are drilling or producing at this time. *Id.*

Permitting continued operations on the few leases where drilling has already begun or been completed strikes an appropriate balance. It is no small matter to move a drilling rig or to cease production and shut in a well. Most of the operations that are currently taking place are located off the surface of the leases and, therefore, do not implicate the Advocacy Groups' interests in the protection of greater sage-grouse habitat on those leases. The most significant activity at the three

---

[1] Granting a partial stay in this manner avoids any concern that the Court might be granting interim injunctive relief. *See, e.g., Nken,* 556 U.S. at 428-29 (explaining the distinctions between stays and injunctions).

producing wells located on the surface of the leases has already taken place and the remaining operations are both largely automated and do not require further surface disturbance. That leaves one drilling rig on the surface of a lease in Wyoming. The horse is out of the barn there too. Removing the drilling rig, at significant cost, would not undo the surface disturbance that has already taken place. Forcing these few lessees to cease and shut in operations provides no meaningful benefit to the Advocacy Groups' interests. Accordingly, the Court should permit these limited activities to continue during the pendency of the appeal.

Wyoming believes that a partial stay of the vacatur order that prohibits the approval of new APDs on the subject leases, suspends activity on already approved APDs where operations have not been initiated, and permits continued operations on the sixteen leases where operations have begun represents the most sensible and least disruptive resolution of the pending motions for stay. It protects the real property interests of the lessees. It protects the revenue interests of the states and the Bureau. It protects undisturbed habitat. And it avoids the massive disruption and uncertainty associated with prematurely cancelling the leases before the parties can obtain meaningful judicial review on appeal. It certainly would also make good sense to permit APDs and operations on leases where the surface disturbance will be located off the lease, as these operations do not implicate the Advocacy Groups' asserted interests in greater sage-grouse habitat on the leases. But in the interest of maintaining the status quo for all parties exactly as it stands today, Wyoming proposes that the Court take the more restrictive but likely less disruptive course.

WHEREFORE the State of Wyoming requests that the court grant its motion for stay pending appeal by entering a partial stay of the vacatur order to the extent vacatur would otherwise: (1) require the Bureau to cancel the leases issued in Nevada, Utah, and Wyoming based on the June and September 2018 lease sales under IM 2018-034; (2) require the Bureau to cancel already

approved APDs on these leases; or (3) require lessees on the 16 leases where operations have begun to cease ongoing operations.

Dated this 4th day of May 2020.

/s/ Cherese D. McLain
Cherese D. McLain (ISB No. 7911)
MSBT Law, Chtd.
7699 W. Riverside Dr.
Boise, ID 83714
Telephone: (208) 331-1800
Facsimile: (208) 331-1202
Email: cdm@msbtlaw.com

/s/ James Kaste
James Kaste (WSB No. 6-3244)
Deputy Attorney General
Elliott Adler (WSB No. 7-6434
Assistant Attorney General
Wyoming Attorney General's Office
2320 Capitol Ave.
Cheyenne, Wyoming 82002
Telephone: (307) 777-7895
Facsimile: (307) 777-3542
james.kaste@wyo.gov
elliott.adler@wyo.gov

*Counsel for the State of Wyoming*

## CERTIFICATE OF SERVICE

I certify that on May 4, 2020, I electronically filed the foregoing with the Clerk of the U.S. District Court of Idaho using the CM/ECF system which sent a Notice of Electronic filing to the parties of record.

/s/ James Kaste
James Kaste