UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, and CENTER FOR BIOLOGICAL DIVERSITY, | Case No.: |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER RE:** |
| vs. | **PLAINTIFFS' MOTION FOR RECONSIDERATION AND CLARIFICATION OF PHASE ONE REMEDIES (Dkt. 175)** |
| RYAN K. ZINKE, Secretary of Interior; DAVID BERNHARDT, Deputy Secretary of Interior; and UNITED STATES BUREAU OF LAND MANAGEMENT, an agency of the United States, | **FEDERAL DEFENDANTS' MOTION FOR PARTIAL STAY PENDING APPEAL (Dkt. 176)** |
| Defendants, | **WESTERN ENERGY ALLIANCE'S MOTION FOR STAY PENDING APPEAL (Dkt. 177)** |
| and, | **STATE OF WYOMING'S MOTION FOR STAY PENDING APPEAL (Dkt. 181)** |
| STATE OF WYOMING; WESTERN ENERGY ALLIANCE, | **FEDERAL DEFENDANTS' MOTION FOR EXPEDITED CONSIDERATION OF MOTIONS FOR STAY PENDING APPEAL (Dkt. 220)** |
| Defendants-Intervenors. | **PLAINTIFFS' MOTION FOR LEAVE TO FILE SURREPLY OPPOSING MOTIONS FOR STAY PENDING APPEAL (Dkt. 221)** |

**MEMORANDUM DECISION AND ORDER - 1**

Pending before the Court are:  (1) Plaintiffs' Motion for Reconsideration and Clarification of Phase One Remedies (Dkt. 175); (2) Federal Defendants' Motion for Partial Stay Pending Appeal (Dkt. 176); (3) Western Energy Alliance's ("WEA") Motion for Stay Pending Appeal (Dkt. 177); (4) State of Wyoming's ("Wyoming") Motion for Stay Pending Appeal (Dkt. 181); (5) Federal Defendants' Motion for Expedited Consideration of Motions for Stay Pending Appeal (Dkt. 220); and (6) Plaintiffs' Motion for Leave to File Surreply Opposing Motions for Stay Pending Appeal (Dkt. 221).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:[1]

## I. <u>DISCUSSION</u>

**A.    Plaintiffs' Motion for Reconsideration and Clarification of Phase One Remedies (Dkt. 175)**

Plaintiffs seek reconsideration and clarification of the remedies portion of the Court's February 27, 2020 Memorandum Decision and Order, specifically asking that the Court (1) reconsider the geographic limitation on its vacatur of Instruction Memorandum ("IM") 2018-034 and issue instead a remedy order that vacates and sets aside IM 2018-034 without any limitation; and (2) clarify that it vacated, rather than enjoined, the relevant portions of IM 2018-034. *See generally* Pls.' Mot. for Recon. (Dkt. 175).

The Federal Rules of Civil Procedure do not expressly authorize a motion for reconsideration, but a "district court has the inherent power to reconsider and modify its interlocutory orders prior to entry of judgment . . . ."  *Smith v. Massachusetts*, 543 U.S. 462, 475

---

[1]  The undersigned usually prefers oral argument when issues such as those included within the pending motions are raised.  However, because of the recent and evolving COVID-19 outbreak/pandemic, the Court is currently limited in this regard and will therefore decide here the motions on the briefing.  Moreover, the restrictive circumstances presented by national, state, and local responses to COVID-19, combined with the need to address the parties' appeal-related arguments sooner-rather-than-later, call for a more concise discussion than is the Court's typical practice.

**MEMORANDUM DECISION AND ORDER - 2**

(2005) (internal quotations omitted); *cf.* Fed. R. Civ. P. 54(b).  Nevertheless, reconsideration is

"an extraordinary remedy, to be used sparingly . . . ."  *Carroll v. Nakatani*, 342 F.3d 934, 945

(9th Cir. 2003).  Absent highly unusual circumstances, a motion for reconsideration will not be

granted "unless the district court is presented with newly discovered evidence, committed clear

error, or if there is an intervening change in controlling law."  *Kona Enters., Inc. v. Estate of*

*Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

Relevant here, the Court set aside IM 2018-034's at-issue provisions and reinstated IM

2010-117's corresponding provisions, but did so only with respect to oil and gas lease sales

contained in whole or in part within the Sage-Grouse Plan Amendments' recognized "Planning

Area Boundaries" encompassing "Greater Sage-Grouse Habitat Management Areas," reasoning:

> However, as with the preliminary injunction, the scope of said vacatur and
> reinstatement will be narrowly and specifically tailored to fit the dispute generating
> such a remedy.
>
> This case is tied to oil and gas leases that affect greater sage-grouse habitats.  WWP
> goes to great lengths to document the history surrounding the 2015 Sage-Grouse
> Plan Amendments which identified priority sage-grouse habitats and imposed
> management restrictions intended to protect sage-grouse from adverse impacts of
> oil and gas leasing development.  Indeed, the threshold point on which WWP
> justifies this lawsuit depends upon that overlay and the connections within
> pertaining to sage-grouse habitat.  Even so, the Court concludes that a decision that
> would install a nationwide directive to *all* oil and gas lease sales *throughout* the
> United States, without regard to whether such lease sales implicate sage-grouse
> habitat, is not justified.
>
> Therefore, the remedy here – setting aside certain of IM 2018-034's provisions in
> favor of IM 2010-117's – applies to oil and gas lease sales contained in whole or in
> part within the Sage-Grouse Plan Amendments' recognized "Planning Area
> Boundaries" encompassing "Greater Sage-Grouse Habitat Management Areas," as
> indicated in the following BLM map [map attached].

2/27/20 MDO, pp. 54-56 (Dkt. 174) (internal citations omitted, emphasis in original).  As to their

first reconsideration request, Plaintiffs argue that IM 2018-034's vacatur should not be so

geographically limited because the appropriateness of a tailored vacatur was never addressed in

**MEMORANDUM DECISION AND ORDER - 3**

the parties' briefing (presented in the context of cross-motions for summary judgment rather

than, as before, in the context of a preliminary injunction), especially when, under the APA, the

default statutory remedy is vacatur of the challenged action *in its entirety*.  *See* Mem. ISO Pls.'

Mot. for Recon., pp. 3-13 (Dkt. 175-1).  The Court disagrees.

     First, Plaintiffs are mistaken that the parties' cross-motions for summary judgment were

completely insulated from any possible injunctive relief (such that no narrow tailoring in the

form of a geographic boundary was ever warranted).  There may not have been particularized

discussion of the merits of injunctive relief or what such relief might look like,[2] but it is

inescapable that Plaintiffs understood and sought the twining of injunctive relief and vacatur in

this unique setting.  *See, e.g.*, Pls.' Brief ISO MPSJ, p. 20 (Dkt. 135-1) ("[I]t is also within the

Court's equitable jurisdiction to impose injunctive relief requiring Federal Defendants to

continue applying IM 2010-117's procedures.  Such relief is warranted on the same grounds that

justified the preliminary injunction.") (citing *Cal. ex rel. Lockyer v. United States*, 575 F.3d 999,

1019-20 (9th Cir. 2009) (described by Plaintiffs as:  "*treating an order reinstating a prior rule

after a vacatur as an injunction*") (emphasis added)); *see also* Pls.' Reply ISO MPSJ, p. 22 (Dkt.

159) ("Even absent automatic reinstatement, *the Court is well within its equitable discretion to

order this type of remedy as permanent injunctive relief*.") (citing *Cal. ex rel. Lockyer*, 575 F.3d

at 10-19-20) (emphasis added).  Therefore, even if not front-and-center when the parties filed

---

     [2]  The Court acknowledged this, stating:

     The parties do not specifically address the Court's earlier consideration of the *Winter* factors in the preliminary injunction context, except insofar as taking a stand on the "actual" (as opposed to "likelihood of") success on the merits.  Therefore, where appropriate, the Court's previous analysis concerning the propriety of preliminary relief, coupled now with the Court's consideration of those merits here, is applicable to any permanent injunctive relief analysis as well.

2/27 MDO, p. 50, n.20 (Dkt. 174) (citing 9/21/18 MDO, pp. 10-12, 29-49 (Dkt. 74)).

**MEMORANDUM DECISION AND ORDER - 4**

their dispositive motions (despite the Court's issuance of a preliminary injunction discussing identical issues and the same geographic boundary), to argue now of a disconnect between vacating IM 2018-034 in favor of IM 2010-117 and either a perceived or actual injunction does not follow.  In short, there is nothing new that would warrant the Court's reconsideration of the remedy imposed.

Second, a geographically untethered invalidation of IM 2018-034 (alongside a wholesale reinstatement of the supplanted IM 2010-117 moving forward) beyond the geographic boundary outlined by the Court, would leave behind the soil into which this action was originally planted and pursued.  *See supra*.  This lawsuit confronts oil and gas leases affecting sage-grouse habitats[3] and, since its initiation, Plaintiffs have appropriately submitted declarations speaking to IM 2018-034's impact as to those habitats and the concerns over oil and gas leasing upon those habitats.  Others are free to argue whether or not this Court's consideration of IM 2018-034's procedural and/or substantive invalidation under the APA, FLPMA, and/or NEPA ought to be

---

[3] The Court reminds Plaintiffs of their "suggestion" at the outset of this case, requesting that it be reassigned *sua sponte* to U.S. District Judge B. Lynn Winmill because of similar issues in two other sage-grouse-related cases Judge Winmill is presiding over.  *See* Not. of Related Cases, pp. 2-4 (Dkt. 3) ("The present case and these two related cases all involve *legal challenges over the conservation of greater sage-grouse on public lands administered by [BLM]* . . . .  Specifically, the Complaint in this action challenges a suite of BLM oil and gas leasing and development decisions as violating FLPMA, NEPA, and the APA, including violating certain requirements of the "Sage-Grouse Plan Amendments" adopted by BLM and the U.S. Forest Service in 2015 to amend 98 RMPs and Forest Plans across the range of the greater sage-grouse. . . . .  There is a close interlap between this case and No. 1:16-cv-083-BLW with respect to the science and history of sage-grouse conservation on public lands, the procedures employed for the Sage-Grouse Plan Amendments to the same BLM RMPs, the public lands and sage-grouse habitats and populations, the legal claims presented in both cases, and potential remedies. . . . Judge Winmill also has substantial experience and knowledge regarding greater sage-grouse science, public lands management, and conservation needs from other prior litigation, as referenced in the Complaint herein . . . .  That knowledge and experience is useful and directly relevant to the adjudication of the claims presented in this case . . . .  In light of the overlap between these cases and Judge Winmill's familiarity with the common facts and issues presented between this case and the other sage-grouse cases noted above, Plaintiffs respectfully submit that principles of judicial economy favor reassignment of this matter to Chief Judge Winmill

**MEMORANDUM DECISION AND ORDER - 5**

adopted in other settings, but this Court's decision is drawn from, based upon, and limited to the sage grouse habitat's geographic boundary previously outlined.

As to their second clarification request, Plaintiffs ask that references to provisions of IM 2018-034 being "enjoined" in discrete instances within the Memorandum Decision and Order be replaced by the word "vacated" to better align with IM 2018-034 being set aside.  *See* Mem. ISO Pls.' Mot. for Recon., pp. 13-14 (Dkt. 175-1).  This argument logically tracks Plaintiffs' vacatur/injunction argument relative to their reconsideration request; hence, given the Court's consideration of that issue (*see supra*), it is similarly resolved.  As stated in the Memorandum Decision and Order, the relevant provisions of IM 2018-034 are set aside and replaced by IM 2010-117's corresponding provisions until BLM completes a proper notice-and-comment rulemaking to govern its lease review process.  That the Memorandum Decision and Order also describes certain IM 2018-034 provisions as being "enjoined" does not upend this directive and will not be changed here.

Therefore, Plaintiffs' Motion for Reconsideration and Clarification of Phase One Remedies (Dkt. 175) is DENIED.

**B.    Motions for Stay Pending Appeal**
**(Dkts. 176, 177, 181)**

In addition to setting aside IM 2018-034's provisions in favor of IM 2010-117's for all succeeding oil and gas lease sales (within understood sage-grouse habitat areas), the Memorandum Decision and Order also set aside the Phase One lease sales applying IM 2018-034 (the June and September 2018 lease sales in Nevada, Utah, and Wyoming).  *See generally* 2/27/20 MDO (Dkt. 174).  Federal Defendants and Defendant-Intervenors WEA and Wyoming now move to stay only that portion of the Memorandum Decision and Order that sets aside the Phase One lease sales, with Federal Defendants requesting that the Court instead order a

**MEMORANDUM DECISION AND ORDER - 6**

suspension of operations and production on those leases pending the appeal.[4]  They do not seek a

stay of that portion of the Memorandum Decision and Order that sets aside IM 2018-034 itself.

*See generally* Fed. Defs.' Mot. for Stay Pending Appeal (Dkt. 176); WEA's Mot. for Stay

Pending Appeal (Dkt. 177); Wyoming's Mot. for Stay Pending Appeal (Dkt. 181).

    The court has discretion to grant a stay pending appeal.  *See Nken v. Holder*, 556 U.S.

418, 433 (2009).  "The party requesting a stay bears the burden of showing that the

circumstances justify an exercise of that discretion." *Id*. at 433-34.  Four factors come into play:

(1) "whether the stay applicant has made a strong showing that [it] is likely to succeed on the

merits" of the appeal; (2) "whether the applicant will be irreparably injured absent a stay"; (3)

"whether issuance of the stay will substantially injure the other parties interested in the

proceeding"; and (4) "where the public interest lies." *Id*. at 434.  The first two factors are the

"most critical." *Id*.  The chance of success on the merits must be "better than negligible." *Id*.

(citation omitted).  The second factor is not satisfied if the applicant only shows a "possibility of

irreparable injury." *Id*. (citation omitted).  For the reasons that follow, the Court will stay the

setting aside of the Phase One lease sales pending appeal and order that they be suspended

during that time.

    First, in initially issuing a preliminary injunction and later granting Plaintiffs' Motion for

Partial Summary Judgment and setting aside both IM 2018-034's application in sage-grouse

habitat areas and the Phase One lease sales themselves, the Court indicated that it was persuaded

on the present record that Plaintiffs' arguments on these issues should prevail.  But, as with any

trial court decision, that does not mean that an appeal is doomed from the start or even has only a

---

[4]  Defendant-Intervenors WEA and Wyoming do not appear to join in Federal
Defendants' request that operations be suspending, alternatively advocating that any stay simply
maintain the status quo pending appeal.  *See, e.g.*, WEA's Mem. ISO Mot. for Stay, pp. 2-3, 13,
15 (Dkt. 177-1); Wyoming's Mem. ISO Mot. for Stay, p. 11 (Dkt. 181-1).

**MEMORANDUM DECISION AND ORDER - 7**

slight chance of success.  There are complex legal issues at play here, with countervailing interests permeating the parties' respective positions on those issues.  One example flows from whether the opportunities for public involvement (and the public's actual involvement) leading up to those leasing decisions were meaningful and, likewise, satisfied NEPA and FLPMA.  The Court said "no," but the Defendants contend strongly that there was both opportunity and actual meaningful input, such that the Phase One lease sales should not be set aside.  Additionally, independent of the adequacy of public participation or the harm of its alleged constraint, the actual remedy of setting aside the Phase One lease sales as opposed to merely suspending them while awaiting further public comment is equally up for debate and was not a foregone conclusion.  *See, e.g.*, 2/27/20 MDO, pp. 57-59 (Dkt. 174) ("Though a closer decision than whether to set aside IM 2018-034 . . ., the *Allied-Signal* factors likewise apply to set aside the Phase One lease sales. . . .  However, the disruptive consequences in actually setting aside the Phase One lease sales instead of suspending them – the second *Allied-Signal* factor – is less clear."); *but see* Pls.' Not. of Supp. Auth. (Dkt. 219) (citing *WildEarth Guardians, et al. v. U.S. Bureau of Land Mgmt., et al.*, No. 4:18-cv-00073-BMM (ECF No. 39) (D. Mont., May 1, 2020) for proposition that Court did not abuse its discretion in deciding to vacate, rather than suspend, Phase One leases due to violations of NEPA, FLPMA, and APA).  Simply put, despite the Court's confidence in the legal analysis contained in its Memorandum Decision and Order, the appealing parties' likelihood of success on appeal is at least "better than negligible."

Second, in the absence of a stay pending appeal, the leases will be set aside/cancelled. There is an element of the tangible and the intangible in that, as Defendants contend, approximately $100 million would need to be returned.  Nearly half of that amount, the Federal Defendants and Wyoming submit, has already been disbursed to the states where the lands are located and has already been spent two years ago as part of their 2018 budgets.  As a result, they

**MEMORANDUM DECISION AND ORDER - 8**

contend, recoupment *in toto* is likely unachievable.  *See* Fed. Defs.' Mem. ISO Mot. for Stay, pp. 17-18 (Dkt. 176-1); Wyoming's Mem. ISO Mot. for Stay, pp. 9-11 (Dkt. 181-1).

Separately, the companies holding the vacated Phase One lease sales will have to forego their sunk costs in exploring and evaluating which parcels to nominate for lease, bid on, and develop; in evaluating and developing business and drilling plans on purchased parcels; in delayed revenue streams, including investment amounts spent internally and paid to third-party contractors; and in leaseholders' terminated leasehold interests.  *See* WEA's Mem. ISO Mot. for Stay, pp. 6-12 (Dkt. 177-1).  The calculus is significant, but the federal laws that set the guideposts for such activities on the public lands do not excuse violations based upon how expensive the consequences might be, a fact described in this Court's earlier decision.  *See* 2/27/20 MDO, p. 60 (Dkt. 174) ("The possible alternative of suspending the leases pending further public comment is not enough, because doing so would not satisfy NEPA's purpose of ensuring that federal agencies meaningfully consider the potential environmental impacts of a proposed action *before* undertaking that action.  As described previously, without a real limitation on the Phase One lease sales as BLM addresses and corrects its NEPA violations, BLM's 'compliance' with NEPA could become a mere bureaucratic formality.") (internal citations omitted, emphasis in original).  Still, there is the prospect of irreparable harm to the appealing parties as well as to states and local communities that rely on the bonus bid payment and royalties from the parcels that were leased as part of the Phase One lease sales, coupled as well with upstream oil and gas industry-related jobs connected to such activity.

Third, by suspending all activities on the Phase One leases pending appeal, Plaintiffs' underlying interest in sage-grouse populations generally and sage-grouse habitat specifically will remain intact during the interim.  Plaintiffs argue that BLM regulations provide a process for reinstating leases after cancellation such that, if the appealing parties prevail on appeal and the

**MEMORANDUM DECISION AND ORDER - 9**

leases are reinstated, leaseholders would not have irreparably lost their Phase One lease rights or investments.  *See* Pls.' Opp. to Fed. Defs.' Mot. for Stay, p. 9 (Dkt. 210).  But the possibility of such reinstatement is disputed.  *See* Fed. Defs.' Reply ISO Mot. for Stay, p. 1 (Dkt. 215) ("Contrary to Plaintiffs' assertions, if the leases are vacated, they cannot be reinstated."); *but see* Pls.' Proposed Surreply in Opp. to Mots. for Stay (Dkt. 221-1) ("The leases can be judicially reinstated if Defendants prevail on appeal).[5]  Regardless, suspending the Phase One lease sales pending appeal serves the same purpose as vacating the Phase One lease sales only to reinstate them later if an appeal ended with that result.  *See id*. at p. 10 ("With respect to environmental impacts, a suspension during the pendency of the appeal is the same as a vacatur.").  In that frame, Plaintiffs cannot demonstrate that they would be substantially injured by suspension of the challenged lease sales/operations during an appeal of the Court's vacatur of the challenged lease sales.

In sum, the Court is persuaded by the arguments regarding the potential for injury in the absence of a stay pending appeal.  A stay which leaves things in place, not to move forward nor to move backward, achieves a sensible and fair balance of the competing interests at this stage of the case.  The Phase One lease sales are not to be undone at this time, but are suspended during this time – there shall be no further work developing such leases or obtaining production from such leases in any way pending appeal.[6]

---

[5]  The Court GRANTS Plaintiffs' Motion for Leave to File Surreply Opposing Motions for Stay Pending Appeal (Dkt. 221), however its consideration does not alter the Court's position on the merits of the appealing parties' efforts to stay the setting aside of the Phase One lease sales, while still suspending them pending appeal

[6]  The Court is mindful that some work, to include ordinary maintenance and repair, may be necessary to preserve the status quo at locations where leasehold development is already underway.  Therefore, the Court will consider motions from any party requesting additional detail as to what work, if any, to maintain the suspended status quo will be permitted.  Any such motion should be accompanied by information about the nature and need for such work to allow

**MEMORANDUM DECISION AND ORDER - 10**

Accordingly, Federal Defendants' Motion for Partial Stay Pending Appeal (Dkt. 176) is GRANTED, while Defendant-Intervenors WEA's and Wyoming's' Motions for Stay Pending Appeal (Dkts. 177, 181) are GRANTED in part, but DENIED in part insofar as the Court will order the suspension of operations and production on the Phase One lease sales pending the appeal.[7]

## II. <u>ORDER</u>

Based upon the foregoing, IT IS HEREBY ORDERED that:

1.      Plaintiffs' Motion for Reconsideration and Clarification of Phase One Remedies (Dkt. 175) is DENIED;

2.      Federal Defendants' Motion for Partial Stay Pending Appeal (Dkt. 176) is GRANTED;

3.      Western Energy Alliance's Motion for Stay Pending Appeal (Dkt. 177) and Wyoming's Motion for Stay Pending Appeal (Dkt. 181) are GRANTED in part, and DENIED, in part, insofar as the Court orders the suspension of operations and production of the Phase One lease sales pending the appeal.

4.      Federal Defendants' Motion for Expedite Consideration of Motions for Stay Pending Appeal (Dkt. 220) is GRANTED; and

///

///

///

---

other parties to respond to the motion and for the Court to make an informed decision upon the request.

[7] From this, Federal Defendants' Motion for Expedited Consideration of Motions for Stay Pending Appeal (Dkt. 220) is GRANTED.

**MEMORANDUM DECISION AND ORDER - 11**

5.     Plaintiffs' Motion for Leave to File Surreply Opposing Motions for Stay Pending

Appeal (Dkt. 221) is GRANTED.


DATED: May 12, 2020

Ronald E. Bush
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 12**