Laurence J. ("Laird") Lucas (ISB # 4733)
llucas@advocateswest.org
Todd C. Tucci (ISB # 6526)
ttucci@advocateswest.org
Sarah Stellberg (ISB #10538)
sstellberg@advocateswest.org
Advocates for the West
P.O. Box 1612
Boise, ID 83701
(208) 342-7024
(208) 342-8286 (fax)

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, and CENTER FOR BIOLOGICAL DIVERSITY,<br><br>　　　Plaintiffs,<br><br>　　　v.<br><br>DAVID BERNHARDT*, Secretary of Interior, *et al.*,<br><br>　　　Defendants. | Case No. 1:18-cv-00187-REB<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE BY CHESAPEAKE EXPLORATION, LLC (ECF NO. 232)** |

\* *Official Defendant automatically substituted per Fed. R. Civ. P. 25(d)*

**INTRODUCTION**

　　Like other oil and gas companies now moving to intervene in this case, *see* ECF Nos. 198 (Anschutz Exploration Corp.), 240 (Vermillion Energy USA LLC), and 242 (Ballard Petroleum Holdings LLC), movant Chesapeake Exploration LLC ("Chesapeake") has been on notice for two years that Plaintiffs were seeking to vacate its leases—yet sat on its intervention motion until now, without a convincing reason for its delay. The motion to intervene is thus untimely and for that reason alone should be denied. The requests for intervention and Rule 19 joinder also fail

PLAINTIFFS' OPPOSITION TO CHESAPEAKE MOTION TO INTERVENE - 1

because Chesapeake's interests are adequately protected by existing Intervenor Western Energy Alliance (WEA), an oil and gas trade group of which Chesapeake is a member—and indeed WEA is represented by the same law firms as Chesapeake. WEA intervened for the express purpose of defending the lease interests of its members, including Chesapeake, and has thus far diligently represented those interests. Indeed, Chesapeake has utilized its WEA membership to oppose Plaintiffs' claims in this case, including seeking a stay pending appeal of the Phase One lease sale vacatur. *See* ECF No. 177-2 (Cryer declaration in support of WEA stay motion).

Chesapeake's participation in this case is thus neither necessary nor helpful. Piling on another adverse party would simply prejudice Plaintiffs and consume additional resources of all parties. This Court should deny the motion.

## ARGUMENT

I.  **Chesapeake Is Not a Required Party under Rule 19**

Chesapeake claims it is a "required party" under Federal Rule of Civil Procedure 19 and must be joined into this case. Rule 19 provides that a party must be joined, if feasible, where:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

   (i)  as a practical matter impair or impede the person's ability to protect the interest; or
   (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. Rule 19(a)(1).

Chesapeake argues that its lease interests render it a required party under Rule 19(a)(1)(B)(i). Chesapeake Br. (ECF No. 232-1) at 3–4. However, subsection (B)(i) is inapplicable here because Chesapeake's absence will not "impair or impede its ability to protect"

PLAINTIFFS' OPPOSITION TO CHESAPEAKE MOTION TO INTERVENE - 2

its lease interests. Fed. R. Civ. P. 19(a)(1)(B)(i). An absent party's ability to protect its interest cannot be impaired where the party's interest is "adequately represented" by existing parties. *See Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1180 (9th Cir. 2012). The adequacy of representation for a necessary party under Rule 19 parallels the same inquiry for intervention under Rule 24(a). *Id.*

Here, existing Defendant-Intervenor WEA adequately represents Chesapeake's lease interests. As explained in detail below, WEA intervened for the express purpose of protecting the lease rights of its members, including Chesapeake, and has been diligently representing those interests thus far. This includes WEA's recent motion to stay the Phase One lease vacatur, which WEA supported with a declaration from Chesapeake's Land Manager Cryer just weeks before Chesapeake filed its motion to intervene. *See* Cryer Decl., ECF No. 177-2.[1]

Chesapeake's intervention motion fails to acknowledge that WEA has thus worked hand-in-glove with its members to protect their lease interests or make any effort to explain why WEA is supposedly now unable to adequately represent Chesapeake's interests. Courts have long held that trade association members cannot re-litigate claims and issues the association previously litigated on their behalf. *See, e.g.*, *Gen. Foods Corp. v. Mass. Dep't of Pub. Health*, 648 F.2d 784 (1st Cir. 1981); *Expert Elec., Inc. v. Levine*, 554 F.2d 1227 (2d Cir. 1977); *Aluminum Co. of Am.*

---

[1] Cryer's declaration submitted for WEA stated that he is "Land Manager for Chesapeake Energy Corporation" which "is a member of Western Energy Alliance" and alleged invested sums in acquiring Phase One leases. *See* ECF No. 177-2, at 1–3. To support its intervention motion, Chesapeake filed another Cryer declaration, stating that Chesapeake Energy Corporation is "the parent of proposed intervenor Chesapeake Exploration, L.L.C." which "was the high bidder" on several leases in the March 2018 and September 2018 Wyoming lease sales. See ECF No. 231-2, Ex. 1 at 14–16. Because of the corporate parent/subsidiary relationship between the two Chesapeake entities, and based on the representations in the two Cryer declarations, the Court may treat them as having identical interests here.

PLAINTIFFS' OPPOSITION TO CHESAPEAKE MOTION TO INTERVENE - 3

*v. Admiral Merchants Motor Freight, Inc.*, 486 F.2d 717 (7th Cir. 1973); *cf. Shaw v. Hahn*, 56 F.3d 1128, 1131–32 (9th Cir. 1995) (finding privity due to shared interests and adequate representation by a third party in former action).

Moreover, Chesapeake makes clearly erroneous legal arguments in asserting that it must be joined as a necessary party to raise defenses under the Mineral Leasing Act. *See* Chesapeake Br. at 3–5. It contends:

> [U]nder the Mineral Leasing Act. . . Congress has recognized that the only appropriate method for the Secretary of Interior to cancel a federal oil and gas lease with a well capable of production of oil or gas in paying quantities is a proceeding in the U.S. District Court in which the lease is located. 30 U.S.C. § 188; 43 C.F.R. § 3108.3. . . In other words, when a federal oil and gas lease contains existing production, it may only be cancelled via a judicial action against the lessee of the Leases in the district in which the lease is located. *See* 30 U.S.C. § 188. Further, there is no private right of action for the Plaintiffs to seek cancellation of a lease that is currently producing oil and gas. *Id.*

*Id.* at 3–4.

Yet the cited statute, 30 U.S.C. § 188, is entitled "Failure to comply with provisions of lease," and says nothing about judicial proceedings—such as this one—seeking judicial review of BLM's compliance with NEPA and the APA. Consistent with its title, the first section of this statute provides that a lease "<u>may be forfeited and cancelled</u> by an appropriate proceeding in the United States district court for the district in which the property. . . is located <u>whenever the lessee fails to comply</u> with any of the provisions of this chapter, of the lease, or of the general regulations [applicable to the lease]." *See* 30 U.S.C. § 188(a) (underscore added). The next section similarly provides for cancellation of a lease "<u>by the Secretary of the Interior</u> after 30 days notice <u>upon the failure of the lessee to comply with any of the provisions of the lease</u>, unless or until the leasehold contains a well capable of production of oil and gas in paying quantities. . . ." *See* 30 U.S.C. § 188(b) (underscore added).

PLAINTIFFS' OPPOSITION TO CHESAPEAKE MOTION TO INTERVENE - 4

These are the two subsections of 30 U.S.C. § 188 that Chesapeake evidently relies upon, as the remaining subsections are irrelevant. They address lease reinstatement, issuance of noncompetitive leases, and royalties. *See* 30 U.S.C. § 188(c)–(j). Yet as the underscoring above shows, 30 U.S.C. § 188(a) & (b) only address proceedings seeking lease cancellation or forfeiture that (1) are brought by the Secretary of the Interior and (2) allege violations by the lessee occurring after the lease issued. That is obviously not the situation presented here—Plaintiffs are challenging BLM's violations of law under NEPA, FLPMA and the APA in issuing the subject leases. Thus, 30 U.S.C. § 188 does not apply to the facts of this case.

This statute does not otherwise foreclose Plaintiffs claims. Chesapeake wrongly claims that leases "may *only* be cancelled" in accordance with 30 U.S.C. § 188. *See* Chesapeake Br. at 4 (emphasis added). But the plain language of 30 U.S.C. § 188 does not support this reading. It provides that the government "may" seek to cancel a lease due to the lessee's unlawful conduct, such as failure to make royalty payments, but it does not state or imply that a lease "may not" be invalidated on other grounds, such as the agency's legal violations in issuing the lease, and under other federal statutes, such as the APA. Congress does not "hide elephants in mouseholes." *Whitman v. American Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001). Moreover, the Supreme Court long-ago rejected the argument that 30 U.S.C. § 188 provides the "exclusive source" of authority to terminate a lease. *See Boesche v. Udall*, 373 U.S. 472, 475–84 (1963) (holding that 30 U.S.C. § 188 leaves unaffected the Secretary of Interior's authority to cancel an oil and gas leases for other reasons, such as when an oil and gas was invalidly issued).

Finally, Chesapeake attacks a straw man in arguing that 30 U.S.C. § 188 does not supply a private right of action. This point is irrelevant, as Plaintiffs brought their lawsuit under the APA, which provides a general cause of action for those aggrieved by a final agency action, such

PLAINTIFFS' OPPOSITION TO CHESAPEAKE MOTION TO INTERVENE - 5

as BLM's leasing decisions here. *See* 5 U.S.C. § 702; *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984) (APA confers "a general cause of action").

Chesapeake's legally erroneous and misleading assertions based on the Mineral Leasing Act thus do not support its argument that it must be joined as a necessary party under Rule 19.

**II.     Chesapeake Is Not Entitled to Intervention as of Right**

Chesapeake also fails to meet the standards for intervention. An applicant for intervention as of right under Federal Rule of Civil Procedure 24(a)(2) must satisfy four criteria: (1) the motion must be timely; (2) the movant must claim a "significantly protectable" interest relating to the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impeded its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action. *See Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). "Failure to satisfy any one of the requirements is fatal to the application." *Id.*

    A.     <u>The Motion is Untimely</u>

The Court should deny Chesapeake's motion to intervene first because it is untimely. Timeliness is "the threshold requirement" for intervention and if unsatisfied, the Court "need not reach any of the remaining elements of Rule 24." *See United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996). Timeliness depends on three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). "[A]ny substantial lapse of time weighs heavily against intervention." *Washington*, 86 F.3d at 1503.

PLAINTIFFS' OPPOSITION TO CHESAPEAKE MOTION TO INTERVENE - 6

This case has been pending for over two years. In that time, this Court has permitted three other parties to intervene, denied various motions to dismiss, transferred a portion of the case to Wyoming, granted a motion for preliminary injunction, granted partial summary judgment for Plaintiffs on the Phase One lease sales, and partially granted Federal Defendants' and existing Intervenors' motions for stay pending appeal. The fact that the Court and original parties have "covered a lot of legal ground together . . . weighs heavily against allowing intervention as of right under Rule 24(a)(2)." *See League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) ("*LULAC*"); *see also Smith v. Marsh*, 194 F.3d 1045, 1051 (9th Cir. 1999) ("substantial engagement by the district court with the issues in a case 'weighs heavily against allowing intervention as of right'") (citation omitted); *Alisal Water*, 370 F.3d at 922 (intervention properly denied "even at the pretrial stages when 'a lot of water [has] passed under . . . [the] litigation bridge.'"). Further, Chesapeake dragged its feet even *after* the Court vacated its Phase One leases, waiting several months after the Phase One summary judgment decision to file its intervention papers, and meanwhile supporting WEA in its motion for stay pending appeal. *See* ECF No. 177-2 (declaration from Chesapeake's Land Manager Cryer in support of WEA stay motion).

As for the second factor, allowing Chesapeake to intervene would prejudice Plaintiffs. Chesapeake apparently seeks to introduce new arguments or evidence that was not already presented to or ruled upon by this Court, including the clearly erroneous arguments it raises under the Mineral Leasing Act, discussed above. If allowed to intervene, Chesapeake could also object to the Magistrate Judge assignment, harming Plaintiffs' ability to obtain timely and meaningful judicial relief. Piling on an additional adverse party would also inevitably consume additional time and resources of both Plaintiffs and the Court and further complicate this case.

*See Mass. Sch. of Law at Andover, Inc. v. United States*, 118 F.3d 776, 782 (D.C. Cir. 1997) (prejudice from untimely intervention includes "all the possible drawbacks of piling on parties," including issue proliferation and delay "as parties and court expend resources trying to overcome the centrifugal forces springing from intervention").

As for the third factor, Chesapeake provides no compelling reason for its delay. "A party must intervene when he 'knows or has reason to know that his interests might be adversely affected by the outcome of litigation.'" *Alisal Water*, 370 F.3d at 930; *see also Garza v. County of Los Angeles*, 918 F.2d 763, 777 (9th Cir. 1990) (intervention motion untimely where proponent delayed in moving for intervention despite knowledge that lawsuit might adversely affect her interests). Here, Chesapeake does not argue that it was unaware of this litigation; nor could it, as the company is a member of an existing party. *See* Chesapeake Br. at 10.

Chesapeake relies on the same misreading of the Mineral Leasing Act to try to justify its delay, saying it "assumed and maintained that because the majority of its Leases are held by actual oil and gas production, only the Secretary of Interior could cancel their [*sic*] leases after notice," and "Chesapeake assumed that because the Federal Defendants were a party to this proceeding, it [*sic*] would protect this right of Chesapeake." *See* Chesapeake Br. at 10. But as explained above, this assertion is wrong as a matter of law, and whatever erroneous "assumptions" that Chesapeake may have made do not justify its delay in moving to protect its alleged lease interests, when Plaintiffs' April 2018 complaint provided plenty of notice that its lease interests might be vacated or otherwise adversely affected by this litigation. *See* Compl. ¶ 112, ECF No. 1 ("BLM oil and gas leasing decisions that have been made, or hereafter are made, under . . . IM 2018-034 are unlawful and should be reversed and set aside"); *id.* ¶¶ 308–319 (claim for relief against leases issued under IM 2018-034); *id.* ¶¶ 150–57, 177–85, 276–307

PLAINTIFFS' OPPOSITION TO CHESAPEAKE MOTION TO INTERVENE - 8

(challenging Feb. and Sept. 2017 Wyoming lease sales on other grounds); *id.* at "Prayer for Relief" ¶ B (specifically requesting that the court "vacate" all challenged leases); *see also* First Am. Compl. (ECF No. 78) ¶¶ 225a – 225ll (adding the "Phase One" lease sales as challenged actions); 2d. Am. Compl. ¶¶ 274–83 (ECF No. 165) (adding Feb. 2019 Wyoming lease sale as a challenged action).

The request for vacatur of the Phase One leases was also clearly spelled out in Plaintiffs' Motion for Partial Summary Judgment, filed over a year ago. *See* ECF No. 135. Chesapeake's claimed ignorance is further suspect as WEA has long recognized the risk of lease vacatur in this case. *See* ECF No. 35 at 8 (WEA motion seeking intervention "to represent its members' leasehold interests which the Plaintiffs seek to have vacated"); *id.* at 4 (arguing for intervention because the "vacatur of the lease sales . . . poses a direct and substantial threat to [WEA members'] legally protectable interests").

Chesapeake's apparent shock that the Court would vacate the leases is also completely unjustified, as vacatur is a common and presumptively appropriate remedy for oil and gas leases and permits issued in violation of NEPA. *See, e.g.*, *San Juan Citizens Alliance v. BLM*, 326 F. Supp. 3d 1227 (D.N.M. 2018) (vacating oil and gas leases for NEPA violation); *Bob Marshall Alliance v. Lujan*, 804 F. Supp. 1292, 1298 (D. Mont. 1992) (cancelling leases, rather than merely suspending them, because it is "the only remedy which will effectively foster NEPA's mandate"); *Diné Citizens Against Ruining Our Env't v. Bernhardt*, 923 F.3d 831 (10th Cir. 2019) (vacating BLM drilling permits due to NEPA violations); *see also Humane Soc'y of U.S. v. Johanns*, 520 F. Supp. 2d 8, 37 (D.D.C. 2007) ("vacating a rule or action promulgated in violation of NEPA is the standard remedy"). Thus, Chesapeake clearly had "reason to know" that its interests "might be adversely affected" by this case. *Alisal Water*, 370 F.3d at 930.

In sum, Chesapeake "slept on its intervention rights for more than two years. When it awoke, it was unable convincingly to explain its delay." *LULAC*, 131 F.3d at 1308. The motion to intervene should thus be denied as untimely.

B. <u>Chesapeake's Interests are Adequately Represented by WEA</u>

Chesapeake also fails to make the "compelling showing" required to overcome the presumption that WEA adequately represents its interests. Adequacy of representation is ordinarily determined by considering: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).

Moreover, the Ninth Circuit demands a more rigorous showing of inadequacy where, as here, the proposed intervenor shares the same ultimate objective as an existing party. "Where the party and the proposed intervenor share the same 'ultimate objective,' a presumption of adequacy of representation applies, and the intervenor can rebut that presumption only with a 'compelling showing' to the contrary." *Proposition 8*, 587 F.3d at 951 (quoting *Arakaki*, 324 F.3d at 1086). The presumption may be overcome by evidence of collusion, adversity of interest, nonfeasance, incompetence, or lack of financial resources. *See Farmland Irr. Co. v. Dopplmaier,* 220 F.2d 248, 248–49 (9th Cir. 1955).

Here, Chesapeake is a member of WEA, and the two entities share the same ultimate objective in this lawsuit: upholding the validity of the contested lease sales and avoiding lease vacatur. This unity of interests creates a presumption of adequate representation which Chesapeake fails to rebut. There is no reason to believe that WEA cannot or will not make any

reasonable argument that Chesapeake would make if it were a party. WEA has thus far diligently represented the interests of the entire lessee class. WEA fully participated in the preliminary injunction proceedings to defend its members' interests in upcoming oil and gas lease sales, and emphasized the financial impacts on its members' existing lease interests. *See* ECF Nos. 51, 51-1, 65. WEA also fully participated in the Phase One summary judgment proceedings, again emphasizing its members' leasehold and financial interests in the Phase One lease sales and challenging the decision to vacate rather than suspend the Phase One leases. *See* ECF Nos. 148-49, 163.  Most recently, WEA filed a notice of appeal from the Phase One summary judgment decision and moved for a stay pending appeal of the order vacating the Phase One lease sales. *See* ECF Nos. 177, 184. As noted above, WEA supported its motion for stay with a declaration from Chesapeake Land Manager Cryer. ECF No. 177-2. Chesapeake's moving papers fail to acknowledge that WEA has taken all these litigation steps to protect its lease interests.

      Yet remarkably, Chesapeake does not even acknowledge that WEA intervened on behalf of Chesapeake and other members, nor does it mention the fact that its Land Manager Cryer previously filed a declaration for WEA in seeking a stay pending appeal. Neither does Chesapeake address the fact that WEA is represented by the <u>very same law firms</u>—Beatty & Wozniak from Denver, and MSBT Law in Boise—that would represent Chesapeake as an intervenor in this case. How could the same lawyers that represent WEA somehow be unable to represent Chesapeake's interests adequately, and yet that inadequacy be cured by allowing the same lawyers to represent Chesapeake separately from WEA?  In studiously ignoring this situation, Chesapeake fails to carry its burden of showing inadequate representation.

In sum, Chesapeake fails to provide the required "compelling showing" that WEA inadequately represents its interests here, a second fatal blow to its request for intervention. Accordingly, the Court should deny Chesapeake's motion to intervene as of right under Rule 24.[2]

## III.   Chesapeake Should Not Be Granted Permissive Intervention

The Court should deny permissive intervention for essentially the same reasons. As with motions for intervention as of right, "[a] finding of untimeliness defeats a motion for permissive intervention." *Washington*, 86 F.3d at 1507. Timeliness is even more strictly enforced for permissive intervention. *See LULAC*, 131 F.3d at 1308. The Court should thus deny the motion as untimely.

Permissive intervention is also unwarranted based on a host of other factors, including prejudice to Plaintiffs, adequate representation by an existing party, unlikely contributions to the case, and efficiency of the litigation process. *See, e.g., Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011) (upholding denial of permissive intervention where purported intervenors had nothing to contribute); *Proposition 8*, 587 F.3d at 955 (upholding denial based on adequate representation and likelihood that intervenor participation "would consume additional time and resources of both the Court and the parties"); *Exec. Risk Specialty Ins. Co. v. Rutter Hobbs & Davidoff, Inc.*, 564 F. App'x 887, 889–90 (9th Cir. 2014) (upholding denial where intervenor had nothing new to contribute and "would [only] add . . . emphasis to the position taken by" another party); *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998) (upholding denial where it would "only serve to undermine the efficiency of the litigation process"); *United States ex rel.*

---

[2] Such denial includes Chesapeake's request to be granted intervention for leave to appeal the Phase One summary judgment decision and subsequent order partially granting a stay pending appeal. WEA is already appealing the Phase One decision, and Chesapeake has shown no reason why it (and the other appeals pending by Federal Defendants and State of Wyoming) are not more than adequate to represent its interests on appeal.

PLAINTIFFS' OPPOSITION TO CHESAPEAKE MOTION TO INTERVENE - 12

*Richards v. De Leon Guerrero*, 4 F.3d 749, 756 (9th Cir. 1993) (upholding denial where the government party would adequately represent applicant's interests).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Chesapeake Exploration LLC's motion to intervene.

Dated: June 19, 2020                               Respectfully submitted.

*/s/ Laird J. Lucas*
Sarah Stellberg (ISB #10538)
Laurence ("Laird") J. Lucas (ISB # 4733)
Todd C. Tucci (ISB # 6526)

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of June, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent a Notice of Electronic Filing (NEF) to all counsel of record in this matter to be served by electronic means, as more fully reflected on the NEF.

*/s/ Laird J. Lucas*
Laurence ("Laird") J. Lucas