William E. Sparks, *Pro Hac Vice*
BEATTY & WOZNIAK, P.C.
216 Sixteenth St., Suite 1100
Denver, CO 80202-5115
Telephone: 303-407-4499
Fax: 800-886-6566
Email: wsparks@bwenergylaw.com

Cherese D. McLain, ISB #7911
MSBT LAW
7699 W. Riverside Drive
Boise, ID 83714
Telephone: 208-331-1800
Fax: 208-331-1202
Email: cdm@msbtlaw.com

Attorneys for Proposed Defendant- Intervenor Chesapeake Exploration, L.L.C.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **WESTERN WATERSHEDS PROJECT**, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>**RYAN K. ZINKE,** Secretary of the Interior, *et al.*,<br><br>    Defendants,<br><br>**CHESAPEAKE EXPLORATION, L.L.C.**,<br><br>    Proposed Defendant-Intervenor. | Case No. 1:18-cv-00187-REB<br><br><br>**CHESAPEAKE EXPLORATION, L.L.C.'S REPLY IN SUPPORT OF MOTION TO INTERVENE (DKT. 232)** |

Chesapeake Exploration, L.L.C. ("Chesapeake") files this Reply in Support of its Motion to Intervene as Defendant (Dkt. 232).  Contrary to the allegations and arguments of Western Watersheds Project and the Center for Biological Diversity (collectively, "WWP" or "Plaintiffs"), Chesapeake seeks intervention to protect its real property and economic interests as identified in

the Motion and Memorandum of Points and Authorities in Support of Motion to Intervene (Dkt. 232-1) and Declaration of K.W. Cryer in Support of Motion to Intervene (Dkt. 232-1).

Plaintiffs' attempt to exclude Chesapeake from protecting its property interests and significant economic interests are incredulous and disingenuous. As demonstrated by the Motions to Stay and Summary Judgment briefing, the Federal Defendants and Western Energy Alliance ("WEA") do not adequately protect Chesapeake's specific real property and economic interests in the seven oil and gas leases for which Chesapeake is the owner. Chesapeake has invested over $19.7 million in acquiring and developing the Leases. Further, neither the Federal Defendants, nor WEA have advocated or argued that the Court and Plaintiffs: (1) lack the right to challenge the validity of a contract between Chesapeake and the United States; (2) that there is a waiver of sovereign immunity or a right of a unrelated party to utilize the APA to seek vacatur of a contract; or (3) that the Plaintiff and the Court lack the jurisdiction authority under the Mineral Leasing Act ("MLA"), 30 U.S.C. § 188 and 43 C.F.R. § 3108.3 to cancel a lease that is held by the commercial production of oil and gas.

Plaintiffs' argument that adding Chesapeake is "piling on" and prejudicial to Plaintiffs lacks any merit. Plaintiffs chose to challenge thousands of leases with potentially thousands of owners whose real property and economic interests could be adversely affected. Plaintiffs' decision to challenge multiple parties' leases is not a reasonable ground for prejudice.

## I.   THE COURT SHOULD JOIN CHESAPEAKE AS A DEFENDANT-INTERVENOR UNDER RULE 19

Plaintiffs' argument that Chesapeake is not a necessary party—that Chesapeake's interests are adequately represented by existing parties—fails for the same reason its arguments on intervention fail. This Court already determined that inadequate representation is a minimal burden to establish. Order at 5–6, ECF No. 54 ("[t]he burden of showing inadequacy is minimal

2

and the movant need only show that the existing parties' representation of its interests may be inadequate.").

The existing parties are not adequately representing Chesapeake's interest. The Federal Defendants and WEA did not advocate that Plaintiffs lack the right under the MLA to seek cancellation of a lease located in Wyoming in an Idaho Court.  It is undisputed that Federal Defendants and WEA are not protecting Chesapeake's costs associated with the $8.4 million in lease bonus, advanced rentals and fees acquiring the Leases, and the over $19.7 million in exploration and development of the Leases.  *See* Declaration of K.W. Cryer ¶ ¶ 15, 17 (Dkt 232-1).  WEA is advocating for its members' interests as a whole, not the individual economic and contractual property interests of Chesapeake.  *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*, 932 F.3d 843, 855 (9th Cir. 2019) (inadequate representation confirmed even though the parties sought the same outcome because the tribe's interests "differ[ed] in a meaningful sense" from the government's).

Contrary to Plaintiffs' argument, there is no waiver of sovereign immunity for Plaintiffs to seek cancellation of Chesapeake's contract and real property interests.  Opposition at 5-6.  There is only a waiver to challenge the final agency action which here is BLM's decision to offer these parcels for lease.  Opposition at 4-5.  The APA authorizes challenges to "final agency action," it does not provide a waiver for a third party to challenge the validity of a contract.  5 U.S.C. § 702.  Here, the action that Plaintiffs challenge under the APA is the decision to lease, that is they assert that BLM violated the APA, NEPA, and FLPMA in deciding to offer these parcels for lease.  Plaintiffs do not challenge, and in fact have no private right of action, under the APA, MLA, NEPA, FLPMA, or any other statute to challenge the execution of the lease which constitutes

Chesapeake's contractual and real property interest. Thus, Chesapeake is a necessary party and the Court lacks jurisdiction to adjudicate its contractual lease rights without Chesapeake's joinder.

Further, *Boesche v. Udall* does not stand for the proposition that unrelated third parties, such as Plaintiffs, can seek cancellation of Chesapeake's leases.  Opposition at 5 (citing 373 U.S. 472 (1963)).  A lease may only be "cancelled" by the Secretary if invalidly issued.  The concept of "invalidly issued" only applies to situations in which the lands could not be lawfully leased (i.e. they are already leased or the lands were withdrawn from leasing).  *See, e.g, Red River Oil & Gas, LLC*, 188 IBLA 216, 229-33 (cancellation of lease for invalidity is when lands that were leased was actually a legal nullity).  That is not the basis for Plaintiffs' claims here.  Plaintiffs allege that BLM violated the APA, NEPA, and FLPMA in conducting the necessary processes to decide to offer these parcels for lease.  Plaintiffs have not argued that BLM invalidly issued the leases, i.e. BLM had no right to issue the leases.

Plaintiffs have improperly attempted to use the APA and NEPA to seek cancellation of the contractual property right without Chesapeake's participation.  *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788 (D.C. Cir. 1983) ("[P]arties who hold . . . interests in the title of federal leases . . .  are indispensable parties in an action to cancel the lease or to try title to the lease.").  Accordingly, Rule 19(a)(1) required that Chesapeake must be joined as a party.  *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable.").

This Court cannot cancel and vacate a contractual property right without participation of the owner of that right.  Chesapeake's Leases are producing oil and gas and thus, the Court may not cancel the Leases without Chesapeake's participation in a judicial proceeding involving

Chesapeake.   30 U.S.C. § 188; 43 C.F.R. § 3108.3; *Hanson v. Denckla*, 357 U.S. 235, 254–55 (1958) (without Chesapeake's participation, its due process rights are violated).

Accordingly, Chesapeake is a required party as to all claims related to its contractual and real property interests in the Leases.

## II.     CHESAPEAKE IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT

Plaintiffs do not dispute that Chesapeake has an interest in this action that will be impacted. Opposition at 6-12.  Instead, Plaintiffs repeat their unpersuasive arguments that WEA adequately protects Chesapeake's interest and the Chesapeake's motion is untimely.  Both of these arguments fail.  Likewise, Plaintiffs do not dispute that Chesapeake has the right to intervene for the purpose of seeking relief under footnote 6 of the Court's May 12 Order on the Motions to Stay.

### A.  Timeliness

Chesapeake seeks intervention for: (1) purposes of appeal and to seek relief under the Court's Stay Order (Dkt. 226) and (2) Phase III or beyond.  Plaintiffs can show no prejudice for allowing Chesapeake's intervention as to these limited purposes.  *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) (courts consider three factors: (1) the stage of the proceeding; (2) any prejudice to the other parties; and (3) the reason for and length of any delay).

Here, only Phase I of the case is complete and Chesapeake is not seeking intervention in Phase II as it owns no leases involved in Phase II.   Chesapeake simply seeks to intervene in the Phase I of the case for purposes of appeal as it relates to the September 2018 Wyoming lease sale, and to request relief from the Court in accordance with footnote 6 of its Stay Order (Dkt. 226). There is no prejudice to Plaintiffs for this limited intervention.

The Court has already recognized that parties such as Chesapeake should be part of this case suggesting that they seek relief from the Court regarding on-going operations.  The Court expressly noted in footnote 6 of its May 12, 2020 Stay Order (Dkt 226) that "the Court will

consider motions from any party requesting additional detail as to what work, if any, to maintain the suspended status quo will be permitted." Chesapeake seeks to become a party for the express reason to seek relief under footnote 6 of the Court's order to maintain the status quo of its oil and gas operations. None of the current defendants or defendant intervenors has an interest in Chesapeake's on-going operations to seek this relief. Accordingly, because the Court has already recognized Chesapeake's interest and Chesapeake's right to seek relief under the Stay Order, Chesapeake should be joined as an indispensable party or the Court should grant its Motion to Intervene.

Plaintiffs' argument that they will suffer prejudice from the inclusion of multiple additional defendants who are the lessees of the leases at issue is Plaintiffs' own doing.  Opposition at 2. Plaintiffs decided to challenge over 2200 federal oil and gas leases from 15 lease sales in one case. Plaintiffs cannot be prejudiced by their own litigation strategy when they admit that each lessee has an interest in the case.

As for the third factor, it is undisputed that Chesapeake was not aware until recently that the Court would attempt to vacate and cancel its Leases that were held by production.  Declaration of K.W. Cryer ¶ 11 (Dkt 232-1).  BLM does not provide "notice" to either leaseholders or potential purchasers that their real property interests are threatened by litigation; nor is WEA under an obligation to provide such notice to Chesapeake.  Chesapeake justifiably assumed and maintained that because several of its Leases are held by actual oil and gas production, only the Secretary of the Interior could cancel its Leases after express notice to Chesapeake.  As explained above, Plaintiffs lack any right to seek cancellation of Chesapeake's valid existing contractual property rights without its participation.

B. *Inadequate Representation*

Chesapeake incorporates its inadequate representation argument in Section I above and further notes that Chesapeake has a minimal burden to show inadequate representation. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).

Contrary to Plaintiffs' argument, Chesapeake's interests are not adequately represented by existing parties. The Federal Defendants are protecting the public interest at large and WEA does not represent Chesapeake's specific economic and property interests in its Leases. *See, e.g.*, *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995). The Federal Defendants specifically failed to protect Chesapeake's interests by advocating for the suspension of Chesapeake's leases that are producing oil and gas. (Dkt. 176) This was not sufficient to protect Chesapeake's interest to preserve the status quo pending appeal. Chesapeake has the right to develop its own strategy and make its own arguments specific to its Leases and the implication of the Court's orders on its Leases.

It is also irrelevant that there are numerous potential defendant intervenors that may seek intervention in this case to protect their individual interests—not Chesapeake's interest. Plaintiffs challenged over 2,200 federal oil and gas leases, each with a protectable real property and economic interest that are the subject matter of this case. The Court cannot simply deny intervention to Chesapeake because of the volume of potential intervenors who meet the standards for intervention under Rule 24.

It is also irrelevant that the same firm that represents WEA also represents Chesapeake. Opposition at 12. It does not necessarily flow that just because no conflict yet exists between Chesapeake and WEA, that WEA will necessarily adequately represent all of Chesapeake's interests. Chesapeake has the right to choose its own legal strategy and advocate for its own

interests.  It is irrelevant that these two parties are represented by the same firm, although different attorneys.  The standard of intervention is adequate representation of a party, not adequate representation by the same firm.  Chesapeake has distinct interests from WEA, which is all that is required for the Court's analysis of the adequate representation—by a party—in considering the standards for intervention.

Here, Chesapeake has a significantly protectable interest and has invested over $19.7 million on acquisition and development of the Leases sufficient for intervention as a matter of right.  Cryer Decl. ¶15 (Dkt 232-1).  Chesapeake's interests have already been impaired, and Plaintiffs seek to further deprive Chesapeake of its interest without due process.

## III.   CONCLUSION

Chesapeake meets the liberal standards in favor of intervention, provided the proposed intervenor meets the standards of Rule 24(a)(2).  *See Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006); *see also Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001).  Chesapeake also meets the standard for permissive intervention related to its specific economic and real property interests.  Accordingly, Chesapeake respectfully requests that the Court grant its motion to intervene or include Chesapeake as a necessary party.

Respectfully submitted this 6th day of July, 2020.


*/s William E. Sparks*
William E. Sparks
*Pro Hac Vice*

*/s/ Cherese D. McLain*
Cherese D. McLain

*Counsel for Proposed Defendant-Intervenor*
*Chesapeake Exploration, L.L.C.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6th day of July, 2020, I served a true and correct copy of the

foregoing **CHESAPEAKE EXPLORATION, L.L.C.'S REPLY IN SUPPORT OF MOTION**

**TO INTERVENE [DKT. 232]** via the Court's electronic case filing system which will cause the

foregoing to be served upon all counsel of record.


*s/ William E. Sparks*