# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, and CENTER FOR BIOLOGICAL DIVERSITY, | Case No.:  1:18-cv-00187-REB |
| Plaintiffs, | **LIMITED MEMORANDUM DECISION AND ORDER RE:** |
| vs. | **ANSCHUTZ EXPLORATION CORPORATION'S MOTION TO INTERVENE (Dkt. 198)** |
| RYAN K. ZINKE, Secretary of Interior; DAVID BERNHARDT, Deputy Secretary of Interior; and UNITED STATES BUREAU OF LAND MANAGEMENT, an agency of the United States, | |
| Defendants, | **ANSCHUTZ EXPLORATION CORPORATION'S JOINDER OF MOTIONS TO STAY PENDING APPEAL (Dkt. 205)** |
| and, | |
| STATE OF WYOMING; WESTERN ENERGY ALLIANCE, | **CHESAPEAKE EXPLORATION, LLC'S MOTION TO INTERVENE (Dkt. 232)** |
| Defendants-Intervenors. | |

Now pending before the Court are (1) Anschutz Exploration Corporation's ("AEC")

Motion to Intervene (Dkt. 198), (2) AEC's Joinder of Motions to Stay Pending Appeal (Dkt.

205), and (3) Chesapeake Exploration, LLC's ("Chesapeake") Motion to Intervene (Dkt. 232).

Having carefully considered the record and otherwise being fully advised, the Court enters the

following Memorandum Decision and Order.[1]

## BACKGROUND

The general contours of this case are well known, as the Court has discussed them in

multiple decisions, including, in part:  (1) the August 21, 2018 Memorandum Decision and

---

[1]  The restrictive circumstances presented by national, state, and local responses to the recent and evolving COVID-19 outbreak/pandemic, combined with the need to address the existing parties' (including AEC's and Chesapeake's) appeal-related arguments and briefing schedules, call for a more concise discussion than is the Court's typical practice.

**LIMITED MEMORANDUM DECISION AND ORDER - 1**

Order, granting Defendant-Intervenors Motions to Intervene (Dkt. 54); (2) the September 4, 2018

Memorandum Decision and Order, denying Defendants' Motion to Sever and Transfer (Dkt. 66);

(3) the September 21, 2018 Memorandum Decision and Order, granting in part and denying in

part Plaintiffs' Motion for Preliminary Injunction (Dkt. 74); (4) the July 9, 2019 Memorandum

Decision and Order, granting in part and denying in part the then-pending Motions to Dismiss or

in the Alternative to Sever and Transfer Plaintiffs' NPL Claims (Dkt. 150); and (5) the February

27, 2020 Memorandum Decision and Order, granting Plaintiff's Motion for Partial Summary

Judgment and Denying Defendants'/Defendant-Intervenors' Motion for Partial Summary

Judgment (Dkt. 174).

Of immediate relevance here, the Court's February 27, 2020 Memorandum Decision and

Order set aside IM 2018-034's at-issue provisions and the Phase One lease sales applying them

(the June and September 2018 lease sales in Nevada Utah, and Wyoming).  *See generally*

2/27/20 MDO (Dkt. 174).  AEC and Chesapeake each claim economic and property interests in

certain of these Phase One lease sales,[2] and now move to intervene to protect those interests

moving forward, including on appeal.  *See generally* AEC's Mem. ISO Mot. to Interv. (Dkt.

199); Chesapeake's Mem. ISO Mot. to Interv. (Dkt. 231-1).[3]  AEC and Chesapeake also seek to

intervene to protect their same interests in separately-held leases that, while not associated with

---

[2]  For example, during the June and September 2018 Phase One lease sales in Wyoming, AEC paid about $6.6 million for leases (*see* DeDominic Decl., ¶¶ 4-5 (Dkt. 199)); and, during the September 2018 Phase One lease sales in Wyoming, Chesapeake paid over $3 million for leases (*see* Cryer Decl., ¶ 5 (Dkt. 232-1)).  Tens of millions of dollars have also been invested for the exploration, acquisition, and development of these leases to date.  *See generally id.*

[3]  Following the Court's February 27, 2020 Memorandum Decision and Order, Federal Defendants and Defendant-Intervenors Western Energy Alliance ("WEA") and the State of Wyoming ("Wyoming) moved to stay the portion of the Memorandum Decision and Order that sets aside the Phase One lease sales and filed Notices of Appeal.  *See* Mots. to Stay (Dkts. 176, 177, 181); Nots. of Appeal (Dkts. 182, 183, 185).  AEC and Chesapeake also filed Notices of Appeal.  *See* Nots. of Appeal (Dkts. 204, 236).

**LIMITED MEMORANDUM DECISION AND ORDER - 2**

the set-aside Phase One lease sales themselves,[4] are implicated in subsequent phases of the

litigation.  *See id.*  Claiming that they are the only parties that can adequately protect their

individual interests, AEC and Chesapeake argue that they should have been joined as an

indispensable party under FRCP 19 or, now, allowed to intervene (either by right or by

permission) under FRCP 24(a) and (b).  *See id.*[5]

## STANDARDS OF LAW

FRCP 19 states:

(a)       Persons Required to Be Joined if Feasible.

(1)       Required Party.  A person who is subject to service of process and
whose joinder will not deprive the court of subject-matter
jurisdiction must be joined as a party if:

---

[4]  On May 12, 2020, the Court ordered the *suspension* of operations and production of
the Phase One lease sales – rather than setting them aside – pending appeal.  *See* 5/12/20 MDO,
pp. 6-11 (Dkt. 226) (responding to Defendants' and Defendant-Intervenors' arguments in favor
of staying action pending appeal:  "In sum, the Court is persuaded by the arguments regarding
the potential for injury in the absence of a stay pending appeal.  A stay which leaves things in
place, not to move forward nor to move backward, achieves a sensible and fair balance of the
competing interests at this stage of the case.  The Phase One lease sales are not to be undone at
this time, but are suspended during this time – there shall be no further work developing such
leases or obtaining production from such leases in any way pending appeal.").  Consistent with
this, the Court also noted that it "is mindful that some work, to include ordinary maintenance and
repair, may be necessary to preserve the status quo at locations where leasehold development is
already underway," indicating that it will consider briefing from any party "requesting additional
detail as to what work, if any, to maintain the suspended status quo will be permitted."  *Id.* at p.
10, n.6.  Chesapeake seeks to intervene, in part, to participate in this process.  *See* Chesapeake's
Mem. ISO Mot. to Interv., p. 3 (Dkt. 232) ("Chesapeake also seeks to intervene to . . . request
relief from the Court regarding the suspension status of the Leases in accordance with footnote 6
of the Court's May 12, 2020 Memorandum Decision and Order (Dkt. 226) on Defendants'
Motions to Stay Pending Appeal.").  In this sense, then, Chesapeake's motivation to intervene *is*
associated, at least in part, with the set-aside/suspended Phase One lease sales, beyond its
simultaneous participation in the appeal and other phases of the litigation.

[5]  This Memorandum Decision addresses *only* AEC's and Chesapeake's efforts to
intervene to participate in the appeal, keeping in mind their upcoming appellate briefing
obligations.  Whether AEC and/or Chesapeake will be permitted to intervene in either Phase
Two of the case or to submit briefing consistent with footnote 6 of the Court's May 12, 2020
Memorandum Decision and Order (*see supra*) will be taken up along with the other pending
motions to intervene (Dkts. 240, 242, 253, 260, 262, 270) for those same purposes.

**LIMITED MEMORANDUM DECISION AND ORDER - 3**

> (A)     in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B)     that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the persons absence may:
>
> > (i)     as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii)    leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
>
> (2)    Joinder by Court Order.  If a person has not been joined as required, the court must order that the person be made a party.  A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

Fed. R. Civ. P. 19(a)(1)-(2).  The issue of a party's alleged indispensability "is sufficiently important that it can be raised at any stage of the proceedings – even sua sponte." *McCowen v. Jamieson*, 724 F.2d 1421, 1424 (9th Cir. 1984) (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968)).  Ultimately, however, "[t]here is no precise formula for determining whether a particular nonparty should be joined under [FRCP 19(a)] . . . .  The determination is heavily influenced by the facts and circumstances of each case." *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1081 (9th Cir. 2010) (citation omitted).

FRCP 24 states:

> (a)    Intervention of Right.  On timely motion, the court must permit anyone to intervene who:
>
> > (1)    is given an unconditional right to intervene by a federal statute; or
> >
> > (2)    claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

**LIMITED MEMORANDUM DECISION AND ORDER - 4**

(b)     Permissive Intervention.

      (1)     In General.   On timely motion, the court may permit anyone to intervene who:

            (A)     is given a conditional right to intervene by a federal statute; or

            (B)     has a claim or defense that shares with the main action a common question of law or fact

. . . .

      (3)     Delay or Prejudice.   In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(a)-(b).

Courts generally construe FRCP 24(a) liberally in favor of intervention and, reduced to its elements, requires a movant to show that: "(1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).   Courts deciding motions to intervene as of right are "guided primarily by practical considerations, not technical distinctions." *See id*. (citation and quotations omitted); *see also U.S. v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002) (stating that "equitable considerations" guide determination of motions to intervene as of right) (citation omitted).   Nonetheless, the "[f]ailure to satisfy any one of the requirements is fatal to the application." *Perry v. Prop. 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

As to FRCP 24(b), courts may grant permissive intervention where the applicant shows: "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim

**LIMITED MEMORANDUM DECISION AND ORDER - 5**

or defense, and the main action, have a question of law or a question of fact in common."

*League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997) (citation and

quotations omitted).  "As with motions for intervention as of right, [a] finding of untimeliness

defeats a motion for permissive intervention."  *Id*.  "A motion for permissive intervention

pursuant to [FRCP 24(b)] is directed to the sound discretion of the district court."  *San Jose*

*Mercury News, Inc. v. U.S. Dist. Court – N. Dist. (San Jose)*, 187 F.3d 1096, 1100 (9th Cir.

1999).

## DISCUSSION

### A.    AEC and Chesapeake Are Not Required Parties Under FRCP 19

AEC and Chesapeake argue that their lease interests render them required parties under

FRCP 19(a)(1)(B)(i).  *See* AEC's Mem. ISO Mot. to Interv., pp. 4-6 (Dkt. 199); Chesapeake's

Mem. ISO Mot. to Interv., pp. 3-4 (Dkt. 232-1).  "As a practical matter, an absent party's ability

to protect its interest will not be impaired by its absence from the suit where its interests will be

adequately represented by existing parties to the suit."  *Alto v. Black*, 738 F.3d 1111, 1127 (9th

Cir. 2013); *see also Salt River Project Agr. Imp. and Power Dist. v. Lee*, 672 F.3d 1176, 1180

(9th Cir. 2012) (concluding that "[a]n absent party with an interest in the action is not a necessary

party under Rule 19(a) 'if the absent party is adequately represented in the suit.'") (quoting

*Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992)).    An absent party is adequately

represented where the present party "'will undoubtedly make all of the absent party's

arguments,'" "'the party is capable of and willing to make such arguments,'" and "'the absent

party would [not] offer any necessary element to the proceedings that the present parties would

neglect.'"  *Salt River*, 672 F.3d at 1180 (quoting *Shermoen*, 982 F.2d at 1318).  "The inquiry into

whether a party is necessary is a practical one and fact specific, and is designed to avoid the

harsh results of rigid application."  *A.H.R. v. Wash. State Health Care Auth.*, 2016 WL 98513, at

**LIMITED MEMORANDUM DECISION AND ORDER - 6**

*6 (W.D. Wash. 2016).  Here, neither party's ability to protect its interest is impaired because those interests are already adequately represented by Defendant-Intervenor WEA.

Soon after Plaintiffs initiated this action, WEA moved to intervene "to protect its members' interests by opposing Plaintiffs' arguments and opposing Plaintiffs' request for relief." WEA's Mem. ISO Mot. to Interv., p. 3 (Dkt. 20-1).  At that time, WEA highlighted how "its members have a clear, significantly protectable interest in the subject matter of the litigation; its members' interests will be impaired if Plaintiffs prevail; and its interests are not adequately represented by existing parties."  *Id*. at p. 4.  WEA specifically argued:

- "[WEA] members hold significant, monetary interests in the challenged federal oil and gas leases on the federal lands at issue in this case – leases in which member companies have invested tens of millions of dollars. Clearly, these valid existing rights and economic interests are significant and legally protectable interests and warrant intervention as a matter of right.  Furthermore, as a trade association representing the interests of its member companies on federal public lands, [WEA] has an organizational interest in maintaining regulatory certainty in BLM's oil and gas leasing program."

- "The outcome of the instant action poses a direct and substantial threat to [WEA] and the property rights and economic interests of its members. Moreover, Plaintiffs' requested relief poses a direct and substantial threat to those legally protectable interests."

- "Here, [WEA] has a significantly protectable interest because its member companies have existing interests in the federal leases on lands within greater sage-grouse habitat in Idaho and across the West.  [WEA] members have invested tens of millions of dollars on the leases in question and billions of dollars in operations in greater sage-grouse habitat, operations that expand across much of the range affected by the challenged actions."

- "If Plaintiffs prevail, [WEA] members would suffer economic harm from the greater restrictions that would be imposed on federal leases and property rights owned by them.  Further, members would be unable to fully develop their leased oil and natural gas resources, resulting in reduced income to the companies and reduced income to the federal government in lease and royalty revenue."

- "The Federal Defendants cannot adequately represent [WEA's] or its members' private and unique interests in this action. . . .  In order to protect

**LIMITED MEMORANDUM DECISION AND ORDER - 7**

the specific oil and gas development interests of its members, [WEA] must be afforded the right to formulate an appropriate litigation strategy and present its own legal arguments."  The Federal Defendants are protecting the public interest at large and not the specific economic and property interests of [WEA] members.  The Federal Defendants must consider a wide spectrum of views when defending this lawsuit, and, among other things, advocate for proper interpretation of federal environmental laws and uphold the integrity of federal decision making.  Their priority will not be to preserve [WEA] members' investments in the challenged leases, or to protect the economic interests in this case."

- "[WEA] has outlined above why it should be permitted to intervene in this proceeding.  Further, [WEA] members have specific economic and property interests and rights within Idaho and across the 11-state greater sage-grouse range.  Should Plaintiffs' action prove successful, [WEA] members would suffer economic injury and harm to their rights in leases on lands underlying the challenged plans."

*Id*. at pp. 5-9 (internal citations omitted); *see also* Sgamma Decl., ¶¶ 2-7 (Dkt. 20-2) (WEA's president discussing its representation of over 300 company members who "hold specific interests related to the leasing and development of oil and gas resources on public lands;" "operate in Idaho and other states across the West affected by the Federal Defendants' actions related to sage-grouse and oil and natural gas leasing and development in the species' habitat, and would be directly injured by the Plaintiffs' proposed relief"; "hold significant monetary interests in the challenged federal oil and gas leases at issue in this case"; and have significant and legally protectable interests that "would be directly and substantially threatened by Plaintiffs' requested relief.").

On August 21, 2018, the Court granted WEA's Motion to Intervene, reasoning, in part, that only WEA is "uniquely capable" of explaining how any potential ruling will affect the property interests of a private trade association comprised of members heavily dependent on oil and gas production/leasing.  *See* 8/21/18 MDO, pp. 4-7 (Dkt. 54).[6]  And, since then, WEA has

---

[6] AEC and Chesapeake contend that WEA intervened only to protect its organizational interests moving forward.  *See* AEC's Mem. ISO Mot. to Interv., p. 12 (Dkt. 199); Chesapeake's

**LIMITED MEMORANDUM DECISION AND ORDER - 8**

diligently represented those interests, including efforts to sever and transfer certain of Plaintiffs'

claims, opposing Plaintiffs' Motion for Preliminary Injunction, moving to dismiss or

alternatively transfer Plaintiffs' claims against Jonah Energy, moving for summary judgment

while opposing Plaintiffs' Motion for Summary Judgment, moving to stay the Phase One lease

vacatur pending appeal, and filing a Notice of Appeal.

Both AEC and Chesapeake are members of WEA.  They naturally share the same

ultimate objective in this lawsuit (upholding the validity of the contested lease sales and avoiding

---

Mem. ISO Mot. to Interv., p. 9 (Dkt. 232-1).  Such an argument is loosely knit, as it is difficult to
discern where an organization that exists to represent its members interests could be said to have
organizational interests adverse to its members.  But even if somewhat true, this argument
ignores WEA's clear intent to simultaneously intervene to protect its members' interests against
Plaintiffs' attempts to unwind the Phase One lease sales.  *See supra* (noting WEA's arguments
for intervention); *see also* WEA's Reply ISO Mot. to Interv., pp. 1, 4-8 (Dkt. 35) ("[WEA] seeks
intervention to protect its members' valid and significant interests and property rights . . . .  As
required in Rule 24, [WEA] claims an interest relating to the property at issue:  ownership of the
leases.  [WEA] satisfies the third element of intervention as a matter of right because Plaintiffs'
requested relief – vacatur of the lease sales – poses a direct and substantial threat to those legally
protectable interests. . . .  [WEA] represents federal lessees who have a significantly protectable
interest that could be impaired by this litigation. . . .  The Federal Defendants are defending
BLM's decision-making process, while [WEA] is defending the property rights and business
interests of its members. . . .  [T]he Federal Defendants would not make arguments related to
[WEA] members' property interests. . . .  [WEA] seeks to intervene to protect the unique
interests of its members, which would ensure the Court is apprised of all interests and arguments.
. . .  The only question before the court is whether [WEA] should be granted status as a
Defendant-Intervenor to represent its members' leasehold interests which the Plaintiffs seek to
have vacated.  [WEA] is a zealous and candid advocate for its members.") (internal quotation
marks and citations omitted).  More recently, WEA moved *on behalf of a member company* to
modify the Court's May 12, 2020 Memorandum Decision and Order vis à vis the Phase One
lease sales.  *See* WEA's Mot. to Modify (Dkt. 251) ("Pursuant to L.R. Civ. 7.1, and the Court's
notation in its May 12, 2020 Order, Defendant-Intervenor [WEA], on behalf of member
company EOG Resources, Inc. (EOG), respectfully moves to allow production to commence on
one well that traverses one existing oil and gas lease issued under the Phase One lease sale in the
Powder River Basin of Wyoming, because production will not change the environmental status
quo pending appeal and will not cause any adverse impacts to greater sage grouse.  In other
words, whatever WEA's organizational interests may be, they are not mutually exclusive of its
members' interests – which WEA also claimed/claims to represent.  *See e.g.*, *id*. at p. 7 ("The
Federal Defendants cannot adequately represent *[WEA's] or its members'* private and unique
interests in this action.") (emphasis added).

**LIMITED MEMORANDUM DECISION AND ORDER - 9**

lease vacatur); indeed WEA supported its Motion for Stay Pending Appeal with declarations

from AEC's President and COO, Joseph DeDominic, and from Chesapeake's Land Manager,

K.W. Cryer. *See* DeDominic Decl. (Dkt. 177-5); Cryer Decl. (Dkt. 177-2).[7]  All this is to say

that AEC's and Chesapeake's interests clearly align with those of WEA.  Hence, WEA can be

expected to adequately represent – and has adequately represented – AEC's and Chesapeake's

interests in this action and on appeal.  In short, resolving this action without either AEC or

Chesapeake as parties will not impair or impede their ability to protect their interests.

Intervention is therefore not required under FRCP 19(a)(1)(B)(i).[8]

**B.      AEC and Chesapeake Do Not Have a Right to Intervene Under FRCP 24(a)**

Plaintiffs do not dispute that AEC and Chesapeake claim protectable interests as to the

subject of this action, or that disposition of this case might impair or impede their ability to

protect those interests.  *See* Pls.' Opp. to AEC's Mot. to Interv. (Dkt. 216); Pls.' Opp. to

Chesapeake's Mot. to Interv. (Dkt. 248).  However, Plaintiffs argue that AEC and Chesapeake

cannot intervene because their motions are untimely and WEA already adequately represents

their interests.  *See id*. (citing *Perry*, 587 F.3d at 959 ("Failure to satisfy any one of the

requirements is fatal to the application.")).  The Court agrees.

---

[7]  WEA and Chesapeake are represented by the same law firm, Beatty & Wozniak, P.C., and have the same local counsel, Cherese DeDominiq McLain. *See* Pls.' Opp. to Chesapeake's Mot. to Interv., p. 11 (Dkt. 248) ("How could the same lawyers that represent WEA somehow be unable to represent Chesapeake's interests adequately, and yet that inadequacy be cured by allowing the same lawyers to represent Chesapeake separately from WEA?").

[8]  The Court is also not persuaded on this record that, without AEC's and/or Chesapeake's intervention, the Federal Defendants may be subject to a substantial risk of inconsistent obligations under FRCP 19(a)(1)(B)(ii).  *See, e.g.*, AEC's Mem. ISO Mot. to Interv., p. 6 (Dkt. 199) (positing that, if AEC later successfully brought action against government seeking declaratory judgment that its leases are valid, "then the government would be in the impossible position of facing inconsistent judgments").  Principles of res judicata and/or collateral estoppel may apply to foreclose such an occurrence given the relationship between WEA and its members in the context of the instant action.

**LIMITED MEMORANDUM DECISION AND ORDER - 10**

Timeliness depends on three factors:  "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay."  *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004).  Each of these factors weighs against intervention.

First, this case began more than two years ago.  In that time, the Court has permitted three other parties to intervene, denied various motions to dismiss, transferred a portion of the case to Wyoming, granted a motion for preliminary injunction, granted partial summary judgment for Plaintiffs (as to Phase One), and stayed the Phase One lease vacatur pending Federal Defendants' and Defendant-Intervenors' appeals.  Much, if not most, of the work on Phase One is complete for the time being (at least in this Court) as the appeal progresses forward.  Said another way, this portion of the case – specifically Phase One's appeal – is in its ending stages. Where, as here, the Court and parties have "covered a lot of legal ground together . . . [in] substantively and substantially engag[ing] the issues in this case," intervention under FRCP 24(a) is disfavored. *See League of United Latin American Citizens*, 131 F.3d at 1303.

Second, allowing AEC and Chesapeake to intervene for the purposes of the Phase One appeal would not only mean additional parties and briefing for Plaintiffs to address on appeal (beyond Federal Defendants and Defendant-Intervenors WEA and Wyoming themselves), but also possible additional arguments not presented to or ruled upon by the Court to date.  *See generally* AEC's Mem. ISO Mot. to Interv., (Dkt. 199) (asserting possible violations of due process rights); Chesapeake's Mem. ISO Mot. to Interv. (Dkt. 232-1) (raising arguments premised on Mineral Leasing Act).  If intervention is permitted, these concerns may materialize in redundant arguments and a "piling on" effect, all to Plaintiffs' prejudice. *See, e.g.*, *Shoshone-Bannock Tribes of Fort Hall Reservation v. U.S. Dept. of Interior*, 2010 WL 3173108, at *1 (D. Idaho 2010).

**LIMITED MEMORANDUM DECISION AND ORDER - 11**

Third, AEC and Chesapeake believed that the Federal Defendants and WEA already represented their interests and, only when the Court issued its February 27, 2020 Memorandum Decision and Order vacating the Phase One lease sales did they decide they wanted to intervene instead.  *See* AEC's Mem. ISO Mot. to Interv., pp. 7-8 (Dkt. 199); Chesapeake's Mem. ISO Mot. to Interv., p. 10 (Dkt. 232-1).  However, both AEC and Chesapeake were aware of the lawsuit and that Plaintiffs were seeking to set aside the Phase One leases as part of that litigation, from the date it was filed and as the case developed.  *See, e.g.*, Compl., ¶ 112 (Dkt. 1) (as part of Plaintiffs' original 4/30/18 Complaint:  "BLM oil and gas leasing decisions that have been made, or hereafter are made, under . . . IM 2018-034 are unlawful and should be reversed and set aside."); *id.* at p. 83, ¶ B (Plaintiffs requesting that Court "[r]everse, set aside, hold unlawful, and/or vacate each and all of the Final Actions, and remand them to Defendants.");[9] *see also* Pls.' Mem. ISO MPSJ, pp. 2, 16, 19-20 (Dkt. 135-1) (as part of Plaintiffs' 4/26/19 summary judgment argument:  "Plaintiffs also seek an order vacating the leases and underlying decision documents for the five "Phase One lease sales" – June and September 2018 sales in Nevada, Utah, and Wyoming – in which BLM applied 2018-034 to unlawfully constrain public participation. . . .  Because those lease sales applied IM 2018-034 in unlawfully restricting input from Plaintiffs and the public, the Court must reverse and vacate them as well. . . .  Plaintiffs request that the Court vacate the challenged provisions of IM 2018-034 and the leases unlawfully issued in reliance on that IM. . . .  Plaintiffs respectfully pray that the Court grant this Phase One

---

[9]   In addition, as part of its justification to intervene back in July 2018, WEA acknowledged that Plaintiffs expressly sought to have the Phase One lease sales vacated.  *See* Reply ISO Mot. to Interv., pp. 4, 8 (Dkt. 35) ("[WEA] satisfies the third element of intervention as a matter of right because Plaintiffs' requested relief – vacatur of the lease sales – poses a direct and substantial threat to those legally protectable interests. . . .  The only question before the court is whether [WEA] should be granted status as a Defendant-Intervenor to represent its members' leasehold interests which the Plaintiffs seek to have vacated.").  Again, the Court allowed WEA to intervene based, in part, upon those representations.

**LIMITED MEMORANDUM DECISION AND ORDER - 12**

partial summary judgment motion, enter summary judgment in their favor on their Fourth and

Fifth Claims for Relief, and reverse and vacate IM 2018-034 and the five challenged June and

September 2018 lease sales.").  That AEC and Chesapeake may have believed that the Phase

One leases would not be cancelled does not somehow toll the time for them to seek intervention

until the Court's Memorandum Decision and Order actually did so.  *See Alaniz v. Tillie Lewis

Foods*, 572 F.2d 657, 659 (9th Cir. 1978) ("The crux of appellants' argument is that they did not

know the settlement decree would be to their detriment.  But surely they knew the risks.  To

protect their interests, appellants should have joined the negotiations before the suit was

settled.").  In such a setting, the reasons proffered by AEC and Chesapeake for their delay in

moving to intervene fall short.  Combined, each of these factors reveals that AEC's and

Chesapeake's Motions to Intervene are untimely.

Separately, for reasons discussed above, WEA has represented and can be expected to

adequately represent AEC's and Chesapeake's interests.  *See supra*.  WEA's interests in this

action parallel those of its members.  There is no suggestion that, nor any sensible reason to

believe, that WEA's defenses to Plaintiffs' claims (or its arguments on appeal) are antithetical to

AEC's and Chesapeake's interests.  *See supra*.  Further, WEA can make any reasonable

argument that AEC or Chesapeake would make if either were a party – indeed, WEA has already

done so with the express assistance of AEC and Chesapeake.  *See id*. (noting AEC's and

Chesapeake's declarations in support of WEA's attempt at staying action pending appeal).[10]

---

[10]   AEC and Chesapeake suggest that, while WEA may have adequately represented its
interests up until the Court issued its February 27, 2020 Memorandum Decision and Order, it no
longer is capable of doing so.  *See* AEC's Mem. ISO Mot. to Interv., p. 12 (Dkt. 199) ("[WEA]'s
organizational representation of the industry at that point [(upon the Court's Order)] was no
longer adequate."); Chesapeake's Mem. ISO Mot. to Interv., p. 8 (Dkt. 232-1) ("The Court's
ruling in Phase I confirms that the present intervenors are not sufficient to protect Chesapeake's
interest.").  But this argument fails to explain how defending against possible vacatur is different
from defending against actual vacatur.  Moreover, "mere[ ] differences in [litigation] strategy . . .

**LIMITED MEMORANDUM DECISION AND ORDER - 13**

Finally, there is no indication that AEC or Chesapeake would bring any essential element to the action that WEA would neglect or that WEA could not incorporate into its filings (as it has done).

In sum, AEC and Chesapeake are not entitled to intervene as of right under FRCP 24(a). Their Motions to intervene are untimely and they are adequately represented by WEA regardless.

**B.     AEC and Chesapeake Are Not Entitled to Permissive Intervention Under FRCP 24(b)**

As with motions for intervention as of right, "[a] finding of untimeliness defeats a motion for permissive intervention." *United States v. Washington*, 86 F.3d 1499, 1507 (9th Cir. 1996). In determining timeliness under FRCP 24(b), the Court considers the same three factors – the stage of the proceedings, the prejudice to existing parties, and the length of and reason for the delay – that it considered in determining timeliness under FRCP 24(a). *See Orange Co. v. Air California*, 799 F.2d 535, 539 (9th Cir. 1986). In the context of permissive intervention, however, the timeliness element is analyzed even more strictly than with intervention as of right. *See United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984). "*A fortiori*, our previous conclusion that [analogously, AEC's and Chesapeake's] intervention motion[s] [were] untimely is controlling." *League of United Latin American Citizens*, 131 F.3d at 1308.

Here, AEC and Chesapeake have failed to establish their entitlement to intervention as of right under a less stringent standard relating to timeliness and, therefore, their request for permissive intervention measured against the more stringent standard must be denied as untimely as well.[11]

_____

are not enough to justify intervention as a matter of right." *Perry*, 587 F.3d at 954 (citation omitted).

[11]  Though the Court has denied AEC's and Chesapeake's requests to intervene under FRCP 19 and 24, neither is precluded from seeking *amicus* status for the purposes of the appeal.

**LIMITED MEMORANDUM DECISION AND ORDER - 14**

## **ORDER**

Based upon the foregoing, IT IS HEREBY ORDERED that:

1.      AEC's Motion to Intervene (Dkt. 198) is DENIED, in this part: AEC is not entitled to intervene to participate in Phase One's appeal; whether AEC will be permitted to intervene in either Phase Two of the case or to submit briefing consistent with footnote 6 of the Court's May 12, 2020 Memorandum Decision and Order (Dkt. 226) will be taken up along with the other pending motions to intervene for those same purposes.

2.      AEC's Joinder of Motions to Stay Pending Appeal (Dkt. 205) is DENIED AS MOOT in light of the Court's May 12, 2020 Memorandum Decision and Order (Dkt. 226).

3.      Chesapeake's Motion to Intervene (Dkt. 232) is DENIED in this part: Chesapeake is not entitled to intervene to participate in Phase One's appeal; whether Chesapeake will be permitted to intervene in either Phase Two of the case or to submit briefing consistent with footnote 6 of the Court's May 12, 2020 Memorandum Decision and Order (Dkt. 226) will be taken up along with the other pending motions to intervene for those same purposes.

DATED: July 24, 2020

Ronald E. Bush
Chief U.S. Magistrate Judge

**LIMITED MEMORANDUM DECISION AND ORDER - 15**