# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, and CENTER FOR BIOLOGICAL DIVERSITY,<br><br>     Plaintiffs,<br><br>     vs.<br><br>RYAN K. ZINKE, Secretary of Interior; DAVID BERNHARDT, Deputy Secretary of Interior; and UNITED STATES BUREAU OF LAND MANAGEMENT, an agency of the United States,<br><br>     Defendants,<br><br>     and,<br><br>STATE OF WYOMING; WESTERN ENERGY ALLIANCE,<br><br>     Defendants-Intervenors. | Case No.: 1:18-cv-00187-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**ANSCHUTZ EXPLORATION CORPORATION'S MOTION TO INTERVENE**<br>**(Dkt. 198)**<br><br>**CHESAPEAKE EXPLORATION, LLC'S MOTION TO INTERVENE**<br>**(Dkt. 232)**<br><br>**VERMILLION ENERGY USA, LLC'S MOTION TO INTERVNE AS DEFENDANT-INTERVENOR**<br>**(Dkt. 240)**<br><br>**BALLARD PETROLEUM HOLDINGS, LLC'S MOTION TO INTERVENE AS DEFENDANT-INTERVENOR**<br>**(Dkt. 242)**<br><br>**PEAK POWDER RIVER RESOURCES, LLC'S MOTION TO INTERVENE**<br>**(Dkt. 253)**<br><br>**PEAK POWDER RIVER ACQUISITIONS, LLC'S MOTION TO INTERVENE**<br>**(Dkt. 260)**<br><br>**REBELLION ENERGY II, LLC'S AND SEVEN SISTERS OIL & GAS, LLC'S MOTION TO INTERVENE**<br>**(Dkt. 262)**<br><br>**TITAN EXPLORATION, LLC'S MOTION TO INTERVENE**<br>**(Dkt. 270)** |

**MEMORANDUM DECISION AND ORDER - 1**

The Court has received numerous motions to intervene, from the following entities:  (1) Anschutz Exploration Corporation ("AEC") (Dkt. 198); (2) Chesapeake Exploration, LLC ("Chesapeake") (Dkt. 232); (3) Vermillion Energy USA, LLC ("Vermillion")  (Dkt. 240); (4) Ballard Petroleum Holdings, LLC ("Ballard") (Dkt. 242); (5) Peak Powder River Resources, LLC ("PPRR") (Dkt. 253); (6) Peak Powder River Acquisitions, LLC ("PPRA") (Dkt. 260); (7) Rebellion Energy II, LLC ("Rebellion II) and Seven Sisters Oil & Gas, LLC ("Seven Sisters") (Dkt. 262); and (8) Titan Exploration, LLC ("Titan") (Dkt. 270).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.[1]

## BACKGROUND

The general contours are well known and discussed in multiple decisions, including, in part:  (1) the August 21, 2018 Memorandum Decision and Order, granting Defendant-Intervenors Motions to Intervene (Dkt. 54); (2) the September 4, 2018 Memorandum Decision and Order, denying Defendants' Motion to Sever and Transfer (Dkt. 66); (3) the September 21, 2018 Memorandum Decision and Order, granting in part and denying in part Plaintiffs' Motion for Preliminary Injunction (Dkt. 74); (4) the July 9, 2019 Memorandum Decision and Order, granting in part and denying in part the then-pending Motions to Dismiss or in the Alternative to Sever and Transfer Plaintiffs' NPL Claims (Dkt. 150); (5) the February 27, 2020 Memorandum Decision and Order, granting Plaintiff's Motion for Partial Summary Judgment and denying Defendants'/Defendant-Intervenors' Motions for Partial Summary Judgment (Dkt. 174); (6) the May 12, 2020 Memorandum Decision and Order, denying Plaintiffs' Motion for Reconsideration

---

[1]  The restrictive circumstances presented by national, state, and local responses to the recent and evolving COVID-19 outbreak/pandemic, combined with the need to address the existing Phase 2 briefing schedule, call for a more concise discussion than is the Court's typical practice.

**MEMORANDUM DECISION AND ORDER - 2**

and Clarification, granting Federal Defendants' Motion for Partial Stay Pending Appeal, and

granting in part and denying in part Defendant-Intervenors' Motions for Stay Pending Appeal

(Dkt. 226); and (7) the July 24, 2020 Limited Memorandum Decision and Order denying AEC's

and Chesapeake's Motions to Intervene (for the purposes of participating in Phase One's appeal)

(Dkt. 272).[2]

Of immediate relevance here, the Court's February 27, 2020 Memorandum Decision and

Order set aside certain at-issue provisions of IM 2018-034 and set aside the Phase One lease

sales applying them (the June and September 2018 lease sales in Nevada Utah, and Wyoming).

*See generally* 2/27/20 MDO (Dkt. 174).  However, in response to Federal Defendants' and

Defendant-Intervenors' arguments in favor of staying the action pending appeal,[3] the Court

chose to *suspend* operations and production of the Phase One lease sales (rather than setting

them aside) pending appeal, stating further:

> The Court is mindful that some work, to include ordinary maintenance and repair,
> may be necessary to preserve the status quo at locations where leasehold
> development is already underway.  Therefore, the Court will consider motions from
> any party requesting additional details as to what work, if any, to maintain the
> suspended status quo will be permitted.  Any such motion should be accompanied
> by information about the nature and need for such work to allow other parties to
> respond to the motion and for the Court to make an informed decision upon the
> request.

---

[2]  The Court reserved ruling on AEC's and Chesapeake's Motions to Intervene as to other
portions of the case.  *See* 7/24/20 MDO, p. 3, n.5 (Dkt. 272) ("Whether AEC and/or Chesapeake
will be permitted to intervene in either Phase Two of the case or to submit briefing consistent
with footnote 6 of the Court's May 12, 2020 Memorandum Decision and Order . . . will be taken
up along with the other pending motions to intervene . . . for those same purposes.").  This
Memorandum Decision and Order speaks to these issues.

[3]  Following the Court's February 27, 2020 Memorandum Decision and Order, Federal
Defendants and Defendant-Intervenors Western Energy Alliance ("WEA") and the State of
Wyoming ("Wyoming") moved to stay the portion of the Memorandum Decision and Order that
set aside the Phase One lease sales and filed Notices of Appeal.  *See* Mots. to Stay (Dkts. 176,
177, 181); Nots. of Appeal (Dkts. 182, 183, 185).

**MEMORANDUM DECISION AND ORDER - 3**

5/12/20 MDO, pp. 10-11, n. 6 (Dkt. 226).  Prospective relief pursued under the above-referenced footnote 6 of the Court's May 12, 2020 Memorandum Decision and Order is hereafter referred to as the "Footnote 6 protocol."

Several of the parties seeking to intervene claim economic and property interests in certain of the Phase One lease sales.  They seek intervention to protect those interests pursuant to the Footnote 6 protocol.  They also seek intervention, however, to protect interests in separately-held leases that are not contained in the set-aside/suspended Phase One lease sales, but which they contend are implicated in Phase 2 (and beyond) of the litigation.  Claiming that only they can adequately protect their individual interests, the proposed Defendant-Intervenors contend that they should have been joined as indispensable parties at the outset under FRCP 19 or, now, allowed to intervene (either by right or by permission) under FRCP 24(a) and (b).

## STANDARDS OF LAW

**A.      Required Joinder of Parties**

FRCP 19 states:

(a)      Persons Required to Be Joined if Feasible.

      (1)      Required Party.  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

            (A)      in that person's absence, the court cannot accord complete relief among existing parties; or

            (B)      that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the persons absence may:

                  (i)      as a practical matter impair or impede the person's ability to protect the interest; or

                  (ii)      leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

**MEMORANDUM DECISION AND ORDER - 4**

> (2)     Joinder by Court Order.  If a person has not been joined as required, the court must order that the person be made a party.  A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

Fed. R. Civ. P. 19(a)(1)-(2).

The issue of a party's alleged indispensability "is sufficiently important that it can be raised at any stage of the proceedings – even sua sponte." *McCowen v. Jamieson*, 724 F.2d 1421, 1424 (9th Cir. 1984) (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968)).  Ultimately, however, "[t]here is no precise formula for determining whether a particular nonparty should be joined under [FRCP 19(a)] . . . .  The determination is heavily influenced by the facts and circumstances of each case." *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1081 (9th Cir. 2010) (citation omitted).

**B.     Intervention of Right and Permissive Intervention**

FRCP 24 states:

> (a)     Intervention of Right.  On timely motion, the court must permit anyone to intervene who:

>> (1)     is given an unconditional right to intervene by a federal statute; or

>> (2)     claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

> (b)     Permissive Intervention.

>> (1)     In General.  On timely motion, the court may permit anyone to intervene who:

>>> (A)     is given a conditional right to intervene by a federal statute; or

>>> (B)     has a claim or defense that shares with the main action a common question of law or fact. . . . .

**MEMORANDUM DECISION AND ORDER - 5**

(3)     Delay or Prejudice.  In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(a)-(b).

Courts generally construe FRCP 24(a) liberally in favor of intervention and, reduced to its elements, the rule requires a showing that: "(1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest."  *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).  Courts deciding motions to intervene as of right are "guided primarily by practical considerations, not technical distinctions."  *See id.* (citation and quotations omitted); *see also U.S. v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002) (stating that "equitable considerations" guide determination of motions to intervene as of right) (citation omitted).  Nonetheless, the "[f]ailure to satisfy any one of the requirements is fatal to the application."  *Perry v. Prop. 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

As to FRCP 24(b), courts may grant permissive intervention where the applicant shows: "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common."  *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997) (citation and quotations omitted).  "As with motions for intervention as of right, [a] finding of untimeliness defeats a motion for permissive intervention."  *Id.*  "A motion for permissive intervention pursuant to [FRCP 24(b)] is directed to the sound discretion of the district court."  *San Jose Mercury News, Inc. v. U.S. Dist. Court – N. Dist. (San Jose)*, 187 F.3d 1096, 1100 (9th Cir. 1999).

**MEMORANDUM DECISION AND ORDER - 6**

## DISCUSSION

**A.     AEC, Chesapeake, Vermillion, and Ballard (Dkt. Nos. 198, 232, 240, 242)**

     1.     <u>AEC, Chesapeake, Vermillion and Ballard Are Not Required Parties Under FRCP 19</u>

AEC, Chesapeake, Vermillion, and Ballard argue that they are required parties under FRCP 19(a)(1)(B)(i).  *See* AEC's Mem. ISO Mot. to Interv., pp. 4-6 (Dkt. 199); Chesapeake's Mem. ISO Mot. to Interv., pp. 3-4 (Dkt. 232-1); Vermillion's Mem. ISO Mot. to Interv., pp. 3-4 (Dkt. 240-1); Ballard's Mem. ISO Mot. to Interv., pp. 3-4 (Dkt. 242-1).  "As a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interests will be adequately represented by existing parties to the suit."  *Alto v. Black*, 738 F.3d 1111, 1127 (9th Cir. 2013); *see also Salt River Project Agr. Imp. and Power Dist. v. Lee*, 672 F.3d 1176, 1180 (9th Cir. 2012) (concluding that "[a]n absent party with an interest in the action is not a necessary party under Rule 19(a) 'if the absent party is adequately represented in the suit.'") (quoting *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992)).  An absent party is adequately represented where the present party "'will undoubtedly make all of the absent party's arguments,'" "'the party is capable of and willing to make such arguments,'" and "'the absent party would [not] offer any necessary element to the proceedings that the present parties would neglect.'"  *Salt River*, 672 F.3d at 1180 (quoting *Shermoen*, 982 F.2d at 1318).  "The inquiry into whether a party is necessary is a practical one and fact specific, and is designed to avoid the harsh results of rigid application."  *A.H.R. v. Wash. State Health Care Auth.*, 2016 WL 98513, at *6 (W.D. Wash. 2016).  Here, neither party's ability to protect its interest is impaired because those interests are already adequately represented by WEA.

Soon after Plaintiffs initiated this action, WEA moved to intervene "to protect its members' interests by opposing Plaintiffs' arguments and opposing Plaintiffs' request for relief."

**MEMORANDUM DECISION AND ORDER - 7**

WEA's Mem. ISO Mot. to Interv., p. 3 (Dkt. 20-1).  At that time, WEA highlighted how "its members have a clear, significantly protectable interest in the subject matter of the litigation; its members' interests will be impaired if Plaintiffs prevail; and its interests are not adequately represented by existing parties."  *Id*. at p. 4.  WEA specifically argued:

- "[WEA] members hold significant, monetary interests in the challenged federal oil and gas leases on the federal lands at issue in this case – leases in which member companies have invested tens of millions of dollars. Clearly, these valid existing rights and economic interests are significant and legally protectable interests and warrant intervention as a matter of right.  Furthermore, as a trade association representing the interests of its member companies on federal public lands, [WEA] has an organizational interest in maintaining regulatory certainty in BLM's oil and gas leasing program."

- "The outcome of the instant action poses a direct and substantial threat to [WEA] and the property rights and economic interests of its members. Moreover, Plaintiffs' requested relief poses a direct and substantial threat to those legally protectable interests."

- "Here, [WEA] has a significantly protectable interest because its member companies have existing interests in the federal leases on lands within greater sage-grouse habitat in Idaho and across the West.  [WEA] members have invested tens of millions of dollars on the leases in question and billions of dollars in operations in greater sage-grouse habitat, operations that expand across much of the range affected by the challenged actions."

- "If Plaintiffs prevail, [WEA] members would suffer economic harm from the greater restrictions that would be imposed on federal leases and property rights owned by them.  Further, members would be unable to fully develop their leased oil and natural gas resources, resulting in reduced income to the companies and reduced income to the federal government in lease and royalty revenue."

- "The Federal Defendants cannot adequately represent [WEA's] or its members' private and unique interests in this action. . . .  In order to protect the specific oil and gas development interests of its members, [WEA] must be afforded the right to formulate an appropriate litigation strategy and present its own legal arguments."  The Federal Defendants are protecting the public interest at large and not the specific economic and property interests of [WEA] members.  The Federal Defendants must consider a wide spectrum of views when defending this lawsuit, and, among other things, advocate for proper interpretation of federal environmental laws and uphold the integrity of federal decision making.  Their priority will not be to

**MEMORANDUM DECISION AND ORDER - 8**

preserve [WEA] members' investments in the challenged leases, or to protect the economic interests in this case."

- "[WEA] has outlined above why it should be permitted to intervene in this proceeding.  Further, [WEA] members have specific economic and property interests and rights within Idaho and across the 11-state greater sage-grouse range.  Should Plaintiffs' action prove successful, [WEA] members would suffer economic injury and harm to their rights in leases on lands underlying the challenged plans."

*Id*. at pp. 5-9 (internal citations omitted); *see also* Sgamma Decl., ¶¶ 2-7 (Dkt. 20-2) (WEA's president discussing its representation of over 300 company members who "hold specific interests related to the leasing and development of oil and gas resources on public lands;" "operate in Idaho and other states across the West affected by the Federal Defendants' actions related to sage-grouse and oil and natural gas leasing and development in the species' habitat, and would be directly injured by the Plaintiffs' proposed relief"; "hold significant monetary interests in the challenged federal oil and gas leases at issue in this case"; and have significant and legally protectable interests that "would be directly and substantially threatened by Plaintiffs' requested relief.").

On August 21, 2018, the Court granted WEA's Motion to Intervene, reasoning, in part, that only WEA is "uniquely capable" of explaining how any potential ruling will affect the property interests of a private trade association comprised of members heavily dependent on oil and gas production/leasing.  *See* 8/21/18 MDO, pp. 4-7 (Dkt. 54).[4]  And, since then, WEA has

---

[4]   AEC, Chesapeake, Vermillion, and Ballard contend that WEA intervened only to protect its organizational interests moving forward.  *See* AEC's Mem. ISO Mot. to Interv., p. 12 (Dkt. 199); Chesapeake's Mem. ISO Mot. to Interv., p. 9 (Dkt. 232-1); Vermillion Mem. ISO Mot. to Interv., p. 10 (Dkt. 240-1); Ballard Mem. ISO Mot. to Interv., p. 9 (Dkt. 242-1).  Such an argument is loosely raveled, as it is difficult to discern where an organization that exists to represent its members' interests could be said to have organizational interests adverse to its members.  Regardless, this argument ignores WEA's clear intent to simultaneously intervene to protect its members' interests against Plaintiffs' attempts to unwind certain of proposed Defendant-Intervenors' lease sales.  *See supra* (noting WEA's arguments for intervention); *see also* WEA's Reply ISO Mot. to Interv., pp. 1, 4-8 (Dkt. 35) ("[WEA] seeks intervention to

diligently represented those interests, including efforts to sever and transfer certain of Plaintiffs' claims, opposing Plaintiffs' Motion for Preliminary Injunction, moving to dismiss or alternatively transfer Plaintiffs' claims against Jonah Energy, moving for summary judgment while opposing Plaintiffs' Motion for Summary Judgment, moving to stay the Phase One lease vacatur pending appeal, filing a Notice of Appeal, and recently moving to modify the Court's May 12, 2020 Memorandum Decision and Order on behalf of a member company.

AEC, Chesapeake, Vermillion, and Ballard are members of WEA. They naturally share the same ultimate objective in this lawsuit (upholding the validity of the contested lease sales and avoiding lease vacatur); indeed WEA supported its Motion for Stay Pending Appeal with declarations from AEC's President and COO, Joseph DeDominic, Chesapeake's Land Manager,

---

protect its members' valid and significant interests and property rights . . . . As required in Rule 24, [WEA] claims an interest relating to the property at issue: ownership of the leases. [WEA] satisfies the third element of intervention as a matter of right because Plaintiffs' requested relief – vacatur of the lease sales – poses a direct and substantial threat to those legally protectable interests. . . . [WEA] represents federal lessees who have a significantly protectable interest that could be impaired by this litigation. . . . The Federal Defendants are defending BLM's decision-making process, while [WEA] is defending the property rights and business interests of its members. . . . [T]he Federal Defendants would not make arguments related to [WEA] members' property interests. . . . [WEA] seeks to intervene to protect the unique interests of its members, which would ensure the Court is apprised of all interests and arguments. . . . The only question before the court is whether [WEA] should be granted status as a Defendant-Intervenor to represent its members' leasehold interests which the Plaintiffs seek to have vacated. [WEA] is a zealous and candid advocate for its members.") (internal quotation marks and citations omitted). More recently, WEA successfully moved *on behalf of a member company* to modify the Court's May 12, 2020 Memorandum Decision and Order vis à vis the Phase One lease sales. *See* WEA's Mot. to Modify (Dkt. 251) ("Pursuant to L.R. Civ. 7.1, and the Court's notation in its May 12, 2020 Order, Defendant-Intervenor [WEA], on behalf of member company EOG Resources, Inc. (EOG), respectfully moves to allow production to commence on one well that traverses one existing oil and gas lease issued under the Phase One lease sale in the Powder River Basin of Wyoming, because production will not change the environmental status quo pending appeal and will not cause any adverse impacts to greater sage grouse."). In other words, whatever WEA's organizational interests may be, they are not mutually exclusive of its members' interests – which WEA *also* claimed/claims to represent. *See e.g.*, WEA's Reply ISO Mot. to Interv., p. 7 (Dkt. 35) ("The Federal Defendants cannot adequately represent *[WEA's] or its members'* private and unique interests in this action. Nor can [WEA] rely on Federal Defendants to advocate for the protection of the property interests of its members.") (emphasis added).

**MEMORANDUM DECISION AND ORDER - 10**

K.W. Cryer, and Ballard's President, David Ballard.  *See* DeDominic Decl. (Dkt. 177-5); Cryer

Decl. (Dkt. 177-2); Ballard Decl. (Dkt. 177-7).[5]  At bottom, it is inescapable that AEC's,

Chesapeake's, Vermillion's, and Ballard's interests clearly align with WEA's interests.  Hence,

WEA can be expected to adequately represent – and has adequately represented – AEC's,

Chesapeake's, Vermillion's, and Ballard's interests in this action.  In short, resolving this action

without AEC, Chesapeake, Vermillion, or Ballard as parties will not impair or impede their

ability to protect their interests.  Intervention is therefore not required under FRCP

19(a)(1)(B)(i).[6]

> 2.   AEC, Chesapeake, Vermillion and Ballard Do Not Have a Right to Intervene
>      Under FRCP 24(a)

Plaintiffs do not dispute that AEC, Chesapeake, Vermillion, and Ballard claim

protectable interests as to the subject of this action, or that disposition of this case might affect

their ability to protect those interests.  *See* Pls.' Opp. to AEC's Mot. to Interv. (Dkt. 216); Pls.'

Opp. to Chesapeake's Mot. to Interv. (Dkt. 248); Pls.' Opp. to Vermillion's Mot. to Interv. (Dkt.

249); Pls.' Opp. to Ballard's Mot. to Interv. (Dkt. 250).  However, Plaintiffs argue that AEC,

Chesapeake, Vermillion, and Ballard cannot intervene because their motions are untimely and

---

[5]  WEA, Chesapeake, Vermillion, and Ballard are all represented by the same law firm, Beatty & Wozniak, P.C., and have the same local counsel, Cherese DeDominiq McLain.  *See* Pls.' Opp. to Chesapeake's Mot. to Interv., p. 11 (Dkt. 248) ("How could the same lawyers that represent WEA somehow be unable to represent Chesapeake's interests adequately, and yet that inadequacy be cured by allowing the same lawyers to represent Chesapeake separately from WEA?"); Pls.' Opp. to Vermillion's Mot. to Interv., p. 11 (Dkt. 249) (same); Pl.'s Opp. to Ballard's Mot. to Interv., pp. 3-4 ("Neither does Ballard address the fact that WEA is represented by the very same law firms . . . that would represent Ballard as an intervenor in this case . . . .")

[6]  The Court is also not persuaded on this record that, without AEC's and/or Chesapeake's intervention, the Federal Defendants may be subject to a substantial risk of inconsistent obligations under FRCP 19(a)(1)(B)(ii).  *See, e.g.*, AEC's Mem. ISO Mot. to Interv., p. 6 (Dkt. 199) (positing that, if AEC later successfully brought action against government seeking declaratory judgment that its leases are valid, "then the government would be in the impossible position of facing inconsistent judgments").

**MEMORANDUM DECISION AND ORDER - 11**

WEA already adequately represents their interests.  *See id.* (citing *Perry*, 587 F.3d at 959

("Failure to satisfy any one of the requirements is fatal to the application.")).

The Court agrees. Timeliness depends on three factors:  "(1) the stage of the proceeding

at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for

and length of the delay." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004).

Each of these factors weighs against intervention.

First, this case began more than two years ago.  In that time, the Court has permitted three

parties to intervene, denied various motions to dismiss, transferred a portion of the case to

Wyoming, granted a motion for preliminary injunction, granted partial summary judgment for

Plaintiffs (as to Phase One), and stayed the Phase One lease vacatur pending Federal Defendants'

and Defendant-Intervenors' appeals.  Much, if not most, of the work on Phase One is complete

for the time being (at least in this Court) as the appeal progresses forward, and Phase Two is

underway.[7]  Where, as is the case here, the Court and parties have "covered a lot of legal ground

together . . . [in] substantively and substantially engag[ing] the issues in this case," intervention

under FRCP 24(a) is disfavored. *See League of United Latin American Citizens*, 131 F.3d at

1303; *Alisal Water*, 370 F.3d at 922 (intervention denied "even at the pretrial stages when a lot

of water [has] passed under . . . [the] litigation bridge.") (internal quotation marks omitted).

Second, allowing AEC, Chesapeake, Vermillion, and Ballard to intervene would not only

mean additional parties and duplicative briefing for Plaintiffs to address (beyond Federal

---

[7]  The Court is aware that AEC, Chesapeake, Vermillion, and Ballard seek to intervene, in part, for purposes of Phase Two of the action, and that, as compared to its Phase One, Phase Two's anticipated dispositive motions are not even fully briefed at this time.  Additionally, the potential modifications flowing from the Footnote 6 protocol are also more recent (even if it speaks to Phase One lease sales themselves).  However, the fact remains that the case has progressed more than two years without any of their involvement, they are each members of WEA, WEA intervened for their benefit (*see supra*), and WEA has been a party to the action since August 21, 2018.

**MEMORANDUM DECISION AND ORDER - 12**

Defendants and Defendant-Intervenors WEA and Wyoming themselves), but also possible additional arguments not presented to or ruled upon by the Court to date. *See generally* AEC's Mem. ISO Mot. to Interv., pp. 5, 13 (Dkt. 199) (asserting possible violations of due process rights); Chesapeake's Mem. ISO Mot. to Interv., pp. 3-4, 8 (Dkt. 232-1) (raising arguments premised on due process and Mineral Leasing Act); Vermillion's Mem. ISO Mot. to Interv., p. 4, 7-8 (Dkt. 240-1) (same); Ballard's Mem. ISO Mot. to Interv., pp. 3-4, 7-8 (Dkt. 242-1) (same). If intervention is permitted, these concerns may materialize in redundant arguments and a "piling on" effect, all to Plaintiffs' prejudice. *See, e.g.*, *Shoshone-Bannock Tribes of Fort Hall Reservation v. U.S. Dept. of Interior*, 2010 WL 3173108, at *1 (D. Idaho 2010).

Third, AEC, Chesapeake, Vermillion, and Ballard believed that the Federal Defendants and WEA already represented their interests and only when the Court issued its February 27, 2020 Memorandum Decision and Order vacating the Phase One lease sales did they decide they wanted to intervene instead. *See* AEC's Mem. ISO Mot. to Interv., pp. 7-8 (Dkt. 199); Chesapeake's Mem. ISO Mot. to Interv., p. 10 (Dkt. 232-1); Vermillion's Mem. ISO Mot. to Interv., p. 11 (Dkt. 240-1); Ballard's Mem. ISO Mot. to Interv., pp. 10-11 (Dkt. 242-1). However, these parties (as WEA members) were aware of the lawsuit and that Plaintiffs were seeking to set aside the Phase One and/or Two lease sales as part of the litigation – from the date it was filed, and as the case developed. *See, e.g.*, Compl., ¶ 112 (Dkt. 1) (as part of Plaintiffs' original 4/30/18 Complaint: "BLM oil and gas leasing decisions that have been made, or hereafter are made, under . . . IM 2018-034 are unlawful and should be reversed and set aside."); *id.* at ¶¶ 150-57, 177-85, 276-319 (claim for relief against leases issued under IM 2018-034 and challenging February and September 2017 Wyoming lease sales on other grounds); *id.* at p. 83, ¶ B (Plaintiffs requesting that Court "[r]everse, set aside, hold unlawful, and/or vacate each and

**MEMORANDUM DECISION AND ORDER - 13**

all of the Final Actions, and remand them to Defendants.");[8] *see also* First Am. Compl., ¶¶ 225a-225ll (Dkt. 78) (adding "Phase One" lease sales as challenged actions); Second Am. Compl., ¶¶ 274-83 (Dkt. 165) (adding February 2019 Wyoming lease sale as challenged action); Pls.' Mem. ISO MPSJ, pp. 2, 16, 19-20 (Dkt. 135-1) (as part of Plaintiffs' 4/26/19 summary judgment argument:  "Plaintiffs also seek an order vacating the leases and underlying decision documents for the five "Phase One lease sales" – June and September 2018 sales in Nevada, Utah, and Wyoming – in which BLM applied 2018-034 to unlawfully constrain public participation. . . . Because those lease sales applied IM 2018-034 in unlawfully restricting input from Plaintiffs and the public, the Court must reverse and vacate them as well. . . .  Plaintiffs request that the Court vacate the challenged provisions of IM 2018-034 and the leases unlawfully issued in reliance on that IM. . . .  Plaintiffs respectfully pray that the Court grant this Phase One partial summary judgment motion, enter summary judgment in their favor on their Fourth and Fifth Claims for Relief, and reverse and vacate IM 2018-034 and the five challenged June and September 2018 lease sales.").  That AEC, Chesapeake, Vermilion, and Ballard may have believed that the Phase One leases would not be cancelled does not somehow toll the time for them to seek intervention until the Court made a decision to do so.  *See Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659 (9th Cir. 1978) ("The crux of appellants' argument is that they did not know the settlement decree would be to their detriment.  But surely they knew the risks.  To protect their interests, appellants should have joined the negotiations before the suit was settled.").  In such a setting, the reasons

---

[8]  In addition, as part of its justification to intervene back in July 2018, WEA acknowledged that Plaintiffs expressly sought to have lease sales vacated.  *See* Reply ISO Mot. to Interv., pp. 4, 8 (Dkt. 35) ("[WEA] satisfies the third element of intervention as a matter of right because Plaintiffs' requested relief – vacatur of the lease sales – poses a direct and substantial threat to those legally protectable interests. . . .  The only question before the court is whether [WEA] should be granted status as a Defendant-Intervenor to represent its members' leasehold interests which the Plaintiffs seek to have vacated.").  Again, the Court allowed WEA to intervene based, in part, upon those representations.

**MEMORANDUM DECISION AND ORDER - 14**

proffered for their delay in moving to intervene fall short.  Combined, each of these factors reveals that their Motions to Intervene are untimely.

Separately, for reasons discussed above, WEA has represented and can be expected to adequately represent AEC's, Chesapeake's, Vermillion's, and Ballard's interests.  *See supra*.  WEA's interests in this action parallel those of its members.  There is no suggestion, nor any sensible reason to believe, that WEA's defenses to Plaintiffs' claims are adverse to its members' interests.  *See supra*.  Further, WEA can make any reasonable argument that AEC, Chesapeake, Vermillion, or Ballard would make if either were a party – indeed, WEA has already done so with the express assistance of AEC, Chesapeake, and Ballard.  *See id.* (noting AEC's, Chesapeake's, and Ballard's declarations in support of WEA's attempt at staying action pending appeal).[9]  Finally, there is no indication that AEC, Chesapeake, Vermillion, or Ballard would bring any essential element to the action that WEA would neglect or that WEA could not incorporate into its filings (as it has done).  *See, e.g.*, WEA's Mot. to Modify (Dkt. 251) (seeking modification of Court's 2/27/20 MDO under Footnote 6 protocol on behalf of member EOG Resources, Inc.); 8/13/20 Order (Dkt. 285) (Court granting relief sought within WEA's Motion to Modify).

---

[9]  AEC, Chesapeake, Vermillion, and Ballard suggest that, while WEA may have adequately represented its interests up until the Court issued its February 27, 2020 Memorandum Decision and Order, it no longer is capable of doing so.  *See* AEC's Mem. ISO Mot. to Interv., p. 12 (Dkt. 199) ("[WEA]'s organizational representation of the industry at that point [(upon the Court's Order)] was no longer adequate."); Chesapeake's Mem. ISO Mot. to Interv., p. 8 (Dkt. 232-1) ("The Court's ruling in Phase I confirms that the present intervenors are not sufficient to protect Chesapeake's interest."); Vermillion's Mem. ISO Mot. to Interv., pp. 9-10 (Dkt. 240-1) (same, as to Vermillion); Ballard's Mem. ISO Mot. to Interv., pp 8-9 (Dkt. 242-1) (same, as to Ballard).  But there is no sense to an argument that defending against possible vacatur is different from defending against actual vacatur.  Moreover, "mere[ ] differences in [litigation] strategy . . . are not enough to justify intervention as a matter of right."  *Perry*, 587 F.3d at 954 (citation omitted).

**MEMORANDUM DECISION AND ORDER - 15**

In sum, AEC, Chesapeake, Vermillion, and Ballard are not entitled to intervene as of right under FRCP 24(a). Their Motions to Intervene are untimely under the circumstances presented here and they are adequately represented by WEA regardless.

**B.     AEC, Chesapeake, Vermillion, and Ballard Are Not Entitled to Permissive Intervention Under FRCP 24(b)**

As with motions for intervention as of right, "[a] finding of untimeliness defeats a motion for permissive intervention." *United States v. Washington*, 86 F.3d 1499, 1507 (9th Cir. 1996). In determining timeliness under FRCP 24(b), the Court considers the same three factors – the stage of the proceedings, the prejudice to existing parties, and the length of and reason for the delay – that it considered in determining timeliness under FRCP 24(a). *See Orange Co. v. Air California*, 799 F.2d 535, 539 (9th Cir. 1986). With permissive intervention, however, the timeliness element is analyzed even more strictly than with intervention as of right. *See United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984). "*A fortiori*, our previous conclusion that [analogously, AEC's, Chesapeake's, Vermillion's, and Ballard's] intervention motion[s] [were] untimely is controlling." *League of United Latin American Citizens*, 131 F.3d at 1308.

Here, AEC, Chesapeake, Vermillion, and Ballard fail to justify intervention as of right under a less stringent timeliness standard and, therefore, their request for permissive intervention measured against the more stringent standard must be denied as untimely as well. Though neither party is permitted to intervene, WEA may move on their behalf to modify the Court's February 27, 2020 Memorandum Decision and Order under the Footnote 6 protocol, where appropriate and necessary.

**B.     PPRR, PPRA, Rebellion II, Seven Sisters, and Titan (Dkt. Nos. 253, 260, 262, 270)**

PPRR, PPRA, Rebellion II, Seven Sisters, and Titan each claim protectable interests in this action that would be adversely affected if Plaintiffs prevail. They accordingly move for

**MEMORANDUM DECISION AND ORDER - 16**

intervention as of right and permissive intervention.  Their interests – and relation to this case – are summarized here:

| **Proposed Defendant-Intervenor** | **Phase** | **Interests** |
|---|---|---|
| PPRR | Phase One – Footnote 6 | WYW-187312<br>Iberlin Well |
| PPRA | Phase Two | WYW-185804<br>WYW-185806<br>WYW-185831<br>WYW-185834<br>WYW-185859<br>WYW-185860<br>WYW-185902<br>Flatbow Well |
| Rebellion II and Seven Sisters[10] | Phase One – Footnote 6 | WYW-187442<br>WYW-187462<br>WYW-187454<br>WYW-187318<br>WYW-187308<br>WYW-187456<br>Iberlin Well |
| Rebellion II | Phase Two | Diablo Well<br>Coronado Well |
| Titan | Phase One – Footnote 6 | WYW-187305<br>WYW-187441 |
| | Phase Two | WYW-185796<br>WYW-185799<br>WYW-185829<br>WYW-185830<br>WYW-185833<br>WYW-185858<br>WYW-185874<br>WYW-185875<br>WYW-185876<br>WYW-185878<br>WYW-185879 |

---

[10]  Rebellion II is a privately held company based in Tulsa, Oklahoma.  *See* O'Quinn Decl., ¶ 1 (Dkt. 262-1).  Seven Sisters is a wholly owned subsidiary of Rebellion II.  *See id.*

**MEMORANDUM DECISION AND ORDER - 17**

| | | WYW-186303<br>WYW-186319<br>WYW-186324 |
|---|---|---|
| | Phase Three | WYW-186762<br>WYW-186764<br>WYW-186769<br>WYW-186770 |

*See* PPRR's Mem. ISO Mot. to Interv., p. 1 (Dkt. 253-1); PPRA's Mem. ISO Mot. to Interv., p. 1 (Dkt. 260-1); Rebellion II's & Seven Sisters' Mem. ISO Mot. to Interv., p. 1 (Dkt. 262-1); Titan's Mem. ISO Mot. to Interv., pp. 1-2 (Dkt. 270-1).  Again, Plaintiffs do not dispute that these parties claim protectable interests in this action, or that its disposition could impair/impede their ability to protect those interests.  *See generally* Pls.' Opp. to PPRR's, PPRA's, Rebellion II's & Seven Sisters', and Titan's Mots. to Interv. (Dkt. Nos. 275, 276, 277, 284).  Instead, as before, Plaintiffs generally argue that their motions are untimely and WEA already adequately represents their interests.  *See id.*[11]  This time, the Court disagrees (with some caveats).

To begin, there is no indication that PPRR, PPRA, Rebellion II, Seven Sisters, or Titan is a member of WEA.  If not a member of WEA, the facts distinguish these parties from AEC, Chesapeake, Vermillion, and Ballard (who are WEA members (*see supra*)).[12]  Hence, their circumstances may be different, and must be analyzed as such.  It may be true that the action itself is a bit aged, that much work has already been performed, and that each and every relevant

---

[11]   Plaintiffs also argue that, in some cases, relief under the Footnote 6 protocol is not available because either certain of the involved Phase One leases are not developed, or the stated interests do not implicate a Phase One lease sale.  The merits of these aspects of Plaintiffs' argument are not resolved here, but are nonetheless addressed as part of any limited intervention ultimately permitted.  *See infra*.

[12]   PPRR, PPRA, Rebellion II, Seven Sisters, and Titan are also not represented by Beatty & Wozniak, P.C. and do not have Ms. McLain as their local counsel; they are instead represented by Holland & Hart LLP.

**MEMORANDUM DECISION AND ORDER - 18**

leaseholder had reason to know of its interests in the case (constructive notice) since its start. But without membership in WEA, it is more difficult to say with certainty that WEA's actual participation in the case inures to the same degree to PPRR, PPRA, Rebellion II, Seven Sisters, and Titan as non-members – even if their interests can be said to exist within the same orbit.

This distinction applies as well to the efforts of these parties to intervene as to their Phase One leases subject to the Footnote 6 protocol.  Under any measure, it cannot be said that their Motions to Intervene are untimely, premised as they are upon this much later-in-time benchmark. Further, while WEA is capable of acting upon that piece of the Court's decision in seeking relief for any one or more of its members (including AEC, Chesapeake, Vermillion, and Ballard, as it has done for EOG Resources, Inc.), it cannot do so on behalf of non-members like PPRR, Rebellion II, Seven Sisters, and Titan.[13]

Accordingly, the Court will allow PPRR, Rebellion II, Seven Sisters, and Titan to intervene for the *sole and limited purpose* of seeking relief under the Footnote 6 protocol.  They are reminded that *any* party seeking to modify the suspended status of any applicable Phase One lease must include "information about the nature and need for such work to allow other parties to respond to the motion and for the Court to make an informed decision upon the request." 5/12/20 MDO, pp. 10-11, n. 6 (Dkt. 226).[14]  In addition to the obvious details, the moving party is advised to take into account Plaintiffs' arguments that relief is not possible, owing either to the

---

[13]  PPRA is not included in this grouping because it has not sought to intervene in relation to any impacted Phase One lease and, thus, the Footnote 6 protocol does not apply to it in this situation.  *See supra* (citing PPRA's Mem. ISO Mot. to Interv., p. 1 (Dkt. 260-1)).

[14]  WEA's Motion to Modify (on behalf of EOG Resources, Inc.) is an example of a request for such relief which includes such required details.  The nature of such details is intended not only to assist the Court in assessing the request, but also to allow for potential stipulated agreements upon such relief.  *See* 8/13/20 Order (Dkt. 285) (Court granting relief sought within WEA's Motion to Modify following parties' stipulation).

**MEMORANDUM DECISION AND ORDER - 19**

absence of a Phase One lease sale or to the undeveloped nature of certain Phase One leases, as necessary.[15, 16]

However, PPRA, Rebellion II, and Titan are not permitted to intervene as to Phase Two (and beyond) at this time.[17]  Even though they are not members in WEA, there is traction to Plaintiffs' argument that their objectives – upholding of the Phase Two lease sales on the merits and avoiding vacatur – parallel those of Federal Defendants and Defendant-Intervenors, such that their interests are already adequately represented (by WEA).  *See generally* Pls.' Opp. to PPRA's, Rebellion II's & Seven Sisters', and Titan's Mots. to Interv. (Dkt. Nos. 276, 277, 284). The Court also is mindful, however, that these parties (who, again, are not WEA members and are not represented by the same counsel) may not raise the same arguments to the Court.  Hence, as to Phase Two (and beyond), PPRA's, Rebellion II's, and Titan's Motions to Intervene are denied without prejudice to either of them moving for *limited* intervention later, focused on issues where they can persuade the Court against the legal standards for intervention that their

---

[15]  For example, Plaintiff argues that the Iberlin well is not located on a Phase One lease; PPRR's WYW-187312 "has not been developed"; "[n]one of [Rebellion II's] Phase One leases have been developed"; and "[n]one of Titan's Phase One leases have been developed."  *See* Pls.' Opp. to PPRR's Mot. to Interv., p. 2, n.1 (Dkt. 275); Pls.' Opp. to Rebellion II's & Seven Sisters' Mot. to Interv., pp. 2-3 (Dkt. 277); Pls.' Opp. to Titan's Mot. to Interv., p. 2 (Dkt. 284).

[16]  Several proposed Defendant-Intervenors' argue that "[t]he Court has not yet set a schedule or deadline for [Phase One, footnote 6-related] motions."  *E.g.*, Titan's Mem. ISO Mot. to Interv., p. 9 (Dkt. 253-1).  The Court does not intend to set a schedule for such motions; if a party believes that maintenance/repair work must be performed to preserve the status quo for suspended Phase One leases, it is up to that party to seek relief from the Court.

[17]  PPRR and Seven Sisters are not included in this grouping because they have not sought to intervene in relation to any impacted Phase Two lease.  *See supra* (citing PPRR's Mem. ISO Mot. to Interv., p. 1 (Dkt. 253-1); Rebellion II & Seven Sisters' Mem. ISO Mot. to Interv., p. 1 (Dkt. 262-1)).

**MEMORANDUM DECISION AND ORDER - 20**

interests have not, to that point, been adequately represented by the existing parties.  *See, e.g.*, Pls.' Opp. to Titan's Mot. to Interv., p. 8, n.2 (Dkt. 277).[18]

## <u>ORDER</u>

Based upon the foregoing, IT IS HEREBY ORDERED that:

1.  AEC's Motion to Intervene (Dkt. 198) is DENIED.

2.  Chesapeake's Motion to Intervene (Dkt. 232) is DENIED.

3.  Vermillion's Motion to Intervene as Defendant-Intervenor (Dkt. 240) is DENIED.

4.  Ballard's Motion to Intervene as Defendant-Intervenor (Dkt. 242) is DENIED.

5.  PPRR's Motion to Intervene (Dkt. 253) is GRANTED for the limited purpose of securing relief under the Footnote 6 protocol.

6.  PPRA's Motion to Intervene (Dkt. 260) is DENIED without prejudice to move for limited intervention at a later date as discussed herein.

7.  Rebellion II's and Seven Sisters' Motion to Intervene (Dkt. 262) is GRANTED in part, and DENIED in part, as follows:

a.  Rebellion II and Seven Sisters are permitted to intervene for the limited purpose of securing relief under the Footnote 6 protocol.  In this respect, their Motion is GRANTED.

---

[18] Any such limited requests to intervene shall be filed within seven days of the date of last-filed brief as between Federal Defendants and Defendant-Intervenors.  Said requests shall specifically identify the arguments not raised by Federal Defendants or Defendant-Intervenors and explain the need for such arguments' incorporation into the record beyond what already exists.  Oppositions are due 14 days thereafter, followed by replies in support of the underlying motion seven days after that.  In the event limited intervention is permitted, a briefing schedule will be provided to the parties (preferably with the assistance of the involved parties by stipulation).  Additionally, the parties are on notice that shortened page limits will likely apply given that the briefing associated with Phase Two is already expected to approach 250 pages (excluding declarations and exhibits).  *See* 5/19/20 Order (Dkt. 230).

**MEMORANDUM DECISION AND ORDER - 21**

b.      Rebellion II is not permitted to intervene at this time for the purposes of Phase 2.  In this respect, its Motion is DENIED without prejudice.  Rebellion II may move for limited intervention at a later date as discussed herein.

8.      Titan's Motion to Intervene (Dkt. 270) is GRANTED in part, and DENIED in part, as follows:

a.      Titan is permitted to intervene for the limited purpose of securing relief under the Footnote 6 protocol.  In this respect, its Motion is GRANTED.

b.      Titan is not permitted to intervene at this time for the purposes of Phase 2 (and beyond).  In this respect, its Motion is DENIED without prejudice.  Titan may move for limited intervention at a later date as discussed herein.

IT IS ALSO HEREBY ORDERED that, in light of this Memorandum Decision and Order and the relief contained herein, Amicus Applicants' Motion for Leave to File Amicus Curiae Brief of Moore Mineral Trust (Dkt. 287) is DENIED as moot and without prejudice.

DATED: August 17, 2020

_____

Ronald E. Bush
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 22**