Bret Sumner, *Pro Hac Vice*
bsumner@bwenergylaw.com
BEATTY & WOZNIAK, P.C.
1675 Broadway, Suite 600
Denver, CO 80202-5115
Telephone: 303-407-4499
Fax: 800-886-6566

Cherese D. McLain, ISB #7911
cdm@msbtlaw.com
MSBT LAW
7699 West Riverside Drive
Boise, ID 83702
Telephone: 208-331-1800
Fax: 208-331-1202

Attorneys for Defendant-Intervenor Western Energy Alliance

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **WESTERN WATERSHEDS PROJECT**, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>**DEBRA HAALAND,** Secretary of the Interior, *et al*.,<br><br>    Defendants,<br>and<br><br>**WESTERN ENERGY ALLIANCE**,<br><br>    Defendant-Intervenor. | Case No. 1:18-cv-00187-REP<br><br><br>**DEFENDANT-INTERVENOR WESTERN ENERGY ALLIANCE'S UNOPPOSED MOTION ON BEHALF OF ROCKIES RESOURCES, LLC FOR ORDER ENTERING STIPULATION TO MODIFY MEMORANDUM DECISION AND ORDER RE: DKT. 175, DKT. 176, DKT. 177, DKT. 181, DKT. 220 AND DKT.221 [DKT. 226]** |

Pursuant to L.R. Civ. 7.1, and the Court's notation in its May 12, 2020 Order Dkt. 226 Defendant-Intervenor Western Energy Alliance (Alliance), on behalf of member company Rockies Resources, LLC (Rockies), respectfully moves this Court to enter the attached stipulation to allow for production on the Midway and Boomerang Projects, because these projects are necessary to preserve the status quo pending appeal.

Counsel for Rockies has conferred with Counsel for Plaintiffs, the State of Wyoming, and Federal Defendants regarding the relief requested. Counsel for Plaintiffs and the State of Wyoming do not oppose the requested relief. Counsel for Federal Defendants takes no position on the requested relief.

I.      LEGAL BACKGROUND

On February 27, 2020, this Court granted Plaintiffs' Partial Motion for Summary Judgment and entered an order that, among other relief, "set aside" the challenged lease sales in Nevada, Wyoming, and Utah. Dkt. 174. On May 12, 2020, upon Motions from the Federal Defendants and Defendant-Intervenors State of Wyoming, and Western Energy Alliance, the Court granted a partial stay of its February 27, 2020 Order and ordered a suspension of operations and production of the Phase One leases pending the appeal. Dkt. 226.

Entry of the stipulation granting a stay pending appeal to allow for development of the Boomerang and Midway wells is necessary to preserve the status quo and to prevent irreparable harm to Rockies, the State of Wyoming, and the other interest owners in these wells. The harm to Rockies and other interest owners is real and immediate in terms of lost revenue. There is no evidence that Rockies' requested relief will cause any additional surface disturbance than is currently allowed, much less any harm to greater sage grouse or other resources. Thus, the Alliance respectfully requests this Court enter the requested stay.

II.     STANDARD FOR MOTION TO STAY

A stay of an order is "an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009). A party seeking a stay must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of relief, that the balance of equities tip in the party's favor, and that a stay is in the public interest. *Humane*

*Soc'y of the United States v. Gutierrez*, 558 F.3d 896, 896 (9th Cir. 2009). These elements are substantially similar to those governing the grant of a preliminary injunction because similar concerns arise in both situations. *Nken*, 556 U.S. at 434.

## III.    FACTUAL BACKGROUND

Rockies seeks relief related to two projects, for the purposes of this motion titled the "Midway Project" and the "Boomerang Project." Those two projects are explained in further detail below.

### A.    Request No. 1—Midway Project



Rockies seeks leave of court to perforate a portion of the WYW187293 lease currently stayed by the Court pending appeal. BLM has already granted an APD for two wells from a single pad. Ex. 1, Martin Decl. ¶ 5.

The westernmost well in this project, the "LaBelle 1TH," is permitted to be drilled outside of any leases impacted by the Court's order, and is not the subject of the current request.

*Id.* Rockies can also drill the "Midway 1TH", the easternmost well, without Court approval, pictured on the above map as "Midway 1TH Current". However, it seeks approval of the Court to drill this well in the most efficient location from a geological perspective, which requires perforating a portion of the WYW187293 lease currently subject to the stay to allow for optimal inter-well density. Martin Decl. ¶ 6.

In short, from a geological perspective, Rockies can more efficiently develop the entire DSU by altering its drilling plan to move its currently-planned Midway 1TH lateral approximately 800' to the east of its current planned track, and extending it 1,320' North. This is pictured above as the "Proposed" Midway 1TH. As explained above, this move would perforate approximately 5,200 feet of WYW187293, which is currently the subject of the Phase I orders. *Id.*

Rockies will construct the pad location and drill these two wells from this pad regardless of the outcome of any motion, but granting Rockies' motion to allow limited development of the WYW187293 lease will allow for maximum resource development of the various impacted private and federal minerals with minimal impact to the surface of this lease through planned development and use of long laterals.

The planned pad location for these two wells is on fee surface and is 3.25 miles from the nearest core habitat, and 3.75 miles from the nearest known sage grouse lek. Martin Decl. ¶ 8. The proposed Midway/LaBelle well pad is located on private surface and adjacent to existing development, including an improved and maintained Campbell County Road, and between a power transmission line and playa. *Id*. Thus, the pad location is not ideal habitat for GrSG and thus unlikely to serve as habitat for the GrSG whether or not the request is granted.

The drilling and spacing unit (DSU) is approximately 28% fee, or privately-owned minerals and 72% federal minerals. Martin Decl. ¶ 9. The private mineral owners within the unit have real property and financial interest in the requested relief, as the inability to efficiently develop the entirety of the drilling and spacing unit, or doing so at an increased cost, can significantly decrease the value of those private mineral interests.  Ex. 2, G. Hays Decl. ¶ 3; Ex. 3, T. Hays Decl. ¶ 3; Ex. 4, P. Hopkins Decl. ¶ 3; Ex. 5, M. Keeline Decl. ¶ 3, Ex. 6, S. Keeline Decl. ¶ 3, Ex. 7, T. Newman Decl. ¶ 3, Ex. 8, J. Patton Decl. ¶ 3. Rockies alone has invested $750,000 in the leasehold and in permitting costs to date in the two spacing units. Martin Decl. ¶ 10. If Rockies is not granted the requested relief, it risks stranding a substantial portion of the minerals inside the DSU, which will cause Rockies irreparable harm as a result of lost revenue, increased costs to permit and drill the well if and when the lease is available for drilling (at which time there will be further surface impacts). Martin Decl. ¶ 11. It will also suffer harm due to impairment of relationships with its funders as well as the impacted surface and mineral owners in the DSU due to the decreased revenue. *Id.*

B.      Request No. 2—Boomerang



BLM already approved the drilling of two wells on a single, proposed well pad prior to this Court's Phase I ruling, the Boomerang 4470-0409-1TH (Boomerang 1TH) and the Boomerang 4470-0409-2TH (Boomerang 2TH). Martin Decl. ¶ 12. As currently planned, the west side Boomerang 2TH well can be drilled with no impacts to any stayed leases. However, the Boomerang 1TH, eastern well will penetrate a small portion of lease WYW187289 and thus, cannot be presently drilled pursuant to the Court's order and existing permits. Martin Decl. ¶ 14.

Currently, Rockies is prepared to develop the Boomerang 1TH well via directional drilling around the impacted federal lease, however, it seeks relief from this Court to allow it to perforate this lease and drill the well on the originally planned track, crossing a very small portion of the stayed lease at a lower cost. Martin Decl. ¶ 15.

The proposed pad is located off-lease on fee surface over fee minerals outside of priority greater sage grouse habitat, and approximately 800 feet away from an improved and maintained Campbell County Road. Martin Decl. ¶ 16. The proposed pad is 2.3 miles from the nearest sage grouse core lands, and 2.1 miles from the nearest lek. *Id.* The drilling and spacing unit is approximately 62% federal and 38% fee. Martin Decl. ¶ 17. The private mineral owners within the unit have real property and financial interest in the requested relief, as the inability to efficiently develop the entirety of the drilling and spacing unit, or doing so at an increased cost, can significantly decrease the value of those private mineral interests. *See* Ex. 9, T. Cornell Decl. ¶ 3, Ex. 10, T. Hays Decl. 3, Ex. 11, G. Hays Decl. 3, Ex. 12, M. Henderson Decl. ¶ 3, Ex. 13, B. Mitchell Decl. ¶ 3; Ex. 14, L. Mitchell Decl. ¶ 3, Ex. 15, J. Patton Decl. ¶ 3.  Rockies intends to drill these two wells (and potentially others from this pad) by avoiding the lease if the motion is not granted.

Therefore, Rockies intends to seek relief from the Court to allow limited development of lease WYW187289 as previously permitted.

IV.    THIS COURT SHOULD GRANT ROCKIES' REQUEST

The Court should grant the Alliance's Motion because the Alliance satisfies the substantive requirements for a stay pending appeal. Because the Court has already found Federal Defendants and Defendant-Intervenors have met the standard for likelihood of success on the merits, Alliance will focus solely on the considerations the Court outlined in its May 12, 2020 Order, namely the necessity of preserving the status quo and the nature and need for such work. Dkt. 226 at 10-12 n. 6.

A.    **Necessity of Allowing Continued Production to Preserve the Status Quo**

As evidenced by the accompanying declarations, Rockies will suffer irreparable harm if the Court does not grant this Motion, including lost revenue, increased costs of unnecessary

7

development to avoid the challenged leases, stranded oil and gas, and harm to Rockies'
relationship with its funders, surface owners, and other mineral interest owners with an interest
in these wells. *See* Martin Decl. ¶ 18. As the Court acknowledged, "economic impacts are a
worthy consideration with respect to the disruptive consequences of vacatur." Order at 58, citing
*Cal. Cmtys. Against Toxics v. United States EPA*, 688 F.3d 989, 994 (9th Cir. 2012). In addition,
a remedy's potential to cause private and governmental "financial harm can be weighed against
environmental harm—and in certain circumstances outweigh it." *Sierra Club, Inc. v. Bostick*,
539 F. App'x 885, 892 (10th Cir. 2013); *see also Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S.
531, 545 (1987). Imposing the drastic substantive remedy of requiring that Rockies expend
additional funds to route development around the challenged leases, or strand assets in less-than-
ideal geological recovery plans, for at most a discrete procedural violation under the APA is
contrary to legal precedent and imposes severe harm upon the companies holding the leases, and
their employees.

In addition, development of these wells is not likely to cause any additional
environmental impacts nor any harm to GrSG. Under currently-approved APDs, Rockies can
develop both of these projects by developing the wells in an alternative location at an additional
cost with, likely, a less geologically-efficient drainage.

1. **Monetary Harm**

Rockies has a specific economic and real property interests in the affected leases. Martin
Decl. ¶¶ 10, 18. These irreparable losses are not limited to Rockies, purchaser of the relevant
leases and operator of the wells. Often, to develop a federal oil and gas lease, companies must
meet their relevant state's minimum acreage requirements for the drilling oil or natural gas wells.
*See, e.g.* Wyo. Stat. Ann. § 30-5-109(b). The Mineral Leasing Act allows companies to join their
federal lessees with other leases to establish drilling and spacing units that must conform to state

well spacing patterns, i.e. drilling blocks of 1200 acres. Once joined, BLM must approve a "communitization agreement," which combines small tracts, of which at least one is a federal parcel, into a large enough unit to comply with the required spacing under state laws. 30 U.S.C. § 226(m); 43 C.F.R. § 3217.11. Thus, decreasing the amount of oil and gas recovered, or increasing the costs of development, has real impacts on the private surface owners within these units. *See, e.g.* Exs. 2-14.

Environmental harm is also likely if relief is not granted, particularly as to the Midway Project. The currently-planned Midway well will not most-efficiently develop the federal minerals, meaning that such minerals will either be stranded, or be drilled using additional wells at some future point in time. Future development could result in additional surface disturbance that would not be necessary if the current request is granted. Granting the requested relief will allow Rockies to efficiently develop the entire spacing unit at minimal surface disturbance and cost thereby minimizing surface disturbance and impacts to Greater Sage Grouse (GrSG) habitat consistent with state and federal protection plans.

B.   **The Nature of Continued Production Will Not Cause Additional Harm**

Nor is there any evidence of "harm" that would result to the public or any party if the Court grants the requested relief. The Administrative Record shows that BLM issued these leases with all of the protections required under the 2015 GrSG Plan Amendments issued by. *See e.g.* September 2018 WY Part Two Lease Sale EA at WY018983 (noting that all leases would apply lease stipulations as required by appropriate RMPs, including the 2015 GrSG ARMPs); WY018943-44, showing stipulations and codes applied to each lease parcel.

In addition, Rockies can develop the planned pads and drill at least one well from each pad without any Court relief. The other two planned wells can be drilled in some capacity under the status quo, albeit at additional expense to Rockies.

Further, under the stipulation, Rockies has agreed to suspend any proceeds attributable to portions of any impacted lease that is perforated by the planned wells to preserve the status quo pending appeal. Thus, the balance of harms weighs in favor of granting a stay.

C. **Issuance of the Stay is in the Public Interest**

Finally, it is in the public interest that federal oil and gas leasing development continue consistent with the stipulations under which the parcels were offered pending appellate review. Rockies and the other interest owners in the DSUs rely on regulatory certainty when allocating millions of dollars to evaluate and develop prospective leases. Allowing for efficient development with minimal environmental impact is in the public's best interest. As no additional harm will occur from preserving the status quo and allowing the planned development pending appellate review, the public interest favors granting the Stay.

V.      CONCLUSION

For the reasons outlined above, Alliance respectfully requests that the Court grant its unopposed motion to modify the stay order pursuant to the attached Stipulation pending appeal to the Ninth Circuit.

Respectfully submitted this 6th day of January, 2022.

*/s/ Malinda Morain*
Bret Sumner, *Pro Hac Vice*
bsumner@bwenergylaw.com
Malinda Morain, *Pro Hac Vice*
mmorain@bwenergylaw.com
BEATTY & WOZNIAK, P.C.
1675 Broadway, Suite 600
Denver, CO 80202
Telephone: 303-407-4499
Fax: 800-886-6566

Cherese D. McLain
cdm@msbtlaw.com
MSBT LAW
7699 West Riverside Drive

Boise, ID 83714
Telephone: 208-331-1800
Fax: 208-331-1202
*Attorneys for Defendant-Intervenor Western*
*Energy Alliance*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 6th day of January, 2022, I served a true and correct copy of the foregoing **DEFENDANT-INTERVENOR WESTERN ENERGY ALLIANCE'S UNOPPOSED MOTION ON BEHALF OF ROCKIES RESOURCES, LLC FOR ORDER ENTERING STIPULATION TO MODIFY MEMORANDUM DECISION AND ORDER RE: DKT. 175, DKT. 176, DKT. 177, DKT. 181, DKT. 220 AND DKT.221 [DKT. 226]** via the Court's electronic case filing system which will cause the foregoing to be served upon all counsel of record.

*/s/ Malinda Morain*
Malinda Morain