# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, *et al.*, | Case No.: 1:18-cv-00187-REP |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER RE: VENUE** |
| vs. | |
| DOUGLAS BURGUM, Secretary of the Interior, *et al.*, | |
| Defendants, | |
| and | |
| STATE OF WYOMING, *et al.,* | |
| Defendant-Intervenors. | |

Pending before the Court are cross-motions for partial summary judgment that present a threshold question of venue. *See* Fed. Defs.' MPSJ (Dkt. 378); Wyo.'s MPSJ (Dkt. 380); WEA's MPSJ (Dkt. 383). The Court heard oral argument on this discrete issue on November 20, 2025. For the reasons set forth below, the Court concludes that (i) Federal Defendants and Defendant-Intervenors have not waived their challenges to venue; (ii) venue is not proper in this District because the action involves real property within the meaning of 28 U.S.C. § 1391(e)(1)(C); and (iii) pendent venue is not applicable under the facts of the case. Accordingly, Phase III of this action is transferred to the federal district courts in which the subject property interests are located – the Districts of Utah, Montana, and Wyoming.

## I. BACKGROUND

This action challenges a series of decisions by Defendants – then-Interior Secretary David Bernhardt and others – to promote and expedite oil and gas leasing on public lands within the range of the greater sage-grouse. Due to the magnitude and scope of this action, the case was

organized to be litigated in phases, with each phase addressing a subset of the federal oil and gas lease sales being challenged.

Phase I dealt specifically with Instruction Memorandum ("IM") 2018-034 and a subset of five oil and gas leases in greater sage-grouse habitat that applied IM 2018-034.  On February 27, 2020, the Court granted partial summary judgment for Plaintiffs, vacating the challenged provisions of IM 2018-034 and the five lease sales.  *See* 2/27/20 MDO (Dkt. 174).  That decision was appealed.  On January 17, 2025, the Ninth Circuit affirmed the partial grant of summary judgment, reversing only as to aspects of the remedy.  *See Montana Wildlife Fed., et al. v. Haaland, et al.*, 127 F.4th 1 (9th Cir. 2025).  The mandate issued on June 5, 2025.

Phase II addressed four additional oil and gas lease sales.  On June 9, 2021, the Court again granted partial summary judgment for Plaintiffs.  *See* 6/9/21 MDO (Dkt. 389).  It remanded rather than vacate the lease sales.  *Id.*  Initially, Defendants appealed that decision.  But later, the parties agreed to hold the Phase II appeals in abeyance pending the Ninth Circuit's resolution of the Phase I appeals.  *See* Pls.' Mot. to Lift Stay at 8 (Dkt. 522).  Eventually, Defendants voluntarily dismissed their Phase II Appeals on September 22, 2025.

This complex backdrop sets the stage for Phase III.  Phase III involves a challenge to three additional oil and gas lease sales: the September 2017 Utah lease sale, February 2019 Wyoming lease sale, and March 2019 Montana lease sale.  Relevant here, in their cross-motions for partial summary judgment on Phase III, Federal Defendants and Defendant-Intervenors, the State of Wyoming and Western Energy Alliance ("WEA"), challenged venue in this District primarily because all of the subject leases were outside of Idaho and the action involved real property.  *See* Fed. Defs.' Mem. ISO MPSJ at 12-16 (Dkt. 378-1); Wyo.'s Mem. ISO MPSJ at 11 (Dkt. 380-2); WEA's Mem. ISO MPSJ at 7-8 (Dkt. 383-1).  Plaintiffs disagreed, countering that (i) Defendants waived any improper venue defense over the course of the preceding two phases,

**MEMORANDUM DECISION AND ORDER RE: VENUE - 2**

(ii) venue is proper under 28 U.S.C. § 1391(e)(1)(C), and (iii) the Court may exercise pendent venue in any event. *See* Pls.' Resp./Reply at 8-13 (Dkt. 386).

On September 22, 2021, the Court heard oral argument on the Phase III cross-motions for partial summary judgment. However, the Court stayed a decision pending the Ninth Circuit's resolution of the then-pending Phase I appeals given possibly-overlapping issues, including venue. *See* Order at 4-5 (Dkt. 429).[1] Following the Ninth Circuit's resolution of the Phase I appeals in January 2025, on February 6, 2025, Plaintiffs moved to lift the stay and proceed with Phase III. *See* Pls.' Mot. to Lift Stay (Dkt. 522).

Defendants responded that lifting the stay was premature. They argued that a mandate had not yet issued for the Phase I appeals and that the Phase II appeals – with some resemblances to Phase III – were ongoing at the Ninth Circuit. *See, e.g.*, Fed. Defs.' Resp. to Mot. to Lift Stay at 5-6 (Dkt. 526). They also requested that, if the Court lifted the stay, the parties be allowed to supplement their existing Phase III briefing to address legal and factual developments since the stay was entered in 2021. *See id*. at 6-7. The Court did not formally lift the stay. But in June 2025, once the mandate issued for the Phase I appeals, the Court requested supplemental briefing from the parties "as to possible threshold venue issues that remain unresolved after the Phase I appeals." Req. for Supp. Briefing (Dkt. 542).

The parties filed supplemental briefing and the Court heard oral argument on the issue of venue on November 20, 2025. This Memorandum Decision and Order confronts that specific issue, presented in the context of the parties' updated cross-motions for partial summary judgment on Phase III.

---

[1] This case was reassigned to the undersigned from Ronald E. Bush on June 11, 2021, following Judge Bush's retirement. *See* Reassign. DEO (Dkt. 390). Judge Bush presided over Phases I and II; the undersigned did not.

**MEMORANDUM DECISION AND ORDER RE: VENUE - 3**

## II.  <u>WAIVER</u>

The Court first addresses Plaintiffs' threshold argument that Defendants waived any improper venue defense.  *See* Pls.' Resp./Reply at 4-8 (Dkt. 386); Pls.' Supp. Br. on Venue at 7-10 (Dkt. 548); Pls.' Resp. to Defs.' Supp. Br. on Venue at 5-14 (Dkt. 558).  For the reasons set forth below, the Court finds that Defendants did not.

### A.    Legal Standards

Venue concerns the proper choice of court and is non-jurisdictional.  *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014).  Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, improper venue is one of six "negative defenses" a defendant may raise.  *See* Fed. R. Civ. P. 12(b).[2]  Rule 12(b) – entitled "How to Present Defenses" – provides:

> Every defense to a claim for relief in any pleading *must* be asserted in the responsive pleading if one is required. But a party *may* assert the following defenses by motion:
>
>  (1)    lack of subject-matter jurisdiction;
>
>  (2)    lack of personal jurisdiction;
>
>  (3)     *improper venue*;
>
>  (4)     insufficient process;
>
>  (5)    insufficient service of process;
>
>  (6)    failure to state a claim upon which relief can be granted; and
>
>  (7)    failure to join a party under Rule 19.
>
> A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.  If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim.  No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

---

[2]  Improper venue is not designated as an "affirmative defense" under Rule 8(c).  *See* Fed. R. Civ. P. 8(c).

**MEMORANDUM DECISION AND ORDER RE: VENUE - 4**

*Id.* (emphasis added).  Thus, Rule 12(b)(3) requires that a party "must" raise an improper venue defense in a responsive pleading – typically, an answer – if one is required, and otherwise "may" raise an improper venue defense in a pre-answer Rule 12 motion.

Rule 12(h) – entitled "Waiving and Preserving Certain Defenses" – identifies the circumstances under which negative defenses, including improper venue, are waived.  *See* Fed. R. Civ. P. 12(h).  Rule 12(h)(1) provides:

> A party waives any defense listed in Rule 12(b)(2)-(5) by:
>
> (A)    omitting it from a motion in the circumstances described in Rule 12(g)(2);[3] or
>
> (B)    failing to either:
>
>> (i)    make it by motion under this rule; or
>>
>> (ii)    include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

*Id.*  Thus, under Rule 12(h)(1)(B), a party waives an improper venue defense if it fails to raise it either (i) in a pre-answer Rule 12 motion, or (ii) in a responsive pleading.  *See generally Albino*, 747 F.3d at 1170 (venue is a waivable defect).

Conversely, to preserve an improper venue defense, a defendant need only "simply invoke[e] this defense" in its first defensive move – that is, either in a pre-answer Rule 12 motion *or* in a responsive pleading.  *See Argonaut Ins. Co. v. St. Francis Med. Ctr.*, 17 F.4th 1276, 1281 (9th Cir. 2021) ("The Rules do not require that threshold defenses always be pled by motion. Rather, Rules 12(b) and 12(h) provide that a defendant must assert its defense, absent a pre-

---

3  Rule 12(g)(2) addresses successive motions.  Entitled "Limitation on Further Motions," it provides: "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that *was available* to the party but omitted from its earlier motion."  Fed. R. Civ. P. 12(g)(2) (emphasis added).  Thus, it prohibits raising a negative defense in a successive Rule 12 motion – including improper venue – if that defense was "available" when an earlier Rule 12 motion was filed

answer motion, in a responsive pleading if one is required and that it may choose to assert a defense by answer without risking forfeiture of that defense."). Invoking the defense by either of these two mechanisms provides a plaintiff with "fair notice" that the defense will be raised. *Rosen v. Masterpiece Mktg. Grp., LLC*, 222 F. Supp. 3d 793, 803 (C.D. Cal. 2016); *see also Ear v. Empire Collection Auths., Inc.*, 2012 WL 3249514, at *2 (N.D. Cal. 2012) ("[T]he only allegation material to a Rule 12(h)(1) defense is that the defense exists, so simply invoking the defense as set forth in Rule 12(b) gives a plaintiff all the notice [it] needs.").

In addition to providing fair notice, requiring a defendant to assert an improper venue defense in its first defensive move conserves judicial resources. It "avoids the waste of judicial effort that would result if such defenses were allowed at later stages of the proceedings." Stevenson & Fitzgerald, *Rutter Group Prac. Guide: Federal Civ. Pro. Before Trial* § 9.27 (The Rutter Group 2025); *see also Lucas v. Natoli*, 891 F.2d 295 (9th Cir. 1989) ("The purpose of Rule 12(h)(1) is to force litigants to challenge [the Rule 12(b)(2)-(5) defenses] at the earliest possible time and not file a series of delaying Rule 12(b) motions.").

Even if a party timely raises improper venue in a pre-answer Rule 12 motion or responsive pleading, it still may waive the defense through its subsequent litigation conduct. Though "Rule 12(h)(1) specifies the minimum steps that a party must take in order to preserve a defense," it does not follow "that a party's failure to satisfy those minimum steps constitutes the only circumstances under which a party will be deemed to have waived a defense." *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1318 (9th Cir. 1998); *see also Rutter Group Prac. Guide: Federal Civ. Pro. Before Trial* at § 9.33 ("Rule 12(h)(1) merely sets out the 'outer limit' of waiver."). Most courts hold that these defenses may also be waived by conduct that "constitutes a tacit admission on the part of the movant that the court has personal jurisdiction, that venue is properly laid there, and that the court should dispose of the case on its merit." *Misch on Behalf*

of Estate of Misch v. Zee Enter. Inc., 879 F.2d 628, 631-32 (9th Cir. 1989); see also Wordtech

Sys. Inc. v. Integrated Network Sols., Corp., 2014 WL 2987662, at *3 (E.D. Cal. 2014)

("[M]erely filing an initial venue objection does not preclude subsequent waiver of the

objection.").  For example, "a party can be held to have waived a defense listed in Rule 12(h)(1)

through conduct, such as extensive participation in the discovery process or other aspects of the

litigation of the case even if the literal requirements of Rule 12(h)(1) have been met."  5C Wright

& Miller Federal Practice and Procedure Civil 3d § 1391; see also Peterson 140 F.3d at 1318

(holding that a court can find a defendant has waived a defense listed in Rule 12(h)(1) if its

litigation conduct amounts to "deliberate, strategic behavior" or "sandbagging" designed to seek

affirmative substantive relief from the court only to take shelter later in the protection of a

threshold defense).

**B.      Defendants Did Not Waive the Defense of Improper Venue**

Defendants' Phase III briefing challenges venue in this District.  See, e.g., Fed. Defs.'

Mem. ISO MPSJ at 12-13 (Dkt. 378-1) ("Plaintiffs' claims should be dismissed for improper

venue . . . .  Venue is not proper in this district for challenges to the leasing decisions at issue

because all of the challenges pertain to public lands located outside of this district."); Wyo.'s

Mem. ISO MPSJ at 11 (Dkt. 380-2); WEA's Mem. ISO MPSJ at 7-8 (Dkt. 383-1).  Perhaps

anticipating a waiver argument from Plaintiffs, Federal Defendants initially state that they

"appropriately preserved their defense of improper venue" because they denied Plaintiffs' venue

allegations in their responsive pleadings consistent with Rule 12(h)(1).  See id. at 13 n.4.

Plaintiffs disagree.  They argue that Defendants have waived the defense of improper

venue for several reasons.  First, they emphasize that Defendants' initial defensive move in

response to their original Complaint – which challenged the 2017 Utah lease sale – was a

discretionary motion to sever and transfer under 28 U.S.C. § 1404(a), not a Rule 12(b)(3) motion

**MEMORANDUM DECISION AND ORDER RE: VENUE - 7**

asserting improper venue.  *See* Pls.' Resp./Reply at 4-5 (Dkt. 386).[4]  By seeking discretionary

transfer, while omitting any claim that venue was improper therein, they say, Defendants

necessarily conceded that venue was proper from the beginning.  *Id*. at 5.  Second, Plaintiffs note

that Defendants' Answers to the original Complaint did not assert improper venue as an

*affirmative defense* and that later amendments to the pleadings (like the Second Amended

Complaint which challenged the February 2019 Wyoming and March 2019 Montana lease sales)

cannot revive a venue defense already waived as to the 2017 Utah lease sale.  *Id*. at 5-6.  Third,

Plaintiffs point out that Defendants' Rule 12 motions, directed at the First Amended Complaint,

challenged venue only with respect to the Normally Pressured Lance Natural Gas Development

Project ("NPL Project") claim, not any of the lease sale claims.  This, Plaintiffs say, further

cements Defendants' waiver under Rules 12(h)(1)(A) and 12(g)(2).  *Id*. at 6.  Finally, Plaintiffs

stress the significant duration of this litigation and Defendants' inaction over its span.  *Id*. at 6-8.

They argue that, until now, Defendants litigated the merits without pressing a venue defense,

demonstrating that venue in this District has been accepted since the beginning and,

consequently, waived.  *Id*.[5]

The Court has considered each of Plaintiffs' waiver arguments.  While they raise

substantial points regarding the timing and manner in which Defendants asserted their venue

---

[4]  While the 2017 Utah lease sale was included in Plaintiffs' original Complaint in 2018, the February 2019 Wyoming and March 2019 Montana lease sales logically were not.  *See* Compl. (Dkt. 1).  Those other lease sales were challenged within Plaintiffs' Second Amended Complaint in 2019.  *See* Second Am. Compl. (Dkt. 165).

[5]  Plaintiffs' supplemental briefing advances the same waiver arguments, while adding that the Ninth Circuit's intervening Phase I appeals decision – issued after the Phase III cross-motions for partial summary judgment were fully briefed – confirmed that no Rule 12(b)(3) motion was ever made or denied with respect to Phase I, reinforcing Plaintiffs' position that the improper venue defense was never preserved.  *See* Pls.' Supp. Br. on Venue at 7-9 (Dkt. 548); Pls.' Resp. to Defs.' Supp. Br. on Venue at 5-8 (Dkt. 558).

**MEMORANDUM DECISION AND ORDER RE: VENUE - 8**

objections, the Court is ultimately unpersuaded that Defendants waived the defense of improper

venue under the circumstances presented here.

    1.    <u>Defendants' Earlier Motion to Sever and Transfer Did Not Effect Waiver</u>

Plaintiffs contend that Defendants waived any objection to venue by electing to file a

discretionary motion to sever and transfer under 28 U.S.C. § 1404(a) rather than a motion to

dismiss or transfer for improper venue under Rule 12(b)(3). *See* Pls.' Resp./Reply at 4-5 (Dkt.

386) (citing cases holding that a discretionary transfer motion based on convenience rather than

improper venue amounts waiver of improper venue defense). According to Plaintiffs, that

strategic choice amounted to a concession that venue in this District was proper. *Id*. The Court

is not persuaded.

As an initial matter, Plaintiffs' argument pertains only to the 2017 Utah lease sale. That

is because – of the Phase III lease sales at issue here – only the 2017 Utah lease sale was

challenged in Plaintiffs' original Complaint. *See* Compl. at ¶¶ 186-198 (Dkt. 1). Defendants'

motion to sever and transfer followed that original Complaint. *See* Defs.' Mtn. to Sever and

Transfer (Dkt. 12). Plaintiffs did not challenge the other two lease sales at issue here – the

February 2019 Wyoming and March 2019 Montana leases – until its Second Amended

Complaint over a year later. *See* Second Am. Compl. at ¶¶ 274-283 (Dkt. 165) (Wyoming

lease); ¶¶ 264-273 (Montana lease). Accordingly, Plaintiffs do not seriously contend that

Defendants waived venue as to the 2019 Wyoming and Montana lease sales by virtue of its

earlier motion to sever and transfer. *But see infra* (discussing Plaintiffs' waiver by litigation

conduct argument). So, this is the posture in which the Court considers waiver now.

Turning to the 2017 Utah lease sale, Defendant-Intervenor WEA raised an improper

venue defense thereto at its first defensive opportunity. Specifically, Defendant-Intervenor WEA

expressly objected to venue in this District as part of its Motion to Intervene (filed while Federal

**MEMORANDUM DECISION AND ORDER RE: VENUE - 9**

Defendants' motion to sever and transfer, *supra,* was pending).  *See* WEA Mtn. to Intervene (Dkt. 20).  Appended to its motion, WEA included a proposed Answer wherein it stated: "Alliance denies venue is proper."  *See* Dkt. 20-3 at ¶ 17.  The day after it was permitted to intervene, WEA again objected to venue in its proposed sur-reply to the pending motion to sever and transfer.  *See* WEA's Sur-Reply at 2-3 (Dkt. 59-1) ("The oil and gas lease sales at issue unquestionably involve real property interests under the venue statute . . . .  Thus, the leases at issue do constitute 'real property rights' pursuant to 28 U.S.C. §1391(e) and venue is improper in this Court.").  That objection was raised at the first meaningful opportunity available to WEA and placed Plaintiffs on clear notice that venue was disputed.  This is therefore not a case in which all Defendants at the time proceeded in silence or treated venue in Idaho as settled.

Nor was the venue objection merely theoretical.  After permitting WEA's sur-reply, Judge Bush considered its improper venue argument in denying the motion to sever and transfer.  Although the motion itself sought discretionary relief, the Court's order confronted – and rejected – WEA's contention that venue was improper because real property was involved.  *See* 9/4/18 MDO at 10 n.7 (Dkt. 66) ("To the extent Federal Defendants argue that real property is involved given the very nature of oil and gas leases generally, *Salazar* holds otherwise.") (citing WEA's Sur-Reply at 2-3 (Dkt. 59-1)).  That Judge Bush addressed the propriety of venue confirms that the issue was raised upfront, rather than waived or forfeited.[6]  The fact that

---

[6]  Following the September 2021 hearing on Phase III, the Court requested additional briefing on whether the law-of-the-case doctrine applied to Judge Bush's prior rulings.  *See* Request (Dkt. 421).  After considering the parties' submissions, the Court agreed that, despite a preference for consistency, Judge Bush's previous rulings were not binding under the law-of-the-case doctrine.  *See* 12/3/21 Order at 2 (Dkt. 429).

**MEMORANDUM DECISION AND ORDER RE: VENUE - 10**

Defendants did not prevail on that argument does not transform their position into a waiver; losing a venue argument is not the same as relinquishing it.[7]

In addition, both Federal Defendants and WEA (before and after being permitted to intervene) objected to venue in their Answers to Plaintiffs' original Complaint. *See* Fed. Defs.' Ans. at ¶ 17 (Dkt. 76) (denying Plaintiffs' allegation that "[v]enue is proper in this Court under 28 U.S.C. § 1391(e)"); WEA's Ans. at ¶ 17 (Dkt. 72) ("[T]he Alliance denies venue is proper."). Alongside a pre-answer motion, Rule 12 permits preservation of an improper venue defense in a responsive pleading, and Defendants availed themselves of that mechanism. *See supra* (Rule 12(h)(1)(B) preserves an improper venue defense either by filing a Rule 12(b) motion or including it in a responsive pleading); *but see infra* (Plaintiffs challenging the sufficiency of Federal Defendants' and WEA's responsive pleadings). These pleadings put Plaintiffs on notice that, even after Judge Bush denied transfer, venue was being challenged. This further undermines Plaintiffs' claim that Defendants' litigation conduct reflected acceptance of venue in this District. From the outset, Federal Defendants and WEA maintained that Idaho was not the proper forum for claims challenging oil and gas lease sales occurring elsewhere.

Taken together, these circumstances do not support a finding that Defendants' pre-answer motion to sever and transfer effected a waiver of an improper venue defense. Venue has been contested throughout the litigation, the issue was raised in the pleadings and briefings, and the

---

[7] The Ninth Circuit's merits ruling on the Phase I appeals does not alter the waiver analysis, except to confirm that Defendants never moved to dismiss for improper venue and that pendent jurisdiction therefore did not extend to Judge Bush's transfer order. *See Montana Wildlife Fed.*, 127 F.4th at 32-33 (describing the transfer order as not "inextricably intertwined" with the appealed Phase I decision). The Ninth Circuit thus did not reach the venue or waiver issues presented here. It nonetheless acknowledged that WEA had objected to venue in Idaho, that Judge Bush rejected that objection, and that "district courts may, and often do, reconsider earlier rulings as litigation proceeds." *Id*. at 33.

**MEMORANDUM DECISION AND ORDER RE: VENUE - 11**

parties obtained an early ruling from Judge Bush on the question.  Plaintiffs were therefore on notice that venue was disputed and cannot plausibly claim otherwise.

       2.    <u>Federal Defendants and WEA Sufficiently Objected to Venue</u>

Plaintiffs next argue that Defendants waived any objection to venue by failing to list improper venue as an affirmative defense in their Answers, rather than by merely denying venue allegations therein.  *See* Pls.' Resp./Reply at 5-6 (Dkt. 386) (citing cases holding that mere denial of venue allegations is insufficient to raise improper venue defense); Pls.' Resp. to Defs.' Supp. Br. on Venue at 6 (Dkt. 558) ("BLM, WEA, and Wyoming did not assert improper venue as an affirmative defense in their Answers to Plaintiffs' original Complaint, in which [the 2017 Utah lease sale] was first challenged.  That forever waived the defense under Fed. R. Civ. P. 12(h)(1).").  The Court disagrees with that rigid view of the pleading rules.

As before, this argument is unique to the 2017 Utah lease sale because (i) Plaintiffs did not challenge the February 2019 Wyoming and March 2019 Montana in the original Complaint, and (ii) Defendants timely objected to venue for these leases in their Answers to the Second Amended Complaint.  When stipulating to permit that amendment, Defendants and Defendant-Intervenors explicitly reserved venue objections as to the February 2019 Wyoming and March 2019 Montana lease sales "on the grounds that venue is improper for those claims in the District of Idaho, and that the claims should be transferred to district courts in Montana and Wyoming respectively."  Stip. to File Second Am. Compl. (Dkt. 164).  Consistent with that reservation, Federal Defendants and Defendant-Intervenors Wyoming and WEA denied Plaintiffs' venue allegations and asserted improper venue as an affirmative defense in their Answers to the Second Amended Complaint.  *See* Fed. Defs.' Ans. to Second Am. Compl. at ¶ 18 and Aff. Def. No. 7 (Dkt. 168); Wyo.'s Ans. to Second Am. Compl. at ¶ 2 and Aff. Def. No. 2 (Dkt. 169); WEA's Ans. to Second Am. Compl. at ¶ 18 and Aff. Def. No. 10 (Dkt. 170).  Then, Defendants raised

venue objections as to those later-added lease sales in their first defensive pleading, namely their Phase III partial summary judgment briefing.  *See* Fed. Defs.' MPSJ (Dkt. 378); Wyo.'s MPSJ (Dkt. 380); WEA's MPSJ (Dkt. 383).

The 2017 Utah lease sale is different.  As discussed above, Federal Defendants and WEA denied Plaintiffs' venue allegations in their Answers to Plaintiffs' original Complaint.  *See supra*.  But Defendants did not characterize improper venue as an "affirmative defense."  Plaintiffs say this effected waiver.  *See* Pls.' Resp. to Defs.' Supp. Br. on Venue at 6 (Dkt. 558).  The Court again disagrees.

Improper venue is not a true affirmative defense governed by Rule 8(c).  Although Rule 8(c) requires defendants to plead certain defenses affirmatively, improper venue is not among them.  *See* Fed. R. Civ. P. 8(c); *see also Griffith v. Boll & Branch, LLC*, 2020 WL 532419, at *2 (S.D. Cal. 2020) ("[D]istrict courts have found that failure to raise [improper venue and lack of personal jurisdiction] as affirmative defenses in an answer does not necessarily waive the opportunity to challenge venue and personal jurisdiction in a post-answer motion, as long as those defenses are raised in some manner in the answer.").  That omission is not surprising because Rule 12(b) separately identifies improper venue as a negative defense that may be raised either by a pre-answer Rule 12 motion or in a responsive pleading.  *See supra* (citing Fed. R. Civ. P. 12(b), 12(h)(1)).  In turn, courts have held that denial of a complaint's venue allegations in an answer is sufficient to preserve the issue and to provide notice that venue is contested.  *See Infogation Corp. v. HTC Corp.*, 2017 WL 2869717, at *2 (S.D. Cal. 2017) (defendant's denial in an answer that venue is proper may be sufficient to avoid waiver); *Bridgeport Enter., Inc. v. ValCom, Inc.*, 2013 WL 12129388, at *1 (C.D. Cal. 2013) (denying proper venue and personal jurisdiction in an answer, as opposed to affirmatively asserting it, is sufficient to avoid waiver); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

**MEMORANDUM DECISION AND ORDER RE: VENUE - 13**

Waiver in this context therefore does not turn on whether the words "improper venue" appear under a separately-captioned "affirmative defenses" heading.  Instead, the operative question is whether Defendants timely asserted their objection to venue in a manner permitted by Rule 12 so as to notify Plaintiffs of the challenge.  Here, Defendants did so.  By denying Plaintiffs' venue allegations throughout, and also asserting improper venue in response to the Second Amended Complaint, Defendants preserved the defense under Rule 12 and placed Plaintiffs on notice that venue was disputed.

      3.    <u>Defendants' Earlier Motions to Dismiss Do Not Support Waiver</u>

Plaintiffs also argue that Defendants waived any objection to venue for the oil and gas lease sales by failing to raise it in their motions to dismiss directed at the First Amended Complaint and the NPL Project.  *See* Pls.' Resp./Reply at 6 (Dkt. 386).  That argument, however, rests on an overly strict application of Rule 12(g) that fails to account for the procedural posture of the case at that time.

The First Amended Complaint specifically added the NPL Project to the "Final Actions" that Plaintiffs collectively challenged and added an altogether new claim alleging that the NPL Project's Final Environmental Impact Statement ("FEIS") and Record of Decision ("ROD") were deficient under FLPMA, NEPA, and the APA.  *See* First Am. Compl. at ¶¶ 1a, 12, 122, 225mm-225mmm, 332-343 (Dkt. 78).  Plaintiffs sought to reverse and remand the BLM decisions reflected by the FEIS and ROD for the NPL Project.  *See id*. at 121.

Of particular note, when Plaintiffs filed the First Amended Complaint, Judge Bush had resolved the motion to sever and transfer less than two months earlier.  His order addressed and rejected the contention that venue was improper in this District; he considered whether oil and gas leases were real property involved in the action and cited a case that held that they are not. *See* 9/4/18 MDO at 10 n.7 (Dkt. 66) (citing *Western Watersheds Project v. Salazar*, 2009 WL

**MEMORANDUM DECISION AND ORDER RE: VENUE - 14**

1299626 at *2 (D. Idaho 2009)).  Given this finding, the improper venue defense in *that* particular setting was, at best, no longer meaningfully "available" for purposes of Rule 12(g)(2). *See* Fed. R. Civ. P. 12(g)(2) (prohibiting successive Rule 12 motions raising defenses that were "available" but not asserted in a prior motion)); *see also McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 164-65 (S.D. Cal. 2019) ("A defense is considered 'available' unless 'its legal basis did not exist at the time of the answer or pre-answer motion . . . .'").  Even assuming that Defendants' pending cross-motions for partial summary judgment constitute successive Rule 12 motions, Rule 12 does not require a defendant to relitigate issues previously decided in order to preserve them.  This is especially true when Plaintiffs were already well aware that Defendants had objected to, and continued to object to, venue in this District.  *See supra*.

Moreover, Plaintiffs' waiver theory on this point ignores the nature of the NPL Project itself.  Unlike the lease sale claims challenged in the action's various phases, the NPL Project involved a Wyoming BLM office's approval of a discrete oil and gas development project located entirely in Wyoming.  Judge Bush acknowledged the inherent difference when resolving the motions to dismiss: "Though there is a difference between Plaintiffs' claims surrounding the NPL Project on the one hand and those speaking to the BLM's oil and gas leasing policy on public lands affecting sage-grouse habitat/populations on the other hand, whether the former claims involve real property as contemplated by § 1391(e)(1)(C) is not obvious."  7/9/19 MDO at 5 (Dkt. 150) (but not answering the venue question, instead ordering a discretionary transfer of the NPL Project claims under 28 U.S.C. § 1404(a)).  Defendants' earlier motions to dismiss appropriately focused on the legal sufficiency of the NPL Project-specific claims.  Their decision not to revisit a venue objection that had just been considered and rejected in a different procedural setting does not reflect an intentional relinquishment of the defense. Viewed in this context, Defendants' earlier motions to dismiss were directed at a narrow and factually-distinct

**MEMORANDUM DECISION AND ORDER RE: VENUE - 15**

amendment filed shortly after the Court had ruled on a distinguishable venue issue. They do not preclude their improper venue defense now under Rule 12(g)(2).

In sum, as it relates to Defendants' initial defensive moves, the Court finds that Defendants raised improper venue both in pre-answer filings (in connection with WEA's motion to intervene and in WEA's sur-reply to Defendants' motion to sever and transfer) and responsive pleadings (Answers to the original Complaint and Second Amended Complaint). In doing so, Defendants consistently placed Plaintiffs on notice that venue was disputed. As such, Defendants have complied with 12(h)(1)(B) and 12(g)(2) and have not waived an improper venue defense under those subsections.

### 4. Defendants' Litigation Conduct Did Not Effect Waiver

Having concluded that Defendants did not waive the defense of improper venue under Rules 12(h)(1) and 12(g)(2), Plaintiffs' final waiver argument rests on Defendants' litigation conduct. *See* Pls.' Resp./Reply at 6-8 (Dkt. 386). Plaintiffs contend that, even if the defense was preserved, Defendants forfeited it by litigating the merits for years before pressing improper venue in Phase III. *Id.* The Court is not persuaded that waiver can be so inferred on this record.

Preliminarily, this case is unlike the more typical, straightforward cases on which Plaintiffs rely to support waiver by conduct. This fact, by itself, undercuts the cases Plaintiffs cite in support of waiver and prevents an apples-to-apples comparison. From its inception, this litigation has been organized into multiple phases, each addressing different lease sales, different administrative records, and different geographic regions across the western United States. That unique structure – combined with intervenor participation, interlocutory rulings, multiple rounds of appeals, and stays along the way – has made the case unusually complex. As a result, the litigation's significant duration is not unexpected; it simply reflects the action's structural realities and cannot serve as a proxy for waiver.

**MEMORANDUM DECISION AND ORDER RE: VENUE - 16**

Additionally, contrary to Plaintiffs' claims, the fact that Defendants produced administrative records, negotiated litigation plans, and filed and defended various motions over the course of this litigation's three phases, is not tantamount to an admission that this is the proper court to adjudicate the entire case on its merits. To the contrary, as already stated, Defendants raised venue objections at multiple points throughout the litigation, including in pleadings, briefings, stipulations, and on appeal. Venue was addressed during early transfer proceedings, revisited in connection with the NPL Project, and raised again in the Phase I appeals. All along, the Court itself questioned and analyzed venue, underscoring that the issue remained live.

Finally, it is important to recognize that the timing of Defendants' latest venue challenge aligns with the structure of the case rather than any effort at strategic delay. *See, Peterson* 140 F.3d at 1318. Phase III is the first phase that squarely consolidates challenges to the September 2017 Utah, February 2019 Wyoming, and March 2019 Montana lease sales. Defendants raised the defense of improper venue when those lease sales came before the Court on summary judgment. This reflects Defendants' long-standing objection to venue in this litigation, and is consistent with the phased approach adopted by the parties and approved by the Court.

In short, this is not a case in which Defendants silently litigated for years only to spring a venue objection at the eleventh hour, resulting in the waste of judicial resources. *See Rutter Group Prac. Guide: Federal Civ. Pro. Before Trial* at § 9.27. Instead, Defendants most recent effort to raise the defense is consistent with the evolving scope of the litigation. A strict application of the waiver doctrine that ignores the unusual structural and procedural history of this case would elevate form over substance, all at the expense of ensuring that venue is proper in this Court. Under these circumstances, Defendants should be permitted to challenge venue as to the lease sales addressed in Phase III. The Court turns to the merits of that issue next.

**MEMORANDUM DECISION AND ORDER RE: VENUE - 17**

### III. <u>VENUE</u>

Having found that Defendants collectively have not waived their claims of improper venue for the Phase III oil and gas leases*, the* Court next considers the merits of the parties' venue arguments. First, the Court surveys the legislative history of the federal venue statute – 28 U.S.C. § 1391 – and specifically § 1391(e)(1)(C), which is at issue here. Next, the Court interprets and analyzes § 1391(e)(1)(C). Finally, the Court applies § 1391(e)(1)(C) to the facts at bar. For the reasons set forth below, the Court finds that venue is improper in the District of Idaho.

**A.    Legislative History of 28 U.S.C. § 1391(e)**

The federal venue statute – 28 U.S.C. § 1391 – was enacted in 1948. 28 U.S.C., 1948 ed., § 1391 (June 25, 1948, ch. 646, 62 Stat. 935).[8] Primarily, it reflected concern for the convenience of the defendant and protecting the defendant against forum-shopping by the plaintiff. *See Leroy v. Great Western United Corp.,* 443 U.S. 173, 183-84 (1979) ("In most instances, the purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place for trial. For that reason, Congress has generally not made the residence of the plaintiff a basis for venue in nondiversity cases."). The 1948 version of § 1391 read as follows:

Venue generally –

> (a)    A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside.

---

[8]    A precursor to § 1391 – 28 U.S.C. §§ 111 & 112 – was enacted in 1940. 28 U.S.C., 1940 ed., §§ 111, 112 (Mar. 3, 1911, ch. 231, H 50, 51, 36 Stat. 1101; Sept. 19, 1922, ch. 345, 42 Stat. 849; Mar. 4, 1925, ch. 526, § 1, 43 Stat. 1264; Apr. 16, 1936, ch. 230, 49 Stat. 1213).

    (b)      A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside except as otherwise provided by law.

    (c)      A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

    (d)      An alien may be sued in any district.

28 U.S.C., 1948 ed., § 1391.

In 1961, Congress considered expanding venue for mandamus actions against federal officers and employees. While such suits were "nominally against an individual officer," they were "in reality against the Government." *Stafford v. Briggs*, 444 U.S. 527, 542 (1980). Yet, because of jurisdiction and venue limitations in existence at the time, all such lawsuits were required to be filed in the United States District Court for the District of Columbia. *See, e.g., Kendall v. U.S. ex rel. Stokes,* 37 U.S. 524 (1838). "The net result was that persons in distant parts of the country claiming injury by reason of the acts or omissions of a federal officer or agency were faced with significant expense and inconvenience in bringing suits for enforcement of claimed rights." *Stafford*, 444 U.S. at 534. Accordingly, Congress endeavored to provide nationwide venue for these suits for the convenience of plaintiffs. *See* S. Rep. No. 87-1992, 87th Cong., 2d Sess., *reprinted in* 1962 U.S.C.C.A.N. 2784, 2785 ("The purpose of this bill, as amended, is to make it possible to bring actions against Government officials and agencies in U.S. district courts outside the District of Columbia . . . .").

On July 10, 1961, the United States House of Representatives passed H.R. 1960. In its original iteration, H.R. 1960 provided that a civil action against an officer or employee of the United States "may be brought in *any judicial district where a plaintiff in the action resides*, or in

MEMORANDUM DECISION AND ORDER RE: VENUE - 19

which the cause of the action arose, or in which any property involved in the action is situated."
H.R. 1960, 87th Cong., 1st Sess. (July 10, 1961) (emphasis added).

However, the United States Department of Justice ("DOJ") opposed the boundless
expansion of "plaintiff resides" venue because of "the local nature of some real property
actions." *Santa Fe Intern. Corp. v. Watt*, 580 F. Supp. 27, 30 (D. Del. 1984). Specifically, in
1962, then-United States Deputy Attorney General (and later that year, Justice of the United
States Supreme Court) Byron R. White wrote in a letter to the Senate Committee on the
Judiciary:

> The pending bill would place venue in any judicial district 'wherein the plaintiff
> resides.' We recommend that this be changed to grant venue in any judicial district
> 'in which the cause of action arose, or in which any property involved in the action
> is situated.' The principal demand for this proposed legislation comes from those
> who wish to *seek review of decisions relating to public lands, such as the awarding
> of oil and gas leases*, consideration of land patent applications and the granting of
> grazing rights or other interests in the public domain. The applicants may reside in
> any State, or several States of the Union, and *it would be unwise to have the
> Secretary sued in Maine with respect to an oil and gas lease in Wyoming*. On the
> other hand, there is no objection to permitting one who has done business involving
> land in Wyoming to bring any suit concerning that land in the State where it is
> located.

Ltr. from Bryon R. White to Sen. James O. Eastland (February 28, 1962), *reprinted in* 1962
U.S.C.C.A.N. 2784, 2788-89 (emphasis added).

The Senate Committee on the Judiciary determined that DAG White's suggestion had
merit:

> The Department of Justice also expressed concern that where the plaintiff resides
> in a different judicial district than that *in which real property involved in the action
> is situated*, it would not be in the interest of an expeditious proceeding to have the
> action brought in the judicial district where the plaintiff resides. The committee
> considered this suggestion meritorious and approved the amendment set out to
> section 2 of the bill.

S. Rep. No. 87-1992, 1962 U.S.C.C.A.N. 2784, 2787 (emphasis added). In doing so, it echoed
DAG White's concern about having local judges resolve actions affecting land in their district:

**MEMORANDUM DECISION AND ORDER RE: VENUE - 20**

> Disregarding considerations of convenience, broadening of the venue provisions of Title 28 to permit these actions to be brought locally is desirable from the standpoint of efficient judicial administration. Frequently, these proceedings involve problems which are recurrent but peculiar to certain areas, such as water rights, grazing land permits, and mineral rights. These are problems with which judges in those areas are familiar and which they can handle expeditiously and intelligently.

*Id.* at 2786. Accordingly, the Senate incorporated DAG White's suggestion in the final version of H.R. 1960.

On October 5, 1962, Congress passed the Mandamus and Venue Act of 1962 and therein amended § 1391. Pub. L. No. 87-748, § 2, 76 Stat. 744 (Oct. 5, 1962). The 1962 version of § 1391 included subsection (e) which provided:

> A civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which: (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) *the plaintiff resides if no real property is involved in the action.*

28 U.S.C., 1962 ed., § 1391(e) (emphasis added).

The Judicial Improvements Act of 1990 amended § 1391(e) further. Pub. L. 101-650, 104 Stat. 5089 (Dec. 1, 1990). It struck § 1391(e)(2) and amended § 1391(e)(3) to state "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." 104 Stat. at 5114. The 1990 version of subsection (e) provided:

> A civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which: (1) a defendant in the action resides, or (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the *subject* of the action is situated, or (3) the plaintiff resides if no real property is *involved* in the action.

**MEMORANDUM DECISION AND ORDER RE: VENUE - 21**

28 U.S.C., 1990 ed., § 1391(e) (emphasis added).  As such, the amendment resulted in a

distinction between "property that is the *subject* of the action" in § 1391(e)(2) and "real property

[that] is *involved* in the action" in § 1391(e)(3).

In 2011, the Federal Courts Jurisdiction and Venue Clarification Act of 2011 was

enacted, further amending § 1391. Pub. L. No. 112-63, 125 Stat. 758 (Dec. 7, 2011).  These

amendments were non-substantive and only changed subheadings.  The current version of

§ 1391(e)(1) provides:

> A civil action in which each defendant is an officer or employee of the United States
> or any agency thereof acting in his official capacity or under color of legal authority,
> or an agency of the United States, may, except as otherwise provided by law, be
> brought in any judicial district in which (A) a defendant in the action resides, (B) a
> substantial part of the events or omissions giving rise to the claim occurred, or a
> substantial part of the property that is the subject of the action is situated, or (C) the
> plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e)(1).

## B.    Real Property is "Involved" in This Action

At issue here is whether Plaintiffs' Phase III action challenging Defendant BLM's

compliance with NEPA and FLPMA vis-à-vis its sale of oil and gas leases in Utah, Wyoming,

and Montana "involved" real property under §1391(e)(1)(C).  Fundamentally, this is an exercise

in statutory interpretation.

### 1.    The Plain Meaning of "Involved"

Plaintiffs argue that real property is not "involved" in the action.[9]  Citing a long line of

district court cases, Plaintiffs maintain that the action does not "center directly" on a real

---

[9]  To frame the issue, Plaintiffs concede that oil and gas leases are interests in real
property.  *See* Pls.' Resp. to Defs.' Supp. Br. on Venue at 3 (Dkt. 558) (acknowledging the
"undisputed proposition that oil and gas leases constitute real property interests"); *id*. at 14
("Instead, those Ninth Circuit decisions [Phase I appeal decision and intervention decision] at
most reiterate that oil and gas leases constitute real property interests – a legal proposition that no
party has contested here, including Plaintiffs . . . ."); *id*. at 15 ("But Plaintiffs never contested

property dispute over "right, title, or interest."  Instead, they claim that the action is a general administrative challenge to agency compliance with federal environmental statutes that only marginally affects real property.  Accordingly, Plaintiffs argue that § 1391(e)(1)(C) is satisfied and venue lies in the District of Idaho wherein Plaintiff Western Watersheds Project is headquartered.

Defendants counter that, under a plain reading of § 1391(e)(1)(C), the instant action "involves" real property.  They contend that oil and gas lease rights unquestionably are interests in real property, and that an action that, at bottom, seeks to invalidate them plainly "involves" real property.  Thus, Defendants argue that § 1391(e)(1)(C) is not satisfied and that the Phase III action should be dismissed or transferred to the Districts of Utah, Wyoming, and Montana, respectively.

The Court begins – as it must in any dispute over statutory interpretation – with the plain language of the statute; if the language is unambiguous, the inquiry ends.  *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) ("Where the statute's language is plain, the sole function of the courts is to enforce it according to its terms."); *see also United States v. Temple*, 105 U.S. 97, 99 (1881) ("When the language is plain, we have no right to insert words and phrases, so as to incorporate in the statute a new and distinct provision.").

Congress did not define "involved" in § 1391.  Therefore, the first exercise is to identify the "ordinary or natural meaning" of the term.  *Ctr. for Biological Diversity v. United States Fish & Wildlife Serv.*, 67 F.4th 1027, 1036 (9th Cir. 2023) (citing *HollyFrontier Cheyenne Ref., LLC v. Renewable Fuels Ass'n*, 594 U.S. 382, 388 (2021) (citation omitted)).  There is consensus

---

that oil and gas leases are significant property interests . . . as the Ninth Circuit acknowledged."). Plaintiffs simply claim that such leases are not "involved" in the instant action because of its nature and purpose.  *See id.* at 14-17.

**MEMORANDUM DECISION AND ORDER RE: VENUE - 23**

about the ordinary meaning of "involved": it means "to be a part of, included in, or associated

with" something.  *See* Miriam-Webster Dictionary at https://www.merriam-

webster.com/dictionary/involved ("having a part in something: included in something")

(accessed Dec. 17, 2025); Cambridge Dictionary at

https://dictionary.cambridge.org/us/dictionary/english/invovled ("part of an activity or event")

(accessed Dec. 17, 2025); American Heritage Dictionary of the English Language at

https://ahdictionary.com/word/search.html?q=involved ("connected by participation or

association") (accessed Dec. 17, 2025).  Where multiple dictionaries reference the same basic

meaning, "[w]e have not the slightest doubt that is the meaning that the statute intended."  *Ctr.*

*for Biological Diversity*, 67 F.4th at 1036 (quoting *MCI Telecomms. Corp. v. AT&T Co.*, 512

U.S. 218, 225, 228, (1994)).

 This interpretation of "involved" is bolstered by the surrounding statutory text.  *See id.*

(citing *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 20 269 (2018) ("Statutory

language cannot be construed in a vacuum." (alteration and citation omitted)) and *Yates v. United*

*States*, 574 U.S. 528, 543 (2015) ("[A] word is known by the company it keeps . . . .")).  Here,

immediately preceding § 1391(e)(1)(C)'s reference to real property "involved in the action" is §

1391(e)(1)(B)'s reference to property that is the "subject of the action."  The phrase "subject of

an action" is commonly defined as "the right or property at issue in a lawsuit; the basis of a legal

claim."  *Subject of an action,* BLACK'S LAW DICTIONARY (12th ed. 2024).  The ordinary meaning

of "subject of the action" in § 1391(e)(1)(B) – and its close proximity to "involved in the action"

in § 1391(e)(1)(C) – strongly suggest that Congress purposely intended to distinguish between

**MEMORANDUM DECISION AND ORDER RE: VENUE - 24**

the two concepts and for "involved" to be read more broadly, and according to its ordinary

dictionary meaning.[10]

Accordingly, the Court finds that the plain meaning of "involved" – as it is used in §

1391(e)(1)(C)'s "real property is involved" limitation – is "to be a part of, included in, or

associated with" the action.  According to statutory interpretation principles, the inquiry ends

here; the Court must enforce this interpretation of § 1391(e)(1)(C).  *See Ron Pair Enters., Inc.*,

489 U.S. at 241.

2.     "Centers Directly on Real Property" and "Actions Concerning Right, Title or
        Interest in Real Property" Are New and Distinct Provisions

However, in the interests of a full examination of the issue, the Court addresses Plaintiffs'

interpretation of § 1391(e)(1)(C).  Plaintiffs urge the Court to adopt a reading of § 1391(e)(1)(C)

that equates "real property is involved" with "centers directly on real property" as with "actions

concerning right, title or interest in real property."  This interpretation is anchored in over 50

years of district court caselaw.  This caselaw largely is the progeny of a single district court case

from the Southern District of New York in 1971. *National Resources Defense Council, Inc., et al*

*v. Tennessee Valley Authority, et al.,* 340 F. Supp. 400 (S.D.N.Y. 1971), *rev'd on other grounds,*

459 F.2d 255 (2d Cir. 1972) (hereinafter *"NRDC"*).

In *NRDC*, the Plaintiffs sued Defendants for failing to comply with NEPA by purchasing

and using strip-mined coal.  *Id.* at 402.  Plaintiffs claimed venue lay in New York under §

1391(e)(1)(C) because the Plaintiff Environmental Defense Fund was domiciled there.  *Id.* at

---

[10]  Had Congress intended to except from "plaintiff resides" venue *only* those lawsuits
where real property is the "basis of the legal claim" or "at issue in the lawsuit" (or that "center
directly" on real property, as Plaintiffs say, *see infra*), Congress could have – and would have –
said so.  In 1990, it could have amended § 1391(e)(1)(C) using the same language it chose for §
1391(e)(1)(B), so that § 1391(e)(1)(C) read: "A civil action may be brought . . . in any judicial
district in which . . . (C) the plaintiff resides if no real property is *the subject of the action."*  It
did not.

**MEMORANDUM DECISION AND ORDER RE: VENUE - 25**

403, 405.  After considering whether a provision of the Tennessee Valley Authority Act provided

an exception to § 1391(e)(1)(C), the district court examined the language of § 1391(e)(1)(C).

Specifically, it addressed "the degree to which 'real property' must be involved" in the action for

§ 1391(e)(1)(C) to apply.  *Id.* at 406.  As the entirety of its analysis, the district court offered the

following oft-cited quote:

> Gravity being what it is, the vast bulk of human activities take place on the face of
> the earth. Consequently, almost any dispute over public or private decisions will in
> some way "involve real property," taken literally.  The touchstone for applying
> §1391(e)(4) [now §1391 (e)(1)(C)] cannot sensibly be whether real property is
> marginally affected by the case at issue. Rather, the action must *center directly on*
> the real property, as with actions concerning the *right, title or interest in real
> property*.
>
> In such cases, the presence of the trial court in the district in which the property lies
> might materially aid the adjudication.  It might be easier to assemble witnesses and
> documents and for the judge to inspect the property if necessary.  In cases involving
> right, title or interest in property relief might require the trial judge to be familiar
> with the locale.

*Id.* at 406 (emphasis added).  Applying this formulation, the district court held that no real

property was involved in the action because it did not seek the adjudication of the validity of

defendants' title, leases, or mineral rights; thus, venue was proper in New York rather than in

Alabama or Tennessee.  *Id.*

The problem with the district court's analysis in *NRDC* is that it arguably violated a

century-old, fundamental precept of statutory interpretation: a court has "no right to insert words

and phrases, so as to incorporate in the statute a new and distinct provision."  *Temple*, 105 U.S.

at 99.  In *NRDC,* the district court did not merely interpret the plain language of § 1391(e)(1)(C)

by asking and answering: what does it mean for an action to "involve" real property?  Instead, it

reframed the question as: what is "the *degree* to which 'real property' *must* be involved" in the

action?  *Nat. Res. Def. Council*, 340 F. Supp. at 406 (emphasis added).  While a subtle

distinction, the district court's reframe matters.  It betrays that the district court unlikely intended

to simply interpret the ordinary meaning of the statutory text – "real property is involved" – but rather, likely intended to reformulate it.

Indeed, that is precisely what the district court did next. It did not just interpret "involved" to mean "centers directly on" – arguably a reasonable interpretation of "involved," albeit beyond the accepted dictionary definition – and leave it at that. Rather, it specified the types of actions that would "center directly on" real property – *i.e.,* those that "concern[ ] the right, title or interest" in real property – and made that part of its formulation. It then explained why its formulation made sense.[11]

This is dubious statutory interpretation. Rather, it more resembles judicial gloss. The district court simply substituted its own words and phrases – "centers directly on the real property" as with "actions concerning the right, title or interest in real property" – to incorporate in § 1391(e) a new and distinct provision. *Temple*, 105 U.S. at 99.

The progeny of *NRDC* – cited by Plaintiffs – largely apply this formulation without much scrutiny of its underpinnings. None address the ordinary meaning of the unambiguous statutory language of § 1391(e)(1)(C), specifically what "involved" means in context. Nor do any address the conspicuous distinction that Congress drew in 1990 between property that is the "subject of the action" and real property that is "involved in the action" in §§ 1391(e)(1)(B) and (C), respectively. To the extent that these cases rely on *NRDC's* formulation – but forego independent and rigorous statutory interpretation – they rest upon the same shaky foundation as *NRDC*. *See Salazar*, 2009 WL 1299626 at *2 (holding that "the legislative history to [§ 1391] shows that the real property limitation was added due to congressional concerns 'over the local nature of some real property actions,' [citation omitted] suggesting that it relates to matters of

---

[11] Conspicuously, neither "centers directly on real property" nor "actions concerning right, title or interest in real property" appear anywhere in the venue statute.

right, title, and interest [citation omitted].  The Court finds persuasive cases that have held that

environmental actions such as this are not actions in which 'real property is involved'") (citing

*NRDC*); *Earth Island v. Quinn*, 56 F. Supp. 3d 1110, 1115-16 (N.D. Cal. 2014) (observing that

"by using the legal term 'real property,' rather than allowing venue whenever 'the action relates

a particular area of land,' Congress seems to have indicated that it intended mainly to cover

disputes over legal interests in real property," but ignoring the term "involved" and distinction

between property that is the "subject of the action" and property that is "involved in the action")

(citing *NRDC*); *Western Watersheds Project v. Schneider*, 2019 WL 4863483, *3 (D. Idaho

2019) (holding that "[t]he Court finds persuasive the rationale of *NRDC* and of *Earth Island*.

This action does not involve the right, title or interest in real property and does not threaten to

place venue in a court far distant from the geographical location of the dispute.  Instead, this

lawsuit challenges an agency's compliance with statutory mandates."); *W. Org. of Res. Councils

v. BLM*, 2021 WL 718857, at *4 (D. Mt. 2021) (acknowledging that claims for awards of oil and

gas leases "relate to an *actual property interest* [emphasis in original]" but holding that

"[c]rucially, the Senate Committee did not indicate that real property would be implicated in

more general land management planning activities, such as with the RMPs or NEPA analysis at

issue here. Courts repeatedly have endorsed the understanding that general environmental

challenges, including actions relating to public land management, do not involve real property")

(citing *NRDC, Salazar, Earth Island,* & *Schneider*); *Montana Wildlife Fed'n v. Bernhardt*, 2022

WL 2438963, at *6-7 (D. Mont. 2022) (notwithstanding that subject oil and gas leases

"constitute real property interests," holding that the "the touchstone of the venue provision

'cannot sensibly be whether real property is marginally affected by the case at issue. Rather, the

action must center directly on the real property, as with actions concerning the right, title or

interest in real property'") (citing *W. Org. of Res. Councils* & *Schneider*).  Critically, no circuit

**MEMORANDUM DECISION AND ORDER RE: VENUE - 28**

court has endorsed or adopted the *NRDC* formulation, including the Second Circuit that reversed the decision on other grounds.  On balance, then, this formulation finds little support in traditional statutory interpretation principles.

3.    Legislative History Supports the Plain Meaning of "Involved"

As some of the above cases do, Plaintiffs make an additional argument in favor of the *NRDC* formulation: namely, the legislative history of § 1391(e) supports it.  *See* Pls.' Supp. Br. on Venue at 4-5 (Dkt. 548).  They argue that the legislative history makes clear that § 1391(e) was adopted to expand venue options for plaintiffs and that its "real property is involved" limitation should be interpreted narrowly to effectuate that objective.  *Id.* at 4.  Indeed, they reference DAG White's letter for the proposition that the "real property is involved" language was intended primarily to address suits involving award of mineral leases, land patents, or grazing rights (*i.e.,* suits that concern the "right, title or interest" in real property).  *Id.* at 4-5 (citing S. Rep. No. 87-1992, at 2789).

Putting aside that legislative history only becomes relevant where the at-issue statutory text is ambiguous (and here it is not),[12] the legislative history – and DAG White's letter – just as easily can be read in another way.  Unquestionably, as Plaintiffs say, a primary purpose of § 1391(e) was to expand venue so that plaintiffs could bring mandamus actions against federal officers and employes outside of Washington, D.C.  *See* S. Rep. No. 87-1992, 1962 U.S.C.C.A.N. 2784, 2785.  However, DAG White sought and received from Congress the "real property is involved" limitation on "plaintiff resides" venue.  As he wrote, that limitation specifically was requested by "those who wish to seek review of decisions relating to public lands, such as the *awarding* of oil and gas leases . . . ."  DAG White Ltr., 1962 U.S.C.C.A.N.

---

[12]    *See, e.g., Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011) ("Legislative history has no bearing unless text remains ambiguous.").

**MEMORANDUM DECISION AND ORDER RE: VENUE - 29**

2784, 2789 (emphasis added).  His explicit concern was that it would be "unwise to have the

Secretary [of the Interior] sued in Maine with respect to an oil and gas lease in Wyoming." *Id.*

That DAG White would request – and Congress would include in § 1391(e) – a real property

limitation that was *specifically directed* at ensuring that litigation over the *award* of oil and gas

leases was handled local to the leases, only to have that limitation apply so narrowly as to fail to

encompass lawsuits that would invalidate such leases, defies common sense and is not supported

by the legislative history.  *See, e.g., Landis v. Watt,* 510 F. Supp. 178, 180 (D. Idaho 1981)

("Thus, it was the understanding of at least the Justice Department that cases such as the present

one [cancellations of oil and gas leases] involved real property"); *Ferguson v. Lieurance*, 565 F.

Supp. 1013, 1015 (D. Nev. 1983) ("The [*Landis*] court quoted from the Congressional history

and determined that the language 'real property involved' as used in the statute was not intended

to have some artistic, esoteric meaning, but should be construed in its normal sense, that is,

where the real property is where the action should be also.").[13]

---

[13]   The district court in *Schneider* conducted a thoughtful analysis of the legislative
history of § 1391(e)(1)(C).  At the request of the government, it addressed DAG White's concern
over "a court in Maine resolving a dispute over a Wyoming lease."  *Schneider,* 2019 WL
4863483 at *2.  The district court discounted DAG White's concern in lawsuits where the district
court hearing the case – and the real property at issue – are geographically close, albeit not in the
same judicial district.  *Id.*  The district court wrote: "But [DAG White's] concern – and that of
the statute – does not apply here where this Court is not distant from the geographical location of
the dispute but is actually right in the middle of it."  *Id.*  While the district court's point has
merit, it oversimplifies DAG White's concern.  In *Schneider*, Plaintiffs sought venue in the
District of Idaho for their challenge to oil and gas leases under NEPA and FLPMA,
notwithstanding that the subject leases were located in Wyoming and Utah (here, they are
located in Wyoming, Utah and Montana).  *Id.* at *1.  While Idaho is contiguous with Wyoming,
Utah, and Montana, Idaho is qualitatively different from these states in a crucial way.  The
former is not an oil- and gas-producing state of any magnitude; the latter surely are.  Indeed, of
the 32,758 total oil and gas leases in effect on BLM land in fiscal year 2024, 11,407 were in
Wyoming; 3,574 were in Utah; and 3,488 were in Montana; only 4 were in Idaho.  *See* BLM Oil
and Gas Statistics FY 2024 at https://www.blm.gov/programs/energy-and-minerals/oil-and-
gas/oil-and-gas-statistics.  No doubt, in litigation over the award of oil and gas leases, DAG
White would consider Idaho just as "distant" as Maine – and its judges just as uninitiated in

Plaintiffs counter that NEPA and FLPMA were not in place in 1962 when § 1391(e) was enacted. *See* Pls.' Supp. Br. on Venue at 4-5 (Dkt. 548). So, they argue, neither DAG White nor Congress contemplated that oil and gas lease litigation would involve far-reaching disputes over the national environmental policies embodied in those statutes. *Id.* And accordingly, Congress would not have intended to limit venue for these suits to the localities of the oil and gas leases. *Id.* The argument has some superficial appeal. But it invites speculation as to Congress' intent. It simply cannot be known how Congress might have altered § 1391(e), if at all, had these statutes been in place. For that reason, the Court declines to address the argument.

In sum, then, the Court rejects Plaintiffs' interpretation of § 1391(e)(1)(C)'s "real property is involved" limitation to "plaintiff resides" venue. Namely, the Court finds that the formulation – "centers directly on the real property" as with "actions concerning right, title or interest in real property" – goes well beyond the ordinary meaning of "involved in the action" in § 1391(e)(1)(C) and is undercut by the "subject of the action" language in § 1391(e)(1)(B). Instead, the Court assigns the ordinary meaning to the plain language of § 1391(e)(1)(C) and finds that real property is "involved" in the action means that real property "is part of, included in, or associated with" an action.

## C.    Venue is Not Proper in the District of Idaho

Here, Plaintiffs claim venue is proper in this district exclusively by invoking § 1391(e)(1)(C). That is because, unlike the so-called companion case upon which they significantly rely, *Montana Wildlife Federation,* (i) no individual defendants – officers or employees of BLM – reside in Idaho; (ii) none of the challenged Phase III oil and gas leases are located in Idaho; and (iii) none of the Phase III lease sales were processed by BLM offices in

---

issues involving oil and gas leasing – from Utah, Wyoming, and Montana for purposes of evaluating venue under § 1391(e)(1)(C).

Idaho.  *Compare Montana Wildlife Fed'n,* 2022 WL 2438963 at *4-6.  All that tethers this phase

of the case to the District of Idaho is the fact that Plaintiff Western Watersheds Project is

headquartered in Hailey, Idaho.  Thus, venue is proper in the District of Idaho under §

1391(e)(1)(C) only if no real property is part of, included in, or associated with Plaintiffs' action.

Unquestionably, under this Court's formulation, real property – the state defendant and

intervenors' interests in the challenged Utah, Wyoming, and Montana oil and gas leases – is

involved in Plaintiffs' action.  First, Plaintiffs' Complaint and Second Amended Complaint

specifically reference and describe in detail the at-issue lease sales, the physical areas within

Utah, Wyoming, and Montana implicated by them, and the fact that the lease sales are

challenged as final agency actions.  *See* Compl. (Dkt. 1) at ¶¶ 145, 186-198 (September 2017

Utah Lease); *see also* Second Am. Compl. (Dkt. 165) at ¶¶ 148, 264-273 (March 2019 Montana

Lease), 274-283 (February 2019 Wyoming Lease).  Crucially, each of the Prayers for Relief in

the Complaints request that such lease sales be invalidated.  *See* Compl. at 83 (Dkt. 1) ("Reverse,

set aside, hold unlawful, and/or vacate each and all of the Final Actions and remand them to

Defendants."); Second Am. Compl. at 88 (Dkt. 165) (same).

An action that seeks to invalidate an existing oil or gas lease sale is "part of, included in,

or associated with" real property for purposes of § 1391(e)(1)(C).  In its intervention opinion in

this case, the Ninth Circuit said as much when it observed that "[Intervenor] Chesapeake actually

participated in the challenged lease sales and obtained a property interest that is imperiled by this

litigation."  *Western Watersheds Project, et. al v. Haaland, et. al,* 22 F.4th 828, 842 (9th Cir.

2022).  If an oil and gas lease is a "property interest that is imperiled by" this action, that lease

surely is "involved" in this action.

Other cases cited by Defendants have held likewise.  *See Landis*, 510 F. Supp. at 180

(holding that real property was "involved" for purposes of §1391(e) in action where "prayer for

relief asks first that the '29 oil and gas leases which have been rejected or canceled be renewed forthwith'"); *Ferguson v. Lieurance,* 565 F. Supp. 1013, 1015 (D. Nev. 1983) (holding that real property was "involved" for purposes of § 1391(e) in action challenging BLM's rejection of plaintiff's applications for oil and gas leases on public land; observing that "[t]he proposition that an action for declaratory relief to hold void and unenforceable any statutes, rules, regulations or practices which prescribe essential preliminary steps or procedures to initiate entry on the public lands of the United States under the public land laws is not an action involving real property is a legal sophistry."). Accordingly, the Court finds that the at-issue oil and gas lease sales are real property "involved" in the instant action and that venue does not lie in the District of Idaho under § 1391(e)(1)(C).

## IV.  PENDENT VENUE

Plaintiffs alternatively urge the Court to apply pendent venue. *See* Pls.' Resp./Reply at 12-13 (Dkt. 386); Pls.' Supp. Brief on Venue at 9-10 (Dkt. 548). The pendent venue doctrine allows a district court, in limited circumstances, to adjudicate claims that do not independently satisfy venue requirements when other claims in the same action do – so long as "doing so is justified by 'principles of judicial economy, convenience, avoidance of piecemeal litigation, and fairness to the litigants.'" *Unique v. Claybaugh*, 712 F. Supp. 3d 1265, 1272 (N.D. Cal. 2024) (quoting *Martensen v. Koch*, 942 F. Supp. 2d 983, 998 (N.D. Cal. 2013)). Courts apply the doctrine only where the claims are "closely related," or "arise out of the same common nucleus of facts." *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F. Supp. 3d 733, 753 (N.D. Cal. 2015); *Flamingo Indus. (USA) Ltd. v. U.S. Postal Serv.*, 302 F.3d 985, 997 (9th Cir. 2002). Plaintiffs' Phase III lease sale challenges do not meet that standard.

First, Plaintiffs seek pendent venue within Phase III itself, yet the Court has concluded that venue is not proper for any of the Phase III lease sales. *See supra*. Pendent venue

presupposes the existence of at least one properly venued claim to which other claims can attach. Where venue is lacking across the board for the claims at issue, there is no anchor claim from which pendent venue can arise.

Second, to the extent Plaintiffs rely on other phases of this litigation as a basis for pendent venue, that argument also falls short. Setting aside the unsettled venue posture of Phases I and II, those portions of the case are largely complete. Phase I has been adjudicated on the merits and reviewed on appeal. Phase II is no longer meaningfully before this Court in a posture that could support pendent venue for pending claims. Pendent venue is a doctrine of efficiency, not resurrection. It does not permit the Court to bootstrap venue for later claims to phases of the litigation that have already run their course.

Third, more fundamentally, the Phase III lease sale challenges do not arise from the "same common nucleus of facts" as the claims litigated in earlier phases. Yes, there are similarities. But there is a reason for the action's phased approach. Each involves different lease sales, different geographic areas, different administrative processes, different decisionmakers, and different administrative records. The lack of factual and procedural overlap reflected in the various phases defeats any contention that the claims are "closely related" in the manner required to justify pendent venue.

At bottom, pendent venue is not appropriate here. Plaintiffs cannot invoke it because venue is improper for all Phase III claims. Nor can they rely on earlier phases of the litigation because those claims are neither pending nor sufficiently related. Applying pendent venue under these circumstances would stretch the doctrine beyond its limited purpose and would effectively nullify the venue statute's claim-specific requirements. The Court therefore declines to exercise pendent venue over the Phase III lease sale challenges.

**MEMORANDUM DECISION AND ORDER RE: VENUE - 34**

## V.  CONCLUSION

Having held that Defendants have not waived their venue defense, that venue is improper under § 1391(e)(1)(C), and that pendent venue is inappropriate, there is no basis for venue in the District of Idaho.  As a result IT IS HEREBY ORDERED that (i) Federal Defendants' Motion for Partial Summary Judgment (Dkt. 378); (ii) Wyoming's Motion for Partial Summary Judgment (Dkt. 380); and (iii) WEA's Motion for Partial Summary Judgment (Dkt. 383) are GRANTED, in part, and DENIED, in part as follows:

1.      Plaintiffs' Phase III-related claims are not dismissed.  In this respect, the above motions are DENIED.

2.      Pursuant to 28 U.S.C. § 1406(a), the Court will transfer the individual challenges to (i) the 2017 Utah lease sale to the District of Utah; (ii) the 2019 Montana lease sale to the District of Montana; and (iii) the 2019 Wyoming lease sale to the District of Wyoming.  In these respects only, the above motions are GRANTED.  *See* 28 U.S.C. §§ 1391(e)(1)(A)-(B).

While the Court recognizes that piecemeal litigation of these three lease sales may be inefficient, the result is compelled by the plain text of the venue statute and the facts of this case.

DATED:  December 23, 2025

_____
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge